IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| Oregon Advocacy Center, Metropolitan | ) | |
| Public Defender Services, Inc., and | ) | |
| A.J. Madison, | ) | CV. NO. 02-339-PA |
| | ) | |
| Plaintiffs, | ) | FINDINGS OF FACT AND |
| | ) | CONCLUSIONS OF LAW |
| | ) | |
| Bobby Mink, Director of the Department | ) | |
| of Human Services, in his official capacity, | ) | |
| and Stanley Mazur-Hart, Superintendent of | ) | |
| Oregon State Hospital, in his official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

PANNER, Judge:

Plaintiffs bring this action seeking an order compelling defendants to expeditiously provide

hospital admission and medical treatment for criminal defendants who are determined by the Circuit

Courts within Oregon to be unfit to proceed to trial because of mental incapacities.  I held a court trial

1 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

on April 8, 2002.  After consideration of the evidence adduced and the arguments submitted, these are

my Findings of Fact and Conclusions of Law:

Findings of Fact

1.  Plaintiff Oregon Advocacy Center ("OAC") is a federally funded non-profit law office

representing the rights of people with disabilities.  Under the Protection and Advocacy for the Mentally

Ill Act, 42 U.S.C. § 10805, OAC is charged with the authority to protect the rights of individuals with

mental illness.  Some criminal defendants are determined by the Circuit Courts of Oregon to be unfit to

proceed to trial because of mental incapacities (hereinafter referred to simply as being "unfit" or "unable

to proceed").  *See* ORS § 161.370(2).  These "unfit to proceed" defendants fall within the scope of

OAC's mandate, and are its constituents.

2.  Plaintiff OAC represents people with mental illness and provides the means to protect their

collective interests.  The organization advocates for those found unable to proceed to trial in various

ways, including representing individual clients and litigating to establish limits on the amount of time

people may be held at state hospitals because they have been found unfit to proceed.

3.  Plaintiff Metropolitan Public Defender Services, Inc., ("MPD") is a non–profit corporation

representing indigent criminal defendants in Multnomah and Washington Counties in Oregon.  Because

of defendants' delays in accepting custody of persons found unfit to proceed, MPD suffers ongoing

injury because its ability to represent its clients' interests is impaired, and because the delays compel

MPD to expend additional resources to effectively represent clients who are incarcerated while

awaiting hospitalization.  As a result of delays of weeks and months in getting a client admitted to the

state hospital, MPD is forced to use its limited resources to attempt to keep the client advised of his or

2 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

her status, address difficult questions from the client's family, stay in contact with the jail personnel

regarding the limited psychiatric treatment that may be available, and attend additional court calls to

explain to the judge that the client is still awaiting the court-ordered placement and treatment.  These

responsibilities deprive MPD attorneys of time and energy needed for other cases, draining MPD's

resources and frustrating its mission.  Similarly, John Connors, Multnomah County Director for MPD, is

required to repeatedly address the problems created by defendants' delays in providing the court-

ordered hospitalization of his clients, thereby diverting him from his other duties.

4.  Plaintiff A.J. Madison was incarcerated in the Multnomah County Jail on March 5, 2002,

the date he was found unable to aid and assist.  He was charged with assaulting his mother with a

sledge hammer, a crime that by itself is indicative of serious mental illness.  Madison did not understand

why he was in jail or the severity of the charges against him, and suffered severe anxiety because he

was not being treated properly.  He was not admitted to Oregon State Hospital ("OSH") until March

28, 2002, 23 days after he was found unfit to proceed.

5.  Madison's psychological evaluation indicates he cannot participate in an appropriate

exchange of information, and cannot reason well enough to make proper decisions       about relevant

information.  In order for him to return to competency to stand trial at a later date, Madison requires

specialized medications and treatment.

6.  Plaintiffs provided a list of other clients experiencing significant delays in obtaining transfer

and treatment.  Defendants did not dispute the assertions that clients have suffered, and are suffering,

delays of weeks and months before being admitted into the state hospital.  As of March 25, 2002, the

3 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

hearing date for plaintiffs' motions for a temporary restraining order and a preliminary injunction, OSH

had a list of 11 "unable to proceed" defendants awaiting transport.

