ELLEN F. ROSENBLUM
Attorney General
CARLA A. SCOTT #054725
Senior Assistant Attorney General
SHEILA H. POTTER #993485
Deputy Chief Trial Counsel
CRAIG M. JOHNSON #080902
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Carla.A.Scott@doj.state.or.us
        Sheila.Potter@doj.state.or.us
        Craig.M.Johnson@doj.state.or.us

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON, | Case No.  3:02-cv-00339-MO (Lead Case) Case No.  3:21-cv-01637-MO (Member Case) Case No.  6:22-CV-01460-MO **(Member Case)** |
| Plaintiffs, | **DEFEDNANT'S REPLY IN SUPPORT OF MOTION TO DISMISS** |
| v. | |
| JAMES SCHROEDER, in his official capacity as head of the Oregon Health Authority,[1] and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital | |
| Defendants, | |
| and | |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH LEGACY | |

---

[1] Pursuant to FRCP 25(d) Patrick Allen is automatically substituted with his successor James Schroeder.

HEALTH SYSTEM, PEACEHEALTH, and
PROVIDENCE HEALTH & SERVICES,

        Intervenors.

Case No.  3:21-cv-01637-MO (Member Case)

JAROD BOWMAN, JOSHAWN DOUGLAS-
SIMPSON,

        Plaintiffs,

        v.

DOLORES MATTEUCCI, Superintendent of
the Oregon State Hospital, in her individual
and official capacity, JAMES SCHROEDER,
Director of the Oregon Health Authority, in his
official capacity,[2] and PATRICK ALLEN in
his individual capacity,

        Defendants,

    and

LEGACY EMANUEL HOSPITAL &
HEALTH CENTER d/b/a UNITY CENTER
FOR BEHAVIORAL HEALTH LEGACY
HEALTH SYSTEM, PEACEHEALTH, and
PROVIDENCE HEALTH & SERVICES,

        Intervenors.

LEGACY EMANUEL HOSPITAL &
HEALTH CENTER d/b/a UNITY CENTER
FOR BEHAVIORAL HEALTH; LEGACY
HEALTH SYSTEM; PEACEHEALTH; and
PROVIDENCE HEALTH & SERVICES
OREGON,

Case No.  6:22-CV-01460-MC (Member Case)

        Plaintiffs,

        v.

JAMES SCHROEDER, in his official capacity
as Director of Oregon Health Authority,[3]

        Defendant.

---

[2] Pursuant to FRCP 25(d) Patrick Allen is automatically substituted with his successor James Schroeder.

[3] Pursuant to FRCP 25(d) Patrick Allen is automatically substituted with his successor James Schroeder.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 2

    I.     Plaintiffs provide no basis to conclude they have Article III standing. ................. 2

          A.    Plaintiffs lack standing for the claims they bring on their own behalf .......................................................................................... 2

          B.    Plaintiffs lack standing to bring claims for civilly committed persons. ...................................................................................... 4

               1.    Plaintiffs do not establish any injury in fact. ................................. 4

               2.    Plaintiffs are not in a close relationship with the civilly committed patients they do not want in their beds. ....................... 4

               3.    Plaintiffs establish no hinderance to civilly committed patients' ability to protect their own interests. ............................... 7

          C.    None of Plaintiffs' claims are ripe for the Court's review ........................ 8

    II.    The Amended Complaint fails to state a claim for violation of due process. ......... 9

          A.    The Amended Complaint fails to state a due process claim on behalf of civilly committed patients. ........................................... 9

          B.    The Amended Complaint fails to state a due process claim on behalf of Plaintiffs' private hospitals and health systems ....................... 11

    III.    Plaintiffs do not and cannot state any viable takings claim. ............................... 12

          A.    Plaintiffs do not allege any direct governmental appropriation of their hospital beds necessary to state a physical takings claim ................ 12

          B.    Plaintiffs do not state any viable regulatory takings claim. ..................... 14

          C.    Plaintiffs fail to establish that no adequate remedy to obtain just compensation exists, as required for injunctive relief. ............................ 15

    IV.    The claims alleging violation of Oregon statutes fail to state any claim for relief. ................................................................................................. 16

CONCLUSION .................................................................................................. 20

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

# TABLE OF AUTHORITIES

**Cases**

*Atwood v. Strickler*, No. 3:19-CV-01699-IM, 2020 WL 3549662, at *5 (D. Or. June 29, 2020) .................................................................................................................... 15

*Conner v. Branstad*, 839 F. Supp. 1346, 1351 (S.D. Iowa 1993) ................................. 9

*Doe v. Shibinette*, Case No. 18-cv-1039-JD, 2021 WL 27009, at *1 (D. N.H. Jan. 4, 2021) ................................................................................................................... 3, 4

*Griswold v. Connecticut*, 381 U.S. 479 (1965) ............................................................. 5

*Isaacson v. Horne*, 716 F.3d 1213 (9th Cir. 2013) ....................................................... 5

*Jachetta v. United States*, 653 F.3d 898, 909 (9th Cir. 2011) ...................................... 16

*Knick v. Twp. of Scott*, 149 S. Ct. 2162, 2172 (2019) ................................................. 15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ........................................... 2

*New York State National Organization for Women v. Terry*, 886 F.2d 1339 (2d Cir. 1989) ......................................................................................................................... 6

*Ohlinger v. Watson*, 652 F.2d 775 (9th Cir. 1980) ..................................................... 10

*Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003) .................... 10

*Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004) ............................ 5

*Pennsylvania Psychiatric Society v. Green Spring Health Services, Inc.*, 280 F.3d 278 (3d Cir. 2002) ........................................................................................................ 6, 7

*Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390 (6th Cir. 1987) ............... 6

