**Jesse Merrithew**, OSB No. 074564
Email: jesse@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

Attorney for Plaintiff,
Metropolitan Public Defender Services, Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **OREGON ADVOCACY CENTER, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON**, <br><br> Plaintiffs, <br><br> v. <br><br> **BOBBY MINK, Director of the Department of Human Services, in his official capacity, and, STANLEY MAZUR-HART, Superintendent of the Oregon State Hospital, in his official capacity**, <br><br> Defendants. | Case No.: 3:02-cv-00339-PA <br><br> **PLAINTIFF METROPOLITAN PUBLIC DEFENDER SERVICES'S MOTION FOR FINDING OF CONTEMPT, TO ALLOW DISCOVERY, AND FOR EXPEDITED HEARING** |

## LR 7-1 CERTIFICATION

Undersigned counsel conferred with counsel for the parties to be substituted (Patrick Allen and Dolores Matteucci), Renee Stineman. The parties were not able to resolve this dispute.

## MOTION

Plaintiff Metropolitan Public Defender Services, Inc. (hereinafter "MPD") moves this Court for a finding of contempt for violating this Court's permanent injunction (Dkt. No. 51). Defendants' successors-in-interest have admitted in sworn testimony that they have been violating this Court's injunction since October 2018.[1] Defendants conceded that they continue to violate this Court's injunction and that there is little hope that they will cease violating this Court's injunction in the near future. Defendants also admitted that they are aware of this Court's injunction, aware that they were violating that injunction for the past seven months, and yet have made no effort to return to this Court and ask that the injunction be modified. Therefore, MPD moves this Court to:

1.  Find defendants in contempt based upon their sworn statements;

2.  Allow plaintiff to obtain limited discovery from defendants in advance of a hearing, and;

3.  Set an expedited hearing to determine:

    a.  The necessary remedial sanctions to punish the defendants and compensate plaintiffs and those effected by their contempt for their injuries;

    b.  The necessary remedy to stop the ongoing violations, prevent future violations, and compensate any victims of future violations.

---

[1] *See* plaintiff's concurrently filed *Motion to Substitute Defendants*. Except where necessary to explain historical facts, plaintiff refers to "defendants" throughout this brief as the new defendants: Patrick Allen and Dolores Matteucci.

Page 2 –PLAINTIFF METROPOLITAN PUBLIC
DEFENDER SERVICES'S MOTION FOR FINDING OF
CONTEMPT, TO ALLOW DISCOVERY, AND FOR
EXPEDITED HEARING

# BACKGROUND

In 2002, plaintiffs filed a complaint against Bobby Mink, then the directory of the Department of Human Services[2], and Stanley Mazur-Hart, then the superintendent of the Oregon State Hospital ("OSH")[3]. They sued the defendants in their official capacities only, seeking injunctive relief. Their claim was that the defendants were violating the due process rights of criminal defendants who had been ordered committed to the state hospital, but were being held in jail awaiting transport for inordinate amounts of time. Following a court trial (Dkt. No. 37), Judge Panner agreed. *See Findings of Fact & Conclusions of Law*, Dkt. No. 47 (hereinafter "Findings"). Judge Panner entered a permanent injunction, requiring defendants to admit patients "not later than seven days after the issuance of [the] order… ." *Judgment*, Dkt. No. 51. Judge Panner retained jurisdiction in this Court to enforce the injunction. *Id.*

Defendants requested a stay of the order. Dkt. No. 49. Judge Panner denied that request. Dkt. No. 65. Defendants appealed to the Ninth Circuit, and the Ninth Circuit upheld the judgment in all respects. *Or. Advocacy Ctr. v. Mink*, 332 F.3d 1101 (9th Cir. 2003). At no time since have the defendants or any of their successors in interest returned to this Court to seek modification of the injunction. The law established in *Mink* is now the settled law of this circuit. *See, e.g., Trueblood v. Wash. Dep't. Social & Health Serv.*, 822 F.3d 1037 (2016).

While the law has not changed since this Court issued its injunction, our understanding of the damage done to individuals suffering from mental illness and going untreated in jails has. At

---

[2] At the time plaintiffs filed their complaint, DHS was the agency in charge of the state hospital. That portion of DHS's duties was carved out with the creation of the Oregon Health Authority in 2009. The current director of the Oregon Health Authority is Patrick Allen.

[3] The current superintendent of OSH is Dolores "Dolly" Matteucci.

LEVI MERRITHEW HORST PC
610 SW Alder Street, Ste 415
Portland, Oregon 97205

this time of the injunction, Judge Panner noted in his findings that imprisonment of people with untreated mental illness "exacerbates their mental illness," *Findings*, at 6, that the "population has a high suicide risk, and psychosis can be an emergency requiring immediate treatment," *id.* at 7, and that "[d]epriving them of necessary medical treatment increases the likelihood that they may decompensate and suffer unduly." *Id.* at 8. While all of that remains true, our understanding of the long term damage being done to this population of people has deepened and crystallized over the past 15 years.

