...

Emily Cooper OSB# 182254
Thomas Stenson OSB # 152894
Sarah Radcliffe OSB # 064775
Kathleen L. Wilde OSB # 971053, *Active Pro Bono*
Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205
(503) 243-2081
ecooper@droregon.org
tstenson@droregon.org
sradcliffe@droregon.org
wildekathy01@gmail.com
*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC.,** & **A.J. MADISON,** Plaintiffs, <br><br> v. <br><br> **PAT ALLEN,** in his official capacity as head of the Oregon Health Authority, & **DOLORES MATTEUCCI**, in her official capacity as Superintendent of the Oregon State Hospital, Defendants. | Case No.: 02-00339 <br><br> PLAINTIFF DISABILITY RIGHTS OREGON'S MOTION TO JOIN AND TO SUPPLEMENT PLAINTIFF METROPOLITAN PUBLIC DEFENDER SERVICES' MOTION FOR A RULE TO SHOW CAUSE WHY THE DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT <br><br> ORAL ARGUMENT REQUESTED <br><br> EXPEDITED HEARING REQUESTED |

## I.     NOTICE OF EFFORTS TO COMMUNICATE (LR 7-1)

Plaintiff Disability Rights Oregon and Defendants have met to discuss this Court's orders and the steps necessary for compliance. Declaration of Sarah Radcliffe ("Radcliffe Decl.") Ex. A-C. These discussions did not result in compliance nor agreed upon steps to reach compliance. Radcliffe Decl. Exs. B, C. Today, attorneys for the Plaintiff Disability Rights Oregon called

attorneys for the Defendants to announce its intent to file this motion. The parties were not able to strike an agreement to avoid this filing.

## II. PLAINTIFF DISABILITY RIGHTS OREGON'S MOTION TO JOIN AND TO SUPPLEMENT PLAINTIFF METROPOLITAN PUBLIC DEFENDER SERVICES' MOTION FOR A RULE TO SHOW CAUSE

For the reasons stated below, this Plaintiff joins Metropolitan Public Defender Services' ("MPD") May 10, 2019, motion and respectfully asks this Court to hold the Defendants in contempt for the reasons stated in both motions. Plaintiff Disability Rights Oregon (DRO), formerly the Oregon Advocacy Center, and MPD were co-plaintiffs in filing the original complaint in this matter though attorneys from DRO litigated the matter through trial and on appeal at the Ninth Circuit Court of Appeals. DRO asks this court to order an expedited hearing at which the Defendants must show cause why they should not be held in contempt of court for violating the District Court's order to admit detainees declared unable to assist their counsel within seven days of the order. 18 U.S.C. § 401. Because of the serious and irreparable harm done to seriously mentally ill detainees by protracted detention in jail, the hearing should be held on an expedited basis.

The Defendants' own records and admissions show that detainees protected by the *Mink* order are being held far longer than the 7-day rule established in this case. Radcliffe Decl. Exs. B, D. *Mink* detainees are individuals who have been found to be unable to aid and assist in their defense and court ordered for competency restoration services provided by the Defendants. In 2002, this Court "ordered admissions to be done in a reasonably timely manner, and completed not later than seven days after the issuance of an order determining a criminal defendant to be unfit to proceed to trial because of mental incapacities under ORS § 161.370(2)." (Dkt. 51). The Court's order is unambiguous and there is no factual dispute that the Defendants are in contempt

of this Court's Order. The Court should hold a hearing and determine whether to hold the Defendants in contempt and order appropriate relief to address the ongoing constitutional violations inflicted upon the class.

### III.   MEMORANDUM OF LAW

The Defendants have publicly conceded that, as of April 30, 2019, fifty-three (53) detainees were awaiting transport and admission to the Oregon State Hospital. (Dkt. 87-1, at 24). The Defendants' own data show that wait times for admission to the hospital for detainees currently exceed three weeks.  Radcliffe Decl. Ex. D.  At the time of this filing, the number of *Mink* detainees waiting in local jails for competency restoration services is greater than it was at the time of trial in this matter in 2002. Thus, the Defendants are out of compliance with the original judgment in this case.

This Court has previously recognized and the Ninth Circuit recently affirmed, that Defendants' delays in providing competency restoration services to detainees violate the constitutional rights of detainees. *See Oregon Advocacy Center v. Mink,* 322 F.3d 1101, 1120 (9th Cir. 2003)("[p]retrial detainees, whether or not they have been declared unfit to proceed, have not been convicted of any crime. Therefore, constitutional questions regarding the . . . circumstances of their confinement are properly addressed under the due process clause of the Fourteenth Amendment. . . ."); *see also Trueblood v. Washington State Dep't of Soc. & Health Servs.*, 822 F.3d 1037, 1043 (9th Cir. 2016).

