Jon W. Monson, OSB No. 102650
jmonson@cablehuston.com
Nicole M. Swift, OSB No. 141419
nswift@cablehuston.com
Victoria K. Baker, OSB No. 225400
vbaker@cablehuston.com
CABLE HUSTON LLP
1455 SW Broadway, Suite 1500
Portland, OR 97201
Telephone: (503) 224-3092
Facsimile: (503) 224-3176

*Special Assistant Attorneys General for Defendant Sejal Hathi, MD,
in her official capacity as Director of the Oregon Health Authority
(Additional Counsel of Record Listed on Signature Page)*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON; METROPOLITAN PUBLIC DEFENDERS INCORPORATED; and A.J. MADISON, | Case No. 3:02-cv-00339-AN (Lead Case) Case No. 3:21-cv-01637-AN (Member Case) **Case No. 6:22-cv-01460-AN (Member Case)** |
| Plaintiffs, | |
| v. | **DEFENDANT'S MOTIONS TO DISMISS** |
| SEJAL HATHI, in her official capacity as Director of Oregon Health Authority; and SARA WALKER, in her official capacity as Interim Superintendent of the Oregon State Hospital, | Pursuant to Fed. R. Civ. P. 12 Request for Oral Argument |
| Defendants. *(caption continued next page)* | |

| | |
|---|---|
| JAROD BOWMAN; and JOSHAWN DOUGLAS SIMPSON, | Case No.: 3:21-cv-01637-AN (Member Case) |
| Plaintiffs, | |
| v. | |
| SARA WALKER, Interim Superintendent of the Oregon State Hospital, in her official capacity; DOLORES MATTEUCCI, in her individual capacity; SAJEL HATHI, Director of the Oregon Health Authority, in her official capacity; and PATRICK ALLEN, in his individual capacity, | |
| Defendants. | |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; PROVIDENCE HEALTH & SERVICES – OREGON; and ST. CHARLES HEALTH SYSTEM, INC. | Case No.: 6:22-cv-01460-AN (Member Case) |
| Plaintiffs, | |
| v. | |
| SEJAL HATHI, MD, in her official capacity as Director of Oregon Health Authority, | |
| Defendant. | |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ............................................................................................ 2

II.    BACKGROUND ............................................................................................. 3

    A.    Factual Background ............................................................................. 3

        1.    Oregon's Civil Commitment Statutory Framework. .................. 3

        2.    Current Capacity Restraints ........................................................ 4

    B.    Procedural Background......................................................................... 5

III.    LEGAL STANDARDS .................................................................................. 6

    A.    Motions to Dismiss Under FRCP 12(b)(1) ........................................ 6

    B.    Motions to Dismiss Under FRCP 12(b)(6) ........................................ 7

IV.    ARGUMENT .................................................................................................. 8

    A.    Motion 1: Plaintiffs Lack Third-Party Standing to Bring Claims on Behalf of Civilly Committed Patients. ........................................................... 8

        1.    No Close Relationship Between Plaintiffs and Their Civilly Committed Patients............................................................. 8

        2.    No Hindrance to Civilly Committed Persons' Abilities to Protect their Own Interests............................................. 16

    B.    Motion 2: Plaintiffs Fail to State Substantive or Procedural Due Process Claims on Behalf of Civilly Committed Individuals ........................... 18

        1.    Substantive Due Process ........................................................... 18

        2.    Procedural Due Process ............................................................. 20

    C.    Motion 3: Plaintiffs Fail to State Substantive or Procedural Due Process Claims on Their Own Behalf and on Behalf of Other Community Hospitals. ........................................................................................... 21

        1.    Substantive Due Process. .......................................................... 21

        2.    Procedural Due Process. ............................................................ 22

    D.    Motion 4: Plaintiffs Fail to State a State or Federal Takings Claim. ................... 23

    E.    Motion 5: Plaintiffs Fail to State Claims forDisability Discrimination on Behalf of Civilly Committed Individuals. ........................................... 25

    F.    Motion 6: Plaintiffs Fail to State Oregon Statutory Law Claims......................... 26

V.    CONCLUSION............................................................................................... 28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abcarian v. Levine*,
   972 F.3d 1019 (9th Cir. 2020) ................................................................. 26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................... 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. (2007) ............................................................................... 7

*Cedar Point Nursery v. Hassid*,
   594 U.S. 139 (2021) ........................................................................... 25

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
   631 F.3d 939 .................................................................................. 7

*Conner v. Branstad*,
   839 F. Supp. 1346 (S.D. Iowa 1993) ..................................................... 17, 19

*Crown Point Dev., Inc. v. City of Sun Valley*,
   506 F.3d 851 (9th Cir. 2007) ............................................................... 21

*Disability Rts. Oregon v. Baden*,
   No. 3:02-CV-00339-MO, 2023 WL 6843449 (D. Or. Oct. 17, 2023) ..................... 10

*Doe v. CVS Pharmacy, Inc.*,
   982 F.3d 1204 (9th Cir. 2020) ............................................................. 25

*Doyle v. City of Medford*,
   356 Or. 336 (2014) ....................................................................... 26, 27

*Endsley v. Mayberg*,
   No. CIV S-09-2311 WBS GGH P, 2010 WL 4829549 (E.D. Cal. Nov. 22, 2010) ........ 17

*Farhoud v. Brown*,
   No. 3:20-CV-2226-JR, 2022 WL 326092 (D. Or. Feb. 3, 2022) ......................... 24

*Fleck & Assocs., Inc. v. City of Phoenix*,
   471 F.3d 1100 (9th Cir. 2006) ........................................................... 6, 17

*Franceschi v. Yee*,
   887 F.3d 927 (9th Cir. 2018) ........................................................... 20, 22

*Harris v. Evans*,
   20 F.3d 1118 (11th Cir. 1994) ............................................................. 9

*Hong Kong Supermarket v. Kizer*,
   830 F.2d 1078 (9th Cir. 1987) ........................................................... 8, 9

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
   480 U.S. 470 (1987) ......................................................................... 24

*Knick v. Township of Scott*,
588 U.S. 180 (2019) ........................................................................................ 24

*Kriz v. Roy*,
No. 8:20CV110, 2020 WL 6135442 (D. Neb. Oct. 19, 2020) ......................... 16, 19

*Legacy Health Sys. v. Hathi*,
No. 23-35511, 2024 WL 2843034 (9th Cir. June 5, 2024)............................*passim*

*Levald, Inc. v. City of Palm Desert*,
998 F.2d 680 (9th Cir. 1993) .......................................................................... 24

*Lewis v. Casey*,
518 U.S. 343 (1996) .......................................................................................... 7

*Los Molinos Mut. Water Co. v. Ekdahl*,
695 F. Supp. 3d 1174 (E.D. Cal. 2023) ........................................................... 24

*Lovell v. Chandler*,
303 F.3d 1039 (9th Cir. 2002) ......................................................................... 25

*Maltais v. PeaceHealth*,
326 Or. App. 318 (2023) .................................................................................. 27

*Managed Pharmacy Care v. Sebelius*,
716 F.3d 1235 (9th Cir. 2013) ..................................................................... 23, 24

*McCollum v. Calif. Dep't of Corr. & Rehab.*,
647 F.3d 870 (9th Cir. 2011) ........................................................................... 17

*Miller v. Albright*,
523 U.S. 420 (1998) .......................................................................................... 8

*Miranda v. City of Casa Grande*,
15 F.4th 1219 (9th Cir. 2021) .......................................................................... 20

*Ohlinger v. Watson*,
652 F.2d 775 (9th Cir. 1980) ....................................................................... 18, 19

*Olson v. Allen*,
No. 3:18-CV-001208-SB, 2019 WL 1232834 (D. Or. Mar. 15, 2019) ............... 16

*Oregon Firearms Fed'n v. Kotek*,
682 F. Supp. 3d 874 (D. Or. 2023) ................................................................... 24

*Pakdel v. City & Cnty. of San Francisco*,
636 F. Supp. 3d 1065 (N.D. Cal. 2022) ........................................................... 24

*Pony v. Cnty. of Los Angeles*,
433 F.3d 1138 (9th Cir. 2006) ........................................................................... 9

