IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON ADVOCACY CENTER,[1] et al.,

Plaintiffs,

v.

PATRICK ALLEN, et al.,

Defendants.

No. 3:02-cv-339-MO

OPINION AND ORDER

**MOSMAN, J.,**

Plaintiffs Disability Rights Oregon (DRO) and Metropolitan Public Defender (MPD) seek a modification of the injunction in this case to allow for monitoring of Defendants, a status hearing in six months on Defendants' continued compliance with the injunction, and a designation of prevailing party status under 42 U.S.C. § 1988. [134 and 140]. As discussed below, I DENY Plaintiffs' requests.

## BACKGROUND

### I. The Injunction and Plaintiffs' Motions for Contempt

In 2002, Judge Panner issued an injunction requiring Defendants to transport criminal defendants designated unfit under ORS 161.370 to the Oregon State Hospital within seven days of the order declaring the defendant unfit. [47]. He did not assign Plaintiffs to monitor Defendants' compliance with the Order. *Id.* Defendants complied with the injunction for sixteen years but fell out of compliance in October 2018. [140 at 3]. The noncompliance lasted until

---

[1] Oregon Advocacy Center is now Disability Rights Oregon. [91 at 2].

1—Opinion and Order

July 25, 2019, a period of about nine months. [144 at 3]. In May 2019, Plaintiffs filed Motions [85 and 91] for contempt. After the June 11, 2019, hearing on those motions, I declined to make a finding of contempt. [127]. Because Defendants remained out of compliance at the June hearing, I set a compliance hearing for ninety-days out on September 12, 2019. *Id.*

## II. Plaintiffs' Requests for Modification of the Injunction and to be Declared the Prevailing Party in their Contempt Motions

On August 23, 2019, Plaintiffs filed a Brief for the Compliance Hearing (compliance hearing brief) [134] that requested I: (1) consider modifying the Order [47] granting injunctive relief in this case to allow for monitoring of Defendants by the Court and by Plaintiffs [134 at 3-4, 5,7]; (2) set a status hearing in six months to determine whether Senate Bills 24 and 25 undermined Defendants' compliance with the injunction and pretrial detainees' constitutional rights *Id;* and (3) declare them the "prevailing party under [42] U.S.C. § 1988 so that they may seek an award of attorney fees and costs." [*Id.* at 7].

In support of the request to modify and set a hearing in six months, Plaintiffs asserted that Defendants' several months of noncompliance warrants monitoring and that new legislation, Senate Bills (SB) 24 and 25 will likely result in continued violation of the injunctions. Plaintiffs argued that SB 24 requires diversion to community restoration programs that do not yet exist. [134 at 6]. Plaintiffs argued they met section 1988's definition of prevailing party despite no finding of contempt because Defendants only began to reduce the wait list for admission to the state hospital in May 2019, after Plaintiffs filed their contempt Motions. *Id.* According to Plaintiffs, I could "reasonably attribute the state's response as at least *partially* prompted by the contempt action" and declare them the prevailing parties under 42 U.S.C. § 1988. *Id.* (emphasis added). Defendants filed a two-page response that addressed only Plaintiffs' request to be declared the prevailing party. [137].

2—Opinion and Order

During the September 12, 2019, compliance hearing, Plaintiffs relied on their argument that their motivation of Defendants' conformity to the injunction warranted prevailing party status. [143 at 5:16-6:13]. They also, for the first time, asserted that their efforts to enforce the injunction—their "monitoring" work—entitled them to fees. To give the parties a chance to brief Plaintiffs new argument for fees, I took the Plaintiffs' monitoring, six-month status hearing, and prevailing party requests under advisement and allowed supplemental briefing on the attorney fees issue.

## DISCUSSION

### I. <u>Plaintiffs' Request for Prevailing Party Status</u>

To be entitled to prevailing party fees under section 1988, a party must have "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerharhart*, 461 U.S. 424, 433 (1983) (citations omitted). In cases where a party previously prevailed, fees may, under certain circumstances, be allowed for efforts leading to a motion that was denied. *Balla v. Idaho*, 677 F.3d 910, 916 (2012). Generally, however, for trial court to act within its discretion in awarding a party fees for a lost motion, the motion must have been the catalyst in achieving the benefit the motion sought. *Id.* Here, the parties agree that Plaintiffs were the original prevailing parties in this action. They disagree about whether Plaintiffs actions—either their "post-judgment monitoring" or filing the contempt Motions—catalyzed Defendants to conform with the injunction in July 2019.

