Jesse Merrithew OSB #074564
Email: jesse@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092
*Counsel for Plaintiff Metropolitan Public Defender*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES INC., and A.J. MADISON, | Case No. 3:02-cv-00339-AN (Lead Case) Case No. 3:21-cv-01637-AN (Member Case) |
| Plaintiffs, | |
| vs. | |
| SAJEL HATHI, in her official capacity as head of the Oregon Health Authority, and SARA WALKER, in her official capacity as Interim Superintendent of the Oregon State Hospital, | METROPOLITAN PUBLIC DEFENDER'S PARTIAL JOINDER TO DISABILITY RIGHTS OREGON'S MOTION FOR CONTEMPT AND REMEDIAL ORDER |
| Defendants, | |
| and | |
| JAROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON, | |
| Plaintiffs, | |
| vs. | |
| SARA WALKER, Interim Superintendent of the Oregon State Hospital, in her official capacity, DOLORES MATTEUCCI, in her individual capacity, SAJEL HATHI, Direction of the Oregon Health Authority, in | |

METROPOLITAN PUBLIC DEFENDER'S PARTIAL JOINDER TO DISABILITY RIGHTS OREGON'S MOTION FOR CONTEMPT AND REMEDIAL ORDER - 1
(Case No. 3:02-cv-00339-MO)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

her official capacity, and PATRICK ALLEN
in his individual capacity,

               Defendants.

LEGACY EMANUEL HOSPITAL &
HEALTH CENTER d/b/a UNITY CENTER
FOR BEHAVIORAL HEALTH; LEGACY
HEALTH SYSTEM; PEACEHEALTH; and
PROVIDENCE HEALTH & SERVICES
OREGON,

               Plaintiffs,

   vs.

SAJEL HATHI, in her official capacity as
Director of the Oregon Health Authority,

               Defendant.

Case No. 6:22-cv-01460-AN (Member Case)

      Plaintiff Metropolitan Public Defender ("MPD") partially joins with Plaintiff Disability

Rights Oregon's ("DRO") motion for contempt and remedial order (Dkt. 540). MPD takes no

position on DRO's motion to have the Defendants held in contempt.[1] It joins in DRO's request

for a further remedial order designed to bring the Defendants into compliance, as specifically set

out below. The details of these proposed changes have been reviewed and vetted by the Court's

neutral expert.

---

[1] The Amici judges recently filed memorandum suggests that contempt is a necessary first step
prior to entering a remedial order. Dkt. 554. MPD disagrees with this legal analysis largely
because MPD believes a contempt finding and/or monetary fines will have no effect on
compliance. Multiple contempt findings in state court have had no effect on compliance.
However, if the Court determines that a contempt finding is a necessary first step, then the Court
should make that finding.

## FACTS

MPD largely joins and adopts DRO's extensive explanation of the background of this case. The underlying due process violation that led to both the permanent injunction in *Mink* and the temporary restraining order in *Bowman* is that people were being held in jail, not receiving mental health treatment, and not making progress toward their release from custody. The precise time that this violation was occurring in *Mink* between the time when an order under ORS 161.370 was signed and the time they entered the hospital. In *Bowman*, it was the time between when a GEI commitment order was signed and the time they entered the hospital. However, the exact same violation can occur at other points in the life of a case. It can occur during delays between when a person with obvious disabilities comes into custody and when the court orders them treated until fit. It can occur when a court orders a person held in jail awaiting a treatment bed in the community, either at the outset of their commitment or upon returning to the county following a hospital stay. And it can occur whenever a state court judge and the state hospital have disagreements about whether the person can be placed in the hospital. These other situations where violations occur have increased dramatically since the imposition of this Court's remedial order. It is MPD's sole goal in this litigation to eliminate due process violations for criminal defendants whenever in the process they may occur.

## ARGUMENT

MPD adopts and incorporates by reference DRO's legal argument regarding the authority of this Court to issue remedial orders designed to enforce its orders, particularly a permanent injunction that enforces a constitutional right. This Court should issue a further remedial order to force the state into compliance, but it should do so cognizant of the risk that fixing a

METROPOLITAN PUBLIC DEFENDER'S PARTIAL JOINDER TO
DISABILITY RIGHTS OREGON'S MOTION FOR CONTEMPT AND
REMEDIAL ORDER - 3
(Case No. 3:02-cv-00339-MO)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

constitutional violation at stage one of the system could result in the unintended consequence of people being subjected to the same constitutional violation at a later stage.

