**Eric J. Neiman, OSB #823513**     Hon. Adrienne Nelson
eneiman@ebglaw.com
**Emma P. Pelkey, OSB #144029**
epelkey@ebglaw.com
EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch St., Suite 500
Portland, OR  97209
Telephone:  503.343.6475

**Thomas R. Johnson, OSB #010645**
Tom.Johnson@stoel.com
**Alex Van Rysselberghe, OSB #174836**
Alex.VanRysselberghe@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

*Attorneys for Amici Hospitals*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON; METROPOLITAN PUBLIC DEFENDERS INCORPORATED; and A.J. MADISON,<br><br>           Plaintiffs,<br>v.<br><br>SEJAL HATHI, in her official capacity as Director of Oregon Health Authority; and SARA WALKER, in her official capacity as Superintendent of the Oregon State Hospital,<br><br>           Defendants. | Case No.:  3:02-cv-00339-AN (Lead Case)<br><br>*AMICI* HOSPITALS' REQUEST FOR LIMITED PARTICIPATION IN CONTEMPT HEARING |

*AMICI* HOSPITALS' REQUEST FOR LIMITED PARTICIPATION IN CONTEMPT HEARING

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

| | |
|---|---|
| JAROD BOWMAN; and JOSHAWN DOUGLAS SIMPSON,<br><br>        Plaintiffs,<br><br>v.<br><br>SARA WALKER, Superintendent of the Oregon State Hospital, in her individual and official capacity; SEJAL HATHI, Director of the Oregon Health Authority, in her individual and official capacity,<br><br>        Defendants. | Case No.: 3:21-cv-01637-AN (Member Case) |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; PROVIDENCE HEALTH & SERVICES – OREGON; and ST. CHARLES HEALTH SYSTEM,<br><br>        Plaintiffs,<br><br>v.<br><br>SEJAL HATHI, in her official capacity as Director of Oregon Health Authority,<br><br>        Defendant. | Case No.: 6:22-cv-01460-AN (Member Case) |

*AMICI* HOSPITALS' REQUEST FOR LIMITED PARTICIPATION IN CONTEMPT HEARING

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

**CONFERRAL CERTIFICATION**

*Amici* Hospitals do not view their request as a motion under Local Rule 7-1. However, in the interests of resolving this issue, counsel for *Amici* Hospitals have conferred in good faith about their request with counsel for Plaintiff Disability Rights Oregon (DRO) via videoconference on February 25, 2025, and email on February 25 and 26; with counsel for Plaintiff Metropolitan Public Defenders (MPD) via email on February 25 and 26; and with counsel for Defendants Oregon Health Authority (OHA) and Oregon State Hospital (OSH) via email on February 26, 27, and 28, as well as attempted phone calls on February 26 and 27.

The parties were unable to reach an agreement. As Hospitals understand it, DRO does not oppose Hospitals participating as an *amici* if limited to a brief closing statement of up to 20 minutes; however, DRO opposes Hospitals giving an opening statement or calling or examining witnesses. Despite multiple attempts to contact Defendants' counsel, Hospitals' counsel did not hear back from Defendants' counsel as to whether they oppose the request.

**REQUEST**

*Amici* Legacy Emanuel Hospital & Health Center d/b/a Unity Center for Behavioral Health, Legacy Health System, PeaceHealth, Providence Health & Services – Oregon, and St. Charles Health System ("Hospitals") respectfully seek an order permitting their limited participation in the two-day contempt hearing set for March 12 and 13, 2025. As discussed below, civilly committed patients and Hospitals have a profound interest in and will be directly affected by the proposed remedies requested by Plaintiffs. Thus, Hospitals seek to participate for

*AMICI* HOSPITALS' REQUEST FOR LIMITED PARTICIPATION IN CONTEMPT HEARING
Page 1

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

the limited purpose of ensuring the interests of civilly committed patients and community hospitals are presented and protected.

Hospitals request permission to (1) present an opening and closing statement regarding the requested remedies, and (2) if necessary, depending on the evidence, be permitted to put on one witness and participate in brief cross-examination (no more than five minutes per witness) on issues related to civilly committed patients and community hospitals in Oregon.  In the alternative, and at the very least, Hospitals request 20 minutes for oral argument on the impacts of the requested remedies on civilly committed patients and community hospitals.

