Emily Cooper OSB# 182254
ecooper@droregon.org
Thomas Stenson OSB # 152894
tstenson@droregon.org
KC Lewis OSB #154782
klewis@droregon.org
**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205
(503) 243-2081
*Counsel for Plaintiff, Disability Rights Oregon*

Jesse Merrithew OSB # 074564
jesse@lmhlegal.com
**Levi Merrithew Horst PC**
610 SW Alder Street, Suite 415
Portland, Oregon 97205
(971) 229-1241
*Counsel for Plaintiff, Metropolitan Public Defender*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC.,** & **A.J. MADISON,** Plaintiffs, <br> v. <br> **PAT ALLEN,** in his official capacity as head of the Oregon Health Authority, **DOLORES MATTEUCCI**, in her official capacity as Superintendent of the Oregon State Hospital, Defendants. | Case No.: 3:02-cv-00339-MO <br><br> PLAINTIFFS' MOTION TO RESTORE ORIGINAL INJUNCTION |

## CERTIFICATION UNDER LOCAL RULE 7-1

In compliance with LR 7-1, Plaintiffs made efforts to reach out to counsel for Defendants

regarding this motion on the evening of Friday, August 13 by e-mail to propose a stipulated

motion to resolve this issue without contested motion practice. Plaintiffs set a deadline for

Wednesday, August 18 at noon for any discussions. Defendants did not respond substantively to these overtures, did not agree to meet to discuss the motion, did not disclose any reason to oppose the motion, nor did they respond to dispute the key facts alleged. The Defendants willfully refused to confer in a reasonable window of time.

## I.     MOTION

Plaintiffs respectfully move the court to restore the original 2002 permanent injunction in the present matter. The defendants sought a "narrow, temporary modification" to the original permanent injunction for the specific, narrow purpose of accommodating the delays created by then-new quarantine procedures related to COVID-19. At the hearing to discuss this temporary modification, this Court stated:

> I think it's necessary, in light of the pandemic, to modify the injunction, and I intend to keep a close watch on the efforts made to make this happen as quickly as possible. Without a rise in new admissions, this should be over with by as early as June, in which case we'll up the date of the hearing and make sure that's the case and move back to the earlier seven-daytime period as quickly as humanly possible.

Dkt. 168., p. 13. The modification order was granted in May 2020. Dkt. 167. This temporary modification has endured for 15 months including after a recent Governor's order rescinding COVID-19 restrictions, prolonged jail times for pretrial detainees so ill that they cannot aid and assist in their own defense, and a gradual reopening of the state hospital. Effective vaccines have been available to staff and patients for months, no outbreaks have been reported since December 2020, and over eighty percent of patients have been vaccinated. Additionally, in person hospital visitation started last week as well as patient outings and treatment related groups. Essentially, the vast majority of COVID restrictions related to timely admission to the state hospital have been lifted. Notwithstanding these massive changes as well as their periodic compliance with the

original injunction's timeframes, the state has not taken steps to lift the "narrow, temporary" modification it had sought.

The plaintiffs ask this court to issue an order, pursuant to Rule 60, Rule 65, and the court's inherent authority, reinstituting in full the 2002 permanent injunction in its original form and substance, including the requirement that patients be admitted to the Oregon State Hospital or other facility selected by the superintendent promptly and in not less than seven days.

## II.    MEMORANDUM

### A. Background

This matter went to trial in 2002. Following the trial, the Honorable Owen M. Panner entered a permanent injunction requiring the superintendent of the Oregon State Hospital and the head of its parent agency, now the Oregon Health Authority, to ensure the prompt admission to a mental health facility of every person found unable to aid and to assist their attorney in a criminal proceeding. Prompt admission to the Oregon State Hospital, or other facility designated by the Superintendent, required that the individual be transported and admitted no later than seven days after the order issued from the state court judge. Critical to the original injunction was its extensive findings regarding the suffering of pretrial detainees with disabilities in county jails around the state; namely, jails are unable to provided treatment exacerbating a person's mental illness and prompt admission of "persons found unfit to proceed is critical. This population has a high suicide risk, and psychosis can be an emergency requiring immediate treatment." *See Oregon Advocacy Ctr. v. Mink*, 323 F.3d 1101, 1106-1107 (9th Cir. 2003).

