IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON,<br><br>Plaintiffs,<br><br>v.<br><br>PATRICK ALLEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital,<br><br>Defendants. | OPINION AND ORDER<br><br><br><br>Case No. 3:02-cv-00339-MO (Lead Case) |
| JARROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON<br><br>Plaintiffs,<br><br>v.<br><br>DOLORES MATTEUCI, Superintendent of the Oregon State Hospital, in her individual and official capacity, PATRICK ALLEN, Director of the Oregon Health Authority, in his individual and official capacity,<br><br>Defendants. | Case No. 3:21-cv-01637-MO (Trailing Case) |

This matter comes before me on the Plaintiffs' Unopposed Motion for Order to Implement Neutral Expert's Recommendations ("Motion to Implement") [ECF 253][1] and Defendants' Unopposed Request for Judicial Notice Relating to Plaintiffs' Motion to Implement Neutral Expert's Recommendations ("Request for Judicial Notice") [ECF 252]. For the reasons explained further below, I grant the Request for Judicial Notice, and grant in part and deny in part the Motion to Implement.

---

[1] All ECF references are to the lead case, No. 3:02-cv-00339-MO.

1—OPINION AND ORDER

## BACKGROUND

These requests stem from a 2002 injunction which requires Oregon State Hospital ("OSH") to admit anyone found unable to stand trial for mental health reasons to be committed to the hospital within seven days or less. *Oregon Advoc. Ctr. v. Mink*, No. CV 02-339-PA, 2002 WL 35578910, at *7 (D. Or. May 10, 2002) (subsequent history omitted). Since at least November 2021, there has been a large increase in the number of persons to be admitted, and OSH has not been able to keep up or meet its requirements under the 2002 injunction. Mot. to Implement at 6–7. Current wait times are approximately 40 days, rather than the 7 required by the 2002 injunction, and there are now about 90 individuals waiting in jail for admission who qualify to be treated at the hospital. *Id.* at 5–6.

In December 2021, the parties jointly moved for an order appointing an expert, which I granted. Order Consolidating Cases and Appointing an Expert [ECF 240]. This order appointed Dr. Debra Pinals as a neutral expert to make recommendations to improve OSH's capacity issues and file reports regarding the same. *Id.* at 2. Dr. Pinals made recommendations, most recently in June 2022, and this Motion seeks to implement those recommendations. Mot. to Implement at 5, 7–8.

Dr. Pinals recommends three actions to ease and eventually fix the current OSH admittance crisis. First, Plaintiffs seek to limit certain types of patients who can be committed to OSH to only those who meet expedited admission criteria. *Id.* at 11; Proposed Order ¶¶ (2)b. & d. Second, Plaintiffs ask for a decrease in the length of time patients are permitted to stay at OSH, implementing a sliding scale from 90 days to one year based on the seriousness of the crime with which the patient had been charged. *Id.* at 11; Proposed Order ¶¶ (3)a.–d. Third, for the approximately 100 patients who have been at OSH for longer than the new maximums proposed by Plaintiffs' Motion, Plaintiffs' Proposed Order contemplates that appropriate notice will be given, and then these patients will be discharged. *Id.* at 12; Proposed Order ¶¶ (3)e.–f.

However, these recommendations are at odds with certain state law requirements. Under current state law, all or nearly all Aid and Assist ("A&A"), Guilty Except Insane ("GEI"), and civilly committed patients have the right to be admitted to OSH, not just those who meet certain expedited admission criteria. Mot. to Implement at 10. State law also allows some types of patients to stay at OSH for up to three years (or, in some cases, a shorter period of time depending on what sentence they could have been convicted of)—much longer than the 90 days to a year Dr. Pinals's recommendations suggest. *Id.* (citing ORS 161.370(10)).

And already, Defendants' response to the admittance crisis has created state-level conflict. I take judicial notice of the various Oregon state courts proceedings on whether the OSH and/or the Oregon Health Authority ("OHA") should be held in contempt under Oregon law for not admitting persons to OSH. *See* Req. for Judicial Notice. Plaintiffs' Motion further explains that one state court judge has even threatened to jail an OHA official as a sanction for not admitting a civilly committed patient. Mot. to Implement at 10.

In the light of these pressing issues, I held an expedited hearing on Plaintiffs' Motion on August 16, 2022.

## LEGAL STANDARD

The main legal issue here is whether—to enforce an injunction protecting Constitutional rights—I am permitted to enter an order allowing state agencies to fail to comply with state laws that do not facially infringe the Constitutional rights at issue, with the added wrinkle that the state judiciary has already made efforts to enforce these very same laws against the state agencies. Federalism concerns are obviously implemented here, as discussed further below.

A district court in enforcing an injunction such as the one at issue here exercises its "extraordinary" equity powers, which necessitate a consideration of federalism concerns on a case-by-case basis. *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 860 (9th Cir. 1992). In employing their broad equitable powers, federal courts should exercise the least possible power adequate to the end proposed; more intrusive means are only justifiable when the least

3—OPINION AND ORDER

intrusive means have failed. *Id.* at 860–61. This is because "[a]uthorizing and directing local government institutions to devise and implement remedies not only protects the function of those institutions but . . . also places the responsibility for solutions to the problems . . . upon those who have themselves created the problems." *Missouri v. Jenkins*, 495 U.S. 33, 51 (1990).

