Emily Cooper OSB# 182254
ecooper@droregon.org
Thomas Stenson OSB # 152894
tstenson@droregon.org
**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205
(503) 243-2081
*Counsel for Plaintiff, Disability Rights Oregon*

Jesse Merrithew OSB # 074564
jesse@lmhlegal.com
**Levi Merrithew Horst PC**
610 SW Alder Street, Suite 415
Portland, Oregon 97205
(971) 229-1241
*Counsel for Plaintiff, Metropolitan Public Defender*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON, | Case No.  3:02-cv-00339-MO (Lead Case) Case No.  3:21-cv-01637-MO (Member Case) |
| Plaintiffs, | PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR ORDER TO IMPLEMENT NEUTRAL EXPERT'S RECOMMENDATIONS |
| v. | |
| PATRICK ALLEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital, | |
| Defendants. | |

JAROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON,

        Plaintiffs,

    v.

DOLORES MATTEUCCI, Superintendent of the Oregon State Hospital, in her individual and official capacity, PATRICK ALLEN, Director of the Oregon Health Authority, in his individual and official capacity,

        Defendants.

Case No. 3:21-cv-01637-MO (Member Case)

Plaintiffs filed an unopposed motion for an order implementing the Court's neutral expert's recommendations in specific ways on August 15, 2022. The Court held a brief hearing on August 16, 2022, indicating that it was not prepared to enter the order Plaintiffs sought based on the record and legal arguments in front of it at that time. The Court set a further hearing for August 29, 2022 at 1:30 PM and invited the parties to offer supplemental briefing. The Court specifically asked that the parties address three questions:

    1.  Whether a necessity showing has been made and whether there are other viable options for relief that the parties have not accessed yet;

    2.  Whether the state executive branch can temporarily waive adherence to the time period restrictions and entry requirements;

    3.  Whether, as Counsel represented at oral argument, (i) the measures sought are the only way to regain compliance with the 2002 injunction and (ii) the measures sought do not directly contravene state law as only a maximum is set.

Plaintiffs submit this brief in response to those questions.

# MEMORANDUM

## I.    SUPPLEMENTAL FACTS

Plaintiffs provided an overview of the factual situation leading to this request in their memorandum of August 15, 2022. To answer the Court's questions, further explanation is necessary.

In 2003, the Ninth Circuit affirmed the District Court's permanent injunction requiring timely transfer of individuals found not able to aid and assist in their own defense out of jail and into competency restoration services within seven days. *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1105 (9th Cir. 2003). Nearly twenty years ago, the Ninth Circuit also dismissed federalism arguments based on a theory that the Oregon legislature can require jails or counties to provide needed mental health services until a hospital bed became available: "Under Oregon law it is OSH, not counties, that has the duty to accept incapacitated defendants once they have certified as such by a circuit court." *Mink* at 1119. Then and here, "The injunction is consistent with legislative choice embodied in statute, and thus with principles of federalism."

Current counsel re-opened this case in May 2019, 16 years after the permanent injunction was affirmed in all respects by the Ninth Circuit. Since November 2018, the state hospital has been, with rare exception, out of compliance with that permanent injunction. Between May 2019 and December 2021, Plaintiffs have repeatedly come to this Court arguing that Defendants were not doing enough to get back into compliance with the injunction and asking the Court to remedy this non-compliance. Plaintiffs filed two appeals to the Ninth Circuit when their efforts were rebuffed. The second appeal was successful, leading this Court to set a deadline of December 3, 2021 for Defendants to return to compliance. *See* Dkt. No. 226 ("Order of Modification to Injunction"). When it became clear to all parties that the Defendants would not be in compliance by that date, the parties agreed to engage in a judicial settlement conference. The substantive result of that settlement conference was that the parties agreed to have a neutral expert look at the problems facing the state hospital and offer recommendations for solutions. The Court

appointed Dr. Debra Pinals to fulfill this role on December 21, 2021. *See* Dkt. No. 240 ("Order Consolidating Cases and Appointing a Neutral Expert").

