Keith M. Garza, OSB No. 940773
Law Office of Keith M. Garza
P.O. Box 68106
Oak Grove, Oregon 97268
Phone: (503) 344-4766
Facsimile: (503) 344-4767
E-mail: keithgarza@comcast.net

Attorney for Oregon Circuit Court
Judges Audrey Broyles, Matthew
Donohue, Jonathan Hill, Kathleen
Proctor, and Nan Waller

IN THE UNITED STATES DISTRICT COUT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON, | ) ) ) ) | Case No. 3:02-cv-00339-MO (Lead Case) Case No. 3:21-cv-01637-MO (Member Case) |
| Plaintiffs, v. | ) ) ) ) | OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, |
| PATRICK ALLEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital, | ) ) ) ) ) ) | KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

**Oral Argument Requested** |
| Defendants. | ) ) ) | |

Page 1 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW
DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION
FOR LIMITED INTERVENTION

JAROD BOWMAN and JOSHAWN   )   Case No. 3:21-cv-01637-MO (Member Case)
DOUGLAS-SIMPSON,          )
                         )
            Plaintiffs,   )
     v.                  )
                         )
DOLORES MATTEUCII, Superintendent )
of the Oregon State Hospital, in her official )
capacity, and PATRICK ALLEN, Director )
of the Oregon Health Authority, in his )
individual and official capacity,  )
                         )
            Defendants.   )

## LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1, counsel for movants certifies that he has conferred with counsel for the parties, that the parties made good faith efforts through personal communications to resolve the matters at issue in this motion, and that the result are as follows:  Counsel for defendants indicated their clients take no position on this motion.  Counsel for plaintiffs indicated their clients will wait to see the pleadings on intervention to take a position on the issues in this motion.  Counsel for *amici curiae* Washington, Clackamas, and Marion county district attorneys; counsel for *amicus curiae* Washington County; and counsel for *amicus curiae* Marion Counties indicated their clients do not object to this motion.

## MOTION

Movants are Marion County Circuit Court Judge Audrey Broyles, Benton County Circuit Court Judge Matthew Donohue, Tillamook County Circuit Court Judge Jonathan Hill, Washington County Circuit Court Judge Kathleen Proctor, and Multnomah County Circuit Court

Page 2 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

Judge Nan Waller ("Proposed Judge Intervenors").  Pursuant to Federal Rule of Civil Procedure 24(a) and (b) and Local Rule 7, they respectfully move this Court for entry of an order granting them limited intervention in the above consolidated cases—as a matter of right and, alternatively or additionally, as a matter of permission—to ask the Court to vacate or, in the alternative, dissolve the injunction in this Court's August 16, 2022 Opinion and Order.  (Dkt. 256.)  The injunction states: "[t]o the extent contempt proceedings arise out of the efforts state litigants are making in this case, I ENJOIN any action that seeks to hold those associated with this case in contempt for their efforts to comply with the permanent injunction."  (*Id.* at 6 (capitalization in original).)  As discussed more fully below, the August 16 injunction improperly seeks to bind non-parties to the consolidated actions; contravenes established principles of equity, comity, and federalism; and is impermissibly vague as to what it enjoins.

This motion is based upon the court files in these consolidated actions, the Memorandum of Law in Support set out below, and the statements and allegations in the Proposed Complaint in Limited Intervention, a copy of which is attached as Exhibit 1.

## MEMORANDUM OF LAW IN SUPPORT

### TABLE OF CONTENTS

I.    INTRODUCTORY AND FACTUAL MATTERS......................................8

II.   ARGUMENT.................................................................................11

    A. Proposed Judge Intervenors Have a Right to Limited Intervention...........11

       1. *This Motion is Timely*..........................................................12

          a. Stage of the Proceedings....................................................12

Page 3 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

b. Prejudice to the Other Parties...............................................13

c. Reason for and Length of Any Delay......................................14

2. *Proposed Judge Intervenors Have Significantly Protectable Interests Relating to the August 16, 2022, Injunction..............................15*

3. *The August 16, 2022, Injunction Has Impaired the Ability of Proposed Judge Intervenors to Enforce Their Lawful Orders..........................16*

a. The August 16 Injunction Improperly Seeks to Bind Non-Parties...17

b. The August 16 Injunction Contravenes Settled Principles of Equity, Comity, Federalism, and Abstention...........................19

c. The August 16 Injunction is Impermissibly Vague....................22

4. *The Interests of Proposed Judge Intervenors Relating to the August 16, 2022, Injunction Have Not Been and Will Not Be Adequately Represented by the Present Parties...............................................24*

B. Alternatively, the Court Should Grant Proposed Judge Intervenors Permissive Intervention..................................................................26

III. CONCLUSION.....................................................................................27

## TABLE OF AUTHORITIES

### Cases

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003)..................................................24

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2002).....................................................21

*Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470 (9th Cir. 1992)..................27

*Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191, 213 L. Ed. 2d 517 (2022)...................................................................................25

*Bowman v. Matteucci*, No. 3:21-cv-01637-HZ, 2021 WL 5316440 (D. Or. Nov. 14, 2021)........8

Page 4 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013)..........................22, 24

*Citizens for Balanced Use v. Montana Wilderness Assn.*, 647 F.3d 893 (9th Cir. 2011)..........16

*Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191 (2d Cir. 2002).............................20

*Disability Rights New York v. New York*, 916 F.3d 129 (2d Cir. 2019)...............................20

