**Eric J. Neiman, OSB #823513**
Eric.Neiman@lewisbrisbois.com
**Emma P. Pelkey, OSB #144029**
Emma.Pelkey@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800
Facsimile: 971.712.2801

**Misha Isaak, OSB #086430**
MIsaak@perkinscoie.com
**Alex Van Rysselberghe, OSB #174836**
AVanRysselberghe@perkinscoie.com
PERKINS COIE, LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209
Telephone: 503.727.2000
Facsimile: 503.727.2222

*Attorneys for Putative Intervenors*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDERS INCORPORATED, and A.J. MADISON, <br><br> Plaintiffs, <br><br> vs. <br><br> PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority, DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital, <br><br> Defendants, | Case No. 3:02-cv-00339-MO (Lead Case) <br> Case No. 3:21-cv-01637-MO (Member Case) <br><br> **MOTION TO INTERVENE** <br><br> **By Putative Intervenors Legacy Emanuel Hospital & Health Center d/b/a Unity Center For Behavioral Health, Legacy Health System, PeaceHealth, and Providence Health & Services – Oregon** <br><br> ***Oral argument requested*** |

4879-6514-6677.1

MOTION TO INTERVENE

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

158436519.2

and

LEGACY EMANUEL HOSPITAL &
HEALTH CENTER d/b/a UNITY CENTER
FOR BEHAVIORAL HEALTH, LEGACY
HEALTH SYSTEM, PEACEHEALTH, and
PROVIDENCE HEALTH & SERVICES –
OREGON,

    Putative Intervenors.

## CONFERRAL CERTIFICATION

Pursuant to Local Rule 7-1, counsel for the above-captioned Putative Intervenors, Eric J.

Neiman, conferred in good faith about this motion with counsel for Plaintiff Disability Rights

Oregon, Tom Stenson, counsel for Plaintiff Metropolitan Public Defenders Incorporated, Jesse

A. Merrithew, and counsel for Defendants Patrick Allen and Dolores Matteucci, Carla Scott and

Craig Johnson, by telephone on September 26, 2022. The motion is opposed.

## MOTION

Putative intervenors Legacy Emanuel Hospital & Health Center d/b/a Unity Center For

Behavioral Health, Legacy Health System, PeaceHealth, and Providence Health & Services –

Oregon (hereinafter, "Putative Intervenors") hereby move this Court to intervene in the above-

captioned case pursuant to Federal Rule of Civil Procedure 24, subsections (a) and (b) in the

alternative.

This Motion is supported by the following Memorandum of Law. Oral argument is

requested.

/ / /

/ / /

/ / /

/ / /

/ / /

4879-6514-6677.1

MOTION TO INTERVENE

158436519.2

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

# TABLE OF CONTENTS

**PAGE**

MEMORANDUM OF LAW ................................................................................................. 1

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL STANDARD............................................................................................. 2

III.  BACKGROUND .................................................................................................. 3

    A.  The *Mink* Case .............................................................................................. 3

    B.  The Civil Commitment Population................................................................. 8

IV.   ANALYSIS ........................................................................................................ 10

    A.  Putative Intervenors Satisfy the Requirements for Intervention of Right..................... 10

        1.  This case implicates Putative Intervenors' rights and interests. ................................. 10

        2.  This case implicates the rights and interests of Putative Intervenors' patients.......... 13

        3.  Putative Intervenors should be granted mandatory intervention on behalf of both themselves and their patients. ........................................................... 16

    B.  Putative Intervenors Satisfy the Requirements for Permissive Intervention. ............... 18

    C.  The Instant Motion is Timely ........................................................................ 20

V.    CONCLUSION.................................................................................................... 21

4879-6514-6677.1

TABLE OF CONTENTS - i

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

158436519.2

## TABLE OF AUTHORITIES

**PAGE(S)**

### CASES

*Estelle v. Gamble*,
429 U.S. 97 (1976)................................................................................................4

*Griswold v. Connecticut*,
381 U.S. 479 (1965)............................................................................................16

*Home Care Ass'n of Am. v. Bonta*,
No. 21-15617, 2022 WL 445522 (9th Cir. Feb. 14, 2022) ................................15

*Ohlinger v. Watson*,
652 F.2d 775 (9th Cir. 1980) ........................................................................5, 14

*Oregon Advoc. Ctr. v. Allen*,
No. 20-35540, 2021 WL 3615536 (9th Cir. Aug. 16, 2021) ...............................5

*Oregon Advoc. Ctr. v. Mink*,
322 F.3d 1101 (9th Cir. 2003) ..................................................................4, 5, 19

*Powers v. Ohio*,
499 U.S. 400 (1991)............................................................................................15

*Singleton v. Wulff*,
428 U.S. 106 (1976)......................................................................................15, 16

*State v. T.T.*,
293 Or. App. 376, 428 P.3d 921 (2018)..............................................................15

*Turay v. Seling*,
108 F. Supp. 2d 1148 (W.D. Wash. 2000), *aff'd sub nom. Sharp v. Weston*,
233 F.3d 1166 (9th Cir. 2000) .............................................................................4

*Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*,
24 F.3d 56 (9th Cir. 1994) .................................................................................14

*Wilderness Soc. v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011) .............................................................................3

*Youngberg* [*v. Romeo*],
457 U.S. [307] [(1982)] .......................................................................................4

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

**STATUTES**

ORS 137.700(2) ..........................................................................................................8

ORS 161.370 ........................................................................................................6, 17

ORS 161.370(2) ........................................................................................................4

ORS 161.370(2)(c) ..................................................................................................12

