**Eric J. Neiman, OSB #823513**
Eric.Neiman@lewisbrisbois.com
**Emma P. Pelkey, OSB #144029**
Emma.Pelkey@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800
Facsimile: 971.712.2801

**Misha Isaak, OSB #086430**
MIsaak@perkinscoie.com
**Alex Van Rysselberghe, OSB #174836**
AVanRysselberghe@perkinscoie.com
PERKINS COIE, LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209
Telephone: 503.727.2000
Facsimile: 503.727.2222

*Attorneys for Intervenors*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC. and A.J. MADISON, <br><br> Plaintiffs, <br><br> vs. <br><br> PATRICK ALLEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital, <br><br> Defendants, | Case No. 3:02-cv-00339-MO (Lead Case) <br> Case No. 3:21-cv-01637-MO (Member Case) <br><br> **MOTION TO DISSOLVE THE AUGUST 16, 2022 INJUNCTION, AND DISSOLVE OR MODIFY THE SEPTEMBER 1, 2022 INJUNCTION** <br><br> **By Intervenors Legacy Emanuel Hospital & Health Center d/b/a Unity Center For Behavioral Health, Legacy Health System, PeaceHealth, and Providence Health & Services – Oregon** |

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

4874-0488-2741.1  1
158426494.1

and

LEGACY EMANUEL HOSPITAL &
HEALTH CENTER d/b/a UNITY CENTER
FOR BEHAVIORAL HEALTH, LEGACY
HEALTH SYSTEM, PEACEHEALTH, and
PROVIDENCE HEALTH & SERVICES –
OREGON,

          Intervenors.

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION

4874-0488-2741.1 1
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP

888 SW Fifth Avenue, Suite 900

Portland, Oregon 97204-2025

Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP

1120 N.W. Couch Street, Tenth Floor

Portland, Oregon 97209-4128

Phone: +1.503.727.2000 • Fax: +1.503.727.2222

# Table of Contents

MOTION.................................................................................................................. 1

MEMORANDUM OF LAW ..................................................................................... 1

I.   INTRODUCTION ........................................................................................... 1

II.  BACKGROUND .............................................................................................. 2

III. ARGUMENT .................................................................................................... 6

   A.  The September 1 injunction should be dissolved or at least modified............................ 6

     1.  The injunction unlawfully prioritizes aid-and-assist patients over civilly committed patients and violates civilly committed patients' constitutional rights. ............................ 6

     2.  The injunction violates Oregon's civil commitment laws............................................ 9

     3.  The injunction will cause workplace violence in acute care hospitals. ..................... 10

     4.  The injunction is harmful to the community. ............................................................ 12

     5.  The expedited admission policy has already proved unworkable. ............................ 14

     6.  Dr. Pinals' report did not limit admission for civilly committed patients................. 15

     7.  If the September 1 injunction is not dissolved, it should be modified to protect the rights of civilly committed individuals. ........................................................................... 15

   B.  The August 16 injunction should be dissolved. ............................................................ 15

     1.  The Anti-Injunction Act precludes the August 16 injunction. .................................. 15

       a.  Congress did not expressly authorize such an injunction. ..................................... 17

       b.  An injunction is not necessary in aid of this Court's jurisdiction.......................... 17

       c.  The relitigation exception does not apply.............................................................. 18

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - i

158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

    d.   No exception to the Anti-Injunction Act applies in this case. ................................ 19

2.   The Younger abstention doctrine precludes the August 16 injunction. .................... 19

3.   The O'Shea abstention doctrine precludes the August 16 injunction. ...................... 23

4.   The August 16 injunction does not comply with Rule 65. ......................................... 25

    a.   The intervenors did not receive notice. .................................................... 25

    b.   The August 16 injunction lacks the required specificity. ......................... 27

    c.   The August 16 injunction impermissibly binds non-parties. .................... 28

5.   The August 16 injunction is an extraordinary, unwarranted remedy. ....................... 29

    a.   There was no likelihood of success on the merits. .................................... 29

    b.   Irreparable harm was not established. ...................................................... 30

    c.   The public consequence of the injunction heavily weighs against it. ...................... 31

6.   The August 16 injunction overrules binding state court precedent. ........................... 32

CONCLUSION .................................................................................................................... 33

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - ii

158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

# Table of Authorities

CASES

*Alliance for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011) ............................................................. 30

*Alton Box Bd. Co. v. Esprit de Corp.,*
682 F.2d 1267 (9th Cir. 1982) ............................................................. 17

*Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs,*
398 U.S. 281, 90 S. Ct. 1739, 26 L. Ed. 2d 234 (1970) .................... 16, 17

*Bowman v. Matteucci,*
3:21-cv-01637, 2021 WL 5316440 (D. Or. Nov. 15, 2021) ............... 3, 8, 9

*Caribbean Marine Servs. Co. v. Baldrige,*
844 F.2d 668 (9th Cir. 1988) ............................................................. 30

*Chick Kam Choo v. Exxon Corp.,*
486 U.S. 140, 108 S. Ct. 1684, 100 L. Ed. 2d 127 (1988) ................ 18, 19

*Courthouse News Serv. v. Planet,*
750 F.3d 776 (9th Cir. 2014) ............................................................. 24

*Dakota Med., Inc. v. RehabCare Grp., Inc.,*
2018 U.S. Dist. LEXIS 15972 (E.D. Ca. Jan. 30, 2018) .................... 19

*De Beers Consol. Mines v. United States,*
325 U.S. 212, 65 S. Ct. 1130, 89 L. Ed. 1566 (1945) ........................ 28

*Drakes Bay Oyster Co. v. Jewell,*
747 F.3d 1073 (9th Cir. 2014) ........................................................... 31

*E.T. v. Cantil-Sakauye,*
682 F.3d 1121 (9th Cir. 2011) (per curiam) ...................................... 24

*Fuentes v. Shevin,*
407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972) ...................... 25

*Granny Goose Foods, Inc. v. Teamsters,*
415 U.S. 423, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974) .................... 25, 27

*H.J. Heinz Co. v. Owens,*
189 F.2d 505 (9th Cir. 1951) ............................................................. 16

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - i

158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

*Hicks v. Feiock*,
    485 U.S. 624 (1988)..................................................................32

*Humphrey v. Cady*,
    405 U.S. 504 (1972)....................................................................8

*In re Complaint of Judicial Misconduct*,
    425 F.3d 1179 (9th Cir. 2005) ...................................................25

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability
    Litigation*,
    134 F.3d 133 (3rd Cir. 1998) .....................................................16

*Juidice v. Vail*,
    430 U.S. 327, 97 S. Ct. 1211, 51 L. Ed. 2d 376 (1977).........19, 20, 21, 23

*League of Wilderness Defs./Blue Mountains Biodiversity Project. v.
    Connaughton*,
    752 F.3d 755 (9th Cir. 2014) .....................................................31

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    523 F.3d 1091 (9th Cir. 2008) ...................................................17

*O'Shea v. Littleton*,
    414 U.S. 488, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974).........23, 24, 25, 29

*Ohlinger v. Watson*,
    652 F.2d 775 (9th Cir. 1980) .......................................................8

*Or. Advocacy Ctr. v. Mink*,
    322 F.3d 1101 (9th Cir. 2003) ........................................... passim

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
    810 F.3d 631 (9th Cir. 2015) .....................................................28

*Pennzoil Co. v. Texaco, Inc.*,
    481 U.S. 1, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987)...................21

*Potrero Hills Landfill, Inc. v. County of Solano*,
    657 F.3d 876 (9th Cir. 2011) .....................................................19

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*,
    204 F.3d 867 (9th Cir. 2000) ................................................16, 19

*Quackenbush v. Allstate Ins. Co.*,
    121 F.3d 1372 (9th Cir. 1997) ...................................................16

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - ii

158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

*Sandpiper Village Condominium Ass'n., Inc. v. Louisiana-Pacific Corp.*,
    428 F.3d 831 (9th Cir. 2005) ...................................................................16, 17

*Schmidt v. Lessard*,
    414 U.S. 473, 94 S. Ct. 713, 38 L. Ed. 2d 661 (1974)............................27

*Sharp v. Weston*,
    233 F.3d 1166 (9th Cir. 2000) .....................................................................8

*State v. Zamora-Skaar*,
    308 Or. App. 337 (2020).............................................................................32

*United States v. 14.02 Acres of Land*,
    547 F.3d 943 (9th Cir. 2008) .....................................................................22

