




# Oregon State Hospital Tossed Out a Schizophrenic Man With a History of Violence. In a Bellwether Case, a Court Decided His Fate.

**The state says he no longer needs to be hospitalized. The county disagrees.**

 Expand



**No Man's Land** (McKenzie Young-Roy)

**By Lucas Manfield**

**November 02, 2022 at 5:30 am PDT**

Nineteen months ago, a man approached a parked car in downtown Beaverton. He was holding a homemade spear: a metal rod with a knife crudely bolted on the end.

A woman sat inside the Subaru Forester. Terrified, she called her husband as the attacker banged the rod against the glass, shattering the driver-side mirror.

When police arrived, they recognized the alleged assailant. Piseat Thouen had been previously arrested 55 times.

Exhibit 1
1 of 4

Trespassing. Threats. Theft. This time, he was charged with a felony: unlawful use of a weapon.





For most of the intervening year and half until now, Thouen, 50, was locked in Oregon State Hospital, forcibly medicated with powerful anti-psychotic drugs in the hope that he could be "restored to competency" and face a jury.

But on Oct. 25, Thouen was thrown out of the state hospital. Doctors there say he no longer needs to be hospitalized. But the county disagrees, and now, thanks to an August judicial order to cut down the hospital's waitlist, the county can no longer send him back.

Thouen is refusing mental health care. He was forcibly medicated at OSH but has told the county he does not believe he is sick and does not want further treatment. Without hospitalization, he will not get it.

On Oct. 27, two days after the hospital kicked him out, Thouen was back in a Washington County courtroom to resolve the criminal charges stemming from the attack on the Forester. According to court observers, it was the first hearing of its kind —the first time a judge had to decide what to do with a dangerously mentally ill Oregonian since a federal court eliminated the state hospital as a de facto holding cell.

That judge, Kathleen Proctor, wasn't sure what to do. "It presents some mind-bending thought processes," she told the court.

Her options weren't pleasant.

Thouen's public defender argued the case should be dropped and charges dismissed. If there was no way to treat him, then there was no way to try him. Thouen should be returned to the streets.

The prosecutor, Jeff MacLean, said Thouen should still be restored to competency—but in jail.

His proposal was a novel one. In fact, an official testified, the county has never done it. At this admission, a loud sigh came

Exhibit 1
2 of 4

from the bench. Proctor rubbed her temples.

She asked: Could the county take over his treatment? She was told this was impossible. Thouen didn't believe he was sick and he was declining care. The county couldn't forcibly medicate him. And there were no beds available at a secure facility anyway.

"This is a really difficult situation," Proctor said. "Everyone understands this is not a situation we want to be in."




**The situation the court faces is this:** The state is embroiled in a civil rights lawsuit for forcing mentally ill defendants to wait months in jail for a bed to open up at the state hospital. So U.S. District Judge Michael W. Mosman ordered Oregon State Hospital to start releasing patients early.

And counties, facing a dire lack of mental health care infrastructure, have nowhere to put them.

It's a national problem. "It's not a secret that we have a dire need for psychiatric in-patient beds in this country," Saul Levin, head of the American Psychiatric Association, said earlier this year.

Washington County has no secure residential treatment facilities, which can be certified to forcibly medicate patients. And Thouen was declining offers of treatment, Chance Wooley, a county mental health supervisor, testified that day in court.

This leaves the county with no good options for patients like Thouen, deemed too dangerous to be out on the streets without supportive care.

As soon as Judge Mosman's order was announced, Washington County readied to fight it—knowing a case like Thouen's was imminent.

Kevin Barton, the county district attorney, observed the second day of the proceedings from the back of the courtroom, occasionally conferring with the prosecutor. "There are worse people coming," he told *WW* in the hallway.

In legal filings, prosecutors have made clear exactly who those people are. Two men accused of murder in Washington County, Salvador Martinez-Romero and Toby Epling, are both currently at Oregon State Hospital. The hospital says it has no immediate plans to release them back to the county. But, under Mosman's order, it will soon have no choice.

So county prosecutors are testing the boundaries of state law, trying to find a way to keep the accused men off the streets. Barton called Thouen "a test case." Their proposal was simple: restore him to competency in the Washington County Jail.

This isn't a new idea. Jail-based competency restoration is being done across the country, most notably in many counties in California. But it's new to Oregon, and both Thouen's public defender, John MacMorris-Adix, and county counsel are skeptical it's legal.

**At Oct. 27's hearing, Washington County mental health officials** appeared to know very little about Thouen's circumstances. No family or friends were in the courtroom. His last known address listed in court documents did not exist. When asked if he wanted to talk with a reporter, he declined.

That morning, he had said he would stay with his sister if he was released.

When *WW* tracked her down that weekend, Amara Sim said she hadn't heard from her brother in years.

"We don't have any contact with him. He is a lost soul to us," she said.

Piseat Thouen was born in Cambodia in 1972. His family immigrated to the United States a decade later and settled in Beaverton. He went to high school, married twice, and had two children.

He was funny and loved to make people laugh, Amara said. But as Thouen grew older, his drug use fractured his

Exhibit 1
3 of 4

relationships. His mental state deteriorated. He began talking to himself and hoarding knives.

His first recorded brush with the law in Oregon came in 2000. He was arrested for breaking into a car on the Portland State University campus. It was the first of many arrests.

Thouen's family tried to get him in a hospital but were told he couldn't be forced into treatment if he didn't want it.

Homeless, he would call his other sister in Washington and ask for money. For a while, she obliged, but eventually she changed her number.

"We can't have him around us," Amara said. "We want to help him, but he won't take the meds."

Thouen was diagnosed with schizophrenia at OSH and was prescribed risperidone. He was taking it orally—only because if he refused, doctors would inject him with the drug against his will.

Thouen's reluctance to take medication is no surprise to Kevin Fitts, head of the Oregon Mental Health Consumers Association. The drugs can have serious side effects and the withdrawals are devastating. "They have significant ability to still the mind, and that's very valuable for people who are hallucinated or suicidal," Fitts says. "But we also know that they're miserable."

Fitts blames Gov. Kate Brown and the Oregon Health Authority for failing to invest in community mental health beds, including secure facilities that can forcibly medicate dangerous patients.

But medication alone, Fitts says, isn't the solution. The root of the problem is a lack of case managers and peer mentors who can help people with severe mental illness escape the cycle of hospitalization and psychosis.

"What ultimately works in the long term for people with severe persistent mental illness is engagement," Fitts says.

**Back in the courtroom Oct. 28,** Judge Proctor found a place to send Thouen.

"I am not happy with any of these options, but I have to do something," she said. She dropped Thouen's charges and filed paperwork to civilly commit him. He would be transported directly from court to Providence St. Vincent Medical Center.

KC Lewis, a lawyer for Disability Rights Oregon, observed the proceedings. He said he was "satisfied" with the judge's compromise, which ensured Thouen's due process rights were protected. But he noted that the compromise was still flawed: "Right now, we have people who are being civilly committed but with nowhere to send them."

As court staff and attorneys huddled in the corner, discussing paperwork, Thouen sat alone. For the first time, he spoke.

"When am I leaving?" he asked. No one responded.

Two days later, Thouen was given a preliminary examination at St. Vincent to determine if he was "dangerous to self or others," a criterion for holding him against his will.

The hospital released him on Sunday, Barton told *WW*. He did not know where Thouen was.

Washington County could not comment on Thouen's whereabouts. Presumably, he is back on the streets.



[Lucas Manfield](#)

**Lucas Manfield covers cops, courts and crime.**



Exhibit 1
4 of 4