ELLEN F. ROSENBLUM
Attorney General
CARLA A. SCOTT #054725
Senior Assistant Attorney General
SHEILA H. POTTER #993485
Deputy Chief Trial Counsel
CRAIG M. JOHNSON #080902
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Carla.A.Scott@doj.state.or.us
         Sheila.Potter@doj.state.or.us
         Craig.M.Johnson@doj.state.or.us

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON, <br><br> Plaintiffs, <br><br> v. <br><br> PATRICK ALLEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital, <br><br> Defendants, <br><br> and <br><br> LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH LEGACY HEALTH SYSTEM, PEACEHEALTH, and PROVIDENCE HEALTH & SERVICES, <br><br> Intervenors. | Case No.  3:02-cv-00339-MO (Lead Case) <br> Case No.  3:21-cv-01637-MO (Member Case) <br> Case No.  6:22-CV-01460-MO **(Member Case)** <br><br> **DEFENDANT'S MOTION TO DISMISS** |

JAROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON,

      Plaintiffs,

      v.

DOLORES MATTEUCCI, Superintendent of the Oregon State Hospital, in her individual and official capacity, PATRICK ALLEN, Director of the Oregon Health Authority, in his individual and official capacity,

      Defendants,

  and

LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH LEGACY HEALTH SYSTEM, PEACEHEALTH, and PROVIDENCE HEALTH & SERVICES,

      Intervenors.

Case No.  3:21-cv-01637-MO (Member Case)

---

LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; and PROVIDENCE HEALTH & SERVICES OREGON,

      Plaintiffs,

      v.

PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority,

      Defendant.

Case No.  6:22-CV-01460-MC (Member Case)

# TABLE OF CONTENTS

CERTIFICATE OF CONFERRAL ............................................................................... 1

MOTION.................................................................................................................... 1

INTRODUCTION ...................................................................................................... 1

STANDARDS FOR DEFENDANT'S RULE 12 MOTIONS ........................................ 2

    I.      FRCP 12(b)(1) Standard ............................................................... 2

    II.     FRCP 12(b)(6) Standard ............................................................... 4

SUMMARY OF OREGON LAWS GOVERNING CIVIL COMMITMENT PROCESS ........... 4

OVERVIEW OF THE COMPLAINT ......................................................................... 7

    I.      Plaintiffs ...................................................................................... 7

    II.     Plaintiffs' claims ......................................................................... 7

          A.     Federal due process claim – civilly committed persons (First Claim) ........................................................................... 7

          B.     Federal due process claim – private hospitals (Second Claim) ................. 8

          C.     Federal takings claim – private hospitals (Third Claim) ........................... 8

          D.     State takings claim – private hospitals (Fourth Claim).............................. 9

          E.     ORS 426.060 – civilly committed persons (Fifth Claim).......................... 9

          F.     ORS 426.150(1) – civilly committed persons (Sixth Claim)...................... 9

          G.     ORS 659A.142(5)(a), (6)(a) – civilly committed persons (Seventh Claim) ......................................................................... 9

    III.    Relief sought ............................................................................... 10

ARGUMENT ............................................................................................................ 10

    I.      Plaintiffs lack Article III standing............................................... 10

          A.     Plaintiffs have no standing for the claims they bring on their own behalf................................................................................... 11

          B.     Plaintiffs have no standing to bring claims for civilly committed persons. ...................................................................... 12

               1.     No "injury in fact." .......................................................... 13

               2.     No close relationship........................................................ 14

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

3.      No hindrance to civilly committed persons' ability to protect their own interests. ........................................................... 16

C.      None of Plaintiffs' claims are ripe for the Court's review. ....................... 18

II.     The Amended Complaint fails to state a claim for violation of due process. ........ 19

A.      The Amended Complaint fails to state a due process claim on behalf of civilly committed persons. ......................................................... 19

1.      Plaintiffs fail to state a substantive due process for their patients. ............................................................................................... 19

2.      Plaintiffs fail to state a procedural due process claim for their patients. .................................................................................... 21

B.      The Amended Complaint fails to state a due process claim on behalf of the Plaintiff private hospitals. .................................................... 22

1.      Plaintiffs fail to state a substantive due process claim on their own behalf. ............................................................................. 22

a.      The substantive due process claim fails because it is subsumed by the federal takings claim. ........................... 22

b.      Plaintiffs fail to state a substantive due process claim. ................................................................................. 23

2.      Plaintiffs fail to state a procedural due process claim. ................. 24

III.    The complaint fails to state any takings claim. .................................................... 25

A.      Plaintiffs' voluntary participation precludes the takings claim. .............. 25

B.      The Amended Complaint does not state any takings claim. ...................... 25

IV.     The claims alleging violation of Oregon statutes fail to state any claim for relief. ........................................................................................................... 27

V.      The Eleventh Amendment bars nominal damages. ............................................. 29

CONCLUSION ................................................................................................................. 30

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

# TABLE OF AUTHORITIES

**Cases**

*AlohaCare v. Hawaii Department of Human Services.*  567 F. Supp. 2d 1238, 1260 (D. Haw. 2008) .................................................................................................. 15, 16

*Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001) .................................................. 3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................. 4, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .................................................. 4

*Boise Cascade Corp. v. Board of Forestry*, 325 Or. 185, 198 (1997) ......................... 26

*Carey v. Piphus*, 435 U.S. 247, 259-60 (1978) ............................................................ 21

*Chapman v. Pier 1 Imports*, 631 F.3d 939, 955 n.9 (9th Cir. 2011) ............................. 4

*Coal. of Clergy, Law.s, & Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002) ................. 13

*Coast Range Conifers, LLC v. State ex rel. Oregon State Bd. of Forestry*, 339 Or. 136, 147 (2005) .......................................................................................................... 25, 26

*Conner v. Branstad*, 839 F. Supp. 1346 (S.D. Iowa 1993) ..................................... 18, 20

*Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 855 (9th Cir. 2007) ....................... 23

*Doe v. Shibinette*, 16 F.4th 894 (1st Cir. 2021) ........................................................... 18

*Endsley v. Mayberg*, No. CIV S–09–2311 WBS GGH P, 2010 WL 4829549 (E.D. Cal. Nov. 22, 2010) .................................................................................................... 17

*Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ................ 11

*Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1102 (9th Cir. 2006) ............. 2

*Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018) .............................................. 21, 24

*Gorman v. Kroger*, No. 6:12-cv-1124-TC, 2012 WL 12375784, at *1 (D. Or. Oct. 1, 2012) ......................................................................................................................... 18

*Harris v. Evans*, 20 F.3d 1118, 1124–25 (11th Cir. 1994) ........................................... 14

*Horizon Christian Sch. v. Brown*, No. 21-35947, 2022 WL 17038695, at *2 (9th Cir. Nov. 17, 2022) ........................................................................................................... 29

*HPG Corp. v. Aurora Loan Serv., LLC*, 436 B.R. 569, 579 (E.D. Cal. 2010) ............... 14

*Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) .............. 2

*Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494 (1987) .............. 27

Page iii

*Kriz v. Roy*, No. 8:20CV110, 2020 WL 6135442, at *1 (N.D. Neb. Oct. 19, 2020) ............. 17, 20

*LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir. 1985) ........................................................ 3

*Leite v. Crane Co.,* 749 F.3d 1117, 1121-22 (9th Cir. 2014) ....................................................... 12

*Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 686 (9th Cir. 1993) ..................................... 27

*Lewis v. Casey*, 518 U.S. 343, 357 (1996). ................................................................................ 3

*Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027–28 (1992) ............................................... 26

*Lueck v. Nev. Jud. Ethics Prac.s Comm'n*, 106 Fed. Appx. 552, 554 (9th Cir. 2004) ................ 18

*Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992) ............................................................ 3, 11

*Managed Pharmacy Care v. Sebelius,* 716 F.3d 1235, 1252 (9th Cir. 2013) .............................. 25

*Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012) ........................................................... 3

*Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021) ...................................... 21

*Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013) ................................. 3

*O'Shea v. Littleton*, 414 U.S. 488, 496–97 (1974) ....................................................................... 18

*Ohlinger v. Watson*, 652 F.2d 775 (9th Cir. 1980) ..................................................................... 20

*Papasan v. Allain*, 478 U.S. 265, 286 (1986) ........................................................................ 4, 13

*Penn Centr. Transp. Co. v. City of New York*, 438 U.S. 104, 124, (1978) .................................. 26

*Pony v. Cnty. of Los Angeles*, 433 F.3d 1138, 1147-48 (9th Cir. 2006) ..................................... 14

*Powers v. Ohio*, 499 U.S. 400, 410–11 (1991) ..................................................................... 13, 14

*Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1093 (9th Cir. 2015) ........................ 23

*Salcido v. Woodbury Cnty., Iowa*, 119 F. Supp. 2d 900 (N.D. Iowa 2000) ................................ 17

*Schrunk v. Metz*, 125 Or. App. 405, 412 n.9 (1993) .................................................................. 25

*Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008) ............................................................ 23

*Sierra Med. Serv. All. v. Kent*, 883 F.3d 1216, 1226 (9th Cir. 2018) .............................. 24, 25, 26

*Singleton v. Wulff,* 428 U.S. 106, 113 (1976) ...................................................................... 13, 14

*Siskiyou Hospital, Inc. v. California Department of Health Care Services,* No. 2:20-cv-00487-TLN-KJN, 2022 WL 118409, at *5 (E.D. Cal. Jan. 12, 2022). .............................. 15, 16

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ..................................................................... 11

*Sprint Commc'n Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273–74 (2008) ........................... 3

Page iv

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 134 (1998)........................................ 3, 11, 14

*Sun Savings & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987)................................. 4

*Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)........................................................ 4

*Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1195 (9th Cir. 2013)............... 19, 23

*Taylor v. Westly*, 488 F.3d 1197, 1199 (9th Cir. 2007) ....................................................... 3

*Tellabs v. Makor*, 551 U.S. 308, 322 (2007)........................................................................ 4

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).................. 18

*Tingley v. Ferguson,* 47 F.4th 1055, 1070 (9th Cir. 2022)..................................................... 17

*U.S. v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ................................................................... 23

*U.S. v. Lazarenko*, 476 F.3d 642, 649 (9th Cir. 2007) ........................................................ 13

*Updike v. City of Gresham*, 62 F. Supp. 3d 1205, 1213 (D. Or. 2014)................................... 18

*Voigt v. Savell*, 70 F.3d 1552, 1564-65 (9th Cir. 1995) ...................................................... 14

*Warth v. Seldin*, 422 U.S. 490, 508 (1975) ...................................................................... 3

*Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) ................................... 3

*Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) .............................................. 20, 23

*Youngberg v. Romeo*, 457 U.S. 307, 319 (1982) ............................................................ 20, 21

**Statutes**

ORS 34.310-34.730 ............................................................................................................ 17

ORS 426.005(1)(c).......................................................................................................... 5, 27

ORS 426.030 .................................................................................................................... 27

ORS 426.060.............................................................................................................. 27, 28

ORS 426.060 (2) ................................................................................................................ 5

ORS 426.060(2) ............................................................................................................... 27

ORS 426.060(2)(a).............................................................................................................. 9

ORS 426.060(2)(d) .......................................................................................................... 5, 9

ORS 426.070..................................................................................................................... 4

ORS 426.072..................................................................................................................... 4

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

ORS 426.074 ...................................................................................................... 4

ORS 426.095 ...................................................................................................... 4

ORS 426.130 ................................................................................................. 4, 5

ORS 426.150 .................................................................................................... 28

ORS 426.150(1) ................................................................................................. 9

ORS 426.385(1)(i) ........................................................................................... 17

ORS 426.385(1)(j) ........................................................................................... 17

ORS 430.021(2)(a) ............................................................................................. 5

ORS 430.630(4)(a)-(b) ...................................................................................... 6

ORS 430.640(1)(a) ............................................................................................. 5

ORS 659A.142(5)(a) ..................................................................................... 9, 10

ORS 659A.142(6)(a) ........................................................................................ 10

ORS Ch 426.005 ......................................................................................... 5, 27

**United States Code**

42 U.S.C. § 1983 ........................................................................................... 7, 8

**Rules and Regulations**

Fed. R. Evid. 201(b) .......................................................................................... 4

FRCP 12(b)(1) ............................................................................................... 1, 2

FRCP 12(b)(6) ............................................................................................... 1, 4

Local Rule 7-1(a)(1)(A) .................................................................................... 1

OAR 309-033-0270 ........................................................................................... 5

OAR 309-033-0290(1)(a) .................................................................................. 6

OAR 309-033-0420(2)-(3) ................................................................................. 6

OAR 309-033-0430(1)(a) .................................................................................. 6

OAR 309-033-0530 ......................................................................................... 12

OAR 309-033-0530(1) ..................................................................................... 12

OAR 309-033-0530(2) ..................................................................................... 12

OAR 309-091-0010 ........................................................................................... 6

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

**Constitutional Provisions**

Const. Art. I, § 18.........................................................................................................25

U.S. Const. amend. XIV, § 1.......................................................................................19

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4793

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7-1(a)(1)(A), counsel for Defendant certifies that the parties made a good faith effort to resolve the dispute in this motion in a conferral by telephone but were unable to do so.

## MOTION

Defendant respectfully moves to dismiss the Complaint on the following grounds:

1. Motion to dismiss all claims pursuant to FRCP 12(b)(1) because Plaintiffs lack Article III standing for any of the alleged claims for relief.

2. Motions to dismiss pursuant to FRCP 12(b)(6) for failure to state a claim:

   a. The due process claims (first and second claims) fail because the Amended Complaint does not allege any plausible deprivation of a constitutionally protected liberty interest.

   b. The takings claims (third and fourth claims) fail because the Amended Complaint does not plausibly allege any takings and the injunctive relief sought is unavailable.

   c. The Amended Complaint does not plausibly plead any violation of Oregon statutes governing the civil commitment process or disability discrimination (third through seventh claims).

3. Motion to dismiss claim for nominal damages pursuant to FRCP 12(b)(1), because such relief is barred by the Eleventh Amendment.

In support of these motions, Defendant relies upon the allegations of the Amended Complaint (Dkt. No. 13), the accompanying Request for Judicial Notice (RJN), and the following memorandum of points and authorities.

## INTRODUCTION

Plaintiffs are private hospitals and health systems who (after seeking and obtaining certifications from OHA to admit and treat civilly committed patients) do not want those patients in their beds. In an effort to get them out of their alleged "unsuitable" beds, the Amended Complaint alleges seven claims for relief. These claims allege that OHA's policy of not directing civilly committed patients to OSH unless expedited admissions criteria are met, together with the alleged lack of community placements for civilly committed persons, violates

Page 1 -   DEFENDANT'S MOTION TO DISMISS
CAS/sv3/ 555947824

Plaintiffs' and their patients' due process rights, effects a taking of private hospital beds, and violates various state statutes governing the civil commitment process and disability discrimination. These claims all fail, for two main reasons: lack of Article III standing and for failure to plead sufficient facts to state a claim upon which relief can be granted.

First, Plaintiffs do not have Article III standing for any of their claims. They do not have standing to assert rights of their patients, whose interests may very well be in conflict with those of Plaintiffs. In addition, the allegations do not present any concrete, ripe controversy for this Court to perform any legal analysis with respect to any of the claims for relief alleged on Plaintiffs' own behalf or on behalf of unspecified civilly committed patients.

Second, the Amended Complaint fails to state any claim upon which relief could be granted. Plaintiffs do not allege any well-pleaded facts from which it could be plausibly concluded that OHA's policy regarding civilly committed patients has deprived Plaintiffs or their patients of due process, effected any takings, or violated any Oregon laws relating to the civil commitment process in Oregon. At most, Plaintiffs allege that their beds are not as good as beds at the Oregon State Hospital or other placements and that they are not compensated enough for treating civilly committed patients. These allegations do not amount to any viable claim for relief.

## STANDARDS FOR DEFENDANT'S RULE 12 MOTIONS

### I.    FRCP 12(b)(1) Standard

A claim must be dismissed pursuant to FRCP 12(b)(1) to the extent a plaintiff lacks Article III standing to pursue the relief sought. *See Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1102 (9th Cir. 2006) ("Because [the plaintiff] lacked standing . . . the district court lacked subject matter jurisdiction and should have dismissed the complaint on that ground alone."). To satisfy the "case or controversy" requirement and invoke the jurisdiction of the federal court, a plaintiff must establish standing under Article III. *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010). In order to have Article III standing, a plaintiff

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

must adequately establish:  (1) an injury in fact, (2) causation, and (3) redressability.  *Sprint Commc'n Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273–74 (2008).

Where, as here, Plaintiffs seek only declaratory and injunctive relief, they must additionally show a very significant possibility of future harm and demonstrate that they personally are realistically threatened by a repetition of the injury.  *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013); *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012).  A likelihood of recurrence can be established in two ways:  (1) when the plaintiff shows that the defendant had, at the time of the injury, a written policy, and that the injury stems from that policy; or (2) the plaintiff demonstrates that the harm is part of a "pattern of officially sanctioned . . . behavior, violative of the plaintiff's [federal] rights."  *Taylor v. Westly*, 488 F.3d 1197, 1199 (9th Cir. 2007); *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001) (alterations in original) (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir. 1985)).  A plaintiff must demonstrate standing for each claim she seeks to press and for each form of relief sought.  *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013).

