Keith M. Garza, OSB No. 940773
Law Office of Keith M. Garza
P.O. Box 68106
Oak Grove, Oregon  97268
(503) 344-4766
keithgarza@comcast.net

Attorney for *Amici* Judges Audrey Broyles, Matthew Donohue, Jonathan Hill, Kathleen Proctor, and Nan Waller

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>DAVID BADEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital, <br><br>　　　　Defendants, <br><br>　　and <br><br>LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; and PROVIDENCE HEALTH & SERVICES, <br><br>　　　　Intervenors. | Case No. 3:02-cv-00339-MO (Lead Case) <br> Case No. 3:21-cv-01637-MO (Member Case) <br> Case No. 6:22-cv-01460-MO (Member Case) <br><br><br> JUDGES' *AMICUS* BRIEF PURSUANT <br> TO APRIL 3, 2023, MINUTE ORDER |

Page 1 – JUDGES' *AMICUS* BRIEF PURSUANT TO APRIL 3, 2023, MINUTE ORDER

| | |
|---|---|
| JAROD BOWMAN and JOSHAWN DOUGLAS-SIMPSON, <br><br> Plaintiffs, <br><br> v. <br><br> DOLORES MATTEUCII, Superintendent of the Oregon State Hospital, in her official capacity, and DAVID BADEN, Director of the Oregon Health Authority, in his individual and official capacity, <br><br> Defendants, <br><br> and <br><br> LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; and PROVIDENCE HEALTH & SERVICES, <br><br> Intervenors. | Case No. 3:21-cv-01637-MO (Member Case) |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; and PROVIDENCE HEALTH & SERVICES OREGON, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID BADEN, in his official capacity as Director of Oregon Health Authority, <br><br> Defendant. | Case No. 6:22-cv-01460-MO (Member Case) |

Page 2 – JUDGES' *AMICUS* BRIEF PURSUANT TO APRIL 3, 2023, MINUTE ORDER

## I.     INTRODUCTION

*Amici* Judges Audrey Broyles, Matthew Donohue, Jonathan Hill, Kathleen Proctor, and Nan Waller respectfully offer the following brief addressing the two questions set out in the Court's April 3, 2023, minute order (Dkt. 368):  "(1) what obligation OSH has to meet judges requests for pre-discharge progress reports and (2) whether the least intrusive means requirement obligates parties to seek state court relief for state court orders before turning to federal court[.]"

## II.     DISCUSSION

A. *Requiring OSH to Comply with Judicial Requests for Pre-Discharge Progress Reports is Consistent with Oregon Law, Consistent with the Court's September 1 Order, and Important to the Safe Implementation of the Modified <u>Mink</u> Injunction.*

The Court's September 1 Order creates a scenario that previously did not exist under Oregon statutory law:  OSH maximum commitment timelines that are shorter than the statutory maximum periods for restoration under ORS 161.371(5).  That bifurcation, in turn, presents state court judges with a new and additional consideration upon mandatory discharge under the shortened hospital restoration limits:  whether and under what conditions to continue restorative efforts in the community outside of OSH for potentially significant periods of time.  That decision is a more nuanced one than the statutory choices otherwise available to a judge at the end of statutory restoration jurisdiction (either release the defendant or commence commitment proceedings (ORS 161.371(7)(a), (b))); must be made under compressed timelines; and, as with the initial commitment decision, requires judges to consider a host of statutory factors including the needs of the defendant, public safety, and the interests of justice.  *See*, *e.g*. ORS 161.370(2), (3), (4); ORS 161.371(3), (4).

Page 3 – JUDGES' *AMICUS* BRIEF PURSUANT TO APRIL 3, 2023, MINUTE ORDER

To aid in making the new determination—often an exceedingly difficult one due to the lack of available community resources—at least one judge has conditioned a defendant's return from OSH upon the submission of a current progress report detailing, among other things, the defendant's amenability to community restoration. The issue before the Court, aptly described as follows, is whether such an order is enforceable against OSH:

> "[I[f you're going to send this person back to us and we have choices to make, choices that could include community care but might also include involuntary commitment for dangerousness or something like that, then we would like to know OSH's professional opinion about where this person stands. So that's something to think about, whether it gets folded into an amendment to the order or not."

