JANE E. VETTO, OSB 914564
Marion County Legal Counsel
jvetto@co.marion.or.us
555 Court Street N.E.
P.O. Box 14500
Salem, OR 97309
Telephone No.: (503) 588-5220
Facsimile No.: (503) 373-4367
Attorney for Marion County

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON, | 3:02-cv-00339-MO (Lead Case) 3:21-cv-01637-MO (Member Case) |
| *Plaintiffs,* | **MARION COUNTY'S MOTION TO INTERVENE** |
| v. | *Oral Argument Requested* |
| DAVID BADEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital | |
| *Defendants.* | |
| JAROD BOWMAN and JOSHAWN DOUGLAS- SIMPSON, | 3:21-CV-01637-MO (Member Case) |
| *Plaintiffs,* | |
| v. | |
| DOLORES MATTEUCCI, Superintendent of the Oregon State Hospital, in her individual and official capacity, DAVID BADEN, Director of the Oregon Health Authority, in his official capacity, and PATRICK ALLEN in his individual capacity, | |
| *Defendants.* | |

Page 1 of **14 - MOTION TO INTERVENE**

## LR 7-1 CERTIFICATION

Pursuant to the requirements of LR 7-1, Marion County ("the County") hereby certifies that it conferred with all parties prior to filing this motion.  Plaintiffs and Defendants both stated that they object to the motion.

## MOTION

Marion County ("the County") hereby moves this Court for an order to intervene in the above-captioned matter pursuant to Federal Rule of Civil Procedure ("FRCP") 24(a) or, in the alternative, FRCP 24(b).  This motion is supported by the following memorandum of law and the County respectfully requests that oral argument be heard on the motion.

## MEMORANDUM OF LAW

### I.  Introduction

Since August of 2022, the County has participated in this matter solely in the capacity of *amicus* of the Court.  Although the County expected at the time of joining that this Court's September 1, 2022, order ("Mosman Order") would have a significant impact on many of its programs and services, it sought only to participate as an *amicus* because those impacts had not yet happened and were expected to be indirect—that is, the Mosman Order did not specifically apply to the County or prescribe anything that staff and employees needed to do.  However, over the following months, the County began to experience just how catastrophic even the indirect effects of something as significant as the Mosman Order can be.  In the short time since the order's issuance, the County's community restoration caseloads have tripled while placement options have only become scarcer.  Declaration of Ryan Matthews ("Matthews Dec.") ¶ 5, 7. Many adverse impacts have also come to pass regarding community restoration as a vehicle for delivery of care necessary for those that the County has been court ordered to treat.  Because

many of the individuals discharged under the Mosman Order to community restoration are not yet stabilized, community providers are often incapable of administering medications to them that are necessary to regain their fitness to proceed. *Id.* ¶ 9. As a result—still unstable—several individuals charged with violent offenses have simply chosen to leave restoration services and wander off into the community. *Id.* This situation represents nothing short of a public health and safety crisis—one that the State of Oregon has specific state statutory and constitutional obligations to address.

Additionally, in the time since joining as an *amicus*, the County's own rights have been drawn squarely into this case's orbit. On March 22, 2023, Plaintiffs filed a motion seeking an order requiring the Marion County Sheriff's Office to transport individuals back from the Oregon State Hospital ("OSH") following the expiration of their commitment periods. Pls.' Mot. for Order Requiring Marion County to Transport Patients (ECF No. 359). Although this Court denied that motion after oral argument on March 31, 2023, it requested that the parties and *amici* submit amended language filling the "gap" in the Mosman Order regarding transport. Minute Order, Apr. 3, 2023 (ECF No. 368). During argument, the Court stated that it was "willing to do the most pragmatic thing" by ordering the county sheriff to be the one to conduct transport but asked the parties and *amici* to first submit briefing regarding any legal barriers to doing so. Transcript of Oral Argument, March 31, 2023 ("Tr.") at 25.

Several weeks later, Plaintiffs filed a proposed amended order requiring county sheriffs to conduct transport but did not submit any briefing addressing the legal basis for why such an order is appropriate. Mot. for Order Amending Sept. Order (ECF No. 382). At the same time, the County—a non-party—filed its own briefing restating its objections to an order that would require county sheriffs to conduct transport but also providing language addressing the "gap" as

requested.  Proposed Am. Order (ECF No. 383); Mem. in Support of Proposed Am. Order (ECF

No. 384).  The Court has scheduled oral argument on Plaintiffs' and the County's filings for June

29, 2022.  Were this Court to adopt an amendment requiring county sheriffs to conduct transport,

it would represent a sea change for this case.  Rather than experiencing only the indirect effects

of this Court's decisions, the County's rights and responsibilities going forward could be directly

at issue because it would be bound by the order.

