JANE E. VETTO, OSB 914564
Marion County Legal Counsel
jvetto@co.marion.or.us
555 Court Street N.E.
P.O. Box 14500
Salem, OR 97309
Telephone No.: (503) 588-5220
Facsimile No.: (503) 373-4367
Attorney for Marion County

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON, *Plaintiffs*, v. DAVID BADEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital *Defendants*. | 3:02-cv-00339-MO (Lead Case) 3:21-cv-01637-MO (Member Case) **MARION COUNTY'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH THIS COURT'S ORDERS AND DETERMINE SUPREMACY CLAUSE ISSUE** *Oral Argument Requested* |
| JAROD BOWMAN and JOSHAWN DOUGLAS-SIMPSON, *Plaintiffs*, v. DOLORES MATTEUCCI, Superintendent of the Oregon State Hospital, in her individual and official capacity, DAVID BADEN, Director of the Oregon Health Authority, in his official capacity, and PATRICK ALLEN in his individual capacity, *Defendants*. | 3:21-CV-01637-MO (Member Case) |

Page 1 of 14 – MARION COUNTY'S RESPONSE TO MOTION TO COMPEL COMPLIANCE AND DETERMINE SUPREMACY CLAUSE ISSUE

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

## INTRODUCTION

For the second time, Plaintiffs ask this court to enter an order that—among other breathtakingly broad provisions—compels the Marion County Sheriff's Office to conduct transport of individuals back from the Oregon State Hospital ("OSH"). Plaintiffs claim that their proposed order is warranted because "the Amici District Attorneys initially agreed to mediate these disputed cases, but upon discussion amici stated mediation would be fruitless." They further accuse the Marion County Sheriff of "refusing" to transport individuals[1] from OSH by following local circuit court orders and ask this Court to compel a non-party to disregard orders of a committing jurisdiction without satisfaction of the conditions in FRCP 65 or a demonstration that their proposed order is the least intrusive alternative. Motion to Compel Compliance with this Court's Orders and Determine Supremacy Clause Issue ("Plaintiffs' Motion"), 3 (ECF No. 425). Plaintiff's arguments are both factually and legally incorrect. As explained in further detail below, Plaintiffs specifically ignored the Marion County District Attorney's communication through counsel that she was willing to participate in the mediation process and filed this motion without making a meaningful effort to confer with Marion County prior to doing so. Moreover, for the same reasons previously briefed and argued, Marion County cannot be ordered to conduct transport as a non-party that is not acting in concert with Defendants and when less intrusive alternatives are available.

## FACTUAL BACKGROUND

On September 1, 2022, this Court entered an order ("September 1st order") shortening

---

[1] Marion County notes that throughout their motion, Plaintiffs refer to individuals at OSH as "detainees." Although OSH's DOJ attorneys apparently are not concerned by this characterization of their client as a detention facility, Marion County believes that OSH is engaging in treatment, not detention. Therefore, Marion County will continue to refer to those placed at OSH for treatment as "individuals."

Page **2** of **14** – **MARION COUNTY'S RESPONSE TO MOTION TO COMPEL COMPLIANCE AND DETERMINE SUPREMACY CLAUSE ISSUE**

the length of time that individuals sent to OSH under ORS 161.370 could receive restoration services. Although the sheriff's office took note of these shortened timeframes, it did not directly change any internal processes because it provides transport in accordance with court orders. Declaration of Commander Tad Larson ("Larson Decl.") ¶ 3. The sheriff's office continued to provide transport to and from OSH when required by the court, resulting in a total of 222 separate transports between September 22, 2022, and the present day. *Id.* ¶ 6. In the months following implementation of the September 1st order, several state judges began issuing orders in several cases prohibiting the Marion County Sheriff's Office from transporting individuals back from OSH until further authorized by the court. Because those orders were (and to this day still are) the only orders that the sheriff's office has received regarding transport in those cases, the sheriff's office obeyed them in accordance with the requirements of state law. *Id.* ¶ 5; *see* ORS 206.010 ("[I]t is the sheriff's duty to . . . [e]xecute the . . . orders of the courts.").

