Erin K. Olson, OSB 934776
Law Office of Erin Olson, P.C.
1631 N.E. Broadway Street #816
Portland, OR  97232-1425
Telephone:  (503) 546-3150
Email:  eolson@erinolsonlaw.com

Rosemary W. Brewer, OSB 110093
Oregon Crime Victims Law Center
7412 SW Beaverton Hillsdale Hwy Ste 209
Portland OR  97225
Telephone:  (503) 208-8160
Email:  rosemary@ocvlc.org
*Attorneys for Proposed Intervenors*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDERS INCORPORATED, and A.J. MADISON, <br><br> Plaintiffs, <br><br> vs. <br><br> PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital, <br><br> Defendants; <br><br> JAROD BOWMAN and JOSHAWN DOUGLAS SIMPSON, <br><br> Plaintiffs, | Case No.:  3:02-cv-00339-MO (Lead) <br> Case No.:  3:21-cv-01637-MO (Member) <br><br> **MOTION TO INTERVENE** <br><br> **(By Crime Victims)** <br><br> ***Oral Argument Requested*** |

**1 – MOTION TO INTERVENE (CRIME VICTIMS)**

v.

PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital,

                  Defendants;

    and

LAURIE MILLER, ASHLEY ROCHETTO, and ANDREW LIMBECK,

        [Proposed] Intervenors.

## L.R. 7.1 CERTIFICATION

Pursuant to Local Rule 7-1, counsel for the above-captioned Proposed Intervenors, Erin K. Olson, conferred in good faith about this motion on February 20, 2024, with counsel for Plaintiff Disability Rights Oregon, Tom Stenson, who opposes the motion; counsel for Plaintiff Metropolitan Public Defenders Incorporated, Jesse A. Merrithew, who opposes the motion; and counsel for Defendants Patrick Allen and Dolores Matteucci, Carla Scott, who takes no position on the motion.

## <u>MOTION</u>

On February 9, 2024, the Marion County Circuit Court issued an order continuing the pretrial detention of Charly Velasquez-Sanchez while efforts to restore his ability to aid and assist in a pending felony assault case were continued on an outpatient basis at the Oregon State Hospital.  The Oregon State Hospital

**2 – MOTION TO INTERVENE (CRIME VICTIMS)**

("OSH"), one of the defendants herein, filed a "Petition for Expedited Ruling on Supremacy Clause Issue" [ECF 460] that challenges the Marion County order.

Laurie Miller, Ashley Rochetto, and Andrew Limbeck are the victims of the felony assaults Mr. Velasquez-Sanchez, and they move to intervene as of right in these proceedings pursuant to FRCP 24(a)(2) because they have an interest in the injunctive relief sought in OSH's "Petition For Expedited Ruling on Supremacy Clause Issue" [ECF 460] presently before the court, and should the court grant the relief sought in the petition, *i.e.* voiding the Marion County Circuit Court's order on Supremacy Clause grounds, the victims' rights under the Oregon Constitution to reasonable protection from the criminal defendant who assaulted them will be voided as well.

In the alternative, the victims seek permissive intervention pursuant to FRCP 24(b)(1)(B), because they have a claim that the legitimate interests of the state includes the rights of crime victims under the Oregon Constitution, and the question of what legitimate interests of the state must be balanced against Mr. Velasquez-Sanchez's constitutional liberty interests in freedom from incarceration and in restorative treatment is a shared question of fact in the pending lawsuit.

This motion is supported by the accompanying declarations of Ashley Rochetto, Andrew Limbeck, Laurie Miller, and Erin K. Olson, together with the pleadings and papers on file herein and the accompanying points and authorities. The proposed Complaint in Intervention is attached hereto as Exhibit 1.

