UNITED STATES DISTRICT COURT
OF THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **Disability Rights Oregon, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON**,<br><br>*Plaintiffs*,<br><br>v.<br><br>**DAVID BADEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of Oregon State Hospital**,<br><br>*Defendants*. | **Civ. No.: 3:02-cv-00339-MO (Lead Case)**<br>**Case No.: 3:21-cv-01637-MO (Member Case)**<br><br>**MARION COUNTY'S SECOND MOTION TO INTERVENE** |

### CONFERRAL CERTIFICATION

Pursuant to the requirements of LR 7-1, Marion County ("**the County**") hereby certifies that it has conferred with all parties prior to filing this motion. Plaintiffs stated that they oppose the motion and Defendants took no position on the motion.

### SECOND MOTION TO INTERVENE

Proposed intervenor Marion County ("**the County**") hereby moves this Court to intervene in the above captioned case pursuant to Federal Rule of Civil Procedure 24, subsections (a) and (b) in the alternative.

This motion is supported by the following Memorandum of Law. The County respectfully includes a Motion to Expedite a ruling by April 4, 2024, so that it may file the Notice of Appeal attached.

**Sec. Mot. Intervene**                                 1

**MEMORANDUM OF LAW**

**I. INTRODUCTION**

Beginning in August 2022, the County participated in this matter as *amicus* of this Court. The County previously sought intervention in June 2023, but was denied. ECF No. 415. At the time, it was experiencing the effects of Judge Mosman's Order to Implement Neutral Expert's Recommendations ("**August 2022 Mosman Order**") (formally issued after deliberation on September 1, 2022). ECF No. 271. Although the order did not formally apply to the County or direct how its staff and employees needed to act, in fact it had a significant collateral impact on Marion County and particularly the Marion County Sheriff's Department. In fact, as a result of the August 2022 Mosman Order, the County's community restoration caseload tripled while placement options dwindled. ECF No. 403 (Matthews Decl. ¶ 5, 7). The new March 6, 2024 Mosman Order (**"March 2024 Mosman Order"**) further increases the financial and administrative burdens on the County. ECF No. 475. The March 2024 Mosman Order exacerbates these problems and the County faces a public health and safety crisis even more intense than what prompted its first effort to intervene in 2023.

By prohibiting Oregon State Hospital ("**OSH**") outpatient services as an alternative to community restoration, the County will be presented with even more individuals requiring services. Declaration of Ryan Matthews (March 28, 2024) ("**Second Matthews Decl.**") at ¶ 10. These individuals often remain housed in jail, taking up valuable jail resources and in many cases pose risks of harm and liability to the County. Declaration of Nick Hunter (March 28, 2024) ("**Hunter Decl.**") at § 8, 9.

In addition, because they will now be denied outpatient services, these individuals will

**Sec. Mot. Intervene**                                    2

require a higher level of services, further burdening the County's already strained resources. Second Matthews Decl. at ¶ 11. An increase in the number of individuals returned to the County inevitably means an increase in the number of individuals remaining in jail, where they remain untreated, posing greater risk of harm and liability. Hunter Decl. at ¶ 9. An increase in the number of individuals returned to the County will result in an increased number of individuals charged with violent crimes simply leaving services without receiving stabilizing treatment. Second Matthews Decl. at. ¶ 12. Finally, there are obvious fiscal consequences to the County from the increase in services that is caused by turning individuals away from outpatient services. *Id.* ¶ 16. The State of Oregon has specific statutory and constitutional obligations to address this crisis. Marion County seeks to intervene so that it may safeguard its resources, to minimize risks to its staff, and risks of liability.

Because of the most recent developments, the County seeks to intervene in this case to address particularized harms: (1) unlawfully and at great cost holding individuals in jail, (2) the financial burdens of an unfunded mandate from the State to maintain community restoration programs without additional support, and (3) inadequate treatment being provided for in community-restoration who need hospital-level care.

The County respectfully requests this Court grant its Second Motion to Intervene so that it may appeal the March 2024 Mosman Order.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure sets out two ways for a party to intervene under FRCP 24(a) and 24(b): intervention by right and permissive intervention.

