Emily Cooper OSB #182254
ecooper@droregon.org
Thomas Stenson OSB #152894
tstenson@droregon.org
**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205
(503) 243-2081
*Counsel for Plaintiff, Disability Rights Oregon*

Jesse Merrithew OSB #074564
jesse@lmhlegal.com
**Levi Merrithew Horst PC**
610 SW Alder Street, Suite 415
Portland, Oregon 97205
(971) 229-1241
*Counsel for Plaintiff, Metropolitan Public Defender*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON, <br><br> Plaintiffs, <br><br> v. <br><br> PATRICK ALLEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital, <br><br> Defendants. | Case No. 3:02-cv-00339-MO (Lead Case) <br> Case No. 3:21-cv-01637-MO (Member Case) <br><br> PLAINTIFFS' RESPONSE IN OPPOSITION TO MARION COUNTY'S SECOND MOTION TO INTERVENE |

JAROD BOWMAN, JOSHAWN
DOUGLAS-SIMPSON,

              Plaintiffs,

    v.

DOLORES MATTEUCCI, Superintendent
of the Oregon State Hospital, in her
individual and official capacity, PATRICK
ALLEN, Director of the Oregon Health
Authority, in his individual and official
capacity,

              Defendants.

Case No.  3:21-cv-01637-MO (Member
Case)

## PLAINTIFFS' RESPONSE IN OPPOSITION TO MARION COUNTY'S SECOND MOTION TO INTERVENE

Marion County again seeks to join the present case as a party, in this case to challenge the District Court's March 6, 2024 order—on which topic Marion County, even though an active *amicus*, filed no briefing to oppose. Marion County only now seeks to challenge a recent order clarifying that the Court's past orders prohibit OSH from providing "outpatient" restoration services—treatment that no OSH patient has ever received, with no documented likelihood of clinical success, that OSH does not provide, and that OSH has no statutory basis for providing. Marion County filed an earlier motion to intervene in June 2023, which was denied as untimely. This one is less timely. Marion County has no legally protectable interest affected by the March 2024 order and lacks standing to oppose it. Marion County likewise cannot join as a permissive intervenor because its motion is untimely, it lacks standing, and it fails to assert a subject matter basis for federal jurisdiction over any as-yet-undefined claims it may have.

### I.  The Court's March 2024 Order

The March 2024 Order at issue narrowly related to a single criminal court order affecting a single defendant. After the OSH commitment of Charly Velasquez-Sanchez exceeded the six months permitted under this Court's July 2023 order, he was returned to Marion County in January 2024. He remained unable to aid or assist his attorney. He was placed by the state court at Marion County Jail to await further proceedings. On February 9, the Marion County District Attorney informed the court that the detainee could no longer be held in jail and must be released to a community placement, suggesting that he have an ankle monitor as a condition of his release. At that time a community restoration bed was available for him. A Marion County judge, the Honorable Audrey Broyles, issued an order rejecting that outcome, instead requiring him to lodge seven days a week at the Marion County Jail for an undefined time period with a once-a-week "outpatient" restoration services at the Oregon State Hospital every Friday.

Defendants sought a determination from this Court to clarify whether the federal court order prevented them from complying with the state court order. While their motion was pending before this Court, Judge Broyles filed contempt of court proceedings against three state employees for not initiating the "outpatient" services she had ordered. The day before contempt proceedings in the state court were scheduled to begin, this Court ruled that the state court order was superseded by the federal court order, and therefore the Supremacy Clause prevented the Defendants from complying with the state court order.

That same day, March 6, 2024, the Oregon Supreme Court took up a mandamus proceeding, removing further adjudication of the Velasquez-Sanchez matters from the

Marion County judge. On March 12, 2024, Judge Broyles denied a motion to dismiss the proceedings involving Mr. Velasquez-Sanchez, stating on the record that, while she would "respect any order that comes out of the state court … I do not recognize [the federal court order]." Decl. of Thomas Stenson, ¶6. She stated that she welcomes appellate review, "but I welcome it from our state, not the federal court." *Id.* That same day, the presiding judge of Marion County removed every single in-custody aid-and-assist case from Judge Broyles' docket and reassigned them to other judges. *Id.* at ¶5.

