IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON,<br><br>        Plaintiffs,<br>v.<br><br>PATRICK ALLEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital,<br><br>        Defendants. | Case No.: 3:02-cv-00339-AN (lead)<br>             3:21-cv-01637-AN<br>             (consolidated)<br><br>OPINION AND ORDER |

Amicus curiae Marion County (the "County") moves, for the second time, to intervene in this case pursuant to Federal Rule of Civil Procedure 24(a) and (b). Along with its Motion to Intervene, the County filed a Motion to Expedite or Accelerate Ruling on March 29, 2024, asking this Court to rule on the Motion to Intervene by April 4, 2024. Plaintiffs oppose the motion, and defendants take no position. For the following reasons, the County's Motion to Expedite or Accelerate Ruling is GRANTED, and the County's Motion to Intervene is DENIED.

## LEGAL STANDARD

**A.    Intervention of Right**

Federal Rule of Civil Procedure 24(a)(2) requires a court to permit intervention when four requirements are met:

> "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action."

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc). The applicant seeking to intervene bears the burden of showing that all four requirements are met. *Chamness v. Bowen*, 722 F.3d

1110, 1121 (9th Cir. 2013). In making its determination, a court is "guided primarily by practical and equitable considerations, and the requirements of intervention are broadly interpreted in favor of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

**B.      Permissive Intervention**

Federal Rule of Civil Procedure 24(b)(1)(B) grants courts discretion to permit intervention when an applicant makes a timely motion to intervene and "has a claim or defense that shares with the main action a common question of law or fact." The movant bears the burden of establishing three requirements: (1) the applicant shares a common question of law or fact with the main action; (2) the applicant's motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims. *Cooper v. Newsom*, 13 F.4th 857, 850 (9th Cir. 2021). Even if all three requirements are met, "the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id.*

## BACKGROUND

The factual background of this case is well set out in prior opinions and orders. *See, e.g.*, Op. & Order of Jan. 9, 2023, ECF [338]; Op & Order of May 25, 2023, ECF [395]. As relevant to the present motion, the County has participated in this matter as amicus curiae since August 29, 2022. Minutes of Proceedings of Aug. 29, 2022, ECF [269]. In June of 2023, the County sought to intervene in this case based on the indirect effects of the September 1, 2022 Order to Implement Neutral Expert's Recommendations (the "September 2022 Order"), ECF [271], on the County's programs and services, and the anticipated effects of a pending motion to amend the order. First Mot. to Intervene ("1st Mot. to Intervene"), ECF [402], at 2-3. That motion was denied at oral argument on June 29, 2023. Minutes of Proceedings, ECF [415]. In denying the motion, U.S. District Judge Mosman stated on the record:

> "I disagree that Marion County has met the standard for either mandatory or permissive intervention, both on the merits of the rule, and particularly on timeliness. Certainly some facts have changed, but the sort of litigation posture of the parties and who is advancing, for example, Marion County's interests and who isn't, that's been a longstanding situation that hasn't dramatically changed by altered facts on the ground."

Tr. of Oral Arg. from June 29, 2023, ECF [421], at 19:23-20:5. The County filed a Notice of Appeal on

July 27, 2023, and the appeal is currently pending before the Ninth Circuit. Notice of Appeal, ECF [424].

On July 3, 2023, Judge Mosman issued a Second Amended Order to Implement Neutral Expert's Recommendations (the "Second Amended Order"), ECF [416], which is the operative injunctive order in this case. On February 9, 2024, Marion County Circuit Court Judge Audrey Broyles ordered the Oregon State Hospital to provide outpatient restoration services to a criminal defendant. Op. & Order of Mar. 6, 2024, ECF [475], at 2. The defendant had already received the maximum duration of restoration services authorized under the Second Amended Order, but he was not restored to competency. *Id.* On March 6, 2024, Judge Mosman issued an order (the "March 2024 Order") holding that Judge Broyles' order violated the Supremacy Clause because it required the Oregon State Hospital to provide the defendant with restoration services that exceeded the Second Amended Order's maximum duration. *Id.* at 2-3.

