Eric J. Neiman, OSB #823513
eneiman@ebglaw.com
Emma P. Pelkey, OSB #144029
epelkey@ebglaw.com
EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, OR 97209
Telephone: 503.343.6475

Thomas R. Johnson, OSB #010645
Tom.Johnson@stoel.com
Alex Van Rysselberghe, OSB #174836
Alex.VanRysselberghe@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

Hon. Adrienne Nelson

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON; METROPOLITAN PUBLIC DEFENDERS INCORPORATED; and A.J. MADISON,<br><br>Plaintiffs,<br>v.<br><br>SEJAL HATHI, in her official capacity as Director of Oregon Health Authority; and SARA WALKER, in her official capacity as Superintendent of the Oregon State Hospital,<br><br>Defendants. | Case No.: 3:02-cv-00339-AN (Lead Case)<br><br>PLAINTIFFS LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; PROVIDENCE HEALTH & SERVICES – OREGON; AND ST. CHARLES HEALTH SYSTEM'S RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE |

PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE
PAGE - 1

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

| | |
|---|---|
| JAROD BOWMAN; and JOSHAWN DOUGLAS SIMPSON,<br><br>Plaintiffs,<br><br>v.<br><br>SARA WALKER, Superintendent of the Oregon State Hospital, in her individual and official capacity; SEJAL HATHI, Director of the Oregon Health Authority, in her individual and official capacity,<br><br>Defendants. | **ORAL ARGUMENT REQUESTED**<br><br>Case No.: 3:21-cv-01637-AN (Member Case) |
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; PROVIDENCE HEALTH & SERVICES – OREGON; and ST. CHARLES HEALTH SYSTEM,<br><br>Plaintiffs,<br><br>v.<br><br>SEJAL HATHI, in her official capacity as Director of Oregon Health Authority,<br><br>Defendant. | Case No.: 6:22-cv-01460-AN (Member Case) |

PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE
PAGE - 2

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

## INTRODUCTION

Mental Health Association of Portland's ("MHAP") motion to intervene should be denied because it seeks to join a lawsuit that does not exist. Whereas Hospitals bring claims seeking to remedy the crisis for civilly committed patients, and to ensure that these patients receive the treatment they need and are entitled to, MHAP seeks to advance its "[s]eparate and distinct" cause of reducing civil commitment altogether. ECF 139 at 14.

But this lawsuit is not about that issue. Hospitals' claims are not about *whether* patients should be civilly committed. And Hospitals certainly do not bring this lawsuit to *increase* civil commitments in Oregon, nor do Hospitals pursue remedies that will have that effect. Rather, Hospitals are focused on a different issue: ensuring Oregon Health Authority ("OHA") provides patients who *already* are civilly committed with the long-term, restorative treatment they are entitled to receive. Despite MHAP's insistence that intervention will not "cause extreme inconvenience," ECF 139 at 10, MHAP's admission as a party will inevitably (and unnecessarily) widen the scope of issues, prolong litigation, and distract from the important purpose of this lawsuit.

Moreover, in the new lawsuit MHAP wants to create, MHAP seeks to sue Hospitals—which only provide emergency and acute care—for *OHA's failure* to provide long-term, restorative treatment to patients *committed to the custody of OHA* for 180 days of treatment. MHAP seeks to impose injunctions against Hospitals that would fundamentally transform Hospitals' emergency and acute care services into long-term treatment services, potentially depleting highly needed and already overburdened emergency and acute care resources available to civilly committed patients in Oregon. MHAP's attempt to blame Hospitals for OHA's failures is misguided, meritless, and simply not grounded in reality.

PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE
PAGE - 3

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

MHAP also bases its motion on arguments that have already been dismissed by the Ninth Circuit or otherwise displaced by the allegations in the Second Amended Complaint. MHAP rests on the misinformed theory that so-called "Hospital Corporations"—a term that MHAP borrows from Disability Rights Oregon's ("DRO") briefing, and seemingly uses pejoratively—secretly wish to eject all civilly committed patients from their bed and, somehow, are responsible for OHA's failures. That is wrong. Like OHA, MHAP ignores the allegations in the Second Amended Complaint asserting *the very opposite*. In any event, the Ninth Circuit rejected these arguments, which were based on allegations in the First Amended Complaint.

