Jon W. Monson, OSB No. 102650
jmonson@cablehuston.com
Nicole M. Swift, OSB No. 141419
nswift@cablehuston.com
Victoria K. Baker, OSB No. 225400
vbaker@cablehuston.com
CABLE HUSTON LLP
1455 SW Broadway, Suite 1500
Portland, OR  97201
Tele: (503) 224-3092
Facsimile: (503) 224-3176

*Special Assistant Attorneys General for Defendant Sejal Hathi, MD,
in her official capacity as Director of the Oregon Health Authority
(Additional Counsel of Record Listed on Signature Page)*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON; METROPOLITAN PUBLIC DEFENDERS INCORPORATED; and A.J. MADISON, | Case No. 3:02-cv-00339-AN (Lead Case)<br>Case No. 3:21-cv-01637-AN (Member Case)<br>**Case No. 6:22-cv-01460-AN (Member Case)** |
| Plaintiffs, | **DEFENDANT'S REPLY IN SUPPORT OF MOTIONS TO DISMISS** |
| v. | |
| SEJAL HATHI, in her official capacity as Director of Oregon Health Authority; and SARA WALKER, in her official capacity as Interim Superintendent of the Oregon State Hospital, | |
| Defendants.<br>          (*caption continued next page*) | |

DEFENDANT'S REPLY IN SUPPORT OF MOTIONS TO DISMISS

| | |
|---|---|
| JAROD BOWMAN; and JOSHAWN DOUGLAS SIMPSON, | Case No.: 3:21-cv-01637-AN (Member Case) |

Plaintiffs,

v.

SARA WALKER, Interim Superintendent of the Oregon State Hospital, in her official capacity; DOLORES MATTEUCCI, in her individual capacity; SAJEL HATHI, Director of the Oregon Health Authority, in her official capacity; and PATRICK ALLEN, in his individual capacity,

Defendants.

| | |
|---|---|
| LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; PROVIDENCE HEALTH & SERVICES – OREGON; and ST. CHARLES HEALTH SYSTEM, INC. | Case No.: 6:22-cv-01460-AN (Member Case) |

Plaintiffs,

v.

SEJAL HATHI, MD, in her official capacity as Director of Oregon Health Authority,

Defendant.

DEFENDANT'S REPLY IN SUPPORT OF MOTIONS TO DISMISS

# <u>TABLE OF CONTENTS</u>

Page

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ....................................................................................................... 2

      A.    MOTION 1: Plaintiffs Lack Third-Party Standing to Bring Claims on
           Behalf of Civilly Committed Patients. ...................................................... 2

          1.    Plaintiffs Have the Burden to Overcome the Presumption Against
              Third-Party Standing. ........................................................................... 2

          2.    Plaintiffs' Interests Are Not Sufficiently Aligned with Their
              Civilly Committed Patients. .................................................................. 3

          3.    Plaintiffs Also Do Not Establish a Hinderance to Civilly
              Committed Persons' Abilities to Protect their Own Interests. ................... 7

      B.    MOTION 2: The SAC Fails to State Due Process Claims on Behalf of
           Civilly Committed Individuals. ............................................................... 10

          1.    Substantive Due Process. ................................................................... 10

          2.    Procedural Due Process. .................................................................... 12

      C.    MOTION 3: Plaintiffs Fail to State Due Process Claims on Their
           Own Behalf. ............................................................................................ 14

          1.    Substantive Due Process. ................................................................... 14

          2.    Procedural Due Process. .................................................................... 15

      D.    MOTION 4: Plaintiffs Fail to State a State or Federal Takings Claim. ................ 16

          1.    The SAC Does Not Allege that OHA Requires Community
               Hospitals to Accept Civilly Committed Patients. ....................................... 16

          2.    Plaintiffs Do Not Adequately Allege a Physical Taking. .......................... 18

          3.    Plaintiffs Cannot Seek Only Equitable Relief for Their
               Takings Claims. ................................................................................. 20

      E.    MOTION 5: Plaintiffs Fail to State Third-Party Disability
           Discrimination Claims on Behalf of Civilly Committed Individuals. .................. 22

      F.    MOTION 6: Plaintiffs' Oregon Statutory Claims Fail. ......................................... 24

III.    CONCLUSION ................................................................................................... 27

APPENDIX A - Order, *Marion Cnty. v. Baden*, Marion Cnty. Cir. Ct. No. 23CV37155 (2/4/24)

APPENDIX B - Order, *Marion Cnty. v. Baden*, Marion Cnty. Cir. Ct. No. 23CV37155 (7/5/24)

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## <u>Cases</u>

*Allison v. Snyder*,
   332 F.3d 1076 (7th Cir. 2003) .............................................................. 11

*Ass'n of Am. Railroads v. Hudson*,
   No. 1:23CV815 (DJN), 2024 WL 1626105 (E.D. Va. Apr. 15, 2024)..................................... 22

*Atwood v. Strickler*,
   No. 3:19-CV-01699-IM, 2020 WL 3549662 (D. Or. June 29, 2020)....................................... 20

*Bettys v. Washington*,
   No. 3:23-CV-05838-BJR-TLF, 2024 WL 3927100 (W.D. Wash. July 31, 2024) .................. 12

*CDK Glob. LLC v. Brnovich*,
   16 F.4th 1266 (9th Cir. 2021) ............................................................. 17

*Cedar Point Nursery v. Hassid*,
   594 U.S. 139 (2021).......................................................................... 19

*Ching v. Mayorkas*,
   725 F.3d 1149 (9th Cir. 2013) ..................................................... 13, 16

*Cnty. of Sacramento v. Lewis*,
   523 U.S. 833 (1998).................................................................. 14, 15

*Conner v. Branstad*,
   839 F. Supp. 1346 (S.D. Iowa 1993) ...................................................... 10

*Cox v. Ass'n of Ore. Corrs. Empls., Inc.*,
   No. 6:22-cv-00906-AA, 2024 WL 1329034 (D. Or. Mar. 28, 2024) ........................................ 25

*Crown Point Dev., Inc. v. City of Sun Valley*,
   506 F.3d 851 (9th Cir. 2007) .............................................................. 14

*Doyle v. City of Medford*,
   356 Or. 336 (2017)......................................................................... 25

*Elizabeth Retail Properties LLC v. KeyBank Nat. Ass'n*,
   83 F. Supp. 3d 972 (D. Or. 2015) ........................................................... 2

*Endsley v. Mayberg*,
   No. CIV S-09-2311 WBS GGH P, 2010 WL 4829549 (E.D. Cal. Nov. 22, 2010).................... 8

*Ex Parte Young*,
    209 U.S. 123 (1908) .......................................................................................................... 25

*Faroud v. Brown*,
    No. 3:20-CV-2226-JR, 2022 WL 326092 (D. Or. Feb. 3, 2022) ....................................... 19, 21

*Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*,
    471 F.3d 1100 (9th Cir. 2006) ......................................................................................... 3

*Hong Kong Supermarket v. Kizer*,
    830 F.2d 1078 (9th Cir. 1987) ................................................................................... 3, 4, 5

*Horne v. Dep't of Agric.*,
    576 U.S. 350 (2015) .......................................................................................................... 19

*Ipsos-Insight, LLC v. Gessel*,
    547 F. Supp. 3d 367 (S.D.N.Y. 2021) .............................................................................. 25

*Knick v. Twp. of Scott, Penn.*,
    588 U.S. 180 (2019) .......................................................................................................... 20

*Legacy Health Sys. v. Hathi*,
    No. 23-35511, 2024 WL 2843034 (9th Cir. June 5, 2024) ............................................. *passim*

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .......................................................................................................... 3, 8

*Managed Pharmacy Care v. Sebelius*,
    716 F.3d 1235 (9th Cir. 2013) .................................................................................... 17, 18

*McGary v. Inslee*,
    No. 315CV05840RBLDWC, 2018 WL 3747921 (W.D. Wash. July 13, 2018) ................... 11

*Mills v. United States*,
    742 F.3d 400 (9th Cir. 2014) ........................................................................................... 2

*Minn. Deer Farmers Ass'n v. Strommen*,
    No. 23-3907 (JRT/LIB), 2024 WL 3823027 (D. Minn. Aug. 14, 2024) ............................. 21

*Miranda v. City of Casa Grande*,
    15 F.4th 1219 (9th Cir. 2021) .................................................................................... 12, 16

*MT & M Gaming, Inc. v. City of Portland*,
    360 Or. 544 (2016) ........................................................................................................... 25

*Nordisk Sys., Inc. v. Sirius Comput. Sols., Inc.*,
    156 F. Supp. 3d 1212 (D. Or. 2015) ................................................................................ 2

*Ohlinger v. Watson*,
  652 F.2d 775 (9th Cir. 1980) ........................................................................... 10, 11

*Olmstead v. L.C. ex. rel. Zimring*,
  527 U.S. 581 (1999).......................................................................................... 23, 24

*Olson v. Allen*,
  No. 3:18-CV-001208-SB, 2019 WL 1232834 (D. Or. Mar. 15, 2019) ........................ 8, 23, 26

*Oregon Advoc. Center v. Mink*,
  322 F.3d 1101 (9th Cir. 2003) ......................................................................... 10, 11

*Oregon Firearms Fed'n v. Kotek*,
  682 F. Supp. 3d 874 (D. Or. 2023) ........................................................................ 21

*Owen Equip. & Erection Co. v. Kroger*,
  437 U.S. 365 (1978)................................................................................................ 3

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984).................................................................................................. 25

*Pharm. Research & Manufs. of Am. v. Stolfi*,
  724 F. Supp. 3d 1174 (D. Or. 2024) ................................................................... 20, 21

*Pharm. Research & Manufs. of Am. v. Williams*,
  64 F.4th 932 (8th Cir. 2023) .............................................................................. 20, 21

*Porter v. Warner Holding Co.*,
  328 U.S. 395 (1946)................................................................................................. 6

*Powers v. Ohio*,
  49 U.S. 400 (1991).................................................................................................. 3

*Ray Charles Found. v. Robinson*,
  795 F.3d 1109 (9th Cir. 2015) .............................................................................. 2

*Ruckelshaus v. Monsanto Co.*,
  467 U.S. 986 (1984)............................................................................................... 20

*Schneider v. Cal. Dep't of Corr.*,
  151 F.3d 1194 (9th Cir. 1998) .............................................................................. 25

*Sharp v. Weston*,
  233 F.3d 1166 (9th Cir. 2000) ......................................................................... 10, 11

*Shinault v. Hawks*,
  782 F.3d 1053 (9th Cir. 2015) .............................................................................. 13

