IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON,<br><br>　　　　Plaintiffs,<br>　　v.<br><br>SAJEL HATHI, in her official capacity as head of the Oregon Health Authority, and SARA WALKER, in her official capacity as Superintendent of the Oregon State Hospital,<br><br>　　　　Defendants. | Case No.: 3:02-cv-00339-AN (lead)<br>　　　　　3:21-cv-01637-AN<br>　　　　　(consolidated)<br><br>OPINION AND ORDER |

On January 9, 2025, *amicus curiae* Marion County (the "County") moved, for the third time, to intervene in this case pursuant to Federal Rule of Civil Procedure 24(a) and (b). Along with its motion, the County filed a response in opposition to plaintiff Disability Rights Oregon's ("DRO") motion for order to show cause and for a remedial order (the "contempt motion"). Plaintiffs DRO and Metropolitan Public Defender Services, Inc. ("MPD") oppose the County's intervention, and defendants take no position. For the following reasons, the County's motion to intervene, ECF [544], is DENIED.[1]

## LEGAL STANDARD

**A.    Intervention of Right**

Federal Rule of Civil Procedure ("FRCP") 24(a)(2) requires a court to permit intervention when four requirements are met:

> "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action."

---

[1] This Opinion and Order does not address plaintiffs' Motion for Imposition of Sanctions, ECF [566].

1

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc). The movant bears the burden of showing that all four requirements are satisfied. *Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013). In making its determination, a court is "guided primarily by practical and equitable considerations, and the requirements of intervention are broadly interpreted in favor of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

**B.    Permissive Intervention**

FRCP 24(b)(1)(B) grants courts discretion to permit intervention when an applicant makes a timely motion to intervene and "has a claim or defense that shares with the main action a common question of law or fact." The movant bears the burden of establishing three requirements: "(1) [the applicant] shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Cooper v. Newsom*, 13 F.4th 857, 868 (9th Cir. 2021) (citation omitted). Even if all three requirements are met, "the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id.*

## BACKGROUND

The factual background of this case is well set out in prior opinions and orders. *See, e.g.*, Op. & Order of January 9, 2023, ECF [338]; Op. & Order of May 25, 2023, ECF [395]. As relevant to the present motion, the County has participated in this matter as *amicus curiae* since August 29, 2022. Mins. of Proceedings of August 29, 2022, ECF [269]. In June of 2023, the County sought to intervene in this case based on the indirect effects of the September 1, 2022, Order to Implement Neutral Expert's Recommendations (the "September 2022 Order"), ECF [271], on the County's programs and services, and the anticipated effects of a pending motion to amend the order. First Mot. to Intervene, ECF [402], at 2-3. That motion was denied at oral argument on June 29, 2023. Minutes of Proceedings, ECF [415]. In denying the motion, U.S. District Judge Michael Mosman stated on the record:

> "I disagree that Marion County has met the standard for either mandatory or permissive intervention, both on the merits of the rule, and particularly on timeliness. Certainly some facts have changed, but the sort of litigation posture of the parties and who is advancing, for example, Marion County's interests and who isn't, that's been a longstanding situation that hasn't dramatically changed by altered facts on the ground."

Tr. of Oral Arg. from June 29, 2023, ECF [421], at 19:23-20:5. The County filed a Notice of Appeal on July 27, 2023, ECF [424], and the Ninth Circuit affirmed the denial on May 10, 2024, ECF [494].

On July 3, 2023, Judge Mosman issued a Second Amended Order to Implement Neutral Expert's Recommendations (the "Second Amended Order"), ECF [416], which is the operative injunctive order in this case. On February 9, 2024, Marion County Circuit Court Judge Audrey Broyles ordered the Oregon State Hospital to provide outpatient restoration services to a criminal defendant. Op. & Order of March 6, 2024, ECF [475], at 2. The defendant had already received the maximum duration of restoration services authorized under the Second Amended Order, but he was not restored to competency. *Id.* On March 6, 2024, Judge Mosman issued an order (the "March 2024 Order") holding that Judge Broyles' order violated the Supremacy Clause because it required the Oregon State Hospital to provide the defendant with restoration services that exceeded the Second Amended Order's maximum duration.

On March 29, 2024, the County filed a second motion to intervene based on allegations that, as a result of the September 2022 Order, "the County's community restoration caseload tripled while placement options dwindled." Second Mot. to Intervene, ECF [478], at 2. The County argued that the March 2024 Order "further increase[d] the financial and administrative burdens on the County" because "[b]y prohibiting Oregon State Hospital . . . outpatient services as an alternative to community restoration, the County will be presented with even more individuals requiring services." *Id.* This, the County alleged, "further burden[ed] the County's already strained resources" because it created "an increase in the number of individuals remaining in jail," "an increased number of individuals charged with violent crimes simply leaving services without receiving stabilizing treatment, and "obvious fiscal consequences to the County from the increase in services that is caused by turning individuals away from outpatient services." *Id.* at 3. This Court denied the County's second motion to intervene on April 4, 2024. Op. & Order of April 4, 2024, ECF [485]. In denying the motion, this Court found that the County's motion was not timely because it was "brought twenty-one years after judgment was entered, and four years into the enforcement stage of the proceedings, would result in substantial prejudice to the parties, and suffer[ed] from, at best, a one-and-a-

3

half-year delay with no justifiable reason for the delay." *Id.* at 7. The County filed a notice of appeal on April 5, 2024, ECF [486], and the appeal is currently pending before the Ninth Circuit.

