IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

WYATT B. et al.                                    Civ. No. 6:19-cv-00556-AA

                    Plaintiffs,                    **OPINION & ORDER**

          v.

TINA KOTEK et al.,

                    Defendants.
_____

AIKEN, District Judge.

       This case comes before the Court on Plaintiff's Motion for Attorney Fees and

Costs.  ECF No. 514.  For the reasons set forth below, the motion is GRANTED in

part.

**INTRODUCTION**

       "There can be no keener revelation of a society's soul than the way in which it

treats its children."  Nelson Mandela, President of South Africa, Address by President

Nelson Mandela at the launch of the Nelson Mandela Children's Fund, Pretoria, (May

8, 1995).  Measured by that metric, Plaintiffs' case has been a resounding success.  In

2018, the Oregon Secretary of State published an audit in which the Secretary

exhaustively documented the failures and shortcomings of the Oregon Department of

Human Services with respect to Oregon's foster care system.  The following year,

Exhibit A
Emily Cooper Decl.

Plaintiffs commenced this action, seeking sweeping reforms of Oregon's child welfare system. Over the next five years of frequently bitter litigation and contentious negotiation, they continued to pursue that goal, culminating in the Settlement Agreement. That Agreement contemplates major reforms of the child welfare system in Oregon, overseen and monitored by an experienced and neutral third party.[1] The parties and the Court are united in our hope for the success of the promised reforms. While Plaintiffs did not win every skirmish on the way to ultimate victory, their submissions reflect justifiable pride in what they have achieved in this case.

The case now comes to the Court on Plaintiffs' motion for attorney fees, in which they seek $10,920,301.00 in attorney fees and $590,580.07 in costs, representing more than 23,000 hours of billable work over five long years of litigation. The Settlement Agreement provided for a negotiated resolution of the fee issue, but the parties were unable to reach an agreement and so the matter returns to the Court for resolution.

Defendants have objected to Plaintiffs' fee request in strident terms, challenging the number of attorneys, the hours expended, the rates requested, and the tasks performed. Defendants propose sweeping and drastic reductions to Plaintiffs' fees and costs, amounting to 50% of the fees and nearly 60% of Plaintiffs' costs. These proposals, and many of Defendants objections, ring hollow when Plaintiffs' submissions are compared to Defendants' own fees and costs in this case.

---

[1] The Neutral selected in this case, Kevin Ryan, has considerable experience with the reform of child welfare systems, including those in Michigan, Oklahoma, Texas, and New Jersey. ECF No. 497. The Court has confidence in Mr. Ryan's ability and anticipates that his assistance will be a key component of the planned reforms.

Over the life of the case, Defendants' counsels' firm, Markowitz Herbold PC, employed thirty-three attorneys to work on this matter, of whom thirteen were partners. As of July 3, 2024, Defendants billed a total of $18,098,921.50 in fees, accounting for 52,558.7 billable hours of work, in addition to costs of $5,225,465.88. Blaesing Decl. Exs. 1, 2. These fees and costs total $23,324,387.38, roughly double the fees and costs sought by Plaintiffs. The Oregon Department of Justice spent an additional $325,504.57 in attorney fees on this case, beyond what was billed by the Markowitz Herbold attorneys. Blaesing Decl. ¶ 3. These figures do not include the fees incurred by Defendants in preparing their Objections to Plaintiff's fee motion, which the Court presumes are substantial based on the scope of the Objections and their supporting exhibits. The Court is not here to pass judgment on the propriety of Defendants' fees—that is between Defendants' counsel and the State of Oregon. However, the Court notes that fees for all parties were driven up by certain litigation decisions made by Defendants in this case, notably concerning discovery.

Finally, the Court wishes to note that this case was repeatedly referred for settlement conferences beginning in 2019 and culminating in the 2024 Settlement Agreement, executed on the eve of trial. By design, the Court does not know what happened in those unsuccessful settlement conferences. However, fees and costs for all parties rose substantially as the case approached trial and it is impossible not to reflect on how much attorney time and public money might have been saved had the parties been able to come to an agreement earlier in the life of the case. One is left to wonder how much more progress might have been made in repairing the

deficiencies identified by the Secretary of State's audit had the tens of millions of dollars expended in this litigation been devoted instead to that goal.

## ENTITLEMENT TO FEES AND COSTS

The Settlement Agreement, ECF No. 481, provides for the payment of Plaintiffs' reasonable attorney fees and costs:

> Even though no liability was determined by the Court, the Parties agree that Plaintiffs' counsel are entitled to an award of reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988 and any applicable laws . . . In the event the Parties do not reach agreement on the amount of Plaintiffs' reasonable attorney fees and costs award, Plaintiffs shall submit a fee petition to the Court by July 3, 2024. Plaintiffs will not seek any fee enhancement or multiplier. Defendants shall be entitled to present any and all objections . . . The Parties agree that the Court's decision on attorney fees shall not be appealable. The parties further agree that payment shall be made upon Effective Date of this Settlement or November 30, 2024, whichever is later, unless an alternative payment plan is otherwise agreed to between the Parties.

Settlement Agreement, § 12.

Under 42 U.S.C. § 1988, courts are authorized to award attorney fees to the prevailing party in an action under 42 U.S.C. § 1983, among other statutes. 42 U.S.C. § 1988(b).

Under the ADA, the Court "may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs[.]" 42 U.S.C. § 12205.

A plaintiff who enters "into a legally enforceable settlement agreement against the defendant" is a "prevailing party" in the Ninth Circuit. *Barrios v. Cal Interscholastic Fed.*, 277 F.3d 1128, 1134 (9th Cir. 2002).

## LEGAL STANDARD

The Ninth Circuit has adopted the "lodestar" method for calculating attorney fees. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). That calculation multiplies a reasonable hourly rate by the number of hours reasonably expended in the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). The Court must then decide whether to enhance or reduce the lodestar figure by evaluating a number of factors. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

The court may adjust the lodestar to account for factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Actors Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). The court need only consider the factors not already subsumed in the initial lodestar calculation. *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).

There is a strong presumption that the lodestar method produces a reasonable figure and should only be enhanced or reduced in exceptional circumstances.

*Delaware Valley Citizens*, 478 U.S. at 565; *Fischer*, 214 F.3d 1119 n.4. Courts have discretion, however, to adjust the lodestar figure either: (1) downward if the plaintiff has achieved only partial or limited success or if the fee is otherwise unreasonable, *Hensley*, 461 U.S. at 435-36, or (2) upward in "rare" and "exceptional" cases. *Delaware Valley Citizens*, 478 U.S. at 565.

