DAN RAYFIELD
Attorney General
CARLA A. SCOTT #054725
SHEILA H. POTTER #993485
CRAIG M. JOHNSON #080902
Senior Assistant Attorneys General
JILL CONBERE #193430
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Carla.A.Scott@doj.oregon.gov
        Sheila.Potter@doj.oregon.gov
        Craig.M.Johnson@doj.oregon.gov
        Jill.Conbere@doj.oregon.gov

Attorneys for Defendants Patrick Allen, Sejal Hathi, Dolores Matteucci, and James Diegel

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SEJAL HATHI, in her official capacity as head of the Oregon Health Authority, and JAMES DIEGEL in his official capacity as Interim Superintendent of the Oregon State Hospital,<br><br>　　　　Defendants. | Case No.  3:02-cv-00339-AN (Lead Case)<br>Case No.  3:21-cv-01637-AN (Member Case)<br>Case No.  6:22-CV-01460-AN (Member Case)<br><br>DEFENDANTS' STATUS REPORT |
| JAROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>JAMES DIEGEL, Interim Superintendent of the Oregon State Hospital, in his official | Case No.  3:21-cv-01637-AN (Member Case) |

Page 1 -   DEFENDANTS' STATUS REPORT
　　　　　　CAS/j3b/997966936

capacity, DOLORES MATTEUCCI, in her individual capacity, SEJAL HATHI, Director of the Oregon Health Authority, in her official capacity, and PATRICK ALLEN in his individual capacity,

        Defendants.

LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; and PROVIDENCE HEALTH & SERVICES OREGON,

        Plaintiffs,

v.

SEJAL HATHI, in her official capacity as Director of Oregon Health Authority,

        Defendant.

Case No. 6:22-CV-01460-AN (Member Case)

## I. Introduction

The Oregon Health Authority (OHA) and the Oregon State Hospital (OSH) submit this Status Report in advance of the status conference set for September 8, 2025. This Status Report provides an update regarding:

- Current compliance status with the seven-day admission requirement for those found unable to aid and assist in their defense.
- OHA-driven capacity building in the community for those discharging from OSH from 2021 to the present.
- Funding appropriated by the legislature in the 2025 session.
- New legislation imposing statutory time limits on in-patient and community restoration.
- Forensic Evaluations at OSH and in the community.
- The capacity audit ordered by this Court in its June 6 Opinion and Order.
- Admission delays in circumstances completely outside of OHA's and OSH's control

Page 2 -    DEFENDANTS' STATUS REPORT
CAS/j3b/997966936

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

for which ongoing fines will have no coercive effect and are thus not warranted under controlling case law.

The following representatives of OHA and OSH will attend the status conference and will be prepared to answer questions this Court may have in their area of expertise:

- Dr. Sejal Hathi, OHA Director
- James Diegel, Interim Superintendent of OSH
- Kristine Kautz, Deputy Director for Administration, OHA
- Ebony Clarke, Behavioral Health Director, OHA

## II. Compliance Status

As of September 3, 2025, the average number of days an aid-and-assist defendant has waited in jail for admission to OSH is 10.3.

Defendants have been working diligently to complete recommendations given by Dr. Pinals. In the last month alone, Defendants have sent confirmation of completion of eight recommendations to Dr. Pinals. Additionally, Defendants are working with Dr. Pinals to establish appropriate sequencing of recommendations, and modification where appropriate, to ensure that the work increases Defendants' ability to comply with the seven-day admission requirement.

Defendants' progress is reflected in the monthly status report submitted to the parties on September 3, 2025, which is attached hereto as Exhibit 1.

## III. OHA-driven Capacity Building in the Community from 2021 to the Present

During closing arguments at the contempt hearing, this Court asked about the timing of Defendants' efforts to return to compliance with the seven-day admission requirement. 3/12/25 Tr. p. 240. Defendants provide more detail relating to timing here.

