

**TINA KOTEK**
**GOVERNOR**

July 24, 2025

The Honorable Tobias Read
Secretary of State
900 Court Street NE
Salem, OR 97310

      RE:  House Bill 2005

Dear Secretary Read,

Today, I am signing House Bill 2005, which is the culmination of significant effort to improve the court systems that serve Oregonians with serious mental illness.  These are complex systems, and the legislature and stakeholders have demonstrated their willingness to grapple with the difficult questions at the heart of those systems and make changes that will help us realize our vision for a behavioral health continuum of care that can meet people upstream with the goal of helping them compassionately and therapeutically and providing the resources that they need to heal and reintegrate into their communities. The system improvements in this bill will require ongoing engagement and work on the part of all of the stakeholders to ensure the reforms envisioned are implemented successfully.

I write to highlight areas of the bill regarding changes to serving individuals identified as "Aid and Assist" in the judicial system.  Oregon is currently under a contempt order from the Federal District Court regarding the State's inability to admit Aid and Assist patients to the Oregon State Hospital (OSH) in a timely manner.  Under that order, the State is being fined $500 a day for each person who waits longer than seven days for admission to OSH.  Currently, OSH is closer to meeting that requirement than they have been in more than a year, with a waitlist of 26 patients awaiting admission and an average wait time of 9.7 days in the last report submitted by OSH.  The fines from the Court are currently calculated at $141,000 since the order was entered, and we expect the weekly numbers to be even smaller in the subsequent weeks as the State continues to make progress towards compliance.

That progress is reliant on different streams of services, including our criminal justice system and our behavioral health system, working together to facilitate success for individuals and making sure no one is getting stuck in or using high-level services unnecessarily.

Honorable Tobias Read
July 24, 2025
Page 2 of 3

House Bill 2005 includes statutory timelines for both restoration at OSH and restoration in the community that mirror those recommended by the court monitor, Dr. Debra Pinals. The OSH timelines are already in practice under an order from the federal court, and the community restoration timelines are new. Both are necessary for improving systems. There are limited beds at OSH, and they need to be dedicated to the people most likely to need them and be restored by time at OSH. Similarly, our community mental health providers must be able to focus their resources and efforts on the clients that need them the most. These timelines, which are in line with those observed by other states across the country, will help us manage our resources to achieve and maintain compliance with the court order.

House Bill 2005 also includes provisions that allow for the extensions of those timelines under certain circumstances. While my position remains that the timelines originally recommended by Dr. Pinals and supported by my office and the Oregon Healthy Authority (OHA) throughout the legislative session were the correct ones, I understand that these extensions were important to other stakeholders who believe that they provide necessary flexibility in cases where there is a reasonable belief that a reasonable additional period of treatment will lead to a better outcome for both the patient and the community. If these extensions are used as they are intended, as a rare option for true outlier cases where there is ample evidence that they will result in a better outcome, I believe that they will be workable. Until we have adequate capacity, even having a few community partners treat these timelines as a de facto longer restoration limit for a majority or even a large fraction of cases will push us out of compliance. My office will be closely monitoring the use of these extensions and working with our partners at the Oregon Judicial Department and OHA to ensure that they are not being misused in any of our communities. If we find evidence that they are, we may need to revisit this portion of the policy.

I also have significant concerns about the potential pauses to the community restoration timelines contained in Section 45 of the bill. Subsection 4 of this section lays out the various circumstances under which the timelines on community restoration pause or "toll," creating periods of time which are not counted towards the limits. During discussions of the bill, community mental health providers shared concerns that these circumstances are so numerous that they may essentially prove that the exception swallows the rule and lead to a glut of "paused" cases continuing to swell community caseloads beyond what they are resourced for. I share those concerns.

Additionally, the bill contains no mechanism for tracking progress along the community restoration timelines or determining whether someone's timeline is "paused" for any given period of time. Community mental health providers lack the staffing, resources, and access to court data to track this effectively. Under the bill, enforcement of these pauses will be challenging, causing uncertainty and confusion for the providers who will be unsure who is and is not still on their caseload until those questions have been resolved in court. My office will be monitoring the implementation of these pauses, and making them workable will require either

Honorable Tobias Read
July 24, 2025
Page 3 of 3

significant cooperation and communication among the stakeholders or additional legislative changes in the future.

House Bill 2005 is an important piece of legislation, and I appreciate everyone who has engaged in the work. I look forward to continuing to work with all interested parties to make sure the new law is successful.

Sincerely,

Governor Tina Kotek

TK:smg

cc:  Speaker of the House Julie Fahey
     Senate President Rob Wagner