DAN RAYFIELD
Attorney General
CARLA A. SCOTT #054725
SHEILA H. POTTER #993485
CRAIG M. JOHNSON #080902
Senior Assistant Attorneys General
JILL CONBERE #193430
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Carla.A.Scott@doj.oregon.gov
        Sheila.Potter@doj.oregon.gov
        Craig.M.Johnson@doj.oregon.gov
        Jill.Conbere@doj.oregon.gov

Attorneys for Defendants Patrick Allen, Sejal Hathi, Dolores Matteucci, and James Diegel

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON, | Case No.  3:02-cv-00339-AN (Lead Case)<br>Case No.  3:21-cv-01637-AN (Member Case)<br>Case No.  6:22-CV-01460-AN (Member Case) |
| Plaintiffs, | DECLARATION OF EBONY CLARKE |
| v. | |
| SEJAL HATHI, in her official capacity as head of the Oregon Health Authority, and JAMES DIEGEL in his official capacity as Interim Superintendent of the Oregon State Hospital, | |
| Defendants. | |
| JAROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON, | Case No.  3:21-cv-01637-AN (Member Case) |
| Plaintiffs, | |
| v. | |
| JAMES DIEGEL, Interim Superintendent of the Oregon State Hospital, in his official | |

Page 1 -   DECLARATION OF EBONY CLARKE
CAS/j3b/997967285

capacity, DOLORES MATTEUCCI, in her individual capacity, SEJAL HATHI, Director of the Oregon Health Authority, in her official capacity, and PATRICK ALLEN in his individual capacity,

        Defendants.

LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; and PROVIDENCE HEALTH & SERVICES OREGON,

        Plaintiffs,

   v.

SEJAL HATHI, in her official capacity as Director of Oregon Health Authority,

        Defendant.

Case No.  6:22-CV-01460-AN (Member Case)

I, Ebony Clarke, do hereby declare:

1.      I am the Behavioral Health Director at the Oregon Health Authority (OHA).

2.      I make this declaration based upon a combination of personal knowledge and in reliance upon records which are regularly maintained in the ordinary course of business.

3.      The most direct way for OHA to ensure compliance with the *Mink* Injunction is to build enough capacity in the community to place patients who are ready to discharge from OSH or to divert them from entering OSH in the first instance.

4.      Building such capacity takes time and those efforts have been ongoing for many years, not just recently.  On average most projects take between 24-48 months to complete.  The length of time needed to complete a project varies depending on the scope of the project and whether it encompasses acquisition, renovation, or new construction.  Due to the complex nature of capital development projects, project completion timelines and capacity projections may shift until the project is finalized. This is due to a variety of factors such as: property acquisitions timeframes, lengthy zoning/permitting process,

Page 2 -    DECLARATION OF EBONY CLARKE
      CAS/j3b/997967285

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

construction/material delays, and licensing.

5.      The attached Exhibit 1 contains charts and graphs that show OHA-driven capacity building from 2022 to the present to create beds in the community for patients to discharge to when they are ready to leave OSH.  OHA has worked to secure legislative appropriations for several years and have been using the appropriated funds to build capacity throughout the behavioral health system, including in residential treatment homes, secure residential facilities, and supportive housing.

6.      Occupancy dates for those projects contained in Exhibit 1 go back to 2023 and are projected to continue through 2028.  From the fourth quarter of 2022 to the present OHA has established approximately 622 new beds to serve the populations discharging from OSH or to divert persons from entering OSH in the first instance.

7.      Adding to prior capacity-building efforts, by November 2024, OHA developed a plan to spend an additional $9.4 million to create new beds in Secure Residential Treatment Facilities (SRTFs) and Residential Treatment Facilities (RTFs).  That money has been allocated across seven projects to expand capacity in existing facilities, update existing facilities to prevent loss of beds, and fund new construction.  The projects funded by this money are underway and projected to add 46 new beds by August 30, 2026, with an additional 16 expected by August 30, 2027.  The attached Exhibit 2 provides an update regarding these projects.  Exhibit 2 contains a subset of the projects listed in Exhibit 1.

8.      To meet new statutory requirements and consistent with Dr. Pinals' recommendations, OHA has also begun the work of developing a centralized Community Restoration Evaluation Program.  OHA evaluated the benefits and drawbacks as well as the fiscal impact of both in-house and contracting models of such a program and determined that a contracting model was the best choice.  A contracting model is projected to be less expensive than and likely quicker to implement than an in-house model, and it is congruent with OHA's core function as an oversight and administrative body.  To fund such a program,

Page 3 -    DECLARATION OF EBONY CLARKE
CAS/j3b/997967285

for which no money was appropriated in HB 2005, despite that bill adding to the number of required evaluations, OHA would need to secure additional funding for the needed staff to implement and operationalize a Community Restoration Program.

9.    In addition, OHA and Dr. Pinals put together a small group to identify and contract with a third party to conduct the capacity audit ordered by this Court.  A request for proposals was sent to several contractors with a description of work based on the description of the audit in this Court's June 6, 2025, Order.  OHA has taken the steps necessary to expedite the procurement process for the contract once a contractor is selected.  The selection process is underway.  The group received responses from and conducted interviews with two contractors.  After meeting to review the proposals and interview responses, as directed by Dr. Pinals, the group has requested additional information from those two contractors to ensure the audit is completed in the most useful and efficient way.

**I declare under penalty of perjury that the foregoing is true and correct.**

EXECUTED on September 4 , 2025.

*s/ Ebony Clarke*
EBONY CLARKE

Page 4 -    DECLARATION OF EBONY CLARKE
CAS/j3b/997967285