IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON[1]; METROPOLITAN PUBLIC DEFENDER SERVICES, INC.; and A.J. MADISON, | Case No.: 3:02-cv-00339-AN (lead) 3:21-cv-01637-AN (consolidated) |
| Plaintiffs, v. | OPINION AND ORDER |
| SEJAL HATHI, in her official capacity as Director of the Oregon Health Authority; and JAMES DIEGEL, in his official capacity as Interim Superintendent of the Oregon State Hospital, | |
| Defendants. | |

Pending before the Court are (1) a motion for further remedial order filed by plaintiffs Disability Rights Oregon ("DRO"), Metropolitan Public Defender Services, Inc. ("MPD"), and A.J. Madison; and (2) a motion for reconsideration and clarification filed by defendants Dr. Sejal Hathi, in her official capacity as Director of the Oregon Health Authority ("OHA"), and James Diegel, in his official capacity as Interim Superintendent of the Oregon State Hospital ("OSH"). Upon review of the parties' filings, the Court finds this matter appropriate for decision without oral argument. Local R. 7-1(d). For the reasons stated herein, the Court takes this opportunity to clarify the role and authority of the Court Monitor in this case, GRANTS plaintiffs' motion for further remedial order, and GRANTS in part and DENIES in part defendants' motion for reconsideration and clarification.

## BACKGROUND

The factual background of these consolidated cases is well set out in prior opinions and orders, including the Court's June 6, 2025 opinion and order (the "contempt order"), *see* Op. & Order of June 6,

---

[1] Plaintiff Disability Rights Oregon ("DRO") is named on the docket as "Oregon Advocacy Center" and has been referred to as both DRO and Oregon Advocacy Center since approximately January of 2023. The Court uses "DRO" in this Opinion and Order.

1

2025, ECF 604 (all citations to lead case); and the Court's March 26, 2026 opinion and order (the "March 26 Order"), *see* Op. & Order of March 26, 2026, ECF 736. The following background focuses only on facts that are particularly pertinent to the instant motions.

This litigation began in 2002 upon the filing of lead case *Oregon Advocacy Center v. Mink*, No. 3:02-cv-00339-AN ("*Mink*"). Verified Compl., ECF 1. A permanent injunction has been in place in *Mink* since 2002, *see* Findings of Fact & Concls. of L., ECF 47, and defendants have been largely out of compliance with that injunction since 2018. Op. & Order of August 6, 2025, ECF 645, at 5 & n.4. In 2021, *Mink* was consolidated with its now-companion case, *Bowman v. Matteucci*, No. 3:21-cv-01637-AN (together, "*Mink-Bowman*"). *See* Order of December 21, 2021, ECF 240. Also in 2021, the parties filed a stipulated motion to appoint Dr. Debra A. Pinals as Neutral Expert in this case, Stip. Mot. to Appoint Neutral Expert, ECF 238, which was granted, Order of December 21, 2021. In her role as Neutral Expert, Dr. Pinals has provided periodic reports regarding this litigation.

In January 2025, DRO moved for an order to show cause why defendants should not be held in contempt, ultimately seeking civil contempt sanctions in the form of monetary fines and modification of the Court's remedial order to include additional remedial measures aimed at effecting defendants' compliance with the permanent injunction. Pl. DRO Mot. for Order to Show Cause, ECF 540. The Court ultimately found that defendants are in contempt of the permanent injunction, ordered daily monetary fines, and implemented certain additional remedial measures. Op. & Order of June 6, 2025, at 14, 17, 19-20. In the same ruling, the Court also changed Dr. Pinals' role from Neutral Expert to Court Monitor. *Id.* at 19. The Court also ordered defendants to use all reasonable steps to impose limitations on community restoration consistent with Dr. Pinals' recommendations. *Id.*

Defendants appealed the contempt order. *See* Not. of Appeal (6/17/2025), ECF 607. Multiple other appeals to the Ninth Circuit are also pending in this case, including defendants' appeal of the Court's denial of defendants' motion for stay, *see* Not. of Appeal (8/27/2025), ECF 652; as well as defendants' appeals of all three contempt fine judgments issued thus far, *see* Not. of Appeal (9/9/2025), ECF 660 (first judgment); Not. of Appeal (12/29/2025), ECF 694 (second judgment); Not. of Appeal (1/20/2026), ECF 707 (third

judgment).

On January 23, 2026, DRO filed a motion to vacate orders permitting fine exemptions. DRO Mot. to Vacate, ECF 710. Following briefing by the parties, the Court issued the March 26 Order, granting DRO's motion and vacating the Court's prior orders allowing the Court Monitor to grant exemptions from contempt fine calculations for delays caused by sheriffs and court staff. Op. & Order of March 26, 2026, at 8. Having vacated those prior orders in their entirety, the Court directed defendants to (1) provide the Court with a proposed calculation of all fines previously exempted from the first through third judgments, and (2) re-submit the proposed fine calculation reports that had not yet been reduced to judgment without any delays exempted. *Id.* The Court concluded that, moving forward, it would no longer exempt from the contempt fine calculations delays caused by sheriffs and court staff. *Id.* at 7-8.

