Emily Cooper OSB #182254
ecooper@droregon.org
Thomas Stenson OSB #152894
tstenson@droregon.org
Dave Boyer OSB # 235450
dboyer@droregon.org
Disability Rights Oregon
900 SW 5th Avenue, Suite 1800
Portland, OR 97204
(503) 243-2081
*Counsel for Plaintiff, Disability Rights Oregon*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC.,** and **A.J. MADISON,** Plaintiffs,<br><br>v.<br><br>**SEJAL HATHI,** in her official capacity as Director of the Oregon Health Authority; and **JAMES DIEGEL**, in his official capacity as Interim Superintendent of the Oregon State Hospital, Defendants.<br><br>**JAROD BOWMAN**, **JOSHAWN DOUGLAS-SIMPSON**, and **METROPOLITAN PUBLIC DEFENDER SERVICES, INC.,** Plaintiffs,<br><br>v.<br><br>**JAMES DIEGEL**, Interim Superintendent of the Oregon State Hospital, in his official capacity, **SEJAL HATHI**, Director of the Oregon Health Authority, in her official capacity, Defendants. | Case No. 3:02-cv-00339-AN (Lead Case)<br><br>Case No. 3:21-cv-01637-AN (Member Case)<br><br>PLAINTIFF DRO'S OPPOSITION TO DEFENDANTS' MOTION TO PURGE CONTEMPT |

**PLAINTIFF DRO'S OPPOSITION TO DEFENDANTS' MOTION TO PURGE CONTEMPT**

Plaintiff DRO recognizes the Court has broad latitude in the application, interpretation, and amendment of its own remedial orders. Plaintiff DRO also greatly appreciates the substantial progress in Defendant's movement towards compliance with the permanent injunction. DRO asks the Court to consider the following points in contemplating the Defendant's recent motion.

Defendants filed a document styled as a motion to "purge contempt." Defendants have always had the ability to purge contempt. A "contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus 'carries the keys of his prison in his own pocket.'" *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994); *see also Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016)("[T]he ability to purge is perhaps the most definitive characteristic of coercive civil contempt.") Defendants do not require further orders from this court to purge contempt and have largely avoided fines since mid-June 2026 by doing so. Civil contempt charges are self-purging because "so long as the jural command is obeyed, the future, indefinite, daily fines are purged." *Coleman v. Newsom*, 131 F.4th 948, 963 (9th Cir. 2025). The purging of contempt is relief Defendants afford themselves through compliance, not relief that this Court must grant.

## I. Discharging All Possibility of Contempt Fines After Less Than Three Months of General Compliance Is Premature, Considering the Substantial Possibility of Future Violations of the Permanent Injunction

The Ninth Circuit has already found "[p]rospective, conditional fine schedules" are hallmarks of civil contempt due to coercing compliance now and in the future. *See Parsons v. Ryan,* 949 F.3d 443, 455 (9th Cir. 2020)(quoting *Bagwell*, 512 U.S. at 828); *see also Hicks ex rel. Feiock v. Feiock,* 485 U.S. 624, 633 (1988)("A conditional penalty, by contrast, is civil because it is specifically designed to compel the doing of some act.") Defendants prematurely



**Disability Rights Oregon**
900 SW 5th Avenue, Suite 1800
Portland, OR 97204
(503) 243-2081

seek an order vacating the June 6, 2025, contempt order entirely. Mot., at 4. Yet, Defendants are not harmed by fines that are not imposed when Defendants are in compliance.

What Defendants actively seek is not the purging of contempt, but order from this court suspending all possibility of future contempt fines, even if the state of Oregon fails to act in the near future and instead protracts the detention of detainees beyond the limits of the permanent injunction. If the Court vacates its contempt order and the state again disobeys the permanent injunction, the burden will then fall on a plaintiff to file another motion to show cause. The Court will likely have to afford another lengthy hearing and write another lengthy opinion that will also be subject to appeal just to reinstate an order similar to the one issued in June 2025; all the while patients languish in jail waiting for court ordered mental health services only the Defendants can provide. Like the *Newsom* contempt sanctions, here, the sanctions are a per diem fine imposed for both current and future noncompliance, acting as a "forward-looking, conditional schedule" to compel sustained compliance with the court's order. *Newsom*, 131 F.4th at 963. Without the existing threat of fines, it is uncertain – at best – whether Defendants will take the necessary action to stay in compliance and admit pretrial detainees timely to the state hospital, especially with longstanding issues with leadership, capacity, and budget at the state hospital.

Further, similar to the sanctions ordered in both *Newsom* and *Parsons*, here, the fines are not paid to the Plaintiffs. Instead, the parties have also stipulated that the contempt sanctions be used for the benefit of all current and future pretrial detainees awaiting transport to the state hospital. Because the prospective threat of fines is remedially focused on returning benefits to pretrial detainees, Plaintiffs respectfully request the Court deny the state's motion.

