DAN RAYFIELD
Attorney General
CARLA A. SCOTT #054725
CRAIG M. JOHNSON #080902
Senior Assistant Attorneys General
JILL CONBERE #193430
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Carla.A.Scott@doj.oregon.gov
Craig.M.Johnson@doj.oregon.gov
Jill.Conbere@doj.oregon.gov

Attorneys for Defendants Patrick Allen, Fariborz Pakseresht, Dolores Matteucci, and Sean Murphy

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON,<br><br>Plaintiffs,<br><br>v.<br><br>FARIBORZ PAKSERESHT, in his official capacity as interim head of the Oregon Health Authority, and JAMES DIEGEL in his official capacity as Interim Superintendent of the Oregon State Hospital,<br><br>Defendants. | Case No. 3:02-cv-00339-AN (Lead Case)<br>Case No. 3:21-cv-01637-AN (Member Case)<br><br>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO PURGE CONTEMPT |
| JAROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES DIEGEL, Interim Superintendent of the Oregon State Hospital, in his official capacity, DOLORES MATTEUCCI, in her | Case No. 3:21-cv-01637-AN (Member Case) |

individual capacity, FARIBORZ PAKSERESHT, Interim Director of the Oregon Health Authority, in his official capacity, and PATRICK ALLEN in his individual capacity,

Defendants.

## I. Introduction

While ongoing coercive fines may be lawful in some circumstances, they are not permissible where, as here, the contemnor cannot purge such fines by compliance. It is undisputed that, since June 13, 2026, the State Hospital has been admitting Aid and Assist patients within seven days of commitment orders, except when committing courts (an independent and separate branch of Oregon State government) fail to comply with their statutory duty to send the State Hospital a commitment order within one-judicial day. Imposition of ongoing fines in those circumstances—which are outside Defendants' control—is contrary to law because Defendants lack the ability to purge such fines by compliance.

For the reasons set out in their opening motion and further below, Defendants ask this Court to purge the contempt finding and cease imposition of prospective fines. Alternatively, Defendants ask this Court to: (1) excuse fines where admission delays are caused by late-sent commitment orders; and (2) make clear to Defendants what will constitute "substantial compliance" with the permanent injunction so that they can have an opportunity to purge.

## II. Argument

### A. Compliance with the seven-day admission requirement since June 13, 2026, is undisputed.

During the September 15, 2026, status hearing in this case, this Court appeared to express some concern about the accuracy of the data showing that, since June 13, 2026, Defendants have been admitting Aid and Assist Defendants within seven days except for five circumstances outside of their control. The accuracy of that data is established through the


Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Declaration of Scott Hillier filed in support of Defendants' motion (ECF No. 776 ¶¶ 2-3) and Dr. Pinals's Fifth Court Monitor Report (ECF No. 782-5 at pp. 7-8). DRO does not dispute the accuracy of this admissions data but rather contends only that this Court should hold Defendants responsible for committing courts' failures to comply with their statutory duty to send commitment orders to the State Hospital within one judicial day.

**B. Overview of Defendants' compliance with the permanent injunction since 2021 and effect of this Court's June 1, 2026, remedial order on current compliance.**

At the September 15 status conference, this Court directed Defendants to report on the effect the June 1, 2026, Order (June 1 Order) has had on compliance and whether it is needed to facilitate sustained compliance.

Since 2021, Defendants have had three periods of compliance: August 2023-November 2023, February 2024-May 2024, and June 13, 2026-present. This Court's June 1, 2026, Order has had a direct positive impact on compliance. In the three months after that order, and apparently as a result of it, OSH received an average of 77 orders per month. There has been no other three-month period of average orders below 80 since September 2022, and 80 roughly 80 orders per month is the pace at which OSH can currently sustain compliance. Because OSH has been able to discharge more patients than have been admitted over the last three months, Defendants believe they would be able to remain in compliance in the event of a short-term increase in the number of orders received. However, if the number of commitment orders rose back to the 95 per month average that the first half of 2026 saw, Defendants project they would be unable to remain in compliance within six months.

Since 2021, the Oregon Health Authority has been engaging in extensive efforts to build capacity in the community to increase throughput at the State Hospital, which has helped Defendants return to compliance. *See* ECF Nos. 556 pp. 11-12; 657 pp. 3-4; 659-1; 683 pp. 5-6; 684-1; 718 pp. 5-6; 719-1; 758 pp. 5-6; 759-1; 778 pp. 6-7. Pursuant to this Court's directive at the September 15, 2026, status conference, Defendants are also preparing


Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

more detailed narrative regarding all their efforts designed to result in sustained compliance with the permanent injunction to submit to this Court for further consideration. Defendants plan to submit this report to the Court by November 16, 2026.