7.  Oregon law provides that "if the court determines that the defendant lacks fitness to

proceed, the proceeding against the defendant shall be suspended. . . and the court shall commit the

defendant to the custody of the superintendent of a state mental hospital designated by the Department

of Human Services."  ORS §161.370(2).  The law permitted the Mental Health Division to designate a

state mental hospital "or other treatment facility" for commitment.  Oregon has forensic units at both

OSH and Eastern Oregon Psychiatric Center, and Oregon's state hospitals provide locked wards.  The

Eastern Oregon Psychiatric Center houses forensic patients (those who have been charged or

convicted of crimes).  The Division never designated a facility other than OSH for admission of "unable

to proceed"defendants, however.  The law formerly provided "the defendant shall be transported to the

hospital or treatment facility as soon as practicable.  Transport shall be completed within seven days

after the court's determination unless doing so would jeopardize the health or safety of the defendant or

others."  ORS §161.370(3).  The current statute is silent on how quickly transport must occur.

8.  Plaintiffs' clients are incarcerated in various county jails in Oregon while awaiting transfer to

OSH.  These jails have a varying, limited capacity to accommodate these clients.

Deschutes County Jail has an inmate population of 200, and has one full-time psychologist and

a psychiatrist who comes in once a week to review medication.  There is a single location in the facility

at which inmates can be monitored visually.

4 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

Lincoln County Jail has 150 inmates, one full-time inmate counselor, and a psychiatric nurse practitioner who comes in four hours per week for medication management. The jail's ability to care for mentally ill inmates is rudimentary.

Washington County Jail houses approximately 485 people, and staffs a psychiatric nurse practitioner who does pharmacology, and a social worker and community liaison. The jail lacks people who are trained to care for mentally ill people.

The Clackamas County Jail has 494 inmates, and one psychologist who comes into the jail five days a week for eight hours to provide counseling. A psychiatrist works four hours a week, a nurse practitioner works four hours a week, and a psychiatric nurse works eight hours per week.

Lane County Jail houses 451 inmates, and staffs one consulting psychiatrist who comes in once a week to provide medication management, and a full-time mental health specialist who provides crisis management.

Josephine County Jail houses approximately 170 inmates. There is virtually no mental health treatment in the jail. Until recently, the only available treatment was crisis intervention services from outside the jail. Medication is available through a clinic, but an inmate cannot be involuntarily medicated. The jail has standard restraints, including a restraint chair, and a control technician to monitor prisoners every 15 minutes when necessary.

The Multnomah County Jails house a population of approximately 1,800 persons, and maintain a mental health services staff consisting of a half-time psychiatrist, who functions as psychiatric medical director; a full-time psychiatric nurse practitioner, a contract nurse practitioner, another psychiatrist who works eight hours per week on a contractual basis, and 10 additional mental health staff, composed

5 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

primarily of psychiatric nurses or mental health consultants. The Multnomah County Sheriff's Office provides some mental health treatment, but its primary responsibility is jail safety. It lacks expertise and resources to provide treatment designed to care for the mentally ill and to restore competency.

9. Jails can provide medication management for people who are willing to take medications, but cannot administer medication involuntarily, except in a life-threatening emergency. When resources permit, treatment for "unfit to proceed" defendants may possibly include basic clinical psychiatry and intervention. Such treatment is designed to stabilize the inmate. However, some inmates, particularly those with personality disorders, refuse or do not respond to medication, and do not otherwise respond to the treatment the jails can provide.

10. None of the jails in which these persons are held is able to provide treatment designed to restore a person found unfit to proceed to competency. People found unfit to proceed are often overtly psychotic and require special housing or segregation. They are unpredictable and disruptive, taking up valuable resources needed for the care of other inmates. If they refuse to take medications, they often decompensate rapidly. They often are confined in their cells for 22 to 23 hours a day because of their behavior. This exacerbates their mental illness.

11. Necessarily, the jails' only system for controlling inmates is disciplinary, which is behavior-driven. Such a system is ineffective for mentally ill persons, and possibly harmful.