*Powers v. Ohio*, 499 U.S. 400, 411 (1991) .................................................................. 4

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984) ......................................... 15

*Sharp v. Weston*, 233 F.3d 1166 (9th Cir. 2000) ....................................................... 10

*Sierra Med. Serv. All. v. Kent*, 883 F.3d 1216, 1226 (9th Cir. 2018) ........................ 12, 13, 14, 15

*Singleton v. Wulff*, 428 U.S. 106 (1976) ...................................................................... 5

*Siskiyou Hosp., Inc. v. Cal. Dep't of Health*, Case No. 2:20-cv-00487-TLN-KJN, 2022 WL 118409, at *4-*5 (E.D. Cal. Jan. 12, 2022) ........................................................ 6

*Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218 (6th Cir. 1991) ..................... 6

Page ii

*Youngberg v. Romeo* 457 U.S. 307, 319 (1982) .................................................................... 9, 10

**Statutes**

ORS 161.370 ................................................................................................................ 18

ORS 426.060 ................................................................................................................ 17

ORS 426.060(2) ...................................................................................................... 17, 18

ORS 426.130(2) ............................................................................................................. 9

**Rules and Regulations**

OAR 309-032-0870(2) .................................................................................................. 17

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

## INTRODUCTION

The Amended Complaint should be dismissed for lack of subject matter jurisdiction. Plaintiffs do not provide any basis to conclude that they have standing to assert rights of patients whom they want out of their hospital beds. As explained below, the cases they cite for third-party standing are all inapposite. Plaintiffs also do not explain how the allegations present any concrete, ripe controversy for this Court to perform any legal analysis with respect to the claims for relief alleged on Plaintiffs' own behalf or on behalf of unspecified civilly committed patients.

The Amended Complaint should also be dismissed for failure to state a claim. Plaintiffs' arguments do not establish that they state any viable claim for relief. On the merits of the substantive due process claim that they bring on their patients' behalf, Plaintiffs rely on a legal standard that has been applied by the Ninth Circuit only in cases involving indefinite incarceration in jails or prison that called for a different standard of treatment. That standard does not apply to persons civilly committed for limited duration who are not in jail or prison. Under the applicable standard (long-established by the Supreme Court), the due process clause guarantees only minimally adequate care to civilly committed patients outside the incarceration context. Plaintiffs do not allege that they are *not* providing civilly committed patients with that standard of care and so the due process claim they bring on their patients' behalf necessarily fails.

Fatal to the due process and takings claims that Plaintiffs bring on their own behalf is that the Amended Complaint does not allege any facts or law to plausibly support a conclusion that the Oregon Health Authority (OHA) is forcing them to accept and treat civilly committed patients. Plaintiffs also do not point to any well-pleaded facts from which it could be plausibly concluded that OHA's policy or conduct regarding civilly committed patients violates any Oregon laws relating to the civil commitment process in Oregon. At most, Plaintiffs allege that placements other than in their beds would be better for civilly committed patients, but that is insufficient to state any viable claim for relief.

Page 1 -   DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Because Plaintiffs have not explained how they might amend further to cure the defects in the Amended Complaint, Defendant respectfully asks that this Court dismiss it with prejudice.

## ARGUMENT

### I.    Plaintiffs provide no basis to conclude they have Article III standing.

Plaintiffs bring two categories of claims in this case—claims on their own behalf and claims on behalf of civilly committed patients not before the Court.  OHA moved to dismiss both categories of claims for lack of standing and on the grounds that they are not ripe for the Court's review.  As discussed below, Plaintiffs' response to OHA's motion relies on unwarranted deductions of fact regarding their alleged injuries and unwarranted legal conclusions drawn from inapposite cases regarding the requirements for standing.

### A.    Plaintiffs lack standing for the claims they bring on their own behalf.

To have standing, a plaintiff must allege that it suffered an "injury in fact" (that is, the invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent"), and that injury must be fairly traceable "to the challenged action of the defendant." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Here, Plaintiffs lack standing for the claims they bring on their own behalf because they have not alleged any actual injuries that are fairly traceable to Defendant.  As set forth in Defendant's moving papers, Plaintiffs voluntarily sought out the opportunity to treat civilly committed patients, obtaining Certificates of Approval from OHA to do so.  Mot., Dkt. #30, pp. 11-12.  Plaintiffs' Amended Complaint contains no allegations setting forth any rule, regulation, law, or other requirement that obligates them to maintain those active certificates or to accept civilly committed patients.  *Id.*

In response to OHA's motion, Plaintiffs do not dispute that they voluntarily undertook the steps necessary to obtain Certificates of Approval to treat civilly committed patients.  Instead, they dispute the scope of the services that they applied to provide.  Plaintiffs contend that they "sought only to provide *emergency and acute psychiatric care* to civilly committed patients." Resp., Dkt. #43, p. 15 (emphasis original).  But the intended scope of Plaintiffs' care for civilly

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

committed patients is immaterial because Plaintiffs have not established that they are under any obligation imposed by OHA to continue to provide any care at all. Although Plaintiffs argue that OHA is leaving civilly committed patients in their care longer than Plaintiffs intended when they applied for the certificates, they point to no allegations in the Amended Complaint that would establish that OHA is forcing them to admit or to keep civilly committed patients. There are none. Plaintiffs have put forward no facts that suggest, let alone establish, that OHA prevents them from stopping admissions of civilly committed patients to their hospitals at any time or that they are prohibited from discharging them.