It is now a matter of scientific consensus that failing to treat psychosis leads to worse long-term prognoses for treatment. *See, e.g.,* McKenzie, Kwame, *How Does Untreated Psychosis Lead to Neurological Damage?*, 59 Can. J. Psych. 511 (Oct. 2014); Clarke, et. al., *Untreated Illness and Outcome of Psychosis*, 189 British J. Psych. 235 (2006); Drake, et. al., *Causes and Consequences of Duration of Untreated Psychosis in Schizophrenia*, 177 British J. Psych. 511 (2000); Penttilä, et. al., *Duration of Untreated Psychosis as Predictor of Long-Term Outcome in Schizophrenia: Systematic Review and Meta-Analysis*, 205 British J. Psych. 88 (2014). While scientists continue to examine and debate the precise mechanism by which this damage occurs, there is no debate that the damage is being done. *Id.* In simple terms, we now know that by failing to treat psychosis, you are not only causing a person to "suffer unduly," but you are actually causing brain damage which may prevent the person from ever recovering.

Meanwhile, the conditions of confinement for mentally ill prisoners in Oregon's county jails have not improved, nor has the quality of mental health care afforded them. A recent comprehensive analysis conducted by Oregon Public Broadcasting found that the rate of suicide among prisoners in county jails has increased over the past decade. *See* Conrad Wilson, Tony

Page 4 –PLAINTIFF METROPOLITAN PUBLIC
DEFENDER SERVICES'S MOTION FOR FINDING OF
CONTEMPT, TO ALLOW DISCOVERY, AND FOR
EXPEDITED HEARING

LEVI MERRITHEW HORST PC
610 SW Alder Street, Ste 415
Portland, Oregon 97205

Schick, Austin Jenkins, and Sydney Brownstone, *Booked and Buried: Northwest Jails' Mounting Death Toll* (April 2, 2019) available online: https://www.opb.org/news/article/jail-deats-oregon-washington-data-tracking. That same study found that 70% of jail deaths in Oregon and Washington were pretrial detainees. *Id*. Isolation exacerbates the risk of self-harm. Kaba, et. al., *Solitary Confinement and Risk of Self-Harm Among Jail Inmates*, 104(3) Am. J. Pub. Health 442 (March 2014). That is likely because isolation itself causes psychological harm. Grassian, *Psychiatric Effects of Solitary Confinement*, 22 Wash. U. J. L. & Pol. 325 (Jan. 2006).

Beginning in approximately October of 2018, criminal defense lawyers and judges around the state began noticing that it was taking longer for defendants to be transported to OSH. Due to the nature of Oregon's court and defense system, the total scale of the problem was not immediately apparent. That changed this spring when criminal defense lawyers in Washington County (including plaintiff's employees) asked the presiding judge of that county, Charles Bailey, to hold hospital officials (defendants here) in contempt for failing to abide by the individual orders issued in criminal cases to transport within seven days. Judge Bailey held a series of hearings, eventually ordering defendants to come to his court and explain why he should not hold them in contempt. *See State of Oregon v. Eric Gilbreth*, Washington County Case Nos. 18CR84318 & 19CR06058; *State of Oregon v. Gale Merrill*, 18CR65775; *State of Oregon v. Dustin Lee Wood*, 17CR75655; and *State of Oregon v. Carlos Zamora-Skaar*, 18CR79052 & 18CR84154. In response to Judge Bailey's order, the defendants, through counsel at the Oregon Department of Justice, submitted sworn declarations, outlining the shear breadth of their violations. *Id*.; *Declaration of Jesse Merrithew*, Ex. A (hereinafter "ODOJ Memo").[4]

---

[4] The entire submission by ODOJ is included as Exhibit A.

Page 5 –PLAINTIFF METROPOLITAN PUBLIC DEFENDER SERVICES'S MOTION FOR FINDING OF CONTEMPT, TO ALLOW DISCOVERY, AND FOR EXPEDITED HEARING

LEVI MERRITHEW HORST PC
610 SW Alder Street, Ste 415
Portland, Oregon 97205

According to their own sworn declarations, OSH is now violating the injunction in nearly 100% of all new cases. *Id*. at 124. At the time this Court entered its injunction, the defendants were transporting 18% of people within seven days of an order. Findings, at 7 ¶ 15. At the time of their declarations, there were 53 people who had been ordered into the custody of the superintendent but were still incarcerated in county jails around the state. *ODOJ Memo*, at 21. By contrast, at the time this Court entered its injunction, there were only eleven people held in jails around the state and awaiting transport. *See Findings*, at 3-4. Although defendants did not provide state wide data regarding how long people were waiting in jail to be transported, the anecdotal evidence suggests that delays today mirror those at the time of the injunction. Judge Panner found that the average wait time was 31.98 days in 2002. *Id*. at 7. MPD attorneys report that recently their recent clients are taking approximately one month to be transported. *Declaration of Carl Macpherson*. Also similar to the situation in 2002, the outlier cases are particularly egregious. Mr. Zamora-Skaar, one of the defendants discussed above, has been waiting 119 days as of this writing in the Washington County Jail waiting to be transported to the state hospital. *Compare, Findings*, at 7 ¶ 15.