**A. There is No Material Dispute Regarding Defendants Lack of Compliance and Defendants Should Be Held in Contempt**

In 2002, this Court ordered the Oregon State Hospital Superintendent and the Oregon Health Authority Director to admit detainees "not later than seven days after the issuance of an order" finding them unable to aid and assist in their own defense. (Dkt. 51 at 2.)  The current

facts of contempt are essentially undisputed and admitted by the Defendants.  Radcliffe Decl. Exs. B, D.  The Defendants must now answer why they should not be held in contempt.

If Defendants fail to show cause why they have violated these court orders, Plaintiff requests this Court to order Defendants to issue a plan for compliance for this Court's review.  Such plan must be designed to ensure the timely provision of restoration services consistent with this Court's Orders and may consider the following short and long term solutions: (1) establish aggressive benchmarks to reach compliance, (2) hire an expert to provide direction in addressing the reform of the mental health system (3) take action to educate state courts and to intervene in state courts to ensure that court orders are timely addressed, patients promptly transported, and patients who can be appropriately discharged are discharged, (4) address prolonged lengths of stay for patients who can be released due to no longer meeting hospital levels of care and (5) expand community-based competency restoration services.

This Court has "wide latitude" in determining whether a party is in contempt of its orders. *Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984).  As such, it is up to the court to determine whether an entity is in contempt, and that decision is subject to abuse of discretion review. *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999).  The moving party has the burden of proving contempt by clear and convincing evidence. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).  Once this burden is met, it "then shifts to the contemnors to demonstrate why they were unable to comply." *Affordable Media,* 179 F.3d at 1239.  A party should be found in contempt of a court order when 1) a person named in the order, or a person acting in concert with or participating with a named person, 2) violates the explicit terms of the order, 3) after having actual notice of the order. *Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*, 877 F.2d 787, 789 (9th Cir. 1989).

Here, the Court's order is unambiguous and requires that state hospital "admissions must be done in a reasonably timely manner, and completed not later than seven days after the issuance of an order determining a criminal defendant to be unfit to proceed to trial because of mental incapacities under ORS § 161.370(2)." (Dkt. 51). The Defendants openly concede a lengthy waiting list for hospital admission has subjected dozens of criminal Defendants found unfit to proceed to weeks of waiting. A total of 259 detainees were admitted to the hospital more than seven days after an order of commitment to the state hospital from October 2018 to April 2019, primarily due to the hospital's waitlist. (Dkt. 87-1, at 124). Defendants waitlist data dated May 13, 2019, also establishes their lack of compliance. Radcliffe Decl. Ex. D. As for notice, the Defendants have not only admitted notice of the order but relied in state court on their potential liability for noncompliance with this Court's order. (Dkt. 87-1, at 3). Since the Plaintiffs have shown a prima facie case that the substituted Defendants had notice of and violated the order, it falls to the Defendants to rebut the Plaintiffs' arguments or come into compliance.

### B. The Court Should Consider Equitable Factors in Deciding Whether to Hold the Defendants in Contempt and the Extent of Any Relief Ordered

There are several equitable factors this Court should consider in contemplating relief including the harm to the class, Defendants failure to timely notify this Court regarding their lack of compliance, and the scope of this constitutional crisis.

1. <u>Detainees Forced to Languish in Local Jails Suffer Irreparable Harm</u>

The decision regarding contempt and the scope of any order on contempt requires consideration of the equities in this matter. The Court should consider that the continued detention of individuals with serious mental illness in local jails when detainees are in acute crisis and are at risk of serious, irreparable harm. It is "well-recognized that detention in a jail is

no substitute for mentally ill detainees who need therapeutic evaluation and treatment." *Trueblood v. Washington State Dep't of Soc. & Health Servs.*, 822 F.3d 1037, 1039 (9th Cir. 2016). Many seriously mentally ill detainees are put in isolation in local jails, which some psychologists and psychiatrists describe as akin to torture. *Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 946 (N.D. Cal. 2015) (discussing the relationship between suicide and isolation in local jails). "[B]ecause jails are inherently punitive and not therapeutic institutions, the mental health of detainees further erodes with each additional day of wait time, especially when those detainees are held in solitary confinement." *Trueblood v. Washington State Dep't of Soc. & Health Servs.*, 73 F. Supp. 3d 1311, 1316 (W.D. Wash. 2014) *aff'd in part, rev'd in part* 822 F.3d 1037 (9th Cir. 2016).