*Powers v. Ohio*,
499 U.S. 400 (1991) .......................................................................................... 8

*Rancho de Calistoga v. City of Calistoga*,
800 F.3d 1083 (9th Cir. 2015) ......................................................................... 21

*Ruckelshaus v. Monsanto Co.*,
  467 U.S. 986 (1984) ................................................................................................. 24

*Salcido ex rel. Gilliland v. Woodbury Cnty., Iowa*,
  119 F. Supp. 2d 900 (N.D. Iowa 2000) ..................................................................... 17

*Shanks v. Dressel*,
  540 F.3d 1082 (9th Cir. 2008) ................................................................................... 21

*Sierra Med. Servs. All. v. Kent*,
  883 F.3d 1216 (9th Cir. 2018) ............................................................................. 22, 24

*Siskiyou Hosp., Inc. v. Calif. Dep't of Health Care Servs.*,
  No. 2:20-cv-00487-TLN-KJN, 2022 WL 118409 (E.D. Cal. Jan. 12, 2022) ...................... 9, 11

*State ex rel. Schrunk v. Metz*,
  125 Or. App. 405 (1993) ............................................................................................ 24

*Sun Sav. & Loan Ass'n v. Dierdorff*,
  825 F.2d 187 (9th Cir. 1987) ....................................................................................... 7

*Sylvia Landfield Tr. v. City of Los Angeles*,
  729 F.3d 1189 (9th Cir. 2013) ............................................................................. 18, 22

*United States v. Lanier*,
  520 U.S. 259 (1997) ................................................................................................. 21

*Unterreiner v. Goldberg*,
  No. CV 06-277-HU, 2007 WL 9808320 (D. Or. July 27, 2007) ................................. 17

*Viceroy Gold Corp. v. Audry*,
  75 F.3d 482 (9th Cir. 1996) .................................................................................... 8, 13

*Wash. Envtl. Council v. Bellon*,
  732 F.3d 1131 (9th Cir. 2013) ..................................................................................... 7

*Washington v. Glucksberg*,
  521 U.S. 702 (1997) ............................................................................................. 18, 22

*Youngberg v. Romeo*,
  457 U.S. 307 (1982) ............................................................................................. 19, 20

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017) ................................................................................................. 27

**<u>Statutes</u>**

Or. Const. Art. I, § 18 ...................................................................................................... 24

ORS 426.005(1)(c) ..................................................................................................... 4, 28

ORS 426.060 ....................................................................................................... 4, 26, 27

ORS 426.060(2) .......................................................................................................... 4, 27

ORS 426.070 ................................................................................................................. 3

ORS 426.072 ................................................................................................................. 3

ORS 426.074 ................................................................................................................. 3

ORS 426.130 ................................................................................................................. 3

ORS 426.150 ........................................................................................................... 26, 27

ORS 426.335 ............................................................................................................... 27

ORS 426.385(1)(i) ......................................................................................................... 16

ORS 430.021(2)(a) .......................................................................................................... 4

ORS 430.630(4)(a)–(b) .................................................................................................... 4

ORS 430.640(1)(a) .......................................................................................................... 4

ORS 476.095 ................................................................................................................. 3

ORS 659A.142 ............................................................................................................. 25

U.S. Const. amend. XIV, § 1 ......................................................................................... 18

U.S. Const. Art. I .......................................................................................................... 23

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 1, 5, 6

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 3, 5, 7

Fed. R. Civ. P. 12(h)(3) .................................................................................................. 6

**Regulations**

OAR 309-033-0290(1)(a) ................................................................................................. 4

OAR 309-033-0290(5) ................................................................................................... 21

OAR 309-033-0420(2)–(3) .............................................................................................. 4

## <u>LOCAL RULE 7-1 COMPLIANCE</u>

Per L.R. 7-1, counsel for Defendant Sejal Hathi, MD, in her official capacity as Director of Oregon Health Authority ("Defendant" or "OHA"), conferred in good faith by email and telephone with counsel for Plaintiffs Legacy Emanuel Hospital & Health Center d/b/a Unity Center for Behavioral Health, Legacy Health System, PeaceHealth, Providence Health & Services – Oregon and St. Charles Health System (collectively, "Plaintiffs") to resolve the disputes that are the subject of this motion but have been unable to do so.

## <u>MOTIONS</u>

Defendant respectfully moves the Court for an order dismissing the Second Amended Complaint ("SAC") as follows:

**A.     Motion to dismiss claims brought on behalf of civilly committed individuals under FRCP 12(b)(1) for lack of subject matter jurisdiction:**

1.     <u>Motion 1</u>: Plaintiffs lack third-party standing under Article III to assert claims on behalf of civilly committed individuals.  (*See* First, Second, Sixth, Seventh, Eighth, Tenth, Eleventh, and Twelfth claims, SAC ¶¶ 64–78, 104–37, 146–64.)

**B.     Motions to dismiss each individual claim under FRCP 12(b)(6) for failure to state a claim:**

1.     <u>Motion 2</u>: The First and Second claims fail because the SAC does not plausibly allege substantive or procedural due process violations on behalf of civilly committed individuals.  (*See* SAC ¶¶ 64–78.)

2.     <u>Motion 3</u>:  The Third and Fourth claims fail because the SAC does not plausibly alleged substantive or procedural due process violations on behalf of the Plaintiffs.  (*See* SAC ¶¶ 79–94.)

3.     <u>Motion 4</u>: The Fifth and Ninth claims fail because the SAC does not plausibly allege facts constituting a state or federal taking, and Plaintiffs cannot seek declaratory or injunctive relief on a takings claim in any event.  (*See* SAC ¶¶ 93–103, 138–45.)

4.     <u>Motion 5</u>: The Sixth, Seventh, Eighth, and Twelfth claims do not plausibly plead claims for state or federal disability discrimination.  (*See* SAC ¶¶ 104–37, 158–64.)

5.     <u>Motion 6</u>: The Tenth and Eleventh claims do not plausibly plead any violation of Oregon statutes governing the civil commitment process, and there is no private right of action to bring a claim under those statutes. (*See* SAC ¶¶ 146–57.)

In support of these motions, Defendant relies on the allegations in the SAC (ECF 117), Defendants' December 22, 2022 Request for Judicial Notice (ECF 30), the transcript of the April 25, 2023 hearing before Judge Mosman on Defendant's first motion to dismiss (ECF 75), and the following memorandum of points and authorities.

## LEGAL MEMORANDUM

## I.    INTRODUCTION

Plaintiffs are private hospitals and health systems that seek various forms of relief aimed at removing civilly committed individuals from Plaintiffs' beds.  The Court already dismissed this case once on standing grounds, but the case is back on remand after the Ninth Circuit reversed one narrow aspect of Judge Mosman's prior dismissal order and remanded the case for further proceedings.  Trying to save their case from dismissal on this second round of motions to dismiss, Plaintiffs filed a SAC adding a few new claims and allegations.  Those amendments do not address the fundamental defects in Plaintiffs' complaint, and so the Court should again dismiss the case.  The SAC continues to suffer from two fatal defects.

First, Plaintiffs still cannot establish Article III standing to assert third-party claims on behalf of civilly committed individuals.  As this Court previously concluded, Plaintiffs cannot show that their interests—which they admit include financial concerns about the costs of treating civilly committed patients and the impacts that using beds for those patients may have on Plaintiffs' *other* patients and facilities—are adequately aligned with the interests of civilly committed individuals.  The Ninth Circuit held that Plaintiffs' Amended Complaint and prior briefing was "insufficient" to establish third-party standing but remanded the case to allow Plaintiffs a second chance to clarify the specific relief they could feasibly achieve in this litigation and how that outcome would mutually benefit Plaintiffs *and* their civilly committed

patients. The SAC provides no such clarity, and the record thus remains (at best) "insufficient" to meet Plaintiffs' burden to establish third-party standing.

Second, the SAC fails to state any claim—either on behalf of Plaintiffs themselves or civilly committed patients—upon which relief may be granted. Each of Plaintiffs' claims are based on conclusory allegations and devoid of well-pleaded facts sufficient to state plausible claims for deprivation of due process, takings, or violation of any federal or state disability discrimination law or the state civil commitment process. Indeed, at the last motion to dismiss hearing, Judge Mosman agreed with many of Defendant's FRCP 12(b)(6) arguments but simply did not issue a formal ruling because he dismissed the entire case on standing grounds. Plaintiffs have not corrected those defects. Thus, the Court should grant Defendant's motion and dismiss this case with prejudice.