In their supplemental briefing, Plaintiffs make a conclusory argument that their "post-judgment monitoring" is compensable because it forced Defendants' back into compliance with the injunction. As noted above, Judge Panner did not charge Plaintiffs with monitoring Defendants' compliance with the injunction. Despite this, however, plaintiff DRO asserts that it

3—Opinion and Order

"performed monitoring for sixteen years with no petition for fees." [140 at 9]. Plaintiff MPD does not assert that it performed any monitoring over the past sixteen years but does assert that it "similarly made extensive efforts to force Defendants into compliance." [140 at 9].

The cases cited by Plaintiffs in their supplemental briefing generally support the proposition that reasonable monitoring of a court's decrees to insure compliance and that the court's plan is working is compensable. *See, e.g. Northcross v. Bd. of Ed. of Memphis City Sch.*, 611 F.2d 624, 637 (1979) (overruled on other grounds) (providing guidance to the district court on remand that "services devoted to reasonable monitoring of the court's decrees, both to insure full compliance and to ensure that the plan is indeed working . . . are compensable services"); *Garrity v. Sununu*, 752 F.2d 727, 738 (1st Cir. 1984) (finding the district court did not abuse its discretion in awarding fees for monitoring work stemming from disputes between counsel about various items detailed in the court's order of implementation).

In those cases, however, the underlying judgments or settlements provided for either monitoring or other additional work after the entry of judgment. For example, in *Garrity*, after issuing a decision, the court "directed the parties to work out a joint plan" to implement its decision. *Garrity*, 752 at 730. The parties instead presented the court with two competing plans, which the court combined. *Id.* The plaintiffs then moved for attorney fees related to the parties' dispute over how to implement the court's decision. *Id.* Here, however, neither Judge Panner's Order nor any agreement between the parties provides for monitoring or any other additional work. Accordingly, neither DRO's monitoring work nor MPD's efforts to force Defendants into compliance are compensable.

Despite arguing that monitoring fees are compensable, Plaintiffs supplemental briefing states they "seek fees now *only* for their time spent bringing this contempt motion." [140 at 9]

(emphasis added). Plaintiffs contend that their "efforts resulted in success in modifying the states behavior" to resume compliance with the 2002 injunction, noting that it was "only after Plaintiffs' contempt motions were filed that Defendants issued a compliance plan" and only after I set a compliance hearing for September 12 that Defendants "opened hospital beds that could have been opened eight months ago." *Id.* at 11.

Defendants dispute Plaintiffs' contention that the contempt motions and compliance hearing deadline motivated them to come back into compliance with the injunction in July 2019. In support, they rely in part on compliance and hospital admission history. Specifically, during time between October 2018 and May 2019, when Plaintiffs filed their Motions, there were significant periods when the state hospital admitted criminal defendants during the seven-day time limit, which shows that the contempt Motions did not drive Defendants efforts. [145 at ¶ 9]. Defendants further argue that they resumed compliance due to five developments that all resulted from work begin in 2018 or before: (1) the passage of SB 24, which decreases commitment orders and improves discharge; (2) passage of SB 25, which eliminates delayed delivery of orders to the state hospital; (3) increased funding to counties for community services; (4) increased capacity in the state hospital; and (5) improved admissions processes, which stems from hiring more evaluators.

As noted above, under the Ninth Circuit's holding in *Balla*, a trial court may be within its discretion to find that a party is entitled to prevailing party fees for a motion that was denied. 677 F.3d at 916. In *Balla*, the plaintiff prisoners were the prevailing parties in an injunction to address prison overcrowding. *Id.* at 911. Their subsequently appointed counsel filed a contempt motion to enforce the injunction the prisoners won after the state refused to commit to obey the injunction by any set date. *Id.* at 913-14. The state came back into compliance two weeks after

5—Opinion and Order

appointed counsel filed the contempt motion, and the court denied the motion before it was heard. *Id.* at 914. The state admitted the motion motivated their return to compliance. *Id.* at 914 and 916. In finding the district court's fee award reasonable, the Ninth Circuit noted: "Despite losing the battle over the contempt motion, the prisoners nevertheless won the war by inducing the State's prompt return to compliance with the injunction." *Id.* at 920.