There are only a few major levers available to the Court to address this problem. The Court can limit admissions, limit the amount of time people spend in the restoration system, or increase supply. The remedial steps outlined below address the front door to OSH (admissions), the back door to OSH (discharges), and improving the process with the aim of moving people through the restoration system more quickly. MPD also asks the Court to order the Defendants to fund an independent review of where the greatest needs are to increase supply of behavioral health resources used in the community restoration process and in the placement of individuals found Guilty Except Insane ("GEI").

I.      **Further Limitations On Hospital Admissions**

*This Court should order OSH to only admit criminal defendants for restoration whose most serious charge is an active, trial level felony in this state.*

This Court has already restricted admissions to OSH to those charged with either a "person misdemeanor" or a felony. The amici state court judges, district attorneys, and counties have uniformly opposed this restriction. Therefore, this Court should expect that any further restrictions will be met with similar resistance. Nonetheless, compliance with the constitution is the first command in our system of government; everything else is secondary. Compliance with the constitution cannot be obtained in the short term without some further restrictions on admissions to OSH.

There are two groups of people who occasionally get committed to the Oregon State Hospital with no clear state statutory authority for restoration treatment: probation violators and people who are detained pursuant to the Uniform Criminal Extradition Act. Neither group has

METROPOLITAN PUBLIC DEFENDER'S PARTIAL JOINDER TO
DISABILITY RIGHTS OREGON'S MOTION FOR CONTEMPT AND
REMEDIAL ORDER - 4
(Case No. 3:02-cv-00339-MO)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

the right to a trial in this state. ORS 161.360 and its related provisions having to do with fitness

to proceed apply when "before or during the trial in any criminal case, the court has reason to

doubt the defendant's fitness to proceed… ." Or. Rev. Stat. § 161.360(1). Those provisions

mirror the federal constitutional right they are meant to protect first set out in *Dusky v. United*

*States*, 362 U.S. 402 (1960) and *Pate v. Robinson*, 383 U.S. 375 (1966), which forbid "the

conviction of an accused person while he is legally incompetent." 383 U.S. at 378. For neither

group of people is there a risk that they will be convicted of anything while incompetent. For

accused probation violators, they have already been convicted; for people wanted in other states,

those states are the appropriate venue for determining their fitness to proceed and treating them

as necessary. OSH should not admit either group for restoration treatment, and this Court should

order them not to.

Restricting all persons charged with misdemeanors from admission to OSH will be met

with strenuous objection by prosecutors and some judges. The Court will likely hear stories

about the serious nature of many of these crimes, and the impact these crimes have on their

victims. These stories should not be discounted or dismissed. But it is the job of the Oregon

legislature to determine which crimes are relatively more serious than others. If further

restrictions on admissions are necessary to achieve compliance with the constitution, and the

Defendants suggest that they cannot achieve compliance without further restrictions, then

restricting admissions based on the crime seriousness assigned by the Oregon legislature is the

only rational way to further restrict admissions.

METROPOLITAN PUBLIC DEFENDER'S PARTIAL JOINDER TO
DISABILITY RIGHTS OREGON'S MOTION FOR CONTEMPT AND
REMEDIAL ORDER - 5
(Case No. 3:02-cv-00339-MO)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

II.     **Increase Authority to Discharge Patients**

*This Court should order the Defendants to use all reasonable efforts to facilitate and expedite discharges of patients no longer needing hospital level of care, including working with the local CMHP and committing court to expeditiously effect discharges. Only where those efforts are unsuccessful, and only to the extent necessary to achieve compliance with the underlying injunction, this Court should authorize OSH to discharge directly to a community restoration placement any patient their clinicians have determined no longer needs a hospital level of care and for whom an appropriate placement has been identified by OSH and CMHP. This Court should further order OSH to provide the necessary funds where funding is a barrier to discharge. This Court should further order OSH to provide transportation for any patient whom it discharges directly to a community placement.*

As of December 31, 2024, there were 82 people waiting in jails around the state for admission to OSH.[2] Meanwhile, there were 88 people in OSH whom OSH's clinicians have determined no longer need a hospital level of care. This dynamic, with an equal or greater number of people waiting to get out of the hospital as there are waiting to get into the hospital, has persisted ever since OSH began tracking this information and reporting it to Plaintiffs, at least for the last three years. This suggests that solving this dynamic—getting patients discharged in a timely manner who do not need a hospital level of care—would sustainably eliminate the wait list without adding capacity to OSH. Whether or not the promise of that solution pans out

---

[2] All of this data is drawn from OHA's most recent monthly report, available on OHA's website: https://www.oregon.gov/oha/OSH/reports/2024-12-OSH-Forensic-Admission-Discharge-Dashboard.pdf

METROPOLITAN PUBLIC DEFENDER'S PARTIAL JOINDER TO
DISABILITY RIGHTS OREGON'S MOTION FOR CONTEMPT AND
REMEDIAL ORDER - 6
(Case No. 3:02-cv-00339-MO)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

remains to be seen, but it is worth focusing significant effort on as every discharge allows for an admission.