DRO has advised that Plaintiffs plan to call only Dr. Pinals.  Hospitals do not know Defendants' witness list.  Because Hospitals do not know what witnesses Defendants intend to call, nor what specific topics Dr. Pinals or Defendants' witnesses will testify about, it is difficult for Hospitals to preemptively commit to what questions they would ask or whether Hospitals would even need to ask questions of certain witnesses.  However, to ensure Hospitals' and civilly committed patients' interests are presented and protected, Hospitals request the ability to participate on a limited basis during the two-day hearing, if needed.  If Hospitals are permitted to have a witness testify, it will be a behavioral health executive from one of the health systems.

This request is based on the court files in the cases and the memorandum of law below.

## MEMORANDUM OF LAW

### I.   INTRODUCTION AND BACKGROUND

This case concerns a sprawling social problem: Oregon's statewide behavioral health crisis relating to individuals with mental illness.  However, the three parties to the litigation—the

*AMICI* HOSPITALS' REQUEST FOR LIMITED PARTICIPATION IN CONTEMPT HEARING
Page 2

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

State, and two groups representing criminal defendants—represent only a few of many critical stakeholders involved. Those parties have litigated the rights of aid-and-assist patients and guilty-except-for-insanity (GEI) patients, which are critical to solving the crisis. But there is a third population of individuals—people who are civilly committed—whose interests are no less important. And, because Oregon's behavioral health system is interconnected, what affects aid-and-assist and GEI patients, also affects civilly committed patients (as well as the entire system).

Plaintiffs are now moving to hold Defendants in contempt and requesting to institute what amounts to a broad package of legislative policy reforms. That relief, however, would overwrite Oregon state law even further, going well beyond the injunction entered in 2002.

The injunction, which forms the basis of the contempt motion, was entered to protect a narrow constitutional right: timely admission to the state hospital for defendants unable to proceed to trial "*in accordance with* Oregon's existing applicable statutory provisions." ECF 51 (emphasis added). It was intended to ensure compliance in accordance with state law, not at the expense of it.[1] Yet, as the *Amici* Judges noted, today "we have parties and a neutral expert with potentially divergent or much broader interests than simply returning the state to compliance." ECF 554 at 8. The Court has already overwritten valid and otherwise constitutional Oregon state laws without any prior contempt finding, contrary to the Ninth Circuit's holding in *Stone v. City and County of San Francisco*, 968 F.2d 850 (9th Cir. 1992), *as amended on denial of reh'g* (Aug. 25, 1992). Plaintiffs now ask the Court to overwrite state law even further to accomplish Plaintiffs' policy goals and offload burdens statutorily designated on OHA to non-party

---

[1] For example, the Court concluded that "[t]he injunction is consistent with the ***legislative choice embodied in the statute, and thus with principles of federalism.***" *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1119 (9th Cir. 2003) (emphasis added).

*AMICI* HOSPITALS' REQUEST FOR LIMITED PARTICIPATION IN CONTEMPT HEARING
Page 3

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

stakeholders in the community, including Hospitals, who thus far have been denied seats at the table in this case. ECF 554 at 9. Plaintiffs and Defendants are also now pursuing, and will likely continue pursuing, remedies that will further limit essential *community* resources for non-forensic behavioral health patients in need of those community resources.

Hospitals support holding Defendants in contempt and imposing monetary sanctions. Defendants are in contempt (as they have been for the most part for years) and offer no timeline for cure. But Hospitals oppose Plaintiffs' request to overwrite state law *even further* by (1) excluding misdemeanor and status offender referrals to OSH until compliance is achieved, (2) requiring transfer or discharge of all aid-and-assist patients on the Ready to Place list within 30 days, and (3) requiring discharge of PSRB patients on the Ready to Place list within 60 days.[2]

These proposals will put patients who are not stable and who lack an appropriate placement or discharge plan at risk of further decompensating, so as to further overwhelm Oregon's existing behavioral health crisis. The practical result will be that many at-risk individuals transition from OSH to the community and end up in community hospitals, which are not equipped or staffed to function as the state hospital and are already filled with civilly committed patients who are ready to leave but have nowhere to go. Inevitably, it will exacerbate the behavioral health crisis for civilly committed patients, and other patients, who already cannot

---

[2] Hospitals do not oppose Plaintiffs' other policy reform suggestions but have input on how they can be improved to get the State in compliance.