In its motion to modify the permanent injunction, Defendants claimed that unforeseen circumstances related to the COVID-19 pandemic and related hospital admission screening, testing, and quarantining protocols was their basis for their request. Dkt. 151. Plaintiffs then and

recently, repeatedly urged the state to consider its statutory authority to transport pretrial detainees to community-based restoration services and other alternatives to prolonged confinement in jail as the constitutional rights of pretrial detainees remain paramount especially during a pandemic where they face new and potentially deadly risks of COVID-19 infection in correctional settings. Dkt. 169, p. 10-12.

On May 6, 2020, this Court heard argument and in recognition that the existing injunction and the related constitutional liberty interests are to be honored, the district court indicated how it was leaning to rule:

> My inclination is to allow a modification that is grounded in testing, order testing, and allow only the degree of further time necessary to do the testing and get the results in a medically sound way, on top of an order that moves any patients that aren't moved that are not .370 patients, and sends into community treatment or placement those who don't need to be sent directly to the State Hospital.

*Id.* at 27. On May 12, 2020, this Court entered the Order to Modify the Permanent Injunction. Dkt. 168. In the order, the Court required a testing and quarantine procedure to not exceed 14 days in order to timely admit the next patient cohort from jail. *See* Dkt. 168 p.2. As articulated below, the time necessary to address admission delays related to COVID-19 and 14 day cohorts have passed. Thus, the original order should be reinstated without further modification so to ensure that "responsibility for discharging the State's obligations is returned promptly to the State and its officials" when circumstances warrant. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 442 (2004).

The Ninth Circuit reviewed this court's May 2020 modification order and found that the order lacked "meaningful parameters" to protect patients. *Oregon Advocacy Center v. Matteucci*, 20-35540 (9th Cir. Aug. 16, 2021) (slip op.). The Ninth Circuit vacated the district court's May

2020 modification order and ordered the court to "reconsider whether a permanent injunction is needed, and, *if so*, craft a more "suitably tailored" modification order." *Id.* at 5 (emphasis added).

### B. The Legal Basis for the "Narrow, Temporary" Modification to Accommodate COVID-19 Restrictions No Longer Exists

The COVID-19 pandemic and resulting changed circumstances related to hospital admission, testing, and quarantining patients to their individual units no longer exists. This permanent injunction remained in place without alteration until 2020, when the COVID-19 pandemic struck. The Oregon State Hospital suspended virtually all admissions from March 16, 2020 to April 13, 2020. Dkt. 151, at 2. On April 13, 2020, OSH resumed admissions on a very limited basis via quarantine units. *Id.* On April 17, 2020, the defendants filed a Motion for Modification to Injunction, seeking a "narrow, temporary modification" of the permanent injunction. Dkt. 151, at 3. The motion was premised on OSH's "emergency policy temporarily limiting admissions." Dkt. 151, at 13. The defendants specifically alleged that the "narrow modification" proposed was "to allow OSH to continue to implement its admissions policies and protocols . . . and to require OSH to provide monthly status updates to the Court until compliance is achieved." Dkt. 151, at 15. The court granted this motion with a handful of amendments, requiring increased screening for COVID infections among new admissions and opening a third unit for quarantine purposes. Dkt. 167.

The "narrow, temporary modification" of the permanent injunction has continued for more than a year. Since modification in May 2020, the conditions related to the pandemic and conditions at the state hospital have changed dramatically.  First, multiple highly effective vaccinations have been authorized for emergency use by the Food and Drug Administration. These vaccinations have been available to OSH staff and patients since at least January 2021. As of July 20, 2021, over eighty percent of current hospital patients have been vaccinated through

voluntary vaccination efforts.[1] Declaration of KC Lewis at Ex. A. Second, patients also began having in person hospital visitation last week and staffing levels were restored in July 2021. *Id.* Third, the hospital has begun comingling vaccinated patients including on and off grounds outings, treatment malls as well as mixing patients for vocational and educational activities. *Id.* Fourth, there has been no COVID-19 outbreak at the hospital since December 2020 requiring additional restrictions or need to quarantine groups of patients or staff. Fifth, based on an email sent by Defendants council on August 13, 2021, we understand that only three individuals will remain on the admission waitlist after this week but these same individuals may not wait longer than seven days for admission. *Id.* at Ex. D.