Actualizing this standard, the Ninth Circuit has emphasized that "unless a state law is found to violate a federal law, or unless the [i]njunction is found necessary to remedy a constitutional violation, federalism principles require the reconciliation of the state law and federal injunctions." *Valdivia v. Schwarzenegger*, 599 F.3d 984, 995 (9th Cir. 2010).[2]

One way in which state laws violate federal law is when they are particularly enacted to frustrate federal law or rights. *Hook v. Arizona Dep't of Corr.*, 107 F.3d 1397, 1403 (9th Cir. 1997). In these situations, federal law clearly overrides any concerns about complying with state law. But the laws Plaintiffs seek to disregard here do not fall into that category; they are facially neutral and were not enacted to frustrate the 2002 injunction. With this in mind, federal courts are hesitant to approve via injunction state actors' noncompliance with state laws that abut, but do not directly conflict with federal law. *Compare Stone*, 968 F.2d 850 at 864 (refusing to approve a district court's injunction that allowed a sheriff to violate state law in order to ease prison crowding) *with Lab./Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*, 263 F.3d 1041, 1051 (9th Cir. 2001) (approving a consent decree because "failure to follow the requirements" of the mandates at issue was "not a violation of [state] law").

Finally, it is important to note that the Supreme Court had said it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Stone*, 968 F.2d

---

[2] *See also Keith v. Volpe*, 118 F.3d 1386, 1393–94 (9th Cir.1997) (finding state law prevailed, and vacating injunction, where no determination made by district court that the injunction was necessary to remedy a constitutional violation); *Clark v. Coye*, 60 F.3d 600, 604 (9th Cir.1995) ("[T]he scope of federal injunctive relief against an agency of state government must always be narrowly tailored to enforce federal constitutional and statutory law only.").

850 at 860 (quoting *Preiser v. Rodriquez*, 411 U.S. 475, 491–92 (1973)). Because of this, and because courts lack expertise in running prisons, federal courts should generally defer to policy decisions of prison officials. *Id.*

## DISCUSSION

Here, Plaintiffs have raised serious concerns about their ability to comply with an injunction that was put in place to secure Constitutional rights. However, I must seek to narrowly tailor any order to limit its infringement on state law.

There is a key distinction to be made between protecting Defendants' ability to work towards solutions to the admittance crisis—what the 2002 injunction was put in place to actualize—and blatantly authorizing noncompliance with specific provisions of state law they no longer wish, for good reason, to comply with. Protecting respects the executive and its role in implementing policy positions; authorizing noncompliance tramples on the role of the state legislature to write laws, a job of which I am neither capable nor for which I was appointed. Keeping these separation of powers issues in mind, *see Stone*, 968 F.2d 850 at 864, I turn to Plaintiffs' Proposed Order.

Paragraphs one and four order the implementation of the Neutral Expert's Reports. This is permissible broadly speaking and in the abstract, and I have no qualms about supporting the hard work that has been done in this regard. However, Paragraphs two and three provide for specific solutions—those discussed above—that require Defendants to directly disregard state law requirements. This I cannot order for the reasons I have stated, although I encourage Defendants to work with other parts of the Oregon Executive Branch, as well as the Legislative and Judiciary, to implement these changes as soon as possible and by whatever means are determined to be most expeditious and effective.

Finally, Plaintiffs' Proposed Order does not address the contempt and contempt-like proceedings against Defendants for Defendants' failure to admit certain patients. With regard to these state court proceedings, I find that the 2002 injunction is still necessary to protect the Constitutional rights at issue in those proceedings. In order to prevent the violation of these

5—OPINION AND ORDER

rights, Defendants must be able to perform their roles in working to improve the admittance processes and procedures, in order that they obey the commands of the U.S. Constitution.

I further find that the Oregon state court contempt proceedings impair Defendants' abilities to remedy these violations. They sometimes do so directly, by punishing state actors who are litigants in this case for their efforts to satisfy the Constitutional requirements. At best, they create monumental disincentives to work towards a systemic approach that satisfies the Constitution, by threatening to jail those who are merely trying to resolve the issues in this case. To the extent these contempt proceedings arise out of the very efforts state litigants are making in this case, they frustrate the state's ability to obey the Constitution. And so to that extent, I enjoin any action that seeks to hold those associated with this case in contempt for their efforts to comply with the permanent injunction.

## CONCLUSION

For the foregoing reasons, Defendant's Request for Judicial Notice [ECF 252] is GRANTED. I take judicial notice of the materials provided. Plaintiffs' Motion for Order to Implement Neutral Expert's Recommendations [ECF 253] is GRANTED IN PART and DENIED IN PART. The Parties shall implement the recommendations in the Court's Neutral Expert's January and June 2022 reports. Dr. Pinals may grant extensions of other deadlines in her recommendations after conferring with the parties. Any such extensions shall be documented in Defendants' monthly progress reports. To the extent contempt proceedings arise out of the efforts state litigants are making in this case, I ENJOIN any action that seeks to hold those associated with this case in contempt for their efforts to comply with the permanent injunction.

IT IS SO ORDERED.

DATED: 8/16/22

MICHAEL W. MOSMAN
Senior United States District Judge

6—OPINION AND ORDER