To say that Dr. Pinals was thorough in the task assigned to her by this Court would be an understatement. *See* Cooper Declaration at Exhibits A and B (respectively the First and Second Report of Dr. Pinals). In her second report to the Court, the list of sources relied upon (which is noted as non-exhaustive) stretches four pages. *Neutral Expert Second Report Regarding the Consolidated Mink and Bowman Cases*, at 2-7. Dr. Pinals brought her significant experience and expertise to this state and then proceeded to study every aspect of the system including engaging with key stakeholders in the system to inform her recommendations to this Court. As noted in her reports, Dr. Pinals met weekly with high level leadership in the hospital, the OHA, and the Plaintiffs to assist in the development of her recommendations. *Id.* at Ex. A, pgs 2-5, and Ex. B pgs 2-6. Those meetings are particularly significant because they allowed the Plaintiffs to make suggestions for improvement, push back on how quickly or thoroughly certain recommendations could be implemented, and get substantive, data-based responses from the Defendants to support their claims. As a result of this process, neither party exercised their right under the Interim Agreement to engage in renewed settlement discussions or litigation regarding any disagreement with Dr. Pinals' recommendations. *See* Dkt. No. 238-1, at ¶¶ 5, 6 ("Interim Agreement").

Following her second report to the Court, the parties have continued to meet weekly with Dr. Pinals, and the court's neutral expert has continued to engage other stakeholders throughout the system. The focus of those weekly meetings has been the parties' progress in implementing Dr. Pinals' recommendations and tracking the situation at the state hospital. Once again, these meetings have allowed the Plaintiffs to ask questions and push back wherever and whenever we were concerned about any lack of progress or the speed of progress in implementation. The Defendants, for their part, have responded substantively to most of Plaintiffs' concerns as they were raised, including where it has been necessary to get further clarification from people outside of these high-level meetings.

There are approximately 75 discrete recommendations from Dr. Pinals that the parties are tracking. *See* Scott Declaration at ¶ 4, Exhibit 1. The progress in implementing those recommendations has been comprehensively reported on a monthly basis. *Id*. Once again, despite their right to do so, the Plaintiffs have not re-engaged with a settlement judge or litigation in this Court claiming the Defendants are not doing enough to implement the recommendations. Over the past several months, Defendants have demonstrated substantial effort to meet each of Dr. Pinals' recommendations but continue to lack the needed array of community-based resources to reach compliance.  Based on unprecedented funding from the legislature in 2021, Defendants have been provided with the long-needed capital to allow the Oregon Health Authority to reinvest resources back into community behavioral health.[1]  However, it will take time for those investments to be allocated and the funded services to come online and be made available to individuals who need them to avoid the criminal justice system and instead engage in effective recovery services.

Plaintiffs' position today is a marked changed from where we were between May 2019 and December 2021. We are not making allegations of bad faith or inadequate efforts on the part of the Defendants. Unfortunately, the Defendants' efforts alone are not enough to resolve the constitutional crisis currently occurring.  While Plaintiffs have confidence in Dr. Pinal's' recommendations and related compliance plan, we know that people are being harmed today and will continue to be harmed until the agreed-upon services, staff and facilities are available to serve people languishing in jails.

Wait times for people committed to the state hospital are longer now than they ever have

---

[1] See "Oregon Transforms Behavioral Health Care," available at
https://www.oregon.gov/oha/HSD/AMH/Pages/index.aspx (last accessed August 25, 2022).

been, and they are only getting longer. The root of this problem is simple: hospital beds are a finite resource[2], and each month the state courts order the admission of more patients than the hospital can discharge. With a finite number of beds available, and more people going in than coming out, the line to get in only gets longer. To get at this problem, one or more of three things needs to happen: 1) hospital admission orders need to decrease, 2) system capacity needs to increase, or 3) the pace of hospital discharges needs to increase.