*Dixon v. City of St. Louis*, 950 F.3d 1052 (8th Cir. 2020)..............................................20

*Ex Parte Robinson*, 86 U.S. (19 Wall.) 505, 22 L. Ed. 205 (1873)....................................15

*Freedom From Religion Fund, Inc. v. Geithner*, 644 F.3d 836 (9th Cir. 2011).....................26

*In the Matter of A.J.G.*, Oregon Court of Appeals Case No. A179054 (Aug. 15, 2022)...........22

*Johnson v. California*, 543 U.S. 449 (2005)...............................................................21

*Juidice v. Vail*, 430 U.S. 327, 97 S. Ct. 1211, 51 L. Ed. 2d 376 (1977)..........................16, 21

*Kowalski v. Tesmer*, 543 U.S. 125 (2004)..............................................................17, 21

*Miles v. Wesley*, 801 F.3d 1060, 1064 (9th Cir. 2015)..................................................20

*Mitchum v. Foster*, 407 U.S. 225, 92 S. Ct. 2151, 32 L. Ed. 2d 705 (1972)........................21

*New Orleans Pub. Serv. v. Council of City of New Orleans*, 491 U.S. 350,
109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989).................................................................20

*Oglala Sioux Tribe v. Fleming*, 904 F.3d 603 (8th Cir. 2018).........................................20

*Oregon Advocacy Center v. Allen*, No. 20-35540, 2021 WL 3615536 (9th Cir. Aug.16, 2021)....8

*Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003)....................................8

*Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 966 (9th Cir. 2009)....................26

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006)........................................................24

*Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843 (9th Cir. 2016).....................................12-14

Page 5 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW
DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION
FOR LIMITED INTERVENTION

Law Office of Keith M. Garza
P.O. Box 68016
Oak Grove, OR 97268
(503) 344-4766 (phone) / (503) 344-4767 (fax)

*Sprint Comm., Inc. v. Jacobs*, 571 U.S. 69, 134 S. Ct. 584, 187 L. Ed. 2d 505 (2013)………....21

*State v. Zamora-Skaar*, 308 Or. App. 337, 480 P.3d 1034 (2020)………………………….…..8

*State ex rel. Oregon State Bar v. Lenske*, 243 Or 477, 493, 405 P.2d 510 (1965)……………....15

*SW. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001)…………………....12, 16

*Tesmer v. Granholm*, 333 F.3d 683 (6th Cir. 2003)……………………………………………17-18

*United States. v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004)……………………………15

*United States v. Donnelly*, 41 F.4th 1102 (9th Cir. 2022)……………………………………….9

*United States v. State of Oregon*, 745 F.2d 550 (9th Cir. 1984)………………………….…12, 14

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004)……………………………………………19

*W. Watersheds Project v. Haaland*, 22 F.4th 828 (9th Cir. 2022)………………....10, 12-13, 24-25

*Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)……………………20-21

## Constitutional Provisions

United States Constitution, Article VI, clause 2…………………………………………………..…9

## Statutes

28 U.S.C. § 1331……………………………………………………………………………………27

28 U.S.C. 2283……………………………………………………………………………………...20

42 U.S.C. § 1983…………………………………………………………………………………19, 21

ORS 1.240……………………………………………………………………………………………15

ORS 1.240(3)…………………………………………………………………………………………15

ORS 1.250……………………………………………………………………………………………15

Law Office of Keith M. Garza
P.O. Box 68016
Oak Grove, OR 97268
(503) 344-4766 (phone) / (503) 344-4767 (fax)

ORS 1.560(3)……………………………………………………………………..…25

ORS 33.025(1)……………………………………………………………………..…15

ORS 33.055(2)(a)…………………………………………………………………...22

ORS 33.065(4)………………………………………………………………….…...15

ORS 33.096………………………………………………………………………..16

ORS 135.240(6)…………………………………………………………………..10

ORS 137.700(2)…………………………………………………………………..10

ORS 161.371(3)(a)……………………………………………………………..…23

ORS 161.371(3)(c)(A)……………………………………………………………...23

## **Rules**

Fed. R. Civ. P. 24 (advisory committee notes)……………………………………16

Fed. R. Civ. P. 24(a)…………………………………………………………13, 26

Fed. R. Civ. P. 24(a)(2)…………………………………………………………10

Fed. R. Civ. P. 24(b)(1)(B)……………………………………………………26

Fed. R. Civ. P. 24(b)(3)………………………………………………………26

Fed. R. Civ. P. 65(d)…………………………………………………..17, 22, 24

Fed. R. Civ. P. 65(d)(1)………………………………………………………26

Fed. R. Civ. P. 65(d)(1)(B)……………………………………………………24

Fed. R. Civ. P. 65(d)(2)………………………………………………...17, 26

Oregon Uniform Trial Court Rule 19.020(2)…………………………………22

Law Office of Keith M. Garza
P.O. Box 68016
Oak Grove, OR 97268
(503) 344-4766 (phone) / (503) 344-4767 (fax)

## I.  INTRODUCTORY AND FACTUAL MATTERS

On August 15, 2022, no order, declaration, or judgment from a federal court told Proposed Intervenor Judges, or any Oregon judge, that they were circumscribed in their ability to continue seeking to protect the rights of litigants, victims, institutions, and the public in matters involving fitness to proceed by reason of incapacity, guilt except for insanity, or civil commitment.  Nor did any state or federal command dictate that the inability of the Oregon Health Authority ("OHA") and the Oregon State Hospital ("OSH") to meet their constitutional obligations or comply with the *Mink* injunction—entered two decades earlier—would excuse such a failure or had become a defense against the authority of state judges to enforce their orders through contempt sanctions and other lawful means.