ORS 426.130(1)(a)(C) ...........................................................................................1, 8

ORS 426.130(b) ......................................................................................................15

**RULES**

Fed. R. Civ. P. 24 ........................................................................................2, 3, 18, 20

Fed. R. Civ. P. 24(a) .........................................................................................18, 20

Fed. R. Civ. P. 24(a)(2) .........................................................................................3, 16

Fed. R. Civ. P. 24(b) .........................................................................................18, 20

Fed. R. Civ. P. 24(b)(1)(B) ...........................................................................3, 18, 19

Fed. R. Civ. P. 24(b)(3) ............................................................................................3

Fed. R. Civ. P. 24(c) .................................................................................................1

**OTHER AUTHORITIES**

Dr. Pinals January and June 2022 reports are respectively available at
https://static1.squarespace.com/static/5d645da3cf8e4c000158e55a/t/61fae4fc9
4933f4b4566f36c/1643832573252/Oregon+Mink-
Bowman+Neutral+Expert+Pinals+Report+1.30.22.pdf and
https://static1.squarespace.com/static/5d645da3cf8e4c000158e55a/t/62a10f8b
83e85f09b0a1e1f2/1654722445714/Oregon-Mink-Bowman-2nd-Neutral-
Expert-Pinals-Report-6.5.22.pdf .................................................................................6

Oregon Health Authority, *Mosman Ruling Frequently Asked Questions* at 3-4
(Sept. 16, 2022), available at
https://www.oregon.gov/oha/OSH/Documents/OSH-mink-mosman-FAQ.pdf ......................12

4879-6514-6677.1

TABLE OF AUTHORITIES - iii

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

158436519.2

*Uncommitted: How High Standard Are Fueling A Cycle That Can Fail People With Serious Mental Illness*, KGW (Sept. 6, 2022), https://www.kgw.com/article/news/investigations/cycle-failing-people-with-serious-mental-illness-uncommitted/283-c921b1aa-de69-4656-9870-359faff8a914 ..................................................................................................................19, 20

7C Wright & Miller, *Fed. Prac. & Proc.* § 1901 (3d ed. 2022) .......................................................2

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

## MEMORANDUM OF LAW[1]

## I.    INTRODUCTION

Three of Oregon's largest health systems—Legacy, PeaceHealth, and Providence—seek to intervene in this case. These health systems operate community hospitals around the state. Each of them and their constituent hospitals are committed, above all, to caring for the health and wellbeing of patients. Today, they file this motion to intervene, as well as initiating a separate civil action with the filing of a complaint, on account of one group of patients: civilly committed individuals—that is, individuals with mental health conditions so severe and dangerous that they have been committed involuntarily "to the Oregon Health Authority for treatment." ORS 426.130(1)(a)(C). Despite the command of a statute that these individuals be committed to OHA, for the past several years OHA has taken little or no responsibility for them. OHA has left them in community hospitals, which it knows are neither designed nor equipped to provide the rehabilitating care that long-length-of-stay mental health patients need. OHA's practice of leaving civilly committed patients in community hospitals, rather than taking responsibility for their care, violates the constitutional and statutory rights of civilly committed individuals and community hospitals alike.

On June 1, 2022, Legacy Emanuel Hospital & Health Center d/b/a Unity Center For Behavioral Health ("Unity") moved to intervene in the civil commitment proceeding of a single patient who had been left at Unity despite needing care at the Oregon State Hospital ("OSH") or another facility equipped to provide long-term treatment to civilly committed patients. A judge of the Marion County Circuit Court ordered OHA to transfer the patient to an appropriate facility and then held OHA in contempt of court for violating her order that, pursuant to statute, had committed the patient "to the Oregon Health Authority." OHA sought emergency review by the

---

[1] Putative Intervenors intend for the arguments set forth herein to also state the claims for which intervention is sought pursuant to Federal Rule of Civil Procedure 24(c). Putative Intervenors will of course state their claims in a separate pleading if so directed by the Court.

MOTION TO INTERVENE - 1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

158436519.2

Oregon Court of Appeals and was at first unsuccessful. Although Putative Intervenors are still gathering facts about these events, it appears that OHA, in collaboration with Disability Rights Oregon ("DRO") and Metropolitan Public Defenders Incorporated, rushed to this Court and sought an injunction that would halt the contempt proceedings in Marion County Circuit Court. Incredibly, OHA gave no notice to Unity's counsel. With no party opposed, this Court granted the motion and issued a broad injunction that binds the entire judiciary of Oregon—and also Unity, along with many other interested stakeholders.

Without the benefit of an adversarial proceeding, this Court was apparently steered to issuing an order based on incomplete information. The order assumes that appropriate placement of civilly committed individuals implicates only state statutes, which are subordinate to federal constitutional mandates. But in fact, appropriate placement of civilly committed individuals is required by the U.S. Constitution; the rights abridged by OHA's abrogation of responsibility for the civil commitment population are no less significant than the rights abridged by OHA's violation of the permanent injunction in this case.

The mechanism of intervention is designed for this kind of situation. Our adversarial justice system relies on opposing parties to present a robust airing of facts and law. Where nominally adverse parties collude to obtain particular relief—presenting a court with incomplete information—intervention allows affected outsiders to participate as parties and, thus, to present a fuller picture. On this basis, and for the additional reasons set forth below, Putative Intervenors respectfully ask this Court to allow them to intervene as parties to this case.