*Williams v. Philip Morris Inc.*,
    344 Or. 45, 176 P.3d 1255 (2008) .............................................................10

*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 (2008).........................................................................29, 30, 31

*Younger v. Harris*,
    401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)...................... passim

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    395 U.S. 100, 89 S. Ct. 1562, 23 L. Ed. 2d 129 (1969)..........................28

*Zepeda v. United States Immigration Service*,
    753 F.2d 719 (9th Cir. 1985) .....................................................................28

## STATUTES

28 U.S.C. § 2283 ..................................................................................16, 17, 19

Anti-Injunction Act................................................................................ passim

ORS 137.700(2) .................................................................................................5

ORS 161.370......................................................................................................32

ORS 426.060(2) ..............................................................................................9, 27

ORS 426.225(1) ...............................................................................................10

## OTHER AUTHORITIES

Fed. R. Civ. P. 65 ........................................................................................ passim

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - iii

158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

Fed. R. Evid. 201 ............................................................................................................22

https://www.oregon.gov/oha/OSH/Documents/OSH-mink-mosman-FAQ.pdf ...........................22

Local Rule 7-1.................................................................................................................1

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - iv
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

<u>**CONFERRAL CERTIFICATION**</u>

Pursuant to Federal Rule of Civil Procedure 65(b)(4) and Local Rule 7-1, counsel for the above-captioned Intervenors, Eric J. Neiman, conferred in good faith about this motion with counsel for Plaintiff Disability Rights Oregon, Tom Stenson, counsel for Plaintiff Metropolitan Public Defenders Incorporated, Jesse A. Merrithew, and counsel for Defendants Patrick Allen and Dolores Matteucci, Carla Scott and Craig Johnson, by telephone on September 26, 2022. The motion is opposed.

**MOTION**

Pursuant to Federal Rule of Civil Procedure 65(b)(4), Intervenors Legacy Emanual Hospital & Health Center d/b/a Unity Center For Behavioral Health, Legacy Health System, PeaceHealth, and Providence Health & Services – Oregon (hereinafter, "Intervenors")[1] apply to the Court for an order (1) dissolving the August 16, 2022 injunction, which enjoins any action that seeks to hold the Oregon Health Authority (OHA) in contempt for its efforts to comply with the permanent injunction in this case, and (2) dissolving or modifying the September 1, 2022 injunction, which prioritizes aid-and-assist and guilty except insanity (GEI) patients for admission to the Oregon State Hospital (OSH) and drastically shortens the restoration timelines for inpatient treatment at OSH.

**MEMORANDUM OF LAW**

I.    <u>**INTRODUCTION**</u>

Intervenors represent Oregon's largest health systems and operate community hospitals around the state. Each of them is committed to ensuring the health and wellbeing of their patients. Intervenors now ask the Court to unwind two injunctions which were entered without the participation of community hospitals—critical stakeholders to the behavioral health system in Oregon. Not only were Intervenors and other community hospitals not given notice and an

---

[1] The term "Intervenors" is used herein because the Court will reach this Motion only if it grants the pending Motion to Intervene.

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 1
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

opportunity to respond to provide this Court with a complete record, but they were also excluded from the process that led to Dr. Pinals' recommendations, which led to the injunction on September 1, 2022. In other words, the interests of Intervenors and their patients have never been heard by this Court. Accordingly, Intervenors ask this Court to dissolve the August 16, 2022 injunction, and dissolve or modify the September 1, 2022 injunction, after hearing input from Oregon's community hospitals, which advocate for both themselves and their patients.

## II.   **<u>BACKGROUND</u>**

Intervenors first learned that an injunction had been entered that affected their interests *after* it was entered. At the time, one of the Intervenors—Unity, which is owned by Legacy—was actively litigating against OHA in a civil commitment case in Marion County. Unity had been permitted to intervene in that case because the patient had spent almost her entire 180-day civil commitment confined in an acute care hospital, a highly restrictive environment that is not equipped or staffed to provide long-term treatment to civilly committed individuals. Thereafter, Unity filed a motion asking the trial court to order OHA to immediately transfer the patient to an appropriate long-term placement. The trial court granted the motion and entered the following order on July 12, 2022: "the Oregon Health Authority must transfer [the patient] from Unity to a secure residential treatment facility, to include the Oregon State Hospital if appropriate, by July 15, 2022, at 12:00 p.m. If no such placement is made, the Oregon Health Authority is to appear and show cause why it should not be held in contempt on July 15, 2022, at 1:30 p.m."

Unbeknownst to Unity, OHA had made other plans, which did not involve complying with the July 12, 2022 order. Without conferring, and without any notice to Unity or its counsel, Defendants in cooperation with Plaintiffs rushed into this Court to enjoin the Marion County case. On August 15, 2022, the day before a contempt hearing in the Marion County case was scheduled, the parties in this case made two coordinated filings, after filing nothing for more than two months. Plaintiffs filed an unopposed motion to implement Dr. Pinals'

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 2
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

recommendations, while Defendants filed an unopposed request for judicial notice under seal. ECF 252, 253.

Despite its legal obligations to avoid prioritizing the constitutional rights of some patients over others, Defendants acquiesced to Plaintiffs' motion to compel OHA to do just that.[2] Plaintiffs framed its request as an unopposed motion to implement Dr. Pinals' recommendations, but Plaintiffs effectively sought an injunction. Specifically, Plaintiffs moved to enjoin OSH to prioritize admission of aid-and-assist and GEI patients into OSH. Among other things, Plaintiffs asked for an injunction that expressly prohibits admission of civilly committed patients into OSH unless the civilly committed patient meets the stringent and rarely met criteria for expedited admission. Despite that such prioritization is unlawful under both Supreme Court precedent and this Court's prior order in *Bowman v. Matteucci*, 3:21-cv-01637, 2021 WL 5316440, at *2 (D. Or. Nov. 15, 2021),[3] Defendants declined to oppose Plaintiffs' motion and did not raise the issue to this Court.

Not only did the unopposed motion ask this Court to approve OHA's practice of prioritizing aid-and-assist and GEI patients ahead of civilly committed individuals, it also contained information that was inaccurate and misleading in at least three important respects. First, the motion strongly implied that the "dozens" of contempt actions—which, it says, involve "several hearings per week" and require "a resource of testimony required from clinical and administrative staff"—were for admission of civilly committed individuals to OSH. ECF 252 at 10. That is inaccurate, at best. The motion conflated the multiple contempt actions brought on behalf of aid-and-assist patients over the past several years, with the **two** civil commitment cases where contempt was raised over the past few months (only one of which ending with a contempt

---

[2] Circumstances suggest that Defendants may have done more than merely acquiesce. *See* ECF 253 (Request for Judicial Notice). Intervenors are still gathering information about the role Defendants played in the events of August 15 and 16.

[3] *Bowman* was later consolidated with *Mink* after the November 15, 2021 Order.

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 3
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

finding). Further, the motion relied on the contempt actions described in Dr. Pinals' report, which relate to the aid-and-assist population exclusively, not the civil commitment population.

Second, the motion mischaracterized the relief requested in civil commitment cases as whether OHA should be held in contempt for failing to admit individuals to OSH—when, in fact, no contempt motion in a civil commitment case has been brought for failing to admit a civilly committed individual to OSH. Instead, the two contempt motions have focused on OHA's failure to make **any** placement decision at all for civilly committed individuals. With respect to the Marion County case, it is the only civil commitment case where OHA has been held in contempt. That case did not involve a contempt action for failing to admit a civilly committed individual to OSH, and although the judge threatened incarceration, there was not a threat to confine a specific OHA official. Unity made it clear to OHA and the trial court that it does not support confinement of any OHA employees. Instead, Unity requested daily fines to be imposed against OHA "to be used to support the civil commitment population and efforts to increase long-term care and treatment options for them," and payment of its attorney fees and costs for having to force OHA to comply with a court order and the law.

And third, the motion was supported by a supplemental brief, which misleadingly stated that Dr. Pinals studied "every aspect of the system including engaging with key stakeholders to inform her recommendations to this Court," as support for why this Court should adopt Dr. Pinals' recommendations. ECF 265 at 4. That, too, is wrong. Dr. Pinals' scope was limited to the aid-and-assist and GEI populations. ECF 240 at 2-3. Based on this limited scope, she did not consult with any community hospitals, which are a critical stakeholder in Oregon's behavioral health system, and she did not make recommendations about accommodation and treatment of civil commitment patients.