To demonstrate redressability, plaintiff must show that they "personally would benefit in a tangible way from the court's intervention."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 134 (1998) (citing *Warth v. Seldin*, 422 U.S. 490, 508 (1975)).  Any "remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

"The party invoking federal jurisdiction bears the burden of establishing" each and every element of standing.  *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992).  Because the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof . . . ."  *Id.*

Page 3 -    DEFENDANT'S MOTION TO DISMISS
CAS/sv3/ 555947824

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## II.    FRCP 12(b)(6) Standard

On a motion to dismiss for failure to state a claim, courts presume the truth of allegations in the complaint, and construe them in the light most favorable to the nonmoving party. Fed. R. Civ. P. 12 (b) (6); *Sun Savings & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is plausible on its face only if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

The Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  To assess the adequacy of a complaint, a court may first begin by identifying those pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  *Iqbal*, 556 U.S. at 678 (holding that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); *Chapman v. Pier 1 Imports*, 631 F.3d 939, 955 n.9 (9th Cir. 2011).

Finally, the Court need not accept as true facts that are contradicted by facts subject to judicial notice under Fed. R. Evid. 201(b).  *Tellabs v. Makor*, 551 U.S. 308, 322 (2007); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

### SUMMARY OF OREGON LAWS GOVERNING CIVIL COMMITMENT PROCESS

ORS 426.070 sets out the process for initiating civil commitment of an individual in Oregon.  ORS 426.072 provides the requirements for the care of an alleged mentally ill person pending civil commitment:  A precommitment investigation will be conducted as set forth in ORS 426.074; a hearing is conducted by the circuit court as set forth in ORS 426.095; and the court shall make a determination of mental illness pursuant to ORS 426.130.  The court may (1) order the release of the person and dismiss the case, (2) order that the person be placed on

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

conditional release, (3) order that the person participate in assisted outpatient treatment, or (4)

order the commitment of the person to OHA.  ORS 426.130.

Once a court commits a person with mental illness to OHA under ORS 426.130, OHA

has the exclusive authority to determine placement:

> The following is a nonexclusive list of powers the authority may exercise
> concerning the placement of persons committed or persons receiving emergency
> care and treatment under ORS 426.070, 426.228 to 426.235 or 426.237:
> (a) In its discretion and for reasons which are satisfactory to the authority, the
> authority may direct any court-committed person to the facility best able to treat
> the person. *The decision of the authority on such matters shall be final*.

ORS 426.060 (2) (emphasis added).  Under this statute, OHA exercises discretion to determine

where a committed person should be placed, directs that placement, and its placement decisions

are final.  Oregon law defines a "facility" as used in ORS Ch 426.005 to 426.390 as "a state

mental hospital, community hospital, residential facility, detoxification center, day treatment

facility or such other facility as the *authority determines suitable . . . .*" ORS 426.005(1)(c)

(emphasis added).

OHA's placement of a civilly committed individual is subject to various statutes and

rules and can involve other entities.  OHA rules, in addition to statutes, further govern the

processes and procedures for placing and transferring a civilly committed individual.  *See e.g.*,

OAR 309-033-0270 to OAR 309-033-0300 (standards and procedures relating to the placement

and transfer of people involuntary committed to OHA because of mental illness).

The legislature authorized OHA to "delegate to a community mental health program

[(CMHP)] director the responsibility for assignment of persons with mental illness to suitable

facilities or transfer between such facilities under conditions which the authority may define."

ORS 426.060(2)(d); *see also* ORS 430.021(2)(a) (OHA "shall directly or by contract with private

or public entities" coordinate services for persons with mental disturbances) and ORS

430.640(1)(a) (OHA "subject to the availability of funds" shall "[a]ssist Oregon counties and

groups of Oregon counties in the establishment and financing of community mental health

Page 5 -    DEFENDANT'S MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

programs operated or contracted for by one or more counties"). OHA contracts with CMHPs to coordinate placement of civilly committed individuals and delegates placement decisions to those CMHPs. OAR 309-033-0290(1)(a) (OHA "delegates responsibility for the assignment and placement of committed persons to the director of the county of commitment" and the director of the CMHP "may assign or transfer a committed person to any facility or program approved by" OHA "which, in the opinion of the director, will appropriately meet the mental health needs of the committed person."). CMHPs "shall assume responsibility for psychiatric care in state and community hospitals" when the person is a resident and has been hospitalized because of a civil commitment based on a mental disorder. ORS 430.630(4)(a)-(b).

While CMHPs have the delegated authority to assign civilly committed patients to appropriate facilities, the receiving facility must have space and consent to the placement. OAR 309-033-0420(2)-(3). Similarly, CMHPs may refer patients to the Oregon State Hospital, but the hospital determines whether the person will be admitted based on its criteria. *See* OAR 309-091-0010 to OAR 309-091-0025. Transfer to the Oregon State Hospital requires prior approval of the Oregon State Hospital Superintendent. OAR 309-033-0430(1)(a).

Finally, OHA and OSH are bound by the September 1, 2022, order by Judge Mosman in Case 3:02-cv-00339-MO, which states in relevant part:

> The Oregon State Hospital shall not admit patients except as provided for by the recommendations in the Neutral Expert's January and June 2022 reports or as otherwise provided by this Court. Namely, Aid and Assist ("A&A") and Guilty Except Insane ("GEI") persons shall be admitted according to their place on the admissions wait list or pursuant to the relevant expedited admissions policy. In addition, the Oregon State Hospital: . . .
>
> b. shall not admit persons civilly committed unless they meet the criteria in the civil admission expedited admissions policy . . . .

3:02-cv-00339-MO, Dkt. No. 271.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## OVERVIEW OF THE COMPLAINT

### I.    Plaintiffs

Plaintiffs allege that they operate a total of 23 private hospitals, all of which "receive patients who are detained or civilly committed pursuant to Oregon law." (Am. Compl., Dkt. #28, ¶¶ 5, 8-12). Plaintiffs include: (1) Legacy Emanual Hospital & Health Center, doing business as Unity Center for Behavioral Health (Unity), which operates a behavioral health hospital in Portland, Oregon (*id.* at ¶ 8); (2) Legacy Health, which operates six hospitals in Oregon (*id.* at ¶ 9); (3) PeaceHealth, which operates four hospitals in Oregon (*id.* at ¶ 10); (4) Providence Health & Services, which operates eight hospitals in Oregon (*id.* at ¶ 11); and (5) St. Charles Health System, Inc., which operates four hospitals in Oregon (*id.* at ¶ 12). Unity is the only hospital that Plaintiffs identify by name in their Amended Complaint.

Plaintiffs allege that their hospitals either provide "acute care" behavioral health services, which Plaintiffs describe as "assessment and short-term stabilizing treatment for patients experiencing an acute behavioral health crisis" (*id.* at ¶¶ 8, 10-12), or do not have behavioral health units at all (*id.* at ¶¶ 9-12). According to Plaintiffs, their hospitals "are not designed, equipped, staffed, or intended to provide long-term mental health treatment for civilly committed individuals." (*Id.* at ¶ 6).

The only plaintiffs before the Court in this case are private hospitals and health systems. No civilly committed persons are plaintiffs in this case. (*Id.*).

### II.   Plaintiffs' claims

As summarized below, Plaintiffs bring seven claims for relief in this case, over half of which they bring on behalf of civilly committed persons who are not before the Court.

#### A.    Federal due process claim – civilly committed persons (First Claim)

Plaintiffs' first claim for relief is a due process claim that Plaintiffs assert on behalf of civilly committed persons under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983. (*Id.* at ¶¶ 51-61). Plaintiffs allege that civilly committed persons in

Page 7 -    DEFENDANT'S MOTION TO DISMISS
CAS/sv3/ 555947824

Plaintiffs' "acute care community hospitals[] . . . do not receive access to specialized treatment, care, and training oriented to their long-term needs and focused on their reentry into the community." (*Id.* at ¶ 56). According to Plaintiffs, civilly committed persons in their care are denied "restorative treatment" and "a realistic opportunity to be cured or improve." (*Id.*). Plaintiffs allege that OHA's practice of entrusting Plaintiffs with the care for some civilly committed persons "violates civilly committed individuals' right to substantive and procedural due process." (*Id.*).