(March 31, 2023, Hearing at 25.) As set out briefly below, such orders are consistent with both existing Oregon law and the September 1 Order. Indeed, and as one might expect, in many cases the information in such reports will prove critically important in guiding parties and judges toward the best decisions for defendants and the public.

Simply stated, Oregon's aid and assist statutes place decisional responsibility on state court judges. Concomitantly, those statutes also endow judges—usually by mandating or authorizing hearings—with the ability to obtain the evidence they need to make those decisions. As one example, ORS 161.367(2)(c) permits a court, "upon its own motion or the request of either party," to hold a hearing on whether a defendant has either gained or regained fitness to proceed. For another, upon determining that a defendant lacks fitness and the parties disagree as to the appropriate disposition, the court must hold a hearing before determining the appropriate actions, which "may include *but are not limited to*" certain specified outcomes (commitment, community restoration, protective proceedings, etc.). ORS 161.370(2)(c) (emphasis added). A

Page 4 – JUDGES' *AMICUS* BRIEF PURSUANT TO APRIL 3, 2023, MINUTE ORDER

final example for present purposes occurs at the end of statutory restoration jurisdiction and upon notice of impending discharge: "the committing court shall determine, after a hearing if a hearing is requested, whether the defendant presently has fitness to proceed." ORS 161.371(6)(b). In short, a court's power of inquiry under the statutory scheme is broad.

Nor is a judge's ability to obtain the information needed to make the decisions with which the judge has been entrusted limited to holding hearings. Indeed, OSH already is statutorily required, "for the duration of the defendant's period of commitment, [to] submit a ***progress report*** to the committing court, concerning the defendant's fitness to proceed, ***at least once every 180 days*** . . . ." ORS 161.371(2)(a) (emphasis added). Thus, the kind of progress report the Court is considering endorsing would not be something new in principle to OSH, and nothing about the statutes as they presently exist purport to limit a court's power to request progress reports at different intervals. (Under the compressed commitment timelines under the September 1 Order, except for those defendants charged with Ballot Measure 11 offenses and their one-year OSH restoration limit, a court requested pre-discharge progress report in fact would be the first OSH progress report.)

In short, the idea that a judge both would want and should be entitled to solicit from OSH timely information about a defendant's restoration progress incident to deciding how to place that person into the community represents sound policy and is not contra-indicated either by anything in the statutes as the presently exist or as how they read with the September 1 Order as an overlay.

Page 5 – JUDGES' *AMICUS* BRIEF PURSUANT TO APRIL 3, 2023, MINUTE ORDER

The real question, it seems, is not whether requiring progress reports should be permitted—they should—but whether this Court should formalize them as an amendment to the September 1 Order with respect to appropriate substance and timing.  In that regard and with mediation proceedings ongoing, the *amici* judges propose that the Court simply issue an order (1) holding that state court orders requiring pre-discharge progress reports do not contravene the September 1 Order and OSH must comply with them, and (2) directing the parties and any interested *amici* to confer about how to obtain progress reports that provide judges with the information most helpful to them but in a manner that causes as little strain as possible on defendants and their ability to continue working toward compliance with *Mink's* seven–day requirement.  Upon such conferral, if need be (and, most likely, it will), the parties can return to the Court with either jointly proposed or alternative wording for the Court to consider adding to the September 1 Order.