     As a result of the developments on both of these fronts, the County now seeks to

intervene in this case to obtain redress for several harms—being required to unlawfully hold

individuals in the jail, the State's issuance of an unfunded mandate and failure to otherwise

provide support for the increased workload that community restoration programs are

experiencing, and the inadequate treatment being provided to individuals on community

restoration who still require a hospital-level of care.  These issues and the fact that the County's

rights may now be directly implicated in this litigation mean that the County should be entitled to

the same rights and protections afforded to parties, including the ability to raise new issues, *see*

*California v. United States DOI*, 381 F. Supp. 3d 1153 (N.D. Cal. 2019) ("Amicus participation

goes beyond its proper role if the submission is used to present wholly new issues not raised by

the parties.") (internal quotation marks omitted), the ability to respond to motions as a matter of

right, *see* LR 7-1(e)(1) (permitting only parties 14 days to respond to motions), the right to

receive a copy of filed documents and to be conferred with prior to motions filings, *see* FRCP

5(a)(1) (providing that service is only required on "every party"); LR 7-1(a) (requiring conferral

with only parties prior to filing); and the right to seek appellate review. *See United States v. City*

*of L.A.*, 288 F.3d 391, 400 (9th Cir. 2002) (noting that *amicus* status "gives . . . no right of

appeal").  Thus, the County is respectfully requesting that this Court grant its motion to intervene

in this matter.

## II.  Legal Standard

FRCP 24(a) and (b) set out two paths to intervention: one mandatory and the other

permissive.  Under subsection (a), intervention must be allowed as a matter of right when a

prospective intervenor

> "claims an interest relating to the property or transaction that is the subject of the action,
> and is so situated that disposing of the action may as a practical matter impair or impede
> the movant's ability to protect its interest, unless existing parties adequately represent
> that interest."

FRCP 24(a)(2).  This standard requires proof of four elements:

> "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable'
> interest relating to the property or transaction which is the subject of the action; (3) the
> applicant must be so situated that the disposition of the action may as a practical matter
> impair or impede its ability to protect that interest; and (4) the applicant's interest must be
> inadequately represented by the parties to the action."

*Cooper v. Newsom*, 13 F.4th 857, 864 (9th Cir. 2021).  In evaluating whether these requirements

are met, courts construe Rule 24(a)(2) "broadly in favor of proposed intervenors." *Wilderness*

*Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (citations omitted).  This is

because "[a] liberal policy in favor of intervention serves both efficient resolution of issues and

broadened access to the courts." *City of L.A.*, 288 F.3d at 397-98.

By contrast, under subsection (b) of FRCP 24 a court has discretion to permit an

intervention when the prospective intervenor "has a claim or defense that shares with the main

action a common question of law or fact."  This standard requires proof of three elements:

> "(1) [the applicant] shares a common question of law or fact with the main action; (2)
> [the] motion is timely; and (3) the court has an independent basis for jurisdiction over the
> applicant's claims."

*Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).  If a prospective intervenor establishes

all three, the district court must then decide whether to exercise its discretion. *Id.*  That decision

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

is based on "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FRCP 24(b)(3).

### III. Analysis

The County's case for intervention is straightforward. Because the County is responsible for providing care and other resources to both individuals left sitting in jail while awaiting transport to OSH and to individuals discharged from the state hospital to indefinite community restoration without a determination on fitness to proceed, the County's rights are squarely implicated here. Moreover, because the various amendments proposed by the parties and *amici* all involve directly ordering county sheriffs to transport individuals to and from OSH, the County may very well soon be directly ordered to provide support for the Mosman order. Accordingly, intervention is warranted on either a mandatory or permissive basis.

A. <u>Mandatory Intervention</u>

    i.)     *The County's motion to intervene is timely.*

In considering whether a motion to intervene pursuant to FRCP 24 is timely, courts consider three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. Marsh*, 194 F.3d 1045, 1050 (9th Cir. 1999). In applying these factors, it should first be acknowledged that this case has an unusually long history. The lead case *Oregon Advocacy Center v. Mink*, No. 3:02-cv-00339-MO, was originally filed back in March of 2002 and resulted in the issuance of a permanent injunction ("*Mink* Injunction") two months later in May requiring transport of individuals to the state hospital within 7 days of being found unable to aid and assist. *See* Judgment, May 15, 2002 (ECF No. 51). In that judgment, the court retained jurisdiction over the case in order to enforce the injunction as needed. *Id.* at 1. Apart from appellate and other

ancillary proceedings, the case remained dormant until May of 2019 when Plaintiffs filed a motion seeking contempt sanctions against Defendants for failing to comply with the *Mink* Injunction. Mot. for Order to Show Cause for Finding of Contempt (ECF No. 85). That motion effectively revived the case and eventually resulted in the consultation of Dr. Debra Pinals about steps that OSH could take to come into compliance. Stipulated Mot. to Appoint Neutral Expert (ECF No. 238). In turn, Dr. Pinals's recommendations led to issuance of the current version of the Mosman Order that, among other provisions, imposes maximum limitations on inpatient restoration at OSH and prohibits most civil commitment patients from being admitted. Mosman Order (ECF No. 271).