On March 22, 2023, Plaintiffs filed a Motion seeking an order compelling the Marion County Sheriff to transport individuals back from the Oregon State Hospital who were being held past their maximum restoration periods pursuant to state court orders prohibiting the sheriff from conducting transport. Motion for Order Requiring Marion County Sheriff to Transport Patients (ECF No. 359). Plaintiffs claimed that the County was directly bound by this Court's September 1st order and that the sheriff was therefore required under the Supremacy Clause to conduct transport when necessary to carry it out. *Id.* at 4-5. In response, Marion County observed that the September 1st order, by its terms, did not require the county sheriff to conduct any sort of transport. Marion County's Response in Opposition to Motion for Order to Transport, 9 (ECF No. 366). Moreover, as a non-party to this case, the County was only bound

by the order under Federal Rule of Civil Procedure ("FRCP") 65 to the extent that it was acting in "active concert or participation" with Defendants, which it was not doing by simply obeying a state court order forbidding transport. *Id.* at 9-11. Lastly, the County pointed out that this Court lacked authority to order it to conduct transport when the Court had not made a finding that overriding a state circuit court order was the least intrusive means of effectuating compliance with its September 1st order. *Id.* at 11-12.

Ultimately, this Court concluded that there was indeed a "gap" in the September 1st order in that it did not specifically require any entity to conduct transport back from OSH when a person's restoration period expires. Transcript of March 31, 2023 Hearing, 24 (ECF No. 372). To fill it, the Court requested that the parties and amici submit proposed amended language addressing transport and briefing regarding the availability of less intrusive alternatives. *Id.* at 24. Ultimately, this request resulted in an extensive mediation process between the parties and amici that produced the order at the heart of this current dispute, which was entered on July 3, 2023 ("July 3rd order"). Regarding conflicts between state and federal court orders, the July 3rd order provided as follows:

> "If OSH identifies a conflict between the September order and the committing jurisdiction's order during the pendency of the September order, the parties to the criminal case and an OSH representative (and its counsel) are encouraged to participate in an expedited mediation (by video or phone, if necessary) with U.S. Magistrate Judge Stacie Beckerman, to resolve the conflict. OSH and the parties to the criminal case should meet and confer prior to the mediation in an effort to resolve any conflict between the court orders and clarify the issues subject to mediation. If any party to the criminal case refuses to participate in mediation or if mediation is unsuccessful, any Mink/Bowman party may petition this Court for an expedited ruling on whether the Supremacy Clause establishes that this order takes precedence over the conflicting state court order, and any responses from the parties or amici shall be filed within five business days."

Unopposed Motion for Further Remedial Order (ECF No. 411).

On July 20th, the County received notice from counsel for Defendants Carla Scott that

they intended to initiate the Supremacy Clause mediation process with respect to seven individuals—who they refused to identify—that were being held past their maximum restoration period pursuant to state no-transport orders. Declaration of Jane Vetto ("Vetto Decl.") ¶ 5. On July 28th, the County received an email from Plaintiff's counsel Emily Cooper asking the County to confirm its "refusal to engage in mediation." *Id.* ¶ 6, Ex. 1. The County responded that the amended order provided only for mediation between the parties to the criminal case, but that it would be happy to participate if it would be helpful. *Id.* Two days later on August 2, the County received an email from Plaintiff's counsel Thomas Stenson indicating that he "had not gotten assurances that the District Attorneys will engage in the mediation," that he intended to file a motion for an order to compel transport, and that he "believed he should ask" to confer prior to filing. *Id.* ¶ 7, Ex. 2. The County responded that the Marion County District Attorney was willing to participate in mediation and copied counsel for the amici district attorneys to confirm on behalf of his client. *Id.* Mr. Stenson replied that he took it from the response that the County "didn't need to feel the need to confer regarding the motion." *Id.* ¶ 7, Ex. 3. The County responded that it would be happy to further discuss the motion, but Mr. Stenson never replied. *Id.*

The next day on August 3rd, counsel for the amici district attorneys responded to the thread and confirmed that the Marion County District Attorney was willing to participate in mediation. *Id.* ¶ 5, Ex. 5; Declaration of Paige E. Clarkson ("Clarkson Decl."), 3. Indeed, according to the district attorney, she had never even spoken with Mr. Stenson, let alone declined to participate in mediation or suggested that it would be "futile" or "fruitless." Clarkson Decl., 3. Nevertheless, Mr. Stenson replied on August 8th that "the discussed mediation did not proceed in any of the relevant cases" and that "there is no prospect for meaningful mediation of the disputed

Page **5** of **14** – **MARION COUNTY'S RESPONSE TO MOTION TO COMPEL COMPLIANCE AND DETERMINE SUPREMACY CLAUSE ISSUE**
Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

criminal cases." Vetto Decl. ¶ 8, Ex. 4.  The next day, Plaintiffs filed their motion.