**3 – MOTION TO INTERVENE (CRIME VICTIMS)**

## INTRODUCTION

In 2006, the Ninth Circuit Court of Appeals announced the end of the federal criminal justice system's assumption "that crime victims should behave like good Victorian children – seen but not heard." *Kenna v. United States Dist. Court*, 435 F.3d 1011 (2006). Oregon voters took heed in 2008, voting overwhelmingly to require a remedy for violations of the constitutional rights that had been embedded in the Oregon Constitution in 1999.[1] Among those state constitutional rights is "the right to be reasonably protected from the criminal defendant * * * throughout the criminal justice process." Or Const. Art I, § 43(1)(a). Another is:

> "The right to have decisions by the court regarding the pretrial release of a criminal defendant based upon the principle of reasonable protection of the victim and the public, as well as the likelihood that the criminal defendant will appear for trial. Murder, aggravated murder and treason shall not be bailable when the proof is evident or the presumption strong that the person is guilty. Other violent felonies shall not be bailable when a court has determined there is probable cause to believe the criminal defendant committed the crime, and the court finds, by clear and convincing evidence, that there is danger of physical injury or sexual victimization to the victim or members of the public by the criminal defendant while on release."

Or Const. Art I, 43(1)(b). "Violent felony" is defined in the Oregon Constitution to include "a felony in which there was actual or threatened serious physical injury to a victim." Or Const. Art I, § 43(3)(a).

---

[1]  Ballot Measure 51 passed by 75% of the votes in 2008. Its text and explanatory statement can be found in the 2008 Voter's Pamphlet here: https://digital.osl.state.or.us/islandora/object/osl%3A955132/datastream/OBJ/view (last accessed February 16, 2024).

**4 – MOTION TO INTERVENE (CRIME VICTIMS)**

The state court order of February 9, 2024, that is the subject of OSH's current petition includes findings made by a Marion County Circuit Court judge that Charly Velasquez-Sanchez is a public safety risk who cannot be safely released into the community for restoration. The findings were made after a hearing at which the facts of the assaults and the injuries they suffered were presented by the victims, along with Mr. Velasquez-Sanchez's history of violent and dangerous criminal behavior.

## RELEVANT PROCEDURAL AND FACTUAL HISTORY

A. **Procedural History**.

This action was initiated in 2002 by Disability Rights Oregon ("DRO"),[2] then known as Oregon Advocacy Center, a federally-funded non-profit law office representing the rights of people with disabilities; and Metropolitan Public Defenders, Inc. ("MPD"), a nonprofit corporation providing trial level public defense services to indigent criminal defendants in Multnomah and Washington counties. At that time, the Oregon State Hospital ("OSH") was refusing to promptly accept criminal defendants for treatment who had been found unfit to proceed to trial due to mental incapacities, resulting in those defendants' extended detention without restorative treatment in county jails. The defendants sued were the Superintendent of the Oregon State Hospital and the Director of the Department of

---

[2]  DRO is the organization in Oregon charged under the Protection and Advocacy for the Mentally Ill Act, 42 U.S.C. § 10805, with protecting the rights of individuals with mental illness.

**5 – MOTION TO INTERVENE (CRIME VICTIMS)**

Human Services ("DHS"), the latter of which was the agency with oversight over OSH.

After a bench trial, Hon. Owen M. Panner found that criminal defendants declared unable to aid and assist in their own defense by state courts were being held in county jails for long periods of time, and that such detention violated those defendants' due process rights under the Fourteenth Amendment of the federal constitution. "Findings of Fact and Conclusions of Law" [ECF 47].   Judge Panner issued an injunction (the "2002 Injunction") requiring Oregon to admit these persons into Oregon State Hospital or another treatment facility within seven days of being declared unfit by a state court.  Judge Panner retained jurisdiction to enforce the injunction. [ECF 51].  The Ninth Circuit Court of Appeals affirmed this decision the following year.  *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101 (9th Cir. 2003).