Intervention by right under FRCP 24(a)(2) requires proof of four elements: (1) the motion is

timely, (2) the applicant claims a "significantly protectable" interest relating to the transaction that is the subject of the matter, (3) "the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest," and (4) "the applicant's interest must be inadequately represented by the parties to the action." *Cooper v. Newsom*, 13 F.4th 857, 864 (9th Cir. 2021). Federal courts in the Ninth Circuit construe Rule 24(a)(2) "broadly in favor of proposed intervenors." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (internal citations omitted).

FRCP 24(b) gives courts discretion to permit intervention when the prospective intervenor "has a claim that shares with the main action a common question of law or fact." To meet this standard, a prospective intervenor must prove three elements: (1) the applicant "shares a common question of law or fact with the main action," (2) "the motion is timely," and (3) "the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).

Once a prospective intervenor establishes all three, the district court must then decide whether to exercise its discretion. *Id*. The decision to permit intervention under a permissive intervention approach is based on whether the "intervention will unduly delay or prejudice the adjudication of the original parties' rights." FRCP 24(b).

### III. ANALYSIS

Here, the County's case for intervention is straightforward. The County is responsible for the housing and care of individuals who are left sitting in jail while the Court's order impairs their ability to receive treatment from OSH and the County is responsible for individuals discharged from OSH to indefinite community restoration. The March 2024 Mosman Order directly

contradicts the February 9, 2024 Order ("**February Order**") issued by Marion County Circuit Judge Audrey Broyles pertaining to the restoration of a defendant, thereby greatly expanding the scope of the original case and threatening the power of the Oregon courts, placing Marion County in a compromising legal situation. The County's rights are inherently implicated by this case.

Moreover, because the March 2024 Mosman Order directly interferes with the outpatient treatment of any criminal defendant who has already had in-patient treatment in accord with the August 2022 Mosman Order, the County is required to compromise its community restoration initiatives to comply with the March 2024 Mosman Order. Accordingly, intervention is warranted either by right or on a permissive basis as to Marion County.

**A.    Intervention as of right by Marion County**

    **1.    The County's motion to intervene is timely.**

A court considering a motion to intervene under FRCP 24(a) weighs the timeliness of the motion with three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene, (2) the prejudice to other parties, and (3) the reason for the length of the delay." *Smith v. Marsh*, 194 F.3d 1045, 1050 (9th Cir. 1999).

This case has an unusually long history. The lead case that forms the basis for the sequence of three Mosman Orders issued between August 2022 and March 2024, the Complaint in *Oregon Advocacy Center v. Mink*, No. 3:02-cv-00339-MO, was originally filed in March 2002. ECF No. 1. In May 2002, the case resulted in a Judgment, in which the Court retained jurisdiction to enforce a permanent injunction, ordering Oregon State Hospital ("**OSH**") to provide adequate services for individuals unable to aid in their own defense. *See* Judgment, May 15, 2002 (ECF

No. 51) ("***Mink*** **Injunction**").

Apart from a few remaining appellate proceedings in the early 2000s, the case remained dormant until May 2019, when Plaintiffs--Oregon disability rights groups– ("**Plaintiff Disability Rights Organizations**") filed a motion seeking contempt sanctions against OSH for failing to comply with the *Mink* Injunction. *See* Mot. for Order to Show Cause for Finding of Contempt (ECF No. 85). That May 2019 motion effectively revived the case 18 years after a decision was reached. As a result, Dr. Debra Pinals was brought in to consult about what steps OSH needed to take to come into compliance. Stipulated Mot. to Appoint Neutral Expert (ECF No. 238). Dr. Pinal's recommendations resulted in the issuance of the August 2022 and July 2023 Mosman Orders that impose limitations on in-patient restoration at OSH but did not address outpatient restoration services. (ECF No. 271).

The County first began to experience the effects of the August 2022 Mosman Order at this time, as the Order reduced capacity at OSH, resulting in more individuals on community restoration and strain on the County program's limited resources. *See* Matthews Decl. ¶ 6-10. Anticipating new burdens, the County moved to participate in the *Mink* case as an *amicus* of the Court after the August 2022 Mosman Order was first proposed. Mot. to Appear *Amicus Curiae* (ECF No. 259).