## II. Marion County Does Not Meet the Standards for Intervention by Right

Marion County's motion to intervene fails to meet the explicit criteria for intervention of right in this matter. The Ninth Circuit identifies four criteria for intervention of right: "timeliness, an interest relating to the subject of the litigation, practical impairment of an interest of the party seeking intervention if intervention is not granted, and inadequate representation by the parties to the action." *United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996). In addition to those criteria, "an intervenor must meet the [standing] requirements of Article III if the intervenor wishes to pursue relief not requested by a plaintiff. . . ." *Town of Chester v. Laroe Ests.*, 581 U.S. 433, 435 (2017). Marion County's intervention in the present matter is untimely and has already been adjudicated untimely by this court. Marion County also has no legally protected interest in the enforcement of the March 2024 order of this Court, nor any standing to challenge it.

Plaintiffs would briefly note what the motion to intervene *cannot* be about. This Court has already found a June 2023 motion to intervene untimely. Much of Marion

County's present motion improperly seeks to relitigate issues already decided by this Court. That order is on appeal to the Ninth Circuit, and only the appellate court has jurisdiction over it. *McClatchy Newspapers v. Cent. Valley Typographical Union*, 686 F.2d 731, 734 (9th Cir. 1982) ("The filing of a notice of appeal generally divests the district court of jurisdiction over the matters appealed."). Both the motion and the supporting declarations are full of assertions of fact and legal arguments that were previously presented to this Court and rejected. The County's new motion to intervene must be grounded exclusively on the March 2024 order and on current circumstances, not as a means to attack past orders of this Court well past the time for appeal, nor those properly in the sole jurisdiction of the Ninth Circuit.

### A.  Marion County's Motion to Intervene Was, Is, and Remains Untimely

Unsurprisingly, intervention has not become more timely in the last 9 months. In considering timeliness, courts look to "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *State of Washington*, 86 F.3d at 1503.

The stage of the current litigation is the latest possible phase of any active litigation: enforcement and compliance proceedings. The present matter has been ongoing for 22 years. Final judgment was entered 22 years ago, and the appeal from judgment denied 21 years ago. The current phase of enforcement, contempt, and compliance proceedings began in early 2019 and continues through today.

The prejudice to the parties would obviously be substantial if Marion County intervened as a party. The very purpose of Marion County's intervention is to revisit

already decided issues, where a negotiated remedial order has already been devised that is "complex and delicately balanced." *United States v. State of Or.*, 913 F.2d 576, 588 (9th Cir. 1990). "That the compromise is delicate is evident from the fact that after over four years of negotiation, certain points of the final plan are still disputed by some parties." *Id.*; *see* ECF 470 (expressing a desire to renegotiate the order); ECF 468 (same). Marion County seeks to appeal an order of this Court, requiring the parties to engage in yet another appeal. In the present matter, the parties and *amici* met for months in mediation to reach an agreement that led to the amended order in July 2023. *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d 1217, 1220 (9th Cir. 1995) (possibility that intervenor's proposed modification of order would "unravel" settlement posed serious questions of prejudice). Marion County neglected to file a complaint or answer in intervention, Fed. R. Civ. Pro. 24(c), that might explain the scope of the relief it seeks. *See discussion infra* at II(c). Plaintiffs can only guess at what other relief Marion County may seek if permitted to intervene or how its intervention may prejudice the ongoing litigation, as Marion County has failed to file required pleadings that might explain the scope of its intervention.

For a party seeking to intervene after the commencement of a case, the delay "is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, not the date it learned of the litigation." *State of Washington*, 86 F.3d at 1503. Marion County could not have possibly believed at any point that either Plaintiffs or Defendants were protecting the interests they identify and denies that it has believed anything of the kind for years. ECF 478, at 8

(stating the County has served as a "de facto adverse party for nearly two years"). The prior history of the county's participation as amicus and prior unsuccessful motion to intervene do not make its present motion more timely. *State of Washington*, 86 F.3d at 1505 (holding neither intervenor's unsuccessful first motion to intervene nor its participation as amicus made its second motion to intervene timely).