The County now moves, for the second time, to intervene in this case, alleging that, as a result of the September 2022 Order, "the County's community restoration caseload tripled while placement options dwindled." Second Mot. to Intervene ("2d Mot. to Intervene"), ECF [], at 2. Further, it argues that the March 2024 Order "further increases the financial and administrative burdens on the County" because "[b]y prohibiting Oregon State Hospital . . . outpatient services as an alternative to community restoration, the County will be presented with even more individuals requiring services." *Id.* This, the County alleges, "further burden[s] the County's already strained resources" because it creates "an increase in the number of individuals remaining in jail," "an increased number of individuals charged with violent crimes simply leaving services without receiving stabilizing treatment," and "obvious fiscal consequences to the County from the increase in services that is caused by turning individuals away from outpatient services." *Id.* at 3.

## DISCUSSION

Although the County reiterates many arguments already made in its June 2023 motion to intervene, the denial of that motion is currently pending on appeal before the Ninth Circuit. Thus, to the extent the County is asking this Court to reconsider the decision to deny its first motion to intervene, the Court is without jurisdiction to do so. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885-86 (9th Cir. 2001) ("[J]urisdiction is transferred from a district court to a court of appeals

3

upon the filing of a notice of appeal."). Accordingly, the Court considers the second motion to intervene only insomuch as the County's arguments relate to the March 2024 Order.

### A.     Timeliness of the Motion

For both permissive intervention and intervention by right, a threshold requirement is that the motion is timely. Timeliness is assessed based on three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992).

As an initial matter, the County asks this Court to grant its motion so that "it may appeal the March 2024 [ ] Order," but also states that the County seeks to intervene to address "particularized harms." Whether the County is seeking limited intervention for the purpose of appeal is relevant to the timeliness inquiry because "[a] motion to intervene seeking only to participate in the appeal is timely if filed within the time allowed for filing an appeal." *United States v. State of Washington*, 86 F.3d 1499, 1505 (9th Cir. 1996). However, the County declined to file a complaint or otherwise explain the scope of relief that it seeks to obtain through intervention, making it difficult for the Court to ascertain what rights the County is claiming through intervention. Given the lack of clarity regarding whether the County seeks only limited intervention for the purposes of an appeal, and the fact that the County's first motion sought full intervention, the Court declines to treat the present motion as one for limited intervention and the traditional timeliness test for motions seeking full intervention applies. *Id.* at 1505-06.

### 1.     *Stage of the Proceedings*

The County's present motion to intervene was filed twenty-four years after the commencement of this case. Final judgment was entered in this case on May 15, 2002, that judgment was affirmed by the Ninth Circuit on April 1, 2003, and this Court has retained jurisdiction solely to enforce the permanent injunction. Generally, "postjudgment intervention is generally disfavored because it creates 'delay and prejudice to existing parties.'" *Calvert v. Huckins*, 109 F.3d 636, 638 (9th Cir. 1997) (quoting *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986)). To be sure, the unique circumstances of this case may impact that general rule; however, litigation regarding enforcement of the

injunction has been ongoing since 2019. At the very least, the County is seeking to intervene over four years after the current stage of proceedings began. This factor weighs against a finding that the motion is timely.

    2.    *Prejudice to the Other Parties*

The County argues that intervention is not likely to result in prejudice to the other parties because it "shared its position beginning at the earliest possible time, as soon as its interests were impacted[.]" 2d Mot. to Intervene 8. It alleges that its concerns "have been the primary issue in this case for some time." *Id.* However, plaintiffs argue that the County intervening would result in substantial prejudice because the very purpose of the County's intervention is to revisit already decided issues. The decisions on those issues are, in the plaintiffs' views, what led to the "complex and delicately balanced" orders that are currently in place in this case.

Again, this factor weighs against a finding that the motion is timely. Like the plan devised in *United States v. State of Oregon*, the Second Amended Order resulted from substantial negotiation between the parties, certain points of the plan are still disputed, and allowing the County to intervene at this point would cause substantial prejudice by disrupting the "delicate balance the parties have achieved." 913 F.2d 576, 588-89 (9th Cir. 1990). That the County's concerns have been known to the parties does not diminish the likelihood that allowing the County to intervene threatens to unravel the meticulously mediated agreement that the parties have reached.