MHAP further fails to establish Article III standing to assert claims against Hospitals and lacks a significant protectable interest that would justify its status as a party. MHAP's asserted interest in reducing civil commitment is fundamentally unrelated to, and will not be impaired by, the resolution of Hospitals' claims. Meanwhile, MHAP's asserted interests in pursuing claims against OHA are adequately represented by Hospitals.

MHAP may not intervene—either as a matter of right or permissively—for the purpose of commandeering Hospitals' lawsuit to create a new and different case than the one Hospitals are entitled to bring and have heard. MHAP may pursue its public policy objectives elsewhere. But MHAP may not take over Hospitals' lawsuit and use it as a platform to advance its own "[s]eparate and distinct" agenda. ECF 139 at 14.

## ARGUMENT

### I.  MHAP Has No Right to Intervene Under Rule 24(a)(2).

Rule 24 is "not intended to allow for the creation of whole new suits by intervenors." *Wash Elec. Co-op, Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (9th Cir. 1990). Consequently, "intervention is unavailable where an applicant seeks to 'inject new, unrelated issues into the pending litigation,' or to 'expand the suit well beyond the scope of the current

PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE
PAGE - 4

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

action.'" *Apple Inc. v. Iancu*, No. 5:20-CV-06128-EJD, 2021 WL 411157, at *4 (N.D. Cal. Feb. 5, 2021) (citing *Akina v. Hawaii*, 835 F.3d 1003, 1012 (9th Cir. 2016)) (internal punctuation omitted). In other words, "an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944).

Even then, an applicant for intervention as of right must satisfy four criteria under Rule 24(a)(2):

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir.1998)). Failure to satisfy any requirement is fatal to the application, and the Court need not reach the remaining elements if one element is not satisfied. *See California ex rel. Van de Kamp v. Tahoe Reg'l Planning Agency*, 792 F.2d 779, 781 (9th Cir.1986). The proposed intervenor "bears the burden of showing that *all* the requirements for intervention have been met." *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (emphasis in original).

Here, MHAP's motion to intervene fails because it seeks to tack on a new and different lawsuit onto the present one. Beyond that fundamental flaw, MHAP lacks Article III standing to sue Hospitals and otherwise lacks a significant protectable interest. While MHAP may have public advocacy that it wants to pursue, its interests will not be affected—let alone impeded or impaired—by Hospitals' claims. And to any extent this case may implicate MHAP's discrete interests against OHA, MHAP fails to show that those interests will not be adequately represented by Hospitals or the Oregon Chapter of the National Alliance on Mental Illness ("NAMI-Oregon") (if granted intervenor status).

PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE
PAGE - 5

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

### A. MHAP lacks a significantly protectable interest in this lawsuit.

As MHAP's motion and proposed complaint reveal, MHAP wants to intervene so that it can advance its separate cause of reducing the use of civil commitment and force non-profit acute care hospitals to enter the long-term care space (which, as Hospitals have alleged in the Second Amended Complaint, is inconsistent with providing emergency and acute care services and could *reduce* the availability of critically needed emergency and acute care resources for civil commitment patients in Oregon). In short, MHAP's primary aim is to create a whole new suit by using Hospitals' fundamentally different case as a vehicle to do it. That is not the purpose of intervention under Rule 24(a)(2). As explained below, MHAP cannot intervene as a matter of right because it does not have a sufficiently protectable interest. MHAP lacks Article III standing to assert claims against Hospitals for OHA's failures, and the advocacy it otherwise wishes to pursue is unrelated to this case.

#### 1. MHAP lacks standing to intervene to pursue different relief.

While Article III standing is not needed to intervene to assert the same relief sought by a plaintiff, it is needed to assert different relief. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). For purposes of intervening, standing is "implicitly addressed" in the significant interest requirement. *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821, n.3 (9th Cir. 2001); *see also Perry v. Schwarzenegger*, 630 F.3d 898, 904 (9th Cir. 2011) (analyzing standing under the significant protectable interest prong).