*Sierra Med. Serv. All. v. Kent*,
    883 F.3d 1216 (9th Cir. 2018) ........................................................ 17, 18, 19

*Singleton v. Wulff*,
    428 U.S. 106 (1976) ............................................................................... 3

*United States v. Howell*,
    318 F.2d 162 (9th Cir. 1963) ................................................................. 6

*United States v. Quintero*
    995 F.3d 1044 (9th Cir. 2021) ........................................................ 13, 14

*Unterreiner v. Goldberg*,
    No. CV 06-277-HU, 2007 WL 9808320 (D. Or. July 27, 2007) ............... 8

*Walker-Hill v. Saxon Mortg. Servs., Inc.*,
    No. 3:12-CV-02162-ST, 2013 WL 786336 (D. Or. Jan. 23, 2013) ........... 2

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................... 6, 7

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ............................................................................. 15

*Yee v. City of Escondido, Cal.*,
    503 U.S. 519 (1992) ............................................................................. 17

*Yellowhammer Fund v. Att'y Gen. of Ala. Steve Marshall*,
    733 F. Supp. 3d 1167 (M.D. Ala. 2024) ................................................. 8

*Youngberg v. Romero*,
    457 U.S. 307 (1982) ..................................................................... 1, 10, 11

*Zinermon v. Burch*,
    494 U.S. 113 (1992) ............................................................................. 13

## **Statutes**

ORS 28.020 .......................................................................... 24, 25, 26

ORS 426.005(1)(c) ........................................................................ 22

ORS 426.060 ....................................................................... 24, 25, 26

ORS 426.060(2) ............................................................................. 14

ORS 426.070(5)(a) ........................................................................ 13

ORS 426.095 ................................................................................. 13

ORS 426.130(2) ............................................................................................................ 10

ORS 426.150 ................................................................................................... 24, 25, 26

ORS 652.615 ................................................................................................................ 26

ORS 659A.142(5)(c)(B) ............................................................................................... 23

## **Regulations**

OAR 309-033-0270(3)(a) ............................................................................................ 16

OAR 309-033-0280 ..................................................................................................... 14

OAR 309-033-0290 ................................................................................................ 12, 13

## I.    INTRODUCTION[1]

The Court should dismiss Plaintiffs' third-party claims brought on behalf of civilly committed patients with prejudice for lack of subject matter jurisdiction.  Despite guidance from the Ninth Circuit that the record they submitted to support their third-party claims was "insufficient," on remand Plaintiffs once again fail to meet their burden to establish third-party standing.  Plaintiffs do not address the Ninth Circuit's questions about what specific remedy they seek or how that remedy will affect civilly committed patients given that Plaintiffs concede there are no other beds available to send those patients to.  Instead, they urge the Court to punt that issue to the end of the litigation.  Thus, this Court has no way to determine whether Plaintiffs' interests are adequately aligned with their civilly committed patients—the key issue the Ninth Circuit remanded to this Court to resolve.  Likewise, Plaintiffs have again failed to establish that civilly committed patients are hindered in their ability to protect their own rights.  Nor can Plaintiffs explain *why* this Court should allow them to prosecute claims on behalf of the civilly committed patients if the Court grants either of the pending motions to intervene by NAMI or the Mental Health Association of Portland ("MHAP").

Each individual claim in the SAC also fails to state a claim.  Plaintiffs' substantive due process claims brought on their patients' behalf fail because Plaintiffs rely on a standard that has been applied only in unique cases involving indefinite incarceration in jails or prisons, or civilly committed sexual abusers who face a potential indefinite detention.  The proper standard, long-established by the Supreme Court in *Youngberg v. Romero*, 457 U.S. 307 (1982), is that the due process clause guarantees only minimally adequate care to civilly committed patients.  There is no federal right to treatment in the least restrictive setting.  Plaintiffs' third-party procedural due process claims fail for the same reason, and also because state law provides adequate procedural mechanisms for civilly committed patients to contest their placement.

---

[1] Terms used below are as defined in Defendant's Motions to Dismiss, ECF 128 ("Motion" or "Mot.").  "Response" or "Resp." refers to Plaintiffs' Response to the Motion (ECF 140).

Plaintiffs' remaining due process claims brought on their own behalf, takings claims, disability discrimination claims, and Oregon statutory claims fare no better. Plaintiffs' Response does nothing to address the fatal defects with each of these claims. And because Plaintiffs cannot demonstrate how a third amendment would cure these pleading defects, the Court should dismiss the SAC with prejudice.

## II.    ARGUMENT

### A.    MOTION 1: Plaintiffs Lack Third-Party Standing to Bring Claims on Behalf of Civilly Committed Patients.

As OHA's Motion explained, Plaintiffs lack third-party standing because (1) they do not have a sufficiently close relationship with their civilly committed patients, and (2) civilly committed persons can protect their own rights. Nothing in Plaintiffs' Response undermines this analysis or addresses the deficiencies that the Ninth Circuit cited in its remand order. Because it is *Plaintiffs'* burden to establish third-party standing, and they have (again) failed to meet that burden, the Court should dismiss the third-party claims with prejudice.

#### 1.    Plaintiffs Have the Burden to Overcome the Presumption Against Third-Party Standing.

Plaintiffs' Response confuses whose burden it is on this jurisdictional motion.[2] Plaintiffs accuse OHA of ignoring the Ninth Circuit's remand order by making "the same arguments it

---

[2] Plaintiffs argue that OHA incorrectly uses a Rule 12(b)(1) rather than 12(b)(6) standard. (Resp. at 4.) The only case cited by Plaintiffs to support that argument, however, discusses the "shareholder standing rule," not third-party standing. *See Elizabeth Retail Properties LLC v. KeyBank Nat. Ass'n*, 83 F. Supp. 3d 972, 986 (D. Or. 2015). Courts in this circuit often apply a 12(b)(1) standard when analyzing third-party standing. *See, e.g.*, *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1116–18 (9th Cir. 2015) (applying 12(b)(1)); *Walker-Hill v. Saxon Mortg. Servs., Inc.*, No. 3:12-CV-02162-ST, 2013 WL 786336, at **1–2 (D. Or. Jan. 23, 2013), *report and recommendation adopted sub nom. Walker-Hill v. Deutsche Bank Nat. Tr. Co.*, No. 03:12-CV-02162-ST, 2013 WL 786325 (D. Or. Mar. 1, 2013) (same); *Mills v. United States*, 742 F.3d 400, 404, 406 (9th Cir. 2014) (same). In any event, since OHA does not seek to introduce evidence beyond the SAC, "it makes no difference whether [the court] consider[s] the prudential standing argument under Rule 12(b)(1) or Rule 12(b)(6)." *Nordisk Sys., Inc. v. Sirius Comput. Sols., Inc.*, 156 F. Supp. 3d 1212, 1215 (D. Or. 2015).

raised before." (Resp. at 12.)  But it is Plaintiffs (not OHA) who bear the burden on this Motion. The Ninth Circuit did *not* rule that Plaintiffs have third-party standing; it merely held that the "present record" on the first motion to dismiss and in the appellate briefing was "insufficient" to resolve the issue. *Legacy Health Sys. v. Hathi*, No. 23-35511, 2024 WL 2843034, at *3 (9th Cir. June 5, 2024).  So the Court vacated Judge Mosman's order and remanded "for reconsideration in light of the third-party standing principles discussed" in the remand order. *Id.*

On remand, the burden thus remains with *Plaintiffs* to establish all the elements required to assert third-party claims on behalf of their civilly committed patients. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978) (federal court presumed to lack jurisdiction unless the contrary affirmatively appears); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (As with other jurisdictional requirements, "[t]he party invoking federal jurisdiction, [here Plaintiffs], bears the burden of establishing [standing].").  This is not a "liberal" standard, as Plaintiffs assert.  (Resp. at 12.)  To the contrary, the general rule that parties "cannot rest on the legal rights or interests of third parties" is subject only to "certain, limited exceptions." *Powers v. Ohio*, 49 U.S. 400, 410 (1991).  Plaintiffs must overcome a strong presumption *against* third-party standing, which is "disfavored." *Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d 1100, 1105 n.3 (9th Cir. 2006).  Thus, if the Court concludes (as it should) that Plaintiffs make essentially the same allegations that the Ninth Circuit found "insufficient" in response to the earlier motion to dismiss, it should rule that Plaintiffs have not met their burden and grant OHA's motion to dismiss the third-party claims.

### 2.  Plaintiffs' Interests Are Not Sufficiently Aligned with Their Civilly Committed Patients.

On remand, Plaintiffs have (once again) failed to establish a "close relation" to the civilly committed patients they seek to represent. *Powers*, 49 U.S. at 410–11.  Plaintiffs must show as a threshold matter that they would be "fully, or very nearly, as effective a proponent of the right as the [civilly committed patients themselves]." *Singleton v. Wulff*, 428 U.S. 106, 115 (1976); *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir. 1987).  To meet that burden, the

Ninth Circuit made clear that Plaintiffs must address the "insufficient" detail in their complaint about the remedy they seek and likely outcome that could be achieved here. They have not done so. Instead, Plaintiffs repeat the same vague and generic arguments they made in response to the first motion to dismiss.

Plaintiffs begin by citing the same cases they cited before for the broad proposition that doctors and patients have a close relationship. (Resp. at 12–13.)[3] They then leap to the conclusion that the relationship between a patient and a health-care provider is "inherently close" and "typically enough to establish third-party standing between healthcare providers and patients." (*Id.* at 14 n.3.) But the Ninth Circuit rejected that very argument as overly simplistic. As the court explained:

> Doctors often have been found to have standing to assert the rights of their patients. But Legacy Health System does not seek to provide appropriate long-term treatment to civilly committed patients itself; rather, Legacy Health System seeks an injunction requiring OHA to provide appropriate long-term care to these patients. Accepting as true the complaint's allegations, "the outcome" that Legacy Health System "seeks on the face of its complaint" would benefit civilly committed patients by ensuring they receive appropriate long-term treatment from OHA. *See Hong Kong Supermarket*, 830 F.2d at 1082. But as Legacy Health System's complaint acknowledges, bed space at OSH is limited, and OSH is under competing pressure from the injunction upheld by our circuit in [*Mink*] . . . . ***Whether Legacy Health System's interests are sufficiently aligned with the interests of its civilly committed patients may depend on what outcome Legacy Health System in fact is likely to achieve in this litigation and whether that outcome would benefit the patients whom Legacy Health System seeks to represent. These questions are not clearly answered in the complaint or present briefing.***

*Legacy Health Sys.*, 2024 WL 2843034, at *3 (emphasis added).