On January 7, 2025, DRO filed the contempt motion. Pl. DRO Mot. for Order to Show Cause & for Remedial Order ("DRO Mot."), ECF [540]. DRO's contempt motion asks the Court to impose incremental monetary civil contempt sanctions and to modify admissions to and discharges from the state hospital in various ways. A two-day hearing on the contempt motion is scheduled for March 12 and 13, 2025. Mins. of Proceedings of January 24, 2025, ECF [560].

The County now moves, for the third time, to intervene in this case, alleging that DRO's contempt motion proposes "major legislative policy changes" that "inherently implicate[]" the County's rights. Third Mot. to Intervene ("3d Mot. to Intervene"), ECF [544], at 4. The County argues that the proposed policy changes, especially the proposed limitations on certain referrals to the state hospital, would "play Russian roulette with patient safety and public safety"; deprive patients of necessary hospital-level care; and would "create more work for [the] County" because the County would be required to "provid[e] resources and bear[] the risks of harms related to the confinement of individuals on community restoration on the front end while also needing to provide more victim services as crimes increase on the back end." *Id.* at 5-6. The County notes that it "lacks adequate staff and funds to provide the resources needed to ensure that a new avalanche of individuals on community restoration are given appropriate placement and medications." *Id.* at 6.

## DISCUSSION

The County reiterates many arguments already made in its prior motions to intervene. However, the Court's denial of the first motion to intervene was affirmed by the Ninth Circuit, and the Court's denial of the second motion is currently pending on appeal before the Ninth Circuit. To the extent the County is asking this Court to reconsider the decision to deny the County's second motion to intervene, the Court lacks jurisdiction to do so. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885-86 (9th Cir. 2001) ("[J]urisdiction is transferred from a district court to a court of appeals upon the filing of a notice of appeal."). Accordingly, the Court considers the County's third motion to

4

intervene only insomuch as the County's arguments relate to DRO's contempt motion.

**A.     Timeliness**

For both permissive intervention and intervention of right, a threshold requirement is that the motion is timely. Timeliness is assessed based on three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992) (citation omitted).

As an initial matter, the scope of intervention that the County seeks is not clear. The County captions its motion as a "limited" one and states that it seeks only to intervene "for the **limited** purpose of responding to the recently filed [contempt motion]." 3d Mot. to Intervene 2 (emphasis in original). However, as plaintiffs point out, the County (1) could have filed its response as an *amicus*, and (2) states in its reply in support of its motion that this case "would benefit from Marion County's participation as a party" and that "only Marion County can be counted on to fully defend the Court's monetary fines when the State appeals." Marion County Reply Supp. 3d Mot. to Intervene ("Marion County Reply"), ECF [562], at 2. Regardless, for the reasons set forth below, the County's motion fails.

   1.     *Stage of Proceedings*

The County's present motion to intervene was filed more than twenty-two years after the commencement of this case. Final judgment was entered in this case on May 15, 2002; the Ninth Circuit affirmed that judgment on April 1, 2003; and this Court has retained jurisdiction solely to enforce the permanent injunction. Generally, "postjudgment intervention is [] disfavored because it creates 'delay and prejudice to existing parties.'" *Calvert v. Huckins*, 109 F.3d 636, 638 (9th Cir. 1997) (quoting *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986)). As this Court has previously acknowledged, and to be sure, the unique circumstances of this case may impact that general rule; however, litigation regarding enforcement of the injunction has been ongoing since 2019. At the very least, the County is seeking to intervene more than five years after the current stage of proceedings began. This factor weighs

against a finding that the motion is timely.

The County argues that its motion is timely under the totality of the circumstances because DRO's contempt motion created a change in circumstances and ushered the litigation into "a new stage" such that intervention is appropriate. Marion County Reply 5. The County argues that DRO's contempt motion "is the first motion in this case seeking to impose per diem monetary fines against [d]efendants with increasing amounts the longer contempt continues" and that imposing *per diem* monetary fines would "impact[] the rights and responsibilities of Marion County." *Id.* at 4. However, as plaintiffs point out, plaintiffs both filed motions for contempt in 2019, and at least MPD's 2019 contempt motion requested "'necessary remedial sanctions to punish the defendants and compensate plaintiffs and those effected by [defendants'] contempt for their injuries.'" DRO & MPD Mem. Suppl. Mot. for Sanctions ("Pls. Suppl. Mem."), ECF [566-1], at 7 (quoting Pl. MPD Mot. for Order to Show Cause for Finding of Contempt & for Disc., ECF [85], at 1). Because the imposition of fines (regardless of whether such fines were actually issued) has been contemplated since, at the least, 2019, this cannot be said to create the kind of "changed circumstances" that would make the County's intervention timely.