## DISCUSSION

In their motion, Plaintiffs seek a total award of fees in the amount of $10,920,301.00 through July 3, 2024. These fees are divided between the four firms and organizations who represented Plaintiffs: A Better Childhood ($7,537,573.04), Lowry Decl. ¶ 2, ECF No. 518; Disability Rights Oregon ($1,236,024.50), Cooper Decl. Ex. F, at 21. ECF No. 519; Davis Wright Tremaine ($1,394,288.00), Miner Decl. ¶ 4, ECF No. 523; and Rizzo Bosworth Eraut, P.C. ($1,221,304.20), Rizzo Decl. Ex. 1, at 66, ECF No. 522. Plaintiffs have voluntarily discounted a portion of their fees, accounting for a difference between sum of the amounts listed above and the total requested fee of $10,920,301.00. Pl. Mot. 1 n.1; McDermott Decl. ¶ 12(2), ECF No. 515.[2]

Plaintiffs seek costs totaling $590,580.07.[3] As with attorney fees, these costs are divided between the firms and organizations that represented Plaintiffs: A Better Childhood ($136,279.84), Supp. Lowry Decl. Ex. 2, at 9, ECF No. 538; Disability Rights Oregon ($20,730.52), Cooper Decl. Ex. F, at 22; Davis Wright Tremaine

---

[2] Defendants' counsel similarly "No Charged" a portion of their hours, totaling $819,828.50. Blaesing Decl. ¶ 5.

[3] Plaintiffs reduced their requested costs by $1,734.06 in their Reply brief. Supp. Lowry Decl. ¶ 13, Ex. 3.

($429,112.45), Miner Decl. ¶ 10; and Rizzo Bosworth Eraut ($4,447.26), Rizzo Decl. Ex. 1, at 77.

## I.    Reasonable Hourly Rates

Defendant objects to the rates claimed by Plaintiffs' counsel.  In setting a reasonable hourly rate, courts look to the fee customarily charged in the relevant community.  *Bell v. Clackamas Cnty.*, 341 F.3d 858, 868 (9th Cir. 2003).  In Oregon, courts have recourse to the most recent edition of the Oregon State Bar ("OSB") Economic Survey.  *See, e.g., Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp.2d 1228, 1244 (D. Or. 2013) ("As a benchmark for comparing an attorney's billing rate with the fee customarily charged in the locality, this Court uses the most recent Oregon State Bar (OSB) Economic Survey.").  The 2022 Oregon State Bar ("OSB") Economic Survey is available on the Oregon State Bar website at *https://www.osbar.org/_docs/resources/Econsurveys/22EconomicSurvey.pdf*.

Here, Defendants urge the Court to apply a 75th percentile rate derived from the 2022 OSB Economic Survey.  However, the 2022 OSB Economic Survey does not include a 75th percentile rate.  Rather, it presents the mean, median, and 95th percentile rates.  *See, e.g.*, OSB Economic Survey, at 42; Fauria Decl. ¶ 3.  ECF No. 534.  Defendants' counsel has presented data concerning the 75th percentile rate for downtown Portland, divided by number of years in practice, which they solicited from two of the authors of the OSB Economic Survey.  Fauria Decl. Ex. 1, at 5.  While the Court appreciates Defendants' efforts in providing the additional data, the Court will focus its attention on the published figures in the 2022 OSB Economic Survey.

The Court acknowledges that, despite its utility, there are limitations to the OSB Economic Survey data, beyond the lack of a published 75th percentile rate. The OSB Economic Survey does not include many of the specific areas of law involved in the present case, such as class actions, civil rights litigation, and constitutional law, nor does the Economic Survey account for important factors such as the skill, actual experience, or reputation of the attorneys involved. As a result, the Court will supplement its review of the OSB Economic Survey data with the expert opinions supplied by Plaintiffs,[4] the McDermott Declaration, the Payne Declaration, ECF No. 516, and the Walsh Declaration, ECF No. 517, and with the Court's own long experience in the consideration of attorney fee petitions.

## A. A Better Childhood

A Better Childhood employed a total of fourteen attorneys and eight paralegals in this case, with various attorneys joining and leaving the team between 2019 and 2024. Lowry Decl. ¶ 2.

Marcia Lowry claims a rate of $800. Lowry Decl. ¶ 2. Ms. Lowry has been an attorney for fifty-five years and has been litigating child welfare cases since 1970. *Id.* at ¶ 6. Ms. Lowry has been involved in numerous civil rights organizations and had been counsel in more than twenty class action lawsuits involving child welfare services. *Id.* Ms. Lowry's claimed rate is approximately the 95th percentile for downtown Portland under the 2022 OSB Economic Survey. OSB Economic Survey, at 43. Given her specialized expertise and formidable experience, and considering

---

[4] Defendants did not submit any expert opinions concerning attorney fees.

the opinions of Plaintiffs' expert, McDermott Decl. ¶ 17, and accounting for inflation between 2022 and 2024, the Court concludes that Ms. Lowry's rate is reasonable.

Dawn Post claims a rate of $600. Lowry Decl. ¶ 2. Ms. Post has been an attorney for twenty-four years, working in juvenile rights through the Legal Aid Society where she represented more than 2,500 children in individual cases. *Id.* at ¶ 7. She has been the Deputy Director of A Better Childhood since 2018. *Id.* The claimed rate falls between the median and 95th percentile for an attorney with Ms. Post's experience. OSB Economic Survey, at 42-43. Considering Ms. Post's experience, the opinions of Plaintiff's expert, and the customary rates, the Court finds the claimed rate reasonable.

Alison Mahoney claims a rate of $450. Lowry Decl. ¶ 2. Ms. Mahoney has been an attorney for thirteen years, working in litigation, as a prosecutor, and as an attorney for children in family court proceedings. *Id.* at ¶ 8. Ms. Mahoney has been a staff attorney with A Better Childhood since 2018. *Id.* The claimed rate falls between the median and 95th percentile for an attorney with Ms. Mahoney's experience. OSB Economic Survey, at 42-43. Considering Ms. Mahoney's experience, the opinions of Plaintiff's expert, and the customary rates, the Court finds the claimed rate reasonable.

Anastasia Benedetto claims a rate of $400. Lowry Decl. ¶ 2. Ms. Benedetto has been an attorney for seven years. *Id.* at ¶ 14. Ms. Benedetto worked as a litigator for a year before becoming a staff attorney at A Better Childhood in 2018 and a senior staff attorney in 2022. *Id.* The rate falls between the median and 95th percentile for

an attorney with Ms. Benedetto's experience. OSB Economic Survey, at 42-43. Considering Ms. Benedetto's experience, the opinions of Plaintiff's expert, and the customary rates, the Court finds the claimed rate reasonable.

Aarti Iyer claims a rate of $400. Lowry Decl. ¶ 2. Ms. Iyer has been an attorney for ten years. Lowry Decl. ¶ 17. She worked as a litigator before becoming a staff attorney at A Better Childhood in 2019. *Id.* at ¶ 17. The rate falls between the median and 95th percentile for an attorney with Ms. Iyer's experience. OSB Economic Survey, at 42-43. Considering Ms. Iyer's experience, the opinions of Plaintiff's expert, and the customary rates, the Court finds the claimed rate reasonable.

Sarah Jaffe claims a rate of $450. Lowry Decl. ¶ 2. Ms. Jaffe has been an attorney for eleven years. *Id.* at ¶ 10. She worked as a staff attorney at The Children's Law Center before becoming a staff attorney at A Better Childhood in 2016. *Id.* This rate falls between the median and 95th percentile for an attorney with Ms. Jaffe's experience. OSB Economic Survey, at 42-43. Considering Ms. Jaffe's experience, the opinions of Plaintiff's expert, and the customary rates, the Court finds the claimed rate reasonable.