Because OSH is at capacity, the primary way for Defendants to return to compliance is to build enough capacity in the community to place patients who are ready to discharge from OSH or to divert them from being admitted to OSH in the first instance. Declaration of

Page 3 -   DEFENDANTS' STATUS REPORT
          CAS/j3b/997966936

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Ebony Clarke (Clarke Decl.) ¶ 3.  Building such capacity takes time and those efforts have been ongoing for many years, not just recently.  Clarke Decl. ¶ 4.  On average most projects take between 24-48 months to complete. *Id.*  The length of time needed to complete a project varies depending on the scope of the project and whether it encompasses acquisition, renovation, or new construction.  *Id.*  Due to the complex nature of capital development projects, project completion timelines and capacity projections may shift until the project is finalized. This is due to a variety of factors such as: property acquisitions timeframes, lengthy zoning/permitting process, construction/material delays, funding issues, and licensing.  *Id.*

Exhibit 1 to the Declaration of Ebony Clarke contains charts and graphs that show OHA-driven capacity building from 2022 to the present to create beds in the community for patients to discharge to when they are ready to leave OSH or to divert them from entering OSH in the first instance.[1]  Clarke Decl. ¶ 5.  Defendants have worked to secure legislative appropriations for several years and have been using the appropriated funds to build capacity throughout the behavioral health system, including in residential treatment homes, residential treatment facilities, secure residential facilities, and supportive housing.  *Id.*  Occupancy dates for those projects began in 2023 and are projected to continue through 2028. *Id.* ¶ 6. From the fourth quarter of 2022 to the present OHA has established approximately 622 new beds to serve the populations discharging from OSH or to divert persons from entering OSH in the first instance.  *Id.*

Buttressing these longstanding efforts, since December 2021, Defendants have also engaged with Dr. Pinals (with Plaintiffs' full participation and approval until January 2025) to implement an extremely broad array of short- and additional long-term, systemic efforts to return to compliance.  The current status of those efforts is documented in the attached

---

[1] Exhibit 1 does not include additional capacity that has come online during this time period without financial investment by OHA.

Page 4 -   DEFENDANTS' STATUS REPORT
          CAS/j3b/997966936

Exhibit 1.

Adding to those longstanding efforts, before Dr. Pinals issued her Tenth Report in November 2024, Defendants worked with her and Plaintiffs to review capacity needs in the community and develop new beds. Clarke Decl. ¶ 7. As Dr. Pinals noted in her Tenth Report, "[i]n the all-parties meeting, there were many conversations about what might be helpful for communities to better serve people in the AA and GEI systems. As a result of many facets of these discussions the State issued a Request for Information [to the counties] regarding Community Service Needs for the AA and GEI populations. I worked with the state as they analyzed the results and helped prepare a response to me based on some broad recommendations I had made to the parties." ECF 570, Exh. H, pp. 8, 22 & 24. Dr. Pinals "worked closely with the state and with the plaintiffs to vet a series of recommendations that should be implemented within agreed upon timelines to maximize the potential to return to compliance as soon as possible." ECF 570, Exh. H, pp. 8, 22 & 24. Defendants have completed several recommendations from that report and are continuing to work closely with Dr. Pinals on the remaining recommendations.

Those recommendations include, among other things, a plan to spend $9.4 million to create new beds in Secure Residential Treatment Facilities (SRTFs) and Residential Treatment Facilities (RTFs). That money has been allocated across seven projects to expand capacity in existing facilities, update existing facilities to prevent loss of beds, and fund new construction. Clarke Decl. ¶ 7. The projects funded by this money are underway and projected to add 46 new beds by August 30, 2026, with an additional 16 expected by August 30, 2027. *Id.* Those projects are included in the overall summary provided in Exhibit 1, and a specific update regarding the status of these projects is presented in Exhibit 2[2] to the Clarke Declaration.

---

[2] The projects in Exhibit 2 to the Clarke Declaration are also included in the tables and graphs showing capacity building from the fourth quarter of 2022 onward; in other words, they are a subset of OHA's overall capacity-building efforts.