On March 17, 2026, plaintiffs filed a motion to modify the remedial order currently in effect in this case, which is located at ECF 416 (the "Operative Remedial Order").[2] Pls. Mot. for Further Remedial Order, ECF 720. Following discussion of defendants' position on the motion at the March 18, 2026, status conference, *see* Tr. of Proceedings of March 18, 2026, ECF 739, at 6, plaintiffs filed an amended motion for further remedial order on March 27, 2026, Pls. Am. Mot. for Further Remedial Order ("Pls. Mot."), ECF 737. The amended motion's conferral certification indicates that defendants "take no position on Plaintiffs' requested relief." *Id.* at 2. Defendants have not filed any documents responsive to plaintiffs' amended motion.

On April 6, 2026, defendants filed a motion for reconsideration and clarification of the Court's March 26 Order granting DRO's motion to vacate fine exemptions. Defs. Mot. for Recons. & Clarification ("Defs. Mot."), ECF 743. In this motion, defendants seek (1) reconsideration of the Court's application of its ruling to judgments already issued; and (2) clarification of three issues relating to the court's ruling. *Id.* at 2, 5. MPD takes no position on the motion for reconsideration and does not oppose the motion for clarification. *Id.* at 2. DRO opposes the motion for reconsideration and the motion for clarification as to

---

[2] The current remedial order is the Second Amended Order to Implement Neutral Expert's Recommendations, ECF 416, as amended by the Court's opinion and order dated June 6, 2025.

the first issue but does not oppose the motion for clarification as to the second or third issues. *Id.*; *see also* DRO Resp., ECF 746. Defendants filed a reply in support of their motion on April 15, 2026. Defs. Reply, ECF 749.

## DISCUSSION

In turn, the Court considers (1) the Court Monitor's scope of authority; (2) plaintiff's motion for further remedial order; and (3) defendants' motion for reconsideration and clarification.

### A.    Court Monitor's Scope of Authority

Defendants' ongoing non-compliance with the permanent injunction in these consolidated cases is undisputed and need not be belabored. Dr. Pinals was appointed by the Court on the parties' joint motion. *See* Stip. Mot. to Appoint Neutral Expert; Order of December 21, 2021. At the joint request of the parties, Dr. Pinals has provided periodic reports related to the litigation. *See* Stip. Mot. to Appoint Neutral Expert 3 (asking that a deadline be set for Dr. Pinals "to file a report and recommendation for a proposed long-term compliance plan for OSH"). Eventually, amidst defendants' sustained non-compliance, and in an effort to help defendants to achieve compliance, the Court changed Dr. Pinals' appointment from Neutral Expert to Court Monitor. *See* Op. & Order of June 6, 2025, at 19; *cf. Melendres v. Skinner*, 113 F.4th 1126, 1133-34 (9th Cir. 2024) (noting that the district court's appointment of a court monitor was appropriate based on the district court's "inherent equitable powers to fashion additional remedies" and "to order appropriate relief in civil contempt proceedings" (cleaned up)). Dr. Pinals has since submitted several reports as Court Monitor. The Court now takes this opportunity to delineate in greater detail the Court Monitor's role in this case.

1.    First and foremost, the overarching role of the Court Monitor "is to assure compliance with and implement the court's remedial directives." *Melendres*, 113 F.4th at 1133. This has been and continues to be true.

2.    The Court Monitor is not authorized "to convene and to regulate hearings, to rule on the admissibility of evidence, to subpoena and swear witnesses, [nor] to hold [parties or] witnesses in contempt." *Id.* (citation and quotation marks omitted). To the extent that defendants' noncompliance

4

persists, the Court Monitor is authorized to calculate recommended fines to address defendants' noncompliance with Court orders, *however*, the Court Monitor is *not* empowered to make final determinations regarding the amount of contempt fines nor the expenditure of accumulated fines.

3.      The Court Monitor shall continue to provide periodic reports to the Court regarding this litigation.  Because the Court Monitor's reports and recommendations are not self-executing, "the ultimate arbiter of compliance is the Court."  *See id.* at 1126 (cleaned up).  As has been true thus far, each of the Court Monitor's reports and recommendations must be expressly adopted, rejected, modified, or otherwise acted on by the Court before they have legal effect.