DRO does not say the state should be subject to the June 2025 order forever. However, Defendants' waitlist has only fallen below the 7-day limit for less than three months. Defendants



**Disability Rights Oregon**
900 SW 5th Avenue, Suite 1800
Portland, OR 97204
(503) 243-2081

were in compliance with the permanent injunction for a handful of months in 2023 and 2024 but then were out of compliance for two years. Defendants point to no evidence or argument showing that further substantial violations of the permanent injunction are unlikely.

DRO is thrilled the waitlist is finally below the constitutional threshold. However, the Defendant's limited success over three months is insufficient to find that Oregon has made the sustainable system changes necessary to achieve a high likelihood of future compliance with the permanent injunction. For example, the state hospital is currently benefitting from a fairly high degree of intervention from this Court to reduce the number of patients it sees and to expedite the discharge of patients. No evidence presented by Defendants shows that Oregon's current degree of success is durable or likely to continue, particularly if the Court's remedial orders were relaxed. With compliance being so tentative and early, it is premature to vacate the contempt order. Instead, Defendants can address the problem of contempt fines through compliance.

## II. Defendants Make Little Showing of Efforts to Communicate with State Courts to Improve Reporting and Avoid Related Contempt Sanctions

Defendants point to five instances since June 13, 2026, in which courts in three counties delayed their reporting of court orders. *See* ECF 775. The documentation shows Defendants made efforts to show that the delay was the fault of court staff but shows no efforts to ensure that further errors of this type do not occur, beyond a representation that Defendants at some point remind courts of the importance of prompt sending of such orders. This omission is particularly remarkable, as the error repeated in two counties (Polk and Umatilla), suggests that some systemic problems may exist. While Defendants do not control the state court system, Defendants have authority to contact court administrators, engage in planning to prevent further similar errors, help the state court system develop safeguards, and collaborate with community partners to reduce the likelihood of unconstitutional detentions. *Coleman*, 131 F.4th at 956



**Disability Rights Oregon**
900 SW 5th Avenue, Suite 1800
Portland, OR 97204
(503) 243-2081

(contemnor must take "all reasonable steps" to comply with injunction, even where only technical or inadvertent violations remain); *see also Jeff D. v. Otter*, 643 F.3d 278, 284 (9th Cir. 2011)("While [substantial compliance] is not amenable to a 'mathematically precise definition,' ... merely taking significant steps toward compliance comes nowhere near satisfying this exacting standard."). Conferring with state court staff and ongoing, consistent collaboration to prevent such unconstitutional delays in the future is a "reasonable step" that Oregon should take prior to seeking a release from this Court's contempt order.

As has already been extensively briefed by the parties, Defendants have the primary responsibility to ensure that the constitutional rights of detainees are upheld. *Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1119 (9th Cir. 2003) ("Under Oregon law it is OSH, not counties, that has the duty to accept incapacitated defendants once they have been certified as such by a circuit court."). The Ninth Circuit rejected the notion that the seven-day time limit should begin only when Oregon "*receives* a commitment order rather than the date the order is issued." *Id.* at 1122 n.13. If Defendants are not responsible for improving the commitment process, then no party will be responsible, and no one within state government will have much incentive to protect pretrial detainees from spending months in jail in violation of the constitution and the permanent injunction; hence, the need for a coercive contempt order.

Even should the Court find, notwithstanding the above concerns, it would be unfair to subject Defendants to fines for errors attributed to the state courts, vacating the June 2025 contempt order is not the only way to address such concerns. If the Court is convinced that the state has taken all reasonable steps to address state court errors, the Court can certainly waive any fines in its discretion. Such a process would mean that Oregon would remain in a position to be fined for further violations of the permanent injunction wholly unattributed to state court staff,



**Disability Rights Oregon**
900 SW 5th Avenue, Suite 1800
Portland, OR 97204
(503) 243-2081

without imposing on plaintiff or Court the obligation to file new motions or hold new hearings to address the same problems that have long existed. While such a course would not be DRO's first choice, it would be preferable to granting the state complete relief from all forward-looking, conditional fines for all noncompliance, after only a couple months of limited compliance.

DATED this 8th day of September 2026.

DISABILITY RIGHTS OREGON

/s *Emily Cooper*

Emily Cooper OSB # 182254
ecooper@droregon.org
Thomas Stenson, OSB # 152894
tstenson@droregon.org
Dave Boyer OSB # 235450
dboyer@droregon.org
511 SW 10th, Suite 200
Portland OR 97205
Telephone: (503) 243 2081
Facsimile: (503) 243 1738

*Counsel for Plaintiff*
*Disability Rights Oregon*