**C. It is not lawful to impose ongoing coercive fines solely for admission delays caused by late-sent commitment orders.**

**1. Fines may not lawfully be imposed prospectively in situations where Defendants lack the ability to comply.**

DRO cites Ninth Circuit cases for the proposition that ongoing contempt fines are permissible. DRO argues that, under those cases, "[t]he purging of contempt is relief Defendants afford themselves through compliance, not relief this Court must grant." ECF No. 777 p. 2. But none of those cases support the concept of fines to coerce compliance with an injunction in perpetuity; rather, the language upon which DRO relies from those cases focuses on analyzing the differences between punitive and coercive contempt. In any event, DRO ignores that ongoing coercive fines are permissible *only* where the contemnor has the ability to purge contempt by compliance. The Supreme Court and the Ninth Circuit have made clear that a court's power to impose coercive civil contempt *depends upon the ability of the contemnor to comply* with the court's coercive order. *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (explaining that "the ability to purge is perhaps the most definitive characteristic of coercive civil contempt" (citing *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 829 ("Where a fine is not compensatory, it is civil *only* if the contemnor is afforded an opportunity to purge.") (emphasis added)). Put another way, where the contemnor lacks the ability to comply, the coercive justification for ongoing fines dissolves.[1]

[1]Defendants continue to preserve their argument that coercive fines are not appropriate at all in this matter. When a court imposes civil sanctions, it does so with the goal of coercing compliance, not as a punitive measure. *See Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516 (9th Cir. 1992) (explaining that a court imposing contempt sanctions should consider "the probable effectiveness of any suggested sanction in bringing about the result desired"). Significantly, neither Dr. Pinals nor Plaintiff Metropolitan Public Defender (MPD) believe that the fines were warranted in the first place. *See* 3/12/25 Tr. p. 95 (Dr. Pinals testimony stating that she does not support imposition of fines given the support from



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**2. Defendants are unable to purge ongoing fines resulting solely from late-sent commitment orders.**

DRO asserts that this Court should fine Defendants for delayed admissions caused when the committing court fails to send a commitment order to the State Hospital. While DRO concedes that "Defendants do not control the state court system[,]" but it nevertheless argues that Defendants should do something more than they are doing to prevent court clerks from unintentional human error. DRO contends that Defendants should, for example, "contact state court administrators, engage in planning to prevent further similar errors, help the state court system develop safeguards, and collaborate with community partners to reduce the likelihood of unconstitutional detentions." ECF No. 777 p. 4. This argument goes too far.

Oregon has 27 circuit court districts.[2] The failures of committing courts to timely transmit commitment orders have occurred at random times within various circuit court

---

the Governor's Office to seek legislative funding designed to implement recommendations designed to result in sustained compliance); *see also* 9/15/26 Tr. at p. 36 (MPD does not see the "value" in fines and instead advocates for narrowly tailored remedial relief). Nor has any use of those fines been identified that could assist in compliance. Defendants are singularly motivated to comply with the permanent injunction. Defendants have returned to compliance due to their efforts to improve throughput at the State Hospital and building capacity in the community, along with the effects of the remedial orders. Fines are not serving any coercive purpose in this case.

[2]The sixth, seventh, tenth, fifteenth, twenty-second and twenty-fourth districts cover two or more counties while the rest cover just one county each: First Judicial District – Jackson; Second Judicial District – Lane; Third Judicial District – Marion; Fourth Judicial District – Multnomah. Multnomah County Court; Fifth Judicial District – Clackamas; Sixth Judicial District – Umatilla, Morrow; Seventh Judicial District – Sherman, Gilliam, Wheeler, Wasco, Hood River; Eighth Judicial District – Baker; Ninth Judicial District – Malheur; Tenth Judicial District – Wallowa, Union; Eleventh Judicial District – Deschutes; Twelfth Judicial District – Polk; Thirteenth Judicial District – Klamath; Fourteenth Judicial District – Josephine; Fifteenth Judicial District – Coos, Curry; Sixteenth Judicial District – Douglas; Seventeenth Judicial District – Lincoln; Eighteenth Judicial District – Clatsop; Nineteenth Judicial District – Columbia; Twentieth Judicial District – Washington; Twenty-first Judicial District – Benton; Twenty-second Judicial District – Crook, Jefferson; Twenty-third Judicial District – Linn; Twenty-fourth Judicial District – Harney, Grant; Twenty-fifth Judicial District – Yamhill; Twenty-sixth Judicial District – Lake; Twenty-seventh Judicial District – Tillamook.