12. Unlike the county jails, OSH has the capacity to treat a person's mental illness. Each of the units housing persons found unfit to proceed is staffed by a full-time psychiatrist, a psychologist, a mental health specialist, a recreation counselor, a social worker, a mental health technician and nurses.

6 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

13.  In addition to assessment, medication evaluation and management, and individual and group psychotherapy, OSH provides legal skills training three times a week to assist patients in learning about the law, pleas, and returning to court.  This treatment is designed to enable a person to regain fitness to proceed to trial.

14.  The Oregon State Hospital provides status reports to OAC each time a person is evaluated as to his or her continued unfitness to proceed.  The report contains a copy of the order finding the person unfit to proceed, and indicates the date on which the person was accepted by OSH.  These records have been compiled by OAC since October, 2001.

15.  A review of 105 records reveals that persons found unfit to proceed in 2001 and 2002 spent an average of 31.98 days awaiting transport to OSH.  Only 19 persons were transported within seven days or less; 48 people were held for 30 days or more, and nine people were held for 60 days or more.  The ten longest periods of time people were held in this period are as follows:  166 days, 102 days, 84 days, 82 days, 78 days, 68 days, 65 days, 63 days, and 57 days.

16.  The delays experienced by some persons who were found unfit to proceed in 2001 and 2002 and detained in Multnomah County Jails between July 1 and October 15, 2001, are representative.  Eleven inmates who were found unfit to proceed were held for a total of 471 days awaiting transport to OSH; the longest wait lasted 111 days, the next 102 days, and the next 81 days.  The shortest period of time was seven days.  As recently as February 15, 2002, one client had waited 87 days for placement.

17.  Promptly admitting persons found unfit to proceed is critical.  This population has a high suicide risk, and psychosis can be an emergency requiring immediate treatment.

7 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

18.  Indefinitely imprisoning persons deemed unfit to proceed without adequate treatment is unjust and inhumane.  Depriving them of necessary medical treatment increases the likelihood that they may decompensate and suffer unduly.  The delays also hamper efforts to provide effective representation regarding their criminal prosecution.

19.  The delays also result in possible injury to a defendant's procedural rights.  Under state law, a re-evaluation must take place within 60 days of the time defendant is committed to the custody of the state hospital.  However, as the client spends weeks and months in jail awaiting hospitalization, that evaluation is delayed.  Relatedly, people have a right to have their cases tried within 60 days of being charged, if they are in custody.  However, for people declared to be unable to aid and assist, delays in the subsequent evaluative process can postpone the opportunity for a trial for much longer than 60 days.

20.  The jails have the capacity to transport inmates to a treatment facility within 24 hours. The reason they do not transport the inmates is because defendants refuse to accept them.

21.  Sheriff Noelle attempted to implement a policy of transporting "unable to proceed" persons to the state hospital within 72 hours.  There is no dispute this policy has failed because defendants have refused to accept custody.  Jail personnel are compelled to incarcerate these persons until the hospital agrees to admit them.  As a result, the court-ordered admissions are delayed until the jails are notified that a hospital bed is available.

22.  Every day of delay in transport harms those found unfit to proceed and hampers their ability to defend themselves. Attorneys and investigators are impaired by having to prepare a case months after the incident has occurred.  The treatment-deprived client cannot provide information to the

8 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

attorney, a defense cannot be prepared, and witnesses who may be critical to the case cannot be

identified and may be unavailable at a later time.  Trials, pleas and other means of resolving

prosecutions are delayed while these defendants are incarcerated and awaiting eventual hospital

admission and treatment.