The fact that Plaintiffs voluntarily undertook the treatment of civilly committed patients distinguishes this case from *Doe v. Shibinette*, which Plaintiffs cite in support of their argument that they have standing for their claims. 16 F.4th 894 (1st Cir. 2021). In *Shibinette*, hospital plaintiffs alleged that the Commissioner of the New Hampshire Department of Health and Human Services "require[d] the hospitals to examine, evaluate, and board psychiatric patients, who are subject to involuntary emergency admission ('IEA') certification, until such time as they are transported to a designated receiving facility." Case No. 18-cv-1039-JD, 2021 WL 27009, at *1 (D. N.H. Jan. 4, 2021). The hospitals alleged that "the Commissioner's practice of boarding IEA-certified persons in their emergency departments" violated their constitutional rights. *Id.* In upholding the district court's denial of the Commissioner's motion to dismiss the hospitals' claims for lack of standing, the First Circuit noted that the Commissioner "does not dispute" that the hospitals "allege[d] an injury in fact" and further stated that it could not "see how she could" because the hospitals alleged that they were "unlawfully *forced* to retain involuntarily admitted patients for long periods of time in their facilities and thus to provide them with rooms, medical care, food, security, and support from staff, who also need to repeatedly fill out successive IEA certificates every three days." 16 F.4th at 901 (emphasis added). The First Circuit concluded that the Commissioner could not plausibly argue that the hospitals' alleged injuries were not fairly traceable to her where there was an "*undisputed . . . state law requirement* for private

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

hospitals in New Hampshire to have open emergency rooms and to treat patients . . . ."  *Id.* at 902 (emphasis added).

Here, there is no such state law requirement.  Unlike in *Shibinette*, Plaintiffs point to no rules, regulations, laws, or any other requirements that "force[s them] to retain involuntarily admitted patients" or "to treat patients."  *Id.* at 901-02.  Plaintiffs voluntarily undertook to provide the services now in dispute.  The fact that Plaintiffs contend that they are providing services beyond the scope of what they originally intended does not make those services obligatory.  Plaintiffs—who are under no OHA-imposed obligation to continue to provide the disputed services—cannot use those same services to establish an "actual injury" under Article III that is fairly traceable to Defendant.

### B.      Plaintiffs lack standing to bring claims for civilly committed persons.

Plaintiffs do not dispute that to have standing for the claims that they bring on behalf of civilly committed patients they must satisfy three criteria:  (1) they must have "a 'concrete interest' in the outcome of the dispute (in other words, . . . 'an injury in fact')"; (2) they must have "a 'close relationship' with the third party whose rights are being asserted"; and (3) "there must exist some hinderance to the third party's ability to protect his or her own interests."  Resp., Dkt. #43, p. 18 (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).  For the reasons below, the Court should reject Plaintiffs' arguments that they have satisfied these criteria.

### 1.      Plaintiffs do not establish any injury in fact.

Plaintiffs have not established an injury in fact for the same reasons they have not established an actual injury that is fairly traceable to Defendant, as just discussed.

### 2.      Plaintiffs are not in a close relationship with the civilly committed patients they do not want in their beds.

Plaintiffs' arguments that they are in a close relationship with the civilly committed patients that they are trying to get out of their beds relies on unwarranted legal conclusions drawn from inapposite cases.

Page 4 -    DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
CAS/sv3/ 728069834

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

First, Plaintiffs cite four cases in support of the proposition that "both the Ninth Circuit and Supreme Court have repeatedly held that doctors have standing to pursue rights on behalf of their patients." Resp., Dkt. #43, p. 19. The four cases to which Plaintiffs cite—*Singleton v. Wulff*, 428 U.S. 106 (1976); *Griswold v. Connecticut*, 381 U.S. 479 (1965); *Isaacson v. Horne*, 716 F.3d 1213 (9th Cir. 2013); and *Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004)—each involve physicians providing abortion care and family planning services who were challenging state regulations impeding patient access to their care and services. *See Singleton*, 428 U.S. at 108 (physicians challenging constitutionality of state statute excluding abortions from Medicaid benefits in some circumstances); *Griswold*, 381 U.S. at 481 (physician challenging constitutionality of statute forbidding contraceptives); *Isaacson*, 716 F.3d at 1217 (physicians challenging constitutionality of Arizona statute prohibiting "except in a medical emergency, abortion of a fetus determined to be of a gestational age of at least twenty weeks"); *Parenthood of Idaho, Inc.*, 376 F.3d at 914 (obstetrician-gynecologist challenging parental consent statute alleged to unconstitutionally interfere with patients' abortion decisions).

The four "doctor-patient" cases that Plaintiffs cite are distinguishable from the case at bar for two reasons. First, Plaintiffs are not doctors. They are not in a physician-patient relationship with any of the civilly committed patients whose rights they are asserting. Instead, Plaintiffs own and operate private hospitals, which in turn employ doctors, who in turn have direct relationships with patients. Thus, Plaintiffs are at least two steps removed from the civilly committed patients whose rights they purport to assert, whereas the doctors in the cited cases had direct relationships with their patients. Second, the physicians in the cited cases were pressing claims to preserve or expand their patients' access to abortion care and family planning services. Here, Plaintiffs are not complaining that state regulations are impeding their ability to treat civilly committed patients. Instead, Plaintiffs want to *limit* their treatment of civilly committed patients. Put simply, they want civilly committed patients out of their beds.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Next, Plaintiffs argue that "courts of other jurisdictions have extended the doctor-patient relationship to relationships between patients and organization-providers." Resp., Dkt. #43, p. 19. Plaintiffs cite four cases in support of that argument: *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390 (6th Cir. 1987); *Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218 (6th Cir. 1991); *New York State National Organization for Women v. Terry*, 886 F.2d 1339 (2d Cir. 1989); and *Pennsylvania Psychiatric Society v. Green Spring Health Services, Inc.*, 280 F.3d 278 (3d Cir. 2002).