Also unchanged since 2002 is the defendants' defense of their actions: to claim poverty. This Court specifically and categorically rejected this defense. "There is no rationalization that passes constitutional muster for unreasonably detaining person found unfit to proceed in county jails. The lack of funds, staff or facilities cannot justify defendants' failure to provide persons found unfit with the treatment that is necessary to attempt restoration of competency." *Findings*, at 12.

Page 6 –PLAINTIFF METROPOLITAN PUBLIC
DEFENDER SERVICES'S MOTION FOR FINDING OF
CONTEMPT, TO ALLOW DISCOVERY, AND FOR
EXPEDITED HEARING

LEVI MERRITHEW HORST PC
610 SW Alder Street, Ste 415
Portland, Oregon 97205

## ARGUMENT

This Court has broad inherent authority to enforce its orders. *Spallone v. United States*, 493 U.S. 265, 276 (1990). In addition, this Court has explicit statutory authority to enforce its orders through contempt. *See* 18 U.S.C. § 401(3). Neither willfulness nor intent is required, and good faith is not a defense to a civil contempt finding. *In re Dual Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Virtually the only defense available to a defendant seeking to avoid a contempt finding is that they have taken "every reasonable step" to comply with the court's order and yet have been unable to do so. *Stone v. City & County of San Francisco*, 968 F.2d 850, 856-57 (9th Cir. 1992). Defendants cannot make such a showing here.

Procedurally, plaintiff bears the initial burden of showing by clear and convincing evidence that defendants violated a specific and definite order of this Court. *See Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983). Once that burden is met, the burden shifts to defendants to show that they have taken all reasonable steps to avoid violating that order. *Id.*

In this case, defendants flatly admit that they are repeatedly violating a specific and definite order of this Court and have been doing so for seven months. Their sworn declarations are sufficient proof to show this by clear and convincing evidence. The question, therefore, is whether defendants can prove that they have taken all reasonable steps to avoid violating that order. Defendants cannot do so.

The first, and most obvious reasonable step they could have taken to avoid violating this Court's order would have been to ask this Court to modify its judgment. *See* Fed. R. Civ. P. 60(b)(5); *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000) (describing procedures and showing to modify injunction). The failure to attempt that reasonable step should be sufficient to

Page 7 – PLAINTIFF METROPOLITAN PUBLIC
DEFENDER SERVICES'S MOTION FOR FINDING OF
CONTEMPT, TO ALLOW DISCOVERY, AND FOR
EXPEDITED HEARING

LEVI MERRITHEW HORST PC
610 SW Alder Street, Ste 415
Portland, Oregon 97205

defeat any claim that defendants are not in contempt. If the Court believes that defendants may still be able to prove that they took all reasonable steps, despite their failure to ask the Court to modify the injunction, it should set an expedited contested hearing on this issue. However, what is "reasonable" needs to placed within the context of the seriousness of the injunction.

This Court set an outside limitation of seven days to transport people to OSH because delays of any longer than seven days violate that person's due process rights. Every single time OSH waits more than seven days to transport someone, it is violating the constitution. Compliance with the constitution is the first and highest duty of every public official. Every other obligation, goal, mandate, or preference is inferior to the obligation to comply with the constitution. Therefore, unless the defendants claim that their decision not to transport people in compliance with this Court's injunction is because doing so would violate other constitutional obligations they hold, their reasons are insufficient.

## CONCLUSION

MPD views defendants' contemptuous delays as creating a medical and moral emergency for its clients. As Judge Panner rightly observed, staffing and funding levels simply pale in comparison to the suffering and damage done to a person with untreated mental illness, locked in a cage for 23 hours a day. MPD implores this Court to act quickly to end the suffering, mitigate the damage, and prevent future violations.

**DATED** this 10th day of May, 2019.

**LEVI MERRITHEW HORST PC**

By:      /s/ Jesse Merrithew

**Jesse Merrithew**, OSB No. 074564
Email: jesse@lmhlegal.com

Page 8 –PLAINTIFF METROPOLITAN PUBLIC
DEFENDER SERVICES'S MOTION FOR FINDING OF
CONTEMPT, TO ALLOW DISCOVERY, AND FOR
EXPEDITED HEARING