Detainees who are in psychiatric crisis and need evaluation and treatment are extremely vulnerable to suicide in jail. *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 998 (E.D. Cal. 2017) (holding failure to transfer in a timely manner a detainee awaiting restoration who then committed suicide stated a claim for Section 1983 purposes). As an Oregon example, Janelle Butterfield was admitted to the Josephine County Jail in July 2018 on charges of resisting arrest and interfering with a police officer. On August 28, 2018, she was court-ordered for an evaluation under ORS 161.365. Before she could be evaluated, she hanged herself in her cell on September 5.[1] While she did not live long enough to be evaluated, found unable to aid and assist, and ordered to the hospital, she is typical of the type of vulnerable individual affected by these orders and prolonged jail delays. Protracting the time detainees like Janelle spend in jail before treatment will only increase the risk of suicide.

---

[1] Conrad Wilson, "*Suicide in the Leading Cause of Death in Oregon and Washington Jails,*" Oregon Public Broadcasting, April 4, 2019, *available at* https://www.opb.org/news/article/suicide-oregon-washington-jails-death-investigation/

A mental health provider in Tillamook County witnessed first-hand the harm that delays and protracted jail stays inflict on individuals with serious mental illness. She witnessed the decompensation of two detainees, R.T. and R.B., in the Tillamook County Jail. Decl. of Tami Long.

R.T. spent months in jail on one case in 2018, which resulted an order for his placement at the Oregon State Hospital. *Id.* at ¶7.  He waited more than a month for a bed at the state hospital from the time of that order. *Id.* at ¶7. After his return and the dismissal of the first case in January 2019, law enforcement and the local DA instituted new charges which further prolonged his stay. *Id.* at ¶8. During both stays in custody, she saw him severely decompensate. *Id.* at ¶7-¶9. At times, he was so afraid that he would refuse to leave his cell when the door was opened. *Id.* at ¶11. He would go without bathing and eating as a result of his decompensation. *Id.* at ¶11.

R.B. was arrested in March 2019 and incarcerated. *Id.* at ¶14. On April 12, 2019, the local court ordered him evaluated for his capacity to aid and assist his attorney. *Id.* at ¶15. On April 24, 2019, the local court found him unable to aid and assist and ordered him transferred to the state hospital. *Id.* at ¶ 16. He remains in Tillamook County Jail as of today and on the waiting list for transfer to the Oregon State Hospital. *Id.* at ¶18. As a result of his severe mental illness, he "declines rapidly" when incarcerated and experiences greatly increased delusions. *Id.* at ¶17.

A violation of a constitutional right may constitute per se irreparable harm. *Mitchell v. Cuomo,* 748 F.2d 804, 806 (2d Cir. 1984)("When an alleged deprivation of a constitutional rights is involved, most courts hold that no further showing of irreparable injury is necessary."); *see also Huston v. Burpo,* C94–20771, 1995 WL 73097, at *5 (N.D.Cal. Feb.13, 1995) ("a violation of a constitutional right would constitute an irreparable injury."); *Elrod v. Burns,* 427 U.S. 347,

373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (in the context of free speech, the Supreme Court held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Here, *Mink* detainees are not only harmed by punitive jail conditions they are also deprived of their constitutional liberty rights while they languish for weeks or months in jail awaiting court ordered competency restoration services.

2. Defendants Failed to Inform the Court of the Violations or Seek Redress by Motion

The Defendants, as parties subject to a court order, owed a duty of compliance to this Court. Upon discovering that the state hospital was substantially out of compliance with the order and unlikely to come back into compliance any time soon, the Defendants could have and should have immediately alerted the court to its noncompliance. If the Defendants had any compliance plan, they could have offered it to this Court in a motion to modify. *See Hook v. Arizona Department of Corrections*, 107 F.3d 1396, 1404 (9th. Cir. 1997) (declining to consider arguments from director of Department of Corrections that could have been advanced in a motion to modify prior to violation of the order). When a defendant believes he cannot comply with an order, "the proper response [is] to inform the court of that fact, not to ignore orders until a contempt motion [is] brought." *Seven Arts Pictures, Inc. v. Jonesfilm*, 512 F.Appx. 419, 425 (5th Cir. 2013). In considering whether to hold the Defendants in contempt and grant relief, the Court should consider that the Defendants made no effort to contact the Court or move to modify the order prior to the Plaintiffs' filing of contempt motions.

3. The Court Has Broad Authority to Enforce Its Orders and Grant Relief to Remediate the Constitutional Interests of Detainees

A district court has the inherent power to hold a party in civil contempt in order to enforce compliance with an order of the court or to compensate for losses or damages. *Shillitani v. United States*, 384 U.S. 364, 370 (1966). *See also United States v. United Mine Workers*, 330

U.S. 258, 303-04 (1947). Civil contempt is defined as "a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Institute of Cetacean Research v. Sea Shepherd Conservation Society*, 774 F.3d 935, 945 (9th Cir. 2014) (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).