## II.    BACKGROUND

### A.    Factual Background

Defendant previously described the background and statutory framework of Oregon's civil commitment system, as well as Plaintiffs' various claims for relief. (*See, e.g.*, ECF 30 at 4–10.) Defendant does not repeat that entire summary here but does provide the following background for the Court's convenience.

#### 1.    Oregon's Civil Commitment Statutory Framework.

ORS Chapter 426 provides the primary statutory framework governing the civil commitment process and required care for such individuals. This process includes a precommitment investigation, followed by a hearing, after which the court makes a determination of mental illness. ORS 426.070; ORS 426.072; ORS 426.074; ORS 476.095; ORS 426.130. Under ORS 426.130, the court may (1) order the release of the person and dismiss the case, (2) order that the person be placed on conditional release, (3) order that the person participate in assisted outpatient treatment, or (4) order the commitment of the person to OHA.

For those committed to its care, Oregon's legislature has granted OHA the ***exclusive*** authority to determine the placement of civilly committed individuals at available treatment facilities.  ORS 426.060.  OHA's placement decisions are discretionary and final:

> In its discretion and for reasons which are satisfactory to the authority, the authority may direct any court-committed person to the facility best able to treat the person.  The decision of the authority on such matters shall be final.

ORS 426.060(2)(a).  Apart from the Oregon State Hospital ("OSH"), placement facilities include community hospitals (like Plaintiffs), residential facilities, detoxification centers, day treatment facilities, "or other facilit[ies] as the authority determines suitable."  ORS 426.005(1)(c).

The legislature also granted OHA the authority to "delegate to a community mental health program [("CMHP")] director the responsibility for assignment of persons with mental illness to suitable facilities or transfer between such facilities under conditions which the authority may define," including by contract with public and private entities, subject to the availability of funds.  ORS 426.060(2)(d); ORS 430.021(2)(a); ORS 430.640(1)(a).  CMHPs have the authority to coordinate patient placement in state and community hospitals, as well as place patients in other community facilities where capacity is available.  OAR 309-033-0290(1)(a); ORS 430.630(4)(a)–(b); OAR 309-033-0420(2)–(3).

## 2. **Current Capacity Restraints.**

Since September 1, 2022, OHA and OSH have been bound by this Court's orders in the consolidated lead case, *Disability Rts. Oregon et. al. v. Allen et al.*, Case No. 3:02-cv-0039-AN (D. Or.) ("*Mink*"), which restrict the admission of patients at OSH.  *See, e.g.*, ECF 271.  Because of the ongoing capacity crisis, OHA is prohibited from admitting patients to OSH except as provided for by the recommendations of the Neutral Expert or otherwise provided by this Court:

> Namely, Aid and Assist ("A&A") and Guilty Except Insane ("GEI") persons shall be admitted according to their place on the admissions wait list or pursuant to the relevant expedited admissions policy.  In addition, the Oregon State Hospital:
>
> . . . .

Page 4 – DEFENDANT'S MOTIONS TO DISMISS

b. shall not admit persons civilly committed unless they meet the
criteria in the civil admission expedited admissions policy . . . .

*Id.* at 2 ("*Mink* Order").

### B.     Procedural Background

Plaintiffs sued Defendant on September 28, 2022, asserting seven claims for relief.  On

November 2, 2022, the Court consolidated this action with *Mink* and *Bowman et al. v. Matteucci

et al.*, Case No. 3:21-cv-01637-AN (D. Or.) ("*Bowman*"), cases that arose out of due process

claims brought on behalf of A&A and GEI criminal defendants against OHA and OSH.

On December 22, 2022, Defendant moved to dismiss Plaintiffs' Amended Complaint for

lack of standing and failure to state individual claims.  (*See generally* ECF 30.)  Judge Mosman

granted the FRCP 12(b)(1) motion on standing grounds, holding that: (1) Plaintiffs did not have

standing to assert claims on their own behalf because their alleged injuries were not fairly

traceable to Defendant, and (2) Plaintiffs did not have third-party standing to assert claims on

behalf of civilly committed individuals.  (ECF 88.)  Given the standing ruling, he did not resolve

Defendant's alternative FRCP 12(b)(6) motions.  He did, however, express agreement with many

of those arguments during the motion hearing.  (*See id.* & ECF 75.)

On appeal from Judge Mosman's dismissal order for lack of standing, the Ninth Circuit

reversed in part, vacated in part, and remanded the case for further proceedings.  *See Legacy

Health Sys. v. Hathi*, No. 23-35511, 2024 WL 2843034 (9th Cir. June 5, 2024).  The Ninth

Circuit concluded that Plaintiffs had Article III standing to assert claims on behalf of themselves.

*Id.* at *1.  But the court found that "[w]hether [Plaintiffs have] third-party standing to bring

claims on behalf of civilly committed patients is a closer question."  *Id*.  Ultimately, the court

ruled that the record submitted by Plaintiffs in their Amended Complaint and in response to

Defendant's prior motion was "insufficient" to resolve the third-party standing question.  *Id.* at

Page 5 – DEFENDANT'S MOTIONS TO DISMISS

*3.  So the Court remanded the case for further consideration.  *Id.* at *3.  (The Ninth Circuit's reasoning is discussed in more detail in Section IV.A.1 below.)

On October 4, 2024, Plaintiffs filed their SAC.  (ECF 117.)  The SAC asserts the same claims pled in the Amended Complaint (and summarized in Defendant's first motion, ECF at 7–10) but adds five additional claims for relief by splitting the two due process claims into four (substantive and procedural due process) and alleging three new federal disability discrimination claims.  (*See generally id.*)  The SAC also amends Plaintiffs' takings claims to allege only a physical (and not a regulatory) taking and removes the prior request for nominal damages.  (*See e.g.*, *id.* ¶¶ 33, 60–63, 93–103.)  Thus, the SAC now asserts twelve causes of action for due process violations, takings, disability discrimination, and violations of the Oregon civil commitment process.  The SAC seeks the same obscure equitable relief as the Amended Complaint did—a vague declaration that OHA has violated the rights of Plaintiffs and civilly committed individuals and injunctions prohibiting OHA from violating those rights and requiring OHA to "provide civilly committed patients the care and treatment they are entitled to by law." (*Id.* at 52–55.)

## III.     LEGAL STANDARDS

### A.     Motions to Dismiss Under FRCP 12(b)(1).

The court must dismiss a claim if it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(h)(3).  And a court lacks subject matter jurisdiction if a plaintiff lacks standing to pursue the relief sought.  *See Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1102 (9th Cir. 2006) ("Because [the plaintiff] lacked standing . . . the district court lacked subject matter jurisdiction and should have dismissed the complaint on that ground alone.").  As the U.S. Supreme has described:

> [The] doctrine of standing [is] a constitutional principle that
> prevents courts of law from undertaking tasks assigned to the

> political branches.  It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.

*Lewis v. Casey*, 518 U.S. 343, 349 (1996) (internal citations omitted).  A plaintiff must demonstrate standing for each claim and each form of relief sought.  *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013).

**B.    Motions to Dismiss Under FRCP 12(b)(6).**

The court must dismiss a claim that "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To avoid dismissal, the facts alleged must amount to a claim for relief "that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)).  A claim is plausible only if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Courts presume the truth of allegations in a complaint and construe them in the light most favorable to the nonmoving party.  Fed. R. Civ. P. 12(b)(6); *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987).  But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp.*, 550 U.S. at 555 (cleaned up).  Thus, to assess a complaint's adequacy, a court begins by identifying allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 955 n. 9 (9th Cir. 2011).  A claim that lacks merit should be dismissed "at the point of minimum expenditure of time and money by the parties and the court."  *Bell Atl. Corp.*, 550 U.S. at 558.