Here, the record does not support a finding that Plaintiffs' contempt Motions were the "catalyst that spurred" Defendants into returning into compliance. *Balla*, 677 F.3d at 916 (noting the filing of the motion in that case was "a 'catalyst' spurring defendants to conform quickly to the injunction.") Plaintiffs contention that they were the motiving force behind Defendants conforming to the injunction appears to stem solely from the fact that defendants resumed consistently admitting criminal defendants to the state hospital within seven days after Plaintiffs filed their contempt Motions. This argument, however, ignores the evidence in the record that establishes that Defendants sporadically complied with the injunction between October 2018 and July 2019. [145 at ¶ 9]. It likewise ignores that Defendants started working on solving their capacity issue that led to their noncompliance well in advance of May 2019, when Plaintiffs' filed their Motions. *Id.* at ¶ 6. Indeed, Plaintiffs' compliance hearing briefing appears to recognize that their Motions were not fully responsible for Defendants' conformity with the injunction because they asserted that I could "reasonably attribute the state's response *at least partially* prompted by the contempt action." [134 at 7].

Based on the record, I cannot find that Plaintiffs work to compel compliance with the injunction was "directly and reasonably incurred in enforcing the relief." *Balla*, 677 F.3d at 920. Here, unlike *Balla*, Plaintiffs loss—my failure to find Defendants in contempt at the June 2019 hearing—did not stem from the effectiveness of the Motions to compel. *Id.* Instead, it stemmed

from Defendants representation at the June 2019 hearing that they would return to compliance within ninety days of the hearing due to work they had started well before Plaintiffs filed their contempt Motions in May 2019. *See, e.g.*[130 at 10:3-10 (testimony of Pat Allen that in anticipation of a spike in demand for hospital beds by criminal defendants the Oregon Health Authority began developing proposals "eighteen months ago.")]. Accordingly, I deny Plaintiffs' request to be declared the prevailing party under section 1988 and for an award of fees for their time spent bringing their contempt Motions.

## II. Plaintiffs' Request to Modify the Injunction to Allow Monitoring and a Status Hearing

Plaintiffs request that I modify Judge Panner's order to require "periodic reports to the plaintiffs and the Court regarding the ongoing and uncontrolled growth of the aid and assist population and resulting implications to long term compliance." They also seek a status hearing in six months to determine whether SB 24 and 25 have undermined compliance and the constitutional rights of pretrial detainees. Defendants object to both requests.

"[A] party seeking modification of an [injunction] may meet its initial burden by showing a significant change either in factual conditions or in law." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367,384 (1992); *see also Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir.2000) ("A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction"). If the moving party meets this burden, "the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 383, 112 S.Ct. 748. Modification may be warranted "when changed factual conditions ma[k]e compliance ... substantially more onerous, ... when an [injunction] proves to be unworkable because of

7—Opinion and Order

unforeseen obstacles, ... or when enforcement of the decree without modification would be detrimental to the public interest." *Id.* at 384.

According to Plaintiffs, Defendants' "seven months" of noncompliance requires monitoring. [134]. Defendants' noncompliance, however, is not a significant change that meets the standard for modification. More persuasive is Plaintiffs' assertion that SB 24 and SB 25 will likely result in continued violations of the injunction. Plaintiffs argue that SB 24 requires diversion to community restoration programs, but those programs do not yet exist. [134 at 6]. Defendants offer evidence that, since the June 11, 2019, hearing, emergency funding has created thirty-two additional beds in Multnomah, Lane, and Coos counties, all of which were open for use as of August 2019. [145 at ¶ 3]. While the new legislation is a change in the law, it is not clear from the record that it is likely to have any negative effect on Defendants' compliance with the injunction. Because Plaintiffs have not met the standard for modification of the injunction, I deny this request. I also find that Plaintiffs have not established that a hearing in six months is necessary.

## CONCLUSION

I DENY Plaintiffs' requests [134] to modify the injunction, hold a status hearing in six months, and be declared the prevailing party under 42 U.S.C. § 1988 and their Motion [140] for attorney fees.

DATED this 28 day of October, 2019.

MICHAEL W. MOSMAN
Chief United States District Judge