The 88 people who have been deemed "ready to place" ("RTP") by OSH are charged with misdemeanors or non-violent felonies only. OSH does not evaluate patients charged with violent felonies for community placement. The procedures that lead to people being placed on this list are outlined in ORS 161.371(3)-(4). Simplified, both OSH and the CMHP evaluate whether there is an appropriate community placement for the patient and report that to the court. The court then holds a hearing to determine whether to discharge the patient to a community placement or continue to hold them in OSH. In December, it took an average of 61.1 days for the 15 people who were actually discharged off the RTP list to leave OSH. If we assume that the average number of people on the RTP list is somewhat close to the number on the list at the end of the month (88), then only 17% of people on the RTP list were discharged in the course of the month, and those 15 had been on the list an average of two months. Even modest improvements in these numbers could have significant impact.

Plaintiffs have received conflicting information regarding where the barriers to discharge are. One explanation is that, even where a patient no longer needs a hospital level of care, the level of care the patient needs is not actually available in the community, or the facilities that provide it have wait lists that cause delays. Another explanation is that, even where a facility exists that both the OHA and CMHP agree is appropriate and has space available, the state court judges refuse to authorize release to that facility, believing a higher level of care (with less availability) is necessary. Because of the disjointed nature of Oregon's system for delivering behavioral health, mirrored in the disjointed process for discharging patients on the RTP list, MPD is not in a position to know what is driving this problem. The goal of this proposed order is

METROPOLITAN PUBLIC DEFENDER'S PARTIAL JOINDER TO
DISABILITY RIGHTS OREGON'S MOTION FOR CONTEMPT AND
REMEDIAL ORDER - 7
(Case No. 3:02-cv-00339-MO)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

to put the Defendants squarely in the driver's seat by giving them the authority to discharge patients to appropriate facilities, combined with their pre-existing obligation to provide the full continuum of necessary behavioral health services. If these numbers do not improve, then the Defendants will have no one to blame but themselves.

Recently, the OHA and OSH established a unit dedicated to helping facilitate and expedite discharges of patients deemed RTP. This unit is called the Extended Care Management Unit ("ECMU"). Its formation was based on the suggestion of people within the CMHP system who experienced the period of de-institutionalization following *Olmstead*. That group has shown some early promise. This provision would empower them to not just identify barriers to discharge, but to dislodge those barriers where necessary to achieve compliance.

III.    **Increase Efficiency in Discharging Patients Committed Under Guilty Except Insane Orders**

***This Court should order the Defendants to reduce delays at every step of the GEI discharge review and "conditional release ready" discharge process by 20% within 90 days.***

Similar to the RTP population, for patients committed as GEI, there is a process to get those patients discharged from the hospital to a community placement when those patients no longer need hospital level of care. Unlike the RTP population, it is not state court judges, but the Psychiatric Security Review Board that retains jurisdiction over these patients. There are a series of five steps that occur between the time that clinicians identify the patient as potentially ready to discharge to the time when the patient actually is determined dischargeable by clinicians and the PSRB.  Presently, the Defendants internal metrics require these steps to be completed within 270 days. They are not meeting this metric in 60% of the cases. In many cases, patients are being

METROPOLITAN PUBLIC DEFENDER'S PARTIAL JOINDER TO DISABILITY RIGHTS OREGON'S MOTION FOR CONTEMPT AND REMEDIAL ORDER - 8
(Case No. 3:02-cv-00339-MO)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

held in the hospital, likely in violation of Title II of the ADA,[3] for a full year or more *after* the

state's treatment professionals determine they do not need to be there due to this inefficient

system. Some of the delays are simply due to the time to complete administrative tasks that take

longer in an overburdened system. Others relate to community capacity for appropriate

placements combined with a lack of flow through those placements.  Some of the steps may

therefore be harder to shorten, but an overall requirement will allow more movement and then

provide for an explanation of other barriers and identification of other opportunities to get these

timelines down further.