| | | |
|---|---|---|
| *AMICI* HOSPITALS' REQUEST FOR LIMITED PARTICIPATION IN CONTEMPT HEARING Page 4 | **EPSTEIN BECKER & GREEN, P.C.** 1125 NW Couch Street, Suite 500 Portland, Oregon 97209 Phone: 503.334.6475 • Fax: 503.343.6476 | **STOEL RIVES** LLP 760 SW Ninth Avenue, Suite 3000 Portland, Oregon 97205 Phone: 503.224.3380 • Fax: 1.503.220.2480 |

receive appropriate long-term treatment when they need it, and cause patients to be prematurely discharged to the streets and in many cases sent to jail to start the cycle all over again.[3]

Notably, there have already been negative consequences for civilly committed patients and community hospitals. Ten days after DRO filed its contempt motion, OHA issued an emergency rule in response.[4] The emergency rule expressly prioritizes aid-and-assist and GEI patients for admission to secure residential treatment facilities, residential treatment facilities, and residential treatment homes, and in the process marginalizes civilly committed patients. Under the emergency rule, patients who are seeking to transition from OSH into the community and are either an aid-and-assist or GEI patient are given "first priority" to community placements, while civilly committed patients in community hospitals are given "fourth" or next to last priority. *See* OAR 309-035-0163(15)(d). The result is that almost all eligible individuals for residential treatment programs will be coming from OSH or the criminal justice system, and programs will have no discretion to accept residents based on individual needs and the program's ability to serve. For civilly committed individuals, it means they will have nowhere to go for long-term treatment.

---

[3] Hospitals are especially concerned that Defendants have not opposed the first proposal (which limits admissions to OSH), and that Plaintiffs are attempting to push it through on that basis alone. *See* ECF 567 at 2 ("Defendants take 'no position' on this request. The Court should grant it."). The Court should not do so. As Defendants conceded, "the nature of the charges does not necessarily account for the acuity of a criminal defendant's mental health symptoms" and if granted, "there could be limited resources available" for such individuals. ECF 563 at 16. If this proposal is adopted, it potentially will overwhelm the whole behavioral healthcare system.

[4] *See* Temporary Administrative Order, BHS 1-2025, filed Jan. 17, 2025, https://www.oregon.gov/oha/HSD/HSDRules/EMERGENCY_309-035-0163_01172025.pdf.

The emergency rule is a direct result of DRO's contempt motion and Plaintiffs' other efforts in this case. That is not merely a theory—OHA expressly admits this in its Temporary Administrative Order, which states that "[f]ailure to implement these emergency rule changes will result in [OHA] not being compliant with Federal Court Orders."[5]

Based on these recent events, Hospitals are concerned that the interests of civilly committed patients and community hospitals will not be adequately protected at the contempt proceeding, and that if the first three of Plaintiffs' requested remedies are imposed, there will be a devastating impact, which will exacerbate the behavioral health crisis in Oregon. Hospitals are equally concerned that if they are not allowed to have a limited role in the hearing, the parties may propose other remedies, whether at the hearing or a later date, with additional negative impacts (for example, excluding all civilly committed patients from OSH).

For those reasons, *Amici* Hospitals request permission to participate in the two-day contempt hearing on a limited basis to preserve Hospitals' and their patients' interests in light of Plaintiffs' proposed remedies. Specifically, Hospitals request permission to (1) present an opening and closing statement regarding the requested remedies, and (2) if necessary, depending on the evidence, be permitted to put on one witness and participate in brief cross-examination (no more than five minutes per witness) on issues related to civilly committed patients and community hospitals in Oregon. In the alternative, Hospitals at least request 20 minutes for oral argument on the impacts of the requested remedies on civilly committed patients and community hospitals.

---

[5] *Id.* at 1.

*AMICI* HOSPITALS' REQUEST
FOR LIMITED PARTICIPATION
IN CONTEMPT HEARING
Page 6

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

## II.  ARGUMENT

Federal courts have inherent authority to allow *amicus curiae* to assist the court, especially where, as here, a party is not represented, the *amicus* has an interest that may be affected by the decision, and the *amicus* has unique information or perspectives that can help the court beyond what the existing parties can do.  *Duronslet v. Cty. of Los Angeles*, No. 2:16-cv-08933-ODW, 2017 WL 5643144, at *1 (C.D. Cal. Jan. 23, 2017) ("[M]ost courts have granted amicus participation when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case, or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." (internal quotation marks omitted)); *NGV Gaming, Ltd v. Upstream Point Molate, LLC*, 355 F.Supp. 2d 1061, 1067 (N.D. Cal. 2005) (*amicus* can provide unique information and perspective that can help the court).