Finally, the motion to modify cited - as its first piece of evidence of an emergency - the issuance of emergency orders by Governor regarding the pandemic. In June 2021, the Governor issued an order "rescinding all remaining COVID-19 restrictions" based on "the widespread availability and adoption of safe and effective vaccines." EO 21-15.[2] The Governor held that "statewide restrictions to control the spread of Covid-19," including "mask mandates, capacity limits, expanded capacity limits . . . , and physical distancing," should end. *Id.* While the order did leave open the possibility of "enhanced Covid-19 precautions" in healthcare settings, the rescission of most COVID-19 restrictions undermines the continued need for a narrow,

---

[1] Pursuant to a different preliminary injunction issued by the District Court, OHA has also made vaccines available to jails and corrections organizations across the state, so that detainees and jail staff can be vaccinated. Heidi Steward, Or. Dep't Corr., E-Mail: COVID-19: Vaccinations for AICs, Feb. 5, 2021, *at* https://www.oregon.gov/doc/covid19/Documents/staff-message-covid-19-vaccinations-for-aics.pdf. On August 4, 2021, Kate Brown, the Governor of Oregon, ordered all health care workers to be vaccinated, which will address any remaining unvaccinated OSH staff. Or. Governor's Office, *Governor Kate Brown Announces New Health and Safety Rule for Employees in Health Care Settings to Help Prevent Delta Variant Spread,* August 4, 2021, *at* https://www.oregon.gov/newsroom/Pages/NewsDetail.aspx?newsid=64202.

[2] Available at https://www.oregon.gov/gov/Documents/executive_orders/eo_21-15.pdf.

Plaintiffs' Motion to Restore Original Injunction
Page 6

temporary modification of a permanent injunction aimed at upholding the constitutional rights of pretrial detainees with disabilities. The Ninth Circuit specifically mentioned the recission of the emergency order as evidence that might be considered as a "public health policy milestone" justifying restoration of the original permanent injunction. *Oregon Advocacy Center v. Matteucci*, 20-35540 (9th Cir. Aug. 16, 2021) (slip op. at 5).

While the pandemic is not over, COVID-19 transmission between hospital patients is no longer the reason why OSH is not in compliance with the original injunction. The COVID quarantine procedures offered as justification for the motion to modify are no longer substantially affecting any delays in the system. The hospital had long periods of compliance with the seven-day rule. *See, e.g.*, Dkt. 205-1 (showing between admission of detainee #63 and detainee #294, that 222 of 232 detainees were admitted within seven days of notification of an aid-and-assist commitment order, and that all 232 detainees were admitted within 12 days). The problem now is the same problem OSH faced in 2002 and in 2019: the demand for mental health competency services outpaces the available resources. Thus, similar to the *Rufo* Defendants, the increase pretrial detainee population or the resources needed to provide the court ordered treatment is "neither new nor unforeseen" so lacks the basis for modification. *Rufo* at 752. Instead, recent delays are primarily attributable to staff shortages that resulted in National Guard staff (half of which were not vaccinated) being called in to serve at the State Hospital, large numbers of aid-and-assist defendants coming from counties, and delays in discharging existing patients. Lewis Declaration Ex. B-C. (20 aid and assist patients were found to be discharge ready in June 2021 but taking up valuable beds at the state hospital); *see also* Dkt. No. 205, at 17; Dkt. No. 208, at 3-5.

The motion to modify was not an omnibus motion to suspend all requirements of compliance until all obstacles to prompt admission were removed, but a "narrow" request to accommodate the then-new quarantine protocol. If there is an additional legal basis to modify the injunction, the Defendants must meet their burden to prove that new extraordinary circumstances exist to warrant this extraordinary relief and that such consideration must "not allow for re-litigation of issues which have been resolved by the judgement." *Money Store, Inc. v. Harriscorp Fin., Inc.,* 885 F.2d 369, 372 (7th Cir.1989); *see also* Rule 60(b)(5).

Again, Plaintiffs do not claim the pandemic is over, nor question whether OSH may continue to use quarantine units or a quarantine protocol. Plaintiffs instead ask the court to find that the specific circumstances involving quarantine delays that justified the modification no longer exist, and therefore the court need not consider whether to instate further modifications on the permanent injunction. Because of the combined factors of COVID vaccinations and the resumption of treatment-related activities between comingled patients, the extraordinary factual basis for the Defendants' motion no longer exists. In light of the substantially changed circumstances since May 2020 around the COVID pandemic and the resources currently available to the defendants to safely operate the hospital at its usual capacity, no modifications to the permanent injunction are justified.