### A.    Legislative Efforts to Limit Admissions Orders Have Failed.

The Defendants have no control over admissions orders to the state hospital. Under Oregon law, it is the trial courts that order admission to the state hospital for restoration under ORS 161.370 and the Psychiatric Security Review Board that orders admission for patients under a GEI commitment who cannot be safely treated in the community. The Oregon legislature has amended ORS 161.370 in both of the past two regular legislative sessions to make it more difficult for the trial courts to admit criminal defendants to the state hospital. Senate Bill 24, passed in 2019, requires trial courts to consider community restoration before committing a criminal defendant to the hospital. *See* 2019 Or. SB 24, section 2; *see also* Dkt. 123 ¶ 31 ("OHA has proposed legislative changes (SB 24) in the 2019 legislative session to reduce the number of patients committed to the state hospital and to instead emphasize community restoration treatment in appropriate cases.")  SB 24 sought to divert detainees who have been determined to be not competent to community restoration programs if they do not meet "hospital level of care."

---

[2] The hospital has now converted to serving "Aid and Assist" and GEI patients almost exclusively, reserving only a handful of beds for civil patients who are acutely ill and cannot be cared for in private hospitals.

*Id.* SB 24 explicitly directs judges, prosecutors, and defense lawyers to choose appropriate dispositions of these cases that do not necessarily include nor require hospitalization at OSH.

The passage of SB 24 had zero effect on the pace of admissions to the state hospital, so the legislature took up the issue again in 2021. Senate Bill 295 now requires specific findings by the trial court as a prerequisite to a hospital commitment. *See* 2021 Or. SB 295, section 7. Once again, this additional restriction has had zero effect on the pace of admissions to the state hospital.



*See* Wehr Declaration at ¶ 6, Exhibit 1.

In her Second Report, Dr. Pinals recommends further study of whether hospital restoration for people charged with misdemeanors is a good use of hospital resources. Cooper Decl. Ex. B, p. 32. She suggests that this Court may want to consider this issue given "the potential Constitutional and *Olmstead* issues at stake." *Id.* As implied in Plaintiffs' original motion, asking this Court to impose restrictions on misdemeanants being committed to the state hospital is something that the Plaintiffs continue to consider and may, depending on data trends, return to this Court to ask for. We are not asking for that at this time to allow for further study and consideration of potential unintended consequences and how such a limitation would or

would not conflict with state law.

**B.      Behavioral Health System Capacity Will Not Increase In The Near Term.**

"Lack of funds, staff or facilities cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation." *Oregon Advocacy Center v. Mink,* 322 F.3d 1101, 1121 (2003)(citing *Ohlinger v. Watson*, 652 F.2d 775, 779 (9th Cir.1980)).

As noted above, the state hospital is using almost every bed available to serve the populations subject to the consolidated cases. The hospital currently has neither the physical space nor the necessary staffing to add more beds. Even if the legislature decided to appropriate money to expand capacity at the state hospital, which it almost certainly will not, new construction would take years to implement. The legislature's policy choice to expand capacity, which the Plaintiffs strongly support, is to invest in community mental health treatment. In 2021, the legislature made historic investments to begin to rebuild our communities' capacities to deliver mental health services where they are needed—locally. All parties are hopeful that these investments will eventually bear fruit in these cases by preventing people with mental illness from becoming involved in the criminal system in the first place and allowing for community restoration treatment when they do. That will not happen overnight. These investments are attempting to reverse decades of neglect. In short, increasing capacity is simply not an available solution in the near term. Instead, with the keen clinical leadership of Dr. Pinals and her resulting recommendations, Defendants have finally been provided a compliance plan and will need the continued resources from the legislature and the authority to enforce the constitution by this Court to realize those recommendations to reach compliance in the short and long term.