Instead, the law on August 15th was to the contrary.  *See, e.g., Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003) (aid and assist: "Lack of funds, staff or facilities cannot justify the State's failure to provide such persons with the treatment necessary for rehabilitation." (Cleaned up.)); *Oregon Advocacy Center v. Allen*, No. 20-35540, 2021 WL 3615536 * 2 (9th Cir. Aug.16, 2021) (vacating Court's May 13, 2020, modification of *Mink* injunction that had "relaxe[d]" mandatory seven-day deadline); *Bowman v. Matteucci*, No. 3:21-cv-01637-HZ, 2021 WL 5316440 * 2 (D. Or. Nov. 14, 2021) (guilty except for insanity; "When satisfying constitutional guarantees, Defendants cannot rob Peter to pay Paul."); *State v. Zamora-Skaar*, 308 Or. App. 337, 355-61, 480 P.3d 1034 (2020) (aid and assist; assuming but not deciding, then rejecting on record, OSH assertion that inability to comply due to lack of funds

Law Office of Keith M. Garza
P.O. Box 68016
Oak Grove, OR 97268
(503) 344-4766 (phone) / (503) 344-4767 (fax)

was defense to contempt sanction); *id*. at 342 (noting "OSH acknowledged the continuing

existence and validity of the *Mink* injunction"); *cf. United States v. Donnelly*, 41 F.4th 1102,

1108-09 (9th Cir. 2022) (Watford, J., concurring: "The BOP's bureaucratic failure to allocate

adequate agency resources to meet the demand for competency evaluations is not, of course, a

legitimate excuse for failing to comply with" federal time limits).

Nevertheless, without notice to the Oregon Judicial Department or evidence of any

Oregon judge having violated the *Mink* injunction, plaintiffs and defendants—working in

tandem— tacitly sought and on August 16th received an injunction from this Court broadly

targeting the state court system. The injunction potentially affects most of Oregon's

approximately 200 judges and justices (those coming into contact with "those associated with

this case"), none of whom are parties. Although its intended effect is not clear, it could be read

as broad enough to freeze "any action" in Oregon's state courts—not only judge-initiated

contempt cases—in which contempt might be requested (again, if the matter involves those

associated with this case and efforts to comply with the *Mink* injunction).

Proposed Judge Intervenors do not take this step lightly. They understand that it is as

unusual for state court judges to seek to intervene in federal court as it is for the federal court to

limit the remedies available to them for noncompliance with their orders. Respectfully, however,

the August 16 injunction improperly issued. It remains improper today, **even though no longer**

**even arguably necessary** because of the modifications the Court made to the *Mink* injunction on

September 1, 2022, which, under Article VI, clause 2, of the United States Constitution,

Page 9 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW
DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION
FOR LIMITED INTERVENTION

Oregon's judges must and are expected to follow. (Dkt. 271.)  Should a party believe a state

court judge is not complying with this Court's September 1 order, ample appellate remedies are

available to them within the state court system and then up to and including petitioning the U.S.

Supreme Court for *certiorari*.  However, because the present parties have sought to short-circuit

those remedies and also because of the uncertainty and the important state judicial interests at

stake, Proposed Judge Intervenors are compelled to seek limited intervention in these cases to

ask the Court to vacate, or in the alternative to dissolve, the August 16 injunction.[1]

---

[1]    There is a potential third outcome.  As set out below, it could be that the September 1 Order
superseded the August 16 Opinion and Order entirely, including the injunction against state court
contempt actions.  If that was the Court's intent, then entry of an order clarifying that the August
16 injunction was dissolved on September 1 effectively would moot this motion.  Although an
order vacating the August 16 injunction, rather than only clarifying its dissolution, would
provide the correct relief, the latter presumably could be entered immediately.

   Questions respecting the Court' intent arises as follows:  The August 16 Opinion and
Order granted defendants' Request for Judicial Notice (Dkt. 253); granted in part and denied in
part plaintiffs' motion to implement Dr. Pinal's recommendations (agreeing with paragraphs one
and four but not two and three of the proposed order (Dkt. 252-1)); and entered the injunction
against state court contempt actions.  (Dkt. 256 at 5-6.)  During the emergency hearing regarding
the order, the Court described in part the relief it intended to provide as

> "a more limiting injunction[,]" "**not intended to be the final answer**," and
> "imposing a much more limited **current** enforcement mechanism, which prevents
> being held in contempt in state court for the efforts being made to – including
> who takes priority for admissions and releases being made in this case, even if
> doing so results in violating a state court order."

(Dkt. 273 at 6-7 (emphasis added).)

   Next, on August 28, defendants submitted supplemental briefing that, among other
things, noted the concerns of "the Oregon Judicial Department and others" regarding the Court's

Page 10 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW
DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION
FOR LIMITED INTERVENTION

## II.    ARGUMENT

### A. Proposed Judge Intervenors Have a Right to Limited Intervention.

"Under Rule 24(a)(2), a nonparty is entitled to intervention as of right when it '(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties.'"

*W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (citation omitted). The

requirements are interpreted "broadly in favor of intervention" and review is "'guided primarily

by practical considerations, not technical distinctions.'" *Id.* (citation omitted). "Courts are to

---

authority to enjoin non-parties. (Dkt. 263 at 3 n. 1.) They then argued that plaintiff's proposed order

"would address this acute problem [state contempt actions] **by directing only OSH, a party to this case**, in how it must admit patients . . . [and] by mandating that, until the State is in compliance with *Mink*, OSH must prioritize forensic admissions with limited exceptions."