## II.    LEGAL STANDARD

Intervention is the procedure by which an outsider with an interest in a lawsuit may come in as a party though it has not been so named by the existing litigants. 7C Wright & Miller, *Fed. Prac. & Proc.* § 1901 (3d ed. 2022). Two paths to intervention are provided by Federal Rule of Civil Procedure 24: mandatory and permissive. Mandatory intervention—also called

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

"intervention of right"—must be allowed when the putative intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Permissive intervention may be allowed when the putative intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In deciding whether to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

In evaluating whether the requirements for intervention are met, courts construe Rule 24 "broadly in favor of proposed intervenors." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (citations omitted). That is because "[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.* (citation omitted). "[I]t is generally enough that the [putative intervenor's] interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (citation omitted). "Furthermore, a prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Id.* (citation omitted).

## III.   BACKGROUND

### A.   The *Mink* Case

This civil action, which has come to be known as "the *Mink* case," was filed on March 19, 2002. ECF 1. The Complaint alleged that the Oregon Department of Human Services (the predecessor to what is now called the Oregon Health Authority) and OSH violated the due process rights of criminal defendants determined to be unfit to proceed to trial due to mental incapacities by failing to have adequate capacity at OSH and, thus, incarcerating them in jails for

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

extended periods while awaiting admission to OSH. *Id.* A bench trial was held before Judge

Panner on April 8, 2002, ECF 37, after which the Court issued Findings of Fact and Conclusions

of Law, ECF 47. The Court concluded, among other things:

> Defendants are aware their policies and conduct results in delays
> (which are sometimes substantial) in fulfilling court orders directing
> the hospitalization of persons found unable to proceed, and they are
> aware that such persons receive inadequate care and are possibly
> harmed while detained in county jails awaiting admission.
> Nevertheless, defendants have refused to pursue or adopt policies to
> ensure prompt admission and treatment for these persons. This
> demonstrates a deliberate indifference to these persons' health, safety
> and constitutional rights. *See Estelle v. Gamble*, 429 U.S. 97, 104-05
> (1976). Moreover, defendants' policies are a substantial departure
> from professionally accepted minimum standards for treatment of
> incompetent individuals for whom defendants are responsible. *See
> Youngberg* [*v. Romeo*], 457 U.S. [307,] 323 [(1982)]; *see also Turay v.
> Seling*, 108 F. Supp. 2d 1148 (W.D. Wash. 2000), *aff'd sub nom.
> Sharp v. Weston*, 233 F.3d 1166 (9th Cir. 2000).

ECF 47 at 13. On this basis, among others stated in the decision, the Court held: "This court

concludes defendants have violated, and are violating, the due process rights of criminal

defendants who are determined by the Circuit Courts of Oregon to be unfit to proceed to trial

because of mental incapacities under ORS 161.370(2). Such persons have a right to a reasonably

timely transport to a treatment facility pursuant to the expectations and directions of the court

issuing findings and orders under that statute." ECF 47 at 14-15. The Court ordered that "persons

who are declared unable to proceed to trial pursuant to ORS 161.370(2) be committed to the

custody of the superintendent of a state hospital . . . as soon as practicable," which the Court

further defined to mean "providing full admission of such persons into a state mental hospital or

other treatment facility" within seven days of a finding that a defendant is unfit to proceed to trial

because of mental incapacity. ECF 47 at 15.

The United States Court of Appeals for the Ninth Circuit affirmed the district court's

order in a published opinion issued on March 6, 2003. ECF 76; *see also Oregon Advoc. Ctr. v.

Mink*, 322 F.3d 1101 (9th Cir. 2003). The Ninth Circuit's opinion focused on (1) the legislature's

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

choice to commit incapacitated criminal defendants to the state hospital, *id.* at 1119-1120; (2) the fact that incapacitated criminal defendants have not been convicted of a crime, and thus have an interest in freedom from incarceration, *id.* at 1120-21; and (3) the legal principle that it is not a defense to violations of constitutional rights that the state may lack funds or have allocated resources elsewhere, *see id.* at 1121 ("'Lack of funds, staff or facilities cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation.'") (quoting *Ohlinger v. Watson*, 652 F.2d 775, 779 (9th Cir. 1980)). The Ninth Circuit held that "only OSH has the highly trained staff and other resources needed to identify and treat an incapacitated criminal defendant's mental illness," and therefore affirmed the district court's findings of "significant, ongoing violations of substantive and procedural due process" and its permanent injunction. *Id.* at 1122.

There was no activity in this case from August 18, 2003 until May 9, 2019. ECF 81-82. At that time, and in the days that followed, DRO and Metropolitan Public Defenders filed motions for an order to show cause on the ground that OSH was out of compliance with the permanent injunction in this case. ECF 85, 91. Based on these motions and subsequent litigation activity, this Court began a process of monitoring OSH's efforts to return to compliance with the permanent injunction. The state hospital's efforts were interrupted by the COVID-19 pandemic, and this Court granted it relief from the permanent injunction for that reason. ECF 202. DRO and Metropolitan Public Defenders sought review by the Ninth Circuit, which in turn directed this Court to craft an order modifying the permanent injunction to be more narrowly tailored to the circumstances. ECF 214; *see also Oregon Advoc. Ctr. v. Allen*, No. 20-35540, 2021 WL 3615536, at *1 (9th Cir. Aug. 16, 2021). This Court has continued monitoring OSH's efforts to return to compliance with the permanent injunction. ECF 225-51.

On December 21, 2021, this Court appointed as a "neutral expert" Dr. Debra Pinals "to make recommendations to address capacity issues at the Oregon State Hospital." ECF 240 at 2.