Remarkably, one day after the unopposed motion and unopposed sealed request for judicial notice were filed, this Court held a hearing and, later that day, issued an Opinion and

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 4
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

Order. The Order adopted parts, and declined to adopt other parts, of Dr. Pinals'

recommendations. The Order further took judicial notice of the following:

> And already, Defendants' response to the admittance crisis has created state-level conflict. I take judicial notice of the various Oregon state courts proceedings on whether the OSH and/or the Oregon Health Authority ("OHA") should be held in contempt under Oregon law for not admitting persons to OSH. *See* Req. for Judicial Notice. Plaintiffs' Motion further explains that one state court judge has even threatened to jail an OHA official as a sanction for not admitting a civilly committed patient. Mot. to Implement at 10.

ECF 256 at 5.

The Order then broadly "enjoin[ed] any action that seeks to hold those associated with

this case in contempt for their efforts to comply with the permanent injunction." ECF 256 at 6.

Two weeks later, on August 26, 2022, the Court held another hearing regarding the

elements of Dr. Pinals' recommendations that had not been adopted. At that hearing, the Court

announced its intention to adopt those recommendations, as well as other requests of the parties

that were not recommended. As relevant here, the Court ordered that OSH "shall not admit

persons civilly committed unless they meet the criteria in the civil admission expedited

admissions policy." ECF 271 at 2. The Court further ordered OSH to immediately implement Dr.

Pinals' recommendations that aid-and-assist patients be discharged: (1) for patients charged with

a misdemeanor, after 90 days; (2) for patients charged with a felony (other than as listed in ORS

137.700(2)), after six months; and (3) for patients charged with a violent felony listed in ORS

137.700(2), after one year. ECF 271 at 3-4.

The following week, it became clear that OHA did not have a plan for where individuals

prematurely discharged from OSH would go after OHA was unable to answer basic questions

posed to them at a townhall. Instead, OHA opted to release written answers in a "Frequently

Asked Questions" document. Not only did that document leave many questions unanswered, but

in nine different instances it offered civil commitment as the solution for severely

decompensated patients who had been released from OSH, without explaining where those

civilly committed individuals would go. Of course, OHA did not have to say where they would

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 5
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

go because everyone already knew—they would be brought to acute care community hospitals. And many of those who would be released rather than immediately committed had a high likelihood of decompensating in the community and returning to jail or being admitted to an acute care hospital and committed at a later date. Dr. Pinal's recommendations assumed the existence of a functioning mental health system with adequate capacity, which Oregon has not had for years.

In short, without the benefit of an adversarial proceeding, this Court was steered to issuing two injunctions based on incomplete information. Had Intervenors received proper notice and an opportunity to respond, the injunctions may not have been entered. Accordingly, Intervenors now apply to this Court for an order (1) dissolving the August 16 injunction which binds the entire judiciary of Oregon, other stakeholders in the judicial system, and Intervenors, and (2) dissolving or modifying the September 1 injunction, which unlawfully prioritizes aid-and-assist and GEI patients for admission to OSH, and drastically shortens the restoration timelines for inpatient treatment at OSH, regardless of whether the patient is safe to discharge.

## III.     ARGUMENT

### A.     The September 1 injunction should be dissolved or at least modified.

1.     The injunction unlawfully prioritizes aid-and-assist patients over civilly committed patients and violates civilly committed patients' constitutional rights.

The September 1 injunction should be dissolved or at least modified because it unlawfully prioritizes the admission of aid-and-assist and GEI patients at OSH ahead of civil commitment patients and violates those patients' constitutional rights.

Historically, civilly committed individuals went to OSH, where they received long-term treatment that provided them a meaningful opportunity to recover and return to the community. Over time, however, as the aid-and-assist population has grown, OSH has admitted increasingly more aid-and-assist patients and increasingly fewer civil commitment patients. Meanwhile, OHA has failed to create additional capacity for civilly committed patients to receive long-term

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 6
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

treatment in appropriate settings, and instead left civilly committed patients to languish indefinitely in acute care hospitals where they are initially detained before being committed.

Where civilly committed patients are abandoned in acute care hospitals, they do not receive appropriate long-term treatment. Community hospitals are designed to provide stabilizing treatment to manage the acute symptoms of patients experiencing severe mental health crises, often before civil commitment even occurs—such treatment typically involves emergency care, highly restrictive settings, and constant monitoring. But civilly committed patients who have already been stabilized (that is, most civilly committed patients) suffer in such a highly restrictive environment, surrounded by other patients in crisis and can often decompensate. Acute care hospitals are simply not able to provide the kind of long-term care needed for civilly committed patients not just to be stabilized but to recover so that their liberty no longer needs to be restrained.

Instead, civilly committed patients need long-term treatment. Long-term treatment aims to do more than simply manage the patient's symptoms—it aims to address the patient's mental illness itself with the goal of enabling the patient to recover from their illness and return to the community. Long-term treatment requires a calmer, less stressful, less-restrictive environment where patients are not locked in their rooms most of the day, and have more independence, peer support, socialization, and opportunities to develop life and health skills. Acute care hospitals are simply not designed, equipped, staffed, or intended to provide long-term treatment for individuals who are civilly committed. Thus, when civilly committed patients are left in acute care hospitals, they do not meaningfully recover. In fact, they frequently decompensate back into acute crises, undermining the very purpose of their commitment.

The September 1 order enjoins OSH from admitting the vast majority of civilly committed patients, closing off one of the only places where civil commitment patients can receive appropriate long-term treatment. Because there is insufficient capacity elsewhere for civil commitment patients to receive constitutionally adequate treatment, the order will inevitably

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 7
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

cause patients who are brought to acute care hospitals for stabilization, and who are then committed, to be left in acute care hospitals indefinitely where they will not receive appropriate long-term treatment.

As detailed in a separate lawsuit filed today by Intervenors, this violates civil commitment patients' substantive due process rights. Involuntarily detaining a person due to mental illness is "a massive curtailment of liberty." *Humphrey v. Cady*, 405 U.S. 504, 509 (1972). The State and Federal Constitutions require that mentally ill persons who are involuntarily detained receive "restorative treatment," that is, treatment calculated to lead to the end of their involuntary detention. *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003). "Civilly committed persons must be provided with mental health treatment that gives them a realistic opportunity to be cured or improve the mental condition for which they were confined." *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (internal quotation marks omitted). But when civilly committed patients are left in acute care hospitals and do not receive long-term treatment, they are deprived of this opportunity for recovery and remain in confinement for far longer than necessary.

By law, OHA may not prioritize aid-and-assist and GEI patients over civilly committed patients if it means giving civilly committed patients inadequate care. The Ninth Circuit has held that, when it comes to providing constitutionally adequate treatment to involuntarily detained patients, "[l]ack of funds, staff, or facilities cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation." *Ohlinger v. Watson*, 652 F.2d 775, 779 (9th Cir. 1980). And in *Bowman v. Matteucci*, Judge Marco A. Hernandez expressly rejected the notion that OHA may prioritize the constitutional rights of some patients over others:

> If OSH cannot admit GEI patients while admitting aid-and-assist patients within the court-ordered timeframe, it's because OSH lacks the space and the funding to do so—not because the *Mink* order compels it to prioritize one group over another. In other words, any prioritization stems from Defendant's failure to provide the funds, staff, and facilities necessary to satisfy the constitutional rights of both groups. When satisfying constitutional guarantees, Defendants cannot rob Peter to pay Paul.

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 8
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

*Bowman v. Matteucci*, 2021 WL 5316440, at *2.

Despite this unambiguous ruling, the September 1 injunction does exactly what the Court warned against in *Bowman* by prioritizing care for other patients over care for civilly committed patients, once again "robbing Peter to pay Paul." Lack of space, funding, and staffing does not justify Defendants' failure to comply with the *Mink* injunction, nor does it justify violating the constitutional rights of civilly committed individuals. Because OHA has an obligation to provide appropriate treatment to all three patient populations and cannot prioritize one group over another, that portion of the injunction should be dissolved.

OHA has an obligation to care for all three populations, not prioritize one over the other. The fact that a person is civilly committed does not make them any less deserving of an appropriate placement or the violation of their constitutional rights any less egregious. While OHA may have an obligation to comply with the *Mink* injunction, OHA also has an obligation to comply with civilly committed individuals' right to receive constitutionally adequate treatment. Ensuring constitutional rights are met and protected is not a zero-sum game. Unfortunately, OHA has known about capacity issues for years and done nothing to fix the problem.