### B.    Federal due process claim – private hospitals (Second Claim)

Plaintiffs' second claim for relief is a due process claim that Plaintiffs assert on behalf of themselves "and other community hospitals[]" (which Plaintiffs do not further identify) under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983. (*Id.* at ¶¶ 62-71). Plaintiffs allege that "There is no state law procedure for community hospitals to contest being forced to house civilly committed individuals indefinitely during their 180-day commitment." (*Id.* at ¶ 68). Plaintiffs allege that they are denied "a meaningful opportunity to be heard regarding whether a civilly committed patient should be committed to Plaintiffs' community hospitals for long-term treatment lasting up to 180 days." (*Id.*). Plaintiffs allege that they incur unreimbursed costs in caring for civilly committed persons and have undesirable working conditions. (*Id.*).

### C.    Federal takings claim – private hospitals (Third Claim)

Plaintiffs' third claim for relief is a takings claim that Plaintiffs assert on behalf of themselves and "other community hospitals[]" under the Fifth Amendment of the United States Constitution and 42 U.S.C. § 1983. (*Id.* at ¶¶ 72-81). Plaintiffs allege that OHA has taken "Plaintiffs' and other community hospitals' property for public use without just compensation." (*Id.* at ¶ 76). Plaintiffs allege that their "beds [are] being unnecessarily occupied by civilly committed individuals" and "community hospitals are deprived of the services of its care

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

providers" and "forced to incur costs associated with housing patients who should be elsewhere .
. . ." (*Id.* at ¶ 77).

D.    **State takings claim – private hospitals (Fourth Claim)**

Plaintiffs' fourth claim for relief is a takings claim that Plaintiffs assert on behalf of
themselves and "other community hospitals[]" under Article I, Section 18, of the Oregon
Constitution. (*Id.* at ¶¶ 82-89). As with Plaintiffs' federal takings claim, Plaintiffs allege that
their beds are being unnecessarily occupied by civilly committed persons and that their hospitals
are not justly compensated for related expenses. (*Id.* at ¶ 84).

E.    **ORS 426.060 – civilly committed persons (Fifth Claim)**

Plaintiffs bring their final three claims on behalf of civilly committed persons.

In their fifth claim for relief, Plaintiffs allege that ORS 426.060(2)(a) and (d) require
OHA to "direct civilly committed persons 'to the facility best able to treat' them" or to "a
'suitable' facility." (*Id.* at ¶ 91). Plaintiffs allege that OHA is violating civilly committed
persons' rights under that statute by entrusting Plaintiffs with their care. (*Id.* at ¶ 92).

F.    **ORS 426.150(1) – civilly committed persons (Sixth Claim)**

In their sixth claim for relief, Plaintiffs allege that ORS 426.150(1) requires OHA to take
civilly committed persons "into its custody, and ensure the safekeeping and proper care of the
person until the person is delivered to an assigned treatment facility" or a representative thereof.
(*Id.* at ¶ 97). Plaintiffs allege that OHA is violating civilly committed persons' rights under that
statute by "using community hospitals to house civilly committed individuals." (*Id.* at ¶ 99).

G.    **ORS 659A.142(5)(a), (6)(a) – civilly committed persons (Seventh Claim)**

In their seventh claim for relief, Plaintiffs allege that OHA is violating civilly committed
persons' rights under ORS 659A.142(5)(a) and 659.142(6)(a).

ORS 659A.142(5)(a) provides in part that "[i]t is an unlawful practice for state
government to exclude an individual from participation in or deny an individual the benefits of
the services, programs or activities of state government or to make any distinction,

Page 9 -    DEFENDANT'S MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

discrimination or restriction because the individual has a disability." ORS 659A.142(5)(a). Plaintiffs allege that OHA is violating civilly committed persons' rights under that statute by excluding them "from admission to OSH" or "an alternative appropriate long-term placement." (Am. Compl., Dkt. #28, ¶ 105).

ORS 659A.142(6)(a) provides in part that "[i]t is an unlawful practice for a provider or any person acting on behalf of a provider to discriminate by doing any of the following based on the patient's . . . disability:  (A) Deny medical treatment to the patient that is likely to benefit the patient based on an individualized assessment of the patient using objective medical evidence; or (B) Limit or restrict in any manner the allocation of medical resources to the patient." ORS 659A.142(6)(a).  Plaintiffs allege that OHA is "discriminating against civilly committed individuals by denying them appropriate long-term treatment once they are civilly committed to the custody of OHA, and limiting and restricting the allocation of resources to them."  (Am. Compl., Dkt. #28, ¶ 106).

## III.    Relief sought

For each of their claims, Plaintiffs ask the Court for a declaration that OHA has violated the rights of "community hospitals" and civilly committed persons, for an injunction "permanently enjoin[ing] OHA from continuing to violate" those rights, and for an award of nominal damages and attorney fees.  (*Id.* at pp. 38-40).

## ARGUMENT

## I.    Plaintiffs lack Article III standing.

Plaintiffs lack standing under Article III for three reasons:  (A) Plaintiffs have no standing for the claims they bring on their own behalf because they do not allege any actual injury in fact that is fairly traceable to the challenged state action; (B) Plaintiffs have no standing to bring claims on behalf of civilly committed persons; and (C) Plaintiffs' claims are not ripe for the Court's review.

CAS/sv3/ 555947824

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**A.        Plaintiffs have no standing for the claims they bring on their own behalf.**

In claims two (due process), three (federal takings) and four (state takings), Plaintiffs

seek relief on only their own behalf.  But they lack standing for these claims because they have

not alleged an injury in fact traceable to the challenged action that is likely to redressed by this

Court.  To satisfy the "irreducible constitutional minimum of standing," a plaintiff must show an

"injury in fact" that is fairly traceable to the challenged action of the defendant and likely to be

redressed by a favorable decision.  *Lujan*, 504 U.S. at 560-61.

Injury in fact is the "[f]irst and foremost" of standing's three elements.  *Steel Co.*, 523

U.S. at 103.  "To establish injury in fact, a plaintiff must show that he or she suffered 'an

invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or

imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)

(quoting *Lujan*, 504 U.S. at 560).  "A concrete injury is one that is 'real and not abstract.'"  *In re

Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (quoting *id.*, 578 U.S.

at 340 (2016) (internal quotation marks omitted in original)).  "For an injury to be

'particularized,' it 'must affect the plaintiff in a personal and individual way.'"  *Spokeo*, 578 U.S.

at 339 (citations omitted).

Here, the Amended Complaint contains no well pleaded facts that Plaintiffs have suffered

any injury in fact that is fairly traceable to OHA.  For each of the three claims for relief brought

on their own behalf, Plaintiffs generally allege that "OHA's conduct, policy, and practice results

in a taking of property belonging to Plaintiffs and other community hospitals for public use and a

denial of Plaintiffs' fundamental right to use its hospital beds."  (Am. Compl., Dkt. #28, ¶ 66

(federal due process claim), ¶¶ 76-77 (federal takings claim), ¶¶ 84-85 (state takings claim)).

Plaintiffs generally allege that they are "being forced to house civilly committed individuals" (*Id.*

at ¶ 68) and "forced to incur costs associated with housing patients" (*Id.* at ¶¶ 77, 85).  All of

those allegations are conclusory.  But the Amended Complaint contains no facts sufficient to

identify any specific policy or practice on OHA's part pursuant to which Plaintiffs are "forced"

to admit and treat civilly committed persons.  The non-specific, conclusory allegations are

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

insufficient under *Iqbal* to establish the requisite injury in fact. *See Leite v. Crane Co.,* 749 F.3d 1117, 1121-22 (9th Cir. 2014) (*Iqbal*'s pleading standard applies to establishing jurisdiction).

Moreover, Plaintiffs cannot establish any concrete injury in fact arising out of their treatment of civilly committed persons because judicially noticeable facts demonstrate that Plaintiffs voluntarily applied for the opportunity to do that work. Every plaintiff in this case sought and obtained an active Certificate of Approval from OHA to provide care and treatment services for civilly committed persons. *See* Request for Judicial Notice ISO Defendant's motion to dismiss, Exhibits 1-29. The process that Plaintiffs underwent to obtain those certificates is voluntary and set forth in the Oregon Administrative Rules. Under OAR 309-033-0530, "Only hospitals and nonhospital facilities, approved by the [Health Systems] Division [of the OHA] under this rule, shall provide care and treatment services for committed persons . . . ." OAR 309-033-0530(1). Hospitals must affirmatively apply for such approval. OAR 309-033-0530(2). Then, "[i]f approved, a Certificate . . . will be issued to the hospital or nonhospital facility to provide such services." *Id.* The Amended Complaint cites no source of Oregon law or state action that compels them to treat civilly committed patients. Thus, it cannot be plausibly concluded that Plaintiffs are "forced" to admit and treat civilly committed persons.