B.  *The Court Should Allow Oregon's Appellate Courts the First Opportunity to Resolve any Issues Concerning the Compatibility of State Court Orders with the September 1 Order.*

The *amici* judges do not disagree that this Court has the authority to enforce *Mink* injunction as modified by the September 1 Order against the plaintiffs and defendants.  However, as set out in their brief with respect to plaintiffs' transport motion (Dkt. 365), they believe that requiring the parties to look first to Oregon's state courts for relief not only would promote federal-state comity considerations, avoiding serious abstention and other federalism questions that would need to be resolved by the federal appellate courts, but also will provide the most accessible forum for satisfying the due process considerations of the parties to the pending state courts cases (some of the lawyers for which may not even be admitted to practice before the bar

Page 6 – JUDGES' *AMICUS* BRIEF PURSUANT TO APRIL 3, 2023, MINUTE ORDER

of this Court).  For example, if a defendant should have but has not been discharged from OSH (or should not have been discharged, but has been), his or her counsel could seek to appeal under ORS Chapter 138 or, failing that, petition the Oregon Supreme Court for relief in mandamus and/or habeas corpus under Article VII (Amended), section 2, of the Oregon Constitution and ORS Chapter 34.

With respect to the parties to this litigation, they could seek to intervene under ORCP 33 for purposes of having the trial court consider their arguments or, failing success in that regard, then seek relief by way of appeal or petition for original jurisdiction relief in the Oregon Supreme Court.  Indeed, consistently with recommendations 9(a) and (b) at page 25 of Dr. Pinals' second report (Dkt. 262-2), the April 3, 2023, Report to Neutral Expert indicates at Exhibit 2, page 2, that, for purposes of seeking to obtain compliance with the changes to the aid and assist statutes made by Senate Bill 295 in 2021, the Oregon Department of Justice already and regularly has been seeking to intervene in state court proceedings:  "DOJ filed motions to intervene in 30 cases, 19 of which were granted, 6 denied and 2 motions were withdrawn following compliance.  https://www.oregon.gov/oha/OSH/reports/Mink-Bowman-0339-PLD-2023.04.03.pdf (last accessed 5/9/23); *see also id*. (noting "DRO moved to intervene in 1 case.").[1]

---

[1]   As the report also indicates, consistently with the success rate noted above, "[i]n one case, counsel has opposed intervention on the grounds that OSH lacks standing to intervene.  In another case, a court denied the motion for the same reason."  April 3, 2023, Report to Neutral Expert, Ex. 2 at 2.  Again, what the *amici* judges are asking is for the Court to allow Oregon's state courts to have the first opportunity to assess the validity of state court orders against this Court's September 1 Order.  That is not to say that OSH's motion to intervene necessarily should be granted in all cases, but only that if the motion is denied, OSH must seek relief in the Oregon appellate courts in the first instance.  If OSH is able to show that it has been unable to have its

Page 7 – JUDGES' *AMICUS* BRIEF PURSUANT TO APRIL 3, 2023, MINUTE ORDER

In addition to the foregoing considerations, the *amici* judges also agree with the position of *amicus* Marion County that, as an initial matter, the least restrictive means for the enforcement of the Court's injunction would be to obligate the parties to begin by seeking relief from the state courts as to the lawfulness of state court orders.

### III.     CONCLUSION

For the foregoing reasons, the *amici* judges respectfully request that the Court deem state court requests for pre-discharge progress reports from OSH both lawful and enforceable, and also direct the parties to these consolidated cases to seek relief in the state courts with respect to state court orders before asking this Court to intercede.

Respectfully submitted this 9th day of May 2023.

　　　　　　　　　　　　　　　　　　　　/s/ Keith M. Garza
　　　　　　　　　　　　　　　　　　Keith M. Garza, OSB No. 940773
　　　　　　　　　　　　　　　　　　Law Office of Keith M. Garza
　　　　　　　　　　　　　　　　　　P.O. Box 68106
　　　　　　　　　　　　　　　　　　Oak Grove, Oregon  97268
　　　　　　　　　　　　　　　　　　(503) 344-4766
　　　　　　　　　　　　　　　　　　keithgarza@comcast.net

　　　　　　　　　　　　　　　　　　Attorney for *Amici* Judges

---

position fairly evaluated in state court, only then should it be able to return to this Court for further proceedings consistent with federal-state comity concerns.

Page 8 – JUDGES' *AMICUS* BRIEF PURSUANT TO APRIL 3, 2023, MINUTE ORDER