At this point, this litigation began to impact the County's interests, as reduced capacity at the state hospital means more individuals on community restoration and greater strain on the program's limited resources. *See* Matthews Decl. ¶ 6-10. As a result, when the Mosman Order was originally proposed in August of 2022, the County promptly moved to participate in this matter as an *amicus* of the Court in order to share its perspective as a Community Mental Health Program. Mot. to Appear as *Amicus Curiae* (ECF No. 259). At the time of the County's entrance into the case, the parties' positions had shifted into what was effectively alignment, with them agreeing on most major aspects of the litigation. *See* Unopposed Mot. for Order to Implement Neutral Expert's Recommendations (ECF No. 252). As a result, in many ways, the County (as well as other *amici*) began serving the function of adverse party by arguing against the implementation of the Mosman Order. *See Amicus* Brief of Marion and Washington Counties (ECF No. 259-1). In that capacity, the County has participated in all major aspects of this case, including argument on amendment of the Mosman Order, *see* Minutes, Nov. 21, 2022 (ECF No. 322), and mediation, *see* Amended Scheduling Order (ECF No. 355). The transition

Page **7** of **14 - MOTION TO INTERVENE**

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

from *amicus* to de facto party became complete in March of 2023 when Plaintiffs filed a motion seeking an order requiring the County to provide transport for individuals committed at OSH back to the County jail following discharge. Pls.' Mot. for Order Requiring Marion County to Transport Patients (ECF No. 359). Although the Court denied the motion, it indicated that it was inclined to amend the Mosman order to fill the "gap" regarding transport, Tr. at 25, and at this point all proposals submitted include language ordering county sheriffs to be the entity that transports individuals back from OSH following discharge. *See* Mot. for Order Amending September Order (ECF No. 382) (filed by Plaintiff Metropolitan Public Defenders); Proposed Order (ECF No. 383) (filed by the County)

This recounting of the case's history serves three crucial functions. First, it highlights the fact that, although the County's motion to intervene comes at what would be considered a "late" stage in a conventional case, this case is far from conventional. Second, it shows that, although the County has not been a direct party to this case, once it began to suspect that its interests would be impacted by the Mosman Order, the County promptly began seeking to participate in the case as an *amicus* and has actively shared its position with the parties both in briefing and throughout court ordered mediation. Finally, the history reflects that, in spite of being labeled as only an *amicus*, the County has essentially served as a party to this litigation since August of 2022, including in the sense that it may be directly ordered to engage in a particular course of conduct as part of the soon-to-be amended Mosman Order.

Against that backdrop, it is clear that the County's motion is timely. The contempt proceedings initiated in 2019 in effect constituted the beginning of a brand-new case about an entirely separate issue, the resolution of which is still ongoing. Furthermore, the County's entrance into the case at this phase is not likely to result in any prejudice to the parties. The

County has freely shared its position from the earliest possible opportunity after its interests were impacted, meaning that the parties have had notice of its opposition to the current order. Moreover, because the County has been serving as a de facto adverse party for approximately the past nine months, its entrance into the litigation at this point should not be expected to raise any new or unforeseeable issues for the existing parties. Rather, the County's arguments are what has primarily been at issue in this case for some time.

Lastly, any delay in the filing of the County's motion to intervene is not a basis for a finding of untimeliness. "Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996). Here, the County sought to participate in this case immediately upon learning that the parties were in agreement about the implementation of the Mosman Order and would not be adequately protecting its interests. Although its participation was initially as an *amicus* in label, the County was effectively serving the role of adverse party, meaning that there was functionally no delay in the County's efforts to adequately protect its interests. And even if the time from when the County appeared as an *amicus* to the filing of this Motion to Intervene were to be counted as some form of delay, that delay is justified by valid reasons. Because the County as *amicus* served as a functional adverse party and was therefore able to fully defend its interests, there was simply no need to seek formal intervention. Now that the Mosman Order may be amended to directly bind the County, however, *amicus* status does not provide sufficient voice to protect its interests. Rather, the protections provided to parties—including the rights to make and respond to motions, receive copies of filings, and seek appellate review if appropriate—are necessary at the point that the parties in this matter are filing motions seeking orders directly against the County. Accordingly,

this Motion to Intervene is timely and the County has satisfied the first element for Mandatory Intervention.

        *ii.)     The County claims a "significantly protectable" interest that is impacted.*

A prospective intervenor need not have "a specific legal or equitable interest" to satisfy the mandatory intervention requirement of a "significantly protectable" interest. *Cty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). Rather, "[i]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Sierra Club v. United States EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993). Some formulations of the standard set the bar even lower: A prospective intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).