## ARGUMENT

### I.  Plaintiffs failed to confer prior to filing their motion as required by LR 7-1.

As a preliminary matter, Marion County objects to Plaintiffs' LR 7-1 certification that they attempted to confer prior to filing their motion.  As reflected in Exhibits 1-5 to the attached Declaration of Jane Vetto, Marion County both responded to Plaintiffs' request to confer and indicated that it was willing to further discuss Plaintiffs' motion.  Vetto Decl., Ex. 1-5.  However, Plaintiffs did not respond to the County's request or otherwise make meaningful efforts to confer prior to filing.  LR 7-1 requires parties to make a meaningful effort at conferral prior to filing a motion.  *See O'Callaghan v. City of Portland*, No. 3:21-cv-00812-AR, 2022 U.S. Dist. LEXIS 238216 at 10* (D. Or. Nov. 2, 2022) ("Failing to confer . . . before filing a motion is a basis for denying the motion.").  Accordingly, Plaintiff's motion should be denied.

### II.  Plaintiffs' motion is premature.

Plaintiffs' motion for an order deciding the Supremacy Clause dispute between the parties is also premature insofar as the parties to the underlying criminal cases have yet to either participate in mediation or refuse to do so.  Under this Court's July 3rd order that the parties and non-judge amici all stipulated to, a party or amicus may only seek to have the Supremacy Clause issue determined "[i]f any party to the criminal case refuses to participate in mediation or if mediation is unsuccessful."  Second Am. Order to Implement Neutral Expert's Recommendations (ECF No. 416).  In their motion, Plaintiffs represent that the Marion County District Attorney's Office indicated a willingness to participate in mediation but also noted a concern that, if the relief Plaintiffs ultimately sought was vacation of the state court order, the mediation may prove fruitless because only the state court has the power to make that decision.

Plaintiffs' Motion at 5. Apparently taking that to mean that there would be no purpose to conducting any mediation at all, Plaintiffs immediately filed their motion.

In their haste to force a decision on this matter through, Plaintiffs have completely disregarded the purpose of the mediation procedures carefully crafted by the parties and non-judge amici—including Plaintiffs themselves—to obtain negotiated resolutions to issues rather than drag this Court into every dispute about conflicting state court orders. Although it is true that the Marion County District Attorney does not have the power to overrule a state court order prohibiting transport, it is wrong of Plaintiffs to suggest that any mediation would therefore automatically be completely fruitless. At the time that the district attorney indicated that she would be willing to participate in mediation, there were seven individuals from Marion County at OSH pursuant to a no-transport order. Clarkson Decl., 4. Today, thanks to the combined efforts of the district attorney's office petitioning for extensions and the Marion County behavioral health team locating community placements, the number of individuals referenced by Ms. Scott as being past the shortened restoration timelines is down to just two. Wells Decl. ¶ 5-8. Additionally, had OSH and the parties to the criminal case been able to participate in the mediation, OSH would have learned that both of those two individuals are likely to be discharging shortly without the need for a court order. *Id.* ¶ 8.

In the first individual's case, he has already been conditionally accepted to a placement at a residential treatment facility and is likely to discharge to the facility next week. *Id.* In the second individual's case, because of the sexual nature of her charges and ongoing behavioral issues, her referrals to multiple community placements have been denied. *Id.* As a result, she is likely to be ordered returned to the Marion County Jail during her next hearing. *Id.* Given how short the timeframes for both of these individuals' expected discharges are, there was very likely

ground for OSH and the criminal case parties to work out some form of agreement to avoid this motion. Because Plaintiffs are attempting to bypass that carefully crafted process, this Court should deny their motion in favor of allowing the issues to be resolved in accordance with the process that the parties and non-judge amici all agreed on.

### III. The County's continued obedience to state no transport orders does not contravene—much less "actively thwart"—any order of this Court.

Throughout their motion, Plaintiffs repeatedly characterize the County's continued obedience to state no-transport orders as some sort of concerted effort to "obstruct" or "thwart" this Court's September 1st order. *See, e.g.,* Plaintiff's Motion at 10. They continue to represent that the statutes governing Oregon's aid and assist process contain some form of mandate that the sheriff "must provide routine transportation between the Jail and the hospital" that the County is disregarding. *Id.* at 8. That argument is disingenuous and continues to misstate the law regarding the county sheriff's obligation to conduct transport in aid and assist cases. The County is neither specifically required by the July 3rd order to conduct any sort of transportation for individuals back from OSH nor properly subject to this Court's orders in the first place under FRCP 65.