Not until May of 2019 did plaintiffs assert a violation of the 2002 Injunction, noting that numerous pretrial detainees were awaiting transport to OSH following a finding of unfitness to proceed.  [ECF 85, 91].  This Court initially declined to make a current finding of contempt [ECF 138], and ultimately denied plaintiffs' request to modify the 2002 Injunction.  [ECF 147]

After the onset of the COVID-19 crisis, DRO and Oregon Health Authority ("OHA"), who was substituted for DHS as the entity now responsible for the Oregon State Hospital (collectively "defendants"), moved to modify the 2002 Injunction because of their inability to meet the admission requirements.  [ECF 151]

**6 – MOTION TO INTERVENE (CRIME VICTIMS)**

Following additional briefing and hearings, the Court entered an order in May 2020 modifying the 2002 Injunction to address circumstances created by the COVID-19 crisis and ordering regular progress reports to the Court and plaintiffs.  [ECF 167] Plaintiffs appealed the order to the Ninth Circuit.  [ECF 170]

More than a year later, after repeated COVID-19 outbreaks at OSH resulted in several emergency modifications to the injunction that allowed OSH to pause admissions [ECF 184, 186, 187, 189, 191, 193, 194, 196], and after unsuccessful settlement efforts ordered by the Ninth Circuit were conducted by Magistrate Judge Stacie F. Beckerman [ECF 206, 210-213], the Ninth Circuit issued an order vacating the May 2020 order modifying the 2002 Injunction, and instructed the district court "to reconsider whether a modification to the permanent injunction is needed, and, if so, to craft a more 'suitably tailored' modification order."  [ECF  214]

Two days after the Ninth Circuit's order, plaintiffs moved for a permanent injunction [ECF 215], and shortly thereafter, defendants opposed plaintiffs' motion and requested a temporary modification to the 2002 Injunction.  [ECF 217]

The parties engaged in settlement efforts with Magistrate Judge Stacie F. Beckerman beginning in December of 2021, and in furtherance of those efforts, agreed to the appointment of a neutral expert.  [ECF 238]  The Court appointed Dr. Debra Pinals as Neutral Expert to assist the parties in resolving their disputes, and in the same order, consolidated a separate lawsuit, *Bowman v. Matteucci et al.*, 3:20-cv-1637, filed by MPD against OHA and DRO on behalf of criminal defendants

**7 – MOTION TO INTERVENE (CRIME VICTIMS)**

who had long awaited transport to OSH after adjudication of guilty except for insanity ("GEI"). [ECF 240]

After several months of discussion, mediation efforts, and receipt of a report from the Neutral Expert containing recommendations, the *Mink* and *Bowman* parties, *i.e.* DRO, MPD, OHA, and OSH, agreed to several modifications to the 2002 Injunction. Their agreement was set forth in "Plaintiffs' Unopposed Motion for Order to Implement Neutral Expert's Recommendations" on August 15, 2022. [ECF 252]

The 2002 Injunction addressed only the amount of time a pretrial detainee had to wait to be transported to OSH for restorative treatment after a finding that they were unfit to proceed to trial. The modifications proposed by the parties to the *Mink* case went well beyond the relief sought and obtained in the 2002 Injunction, however, and included hard limits on the amount of time criminal defendants could be treated at OSH before being discharged back to the counties that sent them -- regardless of whether a determination had been made that they could or could not be restored to fitness. The limits were shorter than the limits imposed by state law.

Another modification proposed by the *Mink* and *Bowman* parties provided for an injunction against state court contempt proceedings against OSH officials when unfit defendants were denied admission to OSH.

The day after plaintiffs' agreed-upon motion to modify the 2002 Injunction was filed, the Court entered an order granting some of the relief requested by plaintiffs, including an injunction against state court contempt proceedings, but

declining to reduce the amount of time criminal defendants could spend at OSH for inpatient restoration. [ECF 256]

Several counties and District Attorneys filed motions to appear as amici the following week. [ECF 259, 267]

Following supplemental briefing and a hearing, on September 1, 2022, the Court entered an order implementing the Neutral Expert's recommendations concerning the limits of time criminal defendants could spend at OSH for inpatient restoration, capping the time for non-Measure 11 felonies at 180 days. [ECF 271]

In the following weeks, a flurry of motions followed -- to intervene, to appear as amici, and to dissolve or modify the injunction. The consolidated parties and amici participated in extensive mediation sessions with Judge Beckerman in the first half of 2023 that culminated in an order entered July 3, 2023, i.e. the "Mosman Order." [ECF 416] The Mosman Order included a "safety valve" allowing the prosecutor to petition the applicable state court to extend the restoration period of defendants charged with non-Measure 11 "violent felonies" for additional 180 day increments if the court made requisite findings of dangerousness. *Id.* at pp. 5-6.