By the time the County became involved as an *amicus* of the Court, the parties to the case were effectively no longer opposed on the major aspects of the litigation. *See* Unopposed Mot. for Order to Implement Neutral Expert's Recommendations (ECF No. 252). The County and other *amici* effectively took on the role of adverse parties in the case, contesting the implementation of the Mosman Order. *See Amicus* Brief of Marion and Washington Counties

(ECF No. 259-1).

As *amicus* of the Court, the County took part in all major aspects of the litigation after August 2022, including arguments on amendments to the August 2022 Mosman Order and mediation. *See* Minutes, Nov. 21, 2022 (ECF No. 322); *see also* Amended Scheduling Order (ECF No. 355).

The County effectively became a de facto party in March 2023 when Plaintiff Disability Rights Organizations filed a motion seeking an order requiring the County to transport individuals committed at OSH back to the County jail after discharge. Pls.' Mot. for Order Requiring Marion County to Transport Patients (ECF No. 359). At the time, the Court denied the motion but indicated that it wanted to amend the Mosman Order to fill the "gap" in transport. Tr. at 25. All proposals submitted included language ordering county sheriffs to transport individuals back from OSH after discharge. *See* Mot. for Order Amending September Order (ECF No. 382) (filed by Plaintiff Metropolitan Public Defenders); *see also* Proposed Order (ECF No. 383) (filed by the County).

The net effect of the March 2024 Order is to greatly increase the County's responsibilities. It prohibits outpatient services as an alternative to community restoration, which inevitably presents the County with even more individuals requiring a higher level of services, Second Matthews Decl. at ¶ 10, 11. Just as inevitably, this will increase the number of individuals requiring treatment to remain housed in jail, with the commensurate burdens and risks to the jail. Hunter Decl. at § 8, 9. This will spill over into an increased number of individuals charged with violent crimes simply leaving services without receiving stabilizing treatment. Second Matthews Decl. at. ¶ 12.

The County's Second Motion to Intervene is timely. The contempt proceedings in 2019 effectively initiated a new case on a separate issue from the original 2002 case. That case took on new contours with the August 2022 Mosman Order, the July 2023 Mosman Order that prompted the County's initial effort to intervene, ECF No. 416, and now the March 2024 Mosman Order that prompts the County's current Second Motion to Intervene.

The County's entrance into the case at this point is not likely to result in prejudice to any parties. The County shared its position beginning at the earliest possible time, as soon as its interests were impacted, giving other parties ample notice of its opposition to the three Mosman Orders. Because the County has served as a de facto adverse party for nearly two years, its entrance into the litigation at this time cannot be expected to raise new or unforeseen issues for the parties. In fact, the County's concerns have been the primary issue in the case for some time.

Here, any delay in filing the County's motion to intervene is not a grounds for finding untimeliness. "Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be adequately protected by the parties." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1999).

The County promptly sought to take part in the case immediately upon learning that the parties were in agreement about implementation of the August 2022 Mosman Order and as a result would not adequately protect its interests. Initially, that participation was formally labeled as that of an *amicus* but in practical terms the County effectively served the role of an adverse party. As a result there was functionally no delay in the County's efforts to adequately protect its interests.

The time from when the County appeared as *amicus* to the filing of this Second Motion to

Intervene should not be counted as a delay. Because the County as *amicus* served as a functionally adverse party, there was initially no need to seek formal intervention until it became clear that the August 2022 Mosman Order would be amended to directly bind the County. At the time, it became clear that *amicus* status was insufficient to defend the County's interests. The County found itself in need of the rights of a party in the case: the right to make and respond to motions, receive copies of filings, and seek appellate review if needed. The County promptly moved to intervene in 2023 to become a full-fledged party in the case.

Even if the Court deemed the original 2023 First Motion to Intervene untimely, the County's current Second Motion to Intervene is timely because of the significant change in circumstances wrought by the March 6, 2024 Mosman Order. Under that Mosman Order, the case has been extended to outpatient services, directing both the County and Oregon state court judges from which it receives court orders. Accordingly, this Second Motion to Intervene is timely and County has met the first element needed for intervention as of right.

2. **The County has a "significantly protectable" interest that is affected.**

The County claims a "significantly protectable" interest that is impacted. A prospective intervenor must have a "specific legal or equitable interest" to meet the "significantly protectable" interest prong of mandatory intervention. *See Cty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). Generally, it is "enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Sierra Club v. United States EPA*, 995 F.2d 1478, 1488 (9th Cir. 1993). The Ninth Circuit takes the view that a prospective intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex*

*rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).