Regarding the March 2024 order, Marion County could at no point since the beginning of this litigation have reasonably believed that Plaintiffs would promote a scheme confining a detainee found unable to assist in a jail cell, while offering a once-a-week opportunity for restoration classes. The crux of Plaintiffs' contentions since the outset of this litigation have been to seek the *release* of detainees found unable to assist from jail cells, not to prolong their detention in jail, with or without "outpatient" restoration services. Defendants' positions from the earliest days of these proceedings have sought to shift the responsibility of keeping detainees found unable to aid and assist to the counties whenever possible, demonstrating no interest in voluntarily assuming the responsibility of offering restorative services on an outpatient basis. *Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1119 (9th Cir. 2003) (rejecting Oregon's argument that "county jails must provide for such [restoration] treatment until OSH has a bed available"). Marion County offers no evidence that the County could have reasonably relied on to assume that either party would promote such interests at any point. *Empire Blue Cross & Blue Shield*, 62 F.3d at 1220 (rejecting intervention because of the lack of evidence explaining delay in intervention).

Marion County has frequently spoken out against the burden of continued placement of detainees unable to aid and assist in its own jail cells—including, bizarrely, in the present motion. ECF 478, at 2 (complaining that detainees found unable to aid and assist "often remain housed in jail, taking up valuable jail resources and in many cases pose risks of harm and liability to the County"). Plaintiffs cannot square this proposed interest with the county's support of a state court plan that would leave Mr. Velasquez-Sanchez in their jail seven nights a week. Marion County now identifies that it has an interest in the prolonged detention in its own jail facilities of detainees as long as they receive weekly restoration treatment. Marion County should have intervened decades ago to advocate for this outcome. Marion County could have never reasonably believed that either of the existing parties would represent this interest. With regards to the purported Marion County interests related to the March 2024 order, the county has had reason to know that *neither* party would protect those interests since 2002. Therefore, the "time of delay" is measured from the outset of the litigation.

Marion County does not request intervention for the *sole* purpose of appeal, although it indicates an intention to appeal. ECF 478, at 12 (asking for intervention with no limitation). Marion County's motion indicates it wishes to be a full party in trial and appellate matters. In such cases, timeliness may not be calculated from the date of entry of the order challenged. *State of Washington*, 86 F.3d at 1505 (refusing to apply timeliness analysis for intervention limited to appeal because intervenor asked to participate in trial court proceedings as well). Since Marion County does not limit the scope of its intervention to appeal, ordinary timeliness analysis applies. This Court has

already engaged in a timeliness analysis when Marion County brought its first motion to intervene. Marion County appealed that ruling and must litigate the issue in the Ninth Circuit, not attempt to relitigate it here before a different judge.

### B. Marion County Lacks Standing to Assert an Interest in Compelling "Outpatient" Treatment at OSH for Jail Detainees

Marion County lacks standing to challenge the March 2024 order. A party seeking to intervene must meet Article III standing requirements in order to do so. *Town of Chester*, 581 U.S. at 435. To demonstrate standing, a party must show an injury-in-fact, fairly traceable to the challenged conduct of the defendant, and likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The injury-in-fact must involve "an invasion of a legally protected interest," an interest that is concrete and particularized, as well as actual or imminent. *Id.* at 339. Marion County fails to identify any legally protected interest in the protracted detention of defendants unable to aid or assist in their jails with the concession of weekly restoration classes at OSH, because they have no such interest.