    3.    *Reason for and Length of Delay*

The length of delay is "measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties[.]" *State of Washington*, 86 F.3d at 1503. Reiterating arguments made in its first motion to intervene, the County argues that the time between its appearance as amicus and the present motion to intervene should not be counted as a delay. *Compare* 1st Mot. to Intervene 9 ("Although its participation was initially as an *amicus* in label, the County was effectively serving the role of adverse party, meaning that there was functionally no delay in the County's efforts to adequately protect its interests.") *with* 2d Mot. to Intervene 9 ("Because the County as

5

*amicus* served as a functionally adverse party, there was initially no need to seek formal intervention until it became clear that the [September 2022 Order] would be amended to directly bind the County."). Because these arguments were already made in County's first motion to intervene, the Court cannot revisit them.

The County also argues that the present motion does not suffer from a delay because of the "significant change in circumstances wrought by the March 6, 2024 Mosman Order," namely, that the March 2024 Order "extended [the case] to outpatient services." 2d Mot. to Intervene 9. However, plaintiffs argue that at no point in this litigation could the County have "reasonably believed that [p]laintiffs would promote a scheme confining a detainee found unable to assist in a jail cell, while offering a once-a-week opportunity for restoration classes" or that defendants would have an "interest in voluntarily assuming the responsibility of offering restorative services on an outpatient basis." Pls.' Resp. to 2d Mot. to Intervene, ECF [480], at 7. Further, plaintiffs argue that the County's purported interest related to the March Order is directly contravened by its own arguments. That is, plaintiffs highlight that the County has routinely spoken out "against the burden of continued placement of detainees unable to aid and assist in its own jail cells," yet now posits that it "has an interest in the prolonged detention in its own jail facilities of detainees as long as they receive weekly restoration treatment." *Id.* at 8.

The Court agrees with plaintiffs. There has not been a point in this litigation where the County reasonably could have believed that either party would advocate for the use of outpatient services for defendants in custody. If the County had an interest in obtaining outpatient services for detainees, it should have known that that interest was not being protected since the first injunction was put in place. *See* Judgment, ECF [51], at 1 ("[Commitment] shall be fulfilled by providing *full admission* of such persons into a state mental hospital or other treatment facility."). Even assuming that the County, as it states in its briefing, only became aware that the parties would not adequately protect its interests "upon learning that the parties were in agreement about implementation of the August 2022 Mosman Order," this still results in an over one-and-a-half-year delay.

Finally, the Court agrees with plaintiffs that the County's reasoning for the delay is inconsistent with the County's position and arguments over the last two years. That is, the County now

argues that it has an interest in providing outpatient services to detainees in custody, thereby prolonging the length of time detainees are in the County's jails, yet it has consistently held the position that holding detainees found unable to aid and assist in County jails takes up "valuable jail resources" and "pose[s] risks of harm and liability to the County." This contradiction cannot be reconciled and is insufficient to adequately explain the County's delay in seeking to intervene in this case.

In sum, the Court finds that the County's motion to intervene (1) is brought twenty-one years after judgment was entered, and four years into the enforcement stage of the proceedings, (2) would result in substantial prejudice to the parties; and (3) suffers from, at best, a one-and-a-half-year delay with no justifiable reason for the delay. Therefore, the County's motion is not timely.

**B.      Remaining Factors**

Having found that the County's motion is not timely, the Court need not consider the remaining elements for permissive intervention or intervention by right. *See State of Oregon*, 913 F.2d at 589 ("Because we affirm the district court's decision that the Makah's motion was not timely, we need not reach any of the remaining elements of the test set forth in Rule 24."); *id.* ("A finding of untimeliness defeats this [permissive intervention] motion as well.").

## CONCLUSION

Accordingly, amicus curiae Marion County's Motion to Expedite or Accelerate Ruling, ECF [479], is GRANTED, and its Second Motion to Intervene, ECF [478], is DENIED.

IT IS SO ORDERED.

DATED this 4th day of April, 2024.

Adrienne Nelson
United States District Judge