When a party seeks to intervene, whether as of right or permissively, and seeks to pursue different relief from the original plaintiff, the intervening party must establish distinct Article III standing to pursue its independent claim and relief. *Town of Chester*, 581 U.S. at 440 (holding that "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing."); *In re Volkswagen 'Clean Diesel'*

PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE
PAGE - 6

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

*Mktg., Sales Pracs., & Prod. Liab. Litig.*, 894 F.3d 1030, 1044 (9th Cir. 2018) (finding no intervention as of right where requested relief went beyond what the plaintiff requested and the intervenor had not adequately alleged Article III standing). The Supreme Court has repeatedly confirmed that "[s]tanding is not dispensed in gross," *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (citation omitted), which means that "[f]or all relief sought, there must be a litigant with standing[.]" *Town of Chester*, 581 U.S. at 439. By contrast, "intervenors that seek the same relief sought by at least one existing party to the case need not do so." *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1085 (9th Cir. 2022).

Here, MHAP seeks additional and different relief *against* Hospitals for OHA's failures. MHAP seeks a court order declaring that Hospitals have violated patients' Due Process rights in violation of the Fourteenth Amendment and violated the Americans with Disabilities Act under *Olmstead*. MHAP also seeks injunctions against Hospitals that seek to fundamentally transform Hospitals' emergency and acute care services into long-term treatment services, which would deplete the highly needed and already overburdened emergency and acute care resources currently available to civilly committed patients in Oregon. Because MHAP's complaint pursues new claims for relief *against* new parties, MHAP must establish independent Article III standing for those new claims to intervene.

MHAP cannot meet its burden to demonstrate independent Article III standing. The proposed complaint fails to plead facts demonstrating either organizational or associational standing. MHAP fails to establish organizational standing because it has not alleged frustration of its organizational mission by Hospitals' actions or diversion of its resources to combat those frustrations. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004).

MHAP has similarly failed to establish associational standing to bring claims against Hospitals, which requires that one of its "members would otherwise have standing to sue in their

PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE
PAGE - 7

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). MHAP fails the first prong, which requires it to "show that a member suffers an injury-in-fact that is traceable to the defendant and likely to be redressed by a favorable decision." *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013).

MHAP's proposed complaint fails to do so because it does not allege that *any* MHAP member is (or will likely be) civilly committed, let alone subject to civil commitment in Hospitals' facilities and likely to suffer injuries from Hospitals' alleged conduct. MHAP alleges only that "individuals *like* members of MHAP are sent to Hospital Corporation facilities." ECF 139-1 at 5 (emphasis added). That is not sufficient. The issue for associational standing is whether an *MHAP member*—not individuals *like* MHAP members—are "*immediately* in danger of sustaining some *direct* injury" because of Hospitals' alleged conduct or that "the injury or threat of injury is both real and immediate, not conjectural or hypothetical." *Scott v. Pasadena Unifed Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983)) (emphasis in original). MHAP alleges no such impending harm.[1]

---

[1] NAMI-Oregon, in contrast, pursues claims and relief that is coextensive with that of Hospitals, such that NAMI-Oregon does not need to establish independent standing. *See Town of Chester*, 581 U.S. at 440. But even if NAMI-Oregon had to establish independent standing, it sufficiently articulates that its own members are subject to civil commitment orders and impacted by OHA's conduct. *Compare* ECF 139-1 at 5 ("[I]ndividuals *like* members of MHAP are sent to Hospital Corporation facilities.") *with* ECF 121 at 3, 7 ("[NAMI's membership] includes individuals who are subject to civil commitment orders or may become subject to such orders in the future[.]") *and* ECF 142 at 8 ("NAMI-Oregon's membership includes individuals who have been subject to civil commitment orders, and family members of such individuals. Any individual who has been subject to civil commitment order is impacted by OHA's failure to provide appropriate care and warehousing of patients in inappropriate facilities, as it limits NAMI-Oregon's members' ability to get long-term care, and it limits the supply of hospital beds available for acute care needs.").

| PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE<br>PAGE - 8 | EPSTEIN BECKER & GREEN, P.C.<br>1125 NW Couch Street, Suite 500<br>Portland, Oregon 97209<br>Phone: 503.334.6475• Fax: 503.343.6476 | STOEL RIVES LLP<br>760 SW Ninth Avenue, Suite 3000<br>Portland, Oregon 97205<br>Phone: 503.224.3380 • Fax: 1.503.220.2480 |

Beyond that, MHAP's allegations about individuals are simply statements that MHAP recycled from Hospitals' former First Amended Complaint, and merely recast to fit its own narrative. *Compare* ECF 28 at ¶¶ 36–39, *with* MHAP's complaint, ECF 139-1 at ¶¶ 19–22. But none of the individuals identified in MHAP's pleading are alleged to be members of MHAP. MHAP lacks associational standing to assert their claims. *See Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 287 (3d Cir. 2002) ("Because the patients are not members of, or otherwise directly associated with, the Pennsylvania Psychiatric Society, the Society does not have associational standing to assert their claims.").