In reaching this conclusion, the Ninth Circuit relied heavily on *Hong Kong Supermarket*. *See* 830 F.2d at 1078. In that case, a supermarket sought to bring claims on behalf of its customers. The supermarket alleged that a federal food program discriminated against certain

---

[3] As OHA explained in prior briefing, these abortion access cases are distinguishable. (*See* ECF 55 at 10.) The doctors in those cases all sought to continue treating their patients, while here Plaintiffs seek to have these patients treated elsewhere.

Page 4 – DEFENDANT'S REPLY IN SUPPORT OF ITS MOTIONS TO DISMISS

refugees by basing the selection of food on an American diet and not accounting for the diverse eating habits and dietary restrictions of certain groups. *Id.* at 1079–80. The plaintiff sought an injunction terminating the entire program. *Id.* The Ninth Circuit affirmed the dismissal of those third-party claims for lack of standing. The court focused on the "outcome [the supermarket sought] *on the face of its complaint*" and found that "its interests and those of the nutritionally high risk [food program] recipients are not 'inextricably intertwined.'" *Id*. at 1082 (emphasis added). Although other courts had held that a vendor could bring claims on behalf of its customers, the court emphasized that the remedy sought by the supermarket *in that case* risked *harming* its customers by depriving them of the program's benefits. *Id.*

Based on this analysis, the Ninth Circuit here ruled in its remand order that Plaintiffs could not establish standing by citing generic holdings in prior standing cases finding a close relationship between doctors and patients. *Legacy Health Sys.*, 2024 WL 2843034, at *2. Rather, the court explained, the close relation analysis is "nuanced and fact dependent" and this Court must look to the specific factual allegations and remedy described in the "complaint" and "briefing" to determine whether Plaintiffs' interests are adequately aligned with their civilly committed patients. *Id.*

In their Response, however, Plaintiffs largely ignore the Ninth Circuit's remedy "questions." They point out that the SAC now includes a request to expand available bedspace in the community at large, rather than just at OSH. (Resp. at 13.) But they don't explain how they propose to reach that lofty aspirational goal when they simultaneously acknowledge that there are no available beds elsewhere. (*See, e.g.*, Mot. at 14–15 (collecting citations to SAC, describing Plaintiffs' desire to treat other non-committed patients).) Plaintiffs also purport to "clarify" that they do not seek any relief that will result in "fewer placement options for civilly committed patients." (Resp. at 13.) But if it were that simple, the *Mink* litigation would have been resolved long ago. As the Ninth Circuit discussed, Plaintiffs must provide some explanation in its complaint about what remedy it seeks and what the *plausible* outcome of that

remedy would be.  Indeed, if Plaintiffs could establish a "close relationship" with their civilly committed patients merely by alleging that they seek to expand care for all patients everywhere, without any description of how that outcome could plausibly be achieved, then the Ninth Circuit would simply have held that Plaintiffs had third-party standing and vacated Judge Mosman's dismissal order.  It did not.  The court remanded the issue "for reconsideration" based on the "insufficient" record.  *Legacy Health Sys.*, 2024 WL 2843034, at \*3.

Rather than wrestle with the difficult remedy questions the Ninth Circuit posed in its remand order, Plaintiffs insist that the Ninth Circuit "did not order that Hospitals had to articulate clearer relief *in the pleadings*."  (Resp. at 15 (emphasis in original).)  But that argument is impossible to square with *Hong Kong Supermarket* and the Ninth Circuit's explicit admonition in its remand order that the remedy questions "were not answered in the *complaint or present briefing*."  *Legacy Health Sys.*, 2024 WL 2843034, at \*3 (emphasis added).

Plaintiffs' argument also makes no practical or legal sense.  They argue that plaintiffs seldom must describe the specific remedy they seek at the pleading stage.[4]  And they suggest that the Court should merely punt the standing issue to the remedy phase of the case.  But standing is a threshold jurisdiction issue that must be resolved as early as possible.  *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) (Standing is a threshold determination of "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.").  Before they can obtain

---

[4] The *Howell* and *Porter* cases cited by Plaintiffs in support of this argument are irrelevant.  (*See* Resp. at 15–16.)  The issue in *Howell* was whether the plaintiff failed to state a claim against the United States under the False Claims Act, as it was possible the plaintiff in that case would be entitled to relief in the related contract dispute.  *United States v. Howell*, 318 F.2d 162, 166 (9th Cir. 1963).  In *Porter*, the court analyzed whether it had jurisdiction to grant one type of equitable relief that would ordinarily be within the jurisdiction of a law court.  *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).  And the section quoted by Plaintiffs misleadingly leaves out a crucial section of the sentence, repeated here in full: "*But where, as here, the equitable jurisdiction of the court has properly been invoked* for injunctive purposes, the court has the power to decide all relevant matters in dispute and to award complete relief even though the decree includes that which might be conferred by a court of law."  *Id.* at 399 (emphasis added).  Here, it has not been determined whether the Court has jurisdiction to adjudicate these claims on behalf of civilly committed individuals.  That is the threshold standing issue the Ninth Circuit remanded for reconsideration.

Page 6 – DEFENDANT'S REPLY IN SUPPORT OF ITS MOTIONS TO DISMISS

discovery and proceed with a liability trial against OHA, Plaintiffs must establish that they have standing to bring the third-party claims in the first place. This is precisely why third-party standing issues are resolved early in litigation, and typically on the pleadings—such as in *Hong Kong Supermarket*.

Plaintiffs' refusal to provide any information about the specific remedy they seek is particularly troublesome considering the clear conflicts of interest that may arise between community hospitals and their civilly committed patients depending on what that remedy is and how it is achieved. (*See* Mot. at 12–15.) As described in OHA's Motion, the SAC seeks to move patients *out* of Plaintiffs' facilities and repeatedly stresses Plaintiffs' serious financial concerns about continuing to treat civilly committed patients in their hospitals. (*Id.*) The SAC also contains many references to Plaintiffs' concerns about the impact that treating civilly committed patients in their facilities has on their other treatment facilities and other patients to whom they may owe conflicting duties. (*Id.*) Plaintiffs' Response ignores these concerns.

And while the Ninth Circuit ruled that cost concerns alone are not dispositive, it clarified that they "can be relevant to third-party standing, especially to the extent they may reflect a prioritization of the hospitals' financial concerns or indicate a potential disjunction of interest if the remedy sought by [Plaintiffs]—the creation or allocation of additional bed space at OSH for civilly committed patients—proves unavailable." *Legacy Health Sys.*, 2024 WL 2843034, at *3. Yet Plaintiffs now concede that they don't know what specific remedy they might seek, or how that remedy might impact civilly committed patients. So they can only speculate about how that remedy might impact civilly committed patients in the future. Plaintiffs must do more to meet their burden on this Motion. Because Plaintiffs have not established a close relationship with their civilly committed patients, they lack standing to assert third-party claims.

### 3. Plaintiffs Also Do Not Establish a Hinderance to Civilly Committed Persons' Abilities to Protect their Own Interests.

Plaintiffs also cannot demonstrate that civilly committed patients lack the ability to protect their own rights. Plaintiffs fault OHA for citing out-of-state cases where civilly

committed patients have sued to protect their own interests. But Plaintiffs themselves rely on an inapposite out-of-state and out-of-circuit abortion case to support their position that civilly committed patients cannot assert their rights in court. (*See* Resp. at 18–19 (citing *Yellowhammer Fund v. Att'y Gen. of Ala. Steve Marshall*, 733 F. Supp. 3d 1167 (M.D. Ala. 2024). *Yellowhammer Fund* is a Middle District of Alabama case that has nothing to do with civil commitment, or any type of commitment. Rather, that case involved an entity asserting claims on behalf of those seeking out of state abortions, which is irrelevant here. *See Yellowhammer Fund*, 733 F. Supp. 3d at 1174.

In any event, there is no dispute that civilly committed individuals in Oregon and in the Ninth Circuit have asserted their own rights in court. (*See, e.g.*, Mot. at 16–17 (citing *Olson v. Allen*, No. 3:18-CV-001208-SB, 2019 WL 1232834, at *1 (D. Or. Mar. 15, 2019) (civilly committed patient filed suit to contest transfer from community hospital to OSH based on the conditions of his treatment at OSH); *Unterreiner v. Goldberg*, No. CV 06-277-HU, 2007 WL 9808320, at *2 (D. Or. July 27, 2007) (objecting to placements after plaintiff was civilly committed); *Endsley v. Mayberg*, No. CIV S-09-2311 WBS GGH P, 2010 WL 4829549, at **1–2 (E.D. Cal. Nov. 22, 2010), *report and recommendation adopted*, No. CIV S-09-2311 WBS, 2011 WL 201476 (E.D. Cal. Jan. 19, 2011) (*pro se* plaintiff civilly committed to state mental hospital claimed he was entitled to be housed in a less restrictive setting.) Plaintiffs (tellingly) neglect to address these cases.

Plaintiffs also misstate the proper standard by arguing that OHA "do[es] not disprove that '*some* hinderance' exists." (Resp. at 19 (emphasis in original).) Again, that is not the standard. OHA does not have to "disprove" anything. *Plaintiffs* bear the burden, not OHA. *Lujan*, 504 U.S. at 561. Because Plaintiffs fail to show that the civilly committed patients they seek to represent are impeded from asserting their own rights, they have failed to meet that burden.

Lastly, Plaintiffs wrongly ask the Court to ignore that two mental health organizations have now sought to intervene in this case. (ECF 121 (NAMI Motion to Intervene); ECF 139

(MHAP Motion to Intervene).)  Plaintiffs assert that whether other parties might better represent the rights of these patients "is not the standard" for assessing third-party standing.  (Resp. at 19.) But the Ninth Circuit itself raised the prospect of other entities appearing on behalf of civilly committed patients in its remand order and at oral argument.  (*See Legacy Health Sys.*, 2024 WL 2843034, at *2 (discussing whether Disability Rights Oregon could "fairly . . . represent the civilly committed patients); *Legacy Health Sys. v. Hathi et al.*, Case No. 23-3551, ECF 61 at 14:04–14:36 ("[Judge Owen:] Let me ask you this.  Why couldn't someone else other than the hospital represent these people? . . . [Plaintiffs' Counsel:] "To the extent other groups exist, they haven't stepped up.  They just haven't done it.").)  At oral argument, Plaintiffs' appellate counsel represented to the Ninth Circuit that Plaintiffs felt compelled to step in to represent the civilly committed patients only because no other entities were available.  (*Id.* at 16:31–18:27 ("[Plaintiffs' Counsel:] This is an honor we'd just as soon have skipped.").)