Furthermore, to the extent the County argues that a different timeliness analysis should apply because its motion is a limited one, this argument fails. While it is true that "[a] motion to intervene seeking only to participate in the appeal is timely if filed within the time allowed for filing an appeal[,]" *United States v. Washington*, 86 F.3d 1499, 1505 (9th Cir. 1996) (citing *McGough*, 967 F.2d at 1395); *see Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1320 (9th Cir. 1997) (citing *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 (1977)), here, the County's purported limited purpose is not to appeal a recently issued order, but rather to respond to a recently filed motion. The standard timeliness test applies.

2. *Prejudice to Other Parties*

The County argues that intervention is not likely to result in prejudice to the other parties because (1) defendants have not opposed the motion, and (2) plaintiffs' "claims of prejudice do not hold up to scrutiny based on established precedent." Marion County Reply 6. Regarding plaintiffs, the County specifically argues that no prejudice will result because "Marion County will not use [] intervention to

6

relitigate matters which have previously been litigated, to raise any claims unrelated to the current stage of the case, or to assert any new claims against other parties." *Id.* Thus, the County's intervention "will be forward-looking and focused on advocating for monetary fines[.]" *Id.* In opposition, plaintiffs argue that intervention would result in substantial prejudice because it would protract and multiply the proceedings in complexity and would facilitate further appeal. Plaintiffs argue this is particularly true where the County has, in the past, obfuscated its true intentions in seeking intervention, and may be doing so again now.

This factor again weighs against finding that the motion is timely. As noted, the County's argument that it seeks only to intervene for the limited purpose of responding to DRO's contempt motion is suspect where, as here, the County has been free to submit that response as an *amicus*. The County's indication that it intends to zealously advocate for monetary sanctions on appeal indicates that the County seeks to intervene beyond its purported limited purpose. But the parties in this case have undertaken substantial negotiations that have resulted in a "complex and delicately balanced" enforcement posture. Op. & Order of April 4, 2024, ECF [485]. That enforcement posture continues to be negotiated, and allowing the County to intervene at this point would cause substantial prejudice by disrupting the "delicate balance the parties have achieved." *United States v. Oregon*, 913 F.2d 576, 588-89 (9th Cir. 1990).

3. *Reason for and Length of Delay*

The length of delay is "measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties[.]" *Washington*, 86 F.3d at 1503. The County appears to argue that there was minimal to no delay because it filed its motion only two days after DRO filed its contempt motion, and that it only learned its interests would no longer be adequately protected by the parties upon DRO's filing of the contempt motion because that motion "seeks major legislative policy changes that are outside the responsibilities of the judicial branch and endanger all Oregon residents." 3d Mot. to Intervene 6. The County argues that it thus "stands in a unique position" because "[a]ll current parties agree on trying to shift the burdens of restoration onto counties." *Id.* at 6. In opposition, plaintiffs argue that the contempt motion does not constitute a change in circumstances and that the County has previously admitted—and this Court and the Ninth Circuit have previously found—that

7

"neither party has protected [the County's] interest since at least 2022[.]" Pls. Suppl. Mem. 4.

The Court agrees with plaintiffs. Regardless of the specific remedies proposed within DRO's contempt motion, the motion itself is an extension of enforcement proceedings that, as noted, began in 2019. Furthermore, the County has argued since at least 2022 that its interests have not been adequately protected by the parties. The County provides no explanation for its delay in seeking to intervene other than the circular argument that there was no delay because the County filed its motion only two days after DRO's contempt motion.

In sum, the Court finds that the County's third motion to intervene (1) is brought more than twenty-two years after judgment was entered, and more than five years into the enforcement stage of the proceedings; (2) would result in substantial prejudice to the parties; and (3) suffers from a multi-year delay with no justifiable reason for that delay. Therefore, the County's motion is not timely.

**B.    Remaining Factors**

Because the County's motion is not timely, the Court does not consider the remaining elements for permissive intervention or intervention by right. *See Oregon*, 913 F.2d at 589 ("Because we affirm the district court's decision that the [proposed intervenor]'s motion was not timely, we need not reach any of the remaining elements of the test set forth in Rule 24."); *id.* ("A finding of untimeliness defeats this [permissive intervention] motion as well.").

## CONCLUSION

For the reasons stated above, *amicus curiae* Marion County's Motion to Intervene Limited in Response to Plaintiff Disability Rights Oregon's Motion for a Rule to Show Cause, ECF [544], is DENIED.

IT IS SO ORDERED.

DATED this 11th day of March, 2025.

*Adrienne Nelson*
Adrienne Nelson
United States District Judge