Valerie McLaughlin claims a rate of $400. Lowry Decl. ¶ 2. Ms. McLaughlin has been an attorney for eight years. *Id.* at ¶ 18. She worked as a legal researcher before becoming a staff attorney at A Better Childhood in 2018. *Id.* The rate falls between the median and 95th percentile for an attorney with Ms. McLaughlin's experience. OSB Economic Survey, at 42-43. Considering Ms. McLaughlin's

experience, the opinions of Plaintiff's expert, and the customary rates, the Court finds the claimed rate reasonable.

Erin Gallagher claims a rate of $400. Lowry Decl. ¶ 2. Ms. Gallagher has been an attorney for nine years. *Id.* at ¶ 12. Ms. Gallagher worked as a litigator and a law clerk in the Eastern District of New York before becoming a staff attorney at A Better Childhood in 2020. *Id.* The rate falls between the median and 95th percentile for an attorney with Ms. Gallagher's experience. OSB Economic Survey, at 42-43. Considering Ms. Gallagher's experience, the opinions of Plaintiff's expert, and the customary rates, the Court finds the claimed rate reasonable.

Tavi Unger claims a rate of $400. Lowry Decl. ¶ 2. Ms. Unger has been an attorney for seven years. *Id.* at ¶ 16. Ms. Unger worked as a labor attorney before becoming a staff attorney at a Better Childhood in 2020. *Id.* The rate falls between the median and 95th percentile for an attorney with Ms. Unger's experience. OSB Economic Survey, at 42-43. Considering Ms. Unger's experience, the opinions of Plaintiff's expert, and the customary rates, the Court finds the claimed rate reasonable.

Jonathan Borle claims a rate of $400. Lowry Decl. ¶ 2. Mr. Borle has been an attorney for eight years. *Id.* at ¶ 13. He has worked as a litigator and a law clerk in the Western District of Tennessee. *Id.* He became a staff attorney with A Better Childhood in 2021. *Id.* The rate falls between the median and 95th percentile for an attorney with Mr. Borle's experience. OSB Economic Survey, at 42-43.

Considering Mr. Borle's experience, the opinions of Plaintiff's expert, and the customary rates, the Court finds the claimed rate reasonable.

Julia Tebor claims a rate of $450.  Lowry Decl. ¶ 2.  Ms. Tebor has been an attorney for twelve years.  *Id.* at ¶ 9.  Ms. Tebor worked in complex litigation in the financial industry and has been a senior staff attorney with A Better Childhood since 2022.  *Id.*  The rate falls between the median and 95th percentile for an attorney with Ms. Tebor's experience.  OSB Economic Survey, at 42-43.  Considering Ms. Tebor's experience, the opinions of Plaintiff's expert, and the customary rates, the Court finds the claimed rate reasonable.

Lindsay Gus claims a rate of $400.  Lowry Decl. ¶ 2.  Ms. Gus has been an attorney for seven years.  *Id.* at ¶ 15.  She has worked as an assistant district attorney and as a law clerk in the Eastern District of New York before becoming a staff attorney at A Better Childhood in 2023.  *Id.*  The rate falls between the median and 95th percentile for an attorney with Ms. Gus's experience.  OSB Economic Survey, at 42-43.  Considering Ms. Gus's experience, the opinions of Plaintiff's expert, and the customary rates, the Court finds the claimed rate reasonable.

Laura Welikson claims a rate of $450.  Lowry Decl. ¶ 2.  Ms. Welikson has been an attorney for eleven years.  *Id.* at ¶ 11.  She has worked as a litigator and has served as a law clerk in the Southern District of New York and for the Fifth Circuit.  *Id.*  She became a staff attorney at A Better Childhood in 2023.  *Id.*  The rate falls between the median and 95th percentile for an attorney with Ms. Welickson's experience.  OSB Economic Survey, at 42-43.  Considering Ms. Welikson's experience, the opinions of

Plaintiff's expert, and the customary rates, the Court finds the claimed rate reasonable.

David Baloche claims a rate of $350. Lowry Decl. ¶ 2. Mr. Baloche has been an attorney for four years. *Id.* at ¶ 19. He worked as a legal researcher before becoming a staff attorney at A Better Childhood in 2022. *Id.* The rate falls between the median and 95th percentile for an attorney with Mr. Baloche's experience. OSB Economic Survey, at 42-43. Considering Mr. Baloche's experience, the opinions of Plaintiff's expert, and the customary rates, the Court finds the claimed rate reasonable.

A Better Childhood's paralegals billed at a rate of $250 per hour. Lowry Decl. ¶ 2. $250 is the statewide median rate for an Oregon attorney with zero to three years of experience, OSB Economic Survey, at 42, and so the Court concludes that $250 is a reasonable rate for A Better Childhood's paralegals.

### B. Disability Rights Oregon

Emily Cooper claimed a rate of $630 for work done in 2019, $635 for work done in 2020, $640 for work done in 2021, $645 for work done in 2022 and 2023, and $650 for work done in 2024. Cooper Decl. Ex. F, at 1-7. Ms. Cooper has been engaged in the practice of law for twenty-one years, with considerable expertise in litigating class-action disability suits. Cooper Decl. ¶¶ 2, 5-9. Ms. Cooper currently serves as the legal director for Disability Rights Oregon. Payne Decl. ¶ 32. The claimed rates fall between the median and 95th percentile for Portland attorneys with Ms. Cooper's level of experience. OSB Economic Survey, at 43. The Court has considered Ms.

Cooper's experience, the customary rates reflected in the OSB Economic Survey, and the opinions of Plaintiffs' experts, McDermott Decl. ¶ 24; Payne Decl. ¶ 32; Walsh Decl. ¶ 11, and concludes that the rates claimed for Ms. Cooper are reasonable.

Chris Shank claimed a rate of $625 for work done in 2019. Cooper Decl. Ex. F, at 7-8. Ms. Shank has twenty-five years of experience, particularly "with youth with disabilities, in the context of special education, foster care, juvenile justice, and juvenile dependency." McDermott Decl. ¶ 23. Although this rate approaches the 95th percentile for 2022 for attorneys with Ms. Shank's experience, the Court has considered the opinions of Plaintiff's experts, Payne Decl. ¶¶ 29-30, together with Ms. Shank's experience and expertise and concludes that the requested rate is reasonable.

Tom Stenson claimed a rate of $625 for work done in 2019, $630 for work done in 2020, $635 for work done in 2021, $640 for work done in 2022 and 2023, and $645 for work done in 2024. Cooper Decl. Ex. F, at 8-19. Mr. Stenson has nineteen years of experience as an attorney, with considerable experience in trial work. Stenson Decl. ¶¶ 5-6. He has extensive experience in civil rights litigation through his work as an ACLU attorney in Alaska and nine years as the deputy legal director of Disability Rights Oregon. Stenson Decl. ¶¶ 2-3, 7-10. The claimed rate is approaching the 95th percentile for attorneys with Mr. Stenson's level of experience. OSB Economic Survey, at 43. Considering Mr. Stenson's experience and the opinions of Plaintiffs' experts, McDermott Decl. ¶ 25; Payne Decl. ¶ 31; Walsh Decl. ¶ 11, the Court concludes that the rate claimed for Mr. Stenson is reasonable.