Page 5 -   DEFENDANTS' STATUS REPORT
    CAS/j3b/997966936

### IV. Funding from the Oregon Legislature's 2025 Session

Building on these extensive past capacity-building efforts, Governor Tina Kotek requested significant funding from the legislature during the 2025 session designed to, among other things, increase bed capacity in the community for all populations served by OSH, expand the community navigator pilot program, and continue funding to support recently hired forensic evaluators. *See* Defendants' January 2025 Status Report (ECF 556, pp. 33-34).

The legislature passed several bills that are responsive to the Governor's requested budget. *See* H.B. 2059, 2025 Leg., Reg. Session (Or. 2025)[3] ($65 million residential funding), HB 2024, 2025 Leg., Reg. Session (Or. 2025)[4] ($6 million for behavioral health workforce incentives), and HB 5025, 2025 Leg., Reg. Session (Or. 2025)[5] (OHA budget, contains significant investments in OSH including in many of the projects Dr. Pinals recommended). Additionally, SB 5505, 2025 Leg., Reg. Session (Or. 2025)[6] contains $80 million for permanent supportive housing, which will help Defendants support people in the community both upstream and downstream from OSH and keep them from cycling back into the system.

### V. Legislatively Imposed Limits on Community Restoration

The legislature also passed HB 2005, 2025 Leg., Reg. Session (Or. 2025),[7] which imposes statutory time limits on inpatient and community restoration consistent with Dr. Pinals' recommendations. While this bill allows for various pauses and exceptions to these time frames (which are not consistent with Dr. Pinals' recommendations and which Defendants advocated against), Governor Kotek's Office is actively managing

---

[3] https://olis.oregonlegislature.gov/liz/2025R1/Downloads/MeasureDocument/HB2059/Enrolled.
[4] https://olis.oregonlegislature.gov/liz/2025R1/Downloads/MeasureDocument/HB2024/Enrolled
[5] https://olis.oregonlegislature.gov/liz/2025R1/Downloads/MeasureDocument/HB5025/Enrolled
[6] https://olis.oregonlegislature.gov/liz/2025R1/Downloads/MeasureDocument/SB5505/Enrolled
[7] https://olis.oregonlegislature.gov/liz/2025R1/Downloads/MeasureDocument/HB2005/Enrolled

Page 6 -    DEFENDANTS' STATUS REPORT
       CAS/j3b/997966936

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

implementation of this new law and will work with OHA and OSH to best ensure that these pauses and extensions are not misused. As described in her signing letter for HB 2005, Governor Kotek's Office will take steps to address issues arising under this bill in future legislative sessions as needed. *See* Governor's Signing Letter for HB 2005, attached hereto as Exhibit 2.

HB 2005 also imposes statutory time frames for conducting forensic evaluations for those in community restoration; before this bill, there were no statutory timeframes for evaluating those in community restoration. Under the bill, all defendants in community restoration must be evaluated for fitness "at least every 180 days." HB 2005 § 45(5)(c). Additionally, defendants for whom the most serious offense charged is a violation or misdemeanor other than a person Class A misdemeanor must receive an evaluation "90 days after the order to engage in community restoration services is entered." HB 2005 § 45(5)(d).

## VI. Forensic Evaluations Update (at OSH and in the Community)

There are currently 126 defendants in community restoration waiting for FES to complete court-ordered evaluations, and FES projects that it will be able to complete all currently ordered evaluations within five months. That is within the new statutory timeframe. Additionally, the current waitlist of 126 is due in part to the high number of orders received in August (43).

Additionally, to meet new statutory requirements and consistent with Dr. Pinals' recommendations, OHA has begun the work of developing a plan to create a centralized Community Restoration Evaluation Program. Clarke Decl. ¶ 8. OHA evaluated the benefits and drawbacks as well as the fiscal impact of both in-house and contracting models of such a program and determined that a contracting model was the best choice. *Id*. A contracting model is projected to be less expensive than and likely quicker to implement than an in-house model, and it is congruent with OHA's core function as an oversight and administrative body. *Id.* To fund such a program, for which no money was appropriated in HB 2005,

Page 7 -   DEFENDANTS' STATUS REPORT
            CAS/j3b/997966936

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

despite that bill adding to the number of required evaluations, OHA would need to secure additional funding for the needed staff to implement and operationalize a Community Restoration Program. *Id.*