**B.      Plaintiffs' Motion for Further Remedial Order**

Plaintiffs move the Court to modify the remedial order currently in effect by placing continued limitations on (1) admissions of certain persons to OSH and (2) time for restoration services.  Pls. Mot. 4. The Court Monitor generally supports both modifications.  *See id.* at 4, 6-7 (citing Decl. of Tom Stenson Supp. Pls. Mot. ("Stenson Decl."), Ex. K ("Ct. Monitor 3d Rep."), ECF 721-11, at 32); *see also* Tr. of Proceedings of March 18, 2026, at 48-49.  Defendants take no position.  Pls. Mot. 2.[3]

Based on defendants' continued non-compliance with the permanent injunction in this case, and because monetary sanctions are, standing alone, inadequate to achieve and then maintain compliance, the Court grants plaintiffs' motion and implements the requested additional remedial measures, as described next.  The Court notes that the implementation of these remedial measures is not without potential concerns—in particular, prosecutorial discretion and state court judges' adherence to pertinent policies could impact the number of patients at OSH and, as a result, the number of days a criminal defendant may await transport to OSH.  *See, e.g.*, Debra A. Pinals, M.D., *Neutral Expert Eleventh (11th) Report Regarding the Consolidated* Mink *and* Bowman *Cases*, 11 (May 5, 2025), ECF 620-1, at 48 ("The concern with [restricting admission of misdemeanor defendants] is that there could be an increased rate of more serious charges being levied.").  However, the Court must weigh these concerns within the larger context of this

---

[3] The Court also considered and denied a request by Marion County to file an amicus brief regarding the motion.  Order of April 13, 2026, ECF 748.

decades-long issue.  Based on the evidence currently before the Court, defendants are likely to achieve compliance considerably sooner with these remedial measures in effect.  Indeed, with them, defendants are projected to achieve compliance this year.  Ct. Monitor 3d Rep. 22-23; *see* Pls. Mot. 9.  Without them, there is no projection for when defendants may achieve compliance.  The Court is compelled to conclude that where, as here, less "intrusive measures fail to rectify the [constitutional violations], more intrusive measures are justifiable."  *Stone v. City & County of San Francisco*, 968 F.2d 850, 861 (1992) (collecting cases).  The instant remedial measures, like the remedial order currently in effect and the remedial measures implemented in the contempt order, shall be set to expire on June 30, 2026, and shall be renewed as necessary upon review of defendants' compliance.  *See* Op. & Order of June 6, 2025, at 19.

1.      *Further Limitations on Admissions.*  Defendants are ordered to eliminate admission to the Oregon State Hospital of:

a.      All non-person level C felony charges that carry a sentence of ninety (90) days or less; and

b.      All pretrial detainees being held in jail on the following charges: (1) Criminal Mischief I; (2) Aggravated Harassment; (3) Unauthorized Use of a Vehicle, Criminal Possession of a Rented or Leased Motor Vehicle, and Possession of a Stolen Vehicle; (4) Resisting Arrest; (5) Burglary 2; (6) Theft I, Theft of Lost/Mislaid Property, Theft by Extortion, Theft by Deception, and Theft of Services; (7) Identity Theft, Computer Crime, Forgery I, Criminal Possession of Forged Instrument, Criminal Possession of Forgery Device, Credit Card Fraud, and Negotiating Bad Checks; (8) Mail Theft; (9) Failure to Appear I; and (10) Disorderly Conduct I.

2.      *Elimination of Thirty-Day Extensions to Admission Limitations.*  The Court hereby strikes the thirty-day extension exception outlined in Part IV of the remedial order currently in effect.  *See* Operative Remedial Order 4.  There shall no longer be a thirty-day discharge-planning extension to the maximum time for inpatient restoration.

3.      *"Safety Valve" Extensions.*  Part V of the remedial order permits, under certain circumstances and pursuant to detailed procedures, 180-day extensions to the maximum time for inpatient

6

restoration of defendants charged with violent felonies. *See id.* at 5. This exception shall be modified as follows: A 180-day extension pursuant to Part V may only be issued once per defendant and may only be issued in cases involving Measure 11 crimes. Such an extension may only be issued pursuant to a judicial review of the criminal defendant's current symptoms that have rendered the criminal defendant incompetent based on a recent clinical opinion stating that the 180-day extension of time has a substantial likelihood of restoring the defendant.

**C.      Defendants' Motion for Reconsideration & Clarification**

As noted, defendants' motion seeks both (1) reconsideration of the Court's retroactive application of its ruling to judgments already issued; and (2) clarification of three points relating to the Court's ruling. The Court considers each issue in turn.

1.      *Motion for Reconsideration*

In the motion for reconsideration, defendants ask the Court "to reconsider and amend or modify its [March 26 Order] . . . so that it applies only to fine calculations prospectively from the date of" entry of the third contempt fine judgment. Defs. Mot. 2. For the reasons that follow, defendants' motion is granted.