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

districts throughout the state:[3]

| Court | Commitment Order Signed | Commitment Order Received by OSH | Days Between Order Signing and Transmittal | Days Between Receipt of Order and Admission | Associated Fines |
|---|---|---|---|---|---|
| Union County | 08/18/25 | 09/11/25 | 24 | 4 | $10,500 |
| Benton County | 08/21/25 | 09/25/25 | 35 | 1 | $14,500 |
| Multnomah County | 08/05/25 | 09/26/25 | 52 | 3 | $24,000 |
| Multnomah County | 10/14/25 | 10/22/25 | 8 | 9 | $1,000 |
| Polk County | 10/16/25 | 10/23/25 | 7 | 13 | $3,000 |
| Lane County | 11/24/25 | 12/10/25 | 16 | 2 | $5,500 |
| Multnomah County | 11/25/25 | 12/02/25 | 7 | 16 | $8,000 |
| Umatilla County | 03/12/26 | 03/31/26 | 19 | 2 | $7,000 |
| Umatilla County | 03/25/26 | 04/01/26 | 7 | 14 | $7,000 |
| Lane County | 04/01/26 | 04/27/26 | 26 | 2 | $10,500 |
| Multnomah County | 05/05/26 | 05/21/26 | 16 | 5 | $7,000 |
| Multnomah County | 05/12/26 | 05/27/26 | 15 | 2 | $5,000 |
| Multnomah County | 06/02/26 | 06/09/26 | 7 | 3 | $1,500 |
| Umatilla County | 07/04/26 | 07/31/26 | 27 | 4 | $12,000 |
| Umatilla County | 07/01/26 | 08/07/26 | 37 | 3 | $16,500 |
| Lane County | 07/29/26 | 08/20/26 | 22 | 1 | $8,000 |
| Polk County | 08/13/26 | 08/27/26 | 14 | 4 | $5,500 |
| Polk County | 08/14/26 | 08/25/26 | 11 | 2 | $3,000 |

Defendants simply do not have ability to prevent random, inadvertent human error across all 27 circuit court districts. The State Hospital has taken sufficient reasonable steps to educate Oregon circuit courts. As explained in Defendant's opening motion, Oregon law requires committing courts to send commitment orders to OSH within one judicial day of issuance. ORS 161.362(4). Since passage of this statute, the State Hospital has regularly

[3] The final three late commitment orders listed in this chart were received after the most recent fine reporting period and will be included in Defendants' Sixteenth Fine Report.



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

reminded the courts through the Oregon Judicial Department of this statutory requirement and where to send the orders. ECF No. 775 ¶ 3. The State Hospital also has an FAQ document on its website which clearly describes this requirement and the process for emailing orders to OSH.[4] Defendants have neither the authority nor the bandwidth to police circuit courts in performing their statutorily required clerical duties across the entire state, nor is it reasonable to expect Defendants to do more than they are already doing.

Finally, DRO's argument that ongoing imposition of fines does not harm Defendants likewise fails. ECF No. 777 p. 3. Defendants are being fined for delays caused solely by a separate and independent branch of state government over which DRO concedes they have no control. That is direct harm to Defendants.

**3. DRO's reading of the Ninth Circuit's language in *Mink* is wrong.**

DRO argues further that, as a legal matter, "Defendants have the primary responsibility to ensure the constitutional rights of detainees are upheld." ECF No.777 p. 4 (citing *Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1119 (9th Cir. 2003)). This argument overstates the Ninth Circuit's holding in *Mink*. The Ninth Circuit's language upon which DRO relies states: "under Oregon law, it is [the State Hospital], not counties, that have the *duty to accept* incapacitated defendants once they have been certified as such by a circuit court." *Mink*, 322 F.3d at 1119 (emphasis added).

DRO's reliance on this language is misplaced for several reasons. First, the Ninth Circuit was addressing an entirely different issue than the one presented here. The issue in before the Ninth Circuit was whether county jails had a duty to provide services to those found unable to aid and assist in their defense until a bed became available at the State Hospital. *Id.* Because an Oregon statute placed that duty on Defendants, the Ninth Circuit rejected their argument that the counties bore some responsibility to provide services until the State Hospital was ready to accept the patient. *Id.* Second, the evidence before this Court

[4] https://www.oregon.gov/oha/OSH/LEGAL/Documents/2019-SB-25-FAQ.pdf.



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

is undisputed that the State Hospital *is* standing ready to accept Aid and Assist patients within seven days of commitment orders. ECF No. 776 ¶ 3 (Hillier Decl.); ECF No. 782-5 pp. 7-8 (Court Monitor's Fifth Report). DRO does not dispute this data. Third, as noted above, Oregon law makes it *the committing court's* responsibility to transmit commitment orders to the State Hospital and places no associated onus on the State Hospital. *See* ORS 161.362(4) (providing that: "[t]he *court shall ensure* that an order entered under [ORS 161.370] . . . is provided, by the end of the next judicial day, to any entity ordered to provide restoration services").

In sum, Defendants do not control or have any authority over the state court system. They have taken all reasonable steps to communicate and work with committing courts regarding the statutory requirement that those courts send commitment orders to the State Hospital.[5] As explained above, Supreme Court and Ninth Circuit precent make it unlawful to impose coercive fines in these circumstances.