\\\

Conclusions of Law

1.  Plaintiff OAC has standing to represent the interests of persons who are presently or may in

the future be unfit to stand trial, and to seek a permanent injunction and declaratory judgment

establishing the time frames within which due process requires that they be transported from county jails

to a treatment facility.  *See United Food and Commercial Workers Union Local 751 v. Brown

Group, Inc.*, 517 U.S. 544, 552-53 (1996); *Hunt v. Washington State Apple Advertising

Commission,* 432 U.S. 333, 343 (1977) (an association may bring suit on behalf of its members or

constituents despite the fact that individual members have not actually brought suit themselves); *Warth

v. Seldin*, 422 U.S. 490, 511 (1975) (even in the absence of injury to itself, an association may have

standing solely as the representative of its members); *see also Fair Housing of Marin v. Combs*, 285

F.3d 899, 904-05 (9th Cir. 2002) (Ninth Circuit upholds "organizational standing" for nonprofit fair

housing organization suing an apartment owner for discriminatory conduct; direct standing to sue is

appropriate because the agency showed a drain on its resources from both a diversion of its resources

and frustration of its mission); *Doe v. Stincer*, 175 F.3d 879, 882-84 (11th Cir. 1999) (it has "long

been settled that an organization has standing to sue to redress injuries suffered by its members without

9 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

a showing of injury to the association itself and without a statute explicitly permitting associational

standing;" a protective and advocacy organization "may sue on behalf of its constituents during the

course of their treatment or within ninety days after being discharged from a treatment facility pursuant

to § 10805(a)(1)(B), (C), subject. . . to the requirements of Article III as laid out in *Hunt* and its

progeny").

2.  Plaintiff MPD has organizational standing to represent its own interests, and to obtain

permanent injunctive and declaratory relief because of injury to itself resulting from defendants' practice

of delaying admission of persons found unfit to proceed.  *See Havens Realty Corp. v. Coleman*, 455

U.S. 363, 379 (1982).

3.  Constitutional questions regarding the conditions and circumstances of pretrial confinement

are properly addressed under the Due Process Clause of the Fourteenth Amendment to the United

States Constitution.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th Cir. 2001) (liberty is

protected from unlawful state deprivation by the Due Process Clause), quoting *Haygood v. Younger*,

769 F.2d 1350, 1354 (9th Cir. 1985) (*en banc*).

4.  An individual has a liberty interest in being free from incarceration absent a criminal

conviction.  *See Baker v. McCollan*, 443 U.S. 137, 144 (1979) (Supreme Court recognizes individual

has liberty interest in being free from incarceration absent a criminal conviction; no unlawful deprivation

where a person was deprived of this liberty for a period of days by means of due process).  A court

must consider the constitutionality of a detention in light of the detention's purpose, determine whether

the detention is based on permissible goals, and, if it is, evaluate whether the detention is excessive in

relation to those goals.  *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("due process requires

10 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

that the nature and duration of commitment bear some reasonable relation to the purpose for which the

individual is committed").

5.  In determining the appropriate due process due to incompetent detainees, the United States

Supreme Court has held due process requires, at a minimum, some rational relation between the nature

and duration of confinement and its purpose.  *See Jackson*, 406 U.S. at 730 (condemning petitioner to

"permanent institutionalization" without requisite showing for commitment or the opportunity for release

deprived petitioner of equal protection of the laws under the Fourteenth Amendment).

6.  The "purpose" of holding someone unfit to stand trial in custody arises from his or her

confirmed mental illness.  The state's interest in such detentions is to assist in restoring competency, not

to punish the person.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (under the Due Process Clause,

a pretrial detainee may not be punished prior to an adjudication of guilt in accordance with due process

of law).

7.  A determination of constitutionally adequate treatment for plaintiffs' clients must be

measured not by that which must be provided to the general prison population, but that which must be

provided to those committed for mental incapacity.  *See Ohlinger v. Watson*, 652 F.2d 775, 777 (9th

Cir. 1981) (persons held due to mental illness have a constitutional right to receive such individual

treatment as will give each of them a realistic opportunity to be cured or to improve mental condition).

8.  Institutionalized persons have a substantive due process liberty interest in reasonable care

and safety, reasonably non-restrictive confinement conditions, and such treatment as may be required to

comport fully with the purposes of confinement.  *Youngberg v. Romeo*, 457 U.S. 307, 319 (1982)

(mentally retarded individual committed in state institution has liberty interests requiring state to provide minimally adequate or reasonable training to ensure safety and freedom from undue restraint).