Three of the cases cited are inapposite because, like the cases just discussed, they each involved abortion care. *See Planned Parenthood Ass'n*, 822 F.2d at 1396 (holding an abortion clinic had standing to challenge a local ordinance concerning the disposal of aborted fetuses); *Volunteer Med. Clinic, Inc.*, 948 F.2d at 223 (holding an abortion clinic had standing to bring claims against protestors interfering with "the interests of the clinic and those of the women on whose behalf th[e] suit [wa]s brought"); *New York State Nat'l Org. for Women*, 886 F2d at 1347-48 (holding that health care clinics and abortion providers had standing to bring action against antiabortion organization and abortion protestors interfering with patient access to abortions). The cited abortion clinic cases are distinguishable from this case because the clinics—like the physicians providing abortion care and family planning services—were challenging impediments to abortion care that they would otherwise provide. In other words, their interests were aligned with those of their patients. Here, by contrast, Plaintiffs want to strictly limit the amount of time that civilly committed patients spend in their care. Thus, their interests are not aligned. *See, e.g., Siskiyou Hosp., Inc. v. Cal. Dep't of Health*, Case No. 2:20-cv-00487-TLN-KJN, 2022 WL 118409, at *4-*5 (E.D. Cal. Jan. 12, 2022) (holding that a hospital "essentially seeking to foreclose" its relationship to involuntarily admitted psychiatric patients could not establish that it was in a close relationship to those patients because their interests were not aligned).

The final case that Plaintiffs cite, *Pennsylvania Psychiatric Society v. Green Spring Health Services, Inc.*, is inapposite because the plaintiff in that case was not a health care

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

organization at all. 280 F.3d at 280. It was a professional organization *suing* health care organizations on behalf of its member psychiatrists and their patients. *Id.* In *Pennsylvania Psychiatric Society*, the Third Circuit held that the psychiatrists' association had standing to sue managed care organizations over their alleged refusal to authorize necessary treatment for the associations' members' patients. *Id.* 291. The case simply does not stand for the proposition that "the doctor-patient relationship [extends] to relationships between patients and organization-providers." Resp., Dkt. #43, p. 19.

The Court should reject Plaintiffs' argument that they are in a close relationship with the civilly committed patients, because Plaintiffs' argument relies on unwarranted legal conclusions drawn from inapposite cases. The cases discussed in Defendant's moving papers—as well as those discussed in Disability Rights Oregon's Amicus Brief (Dkt. #42)—control. Plaintiffs lack standing to assert claims on behalf of civilly committed patients because they are not in a close relationship with them of the kind that would ensure that Plaintiffs would appropriately represent their interests.

### 3. Plaintiffs establish no hinderance to civilly committed patients' ability to protect their own interests.

Finally, third-party standing requires a litigant to establish some hindrance to the third party's ability to protect his or her own interests. As set forth in Defendant's moving papers, Plaintiffs cannot establish this criterion for third-party standing for three reasons: (1) Plaintiffs' only allegation regarding "hinderance" in the Amended Complaint is a single conclusory footnote that "civilly committed patients have no one to advocate on their behalf because Oregon's civil commitment scheme does not provide them with counsel after the point of commitment" (Am. Compl., Dkt. #28, ¶ 24 n.1); (2) Plaintiffs' conclusory footnote ignores Oregon law, which provides civilly committed individuals with counsel after the point of commitment (Resp., Dkt. #30, p. 17); and (3) civilly committed patients have brought lawsuits challenging their placements before (*Id.*, p. 17-18). Disability Rights Oregon addresses this same issue in its Amicus Brief. (Amicus Brief, Dkt. #42, pp. 21-23).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

In their response brief, Plaintiffs contend that civilly committed patients are hindered in pressing their own claims due to privacy concerns, "the likelihood that their claims will become moot before the litigation resolves," and the allegedly "insurmountable" burden that "many patients" face in "finding and retaining counsel." Resp., Dkt. #43, pp. 22-24. The Court must reject those conclusory (and hypothetical) statements—none of which are alleged in Plaintiffs' Amended Complaint—because they are not born out by any facts. As detailed in OHA's moving papers, Oregon law not only provides civilly committed patients with counsel past the point of commitment, but it also provides an expedited process by which they may challenge the fact or conditions of their confinement, with court-appointed counsel. Mot., Dkt. #30, p. 17. Accordingly, Plaintiffs do not meet the final requirement for third-party standing because they have not established that civilly committed patients are hindered in their ability to protect their own interests.

### C.    None of Plaintiffs' claims are ripe for the Court's review.

Plaintiffs' claims are not ripe for the Court's review because the declaratory and injunctive relief that they are seeking rests on a fiction: that they are "forced" to treat civilly committed patients. Plaintiffs seek a declaration that OHA "force[s] community hospitals to treat civilly committed individuals indefinitely, thus occupying and taking their property" and injunctive relief "enjoin[ing] OHA from . . . continuing to take hospitals' property without just compensation." (Am. Compl., Dkt. #28, pp. 38-39). But there are no well pleaded allegations in the Amended Complaint that Plaintiffs are in any way *in fact* or *by law* forced to treat civilly committed patients. In response to Defendant's ripeness argument, Plaintiffs incorporate their argument that they have Article III standing to assert claims on their own behalf. Resp., Dkt. #43, p. 24 ("The Court can readily reject this argument for all the same reasons above . . . ."). For the same reasons set forth above, Plaintiffs have neither alleged nor established that there is any rule, regulation, law, or other requirement that "forces" them to treat civilly committed patients. Their claims for declaratory and injunctive relief are not ripe for the Court's review.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

II.    **The Amended Complaint fails to state a claim for violation of due process.**

Plaintiffs bring the first two claims for relief in this case under the Fourteenth Amendment's Due Process Clause. Plaintiffs assert the first claim on behalf of civilly committed patients and the second claim on behalf of "community hospitals." OHA moved against both claims on the grounds that they fail to state a cognizable claim for relief.