Courts may impose civil contempt sanctions for the purpose of coercing a defendant to comply with its order. *See In'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) ("[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard."). Courts may also consider other broad remedial measures to address noncompliance. *Stone*, 968 F.2d at 861-62 (affirming court's power to authorize sheriff to override state law). *See also, e.g.*, *Brown v. Plata*, 563 U.S. 493 (2011) (imposing prison population limit); *Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536 (9th. Cir. 1987) (affirming appointment of a Special Master). When the least intrusive measures fail to rectify the problems, more intrusive measures are justifiable. *Stone*, 968 F.2d at 861 (citing *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978)).

Here, while the Plaintiff has filed its first motion for contempt in this case, the information provided by Defendants establish both a lack of compliance and an increasing number of referrals that may require systemic relief on behalf of the class. For example, this Court may consider less restrictive alternatives to ensure compliance with the Court's orders; namely, community based restoration services. These services exist, but on a small scale that does not meet then need. Expanding community based restoration services would implement the

Americans with Disabilities Act (ADA) and the integration mandate to serve individuals with disabilities in the least restrictive environment.  *See* 28 C.F.R. § 35.130(d); *Olmstead v. L.C.*, 527 US 581, 602 (1999).

The Defendants have admitted through counsel and in open court that they "have no solution" and that they are "out of ideas."[2]  Defendants' longstanding failure to comply with this Court's unambiguous orders and the extreme harm created by long-term detention gives this Court broad remedial authority to determine the equitable method to enforce its orders. Plaintiff respectfully moves the Court to direct Defendants to issue a plan for compliance including providing aggressive and definitive benchmarks.

Plaintiff Disability Rights Oregon further requests that any remedy be drafted in a manner consistent with the legal principle that people with disabilities should be served in the most integrated setting consistent with their needs. *Id.*  Providing mental health services to inmates in jails and psychiatric hospitals is extremely expensive, often less effective, and inconsistent with the guarantees of federal nondiscrimination law, including the Americans with Disabilities Act and Rehabilitation Act.  42 U.S.C. § 12131; 29 U.S.C. § 794. To maximize the resources for mental health services and reduce the intake of new detainees in psychiatric crisis, the relief from this Court should be crafted specifically to favor community-based preventive services and restoration wherever clinically feasible.

### IV.     CONCLUSION

Defendants have failed to provide detainees with restoration services within seven days in violation of this Court's orders.  If Defendants fail to show cause why they have violated these

---

[2] Gordon Friedman, '*We Have No Solution': Grim State of Oregon Mental Health System Laid Bare in Court*, The Oregonian, April 24, 2019, *available at* https://www.oregonlive.com/news/2019/04/we-have-no-solution-grim-state-of-oregon-mental-health-system-laid-bare-in-court.html

Plaintiff Disability Rights Oregon's Motion to Join and Supplement Plaintiff Metropolitan Public Defender Services' Motion for a Rule to Show Cause Why the Defendants Should Not Be Held in Contempt
Page 10

court orders, Plaintiffs request the Court to use its broad authority and order Defendants to submit a plan for compliance for this Court's review.  Such compliance plan must be designed to ensure the timely provision of restoration services consistent with this Court's Orders and may consider the following short and long term solutions: (1) establish aggressive benchmarks to reach compliance, (2) hire an expert to provide direction in addressing the reform of the mental health system (3) take action to educate state courts and to intervene in state courts to ensure that court orders are timely addressed, patients promptly transported, and patients who can be appropriately discharged are discharged, (4) address prolonged lengths of stay for patients who can be released due to no longer meeting hospital levels of care and (5) expand community-based competency restoration services. Last, the overall compliance plan should ensure that individual detainees receive services in the most integrated setting appropriate to their needs.

DATED this 14th day of May, 2019.

                            DISABILITY RIGHTS OREGON

                            /s/ Emily Cooper
                            Emily Cooper OSB # 182254
                            ecooper@droregon.org
                            Thomas Stenson, OSB # 152894
                            tstenson@droregon.org
                            Sarah Radcliffe OSB # 064775
                            sradcliffe@droregon.org
                            Kathleen L. Wilde OSB # 971053, *Active Pro Bono*
                            wildekathy01@gmail.com
                            511 SW 10th, Suite 200
                            Portland OR 97205
                            Tel:   (503) 243 2081
                            FAX:  (503) 243 1738
                            *Counsel for Plaintiff*