/ / /

/ / /

Page 7 – DEFENDANT'S MOTIONS TO DISMISS

IV.    **ARGUMENT**

A.    **Motion 1: Plaintiffs Lack Third-Party Standing to Bring Claims on Behalf of Civilly Committed Patients.**

The SAC asserts eight claims on behalf of Plaintiffs' civilly committed patients. (*See* SAC ¶¶ 64–78, 104–37, 146–64.)  Plaintiffs lack standing to bring these claims.  "Federal courts have traditionally been reluctant to grant third-party standing."  *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir. 1987).  As the Supreme Court warned in *Singleton v. Wulff*, "[f]ederal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation."  428 U.S. 106, 113 (1976).  This is because standing typically requires parties to "assert their own rights rather than rely on the rights or interests of third parties," in order "(1) to avoid adjudicating rights a third-party may not wish to assert; and (2) to ensure effective advocacy."  *Viceroy Gold Corp. v. Audry*, 75 F.3d 482, 488 (9th Cir. 1996) (cleaned up).  Thus, there is a presumption *against* third-party standing.  *Miller v. Albright*, 523 U.S. 420, 422 (1998). This presumption is overcome only if a plaintiff establishes three criteria: (1) injury in fact; (2) a close relation to the third party; and (3) "some hindrance to the third party's ability to protect his or her own interests."  *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991).  As discussed above, Plaintiffs cannot meet either the second or third elements, and so their third-party claims must be dismissed (again).

1.    **No Close Relationship Between Plaintiffs and Their Civilly Committed Patients.**

Plaintiffs cannot meet the second prong for third-party standing because they have not shown that they and their civilly committed patients have a sufficiently close relationship. "Courts have repeatedly emphasized that the key to third-party standing analysis is whether the interests of the litigant and the third party are properly aligned, such that the litigant will

adequately and vigorously assert those interests." *Harris v. Evans*, 20 F.3d 1118, 1124–25 (11th Cir. 1994), *quoted in Pony v. Cnty. of Los Angeles,* 433 F.3d 1138, 1147–48 (9th Cir. 2006). Thus, to meet the "close relationship" test, "a litigant must "convince the court that it would be as effective a proponent' of the third party's rights as the third party itself would be." (ECF 88 at 4 (quoting *Honk Kong Supermarket*, 830 F.2d at 1081).) "Put simply, Plaintiff must establish a "[m]utual interdependence of interests' between itself and the absent third parties." *Siskiyou Hosp., Inc. v. Calif. Dep't of Health Care Servs.*, No. 2:20-cv-00487-TLN-KJN, 2022 WL 118409, at *4 (E.D. Cal. Jan. 12, 2022) (quoting *Hong Kong Supermarket*, 830 F.2d at 1082).

On Defendant's first motion to dismiss, Judge Mosman ruled that Plaintiffs failed this "close relationship" test because they could not show that their interests were aligned enough with the interests of their civilly committed patients. (ECF 88 at 7.) He emphasized the inherent conflict between the Plaintiffs' purported close relationship with their civil commitment patients and Plaintiffs' stated concerns about "how much civilly committed patients are costing them and about the harms they inflict on their staff members." (*Id.*) Judge Mosman held that these interests were "incongruous enough that [Plaintiffs] would not be 'as an effective proponent' of civilly committed patients' rights as the patients would be for themselves." (*Id.* (quoting *Hong Kong Supermarket*, 830 F.2d at 1081).)

On appeal, the Ninth Circuit vacated and remanded that part of Judge Mosman's order. *Legacy Health Sys.*, 2024 WL 2843034, at **1–2. The Ninth Circuit did not rule that Judge Mosman reached the wrong result but merely clarified that Plaintiffs' cost concerns alone were not necessarily dispositive of the standing inquiry. *See id.* Instead, the court held, the third-party standing analysis is "nuanced and fact-dependent" and turns here on the exact remedy achievable in this litigation and whether that remedy would benefit civilly committed individuals:

> Whether Legacy Health System's interests are sufficiently aligned with the interests of its civilly committed patients may depend on what outcome Legacy Health System in fact is likely to achieve in this litigation and whether that outcome would benefit the patients whom Legacy Health System seeks to represent.

Page 9 – DEFENDANT'S MOTIONS TO DISMISS

*Id*. at *2.  Because "[t]hese questions [were] not clearly answered in the complaint or the present briefing," the Ninth Circuit found the record "insufficient" to establish third-party standing and thus remanded the case to this Court "for reconsideration in light of the thirty-party standing principles discussed above."  *Id.* at *3.

Following this remand order, Plaintiffs filed their SAC in an attempt to buttress their third-party standing argument.  But the SAC provides no more clarity in response to the Ninth Circuit's concerns about an "insufficient" record.  Plaintiffs again ask for a vague and broad "permanent injunction enjoining OHA from continuing its conduct, policy, and practice."  (SAC ¶ 73.)  Yet the SAC includes no additional detail at all about the remedy likely to be achieved here, other than vague and conclusory statements that the relief they seek will benefit civilly committed individuals.  Plaintiffs vaguely allege, for example, that "[i]f Plaintiffs are successful in this lawsuit, it will result in civilly committed patients having access to the most appropriate and least restrictive long-term treatment options, while opening more beds for detained and civilly committed patients in need of emergency and acute care."  (SAC ¶ 61.)  But they once again fail to explain *how* they would achieve this result.

Plaintiffs simply describe their *ideal* outcome, which is neither what the Ninth Circuit asked, nor what can be practically achieved.  As Judge Mosman recognized in *Mink*, "We live in the real world, constrained by factors beyond anyone's control, and trying to implement a system that maximizes benefits to the most people at a time when they can most benefit from it.  These problems do not just go away because we do not like them."  *Disability Rts. Oregon v. Baden*, No. 3:02-CV-00339-MO, 2023 WL 6843449, at *2 (D. Or. Oct. 17, 2023).  Even if this Court were to order the declaratory and injunctive relief Plaintiffs seek, the *likely* outcome of this case will not change the shortage of treatment options and beds for civilly committed individuals.

Nor does the SAC explain how any likely remedy or outcome here will benefit the civilly committed patients they seek to represent—likely because Plaintiffs (as with many other stakeholders) struggle to articulate any practical and realistic fix to the current crisis.  The SAC

simply repeats the same generic (and unsuccessful) platitudes Plaintiffs made to the Ninth Circuit about how they want to force OHA to move civilly committed patients to more appropriate care settings—without explaining *how* the Court could achieve that result as part of this litigation.  As the Ninth Circuit made clear, such generic statements alone are "insufficient" to establish third-party standing given that Plaintiffs concede "bed space at OSH is limited, and OSH is under competing pressure from the [*Mink* Order]."  *Legacy Health Sys.*, 2024 WL 2843034, at *1; *see, e.g.*, SAC at 3 ("OHA lacks sufficient facilities to provide the long-term treatment that OHA is charged by law to provide"); *id.* ¶ 34 (alleging that if civil commit patients could not be placed at community hospitals, "there would simply be no beds to send most patients"); *id.* ¶ 38 ("Plaintiffs cannot transfer the patients elsewhere because, almost always, there is nowhere for the patient to go."); *id.* ("Because of the severity of Oregon's behavioral health crisis, all other Oregon beds that are designed for long-term treatment are typically full and have long closed waitlists."); *id.* ("There simply is not enough available capacity in Oregon for Plaintiffs to transfer civilly committed patients to other facilities (whether for long-term treatment or otherwise).").

Indeed, Plaintiffs implied at oral argument before the Ninth Circuit that the Court could simply order OHA to build more facilities and create more bedspace, but the court found such statements insufficient to meet Plaintiffs' burden here.  The SAC contains no added details about how such an injunction would work in practical terms or "what outcome [Plaintiffs are] in face likely to achieve," *Legacy Health Sys.*, 2024 WL 2843034, at *2.  Nor does the SAC explain how long such relief would take, how it would be "achievable," or what would happen in the interim time after the court enters Plaintiffs' requested declarations or injunctions.