      Here again, even modest improvements can pay significant dividends. The Court should

simply order the Defendants to improve these timelines by 20% at each step in the process.

### IV.    **Sufficient Forensic Evaluator Capacity to Meet Demand**

      ***This Court should order the Defendants to hire or contract with enough certified***

***forensic evaluators to a) eliminate the backlog of forensic evaluations within a reasonable***

***time determined by Dr. Pinals, and b) maintain the ability to complete all ordered forensic***

***evaluations in a timely manner.***

      There is no dispute that there is a backlog of evaluations that need to be conducted. This

backlog can itself lead to constitutional violations whenever a person is waiting in jail to be

evaluated. Amici have identified the backlog as a bottleneck in the system that may be

contributing to delays in moving people through the community restoration system, which in turn

impacts the ability of OSH to discharge people on the RTP list, as well as forcing people into

---

[3] *See Olmstead v. L.C. by Zimring*, 527 U.S. 581, 607 (1999) (holding that "States are required to
provide community-based treatment for persons with mental disabilities when the State's
treatment professionals determine that such placement is appropriate, the affected persons do not
oppose such treatment, and the placement can be reasonably accommodated…")

METROPOLITAN PUBLIC DEFENDER'S PARTIAL JOINDER TO
DISABILITY RIGHTS OREGON'S MOTION FOR CONTEMPT AND
REMEDIAL ORDER - 9
(Case No. 3:02-cv-00339-MO)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

OSH at the outset who may otherwise be appropriate for a community restoration placement right from the start.

## V.     <u>Limit Community Restoration Timelines</u>

***This Court should order the Defendants to take all reasonable steps to impose limitations on community restoration consistent with Dr. Pinals' recommendations.***

Dr. Pinals has repeatedly recommended that limitations be placed on the duration of community restoration for a number of reasons. MPD understands that there is a legislative concept drafted that would impose limitations if passed. The Defendants in this case do not have direct control over the amount of time individuals spend in community restoration. However, they do provide the vast majority of the money to provide those services. This Court should order that they examine all the tools in their disposal, including funding, to impose limitations on community restoration consistent with Dr. Pinals' recommendations.

## VI.     <u>Review Needed Capacity</u>

***This Court should order the Defendants to hire an independent auditor, overseen and chosen by Dr. Pinals, to a) review how the state spent the money dedicated to increasing the supply of behavioral health services in the community, b) identify what levels of care are still lacking and where, and c) provide this information in a public report to the Court to be completed within 90 days.***

Amici have repeatedly suggested, forcefully at times, that building more hospital beds is necessary to achieve compliance over the long term. Both Amici and the parties agree that more capacity is needed in the community. Attempting to address this problem, the legislature allocated significant funds to behavioral health over the past two sessions. However, the way that money actually gets spent on behavioral health in Oregon is opaque and unaccountable. OHA

METROPOLITAN PUBLIC DEFENDER'S PARTIAL JOINDER TO
DISABILITY RIGHTS OREGON'S MOTION FOR CONTEMPT AND
REMEDIAL ORDER - 10
(Case No. 3:02-cv-00339-MO)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

provides the funds to counties who may either spend the money themselves on direct provision

of services, or may themselves provide the money to third parties to provide the services. The

result of this system is twofold: first, no one can reliably state how the money the legislature

allocated in the past was actually spent (and whether it was spent efficiently), and second, no one

can reliably state what is still needed, nor how much it would cost.

> Against that backdrop, MPD's position is that ordering the Defendants to spend
>
> money at any particular level of care or increase supply at any particular level of care
>
> is premature. The Court first needs objective information to make these decisions.
>
> Therefore, this Court should order the Defendants to provide that objective
>
> information. To ensure objectivity, the Court should require the Defendants to pay,
>
> but have the study overseen by Dr. Pinals, who is ultimately accountable only to this
>
> Court.

DATED this 23rd day of January, 2025.

LEVI MERRITHEW HORST PC

s/ *Jesse Merrithew*
Jesse Merrithew OSB #074564
*C*ounsel for Plaintiffs Metropolitan Public
Defender, Jarrod Bowman, and Joshawn
Douglas-Simpson

METROPOLITAN PUBLIC DEFENDER'S PARTIAL JOINDER TO
DISABILITY RIGHTS OREGON'S MOTION FOR CONTEMPT AND
REMEDIAL ORDER - 11
(Case No. 3:02-cv-00339-MO)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092