In those circumstances, "[c]ourts have found the participation of an amicus especially proper where the amicus will ensure complete and plenary presentation of difficult issues so that the court may reach a proper decision."  *Wharton v. Vaughn*, No. 01-6049, 2020 WL 733107, at *5 (E.D. Pa. Feb. 12, 2020) (quoting *N.J. Protection and Advocacy, Inc. v. Twp. of Riverside*, No. 04-5914, 2006 WL 2226332, at *5 (D.N.J. Aug. 2, 2006)) (internal quotations omitted).

The extent to which an *amicus curiae* participates is within the broad discretion of the Court.  *See United States v. City of Portland*, No. 3:12–cv–02265–SI, 2013 WL 12309780, at *2 (D. Or. Feb. 19, 2013).  As one court explained, "the concept of *amicus curiae* is 'flexible'":

> [A]s long as the *amicus* does not intrude on the rights of the parties, it can have a range of roles: from a passive one of providing information to a more active

*AMICI* HOSPITALS' REQUEST
FOR LIMITED PARTICIPATION
IN CONTEMPT HEARING
Page 7

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475 • Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

participatory one.  In other words, although amici should not assume control of the litigation, they can take an active role in some cases beyond providing information.

*Wharton*, 2020 WL 733107, at *5 (citing *Waste Mgmt. of Pa., Inc. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995)).

With respect to participating in oral argument and at hearings, the United States Supreme Court routinely grants such requests.  *See, e.g., U.S. v. Providence Journal Co.*, 485 U.S. 693, 704 (1988) (noting that "it is well within this Court's authority to appoint an *amicus curiae* to file briefs *and present oral argument*") (emphasis added); *N.L.R.B. v. Canning*, 571 U.S. 1092 (2013) (granting motion of senator to "participate in oral argument as *amici curiae*" for 15 minutes, with 45 minutes given to the petitioner, and 30 minutes to the respondent).

The U.S. District Court of Oregon has likewise allowed *amicus curiae* to participate in oral argument and at hearings.  For example, in *City of Portland*, this Court granted enhanced *amicus curiae* status to Albina Ministerial Alliance Coalition for Justice and Police Reform ("AMA") that allowed it to have a "seat at the table" for purposes of a hearing and negotiations among the parties about modifying a proposed settlement agreement.  2013 WL 12309780, at *2. The Court allowed AMA to present briefing in the same manner as the parties; participate in any oral argument to the same extent as the parties; present its arguments from counsel table; participate in the Fairness Hearing to consider the original settlement agreement; and participate in mediated settlement discussions under the authority of the Court.  *Id.* at *8.  The Court also concluded that AMA should be permitted to have its "issues and concerns" "considered during the remedy phase of [the] lawsuit," to ensure it had the "same opportunity to provide insights and recommendations."  *Id.*  In that same case, the Court also allowed the Mental Health Alliance

*AMICI* HOSPITALS' REQUEST
FOR LIMITED PARTICIPATION
IN CONTEMPT HEARING
Page 8

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

("MHA")[6] to participate as an *amicus curiae* and concluded that MHA "**shall have the right to present** at any Court proceeding, status conference, hearing, or oral argument" and that counsel "may sit in front of the bar" at the hearing. *City of Portland*, 2013 WL 12309780, ECF 188 at 3 (emphasis added).

Importantly, the Court in this case has previously allowed *amici* to participate in hearings and at oral argument on issues regarding Defendants' noncompliance with the injunction and the appropriate remedies to impose. For example, *amici* were allowed to participate in a hearing on November 21, 2022, regarding their objections to the Court's September 1, 2022 Order (ECF 271), which overrode state law in response to Plaintiffs' request to do so, as a remedy for Defendants' non-compliance with the injunction (as Plaintiffs now seek to do again here). ECF 321, 322. In allowing this participation, the Court recognized the importance of ensuring that the perspectives of *amici* were heard and considered, particularly on an issue as major as overwriting state law, and one that impacts Oregon's entire behavioral health system.