### C. The Law Requires Modifications of Permanent Injunctions Be Narrowly Tailored to the Need

Courts should only issue modifications "tailored to resolve the problems created by the change in circumstances." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 391 (1992). From the viewpoint of May 2020, it was difficult to foresee the exact trajectory of the pandemic. The order modifying the permanent injunction did not have an end date. Dkt. 167.

The court's order relied instead on the idea that the parties would appear at "periodic status conferences," issue an updated status report "every three weeks," and that the state would "inform the court" when the backlog of patients allowed for admission of patients within 7 days. These limited protocols, now disapproved by the Ninth Circuit, were the only protections against the indefinite and limitless effect of the modification. Since the November 17, 2020 status conference, the docket in this matter shows only one status conference, on May 17, 2021, and only two status reports were submitted over ten months, in April and May 2021. *Oregon Advocacy Center v. Matteucci*, 20-35540 (9th Cir. Aug. 16, 2021) (slip op. at 4 n.2) (noting state's "reporting requirements have not been consistently followed"). In addition, the state defendants submitted several requests to suspend admissions with brief declarations indicating the reasons for the request. Dkt. 184, Dkt. 187, Dkt. 194, Dkt. 198, Dkt.207.

However, the most recent requests in April and May 2021 to suspend admissions had little to do with either delays specific to the quarantine process, nor COVID-19 outbreaks within the facility, but were driven by overall lack of bedspace within the facility. Dkt. 198, Dkt. 207. In the April request to pause admissions, the hospital simply had patients "occupying all available beds," inside and outside the quarantine units. Dkt. 198, at 2. While Defendants did indicate minor difficulties about using 10 beds in a quarantine unit at that time, those ten beds were substantially less than the 22 aid-and-assist patients waiting for admission. Dkt. 199, at 4 (describing 10 empty beds in quarantine unit); Dkt. 199-4 (showing a waiting list of 22 aid-and-assist patients, as well as 56 other patients waiting for admission). The state would have requested a pause on admissions in April even if the quarantine process were eliminated.

The defendants' inaction on this matter will, if not checked by the court, convert the "temporary, limited" modification of the permanent injunction specific to quarantine protocols

Plaintiffs' Motion to Restore Original Injunction
Page 9

into an indefinite license to disregard the permanent injunction for admissions delays that have little if anything to do with quarantine protocols.

A permanent injunction should be "reopened only to the extent that equity requires." *Rufo*, 502 U.S. at 391. "A district court's authority to modify an injunction is more limited than its authority to formulate an injunction in the first instance because of the additional interest in the finality of judgments." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1097 (9th Cir. 2021). "Firmness and stability must no doubt be attributed to continuing injunctive relief based on adjudicated facts and law, and neither the plaintiff nor the court should be subjected to the unnecessary burden of re-establishing what has once been decided." *System Fed'n No. 91 v. Wright*, 364 U.S. 642, 647-48 (1961). Here, the modification originally proposed by defendants was premised on the idea that it was temporary and limited in scope, not that conditions had changed permanently. Fifteen months have passed, and the impact of the pandemic on our daily lives has radically changed, in light of vaccine availability, vaccine mandates for health care staff, the end of statewide pandemic orders, improved treatments, and reduced COVID transmission.

### III.    CONCLUSION

The legal and factual basis for a narrow, temporary modification no longer exists. Any ongoing delays in admissions are no longer driven by the quarantine process, but the lack of available beds, staff, and community options to discharge patients who no longer require hospital level of care. "Lack of funds, staff or facilities cannot justify the State's failure to provide such persons with the treatment necessary for rehabilitation." *Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003) (internal citations and quotations omitted). Currently, dozens of detainees sit in jails around the state for weeks without receiving the treatment and services

required by Oregon law and in defiance of their due process rights. In light of the improved hospital conditions related to COVID-19 and the ongoing harm to these detainees, the court should restore the time requirements of the permanent injunction.

DATED this 18th day of August, 2021.

                        LEVI MERRITHEW HORST PC
                        /s Jesse Merrithew
                        Jesse Merrithew OSB # 074564
                        *Counsel for Plaintiff Metropolitan Public Defender*

                        DISABILITY RIGHTS OREGON

                        /s/ Thomas Stenson
                        Emily Cooper OSB # 182254
                        Thomas Stenson, OSB # 152894
                        KC Lewis OSB #154782
                        *Counsel for Plaintiff Disability Rights Oregon*