**C.      The Pace of Hospital Discharge Must Increase to Make Room for Prospective Patients Languishing in Jail for Court Ordered Mental Health Services.**

For patients found unable to aid and assist and ordered to the state hospital for restoration services pursuant to ORS 161.370, there are four possible routes to discharge: 1) the trial court

finds, based on the opinion of a forensic evaluator, that the patient has regained capacity to stand trial under ORS 161.367(2)(c); 2) the trial court finds, based on the opinion of a forensic evaluator, that "there is no substantial probability that the defendant, in the foreseeable future, will gain or regain fitness to proceed" under ORS 161.367(1); 3) the patient reaches their jurisdictional maximum time in the hospital under ORS 161.371(5); or 4) the trial court authorizes their release from the hospital following a notice from the hospital under ORS 161.371(3)-(4) informing the court that person no longer needs a hospital level of care.

Here again, the Defendants are at the mercy of the trial courts in getting people out of the hospital, even when they have patients who their treating clinicians determined do not need a hospital level of care. This is also an area where the legislature has repeatedly tried to give the hospital more authority to discharge patients and made it harder for the trial courts to keep patients in the hospital, but those legislative changes have not meaningfully changed the pace of discharges. *See* 2019 SB 24; 2021 SB 295. Dr. Pinals spends four pages of her Second Report detailing the clinical basis for her recommendation to change restoration time limits and practices.  Cooper Decl. Ex. B, 28-31.

> In my opinion, the Court in making its findings should rely upon clinical opinions, and the forensic evaluators in rendering their opinions of restorability should provide compelling clinical data to support a substantial likelihood beyond probability that the defendant shall retain their capacity to aid and assist at the end of the restoration period, based on evidence that with the treatment, the defendant is likely to…be able to Aid and Assist.

*Id.* at p. 28.  Dr. Pinals goes on to cite to Supreme Court jurisprudence, additional data factors, and other states who have implemented similar restoration time limits consistent with the National Judicial College's established proposed standards for competency restoration time limits.  *Id.* at 29-31.

Plaintiffs' proposed order sought this Court's authority to make this recommendation from the Court's own neutral expert an enforceable order.  The goal of the proposed order is to

address noncompliance with the Court's permanent injunction and the existing constitutional crisis by giving the hospital the authority to impose clinically sound, data driven time limitations on hospital stays for restoration. With this order, the hospital has a reasonable chance of achieving short term compliance within the benchmarks set by Dr. Pinals, and then maintaining compliance in the long term. Without this order, there is no chance of reaching compliance in the predictable future leaving dozens if not hundreds of people in jail where they risk irreparable harm and even death. *See* Second Report at p. 21 ("Tragically, a death of an individual on the admission list occurred during the interim period the First and Second Report…all parties recognize the critical need to maximize access to the hospital when needed…"). The data projection produced by the hospital starkly makes this case:



*See* Wehr Declaration at ¶ 9, Exhibit 2. This above chart is based on a straightforward analysis of the trends of admissions versus discharges:

| Month | No Changes to Current Practices | | | | Implement Restoration Limits Starting Sep 2022 | | | |
|---|---|---|---|---|---|---|---|---|
| | Est. New Orders[1] | Est. Discharges[2] | Difference | Est. Admit List Count[3] | Est. New Orders[1] | Est. Discharges[4] | Difference | Est. Admit List Count[3] |
| Sep-22 | 74 | 66 | +8 | 83 | 74 | 84 | -10 | 65 |
| Oct-22 | 74 | 66 | +8 | 91 | 74 | 84 | -10 | 55 |
| Nov-22 | 74 | 66 | +8 | 99 | 74 | 84 | -10 | 45 |
| Dec-22 | 74 | 66 | +8 | 107 | 74 | 84 | -10 | 35 |
| Jan-23 | 74 | 66 | +8 | 115 | 74 | 84 | -10 | 25 |
| Feb-23 | 74 | 66 | +8 | 123 | 74 | 84 | -10 | 15 |
| Mar-23 | 79 | 66 | +13 | 136 | 79 | 83 | -4 | 11 |
| Apr-23 | 79 | 66 | +13 | 149 | 79 | 83 | -4 | 7 |
| May-23 | 79 | 66 | +13 | 162 | 79 | 83 | -4 | 3 |
| Jun-23 | 79 | 66 | +13 | 175 | 79 | 83 | -4 | 0 |
| Jul-23 | 79 | 66 | +13 | 188 | 79 | 83 | -4 | 0 |
| Aug-23 | 79 | 66 | +13 | 201 | 79 | 83 | -4 | 0 |
| Sep-23 | 83 | 66 | +17 | 218 | 83 | 83 | 0 | 0 |
| Oct-23 | 83 | 66 | +17 | 235 | 83 | 83 | 0 | 0 |
| Nov-23 | 83 | 66 | +17 | 252 | 83 | 83 | 0 | 0 |
| Dec-23 | 83 | 66 | +17 | 269 | 83 | 83 | 0 | 0 |

*Id.*

What this data makes clear is that something must change, and change quickly, in order to stop the widespread violations of this Court's order and hundreds of peoples' constitutional rights.

## II.    ANALYSIS

### A.    A remedial order is necessary to achieve compliance with this Court's permanent injunction and the Constitution in the foreseeable future.

Out of respect for the sovereignty of the states, federal courts are only permitted to supplant state law when necessary to "enforce federal constitutional and statutory law." *Clark v. Coye*, 60 F.3d 600, 604 (9th Cir. 1995). The seven-day limitation period imposed by this Court's permanent injunction has been repeatedly affirmed as a solid base line measurement that is consistent with the constitutional right at issue. *See Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1122 (9th Cir. 2003); *Trueblood v. Washington State Dept. of Social and Health Serv.*, 822 F.3d 1037, 1043 (9th Cir. 2016); *United States v. Donnelly*, 41 F.4th 1102, 1107 (9th Cir. 2022). There can be no serious argument that wait times of 38 days and growing exact a constitutional

violation on each of the individuals forced to endure that wait.

As explained above, if this Court does nothing, there is no hope for compliance in the predictable future. Indeed, the hospital's own prediction is that the problem will continue to get worse before the 2021 legislatively funded community services can get up and running. This Court's neutral expert exhaustively studied all available options to attempt to get at this problem. There are other options for achieving short term compliance, but all of them require some order from this Court. The other available options—placing a moratorium on the admission of patients charged only with misdemeanors or forcing the discharge of those deemed no longer needing hospital level of care—would be more disruptive to the system and present a greater challenge with regards to comity towards state law. While Plaintiffs believe that either of these options is justified given the state of the data, their proposed solution is driven by the Ninth Circuit's admonition that district courts should enact the least intrusive measures first. *See Stone v. City & County of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992). Plaintiffs view their proposed order as the least disruptive, most respectful of state sovereignty of the available options and is well supported by the Court's neutral expert. This is evidenced most directly by the Defendants' (who are the best positioned state officials to make that judgment call) non-opposition to the proposed order.

**B.      The limited authority of the state executive branch fails to provide a solution.**

As explained above, the Defendants lack specific statutory authority to impose the stay limitations proposed in this order. The only authority under state law to impose those limitations would be if the governor invoked her power to declare a state of emergency. *See* ORS 401.165 et. seq. While it is theoretically possible that she could do that, it is exceedingly unlikely. The governor has never invoked her emergency powers—despite governing through a global pandemic and the unprecedented and widespread effects of climate change. To counsel's knowledge, she has never even made a public statement about these cases or the problems

underlying them.