(*Id.* (emphasis and bracketed text added).)

Then, on August 30, plaintiffs submitted an amended proposed order of implementation (Dkt. 270), with the only change being a reference to ORS 137.700(2) instead of ORS 135.240(6) for purposes of the one year maximum restorative period. Finally, on September 1, the Court entered most of the amended proposed form of order—the one OHA and OHS three days earlier had suggested would address the concerns of state court judges by directing only an existing party to the case how to act rather than non-party judges. The September 1 order now includes all four proposed paragraphs (not simply the first and last) but also omits the wording referencing state court contempt proceedings. (Dkt. 271.) All of that reasonably evinces an intent to dissolve the injunction against state court contempt actions as of September 1. That, however, is only for the Court to say.

Page 11 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

Law Office of Keith M. Garza
P.O. Box 68016
Oak Grove, OR 97268
(503) 344-4766 (phone) / (503) 344-4767 (fax)

take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed

complaint or answer in intervention, and declarations supporting the motion as true absent sham,

frivolity or other objections." *SW. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th

Cir. 2001). As set out below, Proposed Judge Intervenors satisfy all four elements.

### 1. This Motion is Timely.

"A party must intervene when he knows or has reason to know that his interests might be adversely affected by the outcome of litigation. To determine whether a motion for intervention as of right is timely, we consider the totality of circumstances facing the would-be intervenor, with a focus on three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. When evaluating these factors, courts should be mindful that the crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties."

*W. Watersheds Project*, 22 F.4th at 835-36 (cleaned up).

### a. Stage of the Proceedings

"[I]n analyzing the 'stage of the proceedings' factor, the '[m]ere lapse of time alone is not determinative.' *United States v. State of Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). Where a change of circumstances occurs, and that change is the 'major reason' for the motion to intervene, the stage of proceedings factor should be analyzed by reference to the change in circumstances, and not the commencement of the litigation. *See id.*"

*Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (intervention proper 20 years

after commencement and 17 years after consent decree).

To be sure, the *Mink* litigation has been pending on this Court's docket for more than 20

years (Dkt. 1 (March 19, 2002)). And, for the last two decades, Oregon judges have been

Page 12 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

seeking to enforce state and federal law in both the specific and broader contexts of *Mink*, almost

daily, where and when those laws intersect the interests of individuals, institutions, and the

public at large. Not until August 16, 2022, however, has this Court sought to control the state

court processes by which Oregon's judges have been carrying out those obligations. The Court's

August 16 injunction against state court contempt proceedings is the type of change in

circumstances—and not merely a "major reason" but the only reason compelling Proposed Judge

Intervenors to act—that sets the proper temporal reference point for determining whether theirs

is a "timely motion." Fed. R. Civ. P. 24(a).

> b.   Prejudice to the Other Parties

> "[T]he only prejudice that is relevant under this factor is that which flows from a
> prospective intervenor's failure to intervene after he knew, or reasonably should
> have known, that his interests were not being adequately represented—and not
> from the fact that including another party in the case might make resolution more
> difficult."

*Smith*, 830 F.3d at 857 (cleaned up). "[P]rejudice to existing parties[ ] is 'the most important

consideration in determining whether a motion for intervention is untimely.'" *W. Watersheds*

*Project*, 22 F.4th at 838 (citation omitted).

It would be unfair to ascribe to Proposed Judge Intervenors even constructive knowledge

that plaintiffs and defendants were working jointly to impair their and other Oregon judges'

judicial interests at any point before August 16, 2022, and, in no event, earlier than August 15—

when the plaintiffs filed their motion to implement and defendants filed (under seal) their request

for judicial notice (Dkts. 252, 253) that prompted the Court to schedule an expedited

Page 13 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW
DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION
FOR LIMITED INTERVENTION

videoconference hearing the next day (Dkt. 254).[2] There has been no prejudice to the interests of either plaintiffs or defendants in the intervening five or so weeks it has taken Proposed Judge Intervenors to obtain counsel, which is itself a process (see *infra* at 25-26), and prepare and file these materials. Nothing happened that otherwise would not have occurred, or should have happened but did not, during the brief interstitial period.

c. Reason for and Length of Any Delay

The record does not support the conclusion that there has been any "delay" with respect to filing this motion. Instead, the time required—to obtain counsel; to become familiar with the record, the complex systems at issue, and the law; and to communicate with the interested parties—has been reasonable. *See, e.g., Smith*, 830 F.3d at 853 (71 and 79 days from conclusion interests inadequately represented); *U.S. v. Oregon*, 745 F.2d at 552 (at least eight-month delay).

---

[2] Before that there was only a reference in Dr. Pinals' Neutral Expert First Report dated January 30, 2022, that

> "According to OSH leadership, there are often several hearings per week addressing individual court contempt findings for failure to timely admit individuals. For each of these contempt hearings, there is a resource of testimony required from clinical and administrative staff who are then unable to perform the oversight and treatment functions that would expedite other admissions"

(Dkt. 262-1 at 8), and a June 4, 2019, order from the Court directing the State to supplement the record with copies of certain Washington County Circuit Court orders finding "OSH leaders 'willfully violated' court orders to quickly admit defendants in need of mental health evaluations and treatment." (Dkt. 114.) Neither would support actual or constructive knowledge to any Oregon judge that intervention might be necessary to protect their own judicial interests or those of the state court system.