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

The Court's appointment order directed the scope of Dr. Pinals' first report and recommendation as follows: "Th[e] report shall include suggested admissions protocol that addresses the admission of patients found unable to aid and assist in their own defense under ORS 161.370 (.370 patients) as well as patients found to be Guilty Except for Insanity (GEI patients)." ECF 240 at 2-3. Although OSH is in fact charged with providing in-custody care to a third population—individuals who have been civilly committed—Dr. Pinals was not directed to consider whether and how it would accommodate this population. *Id.* Thus, as directed, Dr. Pinals' first report "develop[ed] recommendations that are aimed primarily to reduce wait times to access OSH services when appropriate for individuals within the Aid and Assist and GEI context."[2] Dr. Pinals' first report does not mention, much less meaningfully address, accommodation and care of the civil commitment population. Dr. Pinals' second report acknowledges the existence of the civil commitment population but contains no recommendations for accommodation or care of civilly committed individuals.

On August 15, 2022, DRO and Metropolitan Public Defenders filed an unopposed motion for an order to implement Dr. Pinals' recommendations. That unopposed motion referred, somewhat obliquely, to "dozens of contempt (and similar) actions filed in circuit courts" including one specific contempt action in which "one state court judge has even threated [*sic*] to confine an OHA official, in jail as a sanction for not admitting a civilly committed patient." ECF 252 at 10. The motion indicated that Defendants would be filing a Request for Judicial Notice regarding this and other recent contempt actions. *Id.* That Request for judicial notice was filed on the same day. ECF 253. Because it was filed under seal, the above-referenced description is the

---

[2] Dr. Pinals January and June 2022 reports are respectively available at https://static1.squarespace.com/static/5d645da3cf8e4c000158e55a/t/61fae4fc94933f4b4566f36c/1643832573252/Oregon+Mink-Bowman+Neutral+Expert+Pinals+Report+1.30.22.pdf and https://static1.squarespace.com/static/5d645da3cf8e4c000158e55a/t/62a10f8b83e85f09b0a1e1f2/1654722445714/Oregon-Mink-Bowman-2nd-Neutral-Expert-Pinals-Report-6.5.22.pdf. They are discussed at length and linked in Plaintiffs' Unopposed Motion for Order to Implement Neutral Expert's Recommendations, ECF 252.

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

only information that Putative Intervenors have about its contents. What is clear, however, is that the nominally adverse parties knew exactly what the others were doing and, indeed, were acting in concert. *See* ECF 252 at 10.

The information contained in the unopposed motion for an order to implement Dr. Pinals' recommendations was false or misleading in at least two important respects. First, the motion strongly implies that the "dozens" of contempt actions—which, it says, involve "several hearings per week" and require "testimony required from clinical and administrative staff"—are for admission of civilly committed individuals to the state hospital. ECF 252 at 10. But Putative Intervenors are aware of only two such contempt actions that have ever occurred. In fact, the contempt actions described in Dr. Pinals' report relate to the aid and assist population, not the civil commitment population.

Second, the motion stated that the contempt actions "seek to require OSH to admit Aid and Assist or civilly committed patients ordered *contrary to the admissions protocol in Dr. Pinals' recommendations*." ECF 252 at 10. This, too, is false (or at least misleading) because Dr. Pinals was not directed to and did not make recommendations about admission of civilly committed individuals.

With respect to the referenced contempt action in which a state court judge had "threated [*sic*] to confine an OHA official, in jail as a sanction for not admitting a civilly committed patient," a hearing in that matter before the Marion County Circuit Court was scheduled for August 16, 2022. Despite that OHA had effectively joined in a motion to enjoin the Marion County Circuit Court matter, it did not notify opposing counsel in that matter.[3]

One day after the unopposed motion was filed, on August 16, 2022, the Court held a hearing on the unopposed motion and, later the same day, issued an Opinion and Order. The Order adopted parts, and declined to adopt parts, of Dr. Pinals' recommendations. The Order

---

[3] *See* Declaration of Eric J. Neiman.

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

then "enjoin[ed] any action that seeks to hold those associated with this case in contempt for their efforts to comply with the permanent injunction." ECF 256 at 6.

Two weeks later, on August 26, 2022, the Court held a subsequent hearing regarding the elements of Dr. Pinals' recommendations that it had not adopted. At that hearing, the Court announced its intention to reverse course and adopt those recommendations, as well as other requests of the parties that were not recommended by Dr. Pinals. As relevant here, the Court ordered that OSH "shall not admit persons civilly committed unless they meet the criteria in the civil admission [*sic*] expedited admissions policy." ECF 271 at 2. The Court further ordered the state hospital immediately to implement Dr. Pinals' recommendations that aid and assist patients be discharged: (1) for patients charged with a misdemeanor, after 90 days; (2) for patients charged with a felony (other than as listed in ORS 137.700(2)), after six months; (3) for patients charged with a violent felony listed in ORS 137.700(2), after one year. ECF 271 at 3-4.

### B.    The Civil Commitment Population[4]

Under Oregon law, individuals who are dangerous to themselves, dangerous to others, or unable to take care of their own basic needs due to a mental disorder may be civilly committed to OHA for involuntary treatment. ORS 426.130(1)(a)(C). Typically, a person who experiences a severe mental health crisis is taken to the emergency department of a community hospital. In most instances, the hospital is able to treat, stabilize, and release the person within several days. But where a person cannot promptly be stabilized and released, and meets the criteria for civil commitment, they are eligible to be involuntarily committed to OHA by a state court judge.