2.    The injunction violates Oregon's civil commitment laws.

The September 1 injunction also violates Oregon's civil commitment laws. By statute, OHA must direct civilly committed persons "to the facility best able to treat" them, or delegate to a community mental health program director the responsibility for assignment of civilly committed persons to a "suitable" facility. ORS 426.060(2)(a), (d). The injunction violates that statute by removing OSH as an option for civilly committed individuals who do not qualify for expedited admission (because they are not violent), but may need a state hospital level of care, and who are instead left indefinitely in acute care hospitals, which are not equipped, staffed, or designed to provide long-term treatment for individuals who are civilly committed for 180-days.

Plaintiffs' unopposed motion states that "OSH Civil Expedited Admission Policy will help address any clinical risks to those individuals awaiting a state hospital bed for civil

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 9
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

commitment." ECF 252. That is misleading. In the last few years, only a handful of civilly committed individuals have been admitted to OSH based on the expedited admission criteria, which require the patient to be severely violent. Even then, individuals who should qualify for expedited admission are routinely denied, and left in acute care hospitals. As a result, the injunction makes admission to OSH next to impossible for most civilly committed individuals who are not violent at all, and have done nothing wrong other than to suffer from a mental illness.

Additionally, the injunction conflicts with ORS 426.225(1), which provides as follows:

> "[i]f any person who has been committed to [OHA] under . . . ORS 426.130(1)(a)(B) or (C) requests, during this period of commitment, voluntary admission to a state hospital, the superintendent shall cause the person to be examined immediately by a licensed independent practitioner. If the licensed independent practitioner finds the person to be in need of immediate care or treatment for mental illness, the person **shall** be voluntarily admitted." (emphasis added).

The word "shall" demonstrates that OHA's obligation to admit a voluntary civil commitment patient in need of immediate care or treatment for mental illness is mandatory. *See Williams v. Philip Morris Inc.*, 344 Or. 45, 60, 176 P.3d 1255 (2008) (statutes that use the word "shall" "generally indicate[] that something is mandatory"). Thus, the injunction violates ORS 426.225(1) because it prevents civilly committed individuals who seek voluntary admission to OSH from being voluntarily admitted unless they meet the expedited admission criteria.

### 3. The injunction will cause workplace violence in acute care hospitals.

Another problem with the September 1 injunction is that it will result in workplace violence in acute care hospitals by limiting admission of civilly committed individuals to OSH unless they meet the expedited admission criteria. To qualify for expedited admission, OSH requires that the person exhibit severe aggression directed towards other persons and/or property in the last two weeks, and which has (1) resulted in injury to others or property destruction, (2) required frequent or prolonged restraint and/or seclusion, (3) has persisted and remains at ongoing high risk of recurrence despite adequate treatment, and (4) cannot be safely treated on

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 10
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

an acute psychiatric unit. In other words, OSH requires the person to be severely violent towards others and/or property and have *already injured someone or destroyed property* while in an acute care hospital to even be considered for admission.

Even then, individuals who should qualify for expedited admission are routinely denied, and left in acute care hospitals. For example, as described in Intervenors' complaint filed today, earlier this year a community hospital housed a civilly committed patient who exhibited exceptionally aggressive behavior that was instantaneous and unpredictable. He assaulted a nurse which resulted in a concussion, verbally threatened to kill staff, threw objects at his care team, and cornered a nurse in the hallway. As a result of his threatening and disruptive behavior, staff called out for their own mental health, voluntary patients left, and one staff member resigned. The attending physician described the patient as "ONE OF THE MOST DANGEROUS patients [he had] treated on an acute unit in [his] 30 plus years as a psychiatrist." The community hospital tried to get the patient admitted to OSH, but he was denied expedited admission three times. On one of the denials, a physician from OSH said "off the record" that **the patient would almost have to kill someone to get in that way**. Ultimately, it took intervention in the civil commitment case by the acute care hospital, until two days before a hearing, OHA finally offered expedited admission.

As also alleged in the complaint, earlier this month another community hospital attempted to get a civilly committed individual admitted to OSH based on the expedited admission criteria, but that patient was refused admission because (1) he was not violent enough, and (2) not violent enough recently. The patient assaulted his psychiatrist on September 15, yet was declined only four days later on September 19. According to OHA, although the patient punched his psychiatrist in the abdomen, there was no indication that "this resulted in injury any worse than a similar assault on a couple of staff that was reviewed (by Dr. Walker) in the prior packet review last week."

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 11
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

These are just some examples of how the expedited admission criteria truly works in practice. While care providers and other patients are routinely assaulted (be it kicked, punched, shoved, bitten, or subjected to sexual advances), rarely is that enough to gain expedited admission to OSH. Even when providers and others are injured, OHA routinely refuses expedited admission due to the patient not being violent enough.

This unlawful practice should not be permitted to continue. It is unconscionable to require care providers and other patients in community hospitals to be injured merely to justify a civilly committed person's admission to OSH. Staff and other patients should not have to be exposed to violence, and property should not have to be destroyed, for a civilly committed person to receive equal access to OSH. Acute care hospitals are not set-up to handle that level of aggression and do not have the level of safety precautions in place at OSH. It is not acceptable, safe, or sustainable to require other patients and care providers to be exposed to violence in community hospitals, which are supposed to be therapeutic healing environments. The expedited admission criteria are pushing community hospitals to the brink. Intervenors have serious concerns that Oregon could lose valuable behavioral health resources in its community hospitals if this unlawful practice is permitted to continue.

4.     The injunction is harmful to the community.

The September 1 injunction is also harmful to the community. While Plaintiffs characterize the injunction as a "a conservative first step with minimal negative impacts" ECF 252 at 6, that could not be further from the truth. Solving a behavioral health crisis of this magnitude is complex and cannot be decided in a vacuum. In presenting its proposal, the parties ignored the significant negative impacts the injunction will have on individuals who are unstable and discharged prematurely from OSH, and the ability of community hospitals to serve those individuals who are suddenly taken from an appropriate level of care at OSH and discharged to an inappropriate level of care, and in many cases the street, due to a lack of available placements. The parties ignored that the injunction will likely result in unstable individuals decompensating

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 12
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

in the community, presenting to emergency departments, and cycling through the civil commitment system or the forensic system at OSH, over and over again.

Plaintiffs note that they "are concerned that people with mental illness continue to lack sufficient community behavioral health resources including those ordered for civil commitment languishing in local hospitals." ECF 252 at 6. According to Plaintiffs, ultimately, they "seek both sustained compliance with this Court's injunction and the related systematic reform that will create a full continuum of behavioral health services for all Oregonians with mental illness to serve them in their homes and communities rather than overly relying on civil commitment, aid and assist, or other facility-based treatment." *Id.* at 11. While those are enviable goals that Intervenors share, that is not what the September 1 injunction will accomplish.

The Court need look no further than the "Frequently Asked Questions" document created by OHA to understand that the scenario Intervenors are describing is neither speculative nor far-fetched; it is quite literally OHA's plan. What is clear from this document is that OHA is relying on Oregon's broken civil commitment system as the answer for what to do about the population of patients discharged prematurely from OSH, including patients who are seriously dangerous, unstable, and those who lack appropriate placements and are discharged to the street. There are **nine** references in the document to using civil commitment for patients who are discharged from OSH—but no suggestion about where those civilly committed patients should go. The answer is that OHA will continue to foist responsibility for the entire civil commitment system onto acute care hospitals which are not equipped or staffed to provide long-term treatment. Due to the injunction, once aid-and-assist individuals are civilly committed—either on release or after decompensating in the community—they can only return to OSH if they meet expedited admission criteria and because that rarely happens, they will end up being housed indefinitely in acute care hospitals. Thus, contrary to Plaintiffs' goal, the injunction will lead to more reliance on civil commitments, not less, and more civilly committed individuals languishing in acute care hospitals.

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 13
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

Overall, the practical effect of the September 1 injunction will be to move a significant number of mentally unstable individuals from OSH to acute care hospitals. In other words, the injunction will shift the burden providing care for "unfit" patients from OHA over to community hospitals. Not only will that be bad for civilly committed patients who cannot receive appropriate long-term treatment in acute care hospitals, but it will also negatively impact the ability of acute care hospitals to serve patients in the community and in emergency departments who are suffering from mental health crises and waiting to be admitted. Ultimately, it will exacerbate the current crisis in which civilly committed individuals are denied the care that justifies their commitment, it will exacerbate the lack of capacity in acute care hospitals, and will result in more people in the community not receiving care and, often, being sent to jail to start the cycle again.