In sum, Plaintiffs do not have standing for the three claims that they are bringing on their own behalf in this case because they have not alleged and cannot establish any injury in fact that is fairly traceable to OHA. There are no well pleaded allegations in the Amended Complaint that Plaintiffs are "forced to house" civilly committed persons. To the contrary, judicially noticeable facts show that Plaintiffs are treating civilly committed persons on a voluntary basis.

### B.  Plaintiffs have no standing to bring claims for civilly committed persons.

Plaintiffs bring their other four claims for relief solely on behalf of civilly committed persons who are not identified in the Amended Complaint and who are not before the Court. Plaintiffs do not have standing to bring such claims under Article III.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

The standing doctrine is composed of two parts: "a constitutional component, rooted in the Constitution's case-or-controversy requirement, and a prudential component, which embraces judicially self-imposed restraints on federal jurisdiction.  A litigant must satisfy both to seek redress in federal court."  *U.S. v. Lazarenko*, 476 F.3d 642, 649 (9th Cir. 2007) (citations omitted).  Prudential standing "encompasses the general prohibition on a litigant's raising another person's legal rights . . . ."  *Id.* at 649 (internal quotation marks omitted).  "It is a well-established rule that a litigant may assert only his own legal rights and interests and cannot rest a claim for relief on the legal rights or interests of third parties."  *Coal. of Clergy, Law.s, & Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002).  As this rule is prudential, rather than constitutional, the Supreme Court has "recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied."  *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991).  The three criteria to establish third party standing are:  (1) injury in fact; (2) a close relation to the third party; and (3) "some hindrance to the third party's ability to protect his or her own interests."  *Id.* at 411.

In *Singleton v. Wulff*, the Supreme Court warned that "[f]ederal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation."  428 U.S. 106, 113 (1976).  Such an exercise "cuts to the heart" of Article III's case-and-controversy requirement because "Courts should not adjudicate rights unnecessarily" and "the real parties in interest in an adversarial system are usually the best proponents of their own rights."  *Coal. of Clergy*, 310 F.3d at 1164 (citing *Singleton*, 428 U.S. at 113-14).  Here, the Court should heed *Singleton*'s warning because the allegations in the Amended Complaint do not satisfy any of the three criteria for third party standing.

### 1.    No "injury in fact."

The first criterion for third party standing requires that a litigant "must have suffered an 'injury in fact,' thus giving them a 'sufficiently concrete interest' in the outcome of the issue in

Page 13 -  DEFENDANT'S MOTION TO DISMISS
CAS/sv3/ 555947824

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

dispute . . . ." *Powers*, 499 U.S. at 411 (quoting *Singleton*, 428 U.S. at 112).  Before a litigant may invoke third party standing, the litigant must "allege an 'injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural, or hypothetical.'"  *HPG Corp. v. Aurora Loan Serv., LLC*, 436 B.R. 569, 579 (E.D. Cal. 2010) (quoting *Steel Co.*, 523 U.S. at 103).  In other words, a party asserting claims on behalf of third parties not before the court must first "demonstrate the constitutional prerequisites to standing" in its own right.  *Id.* at 580 (holding that corporate plaintiffs failed to allege sufficient facts to support third party standing where the complaint "wholly fail[ed] to set forth any damage or injury inflicted upon the corporate plaintiffs").

Here, for the reasons already discussed, Plaintiffs have not alleged (and as demonstrated by judicially-noticeable facts cannot establish) any injury in fact.  Accordingly, they cannot establish the first criterion for third party standing.

### 2.    No close relationship.

The second criterion for third party standing is a close relationship between a litigant and the third party whose rights the litigant is asserting.  The rationale for the criterion is that a close relationship ensures "that the former is fully, or very nearly, as effective a proponent of the right as the latter."  *Voigt v. Savell*, 70 F.3d 1552, 1564-65 (9th Cir. 1995).  "Courts have repeatedly emphasized that the key to third-party standing analysis is whether the interests of the litigant and the third party are properly aligned . . . ."  *Harris v. Evans*, 20 F.3d 1118, 1124–25 (11th Cir. 1994), *quoted in Pony v. Cnty. of Los Angeles*, 433 F.3d 1138, 1147-48 (9th Cir. 2006).  Here, Plaintiffs cannot establish the second criterion for third party standing because they are not in a close relationship with the civilly committed persons whose rights they are asserting, and—even if they were—their interests are not aligned.

First, the Amended Complaint includes no facts suggesting that Plaintiffs are in a close relationship with the civilly committed persons whose rights Plaintiffs are asserting.  Plaintiffs allege that they operate private hospitals and that those hospitals sometimes accept civilly

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

committed persons as patients.  Plaintiffs are thus two steps removed from the civilly committed persons they seek to represent.

The United States District Court for the District of Hawaii held that a similarly "twice-removed relationship" was not sufficiently "close" to warrant third party standing in *AlohaCare v. Hawaii Department of Human Services*.  567 F. Supp. 2d 1238, 1260 (D. Haw. 2008).  In *AlohaCare*, a health maintenance organization (HMO) challenged the fairness of a state's procurement process for Medicaid contracts and also brought claims on behalf of certain Medicaid beneficiaries.  *Id.* at 1260.  The court held that the HMO lacked third party standing for the beneficiary claims, because even though the HMO "may serve [the Medicaid] beneficiaries, [the HMO] is two steps removed from the beneficiaries it seeks to represent" and "[a] twice-removed relationship . . . is not 'close.'"  *Id.*  Here, as in *AlohaCare*, Plaintiffs' twice-removed relationship with civilly committed persons is not close.

Second, not only do Plaintiffs not have a close relationship with civilly committed persons, but also their interests are adverse.  Plaintiffs want to exclude civilly committed persons from receiving care at their hospitals to avoid incurring "expenses for additional staff and workers' compensation costs, property damage, and room closures."  (Am. Compl., Dkt. #28, ¶ 43).  There are no allegations in the Amended Complaint from which it could be concluded that civilly committed persons would advance these same arguments or pursue the same outcome.  Confronting almost identical facts in *Siskiyou Hospital, Inc. v. California Department of Health Care Services*, the United States District Court for the Eastern District of California rejected a healthcare provider's argument that "the provider-patient relationship between itself and 5150 patients [(individuals with mental health emergencies detained by law enforcement)] establishes a 'close relationship' for the purposes of third party standing," on the grounds that their interests were adverse.  No. 2:20-cv-00487-TLN-KJN, 2022 WL 118409, at *5 (E.D. Cal. Jan. 12, 2022).

In *Siskiyou Hospital*, the plaintiff was a nonprofit public benefit corporation licensed to operate an acute care hospital.  *Id.* at *1.  The plaintiff in that case alleged that it was not

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

equipped to "provide necessary mental health care services" to 5150 patients and that the county failed to "provide mental health services or arrange the transfer of these patients to an appropriate psychiatric care provider in a timely manner, leaving the patients to remain in Plaintiff's [emergency medicine department] for unduly long periods of time . . . ." *Id.* In an effort to stop serving 5150 patients, the plaintiff brought various Section 1983 claims on their behalf. *Id.* *3. The Eastern District of California held that the plaintiff could not establish third party standing for those claims because it was not a "suitable champion" of the 5150 patients' rights "based on a glaring conflict of interest." *Id.* at *4. Namely, the plaintiff was "clearly putting its own stated interests in avoiding disruptions, safety threats, and costs above those of the 5150 patients" and was "essentially seeking to foreclose" its relationship to the 5150 patients (whom the court was not convinced "would advance the same arguments or seek the same outcome"). *Id.* at *4-*5. Here, just as in *Siskiyou Hospital*, Plaintiffs are not suitable champions of civilly committed persons' rights because they filed this case to get civilly committed persons out of their beds.

For the same reasons as in *AlohaCare* and *Siskiyou Hospital*, Plaintiffs have not alleged that they are in a close relationship with the civilly committed persons whose rights they are asserting or that their interests are aligned. Accordingly, they cannot establish the second criterion for third party standing.

### 3.   No hindrance to civilly committed persons' ability to protect their own interests.

The final criterion for third party standing requires a litigant to establish some hindrance to the third party's ability to protect his or her own interests. The only allegation relevant to this criterion in the Amended Complaint is a footnote stating that "civilly committed patients have no one to advocate on their behalf because Oregon's civil commitment scheme does not provide them with counsel after the point of commitment." (Am. Compl., Dkt. #28, ¶ 24 n.1). That conclusory statement is legally untrue and does not show that civilly committed persons are unable to protect their own interests.