Here, the County has suffered a significant impairment of its interests as a result of this litigation. As previously noted, when Defendants fail to provide timely transport to individuals in the Jail, the County is the one required to pick up the slack and provide resources to support that individual, as well as bear the associated risks of any liability or other harms inherent in their confinement. Additionally, the shortened timeframes for inpatient restoration imposed by the Mosman Order have caused a spike in the number of individuals on community restoration when commitment to OSH is no longer an option. Matthews Decl. ¶ 5. This sudden increase in demand for restoration services has stretched Marion County's limited resources to their breaking point. *Id.* ¶ 6. The County is simply unable to provide adequate staff to deliver required services and lacks the resources necessary to ensure that all who need it are placed appropriately and given necessary medications. *Id.* ¶ 8-9. As a result, individuals who are not

yet stabilized are simply leaving services. *Id.* ¶ 10. Because many of these individuals have been charged with violent offenses, this amounts to an extraordinary public safety issue—ten such individuals have already disappeared into the community in Marion County alone. *Id.*

Lastly, the proposed amendments to the Mosman Order may *explicitly* include language ordering county sheriffs to transport individuals back from OSH upon discharge. To the extent the Mosman Order is amended to issue direct orders to the County's staff to engage in a particular course of conduct—particularly one that violates existing state court orders and risks the County having to litigate state contempt proceedings—the County's interests are implicated in this litigation. Accordingly, the County has satisfied the second and third elements for mandatory intervention.

> iii.)    *The County's interest is inadequately represented by the current parties.*

The interests of the current parties to this case are in no way aligned with those of the County. As discussed in previous sections, the current parties jointly agreed to the implementation of the Mosman Order, despite the fact that it shifts a significant amount of the burden onto local governments to provide restoration services. For that reason, the County and other *amici* have acted in effect as the adverse party since joining this case nine months ago. Accordingly, the County has satisfied the fourth element for mandatory intervention.

B. Permissive Intervention

> i)    *The County shares common questions of law or fact with the main action.*

The factual underpinnings of the County's proposed complaint have significant overlap with the issues in play in this litigation already. Count 1 of the County's First Claim for Relief directly mirrors Plaintiffs' underlying claim that Defendants' practice of failing to promptly transport individuals found unable to aid and assist is unconstitutional, just viewed through the

lens of the County's interests in maintaining resources and avoiding liability. Similarly, the County's remaining claims are focused on the stresses that OSH's practice of releasing individuals who still require a hospital-level of care pursuant to the Mosman Order places on the County's community restoration programs and on the individuals who participate in them. As a result, principles of judicial economy favor resolving the County's claims along with those already part of this action and the first element of the test for permissive intervention is satisfied.

   *ii)*  *The County's motion to intervene is timely.*

   The County's motion to intervene on a permissive basis is timely for the same reasons as described above with respect to mandatory intervention. Accordingly, the second element is also satisfied.

   *iii)*  *The Court has jurisdiction over the County's claims.*

   The County's complaint contains two claims: one under 42 U.S.C. § 1983 and another under 28 U.S.C. § 2201. In the case of the § 1983 claim, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. As for the remaining claims under § 2201, in any civil action over which a district court has original jurisdiction over at least one claim, that court also has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. A claim is part of the same "case or controversy" as another if they both "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Arroyo v. Rosas*, 19 F.4th 1202 (9th Cir. 2021). As noted with respect to the first element, the County's claims all primarily concern OSH's practice of releasing individuals who still require a hospital-level of care—the primary issue in this litigation already. Accordingly, this Court has supplemental jurisdiction over those claims under § 1367

and the third element is satisfied.

> iv)    *Intervention will not significantly delay or prejudice adjudication of the parties' rights.*

The County's intervention would not delay the case or prejudice other parties for the same reasons that it is timely. Functionally, the County has served as an adverse party in this matter since August of 2022. In that capacity, the parties have been aware of the County's positions for months and this Court has already taken the time to consider its arguments on various matters. Allowing the County to become a party to the case at this point is thus unlikely to result in surprise to any party or any additional delay beyond what would have already happened from the County participating in the capacity of *amicus*. Accordingly, this Court should exercise its discretion and permit intervention.

## IV.  Conclusion

For the reasons stated above, the County is entitled to intervene on a mandatory basis and, in the alternative, should be permitted to intervene on a permissive basis. Accordingly, the County respectfully requests that its motion to intervene be granted.

Dated this 8th day of June, 2023

Respectfully submitted,

JANE E. VETTO
MARION COUNTY LEGAL COUNSEL

Jane E. Vetto, OSB #914564
Marion County Legal Counsel
Attorney for Defendants Marion County