### A. This Court's July 3rd order does not require the County to conduct transport.

In their prior contempt motion against the County seeking an order compelling the sheriff to conduct transport, Plaintiffs previously made the argument that county sheriff was bound to conduct transport to and from the state hospital by virtue of the "implicit structure of the entire order" and the generalized command in ORS 206.010 that the county sheriff is to "[e]xecute the . . . orders of the courts." Transcript of March 31, 2023 Hearing at 10 (ECF No. 372). Ultimately, this Court rejected their argument, concluding that the order itself simply did not address whose

responsibility it was to conduct transport back from the state hospital following the end of a person's restoration period. *Id.* at 24.

For reasons unknown, Plaintiffs now ask this Court to revisit that determination despite the fact that, in the time since this Court's ruling, no further amendments have been made to the order to address or otherwise clarify whose responsibility it is to conduct transportation. In the most recent July 3rd amendments, rather than address transportation directly, the parties and non-judge amici agreed to approach the problem from a different angle. Under the amended order, after attempts to mediate any dispute have failed, this Court is to make a determination directly regarding whether the September 1st order's durational limitations override state court orders prohibiting a person's release from OSH under the Supremacy Clause. Accordingly, there is no basis for concluding that the County is "defying" or "thwarting" any order of this Court despite Plaintiffs' contentions otherwise.

B. The County is not bound by this Court's order under FRCP 65.

In addition to the fact that the July 3rd order does not directly obligate the sheriff to conduct transport, the County is not bound by this Court's order under FRCP 65. As previously addressed during the briefing on Plaintiffs' previous contempt motion, in order for a non-party to a case to be subject to the court's order, FRCP 65(d)(2) requires Plaintiffs to demonstrate either that (1) the County is "legally identified" with the enjoined party, or (2) the County is in "active concert or participation" with a party and has actual notice of the injunction. *NLRB v. Sequoia Dist. Council of Carpenters*, 568 F.2d 628, 634 (9th Cir. 1977). Plaintiffs focus solely on the latter half of that standard, asserting that the County works in "active concert or participation" with Defendants in the process of discharging individuals from OSH. Plaintiffs' Motion at 8. Specifically, Plaintiffs again advance the argument that Oregon law—this time ORS 161.370 and

161.371—imposes a duty on the county sheriff to conduct transport to and from the state hospital. *Id.* Because that failure to conduct that transport "tends to further" Defendants' underlying constitutional violations, Plaintiffs argue that it subjects the sheriff's office to the provisions of this Court's order. *Id.* This argument is fundamentally flawed.

Plaintiffs again significantly misrepresent the requirements of Oregon law regarding transportation in aid and assist cases. Neither ORS 161.370 nor ORS 161.371 addresses the issue of transportation to and from OSH, let alone assign the task to the county sheriff. Indeed, no statute does. The only legal authority in the state which provides for the transport of individuals to and from OSH in aid and assist cases are circuit court orders. Unless and until those orders are rescinded or declared void, the sheriff is bound to obey them. *See* ORS 206.010 ("[I]t is the sheriff's duty to . . . [e]xecute the . . . orders of the courts.").

Without any specific legal command for the sheriff to transport individuals to and from the state hospital, Plaintiffs struggle to make out a case that the sheriff's failure to conduct transport represents "active concert or participation" in Defendants constitutional violations. As Plaintiffs appear to concede, there is a significant distinction between a non-party that has "actively thwarted" a court's order and one that has merely "passively failed to comply with the Court's injunction." Plaintiffs' Motion at 10. It is a well-established legal principle that a court "cannot lawfully enjoin the world at large, no matter how broadly it words its decree." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930) (Hand, J.). In cases where a non-party is alleged to have violated a court order on the basis of "mere inactivity," Courts have held that the non-party's conduct falls short of the "active concert and participation" required by FRCP 65(d)(2). *See, e.g., Blockowicz v. Williams*, 630 F.3d 563, 568 (7th Cir. 2010) (website's refusal to remove defamatory content posted by enjoined defendants did not constitute passive

contempt).

Although Plaintiffs cite several cases subjecting non-parties to contempt sanctions in cases of jail overcrowding or segregation, none involved truly passive conduct like that at issue here. For example, in *United States v. Hall*, 472 F.2d 261, 264 (5th Cir. 1972), although the Fifth Circuit concluded that an order prohibiting individuals from coming to a school campus to prevent desegregation was enforceable against a non-party, there the individual had engaged in an affirmative act of going to the campus where he knew he was forbidden. Similarly, in *N.C. State Bd. of Educ. v. Swann*, 402 U.S. 43, 91 S. Ct. 1284, 28 L. Ed. 2d 586 (1971), when the court entered an injunction prohibiting a variety of non-party entities from enforcing new anti-bussing laws, the act enjoined was the active process of enforcement of the laws. Without engaging in a similar sort of active conduct, here the county sheriff cannot be said to be in "active concert or participation" with Defendants in violating the order, and thus is not bound by its restrictions. Accordingly, Plaintiffs' motion should be denied.