The following month, plaintiffs moved to compel compliance with the Mosman Order, asserting that state court orders were being issued in Marion County that resulted in in Marion County detainees remaining in the custody of OSH for months longer than permitted by the Mosman Order. [ECF 425] Following briefing and a hearing, the Court issued an "Order Determining Supremacy Clause Issues" on September 11, 2023, declaring any state court orders

that inhibited the release of detainees at OSH in accordance with the Mosman
Order to be void.  [ECF 445]

Since the Mosman Order was issued, defendants have twice petitioned for an
expedited ruling on a Supremacy Clause dispute as permitted in the Order.  [ECF
416, p. 7]  The second of those petitions is the subject of this motion.  [ECF 460]

B.   **Relevant Facts Underlying Challenged Order.**

June 14, 2023, was the last day of school at Highland Elementary School in
Salem.  Since it was a nice day and her students could no longer check out books,
Laurie Miller, the school librarian, took them out to the playground to play.  One of
her students was medically disabled, and that child was accompanied to the
playground by her One-on-One Instructional Aide, Ashley Rochetto.

As Ms. Miller watched the children play, she saw a man, later identified as
Charly Velasquez-Sanchez, leave the sidewalk bordering the playground and
approach the area where the children were playing.  In accordance with school
protocol, Ms. Miller approached him and asked him to stay on the sidewalk while
children were outside playing.  He responded with a look that frighted Ms. Rochetto
enough that she called for assistance on her handheld radio.

Mr. Velasquez-Sanchez then began violently attacking Ms. Miller, punching
her repeatedly in the head and face, and temporarily disabling her.  Ms. Rochetto
radioed to have 9-1-1 called, which prompted Mr. Velasquez-Sanchez to attack Ms.
Rochetto.  He punched her in the head, pushed her to the ground, kicked her, then
got on top of her and started punching her in the head as she lay facedown on the

ground.  The panicked children, distraught and terrified, ran and tried to hide.
Andrew Limbeck, who was working at the school that day as a Behavior
Intervention Trainer, responded to the radio calls for help along with others from
within the school.  He reached the assailant, and in attempting to subdue him, fell
to the ground where he landed on an exposed sprinkler head, fracturing his hip,
tearing his labrum, and puncturing his abdomen.  Others eventually subdued Mr.
Velasquez-Sanchez, and the school was placed on lockdown.

Mr. Velasquez-Sanchez was charged by District Attorney Information on
June 15, 2023, with three felony counts of Assault in the Fourth Degree, and was
ordered held as a public safety risk at his arraignment.  At the time, he was on
supervised probation for two separate felony assault convictions, and was also on
pretrial release for a Disorderly Conduct charge arising from his behavior in a park
described in the police report as "cussing, throwing an axe, and pointing at adults
and children while holding the axe."

Mr. Velasquez-Sanchez was indicted on June 22, 2023, for three counts of
Felony Assault in the Fourth Degree[3] and one count of Criminal Trespass in the

---

[3]  The prosecutor could not have known when presenting the indictment that two of
the three victims would suffer protracted impairment of health, because the
indictment was returned a week after the attack, and the extent of the impairment
of the victims' health could not yet be determined.  *See State v.* Stone, 326 Or App
200, 210-11, 532 P.3d 90 (2023)[3] (discussing meaning of "protracted impairment of
health").  Even if the prosecutor were to reindict Mr. Velasquez-Sanchez on
Measure 11 charges based on the seriousness of the victims' injuries, a recent ruling
of this Court would prohibit his readmittance to the Oregon State Hospital under
the "safety valve" provision of the Mosman Order.  (*Opinion and Order*, October 17,
2023 [ECF 452]) (person discharged from OSH cannot be readmitted "unless the
person is charged with new crimes committed after discharge.").)