Here, the County's interests are significantly impaired due to the litigation. The County is required to pick up the slack, providing resources and bearing the risks of harms related to the confinement of individuals on community restoration. The March 2024 Mosman Order heightens the preexisting burdens on the County by blocking outpatient treatment for individuals on community restoration, forcing the County to shoulder that burden alone.

The surge in demand for restoration services comes at a high cost. The County lacks adequate staff and funds to provide the resources needed to ensure that individuals on community restoration are given appropriate placement and medications.

Individuals who are not stabilized are leaving the community restoration program. Many of these individuals are charged with grave violent offenses and pose a significant risk to themselves and others.

The March 2024 Mosman Order directly orders the County's staff forcing County personnel to violate state court orders. This risks forcing the County to litigate state court contempt proceedings. As a result of the foregoing factors, the County's interests are squarely implicated in this litigation. Accordingly, the County meets both the second and third elements needed for intervention as of right.

3. **The County's interest in the case are not adequately represented by the current parties.**

The interests of the current parties in the case do not align with those of the County. Functionally, the current parties to the litigation are not adverse to one another, jointly agreeing to shift the burdens of restoration onto the County. Because of this de fact circumstance, the County and other *amici* (some of which have also sought to intervene) have become in effect the

adverse party in the case. Accordingly, the County has satisfied the fourth element needed for mandatory intervention.

## B. Permissive Intervention by Marion County.

### 1. The County has questions of law and fact in common with the original case.

The County shares common questions of law and fact with the original action that merit intervention. The County's concerns all relate to the sequence of Mosman Orders that extend an injunction affecting OSH to parties beyond the scope of the original order, such as the County. The County's concerns align with the Plaintiff Disability Rights Organizations' original concern that OSH was originally failing to treat individuals unable to aid and assist in their own defense. However, beginning in 2022 OSH sought to limit the services they offer to individuals unable to aid and assist by agreeing to time limits on in-patient care. In March 2024, this was limited even further to outpatient services. Thus, the County now bears the heightened burdens of both OSH's practice of shifting individuals who still hospital-level care to community restoration and an inability to meet its obligations under Oregon state court orders as a result of the March 2024 Mosman Order. Principles of standing and judicial economy favor resolving the County's concerns along with those already considered in this action. As a result, the County satisfies the first element of permissive intervention.

### 2. The County's motion to intervene is timely.

The County's motion to intervene on a permissive basis is timely for the same reasons that its motion to intervene on a mandatory basis is timely, as outlined previously. Accordingly, the second element is met.

3. **The County's motion will not unduly delay or prejudice the adjudication of the original parties' rights.**

The County's intervention in this case would not significantly delay or prejudice other parties for the same reasons that the case is timely. In effect, the County has acted as a de facto adverse party in the case since August 2022. Therefore, the parties are already aware of the County's position for nearly two years. This Court has taken the time to consider the County's arguments in the past during this interlude of time. Adding the County as a party at this time is unlikely to surprise any of the parties and nor will it likely result in any additional delay. Thus, this Court should use its discretion to permit intervention.

## V. CONCLUSION

For the foregoing reasons, prospective intervenor Marion County respectfully ask the Court to allow intervention in this case.

DATED this  29 th day of March, 2024.

    Respectfully submitted,

    JANE E. VETTO
    MARION COUNTY COUNSEL

    /s/ Jane E. Vetto
    Jane E. Vetto, OSB #914564
    Marion County Legal Counsel
    555 Court St. N.E.
    P.O. Box 14500
    Salem, OR 97309
    Phone: 503-588-5220
    Email: jvetto@co.marion.or.us
    Attorney for Intervenor-Appellant


    James Bopp, Jr., Ind. Bar No. 2838-84*

Eamon McCarthy Earls, Ind. Bar No. 38528-49*
*Admission *pro hac vice* forthcoming
THE BOPP LAW FIRM, PC
The National Building
1 South 6th Street Terre Haute, Indiana  47807
Telephone: (812) 232-2434
Fax: (812) 235-3685
Email: jboppjr@aol.com; emearls@bopplaw.com
Counsel for Proposed Intervenor

**Sec. Mot. Intervene**                13