Marion County could never have a "legally protected interest" in the unconstitutional confinement of detainees found unable to aid and assist. Enforcement of the state court's February 9 order would violate the Fourteenth Amendment and the 2002 permanent injunction in this case, which prohibits long-term housing of detainees unable to aid and assist in jail cells. Mr. Velasquez-Sanchez is unable to aid and assist presently, yet he has been housed for months at the Marion County Jail since his release from OSH. "There is no rationalization that passes constitutional muster for unreasonably detaining

persons found unfit to proceed in county jails." *Oregon Advoc. Ctr. v. Mink*, No. CV 02-339-PA, 2002 WL 35578910, at *6 (D. Or. May 10, 2002). County jails provide "constitutionally inadequate" mental health care and placement there for "more than a brief period" causes delays in treatment. *Id.* The Court's order was plain that only "full admission of such persons into a state mental hospital or other treatment facility" would meet Oregon's constitutional burden. *Oregon Advoc. Ctr. v. Mink*, No. CV 02-339-PA, 2002 WL 35578888, at *1 (D. Or. May 15, 2002). The notion that a brief, once-a-week session meets the constitutional burden is defeated by the Court's explicit acknowledgement that only "full admission" to OSH suffices. Marion County lacks a legally protected interest in upholding a state court order blatantly violating the Fourteenth Amendment and the permanent injunction in this case.

Marion County's briefing appears to describe some other program than the one actually addressed in this Court's March 2024 order. The motion states that, in some unexplained way, the March 2024 order "further increases the financial and administrative burdens on the County" and that "even more individuals" will require services" as a result. ECF 478, at 2. The motion claims that because detainees "will now be denied outpatient services, these individuals will require a higher level of services." ECF 478, 2-3. This assertion is impossible to understand, since OSH has never offered and has no capacity to offer so-called "outpatient" treatment. Detainees are not "now" being denied "outpatient" services at OSH; they have always been denied such services. Those services do not exist at OSH and never have. Marion County could not possibly see an increase in financial and administrative burdens as a result of things remaining the

same. The conclusory assertions that the March 2024 order increases costs on Marion County by prohibiting a service that OSH has never offered nor provided are baseless. *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) (courts not required to take conclusory allegations in motions to intervene as true, nor entertain sham or frivolity). Under Judge Broyles' order, Marion County would have still been housing Mr. Velasquez-Sanchez seven days a week, incurring the further costs of transporting him to and from OSH once a week and likely *increasing* the costs to the County.[1] Nor does the county direct this Court to any statute, rule, or other source of law "legally protecting" any interest in treatment similar to that described in the state court's February 9 order.

Marion County identifies the harms it seeks to fight as the cost of holding individuals in jail, the financial burdens of an "unfunded mandate" to provide community restoration, and the placement of those needing hospital level of care treatment in community restoration settings. ECF 478, at 3. The state court's order detaining Mr. Velasquez-Sanchez in jail, not this Court's March 2024 order, imposes the costs of his incarceration on the county. The state court was free to—and required to—release Mr. Velasquez-Sanchez from jail once he could no longer be committed to the state hospital.

---

[1] The County makes much of the fact that it spent $1.72M on community-based treatment in 2023-24, relative to $1.61M contribution from OHA. ECF 478-2, ¶15. However, the County nowhere identifies a legal right to have 100% of its costs of community treatment covered by OHA. Further, as the County's declaration notes, it received $1.60M from OHA in 2022-23, but spent only $1.18M. *Id.* ¶14. The County does not explain why it cannot use the apparent $420,000 windfall saved from the prior year to make up a $118,222 deficit this year—with $300,000 left over. A complex government agency like Marion County should be able to manage routine year-to-year fluctuations in budgets and spending.

ORS 161.370(2)(c); ORS 161.371(7); ORS 161.371(3)(c)(B); *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). Nothing in the March 2024 order of this Court placed Mr. Velasquez-Sanchez in the Marion County Jail. Nothing in the March 2024 order created an "unfunded mandate" for Marion County, nor did it require that Marion County place anyone needing a hospital level of care in a community setting. None of those harms are fairly traceable to the March 2024 order, nor are Marion County's complaints grounded in a "legally protected interest." Further, these interests are essentially identical to those previously identified in the prior motion to intervene, making this motion obviously untimely and inappropriate. *See* ECF 402, at 4 (identifying burdens on County as burden of holding individuals in jail, the unfunded mandate of the community restoration service, and placement of people in the community requiring hospital level of care).