MHAP also alleges that members of its board include persons with mental illness and attorneys who represent people with mental illness in civil commitment hearings.[2] While these allegations may support the premise that the MHAP board may relate to others suffering from mental illness generally, this is insufficient to establish that *MHAP members* have been injured *by Hospitals*.[3]

---

[2] Meredith Sasani, an attorney with DRO, is on MHAP's Board of Directors. Additionally, Dave Boyer, lead attorney for DRO, is part of MHAP's Mental Health Alliance, which provides advocacy in court cases. This is problematic because the Ninth Circuit previously ruled that DRO had a conflict of interest that called "into serious question DRO's ability fairly to represent the civilly committed patients." ECF 105 at 7.

[3] Finally, MHAP cannot establish third-party standing. Because Article III standing is a "jurisdictional prerequisite to the consideration of any federal claim," *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1255 (9th Cir. 2008), MHAP cannot argue that it has third-party standing here since it cannot satisfy Article III standing whether based on organizational or associational standing. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 393 n.5 (2024) ("[E]ven when we have allowed litigants to assert the interests of others, the litigants themselves still must have suffered an injury in fact . . . .") (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013)); *compare* ECF 142 at 9 (NAMI articulates injury to its mission) *with* ECF 139-1 (MHAP alleges no such injury). But even if MHAP could establish Article III standing for its claims, it remains far from clear that MHAP would have a sufficiently "close relation" to Hospitals' patients to assert claims on their behalf. MHAP seeks injunctive relief that would require Hospitals to provide long-term care to patients, which Hospitals explain is fundamentally incompatible and mutually exclusive with emergency and acute care. *See, e.g.*, SAC ¶¶ 6–12, 17–19. Thus, MHAP's requested relief with respect to Hospitals could harm civilly committed patients by causing a reduction of much-needed and already-limited emergency and acute care resources available to civilly committed patients.

PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE
PAGE - 9

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

In short, MHAP lacks standing to assert claims against Hospitals. MHAP does not have a significant protectable interest in pursuing claims against Hospitals in this case.

### 2. MHAP fails to otherwise show a significant protectable interest.

In addition to lacking standing to pursue claims against Hospitals, MHAP fails the second requirement because it also lacks a significant protectable interest related to Hospitals' claims.

MHAP argues generally that it satisfies the second requirement because "public advocacy relating to the particular issue addressed in the suit gives rise to a significant, protectable interest." ECF 139 at 7. That may be, but MHAP's "advocacy" and the "cause" it seeks to advance is "reducing the necessity of civil commitment, rather than expanding the practice." ECF 139 at 14; *see id.* at 5, 9. But that issue is not being litigated here, nor could MHAP's cause be materially advanced by participating in this case. This lawsuit is about OHA's failure to provide long-term, restorative treatment to individuals who are *already* civilly committed. It is not about whether individuals should be civilly committed to begin with, or how to reduce or expand civil commitment.

While MHAP's interest may be protectable under some law or theory, there is an insufficient relationship between that interest and the claims at issue in this case. *See Arakaki*, 324 F.3d at 1084 (noting that there must be a relationship between the legally protected interest and the claims at issue). MHAP's generalized interest in reducing civil commitment is far removed from the focus of this lawsuit and not adequate to constitute a significant protectable interest to intervene. *See Alisal Water Corp.*, 370 F.3d at 920 (mere generalized interest in the prospective collectability of a debt was not a basis to allow a litigant's creditor to intervene where the putative intervenor's interest was "several degrees removed" from the present matter).