This is no longer true.  Two different mental health organizations now seek to intervene to assert claims on behalf of civilly committed patients.  Plaintiffs support NAMI's intervention and oppose MHAP's.  (Resp. at 20; ECF 143.)[5]  Yet, Plaintiffs argue in their Response that both they *and* NAMI should be granted standing to represent the interests of the civilly committed patients—as they have "unique perspectives."  (Resp. at 20.)  Of course, Plaintiffs offer no further explanation of what these perspectives might be.  Nor do they give a single example of a position that NAMI would advocate for that Plaintiffs would oppose, or vice versa.  In short, Plaintiffs give no explanation at all as to why they need to represent the interests of civilly committed patients if one and potentially two other mental health organizations are capable of doing so.  If this Court grants intervenor status to NAMI or MHAP, there is even more reason to

---

[5] NAMI seeks to assert claims against OHA only, while MHAP seeks to assert claims against both OHA and Plaintiffs.  OHA has taken no position on MHAP's motion.  OHA opposed NAMI's intervention motion only because (unlike MHAP) NAMI disregarded procedural rules for seeking intervention status and did not provide a proposed intervenor complaint that included at least a plausible basis for Article III standing.  (Mot. at 18 n.1; ECF 133.)

Page 9 – DEFENDANT'S REPLY IN SUPPORT OF ITS MOTIONS TO DISMISS

deny Plaintiffs third-party standing to assert those same claims on behalf of civilly committed persons. For all these reasons, the Court should dismiss Plaintiffs' third-party claims.

**B.    MOTION 2: The SAC Fails to State Due Process Claims on Behalf of Civilly Committed Individuals.**

Plaintiffs bring separate substantive and procedural due process claims on behalf of civilly committed patients. Even if Plaintiffs had standing to assert these claims (which they don't), the claims would still fail because they do not state cognizable claims for relief.

**1.    Substantive Due Process.**

As OHA's Motion explains, the SAC does not allege any actions that violate civilly committed patients' constitutionally protected liberty interests. The Supreme Court set forth the constitutional standard in *Youngberg v. Romero*: civilly committed patients are guaranteed "minimally adequate care and treatment." 457 U.S. 307, 319 (1982). Civilly committed patients do not, as Plaintiffs argue, have a constitutional right to optimal treatment or treatment in the least restrictive setting. *Conner v. Branstad*, 839 F. Supp. 1346, 1351 (S.D. Iowa 1993) ("Following . . . *Youngberg*, several circuits have uniformly concluded that there is no federal right to treatment in the least restrictive setting." (citing cases)).

In their Response, Plaintiffs once again rely on *Ohlinger v. Watson*, 652 F.2d 775 (9th Cir. 1980), *Sharp v. Weston*, 233 F.3d 1166 (9th Cir. 2000), and *Oregon Advoc. Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003) to support their argument that civilly committed patients have a broad constitutional right to treatment in "the least restrictive setting possible." (Resp. at 21–22.) But none of those cases involved civilly committed individuals like those whom Plaintiffs are treating (i.e., individuals with mental illnesses who are civilly committed for treatment "for a period of time not to exceed 180 days," ORS 426.130(2)). Rather, all three involved rare exigencies that demanded a different standard of treatment. In *Ohlinger*, without treatment, individuals designated as sexually violent predators could have been "held indefinitely as a result of their mental illness." 652 F.2d at 778. *Sharp* involved persons civilly committed as sexually violent predators who, without treatment would be indefinitely confined. 233 F.3d at 1172. And

Page 10 – DEFENDANT'S REPLY IN SUPPORT OF ITS MOTIONS TO DISMISS

in *Mink*, the mentally incapacitated criminal defendants were being held in county jails while awaiting admission into a treatment facility.   322 F.3d at 1121.  Each case involved either criminal defendants who faced long term incarceration or civilly committed patients who, without treatment, would be held indefinitely.  *Ohlinger*, 652 F.2d at 778; *Mink*, 322 F.3d at 1122; *Sharp*, 233 F.3d at 1172.

Here, by contrast, the relevant population consists of civilly committed individuals being treated in Plaintiffs' hospitals for statutorily limited periods of time.  And the individuals are receiving care in hospitals licensed and certified to provide the kind of care that civilly committed persons need.  They are neither sex offenders serving out potentially indefinite periods of civil confinement, nor are they spending time in jail or prison.  Under the relevant standard, they are thus constitutionally guaranteed only "minimally adequate care and treatment."  *Youngberg*, 457 U.S. at 319.

Plaintiffs seek to stretch *Ohlinger* far beyond its intended reach.  The Seventh Circuit stated it well when discussing the appropriate scope of *Youngberg* and *Ohlinger*:

> As for plaintiffs' contention that treatment must be tailored to each individual rather than administered to groups: one court of appeals has said this (without explanation), *see Ohlinger v. Watson*, 652 F.2d 775, 778–79 (9th Cir.1980), but what *Youngberg* held two years later is that (a) committed persons are entitled to some treatment, and (b) what that treatment entails must be decided by mental-health professionals. *Youngberg* deprived the unreasoned assertion in *Ohlinger* of whatever slight value unreasoned judicial assertions otherwise carry. For reasons we have given, it is not possible to say on this record that Illinois' program exceeds the domain of legitimate professional judgment.

*Allison v. Snyder*, 332 F.3d 1076, 1081 (7th Cir. 2003).

Indeed, cases in this circuit that were decided after *Ohlinger* and *Sharp* have clarified that *Ohlinger*'s heightened treatment standard is limited to a small subset of individuals under exceptional circumstances, and not to the civilly committed population at large.  *See, e.g.*, *McGary v. Inslee*, No. 315CV05840RBLDWC, 2018 WL 3747921, *4 (W.D. Wash. July 13,

2018), *report and recommendation adopted*, No. 315CV05840RBLDWC, 2018 WL 3742135 (W.D. Wash. Aug. 7, 2018) (Under *Ohlinger*, "persons who are civilly committed as SVPs have a constitutional guarantee of access to mental health treatment that provides them a realistic opportunity to be cured or improve their mental health such as to be released" but "[t]he Constitution only requires that this treatment be 'minimally adequate'" under *Youngberg*.); *Bettys v. Washington*, No. 3:23-CV-05838-BJR-TLF, 2024 WL 3927100, at **5, 16 (W.D. Wash. July 31, 2024), *report and recommendation adopted*, No. CV 23-5838-BJR-TLF, 2024 WL 3924712 (W.D. Wash. Aug. 21, 2024) (applying *Youngberg* to civil commitment care generally, and *Ohlinger* to only those committed as "sexually violent predators").

Because the SAC does not allege that civilly committed patients are not receiving minimally adequate care at Plaintiffs' hospitals, Plaintiffs have pleaded no deprivation of their patients' protected liberty interests. Plaintiffs' third-party substantive due process claims thus fail to state a claim for relief.

## 2. Procedural Due Process.

Plaintiffs' third-party procedural due process claim fails for the same reason. To survive dismissal on a Rule 12(b)(6) motion, a plaintiff must plead *both* the deprivation of a protected liberty interest, *and* a denial of adequate procedural protections. *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021). Plaintiffs do neither. As discussed above, the SAC does not plead any deprivation of a protected liberty interest. That alone lone dooms the procedural due process claim.

The SAC also does not plausibly allege any denial of adequate procedural protections for civilly committed individuals. In fact, Plaintiffs acknowledge that OAR 309-033-0290 creates a process by which civilly committed individuals can appeal their current placement. (Resp. at 23; SAC ¶ 76.) Plaintiffs argue that this procedure is insufficient because civilly committed patients may not succeed in being placed in a different facility. (*See* Resp. at 23.) But Plaintiffs confuse

Page 12 – DEFENDANT'S REPLY IN SUPPORT OF ITS MOTIONS TO DISMISS

the function of procedural due process protections.  All procedural due process requires is an adequate procedure, not a particular result.  *Ching v. Mayorkas*, 725 F.3d 1149, 1159 (9th Cir. 2013) ("It is process that the procedural due process right protects, not the outcome.").

Plaintiffs next argue that the appeal procedure in OAR 309-033-0290 is inadequate because it is a post-deprivation remedy.  (Resp. at 23.)  But that argument is meritless.  First, there *is* a statutory hearing process *before* a patient is committed.  *See* ORS 426.070(5)(a); ORS 426.095.  Second, while pre-deprivation hearings may be preferred generally, they are not always required.  *See Shinault v. Hawks*, 782 F.3d 1053, 1058 (9th Cir. 2015).  A pre-deprivation hearing is needed only when the State can "feasibly" provide it.  *Id.* (quoting *Zinermon v. Burch*, 494 U.S. 113, 132 (1992)).  Here, holding a pre-deprivation hearing for every civilly committed patient who might contest their treatment location would pose an impractical delay of care.[6]  If OHA had to conduct a hearing before each successive placement in a new facility, as Plaintiffs suggest, this would delay transfer to any new facility and any treatment until a hearing takes place.[7]  That would exacerbate, not alleviate, the current situation.

*United States v. Quintero* illustrates this point.  995 F.3d 1044, 1056 (9th Cir. 2021). *Quintero* involved federal commitment procedures for criminal defendants found incompetent to stand trial.  *Id.*  The plaintiff argued that she was entitled to pre-deprivation process to determine whether her placement (outpatient treatment) was proper.  *Id.*  The Ninth Circuit held that a pre-

---

[6] This again demonstrates where Plaintiffs' and their patients' interests conflict.  Plaintiffs might prefer there to be a pre-deprivation hearing that could delay or prevent a patient from receiving hospital care, since such a hearing could reduce the burden on Plaintiffs' resources.  But in the absence of other treatment options at a given time, a civilly committed patient would likely prefer to receive treatment at Plaintiffs' hospitals as soon as possible.

[7] Even if a hearing predates the placement, the assignment decision is still limited by what "the resources of the person or Division will allow."  OAR 309-033-0290(5)(b)(B)(iii).

deprivation hearing was not required because the commitment procedures themselves "provided ample process" and the "choice of a facility is within Congress's prerogative." *Id.* The same is true here. Civilly committed patients in Oregon have both a robust precommitment process and post-placement appeal procedure. Like with Congress in *Quintero*, the Oregon legislature has exclusively delegated placement decisions to OHA. ORS 426.060(2).

Lastly, the Court should reject Plaintiffs' argument that OHA is "unable" to follow the appeal procedure. (Resp. at 23.) None of the SAC allegations Plaintiffs cite refer to OAR 309-033-0280. (SAC ¶¶ 38, 42–43, 57.) All those paragraphs allege is that there is a lack of bedspace. Again, the result does not dictate the adequacy of the process. Plaintiffs offer no more than conclusory statements that do not plausibly allege the existence of inadequate process, and which cannot state a procedural due process claim on behalf of civilly committed individuals. The third-party procedural due process claim should therefore be dismissed.