Paralegal Sam Shaw claimed a rate of $250 for work done in 2023 and 2024. Cooper Decl. Ex. F, at 19-21.  As discussed elsewhere in this Opinion, $250 is the statewide median rate for an Oregon attorney with zero to three years of experience and so the Court concludes that $250 is a reasonable rate for Disability Rights Oregon's paralegals.

### C. Davis Wright Tremaine

Multiple attorneys, paralegals, and other staff of Davis Wright Tremaine worked on this case between 2019 and 2024.

### 1. Attorneys

Gregory Chaimov, a partner, billed $610 in 2019; $650 in 2020; and $690 in 2021.  Mr. Chaimov has considerable experience, from his graduation from law school in 1982 until his retirement in 2021.  Miner Decl. ¶ 6(c).  Considering the customary rates in the OSB Economic Survey, Mr. Chaimov's experience and expertise, and the opinions of Plaintiffs' experts, this Court concludes that the rates claimed by Mr. Chaimov are reasonable.

Christopher McCracken, a partner, billed $600 in 2019.  No educational or professional details for Mr. McCracken were provided.  Considering that Mr. McCracken is a partner, presumably possessing the requisite experience, the Court will take corporate litigation as a reasonable comparator in assessing Mr. McCracken's rate under the OSB Economic Survey.  In downtown Portland, the mediate rate for such work is $450 and the 95th percentile is $774.  OSB Economic

Survey at 44. The Court concludes that $600 is a reasonable rate for Mr. McCracken under the circumstances.

William Miner, a partner, billed $495 in 2019; $575 in 2021; $615 in 2022; $695 in 2023; and $800 in 2024. Mr. Miner has been a litigator with Davis Wright Tremaine since graduating from law school in 2004. Miner Decl. ¶ 6(a). In light of Mr. Miner's experience and expertise, and considering the customary rates as reflected in the OSB Economic Survey, as well as the opinions of Plaintiffs' experts, the Court concludes that the rates claimed by Mr. Miner are reasonable.

Christie S. Totten, a partner, billed $505 in 2019. No educational or professional details for Ms. Totten were provided. Considering that Ms. Totten is a partner, presumably possessing the requisite experience, the Court will take corporate litigation as a reasonable comparator in assessing Ms. Totten's rate under the OSB Economic Survey. In downtown Portland, the mediate rate for such work is $450 and the 95th percentile is $774. OSB Economic Survey at 44. The Court concludes that $505 is a reasonable rate under the circumstances.

Andrew McStay, a partner, billed $560 in 2020; $590 in 2021; $625 in 2022; $700 in 2023; and $805 in 2024. Mr. McStay has worked as a law clerk with the Ninth Circuit and litigator since graduating from law school in 2003. Miner Decl. ¶ 6(b). Considering the customary rates as reflected in the OSB Economic Survey, Mr. McStay's experience and expertise, and the opinions of Plaintiffs' experts, the Court concludes that the rate claimed for Mr. McStay is reasonable.

David Ernst, a partner, billed $700 in 2022. No educational or professional details for Mr. Ernst were provided. Considering that Mr. Ernst is a partner, presumably possessing the requisite experience, the Court will take corporate litigation as a reasonable comparator in assessing Mr. Ernst's rate under the OSB Economic Survey. In downtown Portland, the mediate rate for such work is $450 and the 95th percentile is $774. OSB Economic Survey at 44. In the absence of additional information, the Court will reduce Mr. Ernst's rate to $600, consistent with the rate awarded to Mr. McCracken and the customary rates reflected in the OSB Economic Survey. At the hours claimed, this will reduce the fees paid to Davis Wright Tremaine by $80.

Blake Robinson, of counsel, billed $485 in 2019. No educational or professional details for Mr. Robinson were provided. The median rate for a corporate litigation attorney in downtown Portland was $450 and the 95th percentile was $774, OSB Economic Survey at 44, and so the Court concludes that $485 is a reasonable rate for Mr. Robinson.

Paul Southwick, of counsel, billed $460 in 2019 and $510 in 2020. Mr. Southwick graduated from law school in 2009 and worked as an associate and counsel for Davis Wright Tremaine since 2010. Mr. Southwick specializes in civil rights cases involving the LGBTQ+ community and currently serves as the Director of the ACLU of Idaho. Miner Decl. ¶ 6(d). Considering the Mr. Southwick's experience and expertise, the customary rates as reflected in the OSB Economic Survey, and the

opinions of Plaintiffs' experts, the Court concludes that the rates claimed for Mr. Southwick are reasonable.

Meghan Slotemaker, an associate, billed $435 in 2019. No educational or professional details for Ms. Slotemaker were provided. Considering the median rates charged for corporate litigation in downtown Portland, OSB Economic Survey at 44, the Court concludes that this rate is reasonable.

Tahiya Sultan, an associate, billed $470 in 2019. No educational or professional details for Ms. Sultan were provided. Considering the median rates charged for corporate litigation in downtown Portland, OSB Economic Survey at 44, the Court concludes that this rate is reasonable.

Ashley Vulvin, an associate, billed $430 in 2019. No educational or professional details for Ms. Vulvin were provided. Considering the median rates charged for corporate litigation in downtown Portland, OSB Economic Survey at 44, the Court concludes that this rate is reasonable.

Liz Liam, an associate, billed $425 in 2020. No educational or professional details for Ms. Liam were provided. Considering the median rates charged for corporate litigation in downtown Portland, OSB Economic Survey at 44, the Court concludes that this rate is reasonable.

Kellen Luey, an associate, billed $335 in 2020. No educational or professional details for Mr. Luey were provided. Considering the median rates charged for corporate litigation in downtown Portland, OSB Economic Survey at 44, the Court concludes that this rate is reasonable.

Matthew Widmeyer, an associate, billed $450 in 2020. No educational or professional details for Mr. Widmeyer were provided. Considering the median rates charged for corporate litigation in downtown Portland, OSB Economic Survey at 44, the Court concludes that this rate is reasonable.

William Wu, an associate, billed $420 in 2020. No educational or professional details for Mr. Wu were provided. Considering the median rates charged for corporate litigation in downtown Portland, OSB Economic Survey at 44, the Court concludes that this rate is reasonable.

Emma Englund, an associate, billed $530 in 2023 and $625 in 2024. No educational or professional details for Ms. Englund were provided. In the absence of information justifying the claimed rate, the Court will reduce this rate to $450, the median rate charged by corporate litigation attorneys in downtown Portland. OSB Economic Survey at 44. At the hours claimed, this will reduce the fee paid to Davis Wright Tremaine by $2,680.

Soraya Mohamed, an associate, billed $625 in 2023 and $725 in 2024. No educational or professional details for Ms. Mohamed were provided. In the absence of information justifying the claimed rate, the Court will reduce this rate to $450, the median rate charged by corporate litigation attorneys in downtown Portland. OSB Economic Survey at 44. At the hours claimed, this will reduce the fee paid to Davis Wright Tremaine by $3,011.