## VII. Capacity Audit

OHA and Dr. Pinals put together a small group to identify and contract with a third party to conduct the capacity audit ordered by this Court. Clarke Decl. ¶ 9. A request for proposals was sent to several contractors with a description of work based on the description of the audit in this Court's June 6, 2025, Order. *Id.* OHA has also taken the steps necessary to expedite the procurement process for the contract once a contractor is selected. *Id.* The selection process is underway. *Id.* The group received responses from and conducted interviews with two contractors. *Id.* After meeting to review the proposals and interview responses, as directed by Dr. Pinals, the group has requested additional information from those two contractors to ensure the audit is completed in the most useful and efficient way. *Id.*

## VIII. Admission Delays Outside OSH's Control Affecting Fine Calculations

Defendants provide an update below regarding fines accruing due to delays outside of their control—namely, when courts do not send the commitment order to OSH and when jails delay transport when OSH stands ready to admit and treat and has given the jail sufficient notice requesting transport. Under the applicable legal standard for imposition of coercive fines, coercive fines are not appropriate under these circumstances and will serve as mere punitive measures.

Coercive fines must be within "reasonable limits." *Spallone v. U.S.*, 487 U.S. 1251, 1256 (1988). Courts must align fine determinations with the specific circumstances of the individual case, because "civil contempt sanctions are designed to secure future compliance with judicial decrees," *id.* at 1257, and the facts particular to each case affect what kinds of fines are more or less likely to secure compliance. Additionally, "[a] court's power to impose coercive civil contempt depends on the ability of the contemnor to comply with the

Page 8 -    DEFENDANTS' STATUS REPORT
           CAS/j3b/997966936

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

court's coercive order, *something that may change over time.*" *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 630 (9th Cir. 2016) (emphasis added). Accordingly, when a court imposes civil sanctions, it does so with the goal of coercing compliance, not as a punitive measure that may lessen the sanctioned party's ability to comply with the underlying order. *See Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516 (9th Cir. 1992) (explaining that a court imposing contempt sanctions should consider "the probable effectiveness of any suggested sanction in bringing about the result desired").

### A. Commitment Orders Signed but Not Sent to OSH

When a court issues an order committing a criminal defendant to OSH for competency restoration (a .370 Order), the court is required to send it to OSH within one judicial day. ORS 161.362(4). In 2019, when this statute became effective, OSH notified Oregon courts through the Oregon Judicial Department (OJD) of this requirement and provided them with an OSH email address to send orders, including .370 Orders: OSH.Courtorders@odhsoha.oregon.gov. Declaration of Brandy Eurto (Eurto Decl.), ¶ 3. OSH regularly reminds the courts through OJD of the requirement that they send commitment orders to OSH within one judicial day and where to send the orders. *Id.* OSH also has a FAQ document on its website at https://www.oregon.gov/oha/OSH/LEGAL/Documents/2019-SB-25-FAQ.pdf, which describes this requirement and the process for emailing orders to OSH. *Id.*, Exh. 1. Sometimes a court will fax a .370 Order to OSH or send it to OSH's admissions inbox; when that occurs, OSH has a process in place that automatically forwards the order to the email inbox designated for receipt of .370 Orders. *Id.* ¶ 3.

OSH staff monitor the email inbox during business hours. *Id.* ¶ 4. All orders are processed the day that OSH receives them, and the incoming patient is placed on the admissions list. *Id.*

A few times a month, OSH receives late .370 Orders from courts. *Id.* ¶ 5. When OSH

Page 9 -   DEFENDANTS' STATUS REPORT
          CAS/j3b/997966936

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

receives a .370 Order more than six days after it issued and thus prevents OSH from complying with the seven-day admission requirement, the OSH Admissions Director follows up with court staff to find out why the order was not sent timely. *Id.* That follow-up has revealed that OSH receives late .370 Orders when court staff forgot or neglected to send it to OSH or the court sent it to an email address with missing or incorrect letters. *Id.* Since 2016, OSH has never lost or misplaced an incoming .370 Order. *Id.*

When a court sends a .370 Order to OSH late, the court will typically acknowledge the reason for the delay on its end in the transmittal email. *Id.* ¶ 6. For example, in August 2025, OSH received a .370 Order **26 days** after the court issued it. *Id.* The transmittal email from the court attaching the .370 Order acknowledged that the delay was because the order had not made it across the desk of the person at the court responsible for sending it to OSH. *Id.*, Exh. 2.