Federal "'courts have inherent power to enforce compliance with their lawful orders through civil contempt.'" *Spallone v. United States*, 493 U.S. 265, 276 (1990) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). They are given "wide latitude in determining whether there has been a contemptuous defiance of [an] order." *Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984). This "deference to the district court's exercise of discretion is heightened where the court has been overseeing a large, public institution for a long period of time." *Stone*, 968 F.2d at 856 (citing *Rufo v. Inmates of Suffolk Cnty Jail*, 502 U.S. 367, 394 (1992) (O'Connor, J., concurring); *Hutto v. Finney*, 437 U.S. 678, 688 (1978), *abrogated on other grounds by Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42 (2024)). As noted, when less intrusive measures fail to rectify constitutional violations, "more intrusive measures are justifiable." *Stone*, 968 F.2d at 861 (collecting cases).

In addition to federal courts' inherent authority to impose civil contempt sanctions, Federal Rule of Civil Procedure 65 provides federal courts the authority to issue injunctions that bind the parties; "the

parties' officers, agents, servants, employees, and attorneys"; and any "other persons who are in active concert or participation with" the parties or their officers, agents, servants, employees, or attorneys. Fed. R. Civ. P. 65(d)(2)(A)-(C); *see Califano v. Yamasaki*, 442 U.S. 682, 705 (1979) ("Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction."). In setting a fine, courts must consider, among other factors, "'the probable effectiveness of any suggested sanction in bringing about the result desired.'" *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516 (9th Cir. 1992) (quoting *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947)). "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience." *International Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 827 (1994).

Here, upon greater scrutiny, the Court concludes that retroactive application of the March 26 Order is unlikely to be effective in bringing about defendants' compliance with the permanent injunction, as the excluded amounts were based on exemptions then-applied in accordance with the Court's procedures and additional sanctions for such amounts are unlikely to have sufficient coercive effect such as to compel future compliance. Therefore, the Court concludes that retroactive application would be unjust. For this reason, the Court grants defendants' motion and modifies its March 26 Order to apply prospectively only. Based on this conclusion, the Court does not reach the parties' jurisdictional arguments.

　　　　2.　　　*Motion for Clarification*

　　　　　　a.　　Acts of God

Defendants first seek clarification regarding whether acts of God that prevent jail transports are encompassed by the March 26 Order. Defs. Mot. 2. The March 26 Order did not specifically address acts of God, and although defendants point out that they noted an exclusion related to an act of God in their tenth proposed fine calculation report, *see id.* at 5-6 (citing Defs. 10th Fine Calc. Rep., ECF 740), up to this point, neither party has asked the Court to address the effect of acts of God. Thus, the ruling set forth in the March 26 Order did not encompass acts of God, and a motion for reconsideration or clarification of the March 26 Order is an improper vehicle for defendants' request. The request is therefore denied without

8

prejudice to defendants' ability to file a separate motion seeking relief regarding weather-related exemptions or other acts of God.

b.        Request to Continue Noting Delays

Defendants next seek clarification regarding the March 26 Order's direction to defendants to resubmit their eighth and ninth proposed fine calculation reports without any delays exempted. Defs. Mot. 6. Defendants state that those reports only reflected when delays outside defendants' control occurred—they did not reflect any delays actually exempted. *Id.* Defendants also request that they be permitted to continue to include delays outside their control (without exempting those days) on future proposed fine calculation reports. *Id.* Defendants' request is unopposed. *Id.* at 2. The Court clarifies that defendants can note delays related to exemptions that have been vacated, i.e., related to delays purportedly caused by sheriffs or courts staff. Accordingly, defendants need not resubmit their eighth and ninth fine calculation reports.

c.        Deadlines to Submit Monthly Proposed Fine Calculation Reports

Finally, defendants seek clarification regarding whether their monthly proposed fine calculation reports are due on the first or fifteenth day of each month. Defs. Mot. 6-7. The Court clarifies that defendants' proposed fine calculation reports shall again be due on the first day of each month.

//
//
//
//
//
//
//
//
//
//

9

## CONCLUSION

For the reasons stated herein, plaintiffs' motion for further remedial order, ECF 737, is GRANTED. The Court implements further remedial measures as outlined in this Opinion and Order. Defendants' motion for reconsideration and clarification, ECF 743, is GRANTED in part and DENIED in part. Specifically, defendants' motion for reconsideration is granted, and accordingly, the Court's March 26 Order applies only prospectively, not retroactively, from its date of entry. Defendants' motion for clarification is denied as to acts of God and granted as to defendants' request to continue noting in proposed fine calculation reports delays related to exemptions that have been vacated. Finally, defendants shall return to submitting their proposed contempt fine calculation reports on the first day of each month.

IT IS SO ORDERED.

DATED this 1st day of June, 2026.

Adrienne Nelson
United States District Judge