If this Court is not inclined to purge imposition of ongoing fines, Defendants ask this Court to excuse fines where admission delays are caused by late-sent commitment orders.

**D. Alternatively, Defendants seek clarity on what "substantial compliance" with the permanent injunction means.**

DRO asserts that it does not argue that "the state should be subject to [contempt fines] forever." ECF No. 777 p. 3. Rather, they contend that Defendants' three-months of compliance is insufficient and that it is too early to discontinue fines. *Id.*

In the September 15, 2026, status conference, appearing to agree with DRO, this Court also suggested that Defendants' motion to purge is "premature." 9/15/26 Tr. pp. 30-31. This

[5] As explained further below, DRO's vague suggestions as to what more Defendants should do fail to provide a clear standard that would permit Defendants to purge fines by compliance. *Balla*, 869 F.2d at 465 (holding that requirements like "a 'systematic' program for screening and evaluation, participation of 'sufficient' numbers of mental health professionals, and implementation of a 'basic' program for identifying, treating, and supervising suicidal prisoners," was not sufficiently specific to hold a state in contempt); *Coleman v. Newsom*, 131 F.4th 948, 963 (9th Cir. 2025) (coercive civil contempt fines must be purgeable by compliance).



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Court suggested that substantial compliance within the meaning of the Contempt Order could mean something other than compliance with the permanent injunction but declined to specify what that may be until briefing is completed on Defendants' motion to purge. *Id*.

Defendants understand that the Court and DRO are concerned that there is risk that they may fall out of compliance at some point in the future. But the prospect that Defendants *may* fall out of compliance in the future is not a lawful basis to hold them in contempt when they are, in fact, in compliance. As Defendants' opening motion explains, Defendants plan to keep a sufficient number of beds open at the State Hospital to account for an increase in commitment orders to ensure that compliance is sustained. ECF No. 774 p. 3. And Defendants are not asking for the remedial orders to be lifted. The remedial orders, combined with the Oregon Health Authority's years-long efforts to build capacity are what have driven compliance, not fines.

Further, the terms triggering imposition of prospective fines must be sufficiently clear to give the contemnor an opportunity to purge it by compliance. *See, e.g., Coleman v. Newsom*, 131 F.4th 948, 963 (9th Cir. 2025) (explaining that the Ninth Circuit has consistently treated the ability to purge the most definitive characteristic of coercive civil contempt). A contempt order imposing fines prospectively is a form of injunctive relief. *Stone v. City and County of San Francisco*, 145 F.R.D. 553, 560. (N.D. Cal. 1993). And every order granting an injunction must state its terms specifically and describe in reasonable detail the acts required. *See* FRCP 65; *Melendres v. Skinner*, 113 F.4th 1126, 1139 (9th Cir. 2024) (explaining that FRCP 65 "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood").

Defendants' motion to purge is based on the following plain language in the Contempt Order: "The Court finds that defendants are in contempt; orders monetary sanctions in the amount of $500 per day . . . to continue each calendar day unless and until


Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

defendants achieve substantial compliance with the Court's Permanent Injunction." *See* ECF No. 774 p. 3. If there is an implied additional element beyond admission within seven days of a commitment order that this Court would require before Defendants may purge contempt, Defendants ask this Court to specify what is needed to purge the contempt here.

## III. Conclusion

Based on their compliance with the permanent injunction, Defendants respectfully request that this Court purge its June 6, 2025, contempt finding and cease the prospective imposition of fines. Defendants do not ask this Court to terminate any of the remedial orders in effect. Defendants understand that those orders are remedial in nature and that they have facilitated current compliance. Defendants acknowledge that those remedial orders have facilitated compliance and anticipate that they will continue to facilitate compliance. Those orders may provide a roadmap for legislation that could result in sustained compliance without the need for those orders. In any event, continued contempt fines are not necessary for compliance and are having no coercive effect.


Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Alternatively, Defendants ask this Court to: (1) excuse fines that accrue solely because the committing court failed to timely send the State Hospital a commitment order; and (2) provide clarity on the standard Defendants must meet to permanently purge imposition of ongoing fines such as, for example, the length of time they must be in compliance and specific parameters required for determining projected future compliance if the Court intends to require proof of prospective compliance to purge ongoing fines.

DATED September 22, 2026.

Respectfully submitted,

DAN RAYFIELD
Attorney General

*s/ Carla A. Scott*
CARLA A. SCOTT #054725
CRAIG M. JOHNSON #080902
Senior Assistant Attorneys General
JILL CONBERE # 193430
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Carla.A.Scott@doj.oregon.gov
Craig.M.Johnson@doj.oregon.gov
Jill.Conbere@doj.oregon.gov
Of Attorneys for Defendants