9.  The county jails in Oregon have no capacity to provide mental health treatment that is designed to rehabilitate a person or restore the person to competency.  The treatment the jails offer to persons found unfit to proceed is the same treatment offered to any jail inmate.  Such treatment is constitutionally inadequate.  *See Lynch v. Baxley*, 744 F.2d 1452, 1458 (11th Cir. 1984) (temporary confinement in jail is particularly harmful to those who are mentally ill, exacerbating the mental problems of people detained, and lengthening treatment duration).

10.  The care Oregon State Hospital is able to offer is tailored to the needs of persons found unfit to stand trial, and fulfills constitutional requirements.  The hospital has the capacity to medicate patients, and has specially trained staff and staffing levels and programs sufficient to treat patients' mental incapacity.

11.  Persons who are found unfit to stand trial and remain in jail suffer constitutionally cognizable harm, and are entitled to prompt treatment in a rehabilitative facility.  Even short periods of incarceration of these persons can cause cognizable harm.  *See Lynch*, 744 F.2d at 1458.

12.  There is no rationalization that passes constitutional muster for unreasonably detaining persons found unfit to proceed in county jails.  The lack of funds, staff or facilities cannot justify defendants' failure to provide persons found unfit with the treatment that is necessary to attempt restoration of competency.  *See Ohlinger*, 652 F.2d at 779.  Defendants found to be unfit to proceed must be transferred as soon as practicable to a treatment facility, and should be detained only for that

period of time necessary to identify the person, determine the appropriate legal status, and effectuate

transport.

13.  Persons found unfit to proceed and held in county jails for more than a brief period suffer

delays in receiving restorative treatment, which delays their return to competency, prolonging their

criminal cases and making it difficult for their attorneys to learn from their clients about the crime or

crimes charged, to identify witnesses, and to enter into plea negotiations.  It also delays the statutorily

mandated competency review (required to be held within 60 days of entering the hospital).

Accordingly, defendants' procedures and practices also violate the procedural due process rights of

persons found unfit to proceed.

14.  Defendants are aware their policies and conduct results in delays (which are sometimes

substantial) in fulfilling court orders directing the hospitalization of persons found unable to proceed, and

they are aware that such persons receive inadequate care and are possibly harmed while detained in

county jails awaiting admission.  Nevertheless, defendants have refused to pursue or adopt policies to

ensure prompt admission and treatment for these persons.  This demonstrates a deliberate indifference

to these persons' health, safety and constitutional rights.  *See Estelle v. Gamble*, 429 U.S. 97, 104-05

(1976).  Moreover, defendants' policies are a substantial departure from professionally accepted

minimum standards for treatment of incompetent individuals for whom defendants are responsible.  *See*

*Youngberg*, 457 U.S. at 323; *see also Turay v. Seling*, 108 F. Supp. 2d 1148 (W.D. Wash. 2000),

*aff'd sub nom. Sharp v. Weston*, 233 F.3d 1166 (9th Cir. 2000).

15.  This court concludes defendants have violated, and are violating, the due process rights of

criminal defendants who are determined by the Circuit Courts of Oregon to be unfit to proceed to trial

13 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

because of mental incapacities under ORS § 161.370(2).  Such persons have a right to a reasonably

timely transport to a treatment facility pursuant to the expectations and directions of the court issuing

findings and orders under that statute.

**ACCORDINGLY, IT IS SO ORDERED:**

This court orders defendants to ensure that persons who are declared unable to proceed to trial

pursuant to ORS § 161.370(2) be committed to the custody of the superintendent of a state hospital

designated by the Department of Human Services as soon as practicable.  This shall be fulfilled by

providing full admission of such persons into a state mental hospital or other treatment facility so

designated by the Department of Human Services, in accordance with Oregon's existing applicable

statutory provisions.  These admissions must be done in a reasonably timely manner, and completed not

later than seven days after the issuance of an order determining a criminal defendant to be unfit to

proceed to trial because of mental incapacities under ORS § 161.370(2).

DATED this 9th  day of May, 2002.


/s/ Owen M. Panner

_____
          Owen M. Panner
United States District Court Judge

14 - FINDINGS OF FACT AND CONCLUSIONS OF LAW