A.    **The Amended Complaint fails to state a due process claim on behalf of civilly committed patients.**

OHA moved to dismiss the due process claim alleged on behalf of civilly committed patients on the grounds that Plaintiffs fail to allege that OHA's conduct, policy, or practice infringes civilly committed patients' constitutionally protected liberty interests. Although Plaintiffs allege in conclusory fashion that "OHA's conduct, policy, and practice" infringes civilly committed persons' "liberty interest in restorative treatment" and causes them to "remain confined in . . . overly-restrictive settings" (Am. Compl., Dkt. #28, ¶ 56), civilly committed persons do not have a constitutional right to optimal treatment or to treatment in the least restrictive setting. *Youngberg v. Romeo* sets forth the constitutional minimum, and civilly committed patients are guaranteed "minimally adequate care and treatment," not optimal treatment. 457 U.S. 307, 319 (1982). And there is no federal right to treatment in the least restrictive setting. *Conner v. Branstad*, 839 F. Supp. 1346, 1351 (S.D. Iowa 1993) ("Following the Supreme Court's decision in *Youngberg*, several circuits have uniformly concluded that there is no federal right to treatment in the least restrictive setting." (citing cases)).

In their response brief, Plaintiffs accuse OHA of "repudiat[ing] a generation of Ninth Circuit authority about the rights of civilly committed individuals." (Resp., Dkt. #43, p. 2, n.2). Not so. None of the three cases that Plaintiffs put forward as setting forth the constitutional minimum standard of treatment for civilly committed individuals dealt with civilly committed individuals like those whom Plaintiffs are treating (that is, individuals with mental illnesses who are civilly committed for treatment "for a period of time not to exceed 180 days," ORS 426.130(2)). Instead, two of the cases that Plaintiffs cite, *Ohlinger v. Watson*, 652 F.2d 775 (9th

Page 9 -    DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Cir. 1980) and *Sharp v. Weston*, 233 F.3d 1166 (9th Cir. 2000), dealt with the treatment of sex offenders serving indeterminate prison sentences (*Ohlinger*) and persons civilly committed as sexually violent predators (*Sharp*).  The third, *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003), dealt with mentally incapacitated criminal defendants, otherwise known in this litigation as the "aid and assist" population—and specifically those awaiting admission while in jail.

Each of these three cases involved exigencies absent here that called for a different standard of treatment.  For example, in *Ohlinger*, without treatment, individuals designated as sexually violent predators "could be held indefinitely as a result of their mental illness." *Ohlinger*, 652 F.2d at 778; *c.f.*, *Sharp*, 233 F.3d at 1172 (holding that *Ohlinger* set forth "[t]he appropriate legal standard for analyzing the constitutionality of" Washington's Special Commitment Center for persons civilly committed as sexually violent predators").  In *Mink*, the mentally incapacitated criminal defendants were being held in county jails.  322 F.3d at 1122 ("Holding incapacitated criminal defendants in jail for weeks or months violates their due process rights because the nature and duration of their incarceration bear no reasonable relation to the evaluative and restorative purposes for which courts commit those individuals.").

Here, by contrast, the relevant population is comprised of civilly committed individuals being treated in Plaintiffs' hospitals for limited periods of time.  Indeed, they are receiving care in hospitals licensed and certified to provide the kind of care that civilly committed persons need. They are neither sex offenders serving out potentially indefinite periods of civil confinement nor are they spending time in jail or prison.  Under the relevant standard, they are guaranteed "minimally adequate care and treatment." *Youngberg*, 457 U.S. at 319.  As set forth in OHA's moving papers, that standard is a deferential one.  Plaintiffs' Amended Complaint contains no well pleaded allegations from which it could be concluded that civilly committed patients are not receiving minimally adequate treatment.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**B.    The Amended Complaint fails to state a due process claim on behalf of Plaintiffs' private hospitals and health systems.**

OHA moved against the due process claim that Plaintiffs bring on their own behalf for two reasons.  First, Plaintiffs' substantive due process claim is subsumed by their takings claim. Second, Plaintiffs have not properly alleged the deprivation of a constitutionally protected interest.

In response to the first argument, Plaintiffs acknowledge that "some substantive due process claims based on deprivations of property may be subsumed within takings claims if the due process claim alleges no more than a recognized application of the Takings Clause."  Resp., Dkt. #43, p. 29 (citing cases).  Plaintiffs argue that this rule does not apply to them because they "have more than sufficiently alleged that OHA has engaged in arbitrary, conscience-shocking, and deliberately indifferent conduct." *Id.*  According to Plaintiffs, that conduct is entrusting them with the treatment of civilly committed patients, which allegedly requires them to "dedicate significant resources to caring for [civilly committed] patients who have no reason to be in acute care settings at the cost of treating other patients." *Id.* at pp. 29-30.  In other words, OHA's purportedly "conscience shocking" behavior is sending patients to hospitals that volunteered to take them.  Plaintiffs put forward no allegations or case law from which it could be concluded that OHA's conduct shocks the conscience or is so arbitrary or deliberately indifferent that it creates a cause of action that is distinct from their takings claim.  Thus, Plaintiffs' substantive due process claim is subsumed within their takings claim for the reasons stated in OHA's motion to dismiss.