The only thing Plaintiffs are clear about is that they want to terminate their relationships with many of their own civil commitment patients by moving them to other facilities, which raises a significant risk of a direct conflict of interests with those individuals.  On this point, *Siskiyou Hospital, Inc.*, 2022 WL 118409, is particularly instructive.  In *Siskiyou*, a private non-

profit hospital sued the state government on behalf of itself and thousands of civilly committed patients. *Id.* at *1. Like Plaintiffs do here, the hospital alleged that California was leaving civilly committed patients in hospitals for "unduly long periods of time," without reimbursement, which imperiled the patients because the hospital could not "provide necessary mental health care services because it is neither equipped nor staffed to provide such services." *Id.* The court dismissed the third-party claims for lack of standing, given the "glaring conflict of interest" created by plaintiffs "seeking to avoid providing *any* care to these patients." *Id.* at *4 (emphasis in original). The court was "not convinced that [the civilly committed] patients would advance the same arguments or seek the same outcome as Plaintiff," so the claims had to be dismissed. *Id.* at **4–5.

The same analysis applies here. Plaintiffs have creatively tried to distinguish *Siskiyou* by arguing that, unlike that case, they are not asking for an order that would permit them to discontinue *all treatment* to their civilly committed patients. Instead, they insist, they will continue to admit and treat civilly committed patients until a solution is reached and there are facilities with more appropriate care available. But this just brings us full circle to where the Ninth Circuit left off. Plaintiffs provide no detail about how that outcome can be achieved, or what specific remedy the Court can order. So this Court is left to speculate about whether the interests of Plaintiffs and their civilly committed patients would be aligned in achieving Plaintiffs' hypothetical outcome based on an unknown future remedy.

What's more, the SAC continues to include many allegations that (depending on the specific remedy Plaintiffs could feasibly obtain) raise the specter of a conflict between Plaintiffs' interests and the interests of their civilly committed patients. Plaintiffs continue to express concerns about the costs associated with treating civilly committed individuals. They allege that "OHA does not adequately compensate and reimburse hospitals for expending these resources, or hold payers accountable to provide adequate reimbursement." (SAC at 4.) And the SAC is filled with allegations about the financial impact that treating civilly committed individuals is

having on community hospitals.  (*See, e.g.*, *id.* ¶ 50 (treating civilly committed patients "requires significant resources and attention by physicians, nurses, and other healthcare professionals"); *id.* ¶ 52 ("[T]he reimbursement received is inadequate and does not cover costs of care, causing financial harm . . . ."); *id.* ("Plaintiffs incur additional expense for additional staff and workers' compensation costs, property damage, and room closures, for which they are reimbursed"); *id.* ¶ 37 ("These resources include not only the costs associated with medicating and housing these individuals for extended periods of time, but also damage to hospital property as well as the services of its care providers and other precautions needed, such as security and one-on-one sitters, to ensure the safety of the individual and others."); *see also id.* ¶¶ 98, 99.)

All this alleged harm results from civilly committed patients remaining in Plaintiffs' facilities—because, as the Ninth Circuit acknowledged, there is currently nowhere else for them to go and receive treatment.  *See Legacy Health Sys.*, 2024 WL 2843034, at *2 ("But as Legacy Health System's complaint acknowledges, bed space at OSH is limited, and OSH is under competing pressure from the injunction upheld by our circuit.").  If Plaintiffs obtain the ultimate relief they are seeking—to quickly remove civilly committed patients from their hospitals—the *likely* outcome would be that these individuals would receive inferior treatment, or no treatment at all: "Plaintiffs cannot transfer the patients elsewhere because, almost always, there is nowhere for the patient to go."  (SAC ¶ 38.)

Plaintiffs' acknowledged cost considerations may not be dispositive, but they are "relevant to third-party standing, especially to the extent they may reflect a prioritization of the hospitals' financial concerns or indicate a potential disjunction of interests if the remedy sought by [Plaintiffs]—the creation or allocation of additional bed space at OSH for civilly committed patients—proves unavailable."  *Legacy Health Sys.*, 2024 WL 2843034, at *3 (citing *Viceroy Gold Corp.*, 75 F.3d 482 (1996)).

And there is plenty of reason to be concerned about "prioritization of [Plaintiffs'] financials concerns."  Plaintiffs repeatedly allege in the SAC that the costs of treating civilly

committed patients jeopardize **other services** the hospitals provide to the community.  They allege, for example, that treating civilly committed patients is causing them "unsustainable losses that amount to tens of millions of dollars a year" and that, consequently, "some of the[ir] important behavioral health resources may be forced to close."  (SAC ¶ 52.)  A party concerned that treating civilly committed patients could cost them "tens of millions of dollars a year" and force other hospital functions to close cannot neutrally represent the interests of those very same civilly committed patients in developing and enforcing broad injunctive relief.

As if that were not enough, Plaintiffs also readily acknowledge that they face competing interests between their civilly committed patients and **other actual or potential patients** to whom they also owe fiduciary and other duties.  For example, the SAC alleges that:

- "[C]ommunity hospitals are desperately needed to treat and stabilize **other vulnerable patients** experiencing mental health crises" (SAC at 4) (emphasis added);

- "**[O]ther individuals** in acute mental health crises are unable to access care at community hospitals" (SAC at 4) (emphasis added);

- Treating civilly committed patients in hospitals "prevents hospitals from being able to care for **other psychiatric patients in the community** who are in need of emergency and acute care resources" (SAC ¶ 50) (emphasis added);

- "Basic care to such civilly committed individuals includes provider time, provision of a hospital bed, medication, food, housekeeping services, and other hospital resources, which Plaintiffs accordingly cannot allocate to **other patients**." (SAC ¶ 50) (emphasis added);

- "When the hospital beds occupied by civilly committed patients who no longer require emergency or acute care are not available for **other patients who need them** (including other detained and civilly committed patients), patients back up

in emergency departments, resulting in hardship for ***others who need to access*** to needed medical and mental health treatment" (SAC ¶ 51) (emphases added);

▪ Treating civilly committed patients "prevents community hospitals from being able to treat and stabilize ***other vulnerable patients*** experiencing mental health crises . . . ." (SAC ¶ 54) (emphasis added);

▪ "[C]ommunity hospitals are deprived of using their hospital beds for ***other patients in need of emergency and acute psychiatric care*** . . . , which negatively impacts community hospitals' ability to serve ***the community*** and have throughput in their emergency departments, which are often full of ***patients waiting to be admitted***" (SAC ¶ 84) (emphasis added).

So it's not just a matter of Plaintiffs prioritizing their own financial concerns, or the risks treating civilly committed patients poses to Plaintiffs' other facilities and resources. There is also an acknowledged concern that Plaintiffs are prioritizing, and will continue to prioritize, the interests of ***other patients*** over their civilly committed patients. It does not take a crystal ball to envision scenarios in which there could be direct conflict between community hospitals, civilly committed patients, and non-civilly committed patients in developing any ultimate remedy that might be imposed in the future. Indeed, all parties acknowledge that funding and building more facilities, or creating thousands of new beds out of thin air, will require a herculean effort and significant time, thought, expert analysis, resource allocation, balancing of competing interests between different categories of mentally ill patient populations, and so on. Yet Plaintiffs' stated concerns about their own costs and bedspace for other patients will naturally lead them to advocate for the fastest possible short-term fix focused exclusively on getting civilly committed patients out of their hospital beds as quickly as possible, regardless of whether that outcome is the best treatment for their patients. Civilly committed individuals don't care about what's best for the hospitals' bottom line, the "community" at large, or for Plaintiffs' other actual or potential patients—they care only about receiving the best care currently available to them.

Page 15 – DEFENDANT'S MOTIONS TO DISMISS

At any rate, these are issues that simply cannot be resolved based on the current record, and certain not until ***Plaintiffs*** respond to the key questions the Ninth Circuit posed in its remand order—what is the likely outcome of this litigation, and how would civilly committed patients benefit from that outcome?  Put simply, the Ninth Circuit's ruling puts the ball in Plaintiffs' court, as it is their burden to establish standing.  The SAC does not address the Ninth Circuit's questions in any meaningful way.  And the record is no clearer now than it was in Plaintiffs' Amended Complaint, which the Ninth Circuit found "insufficient" to establish third-party standing.