Here, Hospitals do not seek a significant role at the two-day contempt hearing. But Hospitals should have a seat at the table to at least present and protect the interests of civilly committed patients and community hospitals. Civilly committed patients and Hospitals have a profound interest in, and will be directly affected by, Plaintiffs' proposed policy reforms.

Hospitals offer important and unique perspectives that the parties do not have and would neglect due to their clients' competing interests for the same resources. For example, Hospitals

---

[6] Interestingly, DRO opposes Hospitals' request to participate on a limited basis at the hearing as an *amicus curiae*, yet it advocated for doing the same on behalf of MHA in *City of Portland*.

*AMICI* HOSPITALS' REQUEST
FOR LIMITED PARTICIPATION
IN CONTEMPT HEARING
Page 9

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

could offer their perspectives on why Plaintiffs' policy reforms would negatively impact civilly committed patients and hospitals, and what would happen if those remedies were implemented. Likewise, Hospitals could offer their perspectives on how Defendants' efforts to achieve compliance in response to Plaintiffs' motion for contempt has resulted in patients being denied access to residential facilities due to OHA's emergency rule, which was issued in response. Hospitals could explain how the rule has resulted in individuals involved in the criminal justice system receiving virtually exclusive access to the detriment of all other patients (including civilly committed patients, patients under guardianship, and those seeking voluntary admission).

Additionally, Hospitals should be given a limited role at the contempt hearing because the remedies here will directly impact the interests of Hospitals and civilly committed patients in *Legacy*. As this Court recognized when it consolidated *Legacy* with *Mink-Bowman*, "any remedies in one case will almost certainly impact any potential remedy in the other cases." *Legacy v. Allen*, 6:22-cv-01460-AN, ECF 8. Thus, it is only fair that Hospitals receive a chance to be heard. This is especially important because the unique interests of Hospitals and civilly committed patients will not be adequately represented by the parties in *Mink-Bowman*. *See* ECF 329, 523 (OHA's motions to dismiss Hospitals' claims brought on behalf of civilly committed patients); *Legacy v. Allen*, 6:22-cv-01460-AN (June 5, 2024), ECF 105 at 7 (finding that DRO's representation of aid-and-assist patients in *Mink* rendered them unsuitable advocates for civilly committed patients).

For those reasons, Hospitals respectfully request an opportunity to (1) present an opening and closing statement regarding the requested remedies, and (2) if necessary, depending on the

| | | |
|---|---|---|
| *AMICI* HOSPITALS' REQUEST FOR LIMITED PARTICIPATION IN CONTEMPT HEARING<br>Page 10 | **EPSTEIN BECKER & GREEN, P.C.**<br>1125 NW Couch Street, Suite 500<br>Portland, Oregon 97209<br>Phone: 503.334.6475 • Fax: 503.343.6476 | **STOEL RIVES** LLP<br>760 SW Ninth Avenue, Suite 3000<br>Portland, Oregon 97205<br>Phone: 503.224.3380 • Fax: 1.503.220.2480 |

evidence, be permitted to put on one witness and participate in brief cross-examination (no more than five minutes per witness) on issues related to civilly committed patients and community hospitals. Alternatively, and at the very least, Hospitals request 20 minutes for oral argument on the impacts of the requested remedies on civilly committed patients and community hospitals.

## CONCLUSION

For the reasons discussed, Hospitals respectfully request that the Court allow them to participate as *amicus curiae* in the two-day contempt hearing on a limited basis as proposed and, in the alternative, permit them to have 20 minutes for oral argument regarding the impact of any requested remedies on civilly committed patients and community hospitals in Oregon.

DATED: February 28, 2025

EPSTEIN BECKER & GREEN, P.C.

 *s/ Eric J. Neiman*
Eric J. Neiman, OSB No. 823513
Emma P. Pelkey, OSB No. 144029
ENeiman@ebglaw.com
EPelkey@ebglaw.com

STOEL RIVES LLP

 *s/ Thomas R. Johnson*
Thomas R. Johnson, OSB No. 010645
Alex Van Rysselberghe, OSB No. 174836
Tom.Johnson@stoel.com
Alex.VanRysselberghe@stoel.com

*AMICI* HOSPITALS' REQUEST FOR LIMITED PARTICIPATION IN CONTEMPT HEARING
Page 11

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475 • Fax: 503.343.6476

**STOEL RIVES** LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480