      **C.**    **The proposed order does not violate state law and is the least disruptive option to get on a path to compliance.**

The proposed order does not violate state law nor related federal jurisprudence. The relevant Oregon statute only sets a maximum period of commitment. *See* ORS 161.371(5). "…[I]n no event shall the defendant be committed for longer than whichever of the following, measured from the defendant's initial custody date, is shorter… ." *Id*. The law is silent on whether the hospital has the authority to set shorter time limitations. Absent further legal authority, the hospital does not believe it has authority to set limitations *sua sponte*. If this Court were to adopt the Plaintiffs' proposed order, there would not be a direct conflict with state law. Neither ORS 161.370, its newly adopted sibling statute 161.371, nor other state law requires any particular period of detention for defendants found unable to aid or assist their counsel. A state law that required the hospital to continue to detain prisoners after hospital treatment had become unnecessary would violate the Constitution. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972) (A prisoner found incompetent "cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future."); *see also Youngberg v. Romero,* 457 U.S. 307, 325 (1982) (citing to *Jackson,* the Supreme Court points to treating clinicians' decisions when determining whether the State has met its obligations to ensure the conditions of confinement reflect the purpose "decisions made by the appropriate professional are entitled to a presumption of correctness.").

Dr. Pinals has made specific findings in her report, indicating that patients held past the 6-month date rarely recover competency from further detention. Second Report, at 29-31. Granting the proposed order would instead be *consistent* with the expressed intent of the Oregon

Page 13 -  PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR ORDER TO IMPLEMENT NEUTRAL EXPERT'S RECOMMENDATIONS
131840778

legislature and the holdings of the United States Supreme Court, that competency detention at the state hospital be reserved for the limited purpose of restoring those defendants where "there is a substantial probability that, in the foreseeable future, the defendant will have fitness to proceed." ORS 161.371(1). Moreover, granting the proposed order would not affect any of the other processes and procedures outside of this single statutory subsection.

In *Stone*, the Ninth Circuit addressed an analogous situation. The district court, in an effort to compel compliance with a consent decree, authorized the sheriff to release inmates early to ease jail overcrowding. 968 F.2d at 863. Other than the fact that the inmates were sentenced to a certain term of incarceration by a state court judge, this early release authority was not directly in conflict with any state law. *Id*. It was, just as this proposed order is, a grant of authority to the sheriff who had no existing state statutory authority. *Id*. The district court, rather than "order[ing] the City to take particular steps to solve the problem," instead "allowed the City to consider the Special Master's recommendation and formulate its own plan. *Id.* The Ninth Circuit found no fault in this district court's order, because such deference to the city's decision making was "consistent with comity and institutional competence." *Id*. The court only found fault in the district court's later order, which authorized the sheriff to override state law and release inmates in direct contravention of a state court order. *Id*. The Ninth Circuit reversed the district court on this point because it failed to consider less intrusive options before authorizing the state law overrides. *Id*. at 864. "While we hold that the district court went too far under these circumstances in allowing the Sheriff to override state laws and state court sentences, we do not rule out the possibility that such action may be necessary in the future." *Id*.

The proposed order in this case is similar to the initial authorization to the sheriff in *Stone*. As in *Stone* where the Court allowed the City Defendants to craft a resolution following

Page 14 -  PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED
          MOTION FOR ORDER TO IMPLEMENT NEUTRAL EXPERT'S
          RECOMMENDATIONS
          131840778

advice from the Special Master, the parties have worked together for months to craft a mutually amenable resolution, based on the neutral expert's work and recommendations. There is no direct conflict with state law. However, even if the proposed order were in direct conflict with state law, it would still be authorized under the facts presented here. It is the least intrusive method of achieving compliance, without which the permanent injunction will be indefinitely violated, and hundreds of individuals will continue to have their fundamental constitutional rights ignored.

      D.  **The Court must issue a remedial order reasonably calculated to address the now years-long deprivation of constitutional rights**.