Page 14 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

For all the above reasons and taking into account each of the three relevant considerations,

Proposed Judge Intervenors' motion has been timely filed.

> 2. *Proposed Judge Intervenors Have Significantly Protectable Interests Relating the August 16, 2022 Injunction.*

> "An applicant for intervention has a significantly protectable interest if the interest is protected by law and there is a relationship between the legally protected interest and the plaintiff's claims. The interest test is not a bright-line rule. An applicant seeking to intervene need not show that the interest he asserts is one that is protected by statute under which litigation is brought. It is enough that the interest is protectable under any statute."

*U.S. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (cleaned up).

It has been long understood that contempt is an inherent judicial power. *See, e.g., Ex Parte Robinson*, 86 U.S. (19 Wall.) 505, 510, 22 L. Ed. 205 (1873) ("The power to punish for contempts is inherent in all courts[.]"); *State ex rel. Oregon State Bar v. Lenske*, 243 Or 477, 493, 405 P.2d 510 (1965) ("the legislature cannot unreasonably abridge or destroy the judicial power to punish for contempt because the legislature cannot take away a power which it does not give"); ORS 33.025(1) (acknowledging that "[t]he power of a court to impose a remedial or punitive sanction for contempt of court is an inherent judicial power.").

In Oregon, a judge's contempt powers are also statutory. *See, e.g.,* ORS 1.240(3) ("Every judicial officer has power: . . . [t]o compel obedience to the lawful orders of the judicial officer, as provided by statute."); ORS 1.250 ("For the effectual exercise of the powers specified in ORS 1.240, a judicial officer may punish for contempt, in the cases and manner provided by statute."); ORS 33.065(4) (court may request prosecutor to initiate punitive contempt

Page 15 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

proceedings); ORS 33.096 ("A court may summarily impose a sanction upon a person who

commits a contempt of court in the immediate view and presence of the court.").

Stated differently, a court's contempt powers are both significant and protected judicially

and statutorily. *See, e.g., Juidice v. Vail*, 430 U.S. 327, 335, 97 S. Ct. 1211, 51 L. Ed. 2d 376

(1977) ("The contempt power lies at the core of the administration of a State's judicial system.").

Finally, there can be no argument that the authority of Proposed Intervenor Judges to enforce

their lawful orders through contempt are somehow unrelated to the arguments and factual

matters both parties put before the Court on August 15, 2022, which resulted in the August 16

injunction that took that authority away as to "those associated with this case[.]" (Dkt. 256 at 6.)

> 3. *The August 16, 2022, Injunction Has Impaired the Ability of Proposed Judge Intervenors to Enforce Their Lawful Orders.*

With respect to the impairment of an intervenor applicant's interests, the Ninth Circuit

follows "the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would

be substantially affected in a practical sense by the determination made in an action, he should,

as a general rule, be entitled to intervene.' Fed. R. Civ. P. 24 advisory committee's notes." *SW.*

*Center for Biological Deversity v. Berg*, 268 F.3d at 822. Indeed, following a determination that

an intervenor applicant has a significant protectable interest, the Ninth Circuit often has "little

difficulty concluding that the disposition of the case may, as a practical matter, affect it."

*Citizens for Balanced Use v. Montana Wilderness Assn.*, 647 F.3d 893, 898 (9th Cir. 2011)

(internal quotations and citation omitted).

Page 16 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW
DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION
FOR LIMITED INTERVENTION

Such is the case here, and to whatever extent the existing parties might choose to oppose this motion, there should be no argument from them that the interests of Proposed Judge Intervenors were unimpaired by the August 16 injunction. That impairment, moreover, and as explained below, was unlawful. Hoping to minimize the time Proposed Judge Intervenors spend before this Court, they preview below the arguments they will develop further in that regard—if necessary—as limited intervenors.

> a.   The August 16 Injunction Improperly Seeks to Bind Non-Parties.

Federal Rule of Civil Procedure 65(d)(2) provides:

"(2) *Persons Bound.* The order binds only the following who receive actual notice of it by personal service or otherwise:

> "(A) the parties;

> "(B) the parties' officers, agents, servants, employees, and attorneys; and

> "(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)."

Proposed Judge Intervenors fall into none of those categories, yet the August 16 injunction not only ties all Oregon judges' hands respecting their contempt powers but operates to wholly enjoin any action in which contempt is sought against "those associated with this case[.] (Dkt. 256 at 6.)

The Sixth Circuit's application of Rule 65(d) in *Tesmer v. Granholm*, 333 F.3d 683 (6th Cir. 2003) (*en banc*), *rev'd sub nom. as to attorney standing by Kowalski v. Tesmer*, 543 U.S. 125 (2004), is instructive. *Tesmer* involved a Michigan statute generally forbidding judges to

Page 17 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

appoint appellate counsel for indigent criminal defendants who had pled guilty. Three indigent defendants and two attorneys brought an action against three Michigan judges who had denied counsel. The district court declared the statute unconstitutional. Thereafter, one of the defendant judges and a non-party judge (Kolenda) denied counsel again, and the district court proceeded to enjoin not only those judges from denying appointed counsel but all Michigan state judges as well. 333 F.3d at 687-88.

The Sixth Circuit reversed:

"Our deepest concern with the equitable relief fashioned by the district court is that it enjoins non-party judicial officers. . . .