Despite that the person is ordered committed to OHA, in recent years, OHA has refused to make placement decisions for civilly committed individuals. In 2019, OHA announced that it would no longer admit civilly committed individuals to OSH, except in extraordinary cases that meet its expedited admission criteria. Thus, in the vast majority of cases, civilly committed

---

[4] The facts stated in this section are drawn from the Declaration of Alicia Beymer filed herewith.

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

individuals are left at community hospitals for the duration of their period of commitment. By statute, the period of commitment can extend to six months and can be renewed for successive six-month periods upon a judicial determination. Civilly committed individuals are therefore left in community hospitals for variable durations, from several days or weeks, to several months, to in some cases a year or more. Community hospitals may not discharge unstable civilly committed patients. Accordingly, in the absence of placement decisions by OHA, community hospitals are forced to provide inpatient care to civilly committed individuals for the duration of their period of commitment.

In most circumstances, long-term placement at a community hospital is not appropriate for civilly committed individuals. In general, civilly committed individuals require two phases of treatment: first, their acute symptoms (psychosis, paranoia, hallucinations, suicidal or homicidal ideation, etc.) must be stabilized; second, they must receive long-term rehabilitative treatment to recover from the acute episode of their mental illness. Community hospitals are designed and equipped to provide the first kind of care: stabilization and management of acute symptoms. But they are neither designed nor equipped to provide long-term rehabilitation services. Whereas stabilizing treatment typically involves highly restrictive settings and constant monitoring, long-term rehabilitative treatment involves much less-restrictive settings in which patients can practice independence and develop life and health skills for being successful in the community.

Unlike stabilization treatment, long-term rehabilitative treatment involves a more stable peer environment with less patient turnover, more socialization, more group therapy, and more peer support. Unlike stabilization treatment, long-term treatment provides education programs for patients to learn how to care for their basic needs, maintain employment, and maintain healthy relationships. Long-term rehabilitative treatment ultimately requires a calmer, less-stressful environment than an acute-care hospital, one that reduces the risk of the patient decompensating back into an acute mental health crisis. An acute care environment is therefore

4879-6514-6677.1

MOTION TO INTERVENE - 9

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

158436519.2

not conducive to a civilly committed individual's long-term recovery—in fact, it can be counterproductive.

Thus, for a civilly committed patient, appropriate care typically requires transition to an environment conducive to long-term rehabilitative treatment. Where civilly committed individuals are left to languish in acute care environments, those individuals' liberty interests are unnecessarily curtailed, they may not meaningfully recover, they may decompensate, and the very purpose of their involuntary commitment is undermined.

Further, where community hospital space and resources are occupied by civilly committed patients for long lengths of stay, the hospital's ability to provide appropriate care to other patients is limited and burdened. In many instances, community hospitals' inpatient behavioral health facilities have reached capacity on account of long-length-of-stay civilly committed patients and, as a result, community hospitals have not been able to accommodate other patients in need of inpatient behavioral health care.

## IV.    ANALYSIS

### A.    Putative Intervenors Satisfy the Requirements for Intervention of Right.

The case for intervention is simple and straightforward. As a result of the Court's orders of August 16, 2022, and September 1, 2022, the rights and interests of both the Putative Intervenors and their patients are now implicated by this action. Intervention is therefore warranted.

> *1.    This case implicates Putative Intervenors' rights and interests.*

Both orders of August 16 and September 1 implicate the rights and interests of Putative Intervenors. First, the Court's order of August 16, 2022, enjoins Putative Intervenors from intervening in state court civil commitment proceedings to seek appropriate placements for patients left in their care. The order, by its terms, enjoins "any action that seeks to hold those associated with this case in contempt for their efforts to comply with the permanent injunction."

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

ECF 256 at 6. The order leaves no doubt that it is directed at Putative Intervenors by referring twice to one particular state court contempt proceeding in which "one state court judge . . . threatened to jail an OHA official as a sanction for not admitting a civilly committed patient." ECF 256 at 3; *see also id.* at 6. One of the Putative Intervenors—Unity, which is owned by Legacy—was the party that sought to enforce the civil commitment statutes in that case. The August 16 order affected that case, enjoining its participants (including Unity), and enjoined the Putative Intervenors from prosecuting other actions like it.

Second, the Court's order of September 1, 2022, enjoins OSH from admitting the vast majority of civilly committed patients, except in exceedingly rare cases where the state hospital's expedited admission criteria are met. The effect of this injunction is to leave civilly committed individuals in community hospitals, including Putative Intervenors' hospitals, despite that these facilities are not able to provide the appropriate level of care. Where community hospital space and resources are co-opted by the state and occupied for long periods by civilly committed patients, hospitals' ability to provide appropriate care to other patients is burdened, and they often cannot accommodate other patients in need of inpatient behavioral health care.

Third, the Court's order of September 1, 2022, directs OSH to discharge aid and assist patients after prescribed durations, regardless of each patient's fitness or readiness for discharge. Implementation of the September 1 order will inevitably result in the discharge of unstable patients from OSH. (Indeed, the purpose of the order's discharge provisions is to direct the state hospital to discharge patients according to a predetermined schedule, that is, without an individualized assessment of whether they are eligible for discharge.) When these unstable patients decompensate, as will inevitably happen in some cases, they will be brought to the emergency departments of community hospitals—including Putative Intervenors' hospitals— and, ultimately, some will be civilly committed. OHA will then leave them at community

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

hospitals for the duration of their commitment, again co-opting hospitals' property and burdening the hospitals' ability to provide appropriate care to other patients.