>          5.       The expedited admission policy has already proved unworkable.

Another problem with the September 1 injunction is that it adopts OSH's expedited admission policy, which has already proved unworkable. For years, OHA has increasingly prioritized admission of aid-and-assist and GEI patients at OSH over civil commitment patients. For example, in November of 2018, a 26-bed unit for civil commitment patients at OSH was turned into a unit for aid-and-assist patients. In July of 2019, another 26-bed unit for civil commitment patients was converted to use for aid-and-assist patients. And in December of 2019, OSH stopped taking civilly committed patients altogether, with very few exceptions, and shifted admission priorities to focus almost entirely on the aid-and-assist and GEI populations.

If history tells us anything, it is that prioritizing aid-and-assist and GEI patients over civilly committed patients for admission to OSH is clearly not working to solve the problem. Despite implementing this unlawful practice years ago, Defendants still have failed to comply with the *Mink* injunction. Given that OHA's unlawful practice has a proven track record of not working, there is no reason to believe it will work in the future. If anything, it will merely result

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 14
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

in OHA maintaining the status quo, and further exacerbating the crisis of civilly committed individuals being stuck in acute care hospitals indefinitely, which is no solution at all.

      6.    <u>Dr. Pinals' report did not limit admission for civilly committed patients.</u>

The September 1 injunction should further be dissolved because Dr. Pinals did not recommend limiting admission of civil commitment patients to OSH unless they qualify for expedited admission. Nowhere in Dr. Pinals' reports is this recommendation made. Accordingly, because the September 1 injunction was intended to implement Dr. Pinals' recommendations, this should not have been included as it was proposed by the parties, not Dr. Pinals.

      7.    <u>If the September 1 injunction is not dissolved, it should be modified to protect the rights of civilly committed individuals.</u>

If the Court decides that the September 1 injunction should not be dissolved, then it should be modified to eliminate section 2(b) and section 3. Section 2(b) incorporates OSH's existing practice prohibiting admission of civilly committed patients except for those meeting the expedited admission criteria. As discussed above, that practice discriminates against civilly committed patients. This Court should not give OSH judicial license to continue with it. Section 3 imposes discharge timelines for OSH patients regardless of their clinical status and whether they are ready for discharge to the community. For reasons also set forth above, this process will be harmful to patients, the hospital environment, and the community.

**B.**    **The August 16 injunction should be dissolved.**

This Court should dissolve the August 16 injunction because it is precluded by the Anti-Injunction Act and multiple abstention doctrines; fails to comply with the requirements of Federal Rule of Civil Procedure 65; constitutes an extraordinary remedy that is not warranted; and overrules the Oregon Court of Appeals' interpretation of state law.

      1.    <u>The Anti-Injunction Act precludes the August 16 injunction.</u>

The Anti-Injunction Act states:

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 15
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.

"The Anti-Injunction Act bars federal courts from enjoining ongoing state court proceedings except in specific and narrow circumstances." *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 878-79 (9th Cir. 2000) (citing *Empire Blue Cross & Blue Shield v. Janet Greeson's a Place for Us, Inc.*, 985 F.2d 459, 461 (9th Cir. 1993)). "Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately the [Supreme Court]." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287, 90 S. Ct. 1739, 26 L. Ed. 2d 234 (1970). "Courts must construe the exceptions to the Anti-Injunction Act narrowly and resolve doubts in favor of letting the state action proceed." *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1378 (9th Cir. 1997).

"Rooted firmly in constitutional principles, the [Anti-Injunction] Act is designed to prevent friction between federal and state courts by barring federal intervention in all but the narrowest of circumstances." *Sandpiper Village Condominium Ass'n., Inc. v. Louisiana-Pacific Corp.*, 428 F.3d 831, 842 (9th Cir. 2005). The prohibition against injunctions of state court proceedings applies to injunctions against the parties and to injunctions against the state court itself. *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 134 F.3d 133, 144 (3rd Cir. 1998); *H.J. Heinz Co. v. Owens*, 189 F.2d 505, 507 (9th Cir. 1951).

The Anti-Injunction Act is consistent with the independence of state courts and any doubts about the appropriateness of enjoining state court proceedings under the Anti-Injunction Act should be resolved in favor of permitting state courts to proceed:

Moreover since the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts . . . .

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 16
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

> Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion.

*Atlantic Coast Line R. Co.*, 398 U.S. at 286, 297.

A federal court may enjoin state court proceedings only where: (1) "expressly authorized" by Congress; (2) "where necessary in aid of [the court's] jurisdiction"; and (3) "to protect or effectuate its judgments." 28 U.S.C. § 2283. In this case, none of the exceptions apply.

### a. Congress did not expressly authorize such an injunction.

The first exception applies when Congress expressly grants a federal court authority to enjoin state court proceedings. Here, there is no federal statute authorizing a district court to enjoin the entire Oregon judiciary from holding OHA in contempt for what it is statutorily obligated to do for individuals committed to the custody of OHA.

### b. An injunction is not necessary in aid of this Court's jurisdiction.

The second exception, the "necessary in aid of jurisdiction" exception, authorizes injunctive relief only to prevent interference from a state court that would "seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R. Co.*, 398 U.S. at 295.

"The mere existence of a parallel action in state court does not rise to the level of interference with federal jurisdiction necessary to permit injunctive relief under the 'necessary in aid of' exception." *Alton Box Bd. Co. v. Esprit de Corp.*, 682 F.2d 1267, 1272-73 (9th Cir. 1982). Likewise, "the mere fact that the actions of a state court might have some effect on the federal proceedings does not justify interference." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1101-02 (9th Cir. 2008). "Mere frustration and even some disruption of a federal case is insufficient to justify such an injunction: rather, for the necessary in aid of jurisdiction exception to apply the state court action must 'threaten[ ] to render the exercise of the federal court's jurisdiction nugatory.'" *Sandpiper Vill. Condo. Ass'n, Inc.*, 428 F.3d at 843-44.

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 17
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

Here, the necessary in aid of jurisdiction exception does not apply because there is nothing about civil commitment cases that impairs OHA's ability to comply with the *Mink* injunction because the relief requested in those cases is an appropriate long-term placement, not necessarily admission to OSH. Nor have the civil commitment cases resulted in OSH and OHA using "extraordinary resources defending against dozens of contempt (and similar) actions filed in circuit courts throughout the state."[4] This year was the first time a community hospital in Oregon intervened in a civil commitment case to advocate for an appropriate placement for a civilly committed individual. In total, community hospitals have done so only **five** times. In only two cases, the community hospital asked for OHA to be held in contempt. And in only **one case** in Marion County was OHA held in contempt. In the sole case where OHA was held in contempt, it was not for failing to admit a patient to OSH. Rather, OHA was held in contempt for failing to comply with an order that required transfer to a secure residential treatment facility, to include OSH if appropriate. While the court mentioned confinement as one its contempt powers when OHA violated that court order, there was not a threat to confine a specific OHA official and the intervening hospital made it clear that it did not support a remedial sanction of confinement. Thus, while that case may have caused frustration for OHA, it did not threaten, much less disrupt, this case and, therefore, does not justify interference under the necessary in aid of jurisdiction exception.

c.      <em>The relitigation exception does not apply.</em>

The third exception, known as the relitigation exception, permits federal courts to issue injunctions when necessary to "protect or effectuate its judgments." 28 U.S.C. § 2283. However, "an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148, 108 S. Ct. 1684, 100 L.

---

[4] To the extent the injunction was entered to address state court contempt actions brought in aid-and-assist cases, those cases also do not impair OHA's ability to comply with the *Mink* injunction because they are brought to ensure OHA *complies* with that injunction.

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 18
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

Ed. 2d 127 (1988). The narrowness of this exception "is critical because federal courts have no power to enjoin state court proceedings 'merely because those proceedings interfere with a protected federal right or invade an area pre-empted by federal law, even when the interference is unmistakably clear.'" *Dakota Med., Inc. v. RehabCare Grp., Inc.*, 2018 U.S. Dist. LEXIS 15972 (E.D. Ca. Jan. 30, 2018) (quoting *Chick Kam Choo*, 486 U.S. at 149)). Here, the relitigation exception provides no basis to enjoin state courts from using their contempt power against OHA.

> d.      *No exception to the Anti-Injunction Act applies in this case.*

In short, the August 16 injunction, which enjoins "any action" that seeks to hold OHA "in contempt for their efforts to comply with the permanent injunction," does not fall within the "specific and narrow circumstances" permitted by the Anti-Injunction Act. *See PPR Realty, Inc.*, 204 F.3d at 878-79. The August 16 injunction falls squarely into the type of relief prohibited by the Anti-Injunction Act. Accordingly, the August 16 injunction should be dissolved.