Page 16 -  DEFENDANT'S MOTION TO DISMISS
CAS/sv3/ 555947824

First, Oregon law belies Plaintiffs' allegation that civilly committed patients are not provided with counsel after the point of commitment. ORS 426.385(1)(i) expressly provides that "[e]very person with mental illness committed to the Oregon Health Authority shall have the right to . . . [b]e represented by counsel whenever the substantial rights of the person may be affected." The statute further provides that civilly committed persons have the right to "[p]etition for a writ of habeas corpus." ORS 426.385(1)(j). In State habeas proceedings, petitioners may challenge the fact or conditions of their confinement and are provided with counsel to do so. ORS 34.310-34.730.

Second, Plaintiffs have not shown that civilly committed persons cannot protect their own interests, particularly where civilly committed persons have brought lawsuits challenging their placements in other states. In *Tingley v. Ferguson*, the Ninth Circuit held that a therapist bringing third party claims to challenge a conversion therapy ban on behalf of minor clients could not establish that his clients were hindered in asserting their own rights because "minors seeking conversion therapy have brought their own lawsuits challenging conversion therapy bans in other states." 47 F.4th 1055, 1070 (9th Cir. 2022) (citing cases in which minors challenged conversion therapy bans). Accordingly, the therapist's "allegations of the asserted hindrances his clients face[d] in bringing their own claims [were] speculative." *Id.* at 1069.

Here, too, Plaintiffs' allegations of the asserted hinderances civilly committed persons face in bringing their own claims is speculative because civilly committed persons in other states have brought their own lawsuits related to their placements. *See, e.g.*, *Kriz v. Roy*, No. 8:20CV110, 2020 WL 6135442, at *1 (N.D. Neb. Oct. 19, 2020) (*pro se* civilly committed person alleged he was denied "the 'right to be treated in the least restrictive treatment setting and environment'"); *Endsley v. Mayberg*, No. CIV S–09–2311 WBS GGH P, 2010 WL 4829549 (E.D. Cal. Nov. 22, 2010) (*pro se* plaintiff civilly committed to state mental hospital claimed he was entitled to be housed in a less restrictive setting); *Salcido v. Woodbury Cnty., Iowa*, 119 F. Supp. 2d 900 (N.D. Iowa 2000) (civilly committed patient brought action against county and

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

state defendants raising various claims related to his placement); *c.f.*, *Doe v. Shibinette*, 16 F.4th 894 (1st Cir. 2021) (involuntary hospital patient brought class action regarding probable cause hearings); *Conner v. Branstad*, 839 F. Supp. 1346 (S.D. Iowa 1993) (class action by group of institutionalized mentally and physically disabled persons challenging a state's system of providing services in an institutional setting rather than in a community-based environment).

In sum, given the availability of counsel to civilly committed persons after their commitment hearings and given the fact that civilly committed persons in other states have filed their own lawsuits related to their placements, Plaintiffs cannot establish the "hinderance" criterion for third party standing.

### C.    None of Plaintiffs' claims are ripe for the Court's review.

"Ripeness requires that [a litigant] bringing suit for declaratory or injunctive relief be harmed or immediately threatened with harm by the challenged action." *Lueck v. Nev. Jud. Ethics Prac.s Comm'n*, 106 Fed. Appx. 552, 554 (9th Cir. 2004). Absent an "imminent threat of harm," a case or controversy is not ripe for review. *Id.* The Court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). "Regardless of whether the relief sought is monetary, injunctive or declaratory, in order for a case to be more than a request for an advisory opinion, there must be an actual dispute between adverse litigants and a substantial likelihood that a favorable federal court decision will have some effect." *Gorman v. Kroger*, No. 6:12-cv-1124-TC, 2012 WL 12375784, at *1 (D. Or. Oct. 1, 2012). Plaintiffs seeking declaratory and injunctive relief "must demonstrate a 'real and immediate threat of repeated injury.'" *Updike v. City of Gresham*, 62 F. Supp. 3d 1205, 1213 (D. Or. 2014) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496–97 (1974)).

Here, Plaintiffs seek advisory declaratory and injunctive relief. Although Plaintiffs seek a declaration that OHA "force[s] community hospitals to treat civilly committed individuals

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

indefinitely, thus occupying and taking their property" and injunctive relief "enjoin[ing] OHA from . . . continuing to take hospitals' property without just compensation" (Am. Compl., Dkt. #28, p. 38-39), there are no well pleaded allegations in the Amended Complaint that Plaintiffs are in any way *in fact* or *by law* forced to treat admit and treat civilly committed persons. Moreover, as set forth above, Plaintiffs are treating civilly committed persons on a voluntary basis.  Thus, Plaintiffs' claims are not ripe for the Court's review.

## II.    The Amended Complaint fails to state a claim for violation of due process.

Plaintiffs bring the first two claims for relief in this case under the Due Process Clause of the Fourteenth Amendment, which provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  Plaintiffs assert the first claim on behalf of civilly committed persons and the second claim on behalf of "community hospitals."  Plaintiffs fail to state a cognizable due process claim on either group's behalf.

### A.    The Amended Complaint fails to state a due process claim on behalf of civilly committed persons.

In their first claim, Plaintiffs allege in conclusory fashion that "OHA has engaged in conduct and a policy and practice that violates civilly committed individuals' right to substantive and procedural due process."  (Am. Compl., Dkt. #28, ¶ 56).  Even if Plaintiffs had standing to bring a due process claim on behalf of civilly committed persons, the allegations in the Amended Complaint do not state a cognizable substantive or procedural due process claim.

#### 1.    Plaintiffs fail to state a substantive due process for their patients.

"Substantive due process protects individuals from arbitrary deprivation of their liberty by government."  *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1195 (9th Cir. 2013).  "To constitute a violation of substantive due process, the alleged deprivation must shock the conscience and offend the community's sense of fair play and decency."  *Id.* (internal quotation marks and citation omitted).  Substantive due process protects only those "fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' .

Page 19 -  DEFENDANT'S MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

. . and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would

exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal

citations omitted).  A substantive due process claim "require[s] . . . a 'careful description' of the

asserted fundamental liberty interest."  *Id.* at 721 (internal citations omitted).

Here, Plaintiffs allege that "OHA's conduct, policy, and practice" infringes civilly

committed persons' "liberty interest in restorative treatment" and causes them to "remain

confined in . . . overly-restrictive settings . . . ."  (Am. Compl., Dkt. #28, ¶ 56).  But civilly

committed persons do not have a fundamental right to optimal treatment or to treatment in the

least restrictive setting.  With regard to treatment, civilly committed patients are guaranteed

"minimally adequate care and treatment," not optimal treatment.  *Youngberg v. Romeo*, 457 U.S.

307, 319 (1982) ("[An involuntarily committed person]'s liberty interests require the State to

provide minimally adequate or reasonable training to ensure safety and freedom from undue

restraint").  The "minimally adequate" standard is a deferential one, and requires only that a

decision have been made by a qualified professional[1].  *Id.* at 323 ("[T]he decision, if made by a

professional, is presumptively valid . . . .").  With regard to setting, "[t]he prevailing view . . . is

that there is no general federal constitutional right to a least restrictive environment."  *Kriz*, 2020

WL 6135442, at *3 (citing cases); *see also, e.g.*, *Conner*, 839 F. Supp. at 1351 ("Following the

Supreme Court's decision in *Youngberg*, several circuits have uniformly concluded that there is

no federal right to treatment in the least restrictive setting.") (citing cases).  Notably, Plaintiffs do

---

[1] In the Amended Complaint, Plaintiffs cite *Ohlinger v. Watson*, 652 F.2d 775 (9th Cir. 1980), in support of their contention that the Constitution requires civilly committed persons to receive "[a]dequate and effective treatment" and "a realistic opportunity to be cured or to improve [the] mental condition" for which they were confined.  (Am. Compl., Dkt. #28, ¶ 16 (quoting Ohlinger, 652 F.2d at 778-79)).  But *Youngberg*, not *Ohlinger*, sets forth the applicable constitutional minimum standard of care for civilly committed persons for two reasons.  First, *Youngberg* supersedes *Ohlinger*, because the Supreme Court decided *Youngberg* over a year after the Ninth Circuit decided *Ohlinger*.  And second, *Youngberg*'s facts are more closely aligned with the facts presented here.  Whereas *Youngberg* set forth the constitutional minimum standard of care for an involuntarily-admitted hospital patient who lacked "basic self-care skills" due to mental disabilities, 457 U.S. at 309, *Ohlinger* set forth the standard of care for sex offenders serving indeterminate life sentences in prison under a since-repealed statute, 652 F.2d at 776.  *Ohlinger* is not controlling.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

not allege that their facilities are not providing minimally adequate treatment for civilly committed patients.