**IV.     Plaintiffs' requested relief is not the least intrusive alternative available.**

Finally, even when a non-party is determined to be properly subject to a court order under FRCP 65(d)(2), a federal court is still subject to limitations on the type of relief it can order to address a constitutional violation. Specifically, when intervening in state affairs, "[t]he federal courts in devising a remedy must take into account the interests of state and local authorities in managing their own affairs, consistent with the Constitution." *Spallone v. United States*, 493 U.S. 265, 276, 110 S. Ct. 625, 632 (1990). Thus, when a federal court exercises its "broad equitable remedial powers" in a way that impinges on state law, it must "exercise the least possible power adequate to the end proposed." *See Stone v. City & Cty. of S.F.*, 968 F.2d 850, 861 (9th Cir.

1992).  Functionally, this means that a district court must limit any remedy to the least intrusive available. *Hoptowit v. Ray*, 682 F.2d 1237, 1247 (9th Cir.1982).

Here, the parties have failed to demonstrate that several other alternative and less intrusive means of resolving any conflict between state and federal orders would not alleviate the problem. One significantly less intrusive option of potentially resolving this issue would be to allow the mediation process that the parties and non-judge amici all agreed on to occur, rather than simply assuming that any such efforts would fail. As previously recounted, in just the time since mediation was discussed in early August, five of the seven individuals at issue in this motion have already been placed in community restoration, extended under agreed upon processes. Wells Decl. ¶ 6-8. Moreover, the remaining two individuals are planned to discharge shortly, either to a community placement or because they are being returned to the county jail. *Id.* ¶ 8. In light of those short timeframes for resolution, allowing the parties to mediate and wait out any delay is less intrusive than a Court order potentially overriding a state court's determination.

A second option less intrusive than this Court directly overruling a state court order would be for OSH to intervene directly in any criminal cases where an individual is past their discharge date and move to have the order rescinded, appealing to the Oregon appellate courts if necessary. During the hearing on Plaintiffs' previous contempt motion, Defendants indicated that, because they were not parties to the criminal cases in which the orders were entered, they "[didn't] believe that there is a vehicle to appeal those orders by either of the parties." Transcript of March 31, 2023 Hearing at 26-27 (ECF No. 372). However, Defendants have a significant history of seeking to intervene in criminal cases when necessary to address issues arising during the aid and assist process. As indicated in Defendants' most recent report to Dr. Debra Pinals, as

of June 28, 2023, the Oregon DOJ has already evaluated some 240 criminal cases for intervention to ensure that the new requirements for aid and assist proceedings under Oregon SB 295 were being followed. July 3, 2023 Report to Neutral Expert, Attachment #1 at 6, https://www.oregon.gov/oha/OSH/reports/Mink-Bowman-0339-PLD-2023.07.03.pdf (last visited August 16, 2023). <u>Of those cases, DOJ has prepared pleadings in 78 cases and actually moved to intervene in 40, with over half of such motions having been successful.</u> *Id.*

That data clearly contradicts the position taken by Defendants in this case and reflects that they not only believe they possess authority to intervene in aid and assist proceedings, but also that—the majority of the time—state courts have agreed. In view of this information, that Defendants have not so much as attempted the same sort of intervention with respect to the no-transport orders at issue here is perplexing. As previously noted, the United States Supreme Court has been careful to emphasize that principles of federalism require district courts to allows state and local entities to administer and redress harms via their own laws where possible. *Rizzo v. Goode*, 423 U.S. 362, 378, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976) ("[F]ederal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" (quoting *Stefanelli v. Minard*, 342 U.S. 117, 120, 72 S. Ct. 118, 96 L. Ed. 2d 138 (1951)). Here, those principles require that Defendants first attempt resolution of this issue via intervention in the state court system prior to this Court's intervention and overruling of state law. Accordingly, because there are less intrusive means of providing the relief that Plaintiffs seek, their motion should be denied.

## CONCLUSION

As explained above, Plaintiffs failed to make a meaningful effort to confer, filed this motion prematurely seeking relief under this Court's July 3rd order, and ask for relief against the

County that is both substantively inappropriate and beyond this Court's power to provide. Accordingly, the County respectfully requests that their motion be denied.

Dated this 17th day of August, 2023

Respectfully submitted,

JANE E. VETTO
MARION COUNTY LEGAL COUNSEL

_____
Jane E. Vetto, OSB #914564
Marion County Legal Counsel
Attorney for Defendants Marion County