**11 – MOTION TO INTERVENE (CRIME VICTIMS)**

Second Degree.  He was promptly evaluated for fitness to proceed, found unfit, and

ordered to OSH on July 12, 2023.  It was his fourth such order and trip to OSH in as

many years.  After each of the prior three orders, his ability to aid and assist was

restored after 3-4 months at OSH.

In November 2023, OSH sent a notice to the Marion County District Attorney

and the Marion County Circuit Court that Mr. Velasquez-Sanchez would be

released in 60 days due to the expiration of his restoration period under the

Mosman Order.  The district attorney did not file a "safety valve" petition, and Mr.

Velasquez-Sanchez was transported back to Marion County in mid-January, 2024.

A hearing was held February 1, 2024, to determine what to do with Mr. Velasquez-

Sanchez since he remained unfit to proceed and was unsafe to release to the

community, but could not be returned to OSH.  The hearing was continued to

February 9, 2024, to permit the victims to be heard.

At the February 9, 2024 hearing, Ms. Rochetto explained that she suffered a

head injury in the attack that continues to affect her on a daily basis and requires

ongoing medical and therapeutic treatment.  Mr. Limbeck described his efforts to

subdue Mr. Velasquez-Sanchez, and the resulting injuries and excruciating pain he

suffered when he effectively impaled himself on an exposed metal sprinkler head.

He explained that he suffered a puncture wound to his lower abdomen that barely

missed his intestines, a fractured hip, and a torn labrum on his left shoulder that

required surgical repair and months of still-ongoing physical therapy.  Ms. Miller

spoke by phone from her current home in Tennessee, describing the incident, its

aftermath at the school, and the effects of the assault on her and the children who witnessed it.

The information presented to the Marion County hearing also included a summary of Mr. Velasquez-Sanchez's five-year history of nine separate criminal episodes that endangered the public in general or targeted cohorts specifically, to-wit: (1) immediate family members; (2) police and other law enforcement officers; and (3) people supervising children playing on playgrounds. Also noted on the record was the fact that for most of his five-year adult criminal history, Mr. Velasquez-Sanchez was undergoing restoration efforts (either at OSH or in the community), on some form of release (including both conditional release pending trial and release for community restoration), and/or on supervised probation with mental health treatment conditions.

## C.    <u>Facts Supporting Intervention</u>.

None of the three victims of Mr. Velasquez-Sanchez nor any representative acting on behalf of crime victims participated in the negotiations that resulted in the Mosman Order. The District Attorney amici mentioned crime victims in their discussion of public safety, but no party or amici addressed the implications of the amendments to the 2002 Injunction on the constitutional rights and interests of crime victims under the Oregon Constitution. The word "victim" nowhere appears in either the Mosman Order or the Neutral Expert Report it incorporates.

If this Court voids the Marion County order on Supremacy Clause grounds, Mr. Velasquez-Sanchez will be released pursuant to a community restoration plan

that no one believes will protect the victims or the public.  Indeed, the plan would have Mr. Velasquez-Sanchez released to live with the family whose members he has repeatedly assaulted.

If the Marion County Circuit Court had ordered Mr. Velasquez-Sanchez's release despite making the findings of dangerousness recited in its order, it would have violated Article I, § 43(1)(b) of the Oregon Constitution, and the victims would be entitled to a remedy under Article I, § 43(5).  *See* ORS 147.500 *et seq.* (enabling legislation for Or. Const. Art. I, §§ 42 and 43).

## ARGUMENT

Movants seek intervention because they have an interest in this lawsuit, have not been named by the existing litigants, and the existing parties do not adequately represent their interests. 7C Wright & Miller, *Fed. Prac. & Proc.* § 1901 (3d ed. 2022).  They seek to intervene as a matter of right, or alternatively, permissively.