### C. The Motion Should Be Denied For Failure To Comply With Rule 24(c)

Marion County complicated the tasks of assessing any purported legal basis for their supposedly protected interests by failing to abide by the federal rules. A party moving to intervene "must attach" a "pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. Pro. 24(c). Marion County filed a proposed notice of appeal, ECF 478-1, but the notice of appeal is not a pleading, nor does it identify any claim or defense. *California Dep't of Toxic Substances Control v. Jim Dobbas, Inc*., 54 F.4th 1078, 1086 n.7 (9th Cir. 2022) (noting that a "pleading" for Rule 24(c) purposes is only an answer or complaint under Rule 7(a)). A "plaintiff must clearly allege facts demonstrating each element" of the standing inquiry. *Spokeo*, 578 U.S. at 338. Marion County has not shown a "legally protected interest" supporting standing, in

part by disregarding rules that would have organized the presentation of its claims. *McGuire v. Clackamas Cnty. Couns.*, No. 08-CV-1098-AC, 2009 WL 3188219, at *2 (D. Or. Sept. 30, 2009) ("For this reason alone [the failure to file a pleading under rule 24(c)], Mead's motion for intervention should be denied."); *Alaska v. Zinke*, No. 3:17-CV-00013 JWS, 2017 WL 3610531, at *1 (D. Alaska Aug. 22, 2017) (motion to intervene "defective" for failure to file pleading, which is "limited to complaints and answers").

Finally, Marion County's nominal interest in the broader application of Judge Broyles' February 9 order is greatly diminished by the lack of evidence that a similar order could or would ever be applied again. *Spokeo*, 578 U.S. at 338 (standing requires a showing that an injury "is likely to be redressed by a favorable judicial decision"). The unconstitutional protocol outlined by Judge Broyles in a single order applying to a single defendant has been emulated by no other judge and applied to no other defendant. Judge Broyles has been removed from all aid-and-assist matters in Marion County. The order in the Velasquez-Sanchez matter has been stayed by the Oregon Supreme Court in a mandamus action. Marion County cannot point to any judge ready to issue a similar order. Marion County cannot show that recission or amendment of the March 2024 order would actually redress its concerns, if no other state judge would impose such a scheme again and Judge Broyles is restricted from hearing such cases.

### D. Marion County Lacks a Significant, Legally Protectable Interest in Enforcing the State Court's Order

For many of the reasons stated above regarding the lack of standing, Marion County likewise lacks a "significant protectable interest" as required for intervention. The

"significant protectable interest" prong is typically met where "the interest [asserted] is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Berg*, 268 F.3d at 818. Remarkably, in five paragraphs discussing the County's "significant protectable interest," the County never directs the Court to a single law or rule that protects any interest identified. ECF 478, at 9-10. The County conclusorily states that its "interests are significantly impaired," that it must "pick up the slack" in community restoration, that the County lacks staff and funds to support individuals, and that dangerous individuals are released to the community. *Id.* Marion County fails to explain how a single one of the conclusorily-asserted interests are "protectable under some law," even after citing that exact standard to the Court. *Id.*

Marion County also falsely states that the March 2024 order "directly orders the County's staff forcing County personnel to violate state orders." ECF 478, at 10. The March 2024 order does no such thing. It orders no one to do anything. It imposes no burden on anyone, issuing only the simple declaration that "Judge Broyles' order violates the Supremacy Clause." ECF 475, at 3. Marion County asserts that, somehow, the March 2024 order "risks forcing the County to litigate state court contempt proceedings," when 1) no such thing has happened to the County at any point in since September 2022, and 2) the very purpose of the March 2024 order was to prevent Defendants from having to litigate state court contempt proceedings. Marion County does not explain why its fear of imagined state court contempt proceedings supersedes the State Defendants' very real fears of actual state court contempt proceedings, scheduled for 24 hours from the entry of the March 2024 order.