MHAP seeks to intervene in a lawsuit that does not exist, or at least is not this one. It is perhaps understandable why the State would not oppose this re-purposing (and new focus) of the

PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE
PAGE - 10

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

lawsuit the Hospitals bring, but this is not a proper use of intervention. Allowing MHAP to do so would impermissibly "inject new, unrelated issues into the pending litigation" and "expand the suit well beyond the scope of the current action." *Akina*, 835 F.3d at 1012 (citing *Arakaki*, 324 F.3d at 1086). Hospitals' Second Amended Complaint defines the scope of this lawsuit and MHAP should not now be permitted to transform it into a different case. *See Apple Inc.*, 2021 WL 411157, at *4 (proposed intervenors could not "by intervention radically alter" the scope of the complaint "to create a much different case.").

In short, MHAP's proposed suit "serves a different legal purpose" from Hospitals' Second Amended Complaint and would have "an independent legal effect." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993). It should remain separate.

### B.     MHAP invokes interests that would not be impaired or impeded by resolution of this case.

The third requirement for intervention as of right considers whether "the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interests." *Alisal Water Corp.*, 370 F.3d at 919. MHAP makes only two arguments in support of this requirement, both of which fail.

MHAP first contends that it needs to intervene because the "resolution of this case" will "change the material landscape of MHAP's work and advocacy." ECF 139 at 9. But that is not unique to MHAP and true for everyone in the behavioral health space in Oregon. MHAP must show that its interests are impaired or impeded in a specific way. Merely having "an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." *Southern California Edison Co. v. Lynch*, 307 F.3d 794, 803 (2002) (quoting *Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205

PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE
PAGE - 11

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

(1st Cir. 1998)); *Alisal Water Corp.*, 370 F.3d at 920 (same). To hold otherwise would create an open invitation for virtually anyone in the behavioral health space to intervene in this case.

MHAP's only other argument is that "[i]f the Parties fail to advance the cause of reducing civil commitments and instead seek to increase the practice's size and scope, then MHAP's cause will be set back by years if not decades." ECF 139 at 9. That, too, is wrong. This lawsuit is about OHA's obligation to provide restorative, long-term treatment to individuals who are *already* civilly committed, not whether the use of civil commitment should be reduced or expanded. That is an entirely different issue, and MHAP's belief that this lawsuit will somehow impact its separate cause is highly speculative. *See City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) (an "intervenor cannot rely on an interest that is wholly remote or speculative.").

Where, as here, "other means" exist to protect the intervenor's interests, such as an alternative forum, the intervenor's interests are not impaired. *Alisal*, 370 F.3d at 921. Here, if MHAP is interested in advancing its cause of reducing civil commitment, there are other avenues available. If MHAP wants to litigate the unfairness or unconstitutionality of civil commitment laws, MHAP can file a lawsuit to challenge the civil commitment statutes. *See Akina*, 835 F.3d at 1012 (no intervention as of right where proposed intervenors "could adequately protect their interests in separate litigation"); *Miniace v. Pac. Mar. Ass'n*, No. C 04-03506S1, 2005 WL 2230149, at *3 (N.D. Cal. Sept. 13, 2005) (same). And to whatever extent it may be convenient for MHAP to intervene in an existing lawsuit rather than litigate separately, "[m]ere inconvenience" caused by having "to litigate separately is not the sort of adverse practical effect contemplated by Rule 24(a)(2)." *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977).

In sum, MHAP has failed to demonstrate that its interests would be impaired or impeded absent its participation as a party. This factor, too, warrants denial of MHAP's motion.

PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE
PAGE - 12

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

### C. MHAP fails to establish inadequate representation.

A putative intervenor must also show that the existing parties do not adequately represent the intervenor's interest. Fed. R. Civ. P. 24(a)(2). In determining adequacy of representation, courts consider the following three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086. The most important factor is how the proposed intervenor's interest compares with the interests of existing parties. 7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1909, at 318 (2d ed.1986). Where parties share the same ultimate objective, a "mere difference of opinion concerning the tactics with which the litigation should be handled" does not render representation inadequate. *Id.*; *see Arakaki*, 324 F.3d at 1086.

MHAP argues that Hospitals do not adequately represent its interests because Hospitals' "interest is primarily pecuniary." ECF 139 at 10. But this argument is premised on a cynical mischaracterization of Hospitals' motivations for bringing this lawsuit, which is not reflected in the operative complaint.[4] These arguments were also already raised and rejected by the Ninth Circuit even before Hospitals amended their complaint. Hospitals, moreover, have since filed a Second Amended Complaint, which continues to make clear that this lawsuit is for patients: "Community hospitals bring this lawsuit to hold OHA accountable and ensure civilly committed patients have access to the most appropriate long-term treatment options." ECF 117 at 4.