### C.    MOTION 3: Plaintiffs Fail to State Due Process Claims on Their Own Behalf.

Plaintiffs' Third and Fourth claims for relief also fail to state substantive and procedural due process claims on their own behalf. Plaintiffs' Response does not save those claims.

#### 1.    Substantive Due Process.

Plaintiffs fail to state a cognizable substantive due process claim on their own behalf for two reasons. First, the claim is subsumed by Plaintiffs' takings claim. Second, Plaintiffs have not adequately alleged any deprivation of a fundamental liberty interest. Plaintiffs' Response undermines neither ground for dismissal.

In response to the first argument, Plaintiffs contend that their substantive due process claim is not subsumed by their takings claim, because the alleged deprivation "shocks" the conscience. (Resp. at 24 (citing *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007).) Yet the primary case Plaintiffs rely on to support this argument, *Cnty. of*

Page 14 – DEFENDANT'S REPLY IN SUPPORT OF ITS MOTIONS TO DISMISS

*Sacramento v. Lewis*, 523 U.S. 833 (1998), supports OHA's position. In *Lewis*, the Supreme Court described the "shock the conscience" standard as "conduct deliberately intended to injure in some way unjustifiable by any government interest." *Id.* at 834. Here, the SAC does not allege that OHA deliberately intends to injure Plaintiffs by not moving civilly committed patients to other facilities when no bedspace is available. All the SAC alleges is that OHA is sending patients to hospitals who are in the business of treating patients, and who volunteered to take these particular patients.[8] Plaintiffs also concede that there are no other facilities available to send their civilly committed patients to. Thus, Plaintiffs' substantive due process claim is subsumed within their takings claim.

In response to the second argument, Plaintiffs strangely claim that OHA is infringing on their fundamental "property" interest. (Resp. at 24.) But substantive due process protects only fundamental liberty interests, not property interests. (*See* Mot. at 22 (citing *Washington v. Glucksberg*, 521 U.S. 702, 703 (1997).) And, in any event, Plaintiffs cannot establish that OHA's conduct, policies, or practices infringe any property interest because—as discussed in OHA's Motion—Plaintiffs voluntarily undertook to treat civilly committed patients and they have not alleged any government barrier that would prevent them from ceasing to do so at any time. The SAC thus fails to state a cognizable substantive due process claim.

### 2. Procedural Due Process.

Plaintiffs' procedural due process claim also fails. As discussed above, to trigger due process protections a complaint must allege a plausible deprivation of a constitutionally

---

[8] Plaintiffs also argue that OHA has "ignored" its allegations that they "must continue to treat civilly committed patients" and are no longer volunteering per their decision to become certified to treat civilly committed patients. (Resp. at 25–26.) This is not true. (*See* Mot. at 22 (citing SAC ¶ 84).) Not only did Plaintiffs voluntarily seek certification to treat these patients (Mot. at 22), Plaintiffs are hospitals who function to provide medical treatment to those who need it—whether civilly committed or not. Just because Plaintiffs must treat these patients for a longer time than they prefer does not mean there is a liberty interest violation.

protected liberty or property interest. *See Miranda*, 15 F.4th at 1224. The SAC does not allege any cognizable deprivation (see above), and thus there is no procedural due process violation.

Moreover, as with the third-party procedural due process claim, Plaintiffs do not allege on behalf of themselves a lack of adequate procedural protections for any putative deprivation. *See id.* Plaintiffs acknowledge there is a procedure in place under OAR 309-033-0270(3)(a). (Resp. at 26.) Plaintiffs admit that they have not tried to pursue this process, instead claiming that it is OHA's responsibility to begin the process and Plaintiffs have had "no success." (*Id.* at 27.) But nothing in the text of OAR 309-033-0270 prevents Plaintiffs from pursuing this procedure. And, again, Plaintiffs confuse procedure (protected by procedural due process) with the result (not protected). *Ching*, 725 F.3d at 1156. The Court should thus dismiss Plaintiffs' procedural due process claim.

### D.    MOTION 4: Plaintiffs Fail to State a State or Federal Takings Claim.

Plaintiffs' takings claims fail for three independent reasons. First, the SAC does not plead any actual "taking" because Plaintiffs do not allege that OHA is requiring community hospitals to admit and treat civilly committed patients. Second, Plaintiffs only allege a physical (not a regulatory) taking, but they do not allege any kind of direct invasion or appropriation of physical property by OHA that would be required for a physical takings claim. Third, Plaintiffs seek only equitable relief that is unavailable in a takings claim. Plaintiffs' Response does not overcome any of these defects.

#### 1.    The SAC Does Not Allege that OHA Requires Community Hospitals to Accept Civilly Committed Patients.

The SAC does not plead that OHA is *requiring* Plaintiffs to admit and treat civilly committed patients. Plaintiffs are hospitals who chose to be in the business of providing medical care, and who specifically decide to seek certification to treat civilly committed patients. (SAC ¶

Page 16 – DEFENDANT'S REPLY IN SUPPORT OF ITS MOTIONS TO DISMISS

45.)  OHA cannot "take" something voluntarily provided.  *See Yee v. City of Escondido, Cal.*, 503 U.S. 519, 527 (1992) ("The government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land.") (emphasis in original).  Because OHA does not force or require Plaintiffs to accept and treat civilly committed patients, there is no government appropriation and thus no per se takings claim.  *See Sierra Med. Serv. All. v. Kent*, 883 F.3d 1216, 1226 (9th Cir. 2018); *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1252 (9th Cir. 2013) ("Because participation in Medicaid is voluntary . . . providers do not have a property interest in a particular reimbursement rate.").

Nor does the SAC allege that OHA "ordered" civil commit patients to be placed in their facilities.  Just like *Yee*, where petitioners voluntarily rented their property to mobile homeowners, civilly committed patients were effectively "invited by [Plaintiffs], not forced upon them by the government."  *Id.* at 528.  Just because Plaintiffs are treating certain patients longer than they would like does not mean a governmental taking has occurred.[9]  *See id.* at 531 ("Because they voluntarily open their property to occupation by others, petitioners cannot assert a *per se* right to compensation based on their inability to exclude particular individuals*.*"); *accord CDK Glob. LLC v. Brnovich*, 16 F.4th 1266, 1282 (9th Cir. 2021) ("It is no answer that CDK may not wish to open its DMS to any particular authorized integrator.").

Plaintiffs acknowledge that they voluntarily seek certification to treat civilly committed patients and that they could not legally admit them without that certification.  Even so, they

---

[9] Article III standing presents a different issue than whether Plaintiffs adequately alleged takings claims.  And contrary to what Plaintiffs suggest, (Resp. at 28 n.12), the Ninth Circuit expressly disclaimed any intent to rule on the merits of Plaintiffs' claims in its remand order.  *Legacy Health Sys.*, 2024 WL 2843034, at *1.

assert that OHA effectively forces them to house and treat civilly committed patients because Plaintiffs have a moral and ethical obligation to continue to treat civilly committed patients, rather than discharge them.  But that is not the standard for a takings claim.  That Plaintiffs choose to continue to treat civilly committed patients for moral or ethical reasons—while enviable—does not mean OHA *requires* them to do so.  OHA is not forcing Plaintiffs to do anything, and so there cannot be a takings claim.

### 2.    Plaintiffs Do Not Adequately Allege a Physical Taking.

Even if the Court could construe OHA's actions as sufficient to constitute a taking generally, Plaintiffs' takings claims here would still fail because they do not plausibly allege a physical taking.  Plaintiffs amended their takings claims in the SAC to clarify that they only assert physical, not regulatory, takings.  (*See* SAC ¶ 97 ("For years, OHA has engaged in conduct and a policy and practice that results in a *physical taking* of Plaintiffs' and other community hospitals' property for public use without just compensation.").)  But a physical takings claim requires a direction invasion of Plaintiffs' property by OHA—not an indirect "taking" of property through government action (which would be a regulatory taking).  *Sierra Med. Serv.*, 883 F.3d at 1226; *Managed Pharmacy Care*, 716 F.3d at 1252.  Here, Plaintiffs do not allege that OHA has physically entered their hospitals and taken their beds or other property.

*Sierra Medical Services* illustrates precisely why Plaintiffs' takings claims fail.  In that case, the court evaluated whether a California mandatory-care statute requiring ambulance companies to render emergency services "without first questioning the patient or any other person as to his or her ability to pay" effected either a regulatory or physical takings of the plaintiffs' ambulances and associated personal property.  883 F.3d at 1224.  Analyzing first whether this statute effected a per se physical taking of personal property, the Ninth Circuit concluded that it did not:

> The paradigmatic taking requiring just compensation is a *direct* government appropriation or physical invasion of private property . . . If [the California mandatory-care statute] effects a taking, it is a regulatory one because [the California Department of Health Care Services] does *not directly appropriate* the Plaintiffs' ambulances or other personal property through the mandatory-care provision. [The California Department of Health Care Services] instead regulates how the Plaintiffs can use their property.

*Id.* at 1225 (emphasis added; cleaned up).

The same rationale applies here. Plaintiffs assert only a physical taking. To survive dismissal, therefore, the SAC must allege a direct appropriation by OHA of the Plaintiffs' physical property. Yet the SAC alleges only abstract state conduct, not any action by OHA that constitutes a direct appropriation of their physical property. Plaintiffs allege merely that civilly committed patients are staying longer in their facilities than they should because of a lack of bedspace elsewhere. (SAC ¶¶ 38, 57.)

Moreover, the only cases Plaintiffs cite, *Cedar Point Nursery* and *Horne*, both involved a statute or regulation causing the physical taking. *See generally Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021) (California regulation directly affected a physical taking); *Horne v. Dep't of Agric.*, 576 U.S. 350 (2015) (USDA regulation amounted to a physical taking by directly requiring grape growers to give "actual raisins" to the government).[10]

Here, the SAC identifies no such statute or rule. At most, Plaintiffs allege that civilly committed patients are spending time at Plaintiffs' hospitals because of capacity issues in other types of placements. Such an attenuated causal connection (which is cut off by Plaintiffs' voluntary

---

[10] As Judge Simon stated in *Faroud*, *Yee* carries the applicable standard here, not *Cedar Point*. *See Faroud v. Brown*, No. 3:20-CV-2226-JR, 2022 WL 326092, at *10 (D. Or. Feb. 3, 2022) ("Like the park owners in *Yee*, Plaintiffs here voluntarily invited their tenants onto their property. This fact draws a critical distinction from *Cedar Point*, which conferred a unilateral right on third parties to take access of an employer's property. . . . Instead, only those tenants to whom Plaintiffs have already granted possession may remain on Plaintiffs' property.").

admission and treatment of civilly committed patients) does not amount to the type of direct, permanent appropriation required for a physical takings claim.