Nicholas Traver, an associate, billed $525 in 2023 and $580 in 2024. No educational or professional details for Mr. Traver were provided. In the absence of

information justifying the claimed rate, the Court will reduce this rate to $450, the median rate charged by corporate litigation attorneys in downtown Portland. OSB Economic Survey at 44. At the hours claimed, this will reduce the fee paid to Davis Wright Tremaine by $288.50.

Meagan Himes, an associate, billed $660 in 2024. No educational or professional details for Ms. Himes were provided, although the Court notes that Ms. Himes was listed as a law clerk on the case in 2019. Minder Decl. ¶ 5. In the absence of information justifying the claimed rate, the Court will reduce this rate to $450, the median rate charged by corporate litigation attorneys in downtown Portland. OSB Economic Survey, at 44. At the hours claimed, this will reduce the fee paid to Davis Wright Tremaine by $966.

Seth Tangman, an associate, billed $715 in 2024. No educational or professional details for Mr. Tangman were provided. In the absence of information justifying the claimed rate, the Court will reduce this rate to $450, the median rate charged by corporate litigation attorneys in downtown Portland. OSB Economic Survey, at 44. At the hours claimed, this will reduce the fee paid to Davis Wright Tremaine by $397.50.

### 2. Paralegals

Davis Wright Tremaine seeks to recover fees for its paralegals at rates varying from $164 and $425. The Court concludes that $425 is an excessive fee for paralegal services and exceeds the hourly rate billed by many of the attorneys involved in this case. *See Precision Seed Cleaners*, 976 F. Supp.2d at 1248 ("Judges in this District

have noted that a reasonable hourly rate for a paralegal should not exceed that of a first-year associate.").  The median hourly billing rate for an Oregon attorney with zero to three years of experience according to the 2022 Oregon State Bar Economic Survey was $250.  OSB Economic Survey at 42; *see also* McDermott Decl. ¶ 19 ("In my opinion, a rate of $250 for paralegal work in Portland is reasonable.").  The Court will cap paralegal fees in this case at $250 per hour and will reduce any fees claimed for Davis Wright Tremaine paralegals exceeding $250 per hour accordingly.  As a result, the Court will reduce the fees claimed by paralegals Erika Buck ($265 in 2019, $425 in 2024), Jennifer L. Davis ($265 in 2019, $280 in 2020, $295 in 2021, $315 in 2022, $385 in 2023, $425 in 2024), Jason J. Callan ($295 in 2020, $425 in 2024), Brenna Louzin ($295 in 2020), David MacKenzie ($270 in 2022, $325 in 2023, $360 in 2024), Julian Oh ($275 in 2022, $305 in 2023), and Gale Holly ($425 in 2024).  Miner Decl. ¶ 5.

At the claimed hours, this will reduce the fees awarded to Davis Wright Tremaine by $42,392.00.

### 3.  Law Clerks, Librarians, and Other Staff

Davis Wright Tremaine seeks to recover fees for work performed by law clerks at rates between $320 and $390.  Miner Decl. ¶ 5.  The Court concludes that this is not a reasonable fee for law clerks who have not been admitted to the Oregon State Bar.  The Court will cap fees for clerks at $250, which was the statewide median rate for attorneys with zero to three years of experience in the Oregon State Bar Economic

Survey.  OSB Economic Survey, at 42.   At the hours claimed, this will reduce the fee awarded to Davis Wright Tremaine by $3,832.50.

Davis Wright Tremaine seeks to recover fees for librarians at rates between $280 and $295.  Miner Decl. ¶ 5.  The Court concludes that this is not a reasonable fee and will reduce the rate to $250 consistent with the fees awarded to paralegals.  At the hours claimed, this will reduce the fee awarded to Davis Wright Tremaine by $72.

Davis Wright Tremaine seeks to recover fees for hours expended by document clerks at rates between $80 and $180.  Clerical tasks are properly subsumed within the firm overhead as part of the rate billed by the attorneys.  *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009).  The Court will disallow separate fees for document clerks.  This will reduce the fees claimed by Davis Wright Tremaine by $7,166.00.

**D. Rizzo Bosworth Eraut, P.C.**

The firm Rizzo Bosworth Eraut, P.C. employed two attorneys, Steven Rizzo and Mary Skjelset, and three paralegals in this case.  Mr. Rizzo billed at a rate of $798 while Ms. Skjelset billed at a rate of $683.  Plaintiffs seek to recover for paralegal time at a rate of $250 per hour.  Rizzo Decl. Ex. 1, at 78.

With respect to the rate claimed by Mr. Rizzo, the claimed rate is at the 95th percentile for a downtown Portland attorney with more than thirty years of experience.  OSB Economic Survey, at 43.  The Court has considered Mr. Rizzo's forty years of experience and expertise in civil litigation, as well as the customary rates set

forth in the OSB Economic Survey and the opinions of Plaintiffs' experts and concludes that the claimed rate is reasonable.

As to Ms. Skjelset, the claimed rate is the 95th percentile for downtown Portland attorneys with sixteen to twenty years of experience.  OSB Economic Survey, at 43. but the Court has considered her seventeen years of experience, her background in juvenile law, the customary rates set forth in the OSB Economic Survey, and the opinions of Plaintiffs' experts and concludes that the claimed rate is reasonable.

As discussed elsewhere in this Opinion, $250 is the statewide median rate for an Oregon attorney with zero to three years of experience and so the Court concludes that $250 is a reasonable rate for Rizzo Bosworth Eraut paralegals in this case.

## II.   Hours Expended

Plaintiffs' counsel expended a total of 23,081.1 hours in this case (A Better Childhood: 16,056 hours.  Lowry Decl. ¶ 2; Disability Rights Oregon: 2,064.1 hours, Salerno Owens Decl. Ex 3, at 2, ECF No. 532; Davis Wright Tremaine: 2,710.7 hours. Miner Decl. ¶ 5; Rizzo Bosworth Eraut: 2,250.3 hours.  Rizzo Decl. Ex. 1, at 78.). Although Defendants operated under a different set of priorities and obligations, which reduces the value of a direct comparison, the Court notes that Defendants have expended a total of 52,558.7 hours in this case before July 3, 2024, which is more than twice the time expended by Plaintiffs.[5]  Blaesing Decl. Ex. 1, at 6.

---

[5] This does not include the time spent on Defendants' Objections to Plaintiffs' Motion for Attorney Fees and Costs.  Given the ambitious scope of the exhibits offered in support of the Objections, the Court presumes the hours expended after July 3, 2024, are substantial.

Defendants challenge the reasonableness of the hours expended by Plaintiffs in this case.  In support of their objections, they have offered an exhibit totaling 1,175 pages detailing their challenges to specific time entries.  Salerno Owens Decl. Ex. 1.

"By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  Attorneys working on a contingency fee basis, like those in the present case, are "not likely to spend unnecessary time," because the "payoff is too uncertain, as to both the result and the amount of the fee." *Id.*  "It would therefore be the highly atypical civil rights case where plaintiff's lawyer engaged in churning."  *Id.*

Defendants make several challenges common to all of Plaintiffs' counsel, which the Court will address here before proceeding to consideration of the individual firms and organizations.