Since the start of the contempt fines, June 7, 2025, through August 14, 2025, there were three .370 Orders that were not sent to OSH within six judicial days, which made it impossible for OSH to admit the patient within seven days of the order date. Those three patients accrued 34 fine days and $17,000 in fines:

| Patient # | Admit Date | County of Commitment | Court Type | Highest Charge Classification | Order Signed | Order Received | Signed-Received | Signed-Admit | Days >7 | Fine |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 08/06/25 | Clackamas | Circuit Court | Felony C | 07/09/25 | 08/04/25 | 26 | 28 | 21 | $10,500 |
| 2 | 07/25/25 | Multnomah | Circuit Court | Misdemeanor A | 07/11/25 | 07/23/25 | 12 | 14 | 7 | $3,500 |
| 3 | 07/31/25 | Umatilla | Circuit Court | Felony C | 07/18/25 | 07/29/25 | 11 | 13 | 6 | $3,000 |

OSH has no way to know about a .370 Order if the court does not send it to OSH. Eurto Decl. ¶ 7. Thus, imposing fines on OSH for these delays can have no coercive effect on Defendants' efforts to comply with the seven-day admission requirement. As a result, fines under these circumstances are not appropriate under applicable case law.[8]

---

[8] Defendants have, to date, included the admission delays caused by courts' failure to send OSH a .370 Order because of language in the Ninth Circuit's *Mink* decision. But, going forward where OSH can prove that the court did not send the .370 order to OSH within 6 days, given the purpose of coercive fines, Defendants respectfully ask this Court to consider not imposing fines for such delays.

Page 10 -   DEFENDANTS' STATUS REPORT
    CAS/j3b/997966936

**B.    Steps OSH Has Taken to Address Admission Delays Where OSH is Ready to Admit and Treat but the County Declines Transport to OSH**

As detailed in prior submissions to this Court, there have been various occasions where OSH has notified jails that OSH is ready to accept and treat a patient under a .370 Order, but the admission is delayed because the jail declines to transport the patient from jail to OSH. ECF Nos. 609, 623, & 627. OSH attends meetings with jail leadership to try to address these delays. *Id.*

To further address these delays and encourage timely transport from jails, on July 21, 2025, OSH revised its practice in communications with the jails and courts. Eurto Decl. ¶ 10.

First, OSH standardized it emails to jails requesting transport OSH and now attach a formal letter from James Diegel, the Interim Superintendent of OSH, to the applicable Jail Commander stating:

> As you may be aware, Oregon State Hospital has been under a long-standing federal injunction to admit in-custody aid and assist defendants within 7 days.
>
> When a bed is available for admission at OSH, compliance with the federal injunction relies on jails to provide timely transport to OSH when OSH notifies the jail that it is ready to admit the defendant.
>
> Please confirm that you will transport (Pt.Name) on (Day), (Date) for admission to OSH.

Eurto Decl., Exh. 3.

Second, when a jail declines to transport after being notified by OSH that it was ready to accept and treat a patient under a .370 Order, OSH now files a letter with the committing court stating:

> Oregon State Hospital (OSH) is notifying the court and parties that pursuant to this court's Order of Commitment to OSH of (name of defendant) issued on (date), OSH requested (name of SO Office) to transport (name of defendant) for admission on (date of admission offered). The (name of county SO) declined to transport on the day the bed was available. To comply with the OSH's obligations under the federal order in the Mink-Bowman case, OSH is required to offer the bed to another person on the list. See Oregon Advocacy Center, et al. v. Mink, et al., Oregon District Court case no. 3:02-cv-00339-MO. We will offer a new date for (defendant name) when the next bed becomes available.