In response to the second argument, Plaintiffs strangely claim that "Health Systems' due process claims are based on deprivations of Health Systems' *property* interest rather than *liberty* interests." *Compare*, Resp., Dkt. #43, p. 31 (emphasis original), *with* Motion, Dkt. #30, p. 24 ("Plaintiffs have not properly alleged the 'deprivation of a constitutionally protected liberty *or property interest*' required for [a due process] claim." (emphasis added)).  Regardless, Plaintiffs cannot establish that OHA's conduct, policies, or practices infringe any property interest

Page 11 -  DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

because—as discussed above and in Defendant's moving papers—Plaintiffs voluntarily undertook to treat civilly committed patients and that they have not alleged any government barrier that would prevent them from ceasing to do so at any time.

## III.    Plaintiffs do not and cannot state any viable takings claim.

Plaintiffs assert that OHA's conduct in not having other available placements for civilly committed patients constitutes a *per se* physical takings and a regulatory takings. *See* Response, Dkt. #43 at pp. 43-44. As explained below, Plaintiffs conflate the requirements for the two types of takings claims and fail to establish a viable claim under either theory.

### A.    Plaintiffs do not allege any direct governmental appropriation of their hospital beds necessary to state a physical takings claim.

The *per se* physical takings claims fail as a matter of law because (aside from generalized sweeping conclusions) the Amended Complaint does not include any well-pleaded facts to show that OHA is in any way directly forcing or requiring them to admit and treat civilly committed persons to enable a conclusion that OHA is physically appropriating any of their hospital beds or other personal property for public use. Plaintiffs plead no facts or law upon which this Court could plausibly draw that conclusion. Put another way, because OHA does not force or require Plaintiffs to accept and treat civilly committed patients, there is no direct physical appropriation required to support a *per se* takings claim. *See generally Sierra Med. Serv. All. v. Kent*, 883 F.3d 1216, 1226 (9th Cir. 2018).

The Ninth Circuit's opinion in *Sierra Medical Services* illustrates precisely why Plaintiffs' takings claim fail here, regardless of whether those claims are based on *per se* physical or regulatory takings. In that case, the court evaluated whether a California mandatory-care statute requiring ambulance companies to render emergency services "without first questioning the patient or any other person as to his or her ability to pay" effected either a regulatory or physical takings of the plaintiffs' ambulances and associated personal property. Analyzing first whether this statute effected a *per se* physical taking of personal property, the Ninth Circuit

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

concluded that it did not, reasoning that (at most) it could effect a regulatory taking:

> The paradigmatic taking requiring just compensation is a *direct* government appropriation or physical invasion of private property…If [the California mandatory-care statute] effects a taking, it is a regulatory one because [the California Department of Health Care Services] does *not directly appropriate* the Plaintiffs' ambulances or other personal property through the mandatory-care provision. [The California Department of Health Care Services] instead regulates how the Plaintiffs can use their property.

*Id.* (emphasis added; internal citations and quotation marks omitted).

For the same reason, Plaintiffs' physical takings claims fail here. Indeed, their claim is even weaker than that in *Sierra Medical Services*. As noted above, the Amended Complaint alleges only abstract state conduct, not any statute, rule, or other state policy dictating how Plaintiffs may use their beds, let alone directly appropriating them. Instead, they assert loosely that "because OHA causes civilly committed individuals to occupy acute care hospital beds for weeks, months, and sometimes their entire 180-day commitment and recommitment periods, OHA's conduct deprives [Plaintiffs] of their hospital beds." Resp., Dkt. #43, p. 43 (citing Am. Compl. ¶ 77). But the Amended Complaint contains no well-pleaded facts (and cites no law) to show how OHA is allegedly requiring, mandating, or forcing Plaintiffs to forfeit their hospital beds to civilly committed patients.[4]

Plaintiffs point to nothing to support a conclusion that OHA requires them to admit or keep such patients for the duration of their commitment. At most, Plaintiffs allege that civilly committed patients are spending time at Plaintiffs' hospitals because of capacity issues in other types of placements. Such an attenuated causal connection (which is cut off by Plaintiffs' voluntary admission and treatment of civilly committed patients) does not amount to the type of direct, permanent appropriation required for a physical takings claim.

---

[4]All of the cases Plaintiffs cite for their a *per se* physical takings claim involve a state action that directly appropriates property (real or personal) for public use. Plaintiffs do not allege such an appropriation in this case.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**B.      Plaintiffs do not state any viable regulatory takings claim.**

As an initial matter, Plaintiffs' regulatory takings claim fails for the same reasons their due process and physical takings claims fact—they allege no facts or law that constitutes any affirmative state regulation dictating how they may use their hospital beds and related services. The regulatory takings claims fail for this reason alone.

Plaintiffs' regulatory takings claims also fail because Plaintiffs do not allege any facts necessary to apply the applicable balancing test for such a claim.  The Ninth Circuit's rejection of the regulatory takings claim based on the record in *Sierra Medical Services* also illustrates why the Amended Complaint fails to state a regulatory takings claim here.  Recognizing that "the Fifth Amendment also protects against the taking of personal property without just compensation" and that voluntary participation in a market that is subject to regulation does not by itself defeat a takings claim, the Ninth Circuit acknowledged that California's mandatory-care statute *could* give rise to a regulatory takings claim.  *Id.* at 1225.  But the court went on to explain that the record did not contain sufficient evidence required for such a claim:

> A so-called regulatory taking can also occur where government regulation of private property is so onerous that its effect is tantamount to a direct appropriation or ouster. The Supreme Court has set forth an ad hoc, factual inquiry for determining whether a regulation amounts to a taking. This inquiry analyzes (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the government action.  California's mandatory-care provision constitutes a temporary restriction on Plaintiffs' use of their property, so this balancing test applies.

> This presents an insurmountable obstacle to the Plaintiffs because they failed to produce sufficient evidence in support of their takings claim . . . . Starting with the economic-impact factor, the record simply shows that the Plaintiffs operate at a loss when they serve Medi–Cal patients. But evidence of red ink generated by serving this one segment of California's population tells us nothing about the overall economic impact of [the mandatory-care statute].