2.      **No Hindrance to Civilly Committed Persons' Abilities to Protect their Own Interests.**

Plaintiffs have also failed to establish the third element required for third-party standing—"some hindrance to [their patients'] ability to protect [their] own interests."  Plaintiffs allege in one paragraph that civilly committed patients are unlikely to advocate on behalf of themselves or find counsel because of the commitment process itself or the patients' mental illness.  (SAC ¶ 63.)  But civilly committed persons have a ***right to counsel*** under Oregon law. *See, e.g.*, ORS 426.385(1)(i) ("Every person with mental illness committed to the Oregon Health Authority shall have the right to . . . [b]e represented by counsel whenever the substantial rights of the person may be affected.").  Plaintiffs have argued that legal representation for civilly committed persons ends once a commitment order is entered, but that is simply not true.  In fact, there are hundreds of civil commitment cases in Oregon that are litigated on appeal, and in many cases that representation extends *beyond* the period of commitment.  (*See* ECF 42 at 21–22.)

In addition, civilly committed persons often bring their own lawsuits (whether represented or *pro se*) when there are disagreements about proper placements.  *See, e.g.*, *Kriz v. Roy*, No. 8:20CV110, 2020 WL 6135442, at *1 (D. Neb. Oct. 19, 2020), *aff'd*, No. 20-3437, 2021 WL 2010333 (8th Cir. Jan. 28, 2021) (*pro se* civilly committed person alleged he was denied "the 'right to be treated in the least restrictive treatment setting and environment'"); *Olson v. Allen*, No. 3:18-CV-001208-SB, 2019 WL 1232834, at *1 (D. Or. Mar. 15, 2019)

(civilly committed patient file suit to contest transfer from community hospital to OSH based on the conditions of his treatment at OSH); *Endsley v. Mayberg*, No. CIV S-09-2311 WBS GGH P, 2010 WL 4829549 (E.D. Cal. Nov. 22, 2010), *report and recommendation adopted*, No. CIV S-09-2311 WBS, 2011 WL 201476 (E.D. Cal. Jan. 19, 2011) (*pro se* plaintiff civilly committed to state mental hospital claimed he was entitled to be housed in a less restrictive setting); *Unterreiner v. Goldberg*, No. CV 06-277-HU, 2007 WL 9808320, at *2 (D. Or. July 27, 2007) (raising objections to the placements where plaintiff was civilly committed); *Salcido ex rel. Gilliland v. Woodbury Cnty., Iowa*, 119 F. Supp. 2d 900 (N.D. Iowa 2000) (civilly committee patient brought action against county and state defendants raising various claims related to his placement); *Conner v. Branstad*, 839 F. Supp. 1346 (S.D. Iowa 1993) (class action by group of institutionalized mentally and physically disabled persons challenging a state's system of providing services in an institutional setting rather than in a community-based environment); *see also* ECF 42 at 22 (citing many other cases).  Where third parties in similar situations have in fact pursued claims, a plaintiff cannot assert third-party standing.  *See, e.g.*, *McCollum v. Calif. Dep't of Corr. & Rehab.*, 647 F.3d 870, 879 (9th Cir. 2011) (Wiccan prison minister lacked third party standing to assert claims on behalf of other inmates where inmates had brought similar claims in that case and other litigation).

Finally, although the Ninth Circuit rejected DRO as a potential advocate for civilly committed individuals, Plaintiffs have not established that no other organizations can seek to intervene on the civilly committed patients' behalf.  Defendant has made clear to Plaintiffs' counsel that OHA would not oppose a motion to intervene from a third-party organization seeking to represent the interests of civilly committed persons, so long as the entity can meet the basic procedural requirements for intervention and substantive requirements for associational standing under Article III.  *See Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d 1100, 1105–06 (9th Cir. 2006) (for associational standing, entity must show (1) that at least one of its members has standing to sue in their own right, (2) interests of the suit are

germane to the entity's purpose, and (3) neither the claim asserted nor relief requested requires participation of individual members).[1]

**B.     Motion 2: Plaintiffs Fail to State Substantive or Procedural Due Process Claims on Behalf of Civilly Committed Individuals.**

Plaintiffs' First and Second claims allege that OHA is violating the substantive and procedural due process rights of civilly committed individuals by not timely placing them in long-term care facilities.  These claims fail as a matter of law.

1.     **Substantive Due Process.**

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "Substantive due process protects individuals from arbitrary deprivation of their liberty by government."  *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1195 (9th Cir. 2013).  "To constitute a violation of substantive due process, the alleged deprivation must shock the conscience and offend the community's sense of fair play and decency."  *Id.* (cleaned up).  Substantive due process protects only those "fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (cleaned up).  A substantive due process claim thus "require[s] . . . a careful description of the asserted fundamental liberty interest."  *Id.* at 721 (cleaned up).

Relying on *Ohlinger v. Watson*, 652 F.2d 775 (9th Cir. 1980), the SAC broadly alleges that "OHA's conduct, policy, and practice" infringes on civilly committed persons' "liberty

---

[1] The National Association on Mental Illness-Oregon ("NAMI") has moved to intervene in this case.  (ECF 121.)  It remains to be seen whether NAMI can provide adequate information about its membership to establish the first element for associational standing—to date, it has refused to do so, which is the only reason the State has opposed its motion to date.  If NAMI can establish the basic requirements for associational standing, this Court can grant NAMI's motion to intervene and there will be no need to have Plaintiffs pursue claims on behalf of civilly committed individuals.

interest in restorative treatment" and "deprives them of a realistic opportunity to be cured or improve the mental condition for which they were confined." (SAC ¶ 69.) But *Ohlinger*, which set forth the standard of care for sex offenders serving indeterminate life sentences in prison under a since-repealed statute, does not apply here. *See* 652 F.2d at 776. Rather, the standard in *Youngberg v. Romeo*, 457 U.S. 307 (1982), applies. *Youngberg*, which the Supreme Court decided over a year after the Ninth Circuit decided *Ohlinger*, sets forth the constitutional minimal standard of care for an involuntarily-admitted hospital patient who lacked "basic self-care skills" due to mental disabilities, like the civilly committed patients Plaintiffs seek to represent here. 457 U.S. at 309.

Civilly committed individuals do not have a constitutional right to optimal treatment or to treatment in the least restrictive setting. *Youngberg* makes clear that the standard for civilly committed patients is "minimally adequate care and treatment." 457 U.S. at 319; *see also Conner v. Branstad*, 839 F. Supp. 1346, 1351 (S.D. Iowa 1993) ("Following the Supreme Court's decision in *Youngberg*, several circuits have uniformly concluded that there is no federal right to treatment in the least restrictive setting.") (citing cases); *Kriz*, 2020 WL 6135442, at *3 (citing cases and holding that "[t]he prevailing view . . . is that there is no general federal constitutional right to a least restrictive environment"). The "minimally adequate care" standard is a deferential one and requires only that a decision have been made by a qualified professional. *Youngberg*, 457 U.S. at 323 ("[T]he decision, if made by a professional, is presumptively valid . . . .").

Here, Plaintiffs do not allege that their facilities fail to provide minimally adequate care and treatment. And the SAC's conclusory allegations about "restorative treatment" and "overly-restrictive settings" fall far short of the carefully described fundamental liberty interest that a

substantive due process claim requires. Plaintiffs do not identify any specific patients or specific mental health conditions allegedly going untreated. Nor do they identify any specific placements that are allegedly "unnecessary." (*See generally* SAC ¶¶ 64–74.) The SAC contains no well pleaded allegations that, if true, would establish that any civilly committed person's fundamental constitutional rights have been infringed. Accordingly, Plaintiffs fail to state a substantive due process claim on behalf of civilly committed individuals.

2.      **Procedural Due Process.**

To state a procedural due process claim, Plaintiffs must plead "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021) (quoting *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018)). Procedural due process is not triggered if there is no constitutionally protected fundamental liberty interest.

The SAC alleges that "there is no adequate state law procedure for either community hospitals or civilly committed patients to contest civilly committed patients' forced housing in community hospitals." (SAC ¶ 76.) It is unclear what Plaintiffs believe the constitutionally protected liberty interests at issue are. Plaintiffs do not seem to object to the civil commitment process in general, which inherently involves the concept of "forced housing." Rather, Plaintiffs seem to suggest that civil commitment patients have a constitutionally protected liberty interest to not be placed in community hospitals. As a matter of law, no such interest exists. As discussed above, civilly committed patients have a constitutionally protected right to minimally adequate care and treatment, but they have no right to be guaranteed any specific placement. *See Youngberg*, 457 U.S. at 319.