In 2002, this Court issued a permanent injunction, declaring that prolonged delay of the admission of defendants found unable to assist their attorneys into the state hospital violated the United States Constitution and requiring the admission of all such defendants within seven days of the order finding them unable to aid or assist. With only brief exceptional periods of compliance, the state has been out of compliance with this order since November 2018. People suffering from acute mental illness have been lingering for months in local jails in violation of that permanent injunction and the protections of the Fourteenth Amendment for almost four years.

Plaintiffs have, without opposition from Defendants and in consultation with the neutral expert appointed by this Court, proposed a fix for the ongoing problems in the state hospital. Neither party, nor the neutral expert, believes that compliance can be achieved in the foreseeable future absent significant relief from this Court. Not only is the problem of capacity at the state hospital not improving, it is getting sharply worse and is likely to remain so.

In *Brown v. Plata*, the United States Supreme Court approved a district court determination to allow substantial releases of prisoners from California prisons, far more radical

Page 15 -  PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED
                MOTION FOR ORDER TO IMPLEMENT NEUTRAL EXPERT'S
                RECOMMENDATIONS
                131840778

relief than sought here. 563 U.S. 493 (2011). The United States Supreme Court noted that, where years of failures to redress constitutional violations had ensued, courts not only may, but *must,* confront the need to issue dramatic relief. "This extensive and ongoing constitutional violation *requires a remedy*, and a remedy will not be achieved without a reduction in overcrowding." *Id.* at 545 (emphasis added).

The U.S. Supreme Court approved federal court action in a very sensitive area of state control, over the objection of state authorities, because "[c]ourts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Id.* at 511.  An "unnecessary period of inaction would delay an eventual remedy and would prolong the courts' involvement, serving neither the State nor the prisoners." *Id.* at 516. Case law on federalism does "not suggest that a narrow and otherwise proper remedy for a constitutional violation is invalid simply because it will have collateral effects." *Id*. at 531. Here, in contrast to *Plata*, Plaintiffs have proposed an order that is narrow enough that the state Defendants, the institutional experts, do not oppose it. It is difficult to understand how federalism and comity concerns could be violated by the federal court granting state officials authority to do something which they do not oppose doing, especially when taken in furtherance of executing their constitutional duties.

Refusing to adopt the proposed order would simply declare that the only relief available to the detainees whose rights are violated every day is to continue to endure constitutional violations and face the increased risk of death as their detention in local jails without mental health treatment drags on and on. This the Court may not do. "[T]he federal courts have the power, *and the duty*, to make their intervention [into operation of prisons] effective." *Stone*, 968 F.2d at 861 *quoting Smith v. Sullivan*, 611 F.2d 1039, 1044 (5th Cir. 1980) (emphasis added).

That course of action, to insist that hundreds of detainees continue to endure the deprivations of their constitutional rights, with no serious plan or prospect for future relief, is not a permissible option under the law.

## III.      CONCLUSION

In order to regain compliance with this Court's permanent injunction, a remedial order is necessary. Of the available options, Plaintiffs' proposed order is the least disruptive option and the option most respectful of comity. Given the state of the data, doing nothing is not an option. This Court must take some action reasonably calculated to get the Defendants back into compliance.

DATED August 26, 2022.

LEVI MERRITHEW HORST PC

/s Jesse Merrithew
Jesse Merrithew OSB # 074564
jesse@lmhlegal.com
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

*Counsel for Plaintiffs Metropolitan Public Defender, Jarrod Bowman, and Joshawn Douglas-Simpson*

DISABILITY RIGHTS OREGON

/s Emily Cooper
Emily Cooper OSB # 182254
ecooper@droregon.org
Thomas Stenson, OSB # 152894
tstenson@droregon.org
511 SW 10th, Suite 200
Portland OR 97205
Tel:    (503) 243 2081
FAX:   (503) 243 1738

*Counsel for Plaintiff Disability Rights Oregon*

Page 17 -  PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED
           MOTION FOR ORDER TO IMPLEMENT NEUTRAL EXPERT'S
           RECOMMENDATIONS
           131840778