". . . In this case, the judges named in the original suit, who would be bound by an injunction issued for violating the decree, are not in control of or in privity with the other state judges, including Judge Kolenda. The only way in which these judges could conceivably be identified in interest is that they all happen to be judges and have sworn to uphold Michigan law. We think this to be a far broader application of the concept of 'active concert and participation' than permissible under the district court's authority.

"Enjoining a judge is a serious matter. . . . [A]n injunction against a judge is a 'drastic and extraordinary remed[y]' that is 'reserved for really extraordinary causes.' As a sister circuit asked, in adopting the reasoning of a former dissenter: 'When we embark on this new course, we must prepare to face this unpleasant question: If a state judge does not obey a district court's injunction, are we willing to jail the state judge for contempt?'

". . . . .

". . . We hold that with respect to Judge Kolenda, a non-party to the original suit, and to the unnamed and uncertified putative class of Michigan judges, the injunction cannot issue."

*Tesmer*, 333 F.3d at 702-04 (citations omitted).

Page 18 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

Here, of course, there was no effort in these consolidated cases to join as parties any of the judges involved in the 19 contempt proceedings assertedly "divert[ing] critical resources" that OSH/OHA identified in their Request for Judicial Notice (Dkt. 253 at 3-4 (see *infra* at 25 n. 7)) let alone any Oregon judge. And for good reason, because 42 U.S.C. § 1983—the statute upon which these actions are premised—as amended in 1996, provides that, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." *Cf. Wolfe v. Strankman*, 392 F.3d 358, 366 (9th Cir. 2004) ("'a court should not enjoin judges from applying statutes when complete relief can be afforded' by enjoining other parties, because it is ordinarily presumed that judges will comply with a declaration of a statute's unconstitutionality without further compulsion.") (internal quotations and citation omitted).

Moreover, an injunction against "action[s]" is effectively one against the judges who preside over those actions. Here, the parties—working cooperatively not adversarily—should not have been permitted to obtain indirectly that which they could not seek directly (because they would have been unable to show the violation of any federal law by an Oregon judge let alone the violation of a prior declaration).

        b.    The August 16 Injunction Contravenes Settled Principles of Equity, Comity, Federalism, and Abstention

When a federal court order purports to control, limit or interfere with the actions of the state courts themselves (as opposed to state and local executive branch officials), heightened

Page 19 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

federalism concerns apply. As the Supreme Court explained in *New Orleans Pub. Serv. v. Council of City of New Orleans*, 491 U.S. 350, 364, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989) (quoting *Younger v. Harris*, 401 U.S. 37, 44, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), the federal courts must have "'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate states governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" That is, the ". . . 'principle of comity takes on special force when federal courts are asked to decide how state courts should conduct their business.'" *Dixon v. City of St. Louis*, 950 F.3d 1052, 1056 (8th Cir. 2020) (citation omitted); *see also Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) ("giving the respect to our co-equal sovereigns that principles of 'Our Federalism' demand, we generally prohibit federal courts from intervening" in the operations of state courts (citing *Younger*, 401 U.S. at 44)).[3]

Indeed, for more than 200 years, Congress through its Anti-Injunction Act, 28 U.S.C. § 2283 has generally prohibited federal courts from granting injunctions to stay state court

---

[3]    Examples of those principles in application include, among many others, *Disability Rights New York v. New York*, 916 F.3d 129, 136 (2d Cir. 2019) (abstaining from a lawsuit seeking order requiring state courts to provide notice and hearing opportunities in certain guardianship proceedings); *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 607 (8th Cir. 2018) (declining to review state court child custody processes); *Miles v. Wesley*, 801 F.3d 1060, 1064, 1066 (9th Cir. 2015) (abstaining from enjoining state court from reducing number of courthouses for unlawful detainer actions).

Page 20 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

proceedings. Although Section 1983 actions such as these are an exception to that general rule, in so stating the Supreme Court in *Mitchum v. Foster*, 407 U.S. 225, 243, 92 S. Ct. 2151, 32 L. Ed. 2d 705 (1972) was careful to admonish that "we do not question or qualify in any way the principles of equity, comity, and federalism must restrain a federal court when asked to enjoin a state court proceeding."[4]

The principles *Mitchum* identified apply with particular force in the contempt context, a subset of one of only three categories of proceedings to which abstention under *Younger* applies. *See, e.g., Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78, 134 S. Ct. 584, 187 L. Ed. 2d 505 (2013). That is so because

> "[t]he contempt power lies at the core of the administration of a State's judicial system[;] federal-court interference with the State's contempt process is an offense to the State's interest likely to be every bit as great as it would be were this a criminal proceeding[;] and such interference with the contempt process not only unduly interferes with the legitimate activities of the State but also can readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles."

*Juidice v. Vail*, 430 U.S. at 335-36 (cleaned up; brackets added). In short, everything about the state interests into which this Court determined it was necessary to engage counsels for the kind

---

[4]    Respecting equity generally, there is "the longstanding maxim that injunctive relief against a state agency or official must be no broader than necessary to remedy the constitutional violation," *Armstrong v. Davis*, 275 F.3d 849, 870 (9th Cir. 2002), *abrogated on other grounds by Johnson v. California*, 543 U.S. 449 (2005), an embodiment of the idea "[c]ooperation and comity, not competition and conflict, are essential to the federal design," *Kowalski*, 543 U.S. at 133 (citation and internal quotations omitted).