This scenario is neither speculative nor far-fetched; it is quite literally OHA's plan. An OHA memo entitled "Mosman Ruling Frequently Asked Questions," the purpose of which is to explain how OHA intends to implement the September 1 order, states nine times that patients discharged from the state hospital can and will be civilly committed. Oregon Health Authority, *Mosman Ruling Frequently Asked Questions* at 3-4 (Sept. 16, 2022), available at https://www.oregon.gov/oha/OSH/Documents/OSH-mink-mosman-FAQ.pdf. For instance, in response to the question, "Will OSH discharge patients to the street?," OHA explains, "If the person is discharged based solely on the end of the length of inpatient restoration set out in the [September 1] order, the court will still need to . . . determine whether the person should be . . . civilly committed[.]" *Id.* at 3-4. Addressing the question, "What will happen to clients who are not stable when the clock expires?," OHA says that the committing court "makes a determination under ORS 161.370(2)(c), which can include initiation of civil commitment where the person poses a risk to themselves or others or is unable to provide for their own basic needs[.]" *Id.* at 5. In answer to the question, "Why doesn't the court order allow for case-by-case exceptions?," OHA explains that "there are mechanisms in place [to recommit] people who have more serious charges, or who are a danger to themselves or others," including that "the court may initiate civil commitment proceedings which can also commit a person for an additional 180 days (or more, if recommitted)." *Id.* at 2-3. In response to the question, "Where will a patient be released if their committing county does not have any secure residential treatment facility (SRTF) capacity?," OHA offers "initat[ion of] civil commitment" for a person determined to be "still unfit" after discharge from the state hospital. *Id.* at 3. The nine-page memo makes this point nine times.

What the memo does not say is what happens to individuals once they are civilly committed. The answer is: OHA leaves them in community hospitals, despite that community

4879-6514-6677.1

MOTION TO INTERVENE - 12

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

158436519.2

hospitals are not appropriate facilities to provide stabilizing and rehabilitative care for civilly committed patients. Thus, under the September 1 order—*according to OHA*—patients who are "still unfit" will be discharged from the state hospital and then civilly committed for "180 days (or more, if recommitted)." Most of these patients will be placed in community hospitals— including Putative Intervenors' hospitals—and left there. Stated differently, the practical effect of the September 1 order will be simply to move many behaviorally unstable individuals from OSH to community hospitals, including Putative Intervenors' hospitals. Rather than determining appropriate patient placement based on patient need, the September 1 order shifts the burden of providing care for "unfit" patients from OHA to community hospitals.

2. *This case implicates the rights and interests of Putative Intervenors' patients.*

In addition to the rights of Putative Intervenors, this case implicates the rights of patients who are brought to Putative Intervenors' hospitals for stabilizing treatment and then civilly committed. The September 1 order enjoins OSH from admitting the vast majority of civilly committed patients; this will cause patients who are brought to community hospitals for stabilization, and who are then committed, to be left in community hospitals indefinitely. The September 1 order also directs OSH to discharge aid and assist patients regardless of their fitness for discharge; this will result in the discharge of many unstable aid and assist patients who will inevitably become civilly committed and left in community hospitals indefinitely. Essentially, the September 1 order funnels more individuals into the civil commitment population while channeling that population into community hospitals for much or all of patients' commitment periods.

But community hospitals are not designed, equipped, or staffed to provide the type of long-term rehabilitative care that civilly committed patients need. Community hospitals are meant to provide stabilizing treatment to manage the acute symptoms of patients experiencing severe mental health crises—treatment which involves emergency care, highly restrictive

4879-6514-6677.1
MOTION TO INTERVENE - 13

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

158436519.2

settings, and constant monitoring. But civilly committed patients who have already been stabilized (that is, most civilly committed patients) do not need that kind of care; instead, they need long-term rehabilitation treatment. Long-term rehabilitation requires a calmer, less stressful, less-restrictive environment where patients have more independence, peer support, socialization, and opportunities to develop and life and health skills. Acute care community hospitals are simply not designed to provide that kind of treatment, as environments for long-term rehabilitation are generally inconsistent with environments for acute crisis care and stabilization. Thus, when civilly committed patients are left in acute care environments, they do not meaningfully recover. In fact, they frequently decompensate back into acute crises, undermining the very purpose of their commitment.

Involuntarily committed individuals have a constitutional right to receive treatment reasonably calculated to lead to the end of their involuntary detention; that is, treatment which provides "a realistic opportunity to be cured or to improve [the] mental condition" for which they were confined. *Ohlinger*, 652 F.2d at 779. When civilly committed patients are channeled into community hospitals for indefinite periods—where they do not get the appropriate kind of treatment calculated to provide an opportunity for meaningful long-term recovery—patients' rights and interests are violated.

Here, Putative Intervenors have standing to assert the rights and interests of civilly committed patients left in their care. Putative Intervenors have articulated distinct and palpable ways in which this case implicates both Putative Intervenors' and patients' rights. And because Putative Intervenors' and patients' interests are closely aligned, Putative Intervenors will seek relief that will redress both their own injuries and their patients' injuries. *See generally Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 61 (9th Cir. 1994) (identifying the constitutional limitations of standing as "(1) a threatened or actual distinct and palpable injury to the plaintiff; (2) a fairly traceable causal connection between the injury and the

4879-6514-6677.1

MOTION TO INTERVENE - 14

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

158436519.2

defendant's challenged conduct; and (3) a substantial likelihood that the requested relief will redress or prevent the injury" (internal quotation marks omitted)).