> 2.      The Younger abstention doctrine precludes the August 16 injunction.

The August 16 injunction also should be dissolved for another reason: the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). Under the *Younger* abstention doctrine, the Court must abstain from exercising its jurisdiction to enjoin state proceedings that: "(1) are ongoing; (2) implicate 'important state interests'; and (3) provide an adequate opportunity to raise federal questions." *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 882 (9th Cir. 2011) (citing *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982)). The *Younger* abstention doctrine applies not only to federal action that would enjoin a state court proceeding, but also to federal action that would "have the practical effect of doing so." *Potrero Hills Landfill, Inc.*, 657 F.3d at 882.

Importantly, the *Younger* abstention doctrine prohibits a federal court from interfering with a state court's contempt powers. The Supreme Court reached this precise holding in *Juidice v. Vail*, 430 U.S. 327, 97 S. Ct. 1211, 51 L. Ed. 2d 376 (1977). In *Juidice*, a state court entered a

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 19
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

default judgment against Harry Vail, who failed to satisfy the judgment. *Id.* at 327. Vail

subsequently failed to attend a deposition regarding satisfaction of the judgment and later failed

to appear at a hearing to "show cause why he should not be punished for contempt." *Id.* at 329.

*Juidice*, a state court judge, entered orders holding Vail in contempt and ordering his arrest. *Id.* at

330. Vail, on behalf of a class of individuals subject to contempt proceedings in state court, sued

the state-court judges in federal district court, seeking to enjoin the use of civil contempt

procedures authorized by state law. *Id.* The federal district court "permanently enjoin[ed] the

operation of [those procedures]." *Id.* at 331. However, the Supreme Court reversed, holding that

the federal court should have abstained from enjoining the state's contempt process:

> These principles apply to a case in which the State's contempt process is
> involved. **A State's interest in the contempt process, through which it
> vindicates the regular operation of its judicial system, so long as that system
> itself affords the opportunity to pursue federal claims within it, is surely an
> important interest.** Perhaps it is not quite as important as is the State's interest in
> the enforcement of its criminal laws, *Younger, supra*, or even its interest in the
> maintenance of a quasi-criminal proceeding such as was involved in *Huffman,*
>
> *supra*. But we think it is of sufficiently great import to require application of the
> principles of those cases. The contempt power lies at the core of the
> administration of a State's judicial system. Whether disobedience of a court-
> sanctioned subpoena, and the resulting process leading to a finding of contempt of
> court, is labeled civil, quasi-criminal, or criminal in nature, **we think the salient
> fact is that federal-court interference with the State's contempt process is 'an
> offense to the State's interest . . . likely to be every bit as great as it would be
> were this a criminal proceeding**.' Moreover, such interference with the contempt
> process not only 'unduly interfere(s) with the legitimate activities of the Stat(e),'
> but also 'can readily be interpreted 'as reflecting negatively upon the state courts'
> ability to enforce constitutional principles.'

*Id.* (citations omitted & emphasis added) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604

(1975) and *Younger v. Harris*, 401 U.S. 37, 44 (1971)).

The Supreme Court's comments in *Juidice* on why the contempt power was sufficiently

important to justify abstention are compelling:

> "Contempt in these cases, serves, of course, to vindicate and preserve the private
> interests of competing litigants, . . . but its purpose is by no means spent upon
> purely private concerns. It stands in aid of the authority of the judicial system, so
> that its orders and judgments are not rendered nugatory."

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 20
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

*Id.* at 336, n. 12 (citations omitted).

Since then, the Supreme Court has repeatedly held that "[s]tates have important interests in administering certain aspects of their judicial systems." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12-13, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987). For example, in *Pennzoil*, the Supreme Court found abstention appropriate in an action brought by Pennzoil to enjoin Texaco from executing a Texas court judgment in Texaco's favor pending appeal of that judgment to the state appellate court. *Id.* at 17. In reaching its decision, the Court found the reasoning of *Juidice* controlling:

> [*Juidice*] rests on the importance to the States of enforcing the orders and judgments of their courts. There is little difference between the State's interest in forcing persons to transfer property in response to a court's judgment and in forcing persons to respond to the court's process on pain of contempt. Both *Juidice* and this case involve challenges to the processes by which the State compels compliance with the judgments of its courts. Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge ***the very process by which those judgments were obtained.***

*Id.* at 13-14 (footnotes omitted) (emphasis added).

Both *Juidice* and *Pennzoil* are instructive because they involved requests to directly or indirectly thwart state court compliance processes. And in both cases, the Supreme Court rejected those requests, holding that federal courts should abstain where an injunction would interfere with a state court's ability to perform its judicial functions—enforcing its orders and judgments. The same is true here.

The August 16 injunction challenges the ability of Oregon state courts to enforce orders and judgments by preventing state courts from holding OHA in contempt. The ability of a court to issue sanctions "lies at the core of the administration of a State's judicial system" and is a unique state process "through which [the state] vindicates the regular operation of its judicial system." *Juidice*, 430 U.S. at 335. Like the contempt power at issue in *Juidice*, and the attachment procedure at issue in *Pennzoil*, this case "involve[s] challenges to the processes by which the State compels compliance with the judgments of its courts." As discussed below, the August 16 injunction should be dissolved because all three *Younger* abstention factors are met.

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 21
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

Regarding the first *Younger* factor, state court civil commitment cases continue to be ongoing and OHA continues to leave civilly committed individuals indefinitely in acute care hospitals—often for weeks, months, or in some cases their entire 180-day commitment period (and sometimes recommitment). For example, the Marion County civil commitment case remains ongoing to this day. In the meantime, that patient has now spent almost nine months confined in a restrictive setting without access to appropriate long-term treatment. Although the Court of Appeals has temporarily stayed enforcement of the July 12 order in that case, the issue has not been resolved and the parties have not exhausted their appellate remedies.

Moreover, that patient's story represents just one of the harrowing experiences civilly committed patients have had to endure after being committed to OHA and left to languish in community hospitals indefinitely, without access to appropriate long-term treatment. To put the problem in perspective, every year, more than 500 individuals with severe mental illnesses are civilly committed to OHA for treatment. As such, Intervenors have every expectation that they will be needed to return to court for at least some civilly committed individuals to ensure OHA is complying with civil commitment orders by providing civilly committed individuals the treatment they need and are legally entitled to receive. Further, in light of the new guidance issued by OHA, Intervenors anticipate that the number of civil commitment cases will significantly increase as OHA has offered civil commitment (and by implication, acute care hospitals) as the solution for housing unstable individuals who are discharged from OSH to the street.[5] Thus, the first factor is satisfied.

---

[5] *See* OHA publication entitled, "Mosman Ruling Frequently Asked Questions," https://www.oregon.gov/oha/OSH/Documents/OSH-mink-mosman-FAQ.pdf. Intervenors respectfully request that the Court, under Federal Rule of Evidence 201, take judicial notice of this publication. Fed. R. Evid. 201(d), (b)(2) ("[A]t any stage of the proceeding," the Court may take judicial notice of documents "not subject to reasonable dispute . . . from sources whose accuracy cannot reasonably be questioned."); *see United States v. 14.02 Acres of Land*, 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for . . . 'reports of administrative bodies . . . .'" (internal citation omitted)).

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 22
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

Regarding the second *Younger* factor, important state interests are implicated. States have significant interests in enforcing court orders and judgments, as well as in preserving their judicial schemes. The Supreme Court has explained that "[a] State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest." *Juidice*, 430 U.S. at 335. Here, too, the state's interest in maintaining the operation of its judicial system, including the contempt process, supports abstention. State courts have a significant interest in ensuring their orders and the law are followed, and that civilly committed individuals committed to the custody of OHA receive appropriate long-term placements.

Regarding the third *Younger* factor, state courts provide an adequate forum to raise federal questions should OHA choose to do so. Furthermore, state contempt orders are also appealable, providing further opportunity for state court review of OHA's claims. The opportunities for raising federal claims afforded by state court contempt proceedings are thus more than sufficient to satisfy the third *Younger* factor.

In summary, Oregon has a significant interest in protecting the authority and judicial functions of its state courts. Without contempt power, state courts have no mechanism to ensure parties comply with court orders and follow the law. Because the August 16 injunction takes away the ability of state courts to hold OHA in contempt, it interfere with a state court's ability to perform its judicial functions, which is precisely what the *Younger* abstention doctrine precludes. Accordingly, the August 16 injunction should be dissolved on that basis as well.