Plaintiffs' conclusory allegations about "restorative treatment" and "overly-restrictive settings" fall far short of carefully describing the type of fundamental liberty interest that a substantive due process claim requires. Plaintiffs identify no specific patients, no specific mental health conditions allegedly going untreated, and no specific "overly-restrictive" placements. At most, they allege generally that treatment is better at OSH than in their facilities. The Amended Complaint contains no well pleaded allegations that, if true, would establish that any civilly committed person's fundamental constitutional rights have been infringed. Accordingly, Plaintiffs fail to state a substantive due process claim on behalf of civilly committed persons.

###      2.      Plaintiffs fail to state a procedural due process claim for their patients.

Procedural due process "'minimize[s] substantively unfair or mistaken deprivations of' life, liberty, or property by enabling persons to contest the basis upon which a State proposes to deprive them of protected interests." *Carey v. Piphus*, 435 U.S. 247, 259-60 (1978). "A procedural due process claim has two elements: '(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections.'" *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021) (quoting *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018)).

Here, Plaintiffs allege that "[t]here is no state law procedure for community hospitals to ensure civilly committed individuals are placed by OHA in the facility best able to treat them or a suitable facility during their 180-day commitment, so they can receive appropriate long-term treatment." (Am. Compl., Dkt. #28, ¶ 58). That conclusory allegation is an insufficient basis for a procedural due process claim on behalf of civilly committed persons, because civilly committed persons do not have a constitutionally protected liberty interest in treatment at the "facility best able to treat them." Civilly committed persons are constitutionally guaranteed only "minimally adequate treatment." *Youngberg*, 457 U.S. at 319. Again, Plaintiffs do not allege

CAS/sv3/ 555947824

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

that they are not providing civilly committed patients with less than minimally adequate care.  As already discussed, the Amended Complaint contains no well pleaded allegations from which it could be plausibly concluded that civilly committed patients are not receiving minimally adequate treatment from Plaintiffs.  Thus, Plaintiffs fail to state a procedural due process claim on behalf of civilly committed persons.

> **B.    The Amended Complaint fails to state a due process claim on behalf of the Plaintiff private hospitals.**

In their second claim, Plaintiffs allege that "[t]here is no state law procedure for community hospitals to contest being forced to house civilly committed individuals indefinitely during their 180-day commitment."  (Am. Compl., Dkt. #28, ¶ 68).  Plaintiffs seek a declaration that "OHA's conduct, policy, and practice violates community hospitals' Fourteenth Amendment substantive and procedural due process rights."  (*Id.* at ¶ 70).

The allegations in the Amended Complaint do not state a cognizable substantive or procedural due process claim on behalf of private hospitals.

> **1.    Plaintiffs fail to state a substantive due process claim on their own behalf.**

As explained below, Plaintiffs' substantive due process claim on behalf of private hospitals is subsumed into their federal takings claim and fails for the reasons the takings claim fails.  Even if it were not, Plaintiffs fail to state a substantive due process claim on the facts alleged, and buttressed by judicially noticeable facts.  Far from being "forced to house civilly committed individuals" (*Id.* at ¶ 68), Plaintiffs voluntarily treat them after having applied for approval to do so.

> **a.    The substantive due process claim fails because it is subsumed by the federal takings claim.**

For their substantive due process claim on behalf of private hospitals, Plaintiffs allege that "OHA's conduct, policy, and practice results in a taking of property belonging to Plaintiffs and other community hospitals for public use and a denial of Plaintiffs' fundamental right to use its hospital beds."  (*Id.* at ¶ 66).  That allegation tracks almost verbatim the allegations

Page 22 -  DEFENDANT'S MOTION TO DISMISS

underlying the federal takings claim that Plaintiffs bring under the Fifth Amendment, wherein

Plaintiffs allege that "OHA has engaged in conduct and a policy and practice that results in a

taking of Plaintiffs' and other community hospitals' property for public use" and "deprives

Plaintiffs and other community hospitals of their hospital beds." (*Id.* at ¶¶ 76-77).

Where, as here, "a constitutional claim is covered by a specific constitutional provision, .

. . the claim must be analyzed under the standard appropriate to that specific provision, not under

the rubric of substantive due process." *U.S. v. Lanier*, 520 U.S. 259, 272 n.7 (1997).  A

substantive due process claim that overlaps with a takings claim is subsumed into the takings

claim unless the challenged land use action is alleged to be "so arbitrary or irrational that it runs

afoul of the Due Process Clause." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).

Absent such an allegation, "the Fifth Amendment . . . preclude[s] a due process challenge . . . if

the alleged conduct is actually covered by the Takings Clause." *Crown Point Dev., Inc. v. City

of Sun Valley*, 506 F.3d 851, 855 (9th Cir. 2007); *Rancho de Calistoga v. City of Calistoga*, 800

F.3d 1083, 1093 (9th Cir. 2015) ("Such an overlapping theory dooms the substantive due process

claim").  Here, Plaintiffs do not allege that OHA has acted in an arbitrary or irrational manner.

Accordingly, Plaintiffs' substantive due process claim on behalf of private hospitals is subsumed

into their claim under the Takings Clause.

> **b.    Plaintiffs fail to state a substantive due process claim.**

Overlapping claims aside, Plaintiffs fail to state a cognizable substantive due process

claim on behalf of private hospitals.  There are no well pleaded allegations in the Amended

Complaint from which it could be concluded that OHA infringed private hospitals' fundamental

liberty interests, let alone did so in a manner that shocks the conscience. *See Washington*, 521

U.S. at 703 (substantive due process protects only fundamental liberty interests); *Sylvia

Landfield Tr.*, 729 F.3d at 1195 (alleged deprivation must shock the conscience).

The liberty interest that Plaintiffs invoke—that is, their conclusory allegation that private

hospitals are "deni[ed the] fundamental right to use [their] hospital beds" because they are

"forced to house civilly committed individuals" (Am. Compl., Dkt. #28, ¶¶ 66, 68)—is unaccompanied by any well pleaded facts that would show that private hospitals are "forced" to accept civilly committed patients.  Moreover, as already discussed, judicially noticeable facts show that the opposite is true.  Plaintiffs voluntarily undertook to treat civilly committed persons, undergoing the certification process to do so.  *See* RJN, Exhibits 1-29.

In a similar case, the Ninth Circuit held that a group of medical services providers could not establish a constitutionally protected liberty interest in reimbursement rates for services they provided under a Medicaid program because their participation in the program was voluntary. *Sierra Med. Serv. All. v. Kent*, 883 F.3d 1216, 1226 (9th Cir. 2018).  The Ninth Circuit reasoned: "[T]he Plaintiffs voluntarily participate in Medi-Cal and therefore have no constitutionally protected interest in any particular Medi-Cal reimbursement rate . . . .  Their due process claims are therefore without merit."  *Id.*  Here, for the same reasons as in *Sierra Medical Services Alliance v. Kent*, Plaintiffs' due process claim on behalf of private hospitals is without merit. Plaintiffs have not properly alleged (and—in accordance with judicially noticeable facts—cannot establish) that OHA has infringed private hospitals' fundamental liberty interests by "forcing" them to treat civilly committed persons.  They voluntarily sought approval to provide the services now at issue.

### 2.    Plaintiffs fail to state a procedural due process claim.

For the same reason that Plaintiffs cannot state a substantive due process claim on behalf of private hospitals, Plaintiffs cannot state a procedural due process claim.  Plaintiffs have not properly alleged the "deprivation of a constitutionally protected liberty or property interest" required for such a claim.  *Franceschi*, 887 F.3d at 935.  Plaintiffs' conclusory allegation that OHA is forcing private hospitals to accept civilly committed patients is unsupported by any well pleaded allegations in the Amended Complaint.  In addition, as discussed, every plaintiff in this case underwent a voluntary certification process to treat civilly committed persons.  RJN, Exhibits 1-29.  In these circumstances, the Court must dismiss the procedural due process claim

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

that Plaintiffs bring on behalf of private hospitals. *C.f.*, *Sierra Med. Serv. All.* 883 F.3d at 1216 (medical service providers voluntarily participating in a Medicaid program had no protected liberty interests in reimbursement rates).

## III.   The complaint fails to state any takings claim.

### A.   Plaintiffs' voluntary participation precludes the takings claim.

The takings claims are precluded as a matter of law because (aside from generalized sweeping conclusions) the Amended Complaint does not include any well-pleaded facts to show that OHA is "forcing" them to admit and treat civilly committed persons.  Plaintiffs plead no facts or law upon which this Court could plausibly draw that conclusion.  Again, judicially noticeable facts establish that Plaintiffs voluntarily applied for certifications so that they may accept civilly committed patients and Plaintiffs do not allege that they are not compensated for that work.  Plaintiffs' voluntary admission and treatment of civilly committed patients bars their takings claims.  *See generally Managed Pharmacy Care v. Sebelius,* 716 F.3d 1235, 1252 (9th Cir. 2013) ("Because participation in Medicaid is voluntary . . . providers do not have a property interest in a particular reimbursement rate.").