Movants claim entitlement to intervention of right because they have an interest relating to the transaction that is the subject of the action, *i.e.* the release of criminal defendants during the course of their criminal proceedings.  Movants are so situated that disposing of the action (or in this case, enforcing the injunction) will as a practical matter impair or impede their ability to protect their right under the Oregon Constitution to reasonable protection from a criminal defendant charged with assaulting them, and the existing parties have not adequately represented

that right.  Fed. R. Civ. P. 24(a)(2).  Voiding the Marion County court's order will deny them that right.

Alternatively, the Court should allow them permissive intervention because movants have a claim that shares with the main action a common question of law or fact, to-wit:  the question of whether the federal court has adequately considered the effect of its injunction on the constitutional rights of crime victims.  Fed. R. Civ. P. 24(b)(1)(B).  In deciding whether to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  Movants do not object to expedited consideration of this motion.

In evaluating whether the requirements for intervention are met, courts are to construe FRCP 24 "broadly in favor of proposed intervenors." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (citations omitted).  That is because "[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts."  *Id.* (citation omitted).  "[I]t is generally enough that the [proposed intervenors'] interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (citation omitted).  "Furthermore, a prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Id.* (citation omitted).

**15 – MOTION TO INTERVENE (CRIME VICTIMS)**

This motion is timely in that it is filed five days after OSH's petition seeking action that will void movants' rights under the Oregon Constitution.  Movants had no ripe interest in this proceeding until their constitutional rights were challenged.

## **CONCLUSION**

In *OAC v. Mink*, the Ninth Circuit wrote, "Whether the substantive due process rights of incapacitated criminal defendants have been violated must be determined by balancing their liberty interests in freedom from incarceration and in restorative treatment against the legitimate interests of the state."  *OAC v. Mink*, 322 F.3d 1101, 121 (9th Cir. 2003).   Here, "the legitimate interests of the state" include not only those of the Oregon State Hospital, but those of the crime victims whose state constitutional rights are implicated.

In modifying the 2002 Injunction, the Court went well beyond addressing the constitutional violation that is the subject of the either of the consolidated complaints, which arose from extended pre-trial detention of criminal defendants unfit to proceed to trial without restorative treatment and extended post-adjudication detention in county jails of criminal defendants found guilty except for insanity.  The modifications in the Mosman Order actually defeat the original purposes of the 2002 Injunction by requiring the discharge of criminal defendants before they are restored in the hospital setting they require, even if they *could* be restored with further treatment.  In extending its reach to the discharge from OSH of criminal defendants while prohibiting their readmission to OSH for any reason

unless they reoffend, the Court trampled on the state constitutional rights of crime victims without so much as acknowledging those rights.

For these reasons, the victims' motion to intervene should be granted and they should be given leave to file and litigate their Complaint-in-Intervention, attached hereto as Exhibit 1.

Dated:  February 21, 2024.

LAW OFFICE OF ERIN OLSON, P.C.

Erin K. Olson, OSB 934776
Phone:  (503) 546-3150
Email:  eolson@erinolsonlaw.com

OREGON CRIME VICTIMS LAW CENTER

Rosemary W. Brewer, OSB 110093
Telephone:  (503) 208-8160
Email:  rosemary@ocvlc.org

*Attorneys for Proposed Intervenors*

Erin K. Olson, OSB 934776
Law Office of Erin Olson, P.C.
1631 N.E. Broadway Street #816
Portland, OR  97232-1425
Telephone:  (503) 546-3150
Email:  eolson@erinolsonlaw.com