The Court should also take notice that Marion County failed to file a brief opposing the motion to determine the supremacy clause issue—although the county has frequently alerted the Court to its concerns, great and otherwise. ECF 259 (motion to appear as *amicus curiae*); ECF 266 (rebuttal brief); ECF 276 (brief on scope of judicial authority); ECF 366(opposition to motion to compel transport); ECF 384 (memorandum regarding wording of proposed order); ECF 402 (motion to intervene); ECF 410 (reply in support of motion to intervene); ECF 429 (response to motion to compel compliance); ECF 444 (memorandum critiquing phrasing of proposed order); ECF 456 (motion to set briefing schedule). The district attorney *amici* and the state judge *amici* both filed responses to the motion on the Supremacy Clause issue, though neither set of *amici* opposed the entry of the order. ECF 470; ECF 468. Marion County, for reasons totally unexplained, neglected to raise any objection to the Defendants' February 2024 motion. ECF 460.

Marion County asserts that it "has acted as a de facto adverse party in the case since August 2022." ECF 478, at 12. An adverse party waives any right to appeal or otherwise challenge an order of the Court if it fails to oppose the motion in the first place. *Silvas v. E\*Trade Mortg. Corp*., 514 F.3d 1001, 1007 (9th Cir. 2008). Marion County believes that its significant interest is so compelling that, not only must this Court allow it to intervene, the Court must allow it to do so on an expedited schedule. ECF 479. Yet Marion County offers no explanation for why it could not be bothered to tell the Court that it opposed Defendants' motion at any point in three weeks between the filing of the motion and the Court's ruling, even though two other *amici* groups lodged their non-

objections in a timely way. How compelling an interest can Marion County's interest be if it failed to file even a short brief explaining its position to the Court on the topic? The Court was left to conclude, in the counties' silence, that "neither the amici counties nor the amici judges dispute the merits of Defendants' argument." ECF 475, at 2. Marion County's neglect to take the most basic steps to assert its rights—filing a brief in opposition—undermines its claims that it has interest in the state court order.

### III.    Marion County Cannot Intervene on a Permissive Basis

Marion County fails to justify a claim for permissive intervention for many of the same reasons that its claim for intervention of right fail. A party intervening in a case on a permissive basis must show 1) a common question of law and fact with the main action, 2) timeliness, and 3) an independent basis for jurisdiction over the applicant's claims. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). As indicated by the U.S. Supreme Court in *Town of Chester*: "For all relief sought, there must be a litigant with standing." 581 U.S. at 439. If Marion County seeks relief not pursued by a party with standing—which it admits it does—it must itself show standing to seek that relief. Plaintiffs have already shown above that the intervention is untimely and that Marion County lacks standing to seek the relief in question.

The requirement for an "independent basis of jurisdiction" explicitly requires a "basis for federal subject matter jurisdiction independent of the court's jurisdiction over the underlying action*." E.E.O.C. v. Nevada Resort Ass'n*, 792 F.2d 882, 886 (9th Cir. 1986). As stated above, Marion County failed to file a required complaint or answer in intervention, which would have required Marion County to allege the federal subject

matter jurisdiction over any claim or defense it would present. Where "on its face" the motion to intervene "fails to allege an independent basis for federal subject matter jurisdiction," it is error for a district court to grant permissive intervention. *Id.*; *accord Int'l Paper Co. v. Inhabitants of Town of Jay*, 887 F.2d 338, 345 (1st Cir. 1989). The district court neither should nor could try to guess about whether any of the putative interests asserted by Marion County identify a basis for federal jurisdiction.

DATED April 2, 2024.

LEVI MERRITHEW HORST PC

/s *Jesse Merrithew*
Jesse Merrithew OSB # 074564
jesse@lmhlegal.com
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

*Counsel for Plaintiffs Metropolitan Public Defender, Jarrod Bowman, and Joshawn Douglas-Simpson*

DISABILITY RIGHTS OREGON

/s *Emily Cooper*
Emily Cooper OSB # 182254
ecooper@droregon.org
Thomas Stenson, OSB # 152894
tstenson@droregon.org
511 SW 10th, Suite 200
Portland OR 97205

Tel:     (503) 243 2081
FAX:  (503) 243 1738

*Counsel for Plaintiff Disability Rights Oregon*