MHAP is likewise wrong that "if the Parties were to resolve this case tomorrow, patient well-being would likely be a tertiary benefit at best." ECF 139 at 10. Hospitals are genuinely puzzled as to where MHAP gets this idea, as Hospitals allege *the very opposite*. Hospitals allege

---

[4] These are the same tired arguments raised by DRO, which as stated below were rejected. MHAP, which has close ties to DRO, is simply trying to regurgitate the arguments of an organization that, according to the Ninth Circuit's decision, appears to be seriously conflicted.

that they "are not seeking any relief that will result in fewer placement options for civilly committed individuals, the creation of less-suitable placement options for [Hospitals'] patients, or that will allow for the premature discharge of [Hospitals'] patients to inappropriate settings," which would "contravene [Hospitals'] missions to ensure high-quality, compassionate, and patient-centric healthcare for patients." ECF 117 at ¶ 62. Rather, the "only outcome [Hospitals] will be satisfied with is one in which OHA creates *more* treatment options for [Hospitals'] patients, *in addition to* those that already exist within [Hospitals] and elsewhere in Oregon. *Id.* "Unless and until" that happens, Hospitals "will continue treating all civilly committed patients in their care—as [Hospitals] have done for decades—in accordance with [Hospitals'] patient-focused non-profit missions." *Id.* For reasons Hospitals do not fully understand, MHAP denies each of these allegations and cynically assumes Hospitals to have the worst intent possible toward their own patients (who Hospitals have moral, ethical, and legal duties to protect).

MHAP also argues that Judge Mosman found that Hospitals lacked third-party standing because they purportedly "complain about how much civilly committed patients are costing them and about the harms [the patients] inflict on their staff members." ECF 139 at 10. But MHAP omits that the Ninth Circuit *rejected* Judge Mosman (and OHA's) reasoning on this point, holding it was error to dismiss Hospitals' third-party claims on that basis. ECF 105 at 7-9 (vacating Judge Mosman's ruling on third-party standing). The Ninth Circuit also noted that "some tension in [Hospitals'] complaint between the needs of civilly committed patients and [Hospitals] is not necessarily enough to show that [Hospitals] lack[] a 'close relation' to the patients." *Id.* at 8. Hospitals have since filed a Second Amended Complaint, which more than adequately alleges that Hospitals have third-party standing to bring claims on behalf of civilly committed patients. *See* ECF 140.

PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE
PAGE - 14

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

Seemingly without regard to the Ninth Circuit's opinion and the allegations in the Second Amended Complaint, MHAP urges this Court to find that there is inadequate representation by Hospitals. But MHAP has not overcome the presumption that Hospitals will adequately represent its interests. Based on the record before this Court, Hospitals have demonstrated they are willing and capable to make the same arguments MHAP seeks to assert against OHA. Indeed, the only claims MHAP asserts against OHA have already been brought by Hospitals. MHAP cannot pursue Due Process and *Olmstead* claims against Hospitals (which are based on OHA's failures) because MHAP lacks standing to do so.

In any event, even if this Court concludes that Hospitals may not adequately represent MHAP's interests (which Hospitals deny), NAMI-Oregon will adequately protect MHAP's interests if permitted to intervene, along with patients around the entire State. Notably, unlike MHAP, which (as demonstrated by its name) is focused on Portland, NAMI-Oregon is a state-wide organization. It has 2,000 members and, through its programs, serves more than 15,000 Oregonians throughout Oregon. *See* ECF 142 at 3. NAMI-Oregon's members include individuals who suffer from severe mental illness, who have been subject to civil commitment orders, and will continue to be subject to such orders in the future. *See* ECF 121, 122, 142. Thus, to the extent the Court concludes that Hospitals may not adequately represent MHAP's interests, NAMI-Oregon is well-positioned to do so by ensuring the voices of *all* patients around the entire State are represented on the issues before the Court.