### 3. Plaintiffs Cannot Seek Only Equitable Relief for Their Takings Claims.

Finally, Plaintiffs' takings claims also fail because the SAC seeks only non-monetary, equitable relief. As described in OHA's Motion, courts have repeatedly held that equitable relief is not an available remedy for a physical takings claim. (Mot. at 24–25 (citing several cases).) The rationale for this general rule makes perfect sense. "The Supreme Court has held that '[e]quitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking.'" *Atwood v. Strickler*, No. 3:19-CV-01699-IM, 2020 WL 3549662, at *5 (D. Or. June 29, 2020) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984)). "'As long as just compensation remedies are available . . . injunctive relief will be foreclosed.'" *Id.* (quoting *Knick v. Twp. of Scott, Penn.*, 588 U.S. 180, 205 (2019)). And because Plaintiffs have a remedy for seeking just compensation, a court cannot enjoin the state from exercising its sovereign right to "take" private property for public use. *Id.* Here, although Plaintiffs complain about the level of compensation they receive from OHA, they do *not* seek monetary damages. So the takings claims must be dismissed.

Plaintiffs' Response simply ignores the many cases OHA cited. Instead, Plaintiffs rely solely on *Pharm. Research & Manufs. of Am. v. Stolfi*, 724 F. Supp. 3d 1174, 1188–91 (D. Or. 2024). But that case adds nothing. In *Stolfi*, the court analyzed whether one plaintiff could seek equitable relief for a *regulatory* takings claim arising from a drug-price disclosure bill that forced the plaintiff to publicly disclose its trade secrets. *Id.* Relying on an earlier Eighth Circuit opinion involving the same plaintiff, *Pharm. Research & Manufs. of Am. v. Williams*, 64 F.4th

932 (8th Cir. 2023), the court concluded that equitable relief was available despite the general prohibition against that relief in a takings claim because the normal procedures for acquiring just compensation were not adequate. Rather, those procedures would require plaintiff to file "a multiplicity of suits involving the same underlying takings." *Id.* at 1191.

The narrow exception to the bar against equitable relief discussed in *Stolfi* and *Williams* do not apply here. Unlike *Stolfi*, this case involves an alleged physical, not regulatory, taking. And courts in this circuit have consistently held that equitable relief is not recoverable for physical takings claims. *See, e.g.*, *Oregon Firearms Fed'n v. Kotek*, 682 F. Supp. 3d 874, 942 (D. Or. 2023); *Faroud v. Brown*, No. 3:20-CV-2226-JR, 2022 WL 326092, at **10–11 (D. Or. Feb. 3, 2022); (*see also* Mot. at 24–25 (collecting cases)). In addition, the narrow *Williams* exception to the bar against equitable relief applies only where, without equitable relief, (1) the "same injured party" would be forced to file multiple duplicative actions (2) for the same "wrongful act" (3) with facts that are "similar, if not the same." 64 F.4th at 942–43.

None of those elements exist here. This case does not involve a single plaintiff who would have to bring multiple actions for "one wrongful act," but multiple community hospitals who may face varying governmental action over time. Also, the value of each theoretical monetary claim would vary based on the specific hospital involved, the time and duration of each patient's stay, and the specific property allegedly appropriated. In that context, courts have declined to follow *Williams* and dismissed takings claims that seek only equitable relief. *See, e.g.*, *Minn. Deer Farmers Ass'n v. Strommen*, No. 23-3907 (JRT/LIB), 2024 WL 3823027, at *7 (D. Minn. Aug. 14, 2024) (dismissing takings claim because it sought only equitable relief and distinguishing *Williams* because the state's actions "will not result in the same injured party bringing an action against the same wrongdoer for one wrongful act" and "each of the Plaintiffs'

potential claims may be different due to the value of the [property taken]"); *Ass'n of Am.*

*Railroads v. Hudson*, No. 1:23CV815 (DJN), 2024 WL 1626105, at *16 n.14 (E.D. Va. Apr. 15,

2024) (refusing to apply *Williams* exception because "[d]etermining adequate compensation will

. . . necessarily constitute a fact-intensive inquiry for particular crossings with varied market

values, rather than litigation about the "same 'dollar-for-dollar' compensation").

### E. MOTION 5: Plaintiffs Fail to State Third-Party Disability Discrimination Claims on Behalf of Civilly Committed Individuals.

As OHA's Motion explained, Plaintiffs' Sixth, Seventh, Eighth, and Twelfth claims for

disability discrimination on behalf of civilly committed patients all suffer the same two

problems. (Mot. at 25.) First, the SAC does not allege that OHA is discriminating against

civilly committed patients. Second, Plaintiffs do not allege that any such non-existent

discrimination by OHA is *based on* their disability.

Plaintiffs' Response does not explain how OHA's placement of a civilly committed

patient in one authorized facility over another is "discrimination."[11] As even the SAC

acknowledges, placement decisions are made based on available bedspace, not on civilly

committed patients' disabilities. (*See, e.g.*, SAC ¶ 38 ("Plaintiffs cannot transfer the patients

elsewhere because, almost always, there is nowhere for the patient to go. . . . . There simply is

not enough available capacity in Oregon for Plaintiffs to transfer civilly committed patients to

other facilities (whether for long-term treatment or otherwise).").) Nothing in the SAC or in

Plaintiffs' Response alleges or argues otherwise.

---

[11] Plaintiffs argue that their hospitals are not authorized facilities. (Resp. at 30 n.3.) But if that were the case, Plaintiffs would be treating patients they could not legally treat. That is clearly not true. *See* ORS 426.005(1)(c) (authorized facilities include community hospitals which OHA "determine suitable" to provide treatment for civilly committed patients).

Plaintiffs' reliance on *Olmstead v. L.C. ex. rel. Zimring*, 527 U.S. 581 (1999), is misguided. Plaintiffs argue that, under *Olmstead*, the ADA and Rehabilitation Act "prohibit individuals from being placed in restrictive settings when they are able to receive adequate treatment in integrated settings." (Resp. at 32 (emphasis added).) But that is not what is alleged here. Rather, the SAC alleges that they cannot receive treatment in more appropriate long-term treatment facilities because no facility is available. (*See, e.g.*, SAC ¶ 38.) In other words, this isn't a case in which patients are being denied treatment because of their disability; the alleged denial of treatment underlying Plaintiffs' disability discrimination claims occurs because of a lack of available treatment in another facility. So Plaintiffs cannot plead a disability discrimination claim under the ADA.[12]

And even in those rare cases when a lack of facilities could constitute discriminatory segregation of disabled patients, *Olmstead* makes clear that a plaintiff cannot pursue a disability discrimination claim that seeks a court order requiring the creation of more facilities. *See* 527 U.S. at 603 (Title II of the ADA does not apply when the request would "entail a fundamental alteration of the State's services and programs.") (cleaned up); *see also Olson v. Allen*, No. 3:18-CV-001208-SB, 2019 WL 1232834, at *4 (D. Or. Mar. 15, 2019) ("Although Title II requires states to provide public services in a non-discriminatory manner, it does not require states to create new programs to help disabled persons.") (citing *Olmstead*, 527 U.S. at 603 n.14); *see also* ORS 659A.142(5)(c)(B) (including similar limitation). The *Olmstead* court explicitly rejected Plaintiffs' contrary interpretation as an "unacceptable" construction that would leave the State

---

[12] *Olmstead* also clarifies that, even if the ADA allows a claim based on the segregation of persons with disabilities, that rationale does *not* apply to Rehabilitation Act claims. Rather, "Rehabilitation Act contains no express recognition that isolation or segregation of persons with disabilities is a form of discrimination." 527 U.S. at 600 n.11.

"virtually defenseless." 527 U.S. at 603. Rather, the Court held, ADA claims must look to "the allocation of available resources." *Id.* at 604; *see also id.* at 606 ("It is reasonable for the State to ask someone to wait until a community placement is available.").

Lastly, Plaintiffs argue that the Court should ignore how the *Mink* Order affects OHA's ability to place civilly committed patients at OSH when evaluating Plaintiffs' disability discrimination claims. (Resp. at 33.) Plaintiffs insist that their disability discrimination "claims are about much more that OSH—Hospitals challenge Oregon's under-resourced civil commitment system as whole." (*Id.*) But this misses the point. Though OSH is not the only facility in which a civilly committed person may be placed, the *Mink* Order allows only a small number of qualified civilly committed persons to be admitted to OSH, which necessarily means that more patients are being placed in a finite number of community facilities. This impacts the entire system. Plaintiffs do not dispute that OHA is making placement decisions in large part based on the effect of that order, and not because of any individual patient's disability. The disability discrimination claims therefore must be dismissed.

### F.    MOTION 6: Plaintiffs' Oregon Statutory Claims Fail.

Plaintiffs' Tenth and Eleventh Claims for violations of ORS 426.060 and ORS 426.150 should also be dismissed. Plaintiffs' Response concedes, as it must, that these statutes do not provide a private right of action. (Resp. at 34.) But to avoid dismissal, Plaintiffs try to creatively recast the Tenth and Eleventh Claims as equitable claims under the Oregon Declaratory Judgments Act, ORS 28.020 ("Oregon DJA"). (Resp. at 34.) In other words, Plaintiffs argue that, rather than assert a statutory claim under ORS 426.060 and ORS 426.150, they actually seek "a declaration [under the Oregon DJA] that OHA is violating these statutes—and an injunction prohibiting the same." (Resp. at 34.) This argument fails on multiple fronts.