First, Defendants assert that Plaintiffs have engaged in impermissible block-billing.  Courts in this District have defined block billing as "any time entry of three or more hours either containing four or more tasks, or in the alternative containing two or more tasks, where at least one of the tasks could have taken anywhere from a small to a substantial amount of time." *Bala v. Oregon Health and Science Univ.*, No. 3:18-cv-0850-HZ, 2024 WL 3785975, at *8 (D. Or. Aug. 12, 2024) (internal quotation marks and citation omitted).  When block billing impedes the court's ability to determine that certain hours were reasonably expended, it is reasonable to reduce

those hours.  *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).  Here, the Court has reviewed the entries challenged as block-billed and has determined that the entries do not meet the definition of block billing.  The Court declines to reduce Plaintiffs' counsels' claimed hours based on alleged block billing.

In addition, Defendants assert that many of the time entries made by Plaintiffs' counsel are vague.  The standard for specificity in billing entries is not high, but the entry must "establish that the time was spent on matters for which the district court awarded attorneys' fees."  *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004).  Here, the Court has reviewed the challenged entries and finds that many of them, when read in context, are perfectly clear.  The Court is satisfied that Plaintiffs' counsels' time entries are not impermissibly vague.  The Court declines to reduce Plaintiffs' counsels' claimed hours based on the alleged vagueness of their billing entries.

Defendants challenge several entries in which attorneys for Plaintiffs billed more than eight hours in a single day.  Defendants assert that this is an unreasonable and unrealistic number of hours for an attorney to bill.  The Court is unimpressed with this objection, as long hours are a frequently observed and much-lamented aspect of legal practice, particularly in the arena of litigation.  The Court has no trouble accepting that attorneys working on a class action case of this size and complexity might, on occasion, work for substantially more than eight billable hours

in a single day.[6]  The Court finds these entries regrettably realistic and will not impose a reduction based on entries exceeding eight hours in a single day.

Defendants assert that Plaintiffs should not recover fees for time Plaintiffs' counsel spent meeting, communicating, and coordinating with co-counsel, which Defendants have marked as "Intra-Team Meetings and Communications" in their list of specific objections.  Salerno Owens Decl. Ex. 1.  In *Keith v. Volpe*, 644 F. Supp. 1317 (C.D. Cal. 1986), *aff'd* 858 F.2d 467 (9th Cir. 1988), the prevailing party sought an attorney fee that included "over 600 hours in conference, or nearly a quarter of all claimed time."  *Id.* at 1324.  The district court relied "on its own experience of complex litigation and its close familiarity with this litigation," to reduce the claimed time by 100 hours, bringing the reasonable conference time down to approximately 20% of the total time in the case.  *Id.*  Here, Defendants assert that Plaintiffs expended 3,182.35 hours out of a total of 23,081.1 in intra-team meetings.  Def. Obj. at 15, ECF No. 531.  This amounts to approximately 13.8% of the claimed hours, well below the 20% threshold identified as reasonable in *Volpe*.  As in *Volpe*, the Court relies on its own experience with complex litigation and its long experience with scope and complexity of the present case and concludes that Plaintiffs' counsel did not spend an unreasonable amount of time on conferences and internal communication.  The Court declines to reduce the claimed hours for time spent on intra-team communications.

---

[6] In her Supplemental Declaration, Ms. Lowry further clarified that for some of days where counsel billed more than eight hours, the billing entry accounted for lengthy periods of travel, in addition to other billable work.  Supp. Lowry Decl. ¶ 5.

Defendants assert that Plaintiffs' counsels' fees should be reduced for unsuccessful motions, as Defendants prevailed on a number of pretrial and discovery issues. The Ninth Circuit has indicated that a plaintiff may recover fees for time spent on an unsuccessful motion if that motion contributed to the plaintiff's success on the claims on which she prevailed. *See Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003) ("Even though the summary judgment motion failed, work done to prepare for the motion on those theories could have contributed to the final result achieved."). Courts should therefore consider whether the hours expended on an unsuccessful motion were "reasonably spent in pursuit of the litigation." *Jacobson v. Persolve, LLC*, Case No. 14-CV-00735-LHK, 2016 WL 7230873, at *11 (N.D. Cal. Dec. 14, 2016) (internal quotation marks and citations omitted). "Courts have excluded or reduced hours on unsuccessful motions where those motions were not factually or legally related to the claims in the lawsuit," and have also "excluded or reduced time when the motions were deficient or had no legal basis." *Id*. Here, the Court concludes that the unsuccessful motions were reasonably spent in in pursuit of litigation and so declines to reduce the fees based on unsuccessful motions, with one limited exception related to Rizzo Bosworth Eraut, discussed subsection devoted to that firm below.

Defendants also urge the Court to reduce Plaintiffs' counsels' hours for time spent pursuing unsuccessful claims, particularly those dismissed by the Court in ruling on the motion to dismiss and matters excluded from trial by the Court's later pretrial orders. The Ninth Circuit has held that hours spent working on unsuccessful claims should not be excluded if the unsuccessful claims are sufficiently related to the

successful claims. *Webb*, 330 F.3d at 1168. "[R]elated claims involve a common core of facts *or* are based on related legal theories." *Id.* (emphasis in original). Here, the Court is satisfied that the dismissed claims and excluded matters were sufficiently related to the successful claims and that no reduction is warranted.

## A. A Better Childhood

Plaintiffs seek to recover fees for 16,056 hours expended in this case by attorneys and staff of A Better Childhood. Lowry Decl. ¶ 2

Defendants seek to exclude hours claimed by attorneys who are not admitted to practice in Oregon. The Ninth Circuit has held that an attorney who has not been admitted, either generally or *pro hac vice*, in the relevant jurisdiction may still recover fees if (1) the attorney "would have certainly been permitted to appear *pro hac vice* as a matter of course had he or she applied," or (2) if the attorney's conduct "did not rise to the level of 'appearing' before the district court." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 822-24 (9th Cir. 2009). Here, while the Court does not seriously doubt that the attorneys in question would have been admissible *pro hac vice* had they applied, there is insufficient information for the Court to make the necessary findings. However, the attorneys may still recover fees because their work did not amount to "appearing" before this Court. They did not, for example, argue motions or sign briefs. *See Winterrowd*, 556 F.3d at 824. The Court will not, therefore, disallow fees for these out-of-state attorneys.

Defendants have also objected to A Better Childhood's billing for travel time to and from Oregon. Ms. Lowry has affirmed that, in the exercise of billing judgment,

A Better Childhood capped its travel time billing at eight hours, despite the fact that travel to and from Oregon frequently took much longer.  Supp. Lowry Decl. ¶ 2.  A Better Childhood reduced its travel time billing by 50% on the advice of Plaintiffs' expert.  *Id.* at ¶ 4.  The Court concludes that A Better Childhood reasonably incurred its travel hours.