Page 11 - DEFENDANTS' STATUS REPORT
CAS/j3b/997966936

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*See* Eurto Decl, Exh. 4, pp. 3, 9 & 13.

Since July 21, 2025, when OSH began implementing these new practices, some jails have become more responsive to transport requests. *Id.* ¶ 13. Since July 21, 2025, only three patients have had their admission to OSH delayed because the county declined to transport the patient when OSH was ready to admit and treat the patient. *Id.* These delays are set forth in the chart below and true and correct copies of communications to and from jails and the courts (redacted per HIPAA) are attached collectively as Exhibit 4 and marked to correspond with each patient number. *Id.*

| Patient # | County | Order Signed | Admit Date | Signed-Admit Days | Days >7 | OSH Ready to Admit[9] | Reason Jail Declined Transport | Fines Accrued Due to Jail Transport Delay | Correspondence with Jail and Notices Filed w/ Court re Transport Delay |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Lane | 7/22/25 | 8/1/25 | 10 | 3 | 7/30/25 | Lack of jail/county staff | $1,000[10] | Exhibit 4, pp. 1-3 |
| 2 | Jackson | 7/30/25 | 8/12/25 | 13 | 6 | 8/8/25 & 8/11/25 | Lack of jail/county staff | $2,000[11] | Exhibit 4, pp. 6-9 |
| 3 | Curry | 7/28/25 | 8/13/25 | 16 | 9 | 8/7/25, 8/8/25, 8/11/25, 8/12/25 | Lack of jail/county staff | $3,000[12] | Exhibit 4, pp. 10-14 |

---

[9] This column reflects the date when OSH was ready to admit and treat the defendant. As show in Exhibit 4, in each of these three situations, OSH provided more than 24 hours' notice to the jail requesting transport to the available bed.

[10] In the case of patient #1, OSH accrued $1,500 in fines for the 3 fine days. Had the patient been admitted on 7/30/25, OSH would have only accrued 1 fine day ($500), so the fine amount that was due to jail transport delay was $1,000.

[11] In the case of patient #2, OSH accrued $3,000 in fines for the 6 fine days. Had the patient been admitted on 8/8/25, OSH would have only accrued 2 fine days ($1,000), so the fine amount that was due to jail transport delay was $2,000.

[12] In the case of patient #3, OSH accrued $4,500 in fines for the 9 fine days. Had the patient been admitted on 8/7/25, OSH would have only accrued 3 fine days ($1,500), so the fine amount that was due to jail transport delay was $3,000.

Page 12 -   DEFENDANTS' STATUS REPORT
         CAS/j3b/997966936
                         Department of Justice
                         100 SW Market Street
                         Portland, OR 97201
                         (971) 673-1880 / Fax: (971) 673-5000

With the above-described improvements to its practices in communications with jails and courts regarding transport, OSH is taking all steps it reasonably can as a non-law-enforcement agency for which system is not designed to bear the burden of providing transport across the entire state to ensure timely transport from jails to OSH when it is ready to admit and treat a defendant under a .370 Order. Indeed, in upholding original *Mink* injunction, the Ninth Circuit recognized that jails were ready to provide transport to OSH with 24-hours' notice. *Oregon Advocacy Ctr. v. Mink*, 2002 WL 35578910, at *7 (D. Or. May 10, 2002).

Fines should not accrue when jails decline to transport a defendant to OSH when OSH offers a bed and treatment, because fines in these circumstances will have no coercive effect on compliance.

DATED September  5, 2025.

Respectfully submitted,

DAN RAYFIELD
Attorney General

*s/ Jill L. Conbere*
CARLA A. SCOTT #054725
CRAIG M. JOHNSON #080902
SHEILA H. POTTER #993485
Senior Assistant Attorneys General
JILL CONBERE # 193430
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Carla.A.Scott@doj.oregon.gov
Sheila.Potter@doj.oregon.gov
Craig.M.Johnson@doj.oregon.gov
Jill.Conbere@doj.oregon.gov
Of Attorneys for Defendants

Page 13 -   DEFENDANTS' STATUS REPORT
            CAS/j3b/997966936

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000