> The record is similarly lacking when it comes to the Plaintiffs' investment-backed expectations . . . .  They have not identified any distinct expectations that they had when they entered the emergency-transportation market, let alone provided evidence that [the statute] has interfered with those expectations. Nor have the Plaintiffs provided evidence or raised any arguments as to the character of the government action . . . .

Page 14 -  DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

[The statute] also does not fit into either category of per se regulatory takings identified by the Supreme Court. It does not require the Plaintiffs to sacrifice all economically beneficial uses of their property, because neither [the statute] nor Medi–Cal places any limit on the rates that the Plaintiffs can charge to non-Medi–Cal patients. And it does not constitute permanent physical occupation.

*Id.* at 1225-1226 (internal quotations marks, citations, and alterations omitted).

As in *Sierra Medical Services*, Plaintiffs fail to supply the requisite facts necessary for the regulatory takings balancing test; indeed, their response brief does not address these elements at all. Plaintiffs do not identify any distinct investment-backed expectations that they had when they entered market to admit civilly committed patients, let alone describe to any degree the economic impact of the alleged state conduct or the extent to which that conduct has interfered with any distinct investment-backed expectations. Nor do they allege that OHA has denied them the ability to put their hospitals or their beds to any economically viable use. Plaintiffs do not allege that they are operating at any loss as a result of admitting and treating civilly committed patients. For these reasons, Plaintiffs have not pleaded any regulatory takings claim.

### C.     Plaintiffs fail to establish that no adequate remedy to obtain just compensation exists, as required for injunctive relief.

Even if Plaintiffs had a viable takings claim (and they do not), the relief they seek is not legally available on the facts alleged here. Plaintiffs seek only abstract injunctive relief to stop the alleged takings; they do not seek just compensation.

"The Supreme Court has held that '[e]quitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking.'" *Atwood v. Strickler*, No. 3:19-CV-01699-IM, 2020 WL 3549662, at *5 (D. Or. June 29, 2020) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984)). "'As long as just compensation remedies are available . . . injunctive relief will be foreclosed.'" *Id.* (quoting *Knick v. Twp. of Scott*, 149 S. Ct. 2162, 2172 (2019)). "Because the Constitution requires a particular remedy under the Takings Clause—the payment of just compensation—the state 'is required to provide that remedy in its own courts, notwithstanding sovereign immunity.'" *Id.* (quoting *Jachetta v. United States*, 653

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

F.3d 898, 909 (9th Cir. 2011)).  Accordingly, compensation remedies are available to Plaintiffs

in a state court proceeding and Plaintiffs are barred from seeking injunctive relief from this Court

under their takings claims.  *See id.*

Plaintiffs argue that no adequate avenue exists for them to obtain just compensation

because the just compensation amount for each "taking" would require serial lawsuits and would

be relatively "small"[5] compared to the cost of litigation.  Resp., Dkt. #43, p. 37.  But they cite no

law in support of this rationale, which should be rejected as contrary to longstanding takings

jurisprudence.  Taken to its logical conclusion, Plaintiffs' argument would mean that anytime

just compensation for a taking would be outweighed by the cost of seeking relief in state court, a

plaintiff could get a federal court order preventing the taking in the first place.  Such a result

would turn longstanding takings law on its head.  To the extent any takings are occurring,

Plaintiffs' remedy would be limited to just compensation.  Because the only relief they seek is

not available, their takings claims do not present any claim upon which relief may be granted.

## IV.     The claims alleging violation of Oregon statutes fail to state any claim for relief.

Claims 5 and 6 fail to state a claim for relief.  Plaintiffs assert that "OHA argues that

Health Systems' statutory claims fail because OHA has always acted within its statutory

authority."  Resp., p. 38, Dkt # 43.  It is true that OHA has always acted within its statutory

authority. However, the thrust of Defendant's argument is that Plaintiffs have failed to allege

sufficient facts to demonstrate Defendant's noncompliance with statutory authority.  If Plaintiffs'

factual assertions in the complaint are more than conclusory allegations, it is only by the

slimmest of margins, and these factual assertions do not demonstrate that Defendants have been

noncompliant with state law.

In its motion to dismiss, Defendant sets forth three points which Plaintiffs do not and

---

[5] The allegedly "relatively small" amount of compensation that Plaintiffs contend would be due
for each taking further undermines Plaintiffs' regulatory takings claim, which requires facts to
show the financial impact of the purported taking on their bottom line.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

cannot refute:

> (1) OHA has the express and exclusive authority to make placement determinations of civilly committed individuals under Oregon law; (2) Plaintiffs are (at their request) approved/authorized facilities at which civilly committed persons can be placed under Oregon law; and (3) federal law currently prohibits the admission of civilly committed persons to OSH unless the civilly committed person meets the criteria in the civil admission expedited admissions policy.

Mot., p. 28, Dkt #30.  Thus, even if "Health Systems have sufficiently alleged that their acute care hospitals are not appropriate facilities for long-term care…that they cannot reasonably provide long-term care… and that patients need long-term care rather than short-term acute care to succeed,"[6] Claims 5 and 6 remain inadequate.[7]  The application of Defendant's three unrefuted points is as follows.

First, OSH is currently, by federal court order, not an available resource for the placement of civilly committed individuals, unless expedited admissions criteria are met,[8]  There are no allegations that Defendant operates other hospital level of care facilities besides OSH.  It follows then that the only available resources for the placement of civilly committed individuals who require a hospital level of care are community hospitals – there are no allegations otherwise.