The SAC also fails to plead specific allegations that support any alleged denial of adequate procedural protections. Rather, the SAC admits that there is indeed a process— including an appeal mechanism—for patients who wish to be assigned to a different facility.

Page 20 – DEFENDANT'S MOTIONS TO DISMISS

(SAC ¶ 76); *see also* OAR 309-033-0290(5) (describing detailed procedures for committed persons to appeal placement decisions)  Plaintiffs' conclusory allegations that this process is not "meaningful" is not enough to state a procedural due process claim on behalf of civilly committed individuals.

   **C.     Motion 3: Plaintiffs Fail to State Substantive or Procedural Due Process Claims on Their Own Behalf and on Behalf of Other Community Hospitals.**

For similar reasons, Plaintiffs' Third and Fourth claims fail to state cognizable substantive and procedural due process claims.

         **1.     Substantive Due Process.**

Plaintiffs base their own substantive due process claim on OHA's alleged failure "to build or otherwise ensure availability of long-term treatment" for civilly committed individuals, based on lack of funding.  (SAC ¶ 83.)  Plaintiffs allege that this capacity crisis infringes on their "fundamental right to use [their] hospital beds" for other patients "to whom Plaintiffs want to provide" treatment.  (*Id.* ¶ 84.)  This claim fails for two reasons.

First, Plaintiffs' substantive due process claim is subsumed by their takings claim. *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008); *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 855 (9th Cir. 2007); *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1093 (9th Cir. 2015).  Indeed, Plaintiffs' Fifth claim alleges a taking and asserts that OHA's conduct "deprives Plaintiffs and other community hospitals of their hospital beds." (SAC ¶¶ 98, 141.)  Where, as here, a "constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997).  A substantive due process claim that overlaps with a takings claim is subsumed into the takings claim unless the challenged land use action is alleged to be "so arbitrary or irrational that it runs afoul of the Due Process Clause."  *Shanks*, 540 F.3d at 1087. Absent such an allegation, "the Fifth Amendment . . . preclude[s] a due process challenge." *Crown Point*, 506 F.3d at 855; *Rancho de Calistoga*, 800 F.3d at 1093.  Plaintiffs do not allege

that OHA has acted in an arbitrary or irrational manner; rather, Plaintiffs recognize the funding and resource shortages that exist. (*See, e.g.*, SAC ¶ 83; *id.* at 2.)  Accordingly, Plaintiffs' substantive due process claim is subsumed by their takings claim.

Second, there are no well-pleaded allegations from which the Court could plausibly conclude that OHA infringed on Plaintiffs' fundamental liberty interests, let alone in a manner that shocks the conscience. *See Washington*, 521 U.S. at 703 (substantive due process protects only fundamental liberty interests); *Sylvia Landfield Tr.*, 729 F.3d at 1195 (alleged deprivation must shock the conscience).  Plaintiffs allege that OHA caused Plaintiffs to "hav[e] to house" civilly committed patients for long periods of time, thereby denying Plaintiffs of their fundamental right to use their hospital beds for other patients they "want" to treat.  (SAC ¶ 84.) But Plaintiffs are not being forced to do anything here.  OHA is not requiring Plaintiffs to treat civilly committed patients.  Indeed, as previously briefed and discussed at length at oral argument, Plaintiffs have voluntarily sought certification to treat civilly committed patients. (*See, e.g.*, RJN, Exhibits 1–29; *see also* ECF 75 at 11:2–12:21.)  Plaintiffs cannot establish a constitutionally protected liberty interest when they are voluntarily seeking to provide services to civilly committed patients.  *See Sierra Med. Servs. All. v. Kent*, 883 F.3d 1216, 1226 (9th Cir. 2018) (holding that a group of medical providers could not establish a constitutionally protected liberty interest in reimbursement rates for services provided under Medicaid because their participation in the program was voluntary).

### 2. Procedural Due Process.

Plaintiffs' own procedural due process claim fails for the same reasons as their third-party procedural due process claim.  First, Plaintiffs have not properly alleged any deprivation of a constitutionally protected liberty or property interest.  *See Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018).  Plaintiffs have volunteered for and sought approval to treat every civilly committed patient.  (*See* RJN, Exhibits 1–29; *see also* ECF 75 at 11:2–12:21.)  Second, the SAC fails to set forth well-pleaded allegations that support any alleged denial of adequate procedural

protections.  In fact, Plaintiffs admit there is an administrative procedure that would apply to address Plaintiffs' alleged harms.  (SAC ¶ 90.)  Plaintiffs just allege that it is not being followed by OHA—although noticeably absent are allegations that Plaintiffs even tried to engage in this process.  Thus, the court should also dismiss Plaintiffs' procedural due process claim.

### D.    Motion 4: Plaintiffs Fail to State a State or Federal Takings Claim.

Plaintiffs' Fifth and Ninth claims assert state and federal takings claims under the Fifth Amendment of the U.S. Constitution and Article I, Section 18 of the Oregon Constitution. Plaintiffs' allegations for these two claims are virtually identical.  Plaintiffs allege that OHA has "engaged in conduct and a policy and practice that results in a physical taking of Plaintiffs' and other community hospitals' property for public use without just compensation."  (SAC ¶¶ 97, 140.)  Specifically, the SAC asserts that OHA's actions deprive them and other community hospitals "of their hospital beds," which are being "unnecessarily occupied by civilly committed individuals who have no medical reason to be in an acute care setting."  (*Id.* ¶¶ 98, 141.) Plaintiffs make clear, however, that they *do not seek monetary compensation* on the taking claim and only seek "declaratory relief, injunctive relief, and recovery of their attorneys' fees and costs."  (*Id.* ¶¶ 103, 145.)  These takings claims fail for at least three reasons.

First, as discussed above, the SAC includes no well-pleaded facts to show that OHA is *requiring* Plaintiffs to admit and treat civilly committed patients.  OHA has not "taken" anything. *See generally Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1252 (9th Cir. 2013) ("Because participation in Medicaid is voluntary . . . providers do not have a property interest in a particular reimbursement rate.").  Indeed, at the hearing on Defendant's first motion to dismiss, Judge Mosman noted that "it looks like you can't get the physical taking because of the voluntariness issue."  (ECF 75 at 7:9–10; *see also id.* at 39:15–25.)[2]

---

[2] Although the Ninth Circuit held that the voluntary nature of Plaintiffs' decision to seek certification did not mean Plaintiffs lacked Article III standing to assert claims on their own behalf, the court made clear that its standing ruling had no impact on the merits of Plaintiffs' underlying claims. *Legacy Health Sys.*, 2024 WL 2843034, at *1 ("Whether [Plaintiffs] ha[ve] a cause of action (*a question we do not decide*) is not an Article III question.") (emphasis added).

Second, the SAC fails to state a takings claim under federal or state law.  *See State ex rel. Schrunk v. Metz*, 125 Or. App. 405, 412 n. 9 (1993) (explaining that the analysis for a taking under Or. Const. Art. I, § 18, is substantially similar to a Fifth Amendment takings analysis because "the 'basic thrust' of the two provisions is the same").  Plaintiffs have now limited their takings claims to a physical taking, which requires a ***physical*** invasion of property.  *Sierra Med. Serv.*, 883 F.3d at 1226; *Managed Pharmacy Care*, 716 F.3d at 1252.  But Plaintiffs do not allege any direct invasion or appropriation of physical property.  Plaintiffs do not allege (and cannot allege) OHA has physically entered their hospitals and directly taken their beds.