Page 21 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

of extreme circumspection that does not seem to be represented by the sweeping terms of the
August 16 injunction.

c.    The August 16 Injunction is Impermissibly Vague.

"Rule 65(d) requires every order granting an injunction to state its terms
specifically and to describe in reasonable detail—and not by referring to the
complaint or other document—the act or acts restrained or required.  One basic
principle built into Rule 65 is that those against whom an injunction is issued
should receive fair and precisely drawn notice of what the injunction actually
prohibits.  The Rule was designed to prevent uncertainty and confusion on the
part of those faced with injunctive orders, and to avoid the possible founding of a
contempt citation on a decree too vague to be understood. Generally speaking, an
ordinary person reading the court's order should be able to ascertain from the
document itself exactly what conduct is proscribed."

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1047-48 (9th Cir. 2013) (cleaned up).

Here, the primary reason for concern is the enjoining of "**any action** that seeks to hold

those associated with this case in contempt . . . ." (Dkt. 256 at 6 (emphasis added).)  As noted,

under Oregon law, remedial contempt proceedings may be initiated by, among others, "[a] party

aggrieved by an alleged contempt of court."  ORS 33.055(2)(a).  If a party decides to seek

contempt and a related case exists, then "the party must initiate the contempt proceeding by

filing a motion in the related case."  Oregon Uniform Trial Court Rule 19.020(2); *see also id.* at

(2)(a)-(b) (court must treat contempt proceeding as separate case; parties must include both case

numbers in filings).  So, if a party files a motion for order to show cause in either a pending

criminal or civil commitment case, is the entire case enjoined?[5]

---

[5]    This is not an overblown concern, as the appeal in *In the Matter of A.J.G.*, Oregon Court of
Appeals Case No. A179054, a civil commitment proceeding, demonstrates.  (The underlying
Page 22 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW
DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION
FOR LIMITED INTERVENTION

Of less, but still significant concern, are questions regarding who are "those associated

with this case[?]" Anyone at OSH or OHA, which are executive department entities that

regularly appear before Oregon courts for various substantive reasons? Are all their officers and

employees immune from contempt proceedings if their efforts to comply with the modified *Mink*

injunction prevent them from meeting some other statutory or judicially mandated obligation?[6]

---

matter most likely is the one to which this Court referred at page 3 of its August 16 Opinion and Order. (Dkt. 256.)) There, the circuit court entered orders for immediate placement and contempt (which, as noted above, generated a second, separate case number). Both cases were appealed and, ultimately, the Chief Judge of the Oregon Court of Appeals issued an order staying the placement order, noting that the contempt citation was not properly before the court at that time (but which the Chief Judge nonetheless went on to describe at page 3 of the order as "at first blush, problematic"), yet also mandated counsel for OSH and OHA to provide "updates . . . every seven days from the date of this order for the duration of this appeal or until the court directs otherwise." (A copy of the Chief Judge's order, which would be an appropriate matter for judicial notice, is attached as Exhibit 2.)

As this case demonstrates, defendants had state court appellate remedies: they did not need to circumvent principles of federalism to obtain relief. However, the lack of clarity in this Court's injunction leaves open the question whether the Chief Judge of the Oregon Court of Appeals is in violation of the August 16 injunction by providing OSH and OHA the relief they sought but at the same time requiring continued weekly updates and allowing the appeal to proceed?

[6]   Consider, for example, if OSH (1) were to determine that a committed person charged with a Ballot Measure 11 offense, well within the Court's new maximum one-year restoration period, no longer needs a hospital level of care, and (2) issues to the court a notice of intent to place. ORS 161.371(3)(a). Next assume that, after all the procedural requisites have been met and the 10-day hearing held, the circuit court judge disagrees with OSH and finds that a hospital level of care remains necessary. ORS 161.371(3)(c)(A). If OSH nevertheless were to return the defendant to the county of origin, does the August 16 injunction preclude contempt proceedings? Or even a lesser order simply requiring OSH to appear and explain itself?

Page 23 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

". . . Rule 65(d), overall, prefers certainty to flexibility." *Columbia Pictures*, 710 F.3d at 1048. As presently worded, this Court's August 16 injunction is impermissibly vague such that it presents serious questions of due process with respect to the Oregon judges attempting to follow it. At a minimum it must be made to "state its terms specifically" as Rule 65(d)(1)(B) requires.

> 4. *The Interests of Proposed Judge Intervenors Regarding the August 16 Injunction Have Not Been and Will Not Be Adequately Represented by the Present Parties.*

> "To evaluate adequacy of representation, courts consider three factors: '(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.'"

*W. Watersheds Project*, 22 F.4th at 840-41 (citation omitted). "The burden of showing inadequacy of representation is minimal[,]" *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006) (cleaned up), and the most important factor "is how the interest compares with the interests of existing parties," *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citation omitted).

Here, not only were the present parties both incapable of and unwilling to represent the interests of Oregon judges, they have worked actively and in concert against those interests by tacitly seeking the August 16 injunction. *See, e.g.*, Dkt. 252 at 10 (from plaintiffs: "these contempt orders have become an impediment . . ."); Dkt. 253 at 3 (from defendants: "These

Page 24 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

state court proceedings . . . divert critical resources . . . .").[7] Moreover, in doing so, the parties

have neglected to put before the Court the prudential, statutory, and rule-based considerations

Proposed Judge Intervenors have offered above (*supra* at 17-22) and will elaborate upon later if

necessary. *See, e.g., W. Watersheds*, 22 F.4th at 841 (proposed intervenor identified three new

arguments).