Moreover, this case presents an obvious exception to the general prudential principle that parties should assert only their rights and not others' rights. *See Powers v. Ohio*, 499 U.S. 400, 411 (1991) (a party has standing to enforce others' rights if: (1) the party has a "concrete interest" in the outcome of the dispute (that is, the party has suffered an "injury in fact"); (2) the party has a "close relationship" with the third party whose rights are being asserted; and (3) there exists "some hindrance to the third party's ability to protect his or her own interests"); *see also Home Care Ass'n of Am. v. Bonta*, No. 21-15617, 2022 WL 445522, at *3 (9th Cir. Feb. 14, 2022). As discussed, Putative Intervenors suffer separate injuries from patients and thus have their own concrete interests in the outcome of this case (albeit interests aligned with patients' interests). Putative Intervenors also have patently close relationships with their patients. *See, e.g.*, *Singleton v. Wulff*, 428 U.S. 106, 117 (1976) ("The closeness of the relationship [between doctor and abortion patient] is patent[.]").

Further, there are genuine hindrances that inhibit civilly committed patients from protecting their own interests in disputes like this, such that Putative Intervenors can stand in for patients. *See Home Care Ass'n of Am.*, No. 21-15617, 2022 WL 445522, at *3 (9th Cir. Feb. 14, 2022) ("To bar a third party from bringing a claim, a hindrance must present a genuine obstacle beyond a lack [of] a sufficient individual economic stake in the outcome or motivation." (internal quotation marks omitted)). Civilly committed patients generally will be disinclined to bring their own lawsuits due to privacy concerns. *See generally State v. T.T.*, 293 Or. App. 376, 386, 428 P.3d 921, 927 (2018) (Aoyagi, J., dissenting) (noting the "serious . . . social stigma . . . attendant to a civil commitment"). Civilly committed patients will also typically be discharged long before any litigation can run its course, frequently causing their claims to become moot before they can obtain relief. *See* ORS 426.130(b) (civil commitment period shall not last more than 180 days).

4879-6514-6677.1

MOTION TO INTERVENE - 15

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

158436519.2

Either rationale is enough for a hospital to assert claims on behalf of its patient. Indeed, the Supreme Court has repeatedly held that physicians have *jus tertii* standing to challenge abortion laws on their patients' behalf, as abortion patients are often "hindered" from asserting their own claims due to both privacy concerns and the likelihood that their claims will become moot. *See, e.g.*, *Singleton v. Wulff*, 428 U.S. 106, 117-18 (1976) (plurality opinion); *Griswold v. Connecticut*, 381 U.S. 479, 481 (1965).

> 3.    *Putative Intervenors should be granted mandatory intervention on behalf of both themselves and their patients.*

These circumstances are more than sufficient to satisfy the requirements for intervention of right under Rule 24(a)(2). To establish a right to intervene in a lawsuit, all the movant must show is that it:

(1) "claims an interest relating to the property or transaction that is the subject of the action,"

(2) "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and

(3) that "existing parties [do not] adequately represent that interest."

Fed. R. Civ. P. 24(a)(2).

These elements are certainly present here. First, the August 16 order directly enjoins the Putative Intervenors. Under the order, they are restricted in vindicating their own rights and the rights of their patients by seeking to hold OHA accountable to make appropriate placements. This fact alone is sufficient to establish that Putative Intervenors have an interest in the subject of this action, that they will not be able to protect these interests, and that no other party adequately represents these interests.

Furthermore, the September 1 order, which effectively shifts the burden of providing care to members of the aid and assist population from OSH to Putative Intervenors, is an independent basis for intervention of right. There is no question that Putative Intervenors have an interest in

**LEWIS BRISBOIS BISGAARD & SMITH LLP**    **PERKINS COIE LLP**
888 SW Fifth Avenue, Suite 900    1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97204-2025    Portland, Oregon 97209-4128
Telephone: 971.712.2800 • Fax 971.712.2801    Phone: +1.503.727.2000 • Fax: +1.503.727.2222

their own facilities and their ability to care for their patients. In many instances, Putative Intervenors' inpatient behavioral health facilities have been co-opted by the state and have reached capacity on account of long-length-of-stay civilly committed patients and, as a result, Putative Intervenors have not been able to accommodate other patients in need of inpatient behavioral health care. This problem will inevitably worsen as more patients are civilly committed and left at Putative Intervenors' hospitals.

The September 1 order also implicates the distinct rights of civilly committed patients left in Putative Intervenors' care. Involuntarily committed patients have constitutional liberty interests that are already being negatively impacted by this action. And the existing parties to this case have already demonstrated that they will not, and do not, adequately represent the interests of civilly committed patients. Since these patients are generally hindered from asserting their own rights in disputes like this, it is especially appropriate that Putative Intervenors intervene for them. If Putative Intervenors do not assert civilly committed patients' rights, likely no one will.

Excluding Putative Intervenors from this case would impair their ability to protect all these interests. Already, the Court has appointed a neutral expert, Dr. Pinals, and directed her to "suggest[] admissions protocol that addresses the admission of patients found unable to aid and assist in their own defense under ORS 161.370 (.370 patients) as well as patients found to be Guilty Except for Insanity (GEI patients)." ECF 240 at 2-3. Absent from Dr. Pinals' court-ordered scope is a third population that state law commits to OHA: civilly committed individuals. Dr. Pinals' two reports thus make no recommendations about the civil commitment population. Despite this oversight, the Court's August 16 and September 1 order adopt Dr. Pinals' recommendations as if they were a comprehensive plan for addressing state acute mental healthcare capacity crisis. Clearly, an important set of voices and interests are missing from this conversation.