3.    <u>The O'Shea abstention doctrine precludes the August 16 injunction.</u>

The August 16 injunction is also precluded based on the *O'Shea* abstention doctrine. In *O'Shea v. Littleton*, the plaintiffs sought to enjoin state court judges from carrying out allegedly unconstitutional policies and practices relating to bond setting, sentencing, and jury fees in criminal cases. 414 U.S. 488, 491-92, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974). The Supreme Court concluded that abstention was appropriate because intervention would be "intrusive and

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 23
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

unworkable." *Id.* at 500. The Supreme Court reasoned that the relief sought by the plaintiffs—
"an injunction aimed at controlling or preventing the occurrence of specific events that might
take place in the course of future state criminal trials"—would amount to "an ongoing federal
audit of state [court] proceedings which would indirectly accomplish the kind of interference that
*Younger v. Harris* . . . and related cases sought to prevent." *Id.*

The Ninth Circuit has held that *O'Shea* stands for "the more general proposition that
[courts] should be very reluctant to grant relief that would entail heavy federal interference in
such sensitive state activities as administration of the judicial system." *Courthouse News Serv. v.
Planet*, 750 F.3d 776, 789-90 (9th Cir. 2014) (internal quotations and citations omitted). "*O'Shea*
compels abstention where the plaintiff seeks an 'ongoing federal audit' of the state judiciary
. . . ." *Id.* at 790 (quoting *E.T. v. Cantil-Sakauye*, 682 F.3d 1121, 1124 (9th Cir. 2011) (per
curiam)). Further, when the state agency involved in the dispute is a state court, "the equitable
restraint considerations appear to be nearly absolute." *E.T.*, 682 F.3d at 1125 (citing *Parker v.
Turner*, 626 F.2d 1, 8 (6th Cir. 1980)).

In this case, the August 16 injunction is precluded by the *O'Shea* abstention doctrine.
Specifically, the injunction is directly aimed at the functioning of state courts because it enjoins
any action that seeks to hold OHA in contempt for its efforts to comply with the *Mink* injunction.
In doing so, the injunction seeks to control or prevent the occurrence of specific events that
might take place in the course of future state court cases involving individuals committed to the
custody of OHA. Further, in order to enforce the injunction, this Court would be required to
monitor whether state courts are engaging in contempt or "contempt-like" proceedings against
OHA for its failure to admit patients to OSH, or whether proceedings were brought against OHA
for failing to provide appropriate long-term placements to civilly committed patients. Any
remedy fashioned by the state court would then be subject to challenges in this Court. If OHA
was dissatisfied with the outcome in state court, OHA could then go to this Court to raise
compliance issues by arguing that a state court violated the terms of the injunction. Intervenors

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 24
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

anticipate that OHA would in turn mischaracterize the relief requested and granted in state court (as it did in this case) as seeking to hold OHA in contempt for not admitting individuals to OSH. Such challenges would inevitably lead to heavy federal intervention and precisely the kind of "piecemeal interruptions of . . . state proceedings" condemned in *O'Shea*.

For all of those reasons, the August 16 injunction amounts to an ongoing federal audit of proceedings against OHA, which is exactly what *O'Shea* forbids. Thus, it should be dissolved.

### 4. The August 16 injunction does not comply with Rule 65.

Even if this Court concludes that the Anti-Injunction Act and *Younger* and *O'Shea* abstention doctrines do not apply (which Intervenors deny), the August 16 injunction still should be dissolved because it does not comply with Federal Rule of Civil Procedure 65.

#### a. The intervenors did not receive notice.

Under Federal Rule of Civil Procedure 65, a court may issue a preliminary injunction "only on notice to the adverse party." Fed. R. Civ. P. 65(a). As the Supreme Court has explained: "[f]or more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972) (internal citations omitted). To be effective, notice must be given "at a meaningful time and in a meaningful manner." *Id.* (discussing the notice requirement in the context of procedural due process). The notice requirement of Rule 65(a) has constitutional as well as procedural dimension because it "implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 434 n.7, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974). Not only is notice unequivocally required by Rule 65(a), but "[n]otice is also one of the bedrock principles of due process and would be required even without the direct command of Rule 65(a)." *In re Complaint of Judicial Misconduct*, 425 F.3d 1179, 1194 (9th Cir. 2005).

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 25
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

In this case, the August 16 injunction was entered without notice to Intervenors, an adverse party. Intervenors did not receive notice of the application for an injunction, nor did they receive notice of the hearing held the following day. This is quite alarming given that at the same time, one of the Intervenors (Unity) was litigating against OHA in a state court civil commitment case. Despite that, **no one** from OHA provided notice to Unity or the other Intervenors that it was seeking an injunction from a federal court judge in a different case to enjoin a state court judge, and the entire Oregon judiciary from having authority to hold OHA accountable for what it is statutorily obligated to do under Oregon law—provide appropriate long-term placements to civilly committed individuals. Intervenors pause to ask how in the world it could not have crossed OHA's mind that Intervenors, and particularly Unity—a party adverse to it in ongoing litigation—did not need to be notified?[6]

The complete lack of notice is particularly egregious given that the August 16 injunction was based upon information about Intervenors submitted by OHA in a filing under seal. ECF 253. Thus, not only did OHA fail to notify Intervenors of the requested injunction, but OHA has prevented them from ever having access to the very filing that led to the injunction. Even now, Intervenors have no access to that filing and, therefore, no opportunity to review and respond. That is the opposite of notice.

While it remains to be seen why OHA felt that it was appropriate to keep Intervenors in the dark about a critical issue concerning community hospitals, one thing is clear: Rule 65(a) requires notice, which Intervenors did not receive. In the interests of due process, Rule 65(a) ensures that adverse parties have a sufficient opportunity to prepare and respond to an application for preliminary injunction, which never happened here. Without notice, Intervenors have not received a fair opportunity to oppose the injunction. Because a court lacks authority to grant an injunction against an adverse party who has not received notice under Rule 65(a), the August 16 injunction should be dissolved.

---

[6] Indeed, OHA made sure to notify the state court and Unity *after* the injunction was entered.

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 26
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

The requirements for the contents of a proper injunction are set forth in Rule 65(d) of the Federal Rules of Civil Procedure: "Every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(A-C).

As the Supreme Court has explained, the specificity requirements of Rule 65(d) are not "mere technical requirements," and are "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S. Ct. 713, 38 L. Ed. 2d 661 (1974). "One basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits." *Granny Goose Foods, Inc.*, 415 U.S. at 444. Here, the August 16 injunction does not comply with the specificity requirements or Rule 65(d).

As an initial matter, it remains to be seen why the injunction was issued, as it is based on information contained in a sealed filing, which Intervenors cannot review. Based on the Court's August 16 Opinion and Order, the impetus for enjoining the entire Oregon judiciary from holding OHA in contempt was based on the parties' platform that civil commitment contempt proceedings are impairing Defendants' ability to remedy its violations of the *Mink* injunction. ECF 256 at 9. That is a false premise. Community hospitals have intervened in civil commitment cases only five times to advocate for appropriate placements, and not once have they argued that admission to OSH is mandatory or the only option for placement. Instead, community hospitals have simply asked OHA to comply with its statutory duties by placing civilly committed individuals in the facility best able to treat them or a suitable facility as required by ORS 426.060(2). Moreover, community hospitals have only asked to hold OHA in contempt on two occasions in civil commitment cases—once in Marion County which did end in a finding of

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 27
158426494.1

contempt, and once in Clackamas County which did not. With respect to the Marion County case, Unity made it clear that it does not support confinement of any OHA employees. While Intervenors do not know what Defendants put in their sealed filing, OHA's concern about incarceration was and is purely speculative. It did not happen, and still has not happened.

Additionally, the August 16 injunction is vague because it does not specify its terms specifically, nor does it describe in reasonable detail the act or acts restrained. With respect to the civil commitment population, it is unclear whether trial courts have authority to enforce their orders by ensuring civilly committed individuals receive treatment calculated to lead to the end of their involuntary detention. It is unclear whether OHA still may be held in contempt for failing to make placement decisions for civilly committed individuals who are committed to the custody of OHA for 180 days of treatment. And it is unclear when, if ever, state courts have authority to hold OHA in contempt for failing to comply with court orders, and if not, what authority and mechanism state courts have to ensure OHA actually follows the law and does not continue to violate the constitutional rights of civilly committed individuals.