### B.   The Amended Complaint does not state any takings claim.

Even if Plaintiffs' voluntary acceptance of civilly committed patients did not preclude their takings claims, those claims still fail to state any takings claim.  The third and fourth claims allege takings claims under both the federal and state constitutions.  The analysis under both constitutional provisions is the same.  *See State ex rel. Schrunk v. Metz*, 125 Or. App. 405, 412 n.9 (1993) (explaining that analysis for a regulatory taking under Or. Const. Art. I, § 18, is substantially similar to a Fifth Amendment takings analysis because "the 'basic thrust' of the two provisions is the same"); *Coast Range Conifers, LLC v. State ex rel. Oregon State Bd. of Forestry*, 339 Or. 136, 147 (2005) (discussing regulatory and physical takings).  The Complaint does not specify whether Plaintiffs allege a per se or regulatory takings.  Courts have generally

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

limited per-se takings claims to real property (land). *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027–28 (1992), and its progeny.

Here, at most Plaintiffs allege regulatory takings claims. *See Sierra*, 883 F.3d at 1224-26. The Supreme Court has set forth an "ad hoc, factual inquir[y]" for determining whether a regulation amounts to a taking. *Id.* (citing *Penn Centr. Transp. Co. v. City of New York*, 438 U.S. 104, 124, (1978)). This inquiry analyzes (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the government action." *Id.* The analysis for a regulatory taking asks whether or not any economically viable use exists, "regulations that deny an owner the ability to put his or her property to any economically viable use will result in a taking and entitle the owner to compensation." *Coast Range Conifers*, 339 Or. 136, 145 (2005) (citing *Boise Cascade Corp. v. Board of Forestry*, 325 Or. 185, 198 (1997)).

The Amended Complaint fails to allege the factual predicates necessary to state a regulatory taking. It does not allege that OHA has denied Plaintiffs' ability to put their hospitals or their beds to any economically viable use, let alone describe *to any degree* the economic impact of the regulation or the extent to which the regulation has interfered with Plaintiffs' distinct investment-backed expectations. The Amended Complaint also fails to explain *how* OHA is forcing Plaintiffs to admit and treat civilly committed patients. The takings claim thus fails as a matter of law. *See Sierra*, 883 F.3d at 1225-26.

Second, the relief Plaintiffs seek is not legally available via a takings claim. Plaintiffs do not allege that they are not compensated for treating civilly committed patients; rather, they allege only that the compensation they receive is not enough. Yet they do not seek any compensation here. Instead, the Amended Complaint seeks injunctive relief abstractly constraining OHA's ability to implement civil commitment laws in Oregon. Such relief is not available via a takings claim. Assuming any taking has occurred (and it has not), states are permitted to take private property so long as it is for a public purpose; they only have to provide

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

just compensation, which is decided on an as-applied basis by looking at particular facts. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 686 (9th Cir. 1993) (explaining that an as-applied challenge involves "a claim that the particular impact of a government action on a specific piece of property requires the payment of just compensation" (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494 (1987))).

## IV.    The claims alleging violation of Oregon statutes fail to state any claim for relief.

In addition to failing for lack of Article III standing as discussed above, the fifth and sixth claims alleging violation of Oregon statutes governing the civil commitment process also fail as a matter of law because there is no allegation that suggests or a legal basis to conclude that "*choosing* to leave civilly committed individuals . . . in acute care hospitals" is not a statutorily sufficient placement decision by OHA or by the CMHP to which placement authority has been delegated.  Similarly, there is no allegation that suggests or legal basis to conclude that "leaving civilly committed individuals in acute care community hospitals" does not constitute "deliver[ing] [civilly committed individual] to an assigned treatment facility."

Further, there has been no allegation that any of the Plaintiffs are not appropriate facilities to which a civilly committed person could be placed or delivered.  In fact, Oregon law defines community hospitals as a "facility" as that term is used in ORS 426.005 to 426.390. ORS 426.005(1)(c) ("'Facility' means . . . community hospital . . . .").

As explained above, through ORS 426.060, the Oregon legislature has granted OHA express and exclusive authority to determine the placement of individuals civilly committed pursuant to ORS 426.030:

> The following is a nonexclusive list of powers the authority may exercise concerning the placement of persons committed or persons receiving emergency care and treatment under ORS 426.070, 426.228 to 426.235 or 426.237:
> (a) *In its discretion and for reasons which are satisfactory to the authority*, the authority *may* direct any court committed person to the *facility* best able to treat the person.  *The decision of the authority on such matters shall be final.*

ORS 426.060(2) (emphases added).  Further, OHA and OSH are bound by the September 1, 2022, order by Judge Mosman in Case 3:02-cv-00339-MO, which states in relevant part:

Page 27 -  DEFENDANT'S MOTION TO DISMISS

> The Oregon State Hospital shall not admit patients except as provided for by the recommendations in the Neutral Expert's January and June 2022 reports or as otherwise provided by this Court. Namely, Aid and Assist ("A&A") and Guilty Except Insane ("GEI") persons shall be admitted according to their place on the admissions wait list or pursuant to the relevant expedited admissions policy.  In addition, the Oregon State Hospital: . . .
> b. shall not admit persons civilly committed unless they meet the criteria in the civil admission expedited admissions policy . . . .

Dkt. No. 271.

From the above authority, it is clear that:  (1) OHA has the express and exclusive authority to make placement determinations of civilly committed individuals under Oregon law; (2) Plaintiffs are (at their request) approved/authorized facilities at which civilly committed persons can be placed under Oregon law; and (3) federal law currently prohibits the admission of civilly committed persons to OSH unless the civilly committed person meets the criteria in the civil admission expedited admissions policy.

Consequently, Plaintiffs have failed to allege a violation of either ORS 426.060 or ORS 426.150, as OHA has the express and exclusive authority to place or deliver civilly committed individuals to facilities best able to treat the individual as determined by OHA "[I]n its discretion and for reasons which are satisfactory to the authority."  And, OHA may not place and OSH may not admit a civilly committed individual to OSH unless that individual meets the criteria in the civil admission expedited admission policy as required by Judge Mosman's September 1, 2022, order.

With regard to Plaintiffs' seventh claim, Plaintiffs cannot demonstrate and do not allege that placement or delivery of a civilly committed patient to an authorized facility (*i.e.* one of their community hospitals) constitutes a discriminatory denial or restriction of care.  Plaintiffs do not allege that care is being denied or restricted based on a civilly committed individual's disability. To the contrary, Plaintiffs are community hospitals (and authorized placements for civilly committed individuals under Oregon law), and consequently civilly committed individuals at their facilities are receiving a hospital level of care – the highest level of care available.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Plaintiffs do not identify individual instances of discrimination nor do they describe any discriminatory acts in any detail. Plaintiffs do not identify individual patients or groups of patients that have suffered discriminatory acts. Instead, Plaintiffs engage in hyperbole and generalized allegations which are both impossible to respond to in any meaningful way and, more importantly, are insufficient to state a viable claim. The Court cannot evaluate discrimination in a vacuum, and the absence of sufficient details about specific patients or discriminatory acts are fatal to Plaintiffs' seventh claim.

**V.    The Eleventh Amendment bars nominal damages.**

The first through sixth claims seek nominal damages against Patrick Allen in his official capacity as Director of OHA. Dkt. No. 327 at ¶¶ 28, 71, 81, 89, 95, and 101. But the Eleventh Amendment bars all money damages, including nominal damages, against the State and its officers. *Horizon Christian Sch. v. Brown*, No. 21-35947, 2022 WL 17038695, at *2 (9th Cir. Nov. 17, 2022) (affirming district court's dismissal of nominal damages claim alleged against official capacity defendant under section 1983 based on Eleventh Amendment immunity). Because the only defendant in this case is named in his official capacity, the claim for nominal damages must be dismissed.

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

Page 29 -  DEFENDANT'S MOTION TO DISMISS
CAS/sv3/ 555947824

**CONCLUSION**

For the reasons set forth above, OHA respectfully asks that this Court dismiss the

Amended Complaint with prejudice.

DATED December  22  , 2022.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


     *s/ Carla A. Scott*
CARLA A. SCOTT #054725
Senior Assistant Attorney General
SHEILA H. POTTER #993485
Deputy Chief Trial Counsel
CRAIG M. JOHNSON #080902
Senior Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Carla.A.Scott@doj.state.or.us
Sheila.Potter@doj.state.or.us
Craig.M.Johnson@doj.state.or.us
Of Attorneys for Defendant

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000