Rosemary W. Brewer, OSB 110093
Oregon Crime Victims Law Center
7412 SW Beaverton Hillsdale Hwy Ste 209
Portland OR  97225
Telephone:  (503) 208-8160
Email:  rosemary@ocvlc.org
*Attorneys for Proposed Intervenors*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDERS INCORPORATED, and A.J. MADISON,<br><br>Plaintiffs,<br><br>vs.<br><br>PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital,<br><br>Defendants, | Case No.:  3:20-cv-00339-MO (Lead)<br>Case No.:  3:21-cv-01637-MO (Member)<br><br>**[PROPOSED] COMPLAINT IN INTERVENTION (CRIME VICTIMS)** |
| JAROD BOWMAN and JOSHAWN DOUGLAS SIMPSON,<br><br>Plaintiffs,<br><br>v. | Case No.:  3:21-cv-01637-MO (Member) |

1 – **[PROPOSED] COMPLAINT IN INTERVENTION (CRIME VICTIMS)**

PATRICK ALLEN, in his official capacity
as Director of Oregon Health Authority,
and DOLORES MATTEUCCI, in her
official capacity as Superintendent of the
Oregon State Hospital,

                      Defendants,

      and

LAURIE MILLER, ASHLEY
ROCHETTO, and ANDREW LIMBECK,

        [Proposed] Intervenors.

## INTRODUCTION

1.     Under the Oregon Constitution, crime victims have rights to

reasonable protection from the criminal defendants who committed a crime against

them, including "[t]he right to have decisions by the court regarding the pretrial

release of a criminal defendant based upon the principle of reasonable protection of

the victim and the public[.]"  Or Const. Art I, § 43(1)(b).  If violated, a victim is

entitled to a remedy so long as the remedy does not violate the federal

constitutional rights of the criminal defendant.  Or Const. Art I, § 43(5)(a), (d).

2.     On September 1, 2022, the Court entered an order limiting to six

months the time a criminal defendant charged with a non-Measure 11 felony could

be treated at the defendant Oregon State Hospital for restoration of their ability to

aid and assist, requiring the discharge of the defendant at the conclusion of the six

months regardless of the progress toward fitness, the likelihood of community

2 – [PROPOSED] COMPLAINT IN INTERVENTION (CRIME VICTIMS)

restoration after discharge from OSH, or any other consideration.  [ECF 271]

Subsequent litigation by amici and intervenors resulted in modification to the

injunction to add a "safety valve" for defendants charged with a "violent felony."

[ECF 416]  To invoke the "safety valve," the prosecutor must file a petition.  *Id.*

3.      The parties, amici, and intervenors in this case did not include crime

victims, and no reference is made anywhere – not in any brief, Neutral Expert

report or recommendations, order, or the injunction itself  – to the state

constitutional rights of crime victims to reasonable protection from the criminal

defendants who are the subjects of the injunction.

4.      In January 2024, defendant Oregon State Hospital discharged a

criminal defendant charged with felony assaults of three persons after six months of

treatment without restoration to fitness to proceed.

5.      On February 9, 2024, the Marion County Circuit Court held a hearing

at which the criminal defendant's victims asserted their right to reasonable

protection from the criminal defendant under Article I, § 43 of the Oregon

Constitution, and the court thereafter found the defendant to be a public safety risk,

and ordered his continued detention in the Marion County jail, with weekly

transport to the Oregon State Hospital for outpatient restorative treatment.  (ECF

461, Exh. 1)

6.      Defendant Oregon State Hospital petitioned to void the Marion County

Circuit Court's order on Supremacy Clause grounds, asserting it violates the

provision in the injunction entered by this Court that limits to six months the

**3 – [PROPOSED] COMPLAINT IN INTERVENTION (CRIME VICTIMS)**

amount of time a criminal defendant can undergo inpatient restorative treatment at the Oregon State Hospital.  (ECF 460)  Granting the relief requested in the petition would void the state court's order effectuating proposed intervenors' state constitutional rights to reasonable protection from the criminal defendant who assaulted them, and will leave them without the remedy to which they are constitutionally entitled under Article I, § 43(5).  *See State v. Barrett*, 350 Or 390, 255 P.3d 472 (2011) (crime victims entitled to a legally permissible remedy by due course of law for violations of their rights under the Oregon Constitution).