## II.     The Court Should Deny Permissive Intervention Under Rule 24(b).

The Court should also deny MHAP's motion for permissive intervention under Rule 24(b). Permissive intervention is discretionary. Even if an applicant satisfies the threshold requirements, the district court has discretion to deny permissive intervention. *See Orange v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986) ("Permissive intervention is committed to the broad

PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE
PAGE - 15

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

discretion of the district court."). In exercising its discretion, "the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Donnely*, 159 F.3d at 412; *see* Fed. R. Civ. P. 24(b)(3). Indeed, "the possibility of prejudice to the original parties is in fact the 'principal consideration' when deciding a motion to intervene." *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 415 (N.D. Cal. 2004) (quoting 7C Wright & Miller, *Federal Practice and Procedure* § 1913 (2d ed. 2003)).

Here, admitting MHAP would unduly delay and prejudice the adjudication of this case. Including MHAP runs the risk of transforming this case from assessing the obligations of the state *after* a person is civilly committed to assessing whether less people should be civilly committed altogether. Even if MHAP's suit would involve some of "the same questions of law and fact raised by [Hospitals'] claims," litigation of MHAP's claims would nonetheless "necessitate the consideration of extraneous legal and factual issues that [Hospitals'] lawsuit would not otherwise invoke." *See UMG Recordings, Inc.*, 222 F.R.D. at 414. MHAP's request for permissive intervention should therefore be denied because its claims will "divert time and resources from the principal thrust of [Hospitals'] lawsuit and entangle the legal and factual issues involved therein within a web that is not of the original parties' making." *Id.* at 415. Intervention is not intended to be used as means to create whole new lawsuits by intervenors, and "[p]ermissive intervention may be denied if the addition of the proposed intervenor would inject new issues into a dispute," which would happen here. *In re Grupo Unidos por el Canal, S.A.*, No. 14–mc–80277–JST (DMR), 2015 WL 1815251, at *5 (N.D. Cal. Apr. 21, 2015); *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999) (denying permissive intervention where intervenors sought to "inject new issues and matters that are well beyond the scope of [plaintiffs'] claims and [defendants'] defenses").

PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE
PAGE - 16

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

Moreover, as discussed above, this Court should not permit permissive intervention because MHAP has not established Article III standing, which is required for it to assert claims against Hospitals.  As for MHAP's remaining claims against OHA, Hospitals (and NAMI-Oregon if granted intervenor status) will be able to adequately represent MHAP in this litigation as the parties' ultimate objective is the same.  *See Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (affirming denial of permissive intervention where proposed intervenors' interests were adequately represented by existing parties).  And, if MHAP wishes to change the use of civil commitment, it can always pursue relief through alternative means, such as through a separate lawsuit challenging the civil commitment statutes.

Simply put, MHAP has not met its burden of showing that it belongs in this case.  Admitting MHAP permissively would be procedurally improper, impose undue delay and prejudice on the parties, and impede the focus of the legal issues in this case.  Instead, the more appropriate course would be to permit MHAP to participate as *amici curiae*, to the extent MHAP can satisfy the criteria for *amicus* status.  That approach would allow the Court to consider MHAP's views while minimizing any further disruptions to the proceedings in this case.

## CONCLUSION

For all the reasons discussed above, the Court should deny MHAP's motion to intervene.

PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE
PAGE - 17

EPSTEIN BECKER & GREEN, P.C.
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480

DATED: December 20, 2024

EPSTEIN BECKER & GREEN, P.C.

*s/ Eric J. Neiman, OSB No. 823513*
Eric J. Neiman, OSB No. 823513
Emma P. Pelkey, OSB No. 144029
ENeiman@ebglaw.com
EPelkey@ebglaw.com

STOEL RIVES LLP

*s/ Thomas R. Johnson, OSB No. 010645*
Thomas R. Johnson, OSB No. 010645
Alex Van Rysselberghe, OSB No. 174836
Tom.Johnson@stoel.com
Alex.VanRysselberghe@stoel.com

PLAINTIFFS' RESPONSE TO MENTAL HEALTH ASSOCIATION OF PORTLAND'S MOTION TO INTERVENE
PAGE - 18

**EPSTEIN BECKER & GREEN, P.C.**
1125 NW Couch Street, Suite 500
Portland, Oregon 97209
Phone: 503.334.6475• Fax: 503.343.6476

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Phone: 503.224.3380 • Fax: 1.503.220.2480