First, no matter how Plaintiffs describe the claims anew in their Response, the Tenth and Eleventh claims are labeled as statutory claims under ORS 426.060 and ORS 426.150. Nowhere in the SAC do Plaintiffs state that they instead intended to assert a state law declaratory relief claim under the Oregon DJA. In fact, Plaintiffs do not even cite the Oregon DJA in the SAC. Plaintiffs cannot use their opposition briefing to amend their claims to assert such a claim. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to the plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original); *see also Ipsos-Insight, LLC v. Gessel*, 547 F. Supp. 3d 367, 380 n.7 (S.D.N.Y. 2021) ("It is well-settled that a claim for relief may not be amended by the briefs in opposition to a motion to dismiss.") (cleaned up). The Court should analyze the Tenth and Eleventh Claims as they are pleaded, not as Plaintiffs recast them in their Response.[13]

Second, had Plaintiffs properly pleaded a standalone state law declaratory relief claim under the Oregon DJA (which they did not), such a claim would be barred under the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (holding that Eleventh Amendment bars claims that allege that "state officials violated state law in carrying out their official responsibilities" and that the exception in *Ex Parte Young*, 209 U.S. 123 (1908), that allows prospective equitable relief against a state official in her official capacity is "inapplicable in a suit against state officials on the basis of state law"); *see also Cox v. Ass'n of*

---

[13] Plaintiffs seem to conflate declaratory relief in federal court (which is a remedy) with declaratory relief in state court, which is a separate statutory cause of action under the Oregon DJA. *See* ORS 28.020 (proving that any person "whose rights, status or other legal relations are affected by a . . . statute" can seek to "have determined any question of construction or validity arising under any such . . . statute."). The Oregon DJA creates a separate cause of action that carries its own statutory standing analysis. *MT & M Gaming, Inc. v. City of Portland*, 360 Or. 544, 553 (2016). And Oregon courts have dismissed claims brought by plaintiffs who assert *both* claims under the Oregon DJA and underlying statutory claims that do not give rise of a private right of action. *See Doyle v. City of Medford*, 356 Or. 336, 371–73 (2017) (allowing a claim to proceed under the Oregon DJA but finding a claim under the underlying disputed statute was not cognizable because that statute did not provide a private right of action).

*Ore. Corrs. Empls., Inc.*, No. 6:22-cv-00906-AA, 2024 WL 1329034, at *10 (D. Or. Mar. 28,

2024) (dismissing ORS 652.615 claim seeking injunctive relief against state official on Eleventh

Amendment grounds); *Olson*, 2019 WL 1232834, at *5 (same).

Third, even if Plaintiffs had pleaded an Oregon DJA claim, and even if that claim were

not barred by the Eleventh Amendment, this Court would have no jurisdiction to grant a

judgment under the Oregon DJA declaring that OHA is violating state civil commitment statutes.

In fact, just last year Senior Judge Henry Kantor (sitting by designation in Marion County Circuit

Court) addressed this very issue when he dismissed a substantially similar claim brought by

Marion County against OHA seeking a declaration that OHA was violating state statutes by not

providing adequate treatment to aid-and-assist patients.  (*See* Appendix A.)  After extensive

briefing and argument, Judge Kantor dismissed the Oregon DJA claim, because, among other

reasons, there was no dispute about the *interpretation or meaning* of the statutes—as required

under ORS 28.020—rather, the only dispute was about whether defendants were "complying

with the statutes."  (*Id.* at 2.)  As Judge Kantor noted, "[t]hat is not the purpose of the DJA," a

conclusion "buttressed by the case law from other states [with Uniform DJAs] making clear that

the DJA is not intended to be used to determine whether a public body has violated a statute."

(*Id.* at 4.)[14]

As in the Marion County case, Plaintiffs here do not claim there is any dispute about the

meaning of ORS 426.060 or ORS 426.150.  Instead, they seek a declaration that OHA is

"violating those statutes—and an injunction enjoining the same."  (Resp. at 34.)  As Judge

Kantor held, that is "not the purpose of the Oregon DJA."  For this and the other reasons

discussed above, the Court should therefore dismiss the Tenth and Eleventh claims.

---

[14] Judge Kantor later dismissed the claims with prejudice after Marion County unsuccessfully
sought to amend the claims.  (*See* Appendix B.)

## III.    CONCLUSION

For these reasons, and for reasons discussed in OHA's prior briefing, OHA respectfully

asks the Court to grant its Motion and dismiss the SAC with prejudice.

DATED:  January 9, 2025.

CABLE HUSTON LLP

s/ Jon W. Monson
Jon W. Monson, OSB No. 102650
Nicole M. Swift, OSB No. 141419
Victoria K. Baker, OSB No. 225400
1455 SW Broadway, Suite 1500
Portland, OR  97201
Tele: (503) 224-3092
Fax: (503) 224-3176
jmonson@cablehuston.com
nswift@cablehuston.com
vbaker@cablehuston.com

*Special Assistant Attorneys General for Defendant
Sejal Hathi, MD, in her official capacity as
Director of Oregon Health Authority*

Carla A. Scott, OSB No. 054725
Senior Assistant Attorney General
Sheila H. Potter, OSB No. 993485
Deputy Chief Trial Counsel
Craig M. Johnson, OSB No. 080902
Senior Assistant Attorney General
Trial Attorneys
Tele: (971) 673-1880
Fax: (971) 673-5000
Carla.A.Scott@doj.state.or.us
Sheila.Potter@doj.state.or.us
Craig.M.Johnson@doj.state.or.us

*Attorneys for Defendants*

# APPENDIX A

_Verified Correct Copy of Original 2/21/2024._

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MARION

MARION COUNTY, a Political Subdivision of
the State of Oregon,

                Plaintiff,

       v.

DAVID BADEN, in his official capacity as Interim
Director of the Oregon Health Authority; and
DOLORES MATTEUCCI, in her official capacity as
Superintendent of the Oregon State Hospital,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 23CV37155

ORDER

Defendants' Rule 21 Motions were heard via WebEx on January 31, 2024. Plaintiff
Marion County ("County") was represented by Marion County Counsel Jane E. Vetto.
Defendants David Baden, in his official capacity as Interim Director of the Oregon Health
Authority ("OHA"), and Dolores Matteucci, in her official capacity as Superintendent of the
Oregon State Hospital ("OSH"), were represented by Special Assistant General Jon W. Monson.

After briefing, the parties agreed that the County's complaint asserted a single claim for
relief seeking both a declaratory judgment and an injunction. On the record, the court denied the
Rule 21 motions directed just to the injunctive relief sought. This order will address the single
motion to dismiss the single claim for relief for lack of subject matter jurisdiction under ORCP
21 A(1)(a).

This order will not address the merits of the pending claim for relief beyond that
necessary to assess jurisdiction and will not evaluate in any way the orders issued by United
States District Court Judge Michael M. Mosman in Disability Rights Oregon v. Baden, Case No.

1  -  ORDER

_Verified Correct Copy of Original 2/21/2024._

3:02-cv-00339 (D. Or.). This long-pending federal case, known as the "*Mink*" litigation based on a previous party's name, has controlled and continues to control many of the issues related to the County's claim for relief here. Rather, this order will determine only if this court has subject matter jurisdiction over the County's claim for declaratory and injunctive relief.

For the reasons set out below, the court determines that subject matter jurisdiction is not present and grants the defendants' motion to dismiss pursuant to ORCP 21 G(4), without prejudice and with leave to amend.

A. The County's Complaint and Relief Sought

In its complaint, the County alleges that the defendants have failed to obtain or pursue the funding needed to comply with both Oregon law and Judge Mosman's orders regarding the handling, confinement and release of criminal defendants with mental health disorders who have been found unable to aid and assist in their own defense. The County seeks a declaration that "OSH is legally responsible for providing sufficient staff, facilities, and other resources necessary to provide services to individuals who require a hospital-level of care and that its failure to do so amounts to a violation of state law." Complaint ¶ 29. If it obtains that declaration, the County also seeks an injunction "requiring OHA and OSH to seek additional staff, facilities, and any other means required to provide inpatient restoration at OSH for all individuals requiring a hospital-level of care who have been found unable to aid and assist in their own defense at trial." Complaint ¶ 31.

The County sought to intervene in the *Mink* litigation. Its proposed complaint in intervention sought similar but not identical declaratory and injunctive relief. Judge Mosman denied the County's motion to intervene, although the County continues to participate in the *Mink* litigation.

2  -  ORDER

Verified Correct Copy of Original 2/21/2024.

B. Justiciability Under Declaratory Judgment Act

"[W]here a defendant brings a motion to dismiss for a claim for declaratory relief for failure to state a claim on the ground that the claim is not justiciable, the defendant is, in fact, asserting that the trial court lacks subject matter jurisdiction." *Beck v. City of Portland*, 202 Or App 360, 367-68 (2005). The defendants' Rule 21 motion asserts three separate justiciability grounds: lack of standing, violation of the Separation of Powers Doctrine and Nonjusticiable Political Questions.

C. Standing Under Declaratory Judgment Act

Defendants first argue that the County lacks standing under Oregon's Declaratory Judgment Act ("DJA"), ORS 28.020, because the County does not seek to have the court determine "any question of construction or validity" of any of the statutes set out in the County's complaint: ORS 179.321, ORS 179.360, ORS 161.370, and ORS 161.371(2)(a). It is undisputed that these statutes do not provide anything relating to the County's rights, status or legal relations, but rather direct OHA and OSH to perform certain functions and follow certain procedures under Oregon law. The defendants agree that they must comply with these statutes and claim they are endeavoring to do so within the confines of the *Mink* litigation.

The County does not question the meaning or validity of these statutes. It asserts that "construction" of a statute includes its "application" and cites Oregon cases which seem to have held that standing was present to obtain a declaration that a party was violating a particular statute. Yet the County does not and seemingly cannot claim that there is any question regarding the meaning, application or validity of these statutes which this court could decide, other than to say that the defendants must obey the statutes.

3  -  ORDER

Verified Correct Copy of Original 2/21/2024.

During oral argument, the County made clear that it believes that the defendants are not complying with these statutes and that it is appropriate that the court so declare. That is not the purpose of the DJA.

This is further buttressed by the case law from other states cited by the defendants making clear that the DJA is not intended to be used to determine whether a public body has violated a statute. These other states have declaratory judgment statutes similar to Oregon's; all are based on the Uniform Declaratory Judgments Act. Judges are directed to construe the DJA consistently with those construing other states' uniform laws. *O'Connor v. Zeldin*, 134 Or App 444, 447 (1995).

Defendants also argue that the County lacks standing under the DJA because the County does not allege or establish that "its rights, status or other legal relations are affected by" any of the statutes set out in the County's complaint:

The County asserts that it is interested in the defendants' compliance with these statutes because it is affected by noncompliance. For the purposes of this motion, the court assumes that the defendants' alleged noncompliance actually has caused and continues to cause damage to the County, as the burden and cost of dealing with criminal defendants with mental health disorders released into the community is evident and budget-busting. While this damage is being felt by other Oregon counties as well, for the purposes of this motion (again), the court assumes that this County's damage is somehow unique.

Being interested in the defendants' compliance with the statutes and being damaged by alleged noncompliance does not satisfy the DJA's requirement that the County be "affected" by these statutes themselves. The statutes do not affect the County's "rights, legal status or relations."