Defendants have objected to a particular entry from November 2022, in which Ms. Lowry billed eighteen hours for travel from New Orleans to Salt Lake City to New York.  Salerno Owens Decl. Ex. 1, at 432.  Plaintiffs have explained that this entry was for a meeting with Defendants, which was cancelled by Defendants while Ms. Lowry was en route to Oregon.  Supp. Lowry Decl. ¶ 8.  This is borne out by an explanatory parenthetical in the time entry itself, which states "Cancelled conference last minute so Marcia [Lowry] had to turn around in SLC."  Salerno Owens Decl. Ex. 1, at 432.  The Court concludes that this time entry is not unreasonable, under the circumstances, and the Court declines to reduce A Better Childhood's hours to account for it.

Defendants have also objected to the high turnover rate for attorneys working with A Better Childhood, arguing that billing inefficiencies are incurred through the loss of institutional knowledge and the need to bring new lawyers up to speed on the case.  Plaintiffs affirm that this inefficiency has been accounted for in their billing structure and that A Better Childhood "does not bill states for the majority of attorney or paralegal time spent getting up to speed on a new case," and that most of this time "is either written off or billed internally as 'administrative' time."  Supp. Lowry Decl.

¶ 6. The Court concludes that such a practice reflects good billing judgment and the Court declines to reduce the hours claimed for A Better Childhood to account for staff turnover.

The Court has reviewed the hours claimed by Plaintiffs for work done by the attorneys and staff of A Better Childhood, as well as the general and specific objections to those hours raised by Defendants. Salerno Owens Decl. Ex. 1. The Court concludes that the claimed hours were reasonably incurred and declines to reduce the claimed hours. The Court will award the full requested amount of fees for attorneys and staff of A Better Childhood.

## B. Disability Rights Oregon

Disability Rights Oregon claims a total of 2,064.10 hours in this case. Defendants' only general objections to the hours claimed by Disability Rights Oregon concern vagueness and block-billing, which the Court has already addressed. The Court has reviewed the hours claimed by Disability Rights Oregon and Defendants' specific objections to their billing entries, Salerno Owens Decl. Ex. 1, and concludes that the hours were reasonably expended. The Court declines to reduce the hours claimed for Disability Rights Oregon. The Court will award the full amount of fees requested for the work done by the attorneys and staff of Disability Rights Oregon.

## C. Davis Wright Tremaine

As a preliminary matter, Defendants assert that Davis Wright Tremaine should be judicially estopped from recovering attorney fees because they represented to the Court that they took the case on a *pro bono* basis. Def. Obj. 43-46. While it is

true that Davis Wright Tremaine took this case *pro bono* and represented as much to the Court, those facts are of no consequence to their entitlement to fees. The Ninth Circuit has held that "[a]ttorney fees are recoverable by *pro bono* attorneys to the same extent that they are recoverable by attorneys who charge for their services." *Voice v. Stormans, Inc.*, 757 F.3d 1015, 1017 (9th Cir. 2014). Davis Wright Tremaine's *pro bono* policies are consistent with that precept and the firm takes on cases that involve fee-shifting, such as civil rights cases, which provides the firm with the ability to take on *pro bono* cases where there is no entitlement to fees or cases that do not result in the award of fees. Supp. Miner Decl. ¶¶ 5-6. In this case, Davis Wright Tremaine's engagement letters with Plaintiffs specifically stated that, while the client would not be responsible for fees incurred, Davis Wright Tremaine retained the right to pursue fees. *Id.* at ¶ 7. To the extent Defendants assert that Plaintiffs gained a litigation advantage by emphasizing the *pro bono* nature of Davis Wright Tremaine's work, no such advantage was gained, as the Court shared Davis Wright Tremaine's understanding of the meaning of *pro bono* work—that any recovery by counsel was contingent upon a successful claim that involved either fee-shifting or Defendants' agreement to pay fees. On this record, the Court declines to find that Plaintiffs are judicially estopped from pursuing fees for the work done by Davis Wright Tremaine.

In addition, Defendants argue that Plaintiffs should not be permitted to recover fees for work performed by out-of-state attorneys who were not admitted to practice in the District of Oregon, either generally or specially. The Court addressed

this issue in resolving Defendants' challenge to A Better Childhood's fees in the previous section and reaches the same conclusion with respect to the Davis Wright Tremaine attorneys. The non-admitted attorneys' work did not amount to "appearing" before this Court and so their fees will be allowed.

The Court has reviewed the claimed hours and Defendants' specific objections, Salerno Owens Decl. Ex. 1, and finds that the hours were reasonably expended and that there is no cause to reduce the hours claimed by Plaintiff for Davis Wright Tremaine.

However, as discussed in the previous section on reasonable rates, the Court did reduce the rates claimed by several Davis Wright Tremaine timekeepers and disallowed fees for document clerks entirely. As a result, the Court reduces the fees claimed for Davis Wright Tremaine by a total of $60,885.50.

### D. Rizzo Bosworth Eraut

Mr. Rizzo billed for 752 hours in this case. Rizzo Decl. Ex. 1, at 78. Ms. Skjelset billed for 488.9 hours in this case. Rizzo Decl. Ex. 1, at 78. The three paralegals in this case billed a total of 1,009.4 hours between them. Rizzo Decl. Ex. 1, at 78.

Defendants assert that Rizzo Bosworth Eraut unreasonably staffed the case because the only attorneys from that firm who worked on the case were partners and they failed to delegate tasks to associates billing at lower rates. However, Mr. Rizzo and Ms. Skjelset are the only attorneys in their firm who practice this type of civil rights litigation and their experience and past success in litigating such cases was a

major factor in their selection as co-class counsel.  Supp. Rizzo Decl. ¶ 15.  The Court declines to reduce the hours claimed by Rizzo Bosworth Eraut on the basis of staffing.

Defendants assert that the hours billed by Rizzo Bosworth Eraut are unrealistically high, given their late entry into the case and the fact that the firm was also engaged in other high-intensity litigation against DHS during the same timeframe.  The Court notes, however, that Mr. Rizzo and Ms. Skjelset were engaged as co-class counsel in anticipation of trial and that the hours expended by all firms involved in the case, including Defendants' counsel, increased substantially as the scheduled trial date approached and the pace of active litigation increased.  For example, Vivek A. Kothari and Lauren F. Blaesing, both partners in the firm representing Defendants, billed 863.2 hours and 772.8 hours respectively the first six months of 2024.  Blaesing Decl. Ex. 1, at 6.  Viewed in the wider context of the case and the hours accrued by the other attorneys involved, the Court does not find the hours claimed by the Rizzo Bosworth Eraut attorneys to be unrealistic or unreasonable.

Defendants challenge the number of hours spent by Rizzo Bosworth Eraut attorneys and paralegals reviewing and studying the Public Knowledge report.  The Court notes, however, that this was a lengthy and complex expert report, running to hundreds of pages, which promised to be a key component of Defendants' case at trial.  The Court will not reduce the hours claimed by Plaintiffs' counsel in preparing to challenge or rebut that report.

Although Plaintiffs were not successful on a number of pretrial motions and other issues advanced by Rizzo Bosworth Eraut attorneys, the Court declines to reduce the claimed fee as a result. "[P]laintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit." *Cabrales*, 935 F.2d at 1052. Plaintiffs were not successful in expanding the scope of the claims at issue in this case, but they preserved and prevailed on the core claims raised in the Complaint.