Second, OHA has the express and exclusive authority to make discretionary placement determinations of civilly committed individuals to the facility best able to treat the person.  ORS 426.060(2).  Even if Plaintiffs' allegations are sufficient to get past OHA's broad grant of exclusive discretionary authority generally (and they are not), there are no factual allegations

---

[6] Resp. at 39, Dkt. #43 (internal citations omitted).

[7] Plaintiffs' request for judicial notice of the applications for Certificates of Approval and the inclusion of OAR 309-032-0870(2) do not support their argument. First, this constitutes and admission that Plaintiffs sought to be a Regional Acute Care Psychiatric Service for adults – a service they then provide when OHA assigns an individual to their facility under ORS 426.060. Second, OAR 309-032-0870(2) states that the *goal* is to provide services that result in the earliest *possible* return to a less restrictive environment.  This OAR does not support Plaintiffs because: (1) there are no facts, despite Plaintiffs' frustration, that earlier returns to a less restrictive environment are possible in light of resource constraints (or even that OSH is a less restrictive environment) and (2) the OAR only sets for the *goal*: it speaks of aspirations rather than obligations or mandates.

[8] Except where civilly committed individuals meet criteria in the civil admission expedited admission policy.

Page 17 -  DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

sufficient to demonstrate a violation of state law given that OHA's placement authority is constrained by the federal court order removing OSH as a placement resource and OHA has broad and express discretionary statutory authority.

Third, Plaintiffs are (at their request) approved/authorized hospital level of care facilities at which civilly committed persons may be placed under Oregon law.  Thus, allegations that Plaintiffs "are not appropriate facilities for long-term care . . . that they cannot reasonably provide long-term care . . . and that patients need long-term care rather than short-term acute care to succeed" mean nothing in the absence of allegations that Defendant has more appropriate hospital level of care alternatives.  Where an individual needs a hospital level of care, the most appropriate and suitable facility will be a facility that is first and foremost a psychiatric hospital.

Plaintiffs are correct that OHA maintains that it has "always acted within its statutory authority."  However, this alone is a facile restatement of Defendant's arguments and Plaintiffs conveniently ignore the factual deficiencies in their Amended Complaint.  Defendant maintains that not only have they always acted within their statutory authority, but that Plaintiffs have also failed to allege sufficient specific facts to make a case for violation of Oregon law in light of Defendant's legal and resource constraints and a broad grant of discretionary authority by the legislature.

Plaintiffs have alleged insufficient facts to demonstrate that alternative hospital level of care placements exist for civilly committed individuals.  Plaintiffs have alleged insufficient facts to get past the exclusive and broad grant of discretionary authority to OHA by ORS 426.060(2).  Plaintiffs have failed to allege sufficient facts that placement of civilly committed individuals at their facilities in light of federal court orders, resource constraints, and exclusive discretionary authority constitutes a statutory violation of any kind.  For these reasons, Claims 5 and 6 should be dismissed.

Claim 7 should likewise be dismissed.  First, Plaintiffs have failed to allege that any discrimination is occurring, and this claim suffers from the same defect as Plaintiffs' other state

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

law claims – a lack of specific factual support beyond conclusory allegations. Second, Plaintiffs have further failed to allege sufficient facts to support a discrimination claim where Defendant is following federal law which mandates priority admissions for the ORS 161.370 (Aid and Assist) population and the GEI population and prohibits admission of civilly committed individuals.[9] Second, Plaintiffs have further failed to allege sufficient facts to support a discrimination claim where Defendant is following federal priority admissions law for the GEI and ORS 161.370 (Aid and Assist) populations while limiting admission of civilly committed individuals, except where they meet expedited admission criteria.

As Defendant stated in the Motion to Dismiss: "Plaintiffs cannot demonstrate and do not allege that placement or delivery of a civilly committed patient to an authorized facility (*i.e.* one of their community hospitals) constitutes a discriminatory denial or restriction of care." Mot., p. 28, Dkt #30. This assertion does not present a question of fact if no specific facts of discrimination or denial or restriction of care is alleged as a result thereof. Plaintiffs cannot create a question of fact or preferential inference from conclusory allegations.

Finally, as this Court is aware, this Court has prohibited Defendant from admitting civilly committed individuals to OSH, except for individuals which meet criteria in the civil admission expedited admission policy. Dkt. #271. Thus, even if Plaintiffs had alleged sufficient facts to support discrimination, and they have not, Defendant is not discriminating based on a civilly committed individuals' disability. Rather Defendant is making admission decisions as compelled by federal law.

For all of these reasons, Claims 5, 6 and 7 should be dismissed.

## V. The Eleventh Amendment bars nominal damages.

Plaintiffs do not make any argument in response to OHA's motion to dismiss the claims for nominal damages based on Eleventh Amendment immunity. The claims for nominal

---

[9] Except where civilly committed individuals meet criteria in the civil admission expedited admission policy.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

damages must be dismissed for the reasons stated in OHA's motion to dismiss.  *See* Dkt. #30, p. 29.

## CONCLUSION

Plaintiffs lack standing and fail to state any viable claim for relief.  They fail to explain how amending their complaint might cure these defects.  OHA, therefore, respectfully asks that this Court dismiss the Amended Complaint with prejudice.

DATED February 16 , 2023.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

*s/ Carla A. Scott*
CARLA A. SCOTT #054725
Senior Assistant Attorney General
SHEILA H. POTTER #993485
Deputy Chief Trial Counsel
CRAIG M. JOHNSON #080902
Senior Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Carla.A.Scott@doj.state.or.us
Sheila.Potter@doj.state.or.us
Craig.M.Johnson@doj.state.or.us
Of Attorneys for Defendant

Page 20 -  DEFEDNANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
        CAS/sv3/ 728069834

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000