Third, the only remedy Plaintiffs seek is not available in a takings claim.  State governments are permitted to take private property for public use, in exchange for providing just compensation.  *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 686 (9th Cir. 1993) (explaining that an as applied challenge involves "a claim that the particular impact of a government action on a specific piece of property requires the payment of just compensation") (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494 (1987)).  Here, Plaintiffs do not seek additional or "just compensation" in the form of money damages; they only seek declaratory and injunctive relief.  But equitable relief is not an available remedy for takings claims.  *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984) ("Equitable relief is not available to enjoin an alleged taking or private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign to the taking"); *see also Oregon Firearms Fed'n v. Kotek*, 682 F. Supp. 3d 874, 942 (D. Or. 2023) (citing *Knick v. Township of Scott*, 588 U.S. 180 (2019)) (holding that, under *Knick*, declaratory and injunctive relief are not recoverable "as long as an adequate provision for obtaining just compensation exists"); *Los Molinos Mut. Water Co. v. Ekdahl*, 695 F. Supp. 3d 1174, 1189 (E.D. Cal. 2023) (same); *Pakdel v. City & Cnty. of San Francisco*, 636 F. Supp. 3d 1065, 1077–78 (N.D. Cal. 2022) (same; noting "federal courts have consistently denied equitable relief for takings claims — a trend the *Knick* Court noted dates to the 1870s."); *Farhoud v. Brown*, No. 3:20-CV-2226-

JR, 2022 WL 326092, at \*\*10–11 (D. Or. Feb. 3, 2022) (examining *Knick* and *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021)) (noting that equitable relief may be considered for a regulatory taking, but not for a physical takings claim).  So these claims also fail and must be dismissed.

E.     **Motion 5: Plaintiffs Fail to State Claims for Discrimination on the Basis of Disability on Behalf of Civilly Committed Individuals.**

In their Sixth, Seventh, Eighth, and Twelfth claims, Plaintiffs allege that OHA is discriminating against civilly committed individuals on the basis of a disability in violation of three federal statutes—the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Patient Protection and Affordable Care Act ("ACA")—and one state statute, ORS 659A.142. (*See generally* SAC ¶¶ 104–37, 158–65.)  Those claims all fail as a matter of law.

Each of these four statutes the SAC cites requires Plaintiffs to establish that OHA is discriminating against civilly committed patients ***on the basis of*** their disability.  *See Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (To "establish a violation of Title II of the ADA, a plaintiff must show that (1) she is a qualified individual with a disability; (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) ***such exclusion or discrimination was by reason of her disability***.") (emphasis added); *id.* at 1052 (To "establish a violation of Section 504 of the [Rehabilitation Act ("RA")], a plaintiff must show that (1) she is handicapped within the meaning of the RA; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services ***solely by reason of her handicap***; and (4) the program providing the benefit or services receives federal financial assistance.") (emphasis added); *Doe v. CVS Pharmacy, Inc.,* 982 F.3d 1204, 1210 (9th Cir. 2020) (same standard under Section 1557 of the ACA); ORS 659A.142(5)(a) (requiring that the alleged discrimination was "***because the individual has a disability***.") (emphasis added).[3]

---

[3] ORS 659A(5)(c)(B) also states that it "is not intended to . . . [r]equire state government to take any action that state government can demonstrate would result in a fundamental alteration in the

Each of Plaintiffs' disability discrimination claims suffer the same defect: the SAC does not allege that any placement of any civilly committed individuals in one authorized facility (e.g., a community hospital) over another constitutes a discriminatory denial of care. In fact, the SAC does not allege any discrimination at all. It does not identify any groups or individuals who suffered discriminatory acts, or any individual incidents of alleged discrimination. Judge Mosman commented on this issue at oral argument on Defendant's first motion to dismiss, noting that Defendant's disability discrimination claims are "grounded in denying patients treatment or limiting them because of some disability, and that doesn't appear to be the foundation for the treatment decisions made here, since the entire set is identical in that way and a subset is being sent to health systems." (ECF 75 at 9:9–14.)

Nor can Plaintiffs allege facts showing discrimination for failure to admit patients to OSH, as OHA's actions are governed by the *Mink* Order's prohibition of the placement of civil commitment patients at OSH unless the expedited criteria are met. *Legacy Health Sys.*, 2024 WL 2843034, at *2. OHA is not making placement decisions based on civilly committed patients' disabilities, and the SAC does not allege any facts otherwise. Plaintiffs have not pleaded any cognizable theory under these statutes.

### F.     Motion 6: Plaintiffs Fail to State Oregon Statutory Law Claims.

Plaintiffs' Tenth and Eleventh claims assert violations of ORS 426.060 and ORS 426.150(1), which relate to the civil commitment process. (SAC ¶¶ 146–57.) Plaintiffs fail to state a claim against OHA under either statute.

First, neither statute provides a private right of action. Civil liability under Oregon statutes "arises when a statute either expressly or impliedly creates a private right of action for the violation of a statutory duty." *Doyle v. City of Medford*, 356 Or. 336, 344 (2014); *see also Abcarian v. Levine*, 972 F.3d 1019, 1025–26 (9th Cir. 2020) ("[I]f the statutory language itself

---

nature of a service, program or activity of state government *or would result in undue financial or administrative burdens on state government*." (Emphasis added.)

does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.") (citing *Ziglar v. Abbasi*, 582 U.S. 120 (2017)) (cleaned up). Oregon state courts have declined to recognize a private right of action under ORS Chapter 426. *See Maltais v. PeaceHealth*, 326 Or. App. 318, 425 n. 3, *rev. denied*, 371 Or. 509 (2023). This makes sense, since (1) ORS 426.060 merely dictates the powers delegated to OHA for the care and commitment of civilly committed individuals, and (2) ORS 426.150(1) simply grants OHA the authority to take a civilly committed person into "custody" and place them in a treatment facility, generally. There is no express grant of a right of action under these statutes. Nor is there any express remedy, as required for an implied right of action. *Doyle*, 356 Or. at 345.[4]

Second, even if Plaintiffs had a right of action under these statutes (they do not), their claims still fail because the allegations in the SAC cannot overcome OHA's exclusive discretionary authority. ORS 426.060(2); (*see also* ECF 30 at 27–28.) OHA has the exclusive discretionary power to place individuals "in its discretion and for the reasons for which are satisfactory to the authority." ORS 426.060(2)(a). As Judge Mosman previously stated, these statutes "devote the decision entirely to OHA, whose decision shall be final, which is read in many settings where that sort of language is used as nonreviewable." (ECF 75 at 9:4–8.) Neither statute Plaintiffs cite requires any specific treatment type or placement. *See generally* ORS 426.150; ORS 426.060.

Third, the *Mink* Order prohibits OHA from placing civilly committed individuals at OSH unless they meet the expedited admissions criteria. *Legacy Health Sys.*, 2024 WL 2843034, at

---

[4] In fact, the only reference to civil liability in Chapter 426 is a *limitation* of liability for the commitment process or personal injuries suffered based on the conduct of a person with a mental illness. *See* ORS 426.335.

*2. The SAC does not allege that there are other placement options *available* elsewhere. (*See, e.g.*, SAC ¶ 38 ("Plaintiffs cannot transfer the patients elsewhere because, almost always, there is nowhere for the patient to go.").) Nor do Plaintiffs assert that OHA is prohibited from placing civilly committed individuals at Plaintiffs' community hospitals. *See* ORS 426.005(1)(c) (noting options for placement facilities, including community hospitals). Plaintiffs' Tenth and Eleventh claims fail and should be dismissed.

## V.    CONCLUSION

For these reasons, Defendant respectfully asks the Court to grant each of its motions and dismiss the Second Amended Complaint in its entirety, with prejudice.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DATED: November 12, 2024.

CABLE HUSTON LLP

s/ Jon W. Monson
Jon W. Monson, OSB No. 102650
jmonson@cablehuston.com
Nicole M. Swift, OSB No. 141419
nswift@cablehuston.com
Victoria K. Baker, OSB No. 225400
vbaker@cablehuston.com
1455 SW Broadway, Suite 1500
Portland, OR  97201
Telephone: (503) 224-3092
Facsimile: (503) 224-3176

*Special Assistant Attorneys General for Defendant
Sejal Hathi, MD, in her official capacity as
Director of Oregon Health Authority*

Carla A. Scott, OSB No. 054725
Senior Assistant Attorney General
Sheila H. Potter, OSB No. 993485
Deputy Chief Trial Counsel
Craig M. Johnson, OSB No. 080902
Senior Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Carla.A.Scott@doj.state.or.us
Sheila.Potter@doj.state.or.us
Craig.M.Johnson@doj.state.or.us

*Attorneys for Defendants*