Finally, this is not an instance in which the involvement of the Oregon Department of

Justice representing the legal interests of executive branch officials or state "single voice"

considerations should inform the Court's analysis. *See, e.g., Berger v. North Carolina State

Conference of the NAACP*, 142 S. Ct. 2191, 2201, 213 L. Ed. 2d 517 (2022) ("federal courts

should rarely question that a State's interests will be practically impaired or impeded if its duly

authorized representatives are excluded from participating in federal litigation challenging state

law"); ORS 1.560(3) ("The State Court Administrator, under the direction of the Supreme Court,

may authorize the judge to employ private counsel . . . [i]n any action, suit or proceeding, when

the State Court Administrator finds that employing private counsel is necessary to protect the

---

[7]    Defendants filed Dkt. 253 under seal pursuant to the Second Amended Protective Order.
(Dkt. 242.)  On request, however, their counsel provided a redacted copy (omitting, consistently
with the protective order, all case names, numbers, or attached registers) to the Office of General
Counsel for the Oregon Judicial Department.  Despite defendants at least once having publicly
filed material in these cases that includes state court case numbers for matters involving fitness
to proceed (*see* Dkt. 117), they appear to have filed Dkt. 253 under seal due to HIPAA
considerations.  If the Court grants this motion, Proposed Judge Intervenors intend to seek access
to Dkt. 253 in its entirety.

Page 25 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW
DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION
FOR LIMITED INTERVENTION

Law Office of Keith M. Garza
P.O. Box 68016
Oak Grove, OR 97268
(503) 344-4766 (phone) / (503) 344-4767 (fax)

public interest, the integrity of the judicial system, or the interests of the judge in performing duties as a state officer.").

In short, this motion is timely. The interests of Proposed Judge Intervenors are significant, protectable, and have been unlawfully impaired by this Court's August 16 injunction. The present parties are not representing the interests of Oregon state judges but are openly opposed to those interests. Limited intervention as a matter of right pursuant to Rule 24(a) is warranted.

### A. Alternatively, the Court Should Grant Proposed Judge Intervenors Permissive Intervention.

"A district court may grant permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B) where the applicant shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common. Where a putative intervenor has met these requirements, the court may also consider other factors in the exercise of its discretion, including the nature and extent of the intervenors' interest and whether the intervenors' interests are adequately represented by other parties. Rule 24(b)(3) also requires that the court consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

*Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 966 (9th Cir. 2009) (cleaned up).

Requiring a permissive intervenor to present independent jurisdictional grounds "prevents the enlargement of federal jurisdiction in such cases only where a proposed intervenor seeks to bring new state-law claims." *Freedom From Religion Fund, Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). That is not the situation here, where the "claims" Proposed Judge Intervenors seek to advance—*e.g.*, the August 16 injunction violates Rules 65(d)(1) and (2),

Page 26 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

contravenes principles of equity, comity, and federalism, and implicates more than one abstention doctrine or related consideration—are all themselves matters of federal law. *See* 28 U.S.C. § 1331 (federal question jurisdiction); *see also*, *e.g.*, *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) ("Intervenors do not ask the district to rule on additional claims or seek to become parties to the action. They ask the court only to exercise that power which it already has . . . . [N]o independent jurisdictional basis is needed.").

Moreover, as demonstrated above, the motion is timely (*supra* at 12-15); Proposed Judge Intervenors' rights are significant, protectable, and have been impaired (*supra* at 15-22); their interests have not been and will not be adequately represented by the existing parties (*supra* at 24-26); and, in light of the limited purpose for which intervention is sought, allowing it would present no risk of unduly delaying or prejudicing the adjudication of the original parties' rights (*supra* at 13-14). Finally, the objections of Proposed Judge Intervenors to the August 16 injunction have in common the predicate, one-sided facts plaintiffs and defendants, acting in concert, put before the Court together with the legal considerations those parties should have included for the Court's benefit. Permissive intervention is warranted even if, for some reason, the Court concludes that intervention of right is not.

### III.    CONCLUSION

As set out above, the August 16, 2022, injunction improperly seeks to bind non-parties to the consolidated actions; contravenes established principles of equity, comity, and federalism; and is impermissibly vague as to what it enjoins. As importantly, the injunction is not presently

Page 27 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION FOR LIMITED INTERVENTION

necessary, and principles of both judicial restraint and equity favor its being vacated or

dissolved. Proposed Judge Intervenors have met all the criteria required to support their motion

for limited intervention or, alternatively, for permissive intervention. The Court should grant

their motion and, if the August 16, 2022, injunction was not already superseded by the Court's

September 1 order, then enter an order vacating the injunction or at least dissolving it.


Respectfully submitted this 22nd day of September 2022.


_/s/ Keith M. Garza_

Keith M. Garza, OSB No. 940773
Law Office of Keith M. Garza
P.O. Box 68106
Oak Grove, Oregon  97268
Phone:  (503) 344-4766
Facsimile:  (503) 344-4767
E-mail:  keithgarza@comcast.net

Attorney for Oregon Circuit Court
Judges Audrey Broyles, Matthew
Donohue, Jonathan Hill, Kathleen
Proctor, and Nan Waller


Page 28 – OREGON CIRCUIT COURT JUDGES AUDREY BROYLES, MATTHEW
DONOHUE, JONATHAN HILL, KATHLEEN PROCTOR, AND NAN WALLER'S MOTION
FOR LIMITED INTERVENTION