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

The impact of Putative Intervenors' absence is also visible in the events of August 15 and 16, 2022. Although Putative Intervenors are still gathering facts, it appears that the parties to this action may have colluded in rushing to this Court to seek an injunction that would halt the proceedings in a specific case that was ongoing before Marion County Circuit Court. OHA— which was a party to that action and this one—gave no notice to Unity's counsel of the injunction being sought in this case. With no party opposed, this Court granted the motion and issued the requested injunction. As detailed above, the information presented to this Court was false or misleading, at worst, and incomplete, at best. As a result, this Court was steered to issuing an injunction based on incomplete information just one day after it was requested.

This record of events makes abundantly clear that Putative Intervenors' participation in this action is necessary for the protection of their rights and interests, as well as the rights and interests of their patients. None of the existing parties can adequately represent those interests. Accordingly, Putative Intervenors readily satisfy the requirements for intervention of right.

### B.    Putative Intervenors Satisfy the Requirements for Permissive Intervention.

For substantially the same reasons, intervention should be granted in the exercise of this Court's discretion. As mentioned, Rule 24 offers litigants two paths to intervention. Even where the elements of mandatory intervention under Rule 24(a) are not satisfied, a putative intervenor may still be allowed to participate as a party under Rule 24(b). Such intervention is allowed when the putative intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

There is substantial overlap between the claims and defenses asserted in this case with Putative Intervenors' claims. Fundamentally, the Complaint originally filed in this action alleged that a population of individuals experiencing acute mental illness was being deprived of the right to due process of law because, despite that state courts were ordering that these individuals be committed to OSH, they were nonetheless being held in facilities unable to provide the

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

appropriate level of mental health care. *See Oregon Advoc. Ctr.*, 322 F.3d at 1105-07. That is substantially identical to the claims that Putative Intervenors now assert.

Interestingly, there is also meaningful overlap between the defenses asserted in this action and Putative Intervenors' claims. OHA has always maintained in this case, and continues to maintain, that the state hospital lacks capacity to accommodate incoming aid and assist patients on account of its obligations to care for existing patients. To some extent, Putative Intervenors make the same point, although to different effect. OHA is obligated to appropriately place and care for all patients committed to its custody, whatever the legal mechanism of commitment. There is no legal basis for incoming aid and assist patients to take priority over existing patients and, for that matter, other individuals committed to OHA. Inasmuch as OHA has consistently argued this defense to the claims asserted in this case, Putative Intervenors agree. But Putative Intervenors and OHA part ways in their views of the consequences of this position. While OHA maintains that others must bear the burdens of their capacity limitations, Putative Intervenors maintain that the state must increase capacity to appropriately place and provide care for all involuntarily committed patients, whether committed through the aid and assist, guilty except insanity, or civil commitment channels. By law, OHA is responsible for all of these individuals, and should not prioritize one group over another.

In considering the overlap of claims and defenses under Rule 24(b)(1)(B), it is important to understand that the affected individuals are quite literally the same people in many instances. When a police officer responds to a 911 call and finds an obviously mentally ill person causing harm to another person, he or she makes a choice: bring this person to jail or to a hospital's emergency department. *See Uncommitted: How High Standard Are Fueling A Cycle That Can Fail People With Serious Mental Illness*, KGW (Sept. 6, 2022), https://www.kgw.com/article/news/investigations/cycle-failing-people-with-serious-mental-illness-uncommitted/283-c921b1aa-de69-4656-9870-359faff8a914. If the person is brought to

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

jail, he or she may be sent to OSH as part of the aid and assist population. *Id.* If the person is brought to the emergency department, he or she may be civilly committed. *Id.* Also, as discussed above, aid and assist patients who are released from the state hospital prematurely become candidates for civil commitment. They are the same individuals passed from one legal track to another.

Because of the substantial overlap between claims, defenses, and affected individuals, this Court should at least exercise its discretion to allow intervention under Rule 24(b).

### C.     The Instant Motion is Timely

Finally, Rule 24 requires a motion to intervene to be timely. Fed. R. Civ. P. 24(a), (b). Despite that this civil action is more than 20 years old, only the developments of the past six weeks have created a need for Putative Intervenors to seek intervention. Before last month, Putative Intervenors had no indication that they might be enjoined from seeking to enforce judicial orders in state court civil commitment cases. Likewise, before last month, Putative Intervenors had no indication that the Court would order OSH to release unstable aid and assist patients in contravention of state statutes and state court orders. And, relatedly, Putative Intervenors had no indication before last month that the Court would enjoin the state hospital from admitting the vast majority of civil commitment patients, i.e., those whom OHA determines do not qualify for expedited admission. These events implicate Putative Intervenors' legal interests and give rise to the necessity of intervention. This motion has been filed with appropriate promptness, by the deadline imposed by this Court for outside parties "to file any brief addressing legal issues" implicated by the Court's August 16 and September 1 orders. ECF 269. It is therefore timely.

/ / /

/ / /

/ / /

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

## V.    CONCLUSION

For the foregoing reasons, Putative Intervenors respectfully ask the Court to allow intervention in this case.

DATED this 28th day of September, 2022.

LEWIS BRISBOIS BISGAARD & SMITH LLP


By:    *s/ Eric J. Neiman*
Eric J. Neiman, OSB #823513
Emma P. Pelkey, OSB #144029
Telephone: 971.712.2800
Facsimile: 971.712.2801


PERKINS COIE, LLP


By:    *s/ Misha Isaak*
Misha Isaak, OSB #086430
Alex Van Rysselberghe, OSB #174836
Telephone: 503.727.2000
Facsimile: 503.727.2222

*Attorneys for Putative Intervenors*

4879-6514-6677.1

MOTION TO INTERVENE - 21

158436519.2

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222