### c. The August 16 injunction impermissibly binds non-parties.

A court does not have jurisdiction to issue an injunction directed at a non-party. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112, 89 S. Ct. 1562, 23 L. Ed. 2d 129 (1969) (concluding it was error to enter an injunction against a non-party). "A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." *Zepeda v. United States Immigration Service*, 753 F.2d 719, 727 (9th Cir. 1985). As such, "[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015); *see also De Beers Consol. Mines v. United States*, 325 U.S. 212, 220, 65 S. Ct. 1130, 89 L. Ed. 1566 (1945) (preliminary injunctive relief is inappropriate for matters "lying wholly outside the issues in the suit.").

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 28
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

This principle is codified in Federal Rule of Civil Procedure 65(d), which establishes that every injunction "binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Fed. R. Civ. P. 65(d).

In this case, the August 16 injunction broadly enjoins anyone who seeks to hold OHA in contempt for its efforts to comply with the *Mink* injunction. This includes, but is not limited to, Intervenors and all state court judges, neither of whom are parties to this case. The narrow circumstances identified in Rule 65(d)(2) for binding non-parties do not apply here. Intervenors and state court judges are not parties to this action. Nor are they officers, agents, servants, employees, or attorneys of either party in this case. And they are not acting in concert or participation with either parties' officers, agents, servants, employees, or attorneys.

In summary, the August 16 injunction fails to comply with the requirements of Federal Rule of Civil Procedure 65 because it is impermissibly vague, overly broad, and seeks to bind non-parties. Accordingly, the injunction should be dissolved on that basis.

5.     <u>The August 16 injunction is an extraordinary, unwarranted remedy.</u>

The August 16 injunction also should not have been entered because it constitutes an extraordinary remedy that is not warranted. Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Id.* at 20.

a.     *There was no likelihood of success on the merits.*

As explained in this motion, the August 16 injunction should not have been entered based on the Anti-Injunction Act, the *Younger* and *O'Shea* abstention doctrines, and because it violates

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 29
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

the procedural requirements of Rule 65 and attempts to overrule an Oregon Court of Appeals decision (as described below). Accordingly, the August 16 injunction should not have been entered because there was no likelihood of success on the merits.

b. *Irreparable harm was not established.*

A plaintiff seeking an injunction must establish "irreparable harm is likely, not just possible." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1229 (9th Cir. 2011). "Speculative injury does not constitute irreparable injury" sufficient to warrant an injunction. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *Winter*, 555 U.S. 7 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

Here, the parties cannot show irreparable harm. To date, there have only been five civil commitment cases where community hospitals intervened to advocate for appropriate long-term placements, and in none of those cases has the hospital argued for the patient to only be admitted to OSH. Every one of those cases has been about OHA's obligation to provide an appropriate long-term placement for the patient. Further, contempt has only been raised in two cases, and OHA has only been held in contempt once. Thus, the notion that civil commitment proceedings are to be blame for why "OHA and OSH have spent extraordinary resources defending against dozens of contempt (and similar) actions filed in circuit courts throughout the state" is not true. With respect to the sole case where OHA was held in contempt, there is no irreparable harm caused by that case because OHA can appeal the contempt order (which it is already doing), and the Court of Appeals stayed the trial court's order for immediate placement pending the appeal.

As for the parties' projections of what may happen in future civil commitment cases, that is insufficient to constitute irreparable harm to warrant an injunction because it is based on a hypothetical possibility. Such speculative injury is not sufficient to justify enjoining the entire Oregon judiciary from holding OHA in contempt for what it is statutorily obligated to do.

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 30
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

          *c.*      *The public consequence of the injunction heavily weighs against it.*

The final preliminary injunction factor requires a plaintiff to demonstrate that the balance of equities tips in its favor and that an injunction would advance the public interest. *Winter*, 555 U.S. at 20. The balance of equities factor focuses on "the effect of each party of the granting or withholding of the requested relief." *Id.* at 24. By contrast, "[t]he public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project. v. Connaughton*, 752 F.3d 755, 756 (9th Cir. 2014) (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002)). When, as in this case, the government is a party, the analysis of these two factors merges. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009)). Thus, the Court must consider what "public consequences" would result from issuing an injunction. *See Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982)).

In this case, the August 16 injunction enjoining state courts from holding OHA in contempt is not in the public's interest. The contempt power is essential to the preservation of a court's authority and lies at the core of the administration of a state's judicial system. Without contempt power, a court has no means to ensure compliance with its orders and the law.

The public interest will be harmed by the August 16 injunction remaining in place. If it remains in effect, OHA will continue to leave civilly committed individuals in acute care hospitals indefinitely where they are denied access to appropriate long-term treatment. OHA will continue to use acute care hospital beds to house civilly committed individuals who have no medical reason to be there, and prevent other acute psychiatric patients in the community from accessing much needed care, including patients who are backed up in emergency departments.

Simply put, immunizing OHA from having to comply altogether with its statutory obligations to the civil commitment population is **not** the answer and **not** in the public's interest. The public has an interest in ensuring that OHA follows the law by providing civilly committed

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 31
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

individuals appropriate long-term placements, as well as an interest in ensuring access to acute care hospital beds for other patients in the community. Accordingly, the Court should dissolve the August 16 injunction to assure state courts have a means to enforce their commitment orders and hold OHA accountable for its statutory obligations to civilly committed individuals.

6.     <u>The August 16 injunction overrules binding state court precedent.</u>

The August 16 injunction also should be dissolved because it seeks to overrule clear precedent from the Oregon Court of Appeals in *State v. Zamora-Skaar*, 308 Or. App. 337 (2020). In *Zamora-Skarr*, the trial court deemed the defendant unfit to proceed. *Id.* at 338. Thus, the court entered a .370 order committing the defendant to OSH and requiring his transport to the hospital within seven days. *Id.* OSH was aware of the order and did not comply with it. *Id.* When the defendant remained in jail beyond the seven-day compliance period, the defendant initiated remedial contempt proceedings against OSH and OHA. *Id.* OSH relied on an inability to comply affirmative defense. *Id.* The trial court found OSH in contempt and ordered it to pay remedial sanctions of $100 for each day the defendant remained in jail in violation of the .370 order. *Id.*

On appeal, the Court of Appeals affirmed and held that OSH was in contempt for failing to comply with an order under ORS 161.370 because: (1) OSH was aware of the order; (2) OSH had beds available but chose not to use them due to resource issues; (3) OSH failed to inform the court or parties of its non-compliance; and (4) OSH had known about the resource problem for years, which meant it was not entitled to an inability to comply affirmative defense. *Id.* at 349.

In issuing the August 16 injunction, this Court should have followed *Zamora-Skarr* because a federal court may not ignore a relevant state court decision. *Hicks v. Feiock*, 485 U.S. 624, 629 (1988) ("We are not at liberty to depart from the state appellate court's resolution of these issues of state law" and "we are not free in this situation to overturn the state court's conclusions of state law"). The Court of Appeals' decision in *Zamora-Skarr* recognizes that holding OHA in contempt is appropriate and warranted when it fails to comply with an order. Yet the injunction prevents Oregon state courts from doing just that, and in doing so, effectively

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 32
158426494.1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222

overrules that decision. Because a federal court may not ignore binding state court precedent, the injunction should be dissolved on that basis as well.

## CONCLUSION

For the reasons discussed, Intervenors respectfully request that this Court dissolve the August 16, 2022, injunction, and dissolve or modify the September 1, 2022, injunction.

DATED this 28th day of September, 2022.

LEWIS BRISBOIS BISGAARD & SMITH LLP

By:   *s/ Eric J. Neiman*
Eric J. Neiman, OSB #823513
Emma P. Pelkey, OSB #144029
Telephone: 971.712.2800
Facsimile: 971.712.2801

*Attorneys for Intervenors*

PERKINS COIE, LLP

By:   *s/Misha Isaak*
Misha Isaak, OSB #086430
Alex Van Rysselberghe, OSB #174836
Telephone: 503.727.2000
Facsimile:  503.727.2222

*Attorneys for Intervenors*

MOTION TO DISSOLVE THE
AUGUST 16, 2022 INJUNCTION,
AND DISSOLVE OR MODIFY THE
SEPTEMBER 1, 2022 INJUNCTION
Page - 33
158426494.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon 97204-2025
Telephone: 971.712.2800 • Fax 971.712.2801

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000 • Fax: +1.503.727.2222