7.    This complaint seeks intervention so the interests of the proposed intervenors (hereinafter "Victim-Intervenors") in the recognition and meaningful enforcement of their state constitutional rights can be included in the balancing of the state's legitimate interests against the criminal defendant's liberty interests in freedom from incarceration and in restorative treatment.  *OAC v. Mink*, 322 F.3d 1101, 121 (9th Cir. 2003).

8.    Victim-Intervenors do not challenge the federal courts' authority under the Supremacy Clause to enjoin the operation of the Oregon Constitution to the extent it interferes with a judicially-imposed, narrowly-tailored remedy to effectuate a criminal defendant's federal due process rights, but in doing so those courts, "in devising a remedy must take into account the interests of state and local authorities in managing their own affairs, consisted with the Constitution." *Milliken v. Bradley*, 433 U.S. 267, 280-81 (1977).  *See also* U.S. Const. art. IV, § 4 ("The United

States shall guarantee to every State in this Union a Republican Form of Government[.]").

## JURISDICTION

9.    The Court has jurisdiction under 28 U.S.C. § 1331 to consider and award the relief Victim-Intervenors seek.

## PARTIES

10.    Plaintiffs and Defendants in these consolidated civil actions are as alleged in their respective pleadings.

11.    Victim-Intervenor Laurie Miller was assaulted by Charly Velasquez-Sanchez, and is the "victim" of his felony assault within the meaning of Article I, §§ 42 and 43 of the Oregon Constitution.

12.    Victim-Intervenors Ashley Rochetto and Andrew Limbeck were assaulted by Charly Velasquez-Sanchez, and are the "victims" of his "violent felony" assaults within the meaning of Article I, §§ 42 and 43 of the Oregon Constitution.

## STANDING

13.    Victim-Intervenors' state constitutional rights were vindicated in the Marion County Circuit Court's order of February 9, 2024.

14.    Application of the injunction issued by this Court [ECF 416] to void the Marion County order will enjoin the enforcement of the crime victims' rights provisions of the Oregon Constitution, including Victim-Intervenors' right to reasonable protection from the criminal defendant who assaulted them and to a remedy for violation of that right.

**5 – [PROPOSED] COMPLAINT IN INTERVENTION (CRIME VICTIMS)**

15.     Victim-Intervenors' interests are not adequately represented by the parties to this action.

16.     The injury to Victim-Intervenors' state constitutional rights is likely to be redressed by a favorable decision regarding the relief they seek.

## CAUSE FOR RELIEF

17.     The Court's injunction [ECF 416] and subsequent Supremacy Clause order [ECF 445] were issued without consideration of the rights and interest of crime victims under the Oregon Constitution.

18.     The Court's injunction [ECF 416] went beyond the relief requested in the underlying complaints, was imposed upon persons wo were neither involved in or affected by the constitutional violation, and the relief ordered was not narrowly tailored to address the constitutional violations themselves, which involved excessive detention of pre-trial and post-GEI-adjudication criminal defendants before transport to the Oregon State Hospital.

## PRAYER FOR RELIEF

Wherefore, Victim-Intervenors pray that the Court:

A.  Modify the injunction [ECF 416] to limit its scope to the relief requested in the consolidated cases;

B.  In the alternative, modify the injunction to require consideration of crime victims' state constitutional rights in the discharge provisions of the injunction, including expanded availability of the safety valve provisions

6 – [PROPOSED] COMPLAINT IN INTERVENTION (CRIME VICTIMS)

in Section V for any crime victim or the public if the criminal defendant

presents an articulable risk of violence if released; and

C.  Such other relief as the Court deems appropriate and just.


Dated: _____.

LAW OFFICE OF ERIN OLSON, P.C.


_____
Erin K. Olson, OSB 934776
Phone:  (503) 546-3150
Email:  eolson@erinolsonlaw.com

OREGON CRIME VICTIMS LAW CENTER


_____
Rosemary W. Brewer, OSB 110093
Telephone:  (503) 208-8160
Email:  rosemary@ocvlc.org

*Attorneys for Proposed Intervenors*