4  -  ORDER

Verified Correct Copy of Original 2/21/2024.

The court concludes that the County lacks standing under the DJA to assert its claim for relief in this case. That makes its claim nonjusticiable and requires dismissal for lack of subject matter jurisdiction.

D. Separation of Powers Doctrine

Defendants first argue that the County's claim for relief violates the Separation of Powers Doctrine because it asks the court in our state government's judicial branch to issue first a declaratory judgment and then an injunction which would impose an undue burden on the executive and legislative branches.

The court easily concludes that declaring that the defendants must comply with certain statutes which the defendants agree control them is not an undue burden. That part of the requested declaratory judgment itself is not the problem. It is the requested injunction.

The Oregon Legislative Assembly has assigned responsibility to the defendants for the core functions of caring for criminal defendants with mental health disorders who are unable to aid and assist in their own defense, in compliance with the statutes cited above. In the posture of this case, this court has no role and should have no role in determining how to do that.

Defendants also argue that the Separation of Powers Doctrine is violated because the County asks the court within the judicial branch to perform functions expressly delegated to the executive and legislative branches. Again, it is the requested injunctive relief which invades the functions of the other bodies. In the posture of this case, this court should not and cannot order the defendants or the legislature to fund OHA's budget.

The court concludes that the injunctive relief sought by the County would violate the Separation of Powers Doctrine. That makes that part of its claim nonjusticiable and requires dismissal of the request for injunctive relief for lack of subject matter jurisdiction.

5  -  ORDER

_Verified Correct Copy of Original 2/21/2024._

E. Nonjusticiable Political Question

Defendants last argue that the County's claim for relief raises inherently nonjusticiable political questions for several reasons, including the lack of any judicially manageable standards for the court to use to determine or manage how OHA or OSH should seek funding from the legislature, how the legislature should evaluate the funding requests or fund them, or how OHA or OSH should use the funds. The court sees no such standards in this case. To the extent the County is seeking to impose standards different than those being utilized by Judge Mosman in the *Mink* litigation, all that establishes is that the County is seeking to avoid Judge Mosman's rulings which have been held to be superior to those of any state court. The court concludes that the injunctive relief sought by the County would raise a political question. That makes that part of its claim nonjusticiable and requires dismissal of the request for injunctive relief for lack of subject matter jurisdiction.

F. Right to Amend Complaint

Defendants assert that, if the court grants their motion, the case should be dismissed with prejudice without leave to amend. That is not appropriate at this time. The County may file an amended complaint within 30 days of this order.

IT IS SO ORDERED.

DATED February 4, 2024.

Senior Judge Henry Kantor

6  -  ORDER

# APPENDIX B

IN THE CIRCUIT COURT OF THE STATE OF OREGON

STATE OF OREGON
Marion County Circuit Courts

JUL 05 2024

**FILED**

FOR THE COUNTY OF MARION

_Verified Correct Copy of Original 7/9/2024._

| | | |
|---|---|---|
| MARION COUNTY, a Political Subdivision of the State of Oregon, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 23CV37155 |
| v. | ) ) ) | ORDERS REGARDING CAPTION AND DEFENDANTS' RULE 21 MOTIONS |
| OREGON HEALTH AUTHORITY; SEJAL HATHI, in her official capacity as Director of the Oregon Health Authority; and SARA WALKER, in her official capacity as Interim Superintendent of the Oregon State Hospital, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER RE CAPTION**

Pursuant to ORCP 34 F and the parties' stipulation, and the caption of this case shall

henceforth be as follows:

> MARION COUNTY, a Political Subdivision of
> the State of Oregon,
>
> > Plaintiff,
>
> > v.
>
> OREGON HEALTH AUTHORITY; SEJAL HATHI,
> in her official capacity as Director of the Oregon
> Health Authority; and SARA WALKER, in her official
> capacity as Interim Superintendent of the Oregon
> State Hospital,
>
> > Defendants.

_ Verified Correct Copy of Original 7/9/2024._

## ORDER RE RULE 21 MOTIONS

Defendants' Rule 21 Motions in Response to First Amended Complaint were heard on June 5, 2024. Plaintiff Marion County ("County") was represented by John A. DiLorenzo Jr. of Davis Wright Tremaine LLP. Defendants Oregon Health Authority ("OHA"); Seal Hathi, in her official capacity as Director of the OHA; and Sara Walker, in her official capacity as Interim Superintendent of the Oregon State Hospital ("OSH"), were represented by Special Assistant General Jon W. Monson and Victoria K. Baker of Cable Huston LLP. After oral argument, the court took the motions under advisement.

During the hearing, Mr. DiLorenzo supplemented the record by handing the court a copy of the Relator's Opening Brief in Oregon State Hospital v. State of Oregon, Supreme Court No. S070893, following the issuance of an alternative writ of mandamus, 372 Or 193 (2024) ("OSH v. State"). On June 28th, Mr. DiLorenzo emailed the court a copy of Intervenor Hon. Audrey J. Broyles' Corrected Brief in that case and asked the court to keep the motions under advisement until the Supreme Court has ruled. The court denied that request by email the same day.

On June 7th, the court asked counsel to comment via email on the potential impact of Legacy Health System v. Hathi, ___ F App'x ___ (Mem. Dec. 9th Cir. June 5, 2024), https://cdn.ca9.uscourts.gov/datastore/memoranda/2024/06/05/23-35511.pdf (last visited on June 11, 2024). The final comment was received on June 11th. The court agrees with counsel that this Ninth Circuit decision has no applicability to the pending motions.

The defendants previously moved to dismiss the County's original complaint, with prejudice. The court granted that motion, but without prejudice and with leave to amend. Order dated February 4, 2024 ("February Order"). The defendants now move to dismiss the County's

Verified Correct Copy of Original 7/9/2024._

First Amended Complaint ("FAC"), with prejudice, asserting that the court's earlier rulings mandate dismissal of what essentially is the same complaint with the same allegations.

In its previous order, the court described the County's original complaint as follows:

"In its complaint, the County alleges that the defendants have failed to obtain or pursue the funding needed to comply with both Oregon law and Judge Mosman's orders regarding the handling, confinement and release of criminal defendants with mental health disorders who have been found unable to aid and assist in their own defense. The County seeks a declaration that "OSH is legally responsible for providing sufficient staff, facilities, and other resources necessary to provide services to individuals who require a hospital-level of care and that its failure to do so amounts to a violation of state law." Complaint ¶ 29. If it obtains that declaration, the County also seeks an injunction "requiring OHA and OSH to seek additional staff, facilities, and any other means required to provide inpatient restoration at OSH for all individuals requiring a hospital-level of care who have been found unable to aid and assist in their own defense at trial." Complaint ¶ 31." February Order at 2.

The court dismissed the entire complaint, concluding that the County lacked standing to seek relief under Oregon's Declaratory Judgment Act (ORS 28.020) because (a) the County was not questioning the meaning or validity of the statutes in question and (b) the County was not claiming that its rights, status or other legal relations are affected by the statutes in question. February Order at 3-4. This conclusion meant that the claim was not justiciable and that this court lacked subject matter jurisdiction. *See Beck v. City of Portland*, 202 Or App 360, 367-68 (2005).

In its amended complaint, the County has moved away from its direct comments and criticisms about funding issues and the federal court orders. FAC ¶ 20. The County still refers to the same statutes which it claims the defendants are not in compliance with (ORS 179.321, ORS 179.360, ORS 161.370 and ORS 161.371), now asserting that the defendants "have failed to correctly interpret and apply these statutory obligations." FAC ¶¶ 8-12. The County now seeks a declaration under these statutes that "defendants have a non-discretionary statutory obligation to admit individuals committed to the custody of the superintendent of OSH on an inpatient basis

_Verified Correct Copy of Original 7/9/2024._

(or, in the alternative, on an outpatient basis) and provide them restoration services until (1) the superintendent of OSH certifies that a hospital level of care is no longer necessary and the committing court finds that they are fit to stand trial, or (2) those individuals reach the maximum period of restoration under ORS 161.371." FAC ¶ 20. No injunctive relief is sought.

The defendants contend that this court lacks subject matter jurisdiction over the single claim for relief for declaratory judgment in the FAC because the County lacks legal standing for the same reasons as described by the court in granting the motion to dismiss the original complaint. If so, again, this would mean that the claim is not justiciable and the court would lack subject matter jurisdiction.

As before, there is no contention that there is a controversy between the parties regarding any aspect of ORS 179.321, ORS 179.360 or ORS 161.371, so the court will not discuss those further – they do not provide any basis for standing. The only issue is whether ORS 161.370(3)'s use of the term "hospital level of care" as defined by ORS 161.355(3) includes *outpatient* as well as *inpatient* services provided by an inpatient hospital. (Based on the two briefs submitted to this court, that issue appears to be presented for decision in *OSH v. State*, although it is possible the Supreme Court could decide that case without deciding that issue.)

There is no dispute about whether the defendants are providing these outpatient services – they are not, both because they believe the statute does not require or permit that and because the federal court has ruled they may not do so. The underlying premise of the County's claim is that, if ORS 161.370 requires the defendants to provide outpatient services, the defendants are violating the statute. Without including that premise the claim is hollow and lacks substance. As this court previously held, the Declaratory Judgment Act "is not intended to be used to determine

_Verified Correct Copy of Original 7/9/2024._

whether a public body has violated a statute." February Order at 4. The court sees no reason to reach a different conclusion here.

As before: the County claims it has been uniquely affected by the way the defendants have interpreted and applied ORS 161.370. It does not claim any different "legally recognized interest" than it did in responding to the defendants' motion to dismiss the original complaint, which this court found to be legally insufficient. Nor does the County demonstrate how granting the requested declaratory relief would redress the claimed interest or harm  There is no reason to believe that the Oregon Supreme Court or Judge Adrienne Nelson (now presiding over the federal litigation) would be influenced by this court's ruling in that regard any more than they have been by Judge Broyles' orders.

For these reasons, the County lacks standing to ask this court to declare that the defendants must provide outpatient restoration services under ORS 161.370. This court lacks subject matter jurisdiction. The defendants' motion to dismiss the FAC is granted.

During the hearing, counsel did not address whether the dismissal should be with or without prejudice, although defense counsel certainly asked that it be with prejudice. Given the unique circumstances of this case, the court orders that if the County wishes to try again it must file a motion for leave to file a second amended complaint within 30 days of entry of this order. If no such motion is filed, the defendants may submit a proposed judgment.

IT IS SO ORDERED.

DATED July 5, 2024.

Senior Judge Henry Kantor