There is one exception, however. On April 11, 2024, the Court issued an Opinion and Order in which it resolved a motion for protective order and a motion to quash. ECF No. 367. In that Order, the Court rejected Plaintiffs' efforts to seek discovery related to Defendants' public relations and/or media strategy, observing that the material sought was not relevant to any claim or defense; would not assist the Court in resolving any of the issues in the case; and was "frankly, a waste of time for all concerned." April 11, 2024 O&O, at 8. The Court will reduce the hours claimed by Rizzo Bosworth Eraut by ten hours at the highest billed rate, that of Mr. Rizzo, for the advancement of that argument because it was, as the Court observed, a waste of time for all concerned. This reduction represents the Court's estimation of the hours expended by Plaintiffs' counsel in litigating that specific subset of issues in that motion. This will reduce the fees awarded to Rizzo Bosworth Eraut by $7,980.00.

Relatedly, the Court notes a number of docket entries for Rizzo Bosworth Eraut paralegals related to "review[ing] local media coverage of DHS." *See, e.g.,* Salerno Owens Decl. Ex. 1, at 1074, 1075, 1076, 1078, 1080, 1082. "Prevailing civil rights

counsel are entitled to fees for press conferences and performance of other lobbying and public relations work when those efforts are directly and intimately related to the successful representation of a client." *Gilbrook v. City of Westminster*, 177 F.3d 839, 877 (9th Cir. 1999).  As a result, the Court will not disallow fees for all media-related tasks, but the Court has reviewed the challenged hours and concludes that the hours devoted to media tasks by Rizzo Bosworth Eraut paralegals are excessive. The Court will reduce the paralegal hours claimed by Rizzo Bosworth Eruat by 98.4 hours for time spent reviewing media coverage and related tasks.  This will reduce the fee awarded to Rizzo Bosworth Eraut by $24,600.00.

### III.    Costs and Litigation Expenses

Plaintiffs seek costs totaling $590,580.07.  As with attorney fees, these costs are divided between the firms and organizations that represented Plaintiffs: A Better Childhood ($136,279.84), Supp. Lowry Decl. Ex. 2, at 9; Disability Rights Oregon ($20,730.52), Cooper Decl. Ex. F, at 22; Davis Wright Tremaine ($429,112.45), Miner Decl. ¶ 10; and Rizzo Bosworth Eraut ($4,447.26), Rizzo Decl. Ex. 1, at 77.  At the Court's request, Defendants have submitted an exhibit detailing their costs in this action, which totaled $5,225,465.88.  Blaesing Decl. Ex. 2.

Defendants assert that Plaintiffs may not recover fees for expert witnesses under 42 U.S.C. § 1988.  Defendants concede that expert witness costs are recoverable under the ADA and so concede that Plaintiffs may recover for the fees paid to Dr.

Farina, as her work concerned the ADA claim, but asserts that Plaintiffs may not recover their other expert witness costs.[7]

The Court declines to divide the expert witness fees on that basis. Under the ADA, "[i]n any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs[.]" 42 U.S.C. § 12205. The text of the statute refers to an "action," rather than an individual claim. In *Bell v. Williams*, Case No. 18-cv-01245-SI, 2023 WL 4850761, at *10 (N.D. Cal. July 28, 2023), the district court declined to reduce expert costs in a hybrid constitutional-ADA case, finding that the expert fees were "fully recoverable under the ADA." Similarly, in *Moralez v. Claim Jumper Acquisition Co., LLC*, Case No. 3:180cv001410-JD, 2019 WL 2437175, at *2 (N.D. Cal. June 11, 2019), the district court declined to limit the recovery of expert costs when the plaintiff brought claims under the ADA, which permits the recovery of expert costs, and under California state law, which does not. *See also Clark v. Peco, Inc.*, No. 97-737-HU, 1999 WL 398012, at *12 (D. Or. April 16, 1999) ("Although the parties dispute whether plaintiff is allowed to recover her expert witness fees under state law, I need not resolve the issue as it is undisputed that she may recover such fees under her ADA claim."). The Court concludes that Plaintiff's expert witness costs are fully compensable under § 12205.

---

[7] The Court notes that Defendants incurred costs of $2,081,081.06 for expert costs and an additional $225,050.00 for consulting expert costs. Blaesing Decl. Ex 2.

Defendants assert that Plaintiffs may not recover travel costs or the costs for cancelled lodging made in anticipation of trial under either Federal Rule of Civil Procedure 54(d) or 28 U.S.C. § 1920.[8]  However, "[u]nder § 1988, [a plaintiff] may recover as a part of the award of attorneys' fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citations omitted).  Travel, hotel, and meal costs have been recognized as part of such out-of-pocket expenses. *Davis v. City and Cnty. of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992), *as amended* 984 F.2d 345 (9th Cir. 1993); *Marhoefer*, 24 F.3d at 19-20.  The Court will not exclude costs for travel, hotel, or meals.

Defendants also object to Plaintiffs' counsel's use of "luxury" hotels and "black car service."  The hotels used by Plaintiffs' counsel in Portland cost, on average, $198.80 per night, plus tax, which is not an unreasonable or unexpected rate for Portland hotels. Supp. Lowry Decl. ¶ 10.  The only time A Better Childhood's lodging costs exceeded $300 per night was when Plaintiffs' counsel were in Ann Arbor, Michigan for the deposition of an expert witness and, in that case, the hotel where the deposition took place was selected by Defendants.  *Id.* at ¶ 11.  As for the "black car service," Plaintiffs' counsel has explained that she used a "trusted car service" because she often arrived or departed from airports in New York and Portland in the early hours of the morning or late in the evening when ordinary taxi service was not

---

[8] The Court notes that Defendants incurred costs of $8,676.66 for air travel, $75,825.79 for hotel and ground transportation, and $922.87 for meals.  Blaesing Decl. Ex. 2.

available.  *Id.* at ¶ 7.  The Court declines to reduce the costs incurred by Plaintiffs on this basis.

Finally, Defendants object to costs billing for multi-stop flights by counsel from A Better Childhood, which included flights to other states where A Better Childhood was engaged in litigation.  Plaintiffs' counsel has explained that when attorneys and staff from A Better Childhood travel to multiple states where litigation is ongoing, it will divide the costs between the states and cases involved in the trip.  Supp. Lowry Decl. ¶ 9.  This is confirmed by a review of Plaintiffs' counsels' claimed costs.  *See, e.g.,* Lowry Decl. ¶ 29 (a chart of travel costs showing 50% reductions when "Half of trip was for other business.").  The Court declines to reduce Plaintiffs' costs on this basis.

In sum, the Court will award Plaintiffs their full requested costs in the amount of $590,580.07.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Attorney Fees and Costs, ECF No. 514, is GRANTED in part on the following terms.  Plaintiffs are awarded attorney fees in the amount of $10,826,835.50.  Plaintiffs are awarded costs and litigation expenses in the amount of $590,580.07.

It is so ORDERED and DATED this ___22nd___ day of November 2024.

           /s/Ann Aiken
           ANN AIKEN
           United States District Judge